## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

MICHAEL DAVID SILLS and MARY
SILLS,

          Plaintiffs,

v.

SOUTHERN BAPTIST CONVENTION, a
non-profit corporation;
DR. ED LITTON, Individually, and as agent
and/or employee of SOUTHERN BAPTIST
CONVENTION;
LIFEWAY CHRISTIAN RESOURCES OF
THE SOUTHERN BAPTIST CONVENTION,
a non-profit corporation;
JENNIFER LYELL, Individually and as agent
and/or employee of LIFEWAY CHRISTIAN
RESOURCES OF THE SOUTHERN
BAPTIST CONVENTION and SOUTHERN
BAPTIST CONVENTION;
ERIC GEIGER, Individually and as agent
and/or employee of LIFEWAY CHRISTIAN
RESOURCES OF THE SOUTHERN
BAPTIST CONVENTION and SOUTHERN
BAPTIST CONVENTION;
EXECUTIVE COMMITTEE OF THE
SOUTHERN BAPTIST CONVENTION, a
non-profit corporation;
BART BARBER, Individually and as agent
and/or employee of SOUTHERN BAPTIST
CONVENTION;
WILLIE MCLAURIN, Individually and as
agent and/or employee of SOUTHERN
BAPTIST CONVENTION and EXECUTIVE
COMMITTEE OF THE SOUTHERN
BAPTIST CONVENTION;
ROLLAND SLADE, Individually and as agent
and/or employee of SOUTHERN BAPTIST
CONVENTION and EXECUTIVE
COMMITTEE OF THE SOUTHERN
BAPTIST CONVENTION;
THE SOUTHERN BAPTIST THEOLOGICAL

Case No:

**COMPLAINT**
**JURY TRIAL DEMANDED**

SEMINARY, a non-profit corporation;
DR. R. ALBERT MOHLER, Individually and
as agent and/or employee of THE SOUTHERN
BAPTIST THEOLOGICAL SEMINARY and
SOUTHERN BAPTIST CONVENTION;
SOLUTIONPOINT INTERNATIONAL, INC.,
a corporation, individually and d/b/a
GUIDEPOST SOLUTIONS; and
GUIDEPOST SOLUTIONS, LLC, a limited
liability corporation and agent of the Southern
Baptist Convention.

        Defendants.

## **COMPLAINT**

Plaintiffs Dr. Michael David Sills ("Plaintiff Sills") and Mary Sills ("Mrs. Sills") (collectively "Plaintiffs" or the "Sills Plaintiffs"), through their attorneys, bring this action against Defendants Southern Baptist Convention, a non-profit corporation; Dr. Ed Litton, individually and as agent and/or employee of Southern Baptist Convention; Lifeway Christian Resources of the Southern Baptist Convention, a non-profit corporation; Jennifer Lyell, individually and as agent and/or employee of Lifeway Christian Resources of the Southern Baptist Convention and Southern Baptist Convention; Eric Geiger, individually and as agent and/or employee of Lifeway Christian Resources of the Southern Baptist Convention and Southern Baptist Convention; Executive Committee of the Southern Baptist Convention, a non-profit corporation; Bart Barber, individually and as agent and/or employee of Southern Baptist Convention; Willie McLaurin, individually and as agent and/or employee of Southern Baptist Convention and Executive Committee of the Southern Baptist Convention; Rolland Slade, individually and as agent and/or employee of Southern Baptist Convention and Executive Committee of the Southern Baptist Convention; The Southern Baptist Theological Seminary, a non-profit corporation; Dr. R. Albert Mohler, individually and as agent and/or employee of The Southern Baptist Theological Seminary and

2

Southern Baptist Convention; SolutionPoint International, Inc., a corporation, individually and d/b/a Guidepost Solutions; and Guidepost Solutions LLC, a limited liability corporation and agent of the Southern Baptist Convention (collectively referred to as "Defendants"), and allege as follows:

## <u>INTRODUCTION</u>

1.      Plaintiffs file this complaint against Defendants alleging defamation, conspiracy, intentional infliction of emotional distress, and negligence concerning untrue claims of sexual abuse declared by Defendant Jennifer Lyell, and, thereafter repeated and published by remaining Defendants, as well as untrue claims that Mrs. Sills aided, abetted, facilitated, or otherwise enabled the said sexual abuse.

2.      Plaintiff Sills did not, at any time, sexually abuse Defendant Lyell.

3.      Plaintiff Sills did not ever force himself upon Defendant Lyell.

4.      Plaintiff Sills never used violence against Defendant Lyell and never threatened to use violence against Defendant Lyell, or anyone else.

5.      Importantly, Plaintiff Sills did not engage in sexual intercourse with Defendant Lyell, at any time, whatsoever.

6.      At all relevant times, Defendant Lyell was well above the age of consent (i.e., 26 years of age) when she met Plaintiff Sills. Defendant Lyell initiated and aggressively cultivated and maintained a personal and emotionally intimate relationship with Plaintiff Sills.

7.      While as an acquisitions editor for Moody Publishers in Illinois and later as a senior publishing executive for Defendant Lifeway in Tennessee, Defendant Lyell would drive several hundred miles and many hours just to see Plaintiff Sills and his family.

8.      Plaintiff Sills ended the relationship with Defendant Lyell who nevertheless persisted in her pursuit of Plaintiff Sills and undertook efforts to reach him through his family.

9.      Notably, Plaintiff Sills never denied that an inappropriate relationship took place, and, consequently, he rightly resigned from positions within the Southern Baptist Convention ("SBC").

10.      When it was revealed that the relationship was consensual, however, Defendant Lyell did not accept the reproach from SBC members despite its truth. Instead, Defendant Lyell, relying on her expertise as an accomplished writer and executive in the fields of advertising and publishing within the SBC, a lucrative and powerful position, constructed a false narrative against Plaintiffs at the height of the nationwide awareness of the SBC scandals.

11.      Defendant Lyell worked frantically to restore her reputation and preserve her powerful position of doling out lucrative book deals, while affirmatively and skillfully dismantling the reputations, careers, and family life of Plaintiffs.

12.      The SBC Defendants were at the same time confronted with and trying to manage a decades old scandal within the SBC concerning actual predators harming innocent victims, many of whom were children. Rather than seek the truth, however, Defendants repeated and circulated the false statements made by Defendant Lyell about Plaintiff Sills, causing him to be cast out as a toxic pariah. After various mischaracterizations, misstatements, and contrived investigations by Defendants, Plaintiffs have been wrongfully and untruthfully labelled as criminals and shunned by the SBC and every other religious organization with which Plaintiff Sills has tried to associate.

13.      As a result of the Defendants' acts and omissions, Plaintiffs have suffered significant reputational harm, emotional distress, physical pain, and financial loss.

4

## PARTIES

14.     Plaintiff Sills was a Southern Baptist missiologist, professor, and author in the Southern Baptist Convention before resigning his professional positions as a consequence of having a consensual, prurient relationship with Defendant Jennifer Lyell. Plaintiff Sills is a citizen of the state of Mississippi.

15.     Plaintiff Mary Sills is the wife of Plaintiff David Sills. Plaintiffs have been married for forty-five years and have raised two children on the mission field in Ecuador and in churches where Plaintiff Sills was either a pastor or a seminary professor.  Mrs. Sills is a citizen of the state of Mississippi.

16.     Defendant Southern Baptist Convention (hereinafter the "SBC") is a non-profit corporation "created for the purpose of eliciting, combining, and directing the energies of the Baptist denomination of Christians, for the propagation of the gospel, any law, usage, or custom to the contrary notwithstanding."[1] The SBC is domiciled in the state of Georgia and a citizen of the state of Tennessee, with its headquarters in Nashville, TN. SBC owns property and maintains offices, agents and employees in this forum, and has continuous and systematic contact with this forum, including in relation to the subject-matter at bar. A substantial number of SBC's acts complained of herein took place in Nashville, TN.

17.     Dr. Ed Litton (hereinafter "Litton") is named in his individual capacity, and as the former president and/or agent of the SBC. He is a citizen of the state of Alabama, who resides in Mobile County, Alabama. Litton has continuous and systematic contact with this forum, including in relation to the subject-matter at bar. A substantial number of Litton's acts complained of herein took place in Nashville, TN.

---

[1] *See* https://www.sbc.net/about/what-we-do/legal-documentation/charter/ (last visited April 20, 2023).

18. Defendant Bart Barber (hereinafter "Barber") is named in his individual capacity and as the president and/or agent of the SBC. Defendant Barber is a citizen of the state of Texas. Barber has continuous and systematic contact with this forum, including in relation to the subject-matter at bar. A substantial number of Barber's acts complained of herein took place in Nashville, TN.

19. Defendant Executive Committee of the Southern Baptist Convention (hereinafter the "Executive Committee") is a non-profit corporation that serves as "the fiduciary, the fiscal, and executive entity of the Convention."[2] The Executive Committee is a citizen of the state of Tennessee.

20. Defendant Willie McLaurin (hereinafter "McLaurin") is named in his individual capacity and as the Interim President/CEO of the SBC Executive Committee and/or agent of the SBC. Defendant McLaurin is a citizen of the state of Tennessee.

21. Defendant Rolland Slade (hereinafter "Slade") is named in his individual capacity and as the Chairman of the SBC Executive Committee and/or agent of the SBC. Upon information and belief, Defendant Slade is presently a citizen of the state of California. Slade has continuous and systematic contact with this forum, including in relation to the subject-matter at bar. A substantial number of Slade's acts complained of herein took place in Nashville, TN.

22. Defendant The Southern Baptist Theological Seminary (hereinafter "Seminary") is a non-profit corporation that trains, educates and prepares ministers, persons, churches, and denominational entities of all levels of competency. The Seminary is a citizen of the state of Kentucky. Seminary has continuous and systematic contact with this forum, including in relation

---

[2] *See* https://www.sbc.net/about/what-we-do/sbc-entities/ (last visited April 20, 2023).

to the subject-matter at bar. A substantial number of Seminary's acts complained of herein took place in Nashville, TN.

23.     Defendant Dr. R. Albert Mohler (hereinafter "Mohler") is named in his individual capacity, as the president of Seminary, and/or as an agent of the SBC and Seminary. Defendant Mohler is a citizen of the state of Kentucky. Mohler has continuous and systematic contact with this forum, including in relation to the subject-matter at bar. A substantial number of Mohler's acts complained of herein took place in Nashville, TN.

24.     Defendant Lifeway Christian Resources of the Southern Baptist Convention (hereinafter "Lifeway") is a non-profit corporation and one of the world's largest suppliers of Christian resources, including Bibles, Bible studies, research, events, church music, church supplies and digital services. Lifeway is a citizen of the state of Tennessee.

25.     Defendant Jennifer Lyell (hereinafter "Lyell") is named in her individual capacity and as an agent and/or employee of the SBC and Lifeway. At all relevant times, Defendant Lyell was an author and senior executive in the fields of advertising and publishing. At all relevant times, she was a publisher within the SBC, including at Lifeway. At age 26, Defendant Lyell was initially a co-worker of Plaintiff Sills and then a seminarian, eventually moving to Chicago to work for Moody Publishers. Thereafter, Defendant Lyell moved to Tennessee to work as an editor and publisher in a senior executive position at Lifeway. Defendant Lyell is a citizen of the state of Tennessee.

26.     Defendant Eric Geiger (hereinafter "Geiger") is named in his individual capacity and as a former senior vice-president and/or agent for Lifeway. Defendant Geiger is presently a Senior Pastor of Mariners Church in Irvine, California. Defendant Geiger is a citizen of the state of California.  Geiger has continuous and systematic contact with this forum, including in relation

7

to the subject-matter at bar. A substantial number of Geiger's acts complained of herein took place in Nashville, TN.

27.     Defendant SolutionPoint International, Inc. (hereinafter "SPI"), a corporation, and d/b/a Guidepost Solutions is named individually and as an agent and/or employee of SBC. Defendant SPI provides global business intelligence, security and compliance, identity assurance and situational awareness services. Defendant SPI owns Guidepost Solutions LLC with its principal place of business located in the state of New York. SPI is a citizen of Delaware. A substantial number of SPI's acts and collaborations complained of herein took place in Nashville, TN.

28.     Defendant Guidepost Solutions LLC (hereinafter "Guidepost"), a limited liability corporation, is wholly owned by SPI and is the agent and/or employee of Defendants, Executive Committee, McLaren and Slade. Defendant Guidepost provides "solutions that help companies, government agencies, individuals, and their counsel solve problems, mitigate risks, and resolve disputes, and protect lives, assets, and reputations."[3] Defendant Guidepost is located in New York, Texas, Illinois and California where, upon information and belief, its executive committee members are citizens. Guidepost has continuous and systematic contact with this forum, including in relation to the subject-matter at bar. A substantial number of Guidepost's acts complained of herein took place in Nashville, TN.

## JURISDICTION & VENUE

29.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), the parties being of diverse citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

---

[3] *See* https://guidepostsolutions.com/about-us/ (last visited April 20, 2023).

30.     This Court has personal jurisdiction over Defendants. First, several of the Defendants live and work in this District (namely, SBC, the Executive Committee, McLaurin, Lifeway, and Lyell). A consensus of the Defendants in relation to their work with one another regularly appear in this District (namely, SBC, Litton, Seminary, Mohler, Geiger, SPI and Guidepost). Secondly, in relation to the subject-matter and allegations at bar arise out of and relate to the Defendants' contacts with this forum. Defendants (while in this forum) jointly and collectively conceived, prepared, broadcasted, and published statements and materials directed to citizens of this forum, including targeted messaging to SBC churches and members that are residents of this District. In relation to the allegations at bar, the Defendants have each purposefully availed themselves of the privilege of conducting activities within the forum State. Moreover, several of Defendants (namely, SBC, the Executive Committee, McLaurin, Lifeway, and Lyell) own and maintain property, employees and agents in this District. Additionally, several of the Defendants are registered with the State of Tennessee to conduct business in this forum.[4]

31.     Venue is appropriate pursuant to 28 U.S.C. § 1391(b). A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this District.

## COMMON FACTUAL ALLEGATIONS

32.     At all relevant times, Plaintiffs were private figures of good repute. Plaintiff Sills was a Southern Baptist missiologist, professor, and author in the SBC. Mrs. Sills was the wife of Plaintiff Sills and similarly devoted to missionary work and their family life.

33.     This case arises out of accusations initially made by Defendant Lyell, including the false claim that Plaintiff Sills physically and sexually abused her, and threatened her with violence

---

[4] Southern Baptist Convention, Registration No. 84227; Executive Committee, Registration No. 73058; Lifeway, Registration No. 68508; Southern Baptist Theological Seminary, Registration No. 485385; SolutionPoint, Registration No. 333007 (administratively revoked).

9

and other criminal activity. Defendant Lyell's statements were made in interviews, including in June 2021, May 22, 2022, May 28, 2022, June 14, 2022, and June 18, 2022, and have been used to excoriate and cause injury to Plaintiff Sills and his wife Mrs. Sills.

34.     Defendant Lyell, a seasoned writer and publishing executive, including at one time for Defendants SBC and Lifeway, coordinated and implemented a devastating attack against Plaintiff Sills after he ended their consensual adult relationship. She did not act alone.

35.     In Spring 2018, Defendant Lyell confessed to Defendants Geiger, Lifeway, SBC, the Executive Committee, Seminary and Mohler, about her affair with Plaintiff Sills. Defendant Lyell had not anticipated the significant amount of negative reaction she would receive within the SBC community. The negative opinions threatened her powerful vice president position at Lifeway, a subsidiary of SBC.

36.     Shortly after initiating the disclosure and reporting by Defendant Lyell, Defendant Geiger was promoted to the position of Senior Pastor at an SBC church in Orange County, California.

37.     In this same period, Defendant Mohler was presented with an opportunity. Defendant Mohler was reeling from public scorn for having publicly supported his friend, C.J. Mahaney, the former leader of Sovereign Grace Ministries ("SGM"), after Mahaney allegedly covered up incidents of child sex abuse.[5] Defendant Mohler was looking for, and found in Defendant Lyell's story, an opportunity to restore his own reputation in the SBC, particularly on the subject of concealing sex abuse. Notably, in a subsequent statement made in February 2019, in an effort to distance himself from Mahaney, Defendant Mohler said that when he signed a statement in 2013 supporting Mahaney, he thought an independent investigation of the allegations

---

[5] Defendant Mohler withstood heavy criticism for his support of Mahaney.

of sexual and domestic abuse had been initiated. He said that he didn't learn until the prior year that Mahaney and other SGM leaders had not participated in that investigation. Mahaney presently resides and maintains his position as a senior pastor in Louisville.[6]

38.     Defendant SBC also did not anticipate the public reaction to the malicious branding of Plaintiff Sills as a pervert when the relationship was discovered to be consensual.  And the SBC desperately tried to control it. Unable to withstand the backlash in March 2019, Defendant Lyell rebranded what she had first reported about the affair.  In furtherance of that effort, and directly reporting to Defendants Geiger, Lifeway, SBC, the Executive Committee, Seminary and Mohler, Defendant Lyell offered to write about the affair. Specifically, Defendant Lyell, the highest-ranking woman in the SBC at the time, shrewdly offered to write for the public relations arm of Defendant Executive Committee, namely, Baptist Press. Defendants Mohler and Seminary urged Defendant Lyell to write the public relations piece.

39.     This offer was meaningful for the SBC and Executive Committee, as Defendants SBC and Executive Committee were experiencing extensive criticism for their alleged mishandling of significant sexual abuse cases. Upon information and belief, the proposed article by Defendant Lyell was expected to demonstrate Defendant SBC's reformative efforts in addressing sexual abuse cases, including against many tender-aged victims. At that time, Defendant Lyell allegedly promoted the piece as a way to document online Plaintiff Sills' purported record of abuse, so as to prevent him from obtaining employment.[7]

---

[6] Mahaney and his church purportedly each donated at least $100,000 to Defendant Mohler's Seminary.
[7] *See* Marv Knox, *SBC report shows how five words turn abuse victim from 'survivor' to 'whore'*, BAPTIST NEWS GLOBAL (May 23, 2022), https://baptistnews.com/article/sbc-report-shows-how-five-words-turn-abuse-victim-from-survivor-to-whore/.

11

40.     Defendants SBC, Lifeway, Lyell, Geiger, Executive Committee, McLaurin, Slade, Seminary, Mohler, and Litton[8], understood the value of making an example out of Plaintiff Sills, who immediately and without controversy, admitted to an affair with Defendant Lyell and willingly accepted the SBC's requirement that he leave his position at the Seminary. In essence, Defendants (then under fire for mishandling legitimate complaints of sexual abuse), saw an opportunity to improve the appearance and reputation of SBC by adopting the narrative publicly advanced by Lyell. SBC implemented a so-called investigation that included a component specifically designed to shame Sills and exonerate Lyell. Defendants never spoke to Plaintiff Sills, nor adequately informed him of the specific nature and extent of accusations made by Defendant Lyell.

41.     Nonetheless, Plaintiff Sills was repentant and obedient to the rules of the SBC. Defendants saw him as an easy target; a *bona fide* scapegoat.[9]

42.     On June 6, 2021, Defendant Lyell made false remarks about the Sills Plaintiffs in a recorded interview. In that interview with Ron Henzel and Don Veinot of Midwest Outreach, Defendant Lyell stated that Plaintiff Sills had threatened her, possibly broke into her home, and tracked her phone. She described the police allegedly waiting for Plaintiff Sills. She remarked that Plaintiff Sills was "a cult leader." She reported that Plaintiff Sills threatened that "he would destroy [her]" and that he had a gun. Defendant Lyell stated that her relationship with Plaintiff Sills "was never consensual" and "was always forced" and confirmed that she "always resisted." She attributed physical injury to Plaintiff Sills, stating that she had "bruises on [her] arms." She purported that a church official said, "I've never had someone who's been beaten show up and ask

---

[8] Litton was the President of SBC during the 2021 through 2022 term.
[9] *See Leviticus* 16:21–22.

for church discipline like what are you trying." These statements were, and remain, false and malicious.

43.     Defendant Lyell further stated that Plaintiff Sills "sexually abused me beginning with two occasions on a mission trip in 2004, the second was on the plane on the way back and I was in a middle seat you mentioned it yeah then continuing and escalating for more than a decade" and "including the fact that I had verbally and physically resisted Dr. Sills both in the initial encounter and throughout all subsequent encounters." She stated that Mrs. Sills knew of purported abuse.

44.     Defendant Lyell further described in the interview that she "could very easily picture some 24-year-old Trinidadian young woman who would come up to him after hearing him preach being spiritually moved by something he said thanking him and then knowing him as I did being able to equally imagine how he would turn that into access to force himself upon her I wondered who would be there to help that Trinidadian young woman when he flew off to the next place. . ." Those statements were untrue, malicious, and intended to inflict harm on Plaintiffs.

45.     Defendant Lyell went on to explain that in relation to making the allegations public, "[her] case had been handled so well by SBC leaders and I am an SBC employee, so I felt Baptist Press was the only appropriate outlet." Defendant Lyell praised Defendant SBC at every opportunity.

46.     Plaintiffs contend this was a strategic public relations strategy in a concerted effort amongst Defendants to improve the public image of SBC at the expense of one of its ministers. The scapegoat was Plaintiff Sills. This claim of abuse was made by Defendant SBC's highest-level female senior executive, for which the SBC, through its subsidiaries, agents, and employees, could control a response in coordination with Defendant Lyell. The SBC would improve its reputation,

13

which was significantly tarnished after many years of reported cover-ups, and Defendant Lyell would be (and was in fact) paid a confidential amount of money.

47.    The absence of any credible investigation into abuse allegations was obvious. Defendants SBC, Lifeway, Lyell, Geiger, the Executive Committee, McLaurin, Slade, Seminary, and Mohler, including Litton, coordinated, and decided to retain an investigator.

48.    At the 2021 SBC Annual Meeting in Anaheim, California, a conflict of interest was observed among various fractions of the SBC. Essentially, it was observed that Defendant Executive Committee was overseeing the hiring of an investigator, namely, Defendant Guidepost, to investigate itself. Observers noted that such an arrangement provided the Executive Committee with control over the investigation's outcome.

49.    A motion[10] was made and approved to transfer oversight from Defendant Executive Committee investigating itself to a new committee with members hand-picked by Litton. On July 9, 2021, SBC President, Ed Litton, chose his seven-member committee to purportedly oversee the sex abuse investigation concerning the Executive Committee. There was also formed a Committee on Cooperation[11] which served as the exclusive go-between amongst the Executive Committee, the seven-member "task force," and Guidepost. The Committee on Cooperation was composed of none other than five Executive Committee members, including Litton. Upon information and belief, Litton directed and approved the narrative against Plaintiffs, when as SBC President, he knew or should have known that the phony "investigation" he designed would not, and could not, yield the truth concerning Plaintiff Sills.

---

[10] *See* Erin Roach, *Motion Spurs Task Force to Oversee EC Review*, Baptist Press (June 16, 2021), https://www.baptistpress.com/resource-library/news/motion-spurs-task-force-to-oversee-ec-review/.
[11] *See* Scott Barkley, *Committee on Cooperation Named in Conjunction with Guidepost Contract*, Baptist Press (Oct. 14, 2021), https://www.baptistpress.com/resource-library/news/committee-on-cooperation-named-in-conjunction-with-guidepost-contract/.

14

50.     In September 2021, nearly three months after Defendant Lyell's bombastic interview, and more than three years after Defendant Lyell revealed the affair, Defendants hired SPI and Guidepost to investigate the SBC's sexual abuse crisis, with particular focus on and disproportionate page space dedicated to Defendant Lyell's statements against Plaintiff Sills.

51.     Curiously, SPI or Guidepost never sought statements from or interviews with the Sills Plaintiffs, or their pastor. Neither of the Plaintiffs was interviewed by Defendants SPI or Guidepost. Plaintiffs were never contacted by any police department or investigator, despite a suggestion that actual charges had been declined by Defendant Lyell. The Report (as it related to Plaintiff Sills) primarily relied on statements from Defendants Mohler and Lyell as well as purported SBC documents.

52.     On February 22, 2022, in anticipation of the Report, Defendants Executive Committee, McLaurin and Slade published a public statement that offered an apology to Defendant Lyell. At that time, Defendants SBC, Executive Committee, McLaurin, and Slade paid Defendant Lyell an undisclosed amount, purportedly in lieu of Lyell filing a defamation and libel suit.

53.     In that statement issued by Defendants McLaurin and Slade, Defendants characterized the Baptist Press' reporting as "inaccurate," meaning, the reportedly consensual affair was now not consensual, and the relationship between the SBC Senior Executive, Defendant Jennifer Lyell, and the SBC minister, Plaintiff Sills, was deemed abusive and forced. Defendants Executive Committee, McLaurin and Slade noted the Executive Committee's failure to clarify that Defendant Lyell's allegations of "nonconsensual sexual abuse was investigated and unequivocally corroborated by the SBC entities with authority over (Lyell) and her abuser." Plaintiffs were deliberately omitted from Defendants' investigatory process.

54.     Defendants also "tweeted" their misleading statements to the detriment of Plaintiffs, as follows:



55.     Re-introducing and reinforcing information about Plaintiff Sills that she knew to be false, Defendant Lyell promptly responded, as follows:



56.     Defendants' suggestion of unequivocal corroboration was untrue and reinforced the unchecked false narrative that had been repeatedly reported since 2021. Defendants' statement promoted that Plaintiff Sills was a violent sexual abuser who engaged Defendant Lyell without her consent. Defendants knew, or should have known, that was not truthful.

57.     On May 22, 2022, Defendants SPI and Guidepost published the Report, stating:

> [Lyell] told Dr. Mohler and her boss at Lifeway that any sexual contact she had with Professor Sills had been nonconsensual and involved violence, threats of violence against her and others, and coercion. Dr. Mohler clearly understood not only the nature of Ms. Lyell's disclosure but expressly stated that he believed Ms. Lyell and stated that that it was his opinion that she had been abused by Professor Sills.

The passage included footnotes (210, 211) to make it appear legitimately supported by evidence, however, the footnotes did not send a reader to any source of evidence. Instead, the cited authority

merely sent a reader to Defendant Guidepost's website login, where only credentialed employees could log in.

58. Defendants SPI and Guidepost further stated: "Rather than publishing Ms. Lyell's corroborated account as BP staff had originally drafted it, the account was changed to read as if Ms. Lyell was consensually involved with her alleged abuser. The article as published reported that Ms. Lyell alleged that she had a 'morally inappropriate relationship' with her former seminary professor, making it appear that she engaged in a consensual sexual relationship with him." *See* the Report at 6. The statement was intended to mislead Defendants, and each of them, knew it was false.

59. On May 22, 2022, Defendant Mohler stated: "From the beginning we were prepared and determined to assist the investigators in any way possible and to support their work. What happened to Jennifer [Lyell] was sexual abuse, unquestionably."[12]

60. Defendants SPI and Guidepost, in concert with Defendants SBC, Lifeway, Lyell, Geiger, Executive Committee, Barber, McLaurin, Slade, Seminary, and Mohler, including Litton, deliberately published the unsubstantiated and malicious claim that "any sexual contact she had with her abuser was nonconsensual and involved violence, threats of violence against her and others, and coercion." *See* the Report at 81. Defendants published links and redirected readers to the links for various articles in which Defendant Lyell publicly made untrue statements and/or published the false narrative and statements identified through this complaint. The Report published statements that were not true and were not substantiated with any meaningful evidence or due process associated with reputable investigatory processes.

---

[12] *See* https://www.nbcnews.com/news/us-news/southern-baptist-members-detail-grooming-sexual-misconduct-clergy-new-rcna30081 (last visited May 10, 2023).

18

61.     Defendants did not apply and, in fact, abandoned the well-established principals of independent investigation, excluding notice to Plaintiffs, forbidding them an opportunity to be heard, and avoiding an impartial tribunal, instead merely relying on the original unchecked misinformation propagated by Defendants Lyell, Mohler, SBC, Lifeway, Geiger, Executive Committee, Barber, McLaurin, Slade, and Seminary, including Litton.

62.     Defendants SPI and Guidepost perpetuated a false narrative in the Report, in exchange for payment, and in concert with Defendants SBC, Lifeway, Lyell, Geiger, Executive Committee, Barber, McLaurin, Slade, Seminary, and Mohler, including Litton. The Report, published in May 2022, redirected its several hundred thousand readers to prior false statements and reported conclusions that were not true.

63.     Outrageously, Defendants published on page 169 of their "List of Abusers" a photo of Plaintiff Sills, styled as a "mug shot" alongside which Defendants labeled Plaintiff Sills as an abuser, despite no criminal investigation, no criminal charges and no due process. Notably, very few of the individuals listed in the 200+ page listing have a photo entry. Indeed, the few "mug shot" style photos primarily accompany the listings for individuals lawfully convicted of heinous crimes. Defendants nevertheless included a photo and listing for Plaintiff Sills, a man who was never charged, never convicted, and never even interviewed. Defendants published that Plaintiff Sills was fired for sexually abusing Defendant Lyell (whose name is redacted) for 12 years. The published information is false.

64.     Defendants SPI and Guidepost understood their complicit role in Defendants' public relations plan, and at all relevant times acted as agents of Defendants SBC, Executive Committee and Lyell. Notably, Defendants included language in their agreement that Defendants SBC and Executive Committee would indemnify Guidepost under a variety of circumstances, and

19

under no circumstance would Guidepost be liable to Defendants SBC or Executive Committee for its work in relation to the investigation.[13] In other words, the risk to Defendants SPI and Guidepost for failing to implement the well-established principals of independent investigation was eliminated. Defendants SPI and Guidepost were not independent and were merely an extension of Defendants SBC, Executive Committee, Lyell, and Mohler.

65. On June 14, 2022, Defendant Lyell published a statement asserting that she has "told the truth through this entire ordeal."[14] As set forth herein, the statements Ms. Lyell has broadcast and published about the Sills Plaintiffs are not truthful.

66. Defendant Lyell resurrected her prior false statements concerning the purported police investigation, when she wrote and published the following:

> I first contacted the Louisville Police Department, through their Sex Victims Unit, in May 2018, after I had disclosed to the seminary. I told Ms. Basham what I had told Baptist Press in 2019, that I had gotten her voicemail, so hung up initially, but then later called back and left a message. However, I never received a return call from the unit.[15]

67. On June 17, 2021, Defendant Lyell wrote to Ron Henzel, the following:

> My thinking was I could just verbally work through your article and clarify/add the information you didn't have or was inaccurate as well as answer the broader questions you asked when the information you had didn't reconcile for you. I'm also fine to answer any questions you or the other gentleman has to ensure you have clarity and believe me. I have never been unwilling to be questioned when making allegations that aren't only moral, but are also criminal…[16]

---

[13] *See* Sept. 1, 2021 Guidepost Engagement Letter, attached hereto as Exhibit A, at Sections 5.1, 7.2 and 8.1.
[14] Statement of Jennifer Lyell Regarding The Daily Wire's Publication on June 14, 2022 ("Lyell June 14th Statement"), at ¶ 2, *available at* https://static1.squarespace.com/static/5c82e375797f744833bf0962/t/62b621d27c446e4b4157565d/16561 03378732/LyellstatementonDailyWire.pdf.
[15] *Id.* at ¶ 3.
[16] Ron Hanzel, I Don't Know What to Believe Anymore, MIDWEST CHRISTIAN OUTREACH (Jul. 14, 2022), *available at* https://midwestoutreach.org/2022/07/14/i-dont-know-what-to-believe-anymore/.

68.     The implication of Defendant Lyell's statement was that Plaintiff Sills had acted criminally. That was untrue. A reasonable inference was also that Defendant Lyell intended to advance her false narrative by taking a hand in the actual writing of an article by various faith-based media outlets, including Ron Henzel and Don Veinot of Midwest Outreach and Religion News Foundation ("RNF") and Religion News Services ("RNS"), each of whom had actively coordinated with Defendant Lyell for the purpose of publishing her malicious allegations against Plaintiffs.

69.     On June 14, 2022, Defendant Lyell also wrote that "the Guidepost report is equally clear that while their conjecture was not rooted in any material information provided to them, all the material provided to the SBC's news reporting agency on the matter was from individuals in positions of denominational and professional authority over the matter who had been directly involved in questioning both me and the professor."[17] That was not accurate and was intended to mislead.

70.     In that same published statement, Defendant Lyell wrote that "Guidepost did not need to interview the professor's pastor or my former boss to assert in the report that those individuals had corroborated the abuse allegations to the EC because the EC's own records—and public statements—reveal it." *Id.* Pointedly, Defendant Lyell affirmatively defended her co-conspirators in furtherance of the defamation of the Sills Plaintiffs, two casualties of a public relations campaign gone awry.

71.     On or about July 8, 2022, Defendants Seminary and Mohler, published the following statement:

---

[17] *See* Lyell June 14th Statement at ¶ 4.

President

The Southern Baptist Theological Seminary

July 8, 2022

In 2018, Jennifer Lyell came to me with an
accusation of sexual abuse by David Sills.
We followed appropriate processes and the
accusation of abuse was confirmed, as we
indicated publicly and have subsequently
confirmed. Statements directly made by
Sills in the course of our confrontation
clearly confirmed the allegations of abuse.

The statement falsely accuses Plaintiff Sills of criminal conduct, while at the same time denying

him due process. Significantly, Defendants Seminary and Mohler purport to have taken statements

from Plaintiff Sills as a basis for the accusations made during the time between 2018 and 2022.

72.     On July 7, 2022, Defendant Barber published a sequence of statements concerning

the Report and its findings concerning Plaintiff Sills, including in pertinent part:



73.     The self-serving statements by Defendants SBC, Barber, Seminary and Mohler were an effort to add authenticity and legitimacy to the Report that leveled unsubstantiated accusations and conclusions against Plaintiff Sills.

74.     The long history of Defendants' defamatory statements has created extensive mental anguish for Plaintiffs. Defendants' May, June, and July 2022 statements are but the latest in a series of false and harmful statements about Plaintiffs.

75.     At no time have Defendants, any of them, taken a break from persistent spoken and published statements made against Plaintiffs. The Report published on May 22, 2022, intensified the controversy surrounding the allegations and the flimsy investigation, while also resurrecting and placing into circulation, anew, the malicious statements made by Defendants against Plaintiffs (and previously set forth herein).

76.     The comments and statements made by Defendants as recently as May, June, and July 2022 (and as previously set forth herein) did not occur in isolation. Rather, the statements were a continuation and elaboration of a yearslong campaign to falsely attack the honesty of David Sills and Mary Sills, casting them as violent criminals.

77.     By making renewed accusations about the Plaintiffs in 2022, Defendants breathed new life into this conspiracy and caused intense emotional anguish and despair to Plaintiffs. For that reason, Plaintiffs bring this suit against Defendants.

## CAUSES OF ACTION

## COUNT I - DEFAMATION AND DEFAMATION *PER SE*

78.     All previous allegations are incorporated by reference.

79.     Plaintiffs are private individuals and are neither public officials nor public figures.

80.     Defendants' broadcasts and publications described above were false, both in their particular facts and in the main point, essence, or gist in the context in which they were made.

23

81. The statements and publications of May 22, 2022; June 14, 2022; June 18, 2022; and July 8, 2022, while defamatory in their own right, were also continuations and elaborations of an underlying defamatory assertion which Defendants have advanced since 2019, namely that the Plaintiffs have participated in a pattern and history of aggressive and violent criminal activity.

82. In viewing the aforesaid broadcasts and publications, a reasonable member of the public would be justified in inferring that the statements implicated Plaintiffs.

83. In viewing the aforesaid broadcasts and publications, individuals who know and were acquainted with Plaintiffs would understand from viewing the broadcasts that the allegedly defamatory matter implicated Plaintiffs.

84. Defendants' statements in 2022 were also defamatory because they are reasonably susceptible to a defamatory meaning by innuendo. A reasonable person, reviewing the statements in question, could conclude Plaintiffs were being accused of engaging in criminal or illegal activity. In context, the gist of the statements could be construed as defamatory to Plaintiffs by an average member of the general public.

85. Plaintiffs demanded a full and fair retraction of Defendants' defamatory statements at least five (5) days prior to commencing this action, and Defendants failed or refused to comply.

86. Defendants' defamatory broadcasts and publications were designed to harm Plaintiffs' reputations and subject the Plaintiffs to public contempt, disgrace, ridicule, or attack. Plaintiffs' standing in the community and their public reputations for character has been injured by the inaccurate statements set out herein.

87. Defendants acted with malice. Defendants' defamatory statements were knowingly false or made with reckless disregard for the truth or falsity of the statements at the time the statements were made.

88. Defendants' defamatory publications were not privileged.

89. Defendants' defamatory statements constitute defamation *per se*. The harmful nature of the defamatory statements is self-evident. The defamatory statements implicate the Plaintiffs in heinous criminal conduct. False implications of criminal conduct are the classic example of defamation *per se*.

90. Defendants publicly disseminated the defamatory publications to an enormous audience causing significant damages to Plaintiffs.

91. Defendants' defamatory publications are inaccurate statements which have injured Plaintiffs' public reputations for character and standing in the community, and they have exposed Plaintiffs to public and private hatred, contempt, and ridicule. Plaintiffs' loss of standing and reputation has caused Plaintiffs a substantial loss of income and personal relationships. The defamatory publications have significantly interfered with Plaintiffs' rightful choice of religious expression.

92. In light of their prior experience with these kinds of reckless statements, Defendants knew that their publications could cause Plaintiffs to suffer harassment and potential violence.

93. Defendants' defamatory publications have and will continue to cause harm to Plaintiffs. Due to Defendants' conduct, Plaintiffs have suffered and continue to suffer substantial damages in an amount to be proven at trial.

## COUNT II – CONSPIRACY

94. All previous allegations are incorporated by reference.

95. At all relevant times, including at and during the time of engaging Defendants SPI and Guidepost, Defendants acted together, as a cabal, to accomplish their campaign of defamation. Defendants had a meeting of the minds on the object or course of action underlying their pattern of recklessly defamatory broadcasts.

96.     As a result of this meeting of the minds, Defendants collectively committed the unlawful overt acts detailed above.

97.     Defendants are jointly and severally liable for the injuries Plaintiffs suffered due to Defendants' wrongful actions.

## COUNT III – NEGLIGENCE, GROSS NEGLIGENCE, AND WANTONNESS

98.     All previous allegations are incorporated by reference as if fully set forth herein.

99.     When employees of Defendants SBC, Executive Committee, Lifeway, and Seminary acted in the manner described in this Petition, they did so as agents of Defendants and within the scope of their authority from the SBC.

100.    When employees of Defendant Guidepost acted in the manner described in this complaint, they did so as agents of Defendants and within the scope of their authority from Defendants SBC, SPI, and Guidepost.

101.    Defendants are liable for the damages proximately caused by the conduct of employees and agents pursuant to the doctrine of *respondeat superior*.

102.    At all relevant times, Plaintiffs were owed a duty of care by their church and employer, namely, Defendants SBC, Executive Committee, Lifeway, and Seminary. Defendants were obligated to refrain from treating Plaintiffs unfairly or maliciously and to refrain from making false statements about either Plaintiff.

103.    At all relevant times, Plaintiffs were owed a duty of care by Defendants SPI and Guidepost, individually as agents of Defendants SBC and Executive Committee.

104.    Defendants negligently and with gross negligence and malice breached their duties owed, including in their use of unorthodox and non-independent investigation methods, circumvention of due process concerning the allegations, statements, and final conclusions in the Report, and the repeated and persistent restatement of untrue statements about Plaintiffs.

26

105. When employees of Defendants SBC, Executive Committee, Lifeway, and Seminary acted in the manner described in this Complaint, they did so as agents of Defendants and within the scope of their authority from the SBC.

106. When employees of Defendant Guidepost acted in the manner described in this Complaint, they did so as agents of Defendants and within the scope of their authority from the SBC, SPI, and Guidepost.

107. Defendants are liable for the damages proximately caused by the conduct of employees and agents pursuant to the doctrine of *respondeat superior*.

108. At all relevant times, Plaintiffs were owed a duty of care by their church and employer, namely, Defendants SBC, Executive Committee, Lifeway, and Seminary. Defendants were obligated to refrain from treating unfairly or maliciously Plaintiffs David and Mary Sills, and to refrain from making false statements about either Plaintiff.

109. At all relevant times, Plaintiffs were owed a duty of care by Defendants SPI and Guidepost, individually as agents of Defendants SBC and Executive Committee.

110. Defendants breached their duties owed, including in their use of unorthodox and non-independent investigation methods, circumvention of due process concerning the allegations, statements, and final conclusions in the Report and the repeated and persistent restatement of untrue statements about Plaintiffs.

111. At all relevant times, Defendants acted with a heedless and reckless disregard for the rights of Plaintiffs, with the consciousness that their acts would result in injury to Plaintiffs. Defendants consciously and deliberately engaged in oppression, fraud, malice, or willful and wanton disregard to Plaintiffs.

27

112.    At all relevant times, Defendants were aware that harm would likely or probably result to Plaintiffs, but Defendants persisted in their aforesaid misconduct, causing the damages complained of herein. This misconduct by Defendants has libeled Plaintiffs.

### COUNT V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

113.    All previous allegations are incorporated by reference as if fully set forth herein.

114.    Defendants acted with malice. Defendants' defamatory statements were knowingly false or made with reckless disregard for the truth or falsity of the statements at the time the statements were made.

115.    The accusations made by Defendants and the manner in which Defendants coordinated and persistently repeated unsubstantiated claims of criminal activity, violent behavior, and sexual abuse, thereby destabilizing legitimate reporting and investigatory mechanisms, was so outrageous that it is not (and cannot be) tolerated by civilized society.

116.    Defendants' acts and omissions resulted in serious mental injury to the Plaintiffs.

### DAMAGES

117.    Plaintiffs have suffered general and special damages, including a severe degree of mental stress and anguish which have disrupted their daily routine and caused a high degree of psychological pain.

118.    Plaintiffs' standing in the community and their public reputations for character have been injured by Defendants' inaccurate statements, both up to the present and into the future.

119.    Plaintiffs have suffered lost income due to their loss of standing and reputation.

120.    Plaintiffs have been shunned from their church and denied access to their lifelong religion.

### PRAYER FOR RELIEF

Plaintiffs, David Sills and Mary Sills, respectfully request that this Court:

28

(a)    Award all actual, general, special, incidental, statutory, punitive, and consequential damages and/or restitution to which Plaintiffs are entitled;

(b)    Award all nominal damages and a judgment clearing their names;

(c)    Award exemplary damages because Defendants acted with malice;

(d)    Award pre-judgment and post-judgment interest as provided by law;

(e)    Grant appropriate equitable relief, including, without limitation, an order requiring Defendants to: (1) issue public retractions and public apologies; and (2) removal of the Sills from the Guidepost SBC Sex Abuser Database and Report;

(f)    Award reasonable attorneys' fees and costs as permitted by law; and

(g)    Grant such other and further relief as the Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial for all claims so triable. Plaintiffs also reserve the right to amend their Complaint following the taking of discovery in this case.

Dated: May 11, 2023.

Respectfully submitted,


By: /s/ *Gary E. Brewer*
    Gary E. Brewer, Attorney for Plaintiffs
    TN BPR#: 000942

OF COUNSEL:

BREWER AND TERRY, P.C.
Attorneys at Law
1702 W. Andrew Johnson Hwy.
P.O. Box 2046
Morristown, TN 37816
(423) 587-2730

John W. ("Don") Barrett (to be admitted *pro hac vice*)
Katherine Barrett Riley (TN BPR#: 021155)
BARRETT LAW GROUP, P.A.
P.O. Box 927
404 Court Square North
Lexington, MS 39095

29

Ph: (662) 834-2488
Fax: (662) 834-2628
dbarrett@barrettlawgroup.com
kbriley@barrettlawgroup.com

Shannon M. McNulty (to be admitted *pro hac vice*)
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle Street, 36th Floor
Chicago, Illinois 60602
(312) 899-9090
(312) 251-1160 Facsimile
SMM@cliffordlaw.com