# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| **MICHAEL DAVID SILLS and MARY SILLS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 3:23-cv-00478** |
| | ) | **JUDGE WILLIAM L. CAMPBELL, JR.** |
| **v.** | ) | **Magistrate Judge Jeffery S. Frensley** |
| | ) | |
| **SOUTHERN BAPTIST CONVENTION, *et al.*,** | ) | **JURY DEMAND** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANT LIFEWAY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS ALL OF PLAINTIFFS' CLAIMS AGAINST IT

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................... iv

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................... 1

    A.    Lyell and David Sills had an inappropriate relationship.................................. 1

    B.    Lyell spoke publicly about the relationship. ................................................... 2

    C.    The Executive Committee decided to hire Solutionpoint International
        and Guidepost to investigate sexual abuse in the SBC. ................................... 3

    D.    The Sills sued Lyell, the SBC, and associated individuals and entities............ 4

LEGAL STANDARD...................................................................................................... 4

ARGUMENT .................................................................................................................. 5

I.    THE SILLS' CLAIMS ARE TIME BARRED......................................................... 5

II.    ALL OF THE SILLS' CLAIMS FAIL BECAUSE THEY DO NOT
     DISTINGUISH BETWEEN LIFEWAY AND ITS CODEFENDANTS.................... 7

III.    THE SILLS' CLAIMS ALSO FAIL FOR CLAIM-SPECIFIC REASONS. ............... 8

    A.    The Sills fail to state a defamation claim........................................................ 8

    B.    The Sills fail to state negligence claims against Lifeway. .............................. 11

        1.    The Sills fail to sufficiently allege negligence, gross
           negligence, or wantonness against Lifeway because they fail to
           plausibly plead the duty and injury elements of a negligence
           claim.......................................................................................................... 12

        2.    The Sills also fail to plausibly plead a claim based on
           *respondeat superior* because they do not allege Lyell or Geiger
           were acting within the scope of their employment for Lifeway. ........ 16

    C.    The Sills fail to state an intentional infliction of emotional distress
        claim against Lifeway because the alleged conduct was not outrageous
        and was not alleged to cause sufficiently severe mental harm. ...................... 18

D.    The Sills fail to state a conspiracy claim against Lifeway because they do not plausibly plead a common design between Lifeway and others or an overt act by Lifeway. ............................................................ 21

E.    The Sills fail to plausibly plead entitlement to punitive damages. ................. 24

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaron v. Durrani*,
   Nos. 1:13-cv-202, 1:13-cv-214, 2014 WL 996471 (S.D. Ohio Mar. 13, 2014) ...................7, 8

*AccuImage Diagnostics Corp v. Terarecon, Inc.*,
   260 F. Supp. 2d 941 (N.D. Cal. 2003) ......................................................................................23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2007)...................................................................................................................4, 7

*Atria v. Vanderbilt Univ.*,
   142 F. App'x 246 (6th Cir. 2005) ...............................................................................................14

*B&L Mgmt. Grp., LLC v. Adair*,
   No. 17-2197, 2019 WL 3459244 (W.D. Tenn. July 31, 2019)...............................................22

*Barmapov v. Amuial*,
   No. 9:18-CV-80390-WPD, 2019 WL 11639545 (S.D. Fla. May 24, 2019)..........................23

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................................................7, 22

*Berger on behalf of Income Opportunity Realty Invs., Inc. v. Transcon. Realty
Invs., Inc.*,
   No. 3:19-CV-00286-E, 2020 WL 1528994 (N.D. Tex. Mar. 31, 2020) .................................23

*Billiter v. SP Plus Corp.*,
   329 F. Supp. 3d 459 (M.D. Tenn. 2018)...............................................................................19, 20

*Borg v. Chase Manhattan Bank USA, N.A.*,
   247 F. App'x 627 (6th Cir. 2007) ...........................................................................................16, 17

*Cabinets to Go, LLC v. Qingdao Haiyan Real Estate Grp. Co.*,
   605 F. Supp. 3d 1051 (M.D. Tenn. June 6, 2022) .....................................................................7

*City of Pontiac Police & Fire Ret. Sys. v. Jamison*,
   No. 3:20-cv-00874, 2022 WL 884618 (M.D. Tenn. Mar. 24, 2022).......................................7

*Clark v. Viacom Int'l, Inc.*,
   617 F. App'x 495 (6th Cir. 2015) ..............................................................................................10

*Clark v. Viacom Int'l, Inc.*,
   No. 3:12-0675, 2014 WL 1934028 (M.D. Tenn. 2014).............................................................5

iv

*Coln v. City of Savannah,*
966 S.W.2d 34 (Tenn. 1998)................................................................................14

*Cossairt v. Jarrett Builders, Inc.,*
292 F. Supp. 3d 779 (M.D. Tenn. 2018).............................................................19

*Creech v. Addington,*
281 S.W.3d 363 (Tenn. 2009)..............................................................................18

*Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville,*
154 S.W.3d 22 (Tenn. 2005)................................................................................12

*Doe v. Andrews,*
275 F. Supp. 3d 880 (M.D. Tenn. 2017).............................................................15

*Doe v. Belmont Univ.,*
334 F. Supp. 3d 877 (M.D. Tenn. 2018).......................................................18, 20

*Dongguk Univ. v. Yale University,*
734 F.3d 113 (2d Cir. 2013).........................................................................10, 11

*Eberhard Architects, LLC v. Bogart Architecture, Inc.,*
No. 1:14 CV 1185, 2014 WL 4354561 (N.D. Ohio Aug. 29, 2014) ...................7, 8

*Faeth v. Regions Bank,*
No. 3:12-00162, 2012 WL 5989362 (M.D. Tenn. Nov. 29, 2012), *R&R
adopted by* 2013 WL 146180 (Jan. 14, 2013).......................................................12

*Finley v. Kelly,*
384 F. Supp.3d 898 (M.D. Tenn. 2019)..........................................................20, 21

*Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC,*
461 F. Supp. 2d 629 (M.D. Tenn. 2006)..........................................................21, 22

*Gann v. Kolfage,*
No. 3:14-1609, 2016 WL 6127722 (M.D. Tenn. Sept. 30, 2016), *R&R adopted
by* 2016 WL 6125420 (Oct. 20, 2016) ...................................................................21

*Griffith Motors, Inc. v. Parker,*
633 S.W.2d 319 (Tenn. Ct. App. 1982)................................................................11

*Grogan v. Uggla,*
535 S.W.3d 864 (Tenn. 2017)..............................................................................14

*Hall v. Crenshaw,*
449 S.W.3d 463 (Tenn. Ct. App. 2014)....................................................10, 11, 15

*Hinkle v. Delavan Indus., Inc.*,
   24 F. Supp. 2d 819 (W.D. Tenn. 1998)...........................................................................13, 14

*Hodges v. S.C. Toof & Co.*,
   833 S.W.2d 896 (Tenn. 1992)...........................................................................................25

*Holbrook v. Harman Auto., Inc.*,
   58 F.3d 222 (6th Cir. 1995) ......................................................................................... *passim*

*Hudik v. Fox News Network, LLC*,
   512 F. Supp. 3d 816 (M.D. Tenn. 2021)........................................................................9, 22

*Ingram v. Tenn. Dep't of Health*,
   No. 3:17-cv-01565, 2021 WL 3490025 (M.D. Tenn. Aug. 9, 2021), *R&R*
   *adopted by* 2021 WL 6066450 (M.D. Tenn. Dec. 22, 2021)....................................................9

*JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC*,
   615 F. Supp.3d 750 (M.D. Tenn. 2022)........................................................................22, 23

*Kerrigan v. ViSalus, Inc.*,
   112 F. Supp. 3d 580 (E.D. Mich. 2015)........................................................................23, 24

*Lawrence v. Grinde*,
   534 N.W.2d 414 (Iowa 1995) ...........................................................................................15

*Lawson v. Hawkins County*,
   661 S.W.3d 54 (Tenn. 2023)..............................................................................................12

*Lokhova v. Halper*,
   995 F.3d 134 (4th Cir. 2021) .............................................................................................10

*MacDermid v. Discover Fin. Servs.*,
   488 F.3d 721 (6th Cir. 2007) .......................................................................................18, 19

*Malmquist v. Hearst Corp.*,
   No. 2:09-cv-2416-JPM-CGC, 2010 WL 1257800 (W.D. Tenn. Mar. 26, 2010) ..............19, 20

*McCall v. Wilder*,
   913 S.W.2d 150 (Tenn. 1995).............................................................................................14

*Menuskin v. Williams*,
   145 F.3d 755 (6th Cir. 1998) ..............................................................................................13

*Miller v. City of Columbus*,
   52 F. App'x 672, 2002 WL 31770382 (6th Cir. 2002) ...........................................................9

*Nolan v. Detroit Edison Co.*,
   991 F.3d 697 (6th Cir. 2021) ........................................................................................5, 6, 10

*Preez v. Benchmark Maid,*
    LLC, No. 3:22-cv-00144, 2022 WL 16842054 (M.D. Tenn. Nov. 9, 2022) ........................13

*Rhodes v. R & L Carriers, Inc.,*
    491 F. App'x 579 (6th Cir. 2012) ........................................................................................7

*Rogers v. Louisville Land Co.,*
    367 S.W.3d 196 (Tenn. 2012)........................................................................................20, 21

*Smartt v. NHC Healthcare/McMinnville, LLC,*
    No. M2007-02026-COA-R3-CV, 2009 WL 482475 (Tenn. Ct. App. Feb. 24,
    2009), *perm. app. denied* (Tenn. Mar. 20, 2011)............................................................13, 17

*Theile v. Michigan,*
    891 F.3d 240 (6th Cir. 2018) ..............................................................................................5

*United Data Techs., Inc. v. Byers,*
    No. 3:16-cv-00139, 2018 WL 11411600 (M.D. Tenn. June 29, 2018) ...........................21, 24

*Wallace v. Leidos Innovations Corp.,*
    805 F. App'x 389 (6th Cir. 2020) ...........................................................................8, 16, 18

*Ward v. Knox Cnty. Bd. of Ed.,*
    869 F. Supp. 2d 860 (E.D. Tenn. 2012) ...........................................................................5, 6

*Webster v. Sontara Old Hickory, Inc.,*
    No. 3:20-cv-00685, 2021 WL 1857344 (M.D. Tenn. May 10, 2021) ......................................6

*Wright v. Citizen's Bank of E. Tenn.,*
    640 F. App'x 401 (6th Cir. 2016) ........................................................................................25

*Z.J. v. Vanderbilt Univ.,*
    355 F. Supp. 3d 646 (M.D. Tenn. 2018)......................................................................... *passim*

**Statutes**

Tenn. Code Ann. § 28-3-103 ...................................................................................................5

Tenn. Code Ann. § 28-3-104(a)(1) .......................................................................................5, 6

**Other Authorities**

136 Am. Jur. Proof of Facts 3d 175, Defense considerations-Other defenses § 10.....................19

Fed. R. Civ. P. 8(a) .................................................................................................................4

Fed. R. Civ. P. 12(b)(6)....................................................................................................1, 4, 5

Restatement (Second) of Torts § 436A (1965) .......................................................................14

Restatement (Third) of Torts: Liab. For Econ. Harm § 1 (2020) ..................................................14

## INTRODUCTION

Lifeway Christian Resources of the Southern Baptist Convention ("Lifeway") is a Tennessee nonprofit corporation that publishes, distributes, and sells Christian books, literature, and music. Although associated with the Southern Baptist Convention ("SBC"), Lifeway is a self-funded entity governed by a separate board of trustees. Lifeway does not lead or direct the operations or policy decisions of the SBC or the SBC's Executive Committee (the "EC").

This case arises from the publicization of a relationship between Jennifer Lyell, who was at one time an employee of Lifeway, and David Sills, a former professor in the SBC. Lyell accused David Sills of sexually abusing her, and Lyell's allegations became part of a public report on sexual abuse within the SBC. David Sills and his wife, Mary Sills, have sued Lyell, the SBC, and other entities associated with them, including Lifeway, alleging defamation, negligence, intentional infliction of emotional distress, and conspiracy to defame. But all the Sills' claims against Lifeway are barred by the applicable statute of limitations. Moreover, even if they were not time barred, the Sills' claims fail because they do not allege any specific wrongdoing by Lifeway. Instead, the Sills attempt to hold Lifeway liable merely by association, and as a result, their allegations fail to state any claim against Lifeway. Additionally, the Sills' claims all fail because the Sills fail to plausibly plead at least one essential element of each claim.

## BACKGROUND

### A.      Lyell and David Sills had an inappropriate relationship.[1]

Defendant Jennifer Lyell was initially a co-worker of Plaintiff Michael David Sills ("David Sills") and then a seminarian at the Southern Baptist Theological Seminary (the "Seminary"), where David Sills was a professor. Compl. ¶¶ 14, 22, 25. After seminary, Lyell moved to Chicago

---

[1] Lifeway summarizes the allegations of the Complaint, which are assumed to be true only for the purposes of Lifeway's motion to dismiss based upon the standards of Rule 12(b)(6).

1

to work for Moody Publishers and then to Nashville to work as an editor and publisher in a vice president position at Lifeway, which is a subsidiary of the SBC. *Id.* ¶¶ 25, 35. During this period, Lyell and David Sills had a consensual, prurient relationship. *Id.* ¶¶ 2–8, 14.

### B. Lyell spoke publicly about the relationship.

The Sills allege that, "[i]n Spring 2018, Defendant Lyell confessed to Defendants Geiger, Lifeway, SBC, the Executive Committee, Seminary and Mohler, about her affair with Plaintiff Sills." *Id.* ¶ 35. According to the Sills, Geiger "initiat[ed] the disclosure and reporting by Defendant Lyell." *Id.* ¶ 36. The Complaint implies that Geiger was a senior vice-president of Lifeway at this time, as it alleges that he held that role (*id.* ¶ 35) and became senior pastor at an SBC church in California shortly thereafter (*id.* ¶ 36).

Lyell's revelation generated a backlash within the SBC community, which threatened Lyell's vice president position at Lifeway. *Id.* ¶ 35. According to the Sills, about a year after Lyell told Geiger and others about the relationship with David Sills, Lyell decided to rebrand it as a sexually and physically abusive relationship that Mary Sills facilitated. *Id.* ¶¶ 1, 38. While she was directly reporting to Geiger, Lifeway, the SBC, the EC, the Seminary, and Mohler, Lyell offered to write about the relationship for Baptist Press, the public relations arm of the EC, in March 2019. *Id.* ¶ 38. Lyell advocated for the piece internally as a way to document David Sills' abuse, while the SBC and the EC saw it as an opportunity to demonstrate the SBC's commitment to reform in the wake of alleged mishandling of sexual abuses cases. *Id.* ¶ 39. The Baptist Press piece ultimately described the Lyell-Sills relationship as consensual. *Id.* ¶ 53. David Sills admitted to an affair with Lyell and left the Seminary. *Id.* ¶ 40.

Lyell then participated in a series of interviews from June 2021 to June 2022, in which she made allegedly false statements about the Sills. *Id.* ¶ 33. In the first of these, Lyell stated that David Sills tracked her phone, threatened to "destroy [her]," and physically injured her. *Id.* ¶ 42. She

2

stated that her relationship with David Sills was "never consensual" and "always forced." *Id.* Lyell alleged that David Sills' sexual abuse of her started on a mission trip in 2004 and then continued and escalated for a decade. *Id.* ¶ 43. She also stated that Mary Sills knew about the abuse. *Id.* In subsequent interviews, Lyell asserted that she had always "told the truth" and suggested that David Sills had behaved criminally. *Id.* ¶¶ 65–68.

The Sills do not state whether Lyell was an employee of Lifeway at the time of these interviews. The Complaint acknowledges that Lyell was an employee at "one time," but it does not provide the dates of that employment. *Id.* ¶ 34.

### C. The Executive Committee decided to hire Solutionpoint International and Guidepost to investigate sexual abuse in the SBC.

The Sills allege that Defendants SBC, Lifeway, Lyell, Geiger, the EC, McLaurin, Slade, the Seminary, Mohler, and Litton coordinated and decided to retain an outside entity to investigate the SBC's sexual abuse crisis. *Id.* ¶¶ 47, 50. In September 2021, these Defendants hired Solutionpoint International, Inc. ("SPI") and Guidepost Solutions, LLC ("Guidepost") to investigate sexual abuse in the SBC, under the oversight of a seven-member "task force." *Id.* ¶¶ 49–50. According to the Sills, SPI and Guidepost did not act independently and were merely an extension of the SBC, the EC, Lyell, and Mohler. *Id.* ¶ 64.

SPI and Guidepost released a report on the results of their investigation in May 2022. *Id.* ¶¶ 50, 59. The report made allegedly false claims, including: that "any sexual contact [Lyell] had with her abuser [David Sills] was nonconsensual and involved violence, threats of violence against her and others, and coercion" (*id.* ¶ 60); that Lyell's Baptist Press article did not reflect her original draft, which told a story of abuse, not a consensual relationship (*id.* ¶ 58); and that David Sills was fired for sexually abusing Lyell for twelve years (*id.* ¶ 63). The report also included David Sills in a "List of Abusers." *Id.* Guidepost never sought statements from the Sills, and the report relied on

statements from Mohler and Lyell. *Id.* ¶ 51.

The Complaint alleges that the EC, McLaurin, Slade, Lyell, Mohler, the Seminary, and Barber made other allegedly false statements about the Lyell-Sills relationship in 2022. *Id.* ¶¶ 52–59, 69–72. For example, the Complaint alleges that Mohler was quoted in an NBC News article the day the report was released stating that Lyell had experienced "sexual abuse, unquestionably." *Id.* ¶ 59. Lifeway is not alleged to have made any of these statements, nor is Lyell alleged to have been an employee of Lifeway in 2022. The Complaint does allege generally that "Defendants published links and redirected readers to the links for various articles in which Defendant Lyell publicly made untrue statements." *Id.* ¶ 60. No particular publications by Lifeway are identified.

### D. The Sills sued Lyell, the SBC, and associated individuals and entities.

In May 2023, the Sills ("Plaintiffs") sued the SBC, Litton, Lifeway, Lyell, Geiger, the EC, Barber, McLaurin, Slade, the Seminary, Mohler, Solutionpoint, and Guidepost ("Defendants"). *See* Compl. at 1–3. Although the Sills brought claims for defamation, negligence, intentional infliction of emotional distress, and conspiracy to defame, the allegedly false statements of Lyell and others associated with the SBC, as well as those in the Guidepost Report, form the basis of all the Sills' claims. *See id.* ¶¶ 78–116. The Sills allege that these statements caused them mental stress and anguish, reputational injury, loss of income, and alienation from their church. *Id.* ¶¶ 117–20. They seek monetary damages, as well as equitable relief. *Id.* at 28–29.

### LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "sufficient fact[s], accepted as true, to state a claim to relief that is plausible on its face." *Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646, 658 (M.D. Tenn. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007)); *see also* Fed. R. Civ. P. 8(a). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Dismissal is appropriate both when plaintiffs allege insufficient facts to "'nudge their claims across the line from conceivable to plausible'" and "where the complaint, however factually detailed, fails to state a claim as a matter of law." *Z.J.*, 355 F. Supp. 3d at 658 (quoting *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013)). Although courts accept all well-pleaded facts alleged in complaints as true and construe allegations in the light most favorable to the plaintiff, courts do not "accept as true . . . legal conclusions or unwarranted factual inferences." *Theile v. Michigan*, 891 F.3d 240, 243 (6th Cir. 2018). In ruling on a Rule 12(b)(6) motion, courts may consider "documents attached to the complaint" and need not accept as true allegations that the documents contradict. *Nolan v. Detroit Edison Co.*, 991 F.3d 697, 707 (6th Cir. 2021).

## ARGUMENT

### I.    THE SILLS' CLAIMS ARE TIME BARRED.

The Sills allege that various Defendants made oral and written defamatory statements against them, starting in March 2019 and culminating in the publication of the Guidepost Report and related statements in late spring 2022. *See, e.g.*, Compl. ¶¶ 38, 57. These alleged statements form the basis of the Sills' defamation, negligence, intentional infliction of emotional distress ("IIED"), and conspiracy claims. *See id.* ¶¶ 79–93, 95–96, 104, 108, 110, 114–15. Under Tennessee law, a plaintiff alleging defamation or conspiracy to defame must bring her claim within one year of the written publication of an allegedly defamatory statement or within six months of the oral publication of such a statement. *See Ward v. Knox Cnty. Bd. of Ed.*, 869 F. Supp. 2d 860, 869 (E.D. Tenn. 2012); Tenn. Code Ann. § 28-3-104(a)(1) (written publication); Tenn. Code Ann. § 28-3-103 (oral publication); *Clark v. Viacom Int'l, Inc.*, No. 3:12-0675, 2014 WL 1934028, at *11 (M.D. Tenn. 2014) (conspiracy to defame). A plaintiff must precisely identify the allegedly defamatory statement and the date of its publication. *Ward*, 869 F. Supp. 2d at 869. A one-year limitations period also applies to negligence and IIED claims, which begins to accrue when the

injury occurs. *See Webster v. Sontara Old Hickory, Inc.*, No. 3:20-cv-00685, 2021 WL 1857344, at *2 (M.D. Tenn. May 10, 2021); Tenn. Code Ann. § 28-3-104(a)(1).

Here, as discussed further in the next section, the Sills do not identify any written or oral statements by Lifeway that were published within the applicable limitations period. The Sills allege generally that "Defendants," including Lifeway, participated in publishing the Guidepost Report on May 22, 2022 (Compl. ¶¶ 60, 75)—less than one year before the Complaint was filed. But the Guidepost engagement letter, which the Sills incorporated into the pleadings, makes clear that Lifeway did not retain Guidepost and thus was not involved in publishing its report. Compl. Ex. A, at 2. Thus, the Court need not accept as true any allegation that Lifeway made statements via the Guidepost Report. *Nolan*, 991 F.3d at 707.

The Sills also allege that "one time" Lifeway employee Jennifer Lyell made some allegedly defamatory statements that *may* have fallen within the limitations period. *See, e.g.*, Compl. ¶¶ 33, 34, 55, 65–66 (alleging statements in late May and June 2022). An employer may be liable for an authorized statement by an employee who was "responsible for the statement's publication." *See Holbrook v. Harman Auto., Inc.*, 58 F.3d 222, 225 (6th Cir. 1995). But the Sills do not allege that Lyell was working for Lifeway at the time she made her 2022 statements. And regardless, the Sills do not allege Lyell was responsible for any publication *by Lifeway*.

Thus, the Sills fail to identify a specific statement by Lifeway that falls within the limitations period, and their defamation and conspiracy to defame claims against Lifeway should be dismissed as time barred. *Ward*, 869 F. Supp. 2d at 869. Also, because the Sills' negligence and IIED claims against Lifeway are based on the same allegedly defamatory statements, and because the Sills allege that each statement caused "harm[]" at the time it was made (Compl. ¶ 74), the Sills' negligence and IIED claims should also be dismissed as time barred.

6

## II. ALL OF THE SILLS' CLAIMS FAIL BECAUSE THEY DO NOT DISTINGUISH BETWEEN LIFEWAY AND ITS CODEFENDANTS.

In the Complaint, the Sills make no effort to distinguish among the fourteen Defendants; each claim is asserted against all Defendants, and many of the factual allegations are asserted collectively. As explained below, this fails to satisfy the federal pleading standard.

To satisfy that standard, plaintiffs "must assert sufficient facts to provide the defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Rhodes v. R & L Carriers, Inc.*, 491 F. App'x 579, 582 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, plaintiffs must make defendant-specific allegations as to the wrongdoing alleged in support of each claim. *See, e.g.*, *City of Pontiac Police & Fire Ret. Sys. v. Jamison*, No. 3:20-cv-00874, 2022 WL 884618, at *18 (M.D. Tenn. Mar. 24, 2022) (holding "broad and conclusory allegations as to all Defendants" that failed to plead that "any one particular Director intentionally made any false statement" did not suffice under *Iqbal* and *Twombly*); *Cabinets to Go, LLC v. Qingdao Haiyan Real Estate Grp. Co.*, 605 F. Supp. 3d 1051, 1062 n.6 (M.D. Tenn. June 6, 2022) (similar, relying on *City of Pontiac*); *Eberhard Architects, LLC v. Bogart Architecture, Inc.*, No. 1:14 CV 1185, 2014 WL 4354561, at *3 (N.D. Ohio Aug. 29, 2014) (holding allegation that "each and every" named defendant "continued to use/infringe upon the Copyright" did not state a claim for copyright infringement against specific defendants). Failure to do so violates Rule 8 because it "fails to give the *individual* Defendants proper notice of what they have allegedly done wrong." *Aaron v. Durrani*, Nos. 1:13-cv-202, 1:13-cv-214, 2014 WL 996471, at *3 (S.D. Ohio Mar. 13, 2014) (citation and internal quotation marks omitted).

Here, the Sills never allege any specific actions by Lifeway in support of any of their claims. Instead, they refer only to conduct by Lifeway as one of a group of defendants. *See, e.g.*, Compl. ¶ 40 ("Defendants SBC, Lifeway, Lyell, Geiger, [EC], McLaurin, Slade, Seminary,

Mohler, and Litton, understood the value of making an example out of Plaintiff Sills"); *id.* ¶ 60 ("Defendants SPI and Guidepost, in concert with Defendants SBC, Lifeway, Lyell, Geiger, [EC], Barber, McLaurin, Slade, Seminary, and Mohler, including Litton, deliberately published [an] unsubstantiated and malicious claim[.]"). Or they reference actions taken by a person who was once an employee of Lifeway without adequately alleging that the person was employed by Lifeway and acting on its behalf at the relevant time. *See, e.g.*, *id.* ¶ 34.

Indeed, the only allegation remotely suggesting Lifeway's connection to any act alleged in the Complaint is Lyell's employment at Lifeway at "one time" and Geiger's alleged involvement in "initiating the disclosure and reporting by Defendant Lyell" while apparently employed by Lifeway. *Id.* ¶¶ 34, 35, 36. However, an employer can only be held liable for an employee's actions in the scope of employment. *Wallace v. Leidos Innovations Corp.*, 805 F. App'x 389, 392 (6th Cir. 2020). As explained further in Part III.B.2, below, the Complaint contains no factual allegations from which the Court could reasonably infer that either Lyell or Geiger was acting in their capacity as an employee of Lifeway when engaging in this conduct.

Plaintiffs' failure to allege specific wrongdoing by Lifeway is "fatal" to their claims because their allegations fail to provide Lifeway adequate notice of what it has allegedly done wrong. *Aaron*, 2014 WL 996471, at *3. Plaintiffs' claims against Lifeway should be dismissed on this ground alone. *See Eberhard*, 2014 WL 4354561, at *3.

## III. THE SILLS' CLAIMS ALSO FAIL FOR CLAIM-SPECIFIC REASONS.

### A. The Sills fail to state a defamation claim.

Even if they were not time barred, the Sills' defamation claims against Lifeway would fail on the merits. The Sills allege "Defendants," including Lifeway, defamed them and that Defendants' statements "constitute defamation *per se*." Compl. ¶¶ 78–93. To state a defamation claim under Tennessee law, a plaintiff must allege that "(1) a party published a statement; (2) with

knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Hudik v. Fox News Network, LLC*, 512 F. Supp. 3d 816, 825 (M.D. Tenn. 2021) (citation omitted). "Tennessee law does not provide a cause of action for defamation per se." *Ingram v. Tenn. Dep't of Health*, No. 3:17-cv-01565, 2021 WL 3490025, at *16 (M.D. Tenn. Aug. 9, 2021) (quoting *Memphis Pub. Co. v. Nichols*, 569 S.W.2d 412, 419 (Tenn. 1978)), *R&R adopted by* 2021 WL 6066450 (M.D. Tenn. Dec. 22, 2021). The Sills' defamation claims fail for two reasons.

*First*, "publication" is a threshold issue and "an essential element of a [defamation] action without which a complaint must be dismissed," *Z.J.*, 355 F. Supp. 3d at 686 (quoting *Woods v. Helmi*, 758 S.W.2d 219, 222–23 (Tenn. Ct. App. 1988)), but the Sills fail to plausibly plead a publication by Lifeway. Allegations of publication must specifically identify the "statement" allegedly published. *See Hudik*, 512 F. Supp. 3d at 825. In *Z.J.*, for example, this Court held that allegations of "publication to a third party" were too vague to satisfy the publication element of defamation because they did not allege who, how, when, or what information defendant published. 355 F. Supp. 3d at 688; *see also Miller v. City of Columbus*, 52 F. App'x 672, 2002 WL 31770382, at *2 (6th Cir. 2002) (affirming dismissal of defamation claim under Ohio law where complaint "contain[ed] no allegations which identi[fied] any specific defamatory utterance or publication, or the speaker, author, or recipients thereof").

Here, the Sills fail to allege that Lifeway published any particular statements. The only specific statements the Sills identify by date, context, and content are statements by other Defendants. *See* Compl. ¶¶ 33, 42–44, 52–55, 57–59, 65–72. By contrast, the only allegations against Lifeway are general. For example, the Sills allege that unspecified "Defendants" "repeated and circulated . . . false statements" (Compl., ¶ 12), and they allege that "Defendants" have not

"taken a break from persistent spoken and published statements made against Plaintiffs" (*id.* ¶ 75). The Sills also allege that SPI and Guidepost, "in concert with" all other Defendants, "deliberately published" in the Guidepost Report "the unsubstantiated and malicious claim" that David Sills' relationship with Lyell was nonconsensual. *Id.* ¶ 60. And the Sills allege that "Defendants published links and redirected readers to the links for various articles in which Defendant Lyell publicly made untrue statements." *Id.*

These allegations are simply too vague to satisfy the publication element of a defamation claim, *see Z.J.*, 355 F. Supp. 3d at 688, and they fail to identify any statement or publication by Lifeway. As discussed above (*see supra* Part I), the Court need not accept as true any allegation that Lifeway made statements via the Guidepost Report. *Nolan*, 991 F.3d at 707; Compl. Ex. A, at 2. Additionally, Lifeway's "redirecting" to already-published material could not state a claim, as linking to previously published material is not publication. *See Clark v. Viacom Int'l, Inc.*, 617 F. App'x 495, 507 (6th Cir. 2015) ("Simply alerting a new audience to the existence of a preexisting statement does not republish it.") (applying Tennessee law); *Lokhova v. Halper*, 995 F.3d 134, 142–44 (4th Cir. 2021) (applying *Clark* to hold a hyperlink is not republication).

***Second***, even if the Sills had adequately alleged Lifeway published a statement, the Sills fail to plausibly plead Lifeway did so knowingly or recklessly. Corporations have no mental state of their own, so a corporation's mental state, such as "knowledge" or reckless disregard, can only be imputed from those of "its agents and employees." *Hall v. Crenshaw*, 449 S.W.3d 463, 472 (Tenn. Ct. App. 2014). Thus, in analyzing a defamation claim under Tennessee law, the Sixth Circuit held that when "the defendant is an institution rather than an individual, the question is whether the individual responsible for the statement's publication acted with the requisite culpable state of mind." *Holbrook*, 58 F.3d at 225; *see also Dongguk Univ. v. Yale University*, 734 F.3d

113, 123–24 (2d Cir. 2013) ("When there are multiple actors involved in an organizational defendant's publication of a defamatory statement, the plaintiff must identify the individual responsible for publication of a statement, and it is that individual the plaintiff must prove acted with [the requisite mental state]." (citing *Holbrook*, 58 F.3d at 225)). Further, courts may generally impute an employee's scienter to her employer only when the employee was acting with "authoriz[ation]" and within the "scope of [her] employment." *Hall*, 449 S.W.3d at 472; *accord Griffith Motors, Inc. v. Parker*, 633 S.W.2d 319, 322 (Tenn. Ct. App. 1982).

Here, the Sills do not allege, as they must, that either Lifeway employee named in the Complaint was responsible for a specific statement's publication by Lifeway. Nor do they allege that either "individual . . . acted with [the requisite mental state]." *Dongguk Univ.*, 734 F.3d at 123–24; *cf. Holbrook*, 58 F.3d at 225 (limiting state of mind analysis to the employee responsible for publishing the alleged defamatory statements). And as discussed in Part III.B.2, the Sills fail to allege that either of those one-time employees was acting on Lifeway's business or within the scope of their employment when they took the actions described in the Complaint. *See Hall*, 449 S.W.3d at 472. The Sills' general allegation that "Defendants' defamatory statements were knowingly false or made with reckless disregard for [their truth]" (Compl. ¶ 87) does not satisfy the pleading standards for this claim.

Because the Sills fail to plausibly plead a publication by Lifeway with the requisite mental state, their defamation and defamation *per se* claims against Lifeway also fail on the merits.

### B.     The Sills fail to state negligence claims against Lifeway.

The Sills also allege that Lifeway engaged in negligent, grossly negligent, and wanton acts against the Sills and that Lifeway is liable for its agents and employees' acts under a *respondeat superior* theory. Compl. ¶¶ 98–112. Both these causes of action fail to state a claim.

1. *The Sills fail to sufficiently allege negligence, gross negligence, or wantonness against Lifeway because they fail to plausibly plead the duty and injury elements of a negligence claim.*

The Sills' general allegations that Lifeway is liable for negligence, gross negligence, and wantonness fail to state a plausible claim.

Pleading a negligence claim under Tennessee law requires adequate allegations of: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, causation." *Z.J.*, 355 F. Supp. 3d at 704. Pleading gross negligence requires alleging the elements of negligence plus alleging the act in question was "done with utter unconcern for the safety of others, or one done with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law." *Id.* (quoting *Thrasher v. Riverbend Stables*, No. M2007-01237-COA-R3-CV, 2008 WL 2165194, at *5 (Tenn. Ct. App. May 21, 2008)).

Wantonness is not an independent cause of action but a term used to describe the mental state associated with gross negligence or recklessness. *See, e.g.*, *Lawson v. Hawkins County*, 661 S.W.3d 54, 61 (Tenn. 2023). Like gross negligence, stating a recklessness claim requires pleading the elements of a negligence claim. *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 37–38 (Tenn. 2005); *see also Faeth v. Regions Bank*, No. 3:12-00162, 2012 WL 5989362, at *5–6 (M.D. Tenn. Nov. 29, 2012) (holding plaintiffs could not sustain a recklessness claim because they failed to establish a duty of care), *R&R adopted by* 2013 WL 146180 (Jan. 14, 2013). Pleading recklessness requires alleging awareness of but "conscious[] disregard[ of] a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." *Doe*, 154 S.W.3d at 37–38.

The Sills fail to adequately plead negligence, gross negligence, or wantonness for at least three reasons. ***First***, they do not adequately allege that Lifeway owed them a duty of care, which is "an essential element of all negligence claims." *Preez v. Benchmark Maid,* LLC, No. 3:22-cv-00144, 2022 WL 16842054, at *8 (M.D. Tenn. Nov. 9, 2022) (quoting *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008)). For a duty of care to exist, there must be some relationship between the plaintiff and defendant. *See, e.g.*, *Menuskin v. Williams*, 145 F.3d 755, 766 (6th Cir. 1998) (affirming dismissal of negligence claim against defendants without "relationship" with plaintiffs but reversing dismissal of negligence claim against defendants who "may have owed a duty of care based on a [seller-customer] relationship"). Here, the Sills group Lifeway with other Defendants, alleging that Lifeway, the SBC, the EC, and the Seminary *all* owed the Sills a duty of care because "Plaintiffs were owed a duty of care by their church and employer." Compl. ¶ 102. But Lifeway was neither the Sills' church nor their employer. Instead, the Sills allege that Lifeway, while associated with the SBC, is a "non-profit corporation" that supplies Christian resources. *Id.* ¶ 24. Thus, the Complaint fails to provide any factual basis from which the Court can infer that Lifeway owed the Sills a duty of care.

Further, Lifeway does not owe a duty to the Sills merely because both Lifeway and David Sills allegedly had a relationship with the SBC—Sills as an employee and Lifeway as a subsidiary. Generally, Tennessee courts will not impose a duty of care on a corporate entity based on a separate but related entity's owing such a duty to a particular plaintiff. *See Smartt v. NHC Healthcare/McMinnville, LLC*, No. M2007-02026-COA-R3-CV, 2009 WL 482475, at *5 (Tenn. Ct. App. Feb. 24, 2009), *perm. app. denied* (Tenn. Mar. 20, 2011). For example, in *Hinkle v. Delavan Industries, Inc.*, the court rejected plaintiffs' argument that because a parent corporation and its subsidiary worked closely together and shared board members, the parent corporation owed

a duty of care to its subsidiary's employees. 24 F. Supp. 2d 819, 821 & n.2 (W.D. Tenn. 1998). The court noted that the Sixth Circuit had "explicitly rejected" this kind of "[d]erivative liability" under Tennessee law. *Id.* (citing *Thompson v. Superior Fireplace Co.*, 931 F.2d 372, 374 (6th Cir. 1991)). Despite this, the Sills ask the Court to go a step further than the *Hinkle* plaintiffs proposed and conclude that an independent subsidiary (Lifeway) owes a duty to the employee (David Sills) of its parent corporation (SBC). If there was no liability in *Hinkle*, however, there certainly is not here. Thus, Lifeway's alleged relationship with the SBC is insufficient for this Court to impose a duty of care on Lifeway, and the Sills' negligence claims fail.

**Second**, the Sills do not adequately allege "an injury or loss." *Z.J.*, 355 F. Supp. 3d at 704. Under Tennessee law, ordinary negligence claims are only cognizable based on injury to body or property, not purely emotional or economic harm. *See Atria v. Vanderbilt Univ.*, 142 F. App'x 246, 251 (6th Cir. 2005) (noting a duty of reasonable care exists to avoid the negligent infliction of "harm to persons or property") (emphasis added); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995) (same). This is consistent with general tort principles. *See* Restatement (Second) of Torts § 436A (1965) ("If the actor's conduct is negligent . . . and it results in . . . emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance."); Restatement (Third) of Torts: Liab. For Econ. Harm § 1 (2020) ("An actor has no general duty to avoid the unintentional infliction of economic loss on another.").[2]

Although Tennessee courts do not appear to have considered whether a negligence claim based on reputational harm is cognizable, persuasive precedent suggests that they would not

---

[2] Tennessee courts often follow the Restatement of Torts. *See, e.g.*, *Coln v. City of Savannah*, 966 S.W.2d 34, 42 (Tenn. 1998), *overruled on other grounds by Cross v. City of Memphis,* 20 S.W.3d 642, 644–45 (Tenn. 2000); *Grogan v. Uggla*, 535 S.W.3d 864, 871–76 (Tenn. 2017).

14

recognize such a claim. *See Lawrence v. Grinde*, 534 N.W.2d 414, 419–20 (Iowa 1995) (noting "[o]nly a few jurisdictions in the country allow recovery of [reputation] damages" in a negligence action and declining to join them). Recognizing such a claim, especially when the claim sounds in defamation as the Sills' does, would allow plaintiffs to circumvent the requirements of a defamation claim to recoup the same damages. *See id.* at 420; *cf. Doe v. Andrews*, 275 F. Supp. 3d 880, 890 (M.D. Tenn. 2017) (noting "a plaintiff must prove actual reputation damages from the defamation"). Thus, a plaintiff cannot maintain an ordinary negligence claim based on emotional, economic, or reputational harm alone.

Here, the only injuries the Sills allege are "mental stress and anguish" and "psychological pain," injury to reputation, loss of income, and being "shunned by their church." Compl. ¶¶ 117–120. And in the negligence count of the Complaint, the Sills' only reference to "injury or loss" is a general one to the "damages complained of herein." *Id.* ¶ 112. This is not enough to satisfy the "injury or loss" element of a negligence claim. *See Z.J.*, 355 F. Supp. 3d at 704.

***Third***, and finally, the Sills fail to plausibly plead the requisite mental state for gross negligence and wantonness claims against Lifeway. As discussed in Part III.A., Lifeway has no mental state of its own, so the Sills must allege that a Lifeway employee possessed the requisite mental state while acting on Lifeway's business and within the scope of his or her employment. *See Hall*, 449 S.W.3d at 472; *Holbrook*, 58 F.3d at 225. Yet, as discussed in the next section, the Sills fail to allege that either Lifeway employee named in the Complaint was acting with authority or within the scope of their employment when they took the actions described in the Complaint. Thus, the Sills cannot plausibly allege Lifeway acted with gross negligence or wantonness.

15

In sum: the Sills' negligence and derivative gross negligence and wantonness claims should be dismissed for failure to state two essential elements of those claims, and Sills' gross negligence and wantonness claims should be dismissed for failure to plausibly plead the requisite mental state.

        2.     *The Sills also fail to plausibly plead a claim based on* respondeat superior *because they do not allege Lyell or Geiger were acting within the scope of their employment for Lifeway.*

The Sills also allege that Lifeway is vicariously liable for the acts of its employees and agents. Compl. ¶¶ 99–101. To hold an employer liable under the *respondeat superior* theory, "a plaintiff must prove '(1) that the person who caused the injury was an employee, (2) that the employee was on the employer's business, and (3) that the employee was acting within the scope of his employment when the injury occurred.'" *Wallace*, 805 F. App'x at 392 (quoting *Tenn. Farmers Mut. Ins. Co. v. Am. Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992)). "Whether an employee is acting within the scope of her employment is a question of law." *Borg v. Chase Manhattan Bank USA, N.A.*, 247 F. App'x 627, 640 (6th Cir. 2007). An employee's acts fall within the scope of her employment "only if: (a) it is of the kind [she] is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master[.]" *Id.* (quoting *Tenn. Farmers*, 840 S.W.2d at 938).

Here, the Sills allege that unnamed "employees" of "Defendants," including Lifeway, acted as agents of "Defendants and within the scope of their authority from the SBC" when they "acted in the manner described in the [complaint]." Compl. ¶¶ 99, 105. The only two Lifeway employees identified in the Complaint are Lyell and Geiger (*id.* ¶¶ 25–26), but the Sills do not allege that either was acting "on [Lifeway's] business" when they "acted in the manner described in the [Complaint]." *Wallace*, 805 F. App'x at 392 (quoting *Tenn. Farmers*, 840 S.W.2d at 937). Nor do the Sills allege anyone was acting within the scope of their employment for *Lifeway*; they only allege the "employees" were acting "within the scope of their authority from *the SBC*." *Id.* ¶¶ 99,

16

105 (emphasis added); *see also Smartt*, 2009 WL 482475, at *5 (noting Tennessee courts treat corporate entities separately for purposes of imposing liability for negligence). There are simply no facts alleged that connect Lyell and Geiger's actions to their Lifeway employment.

Indeed, the Sills' allegations about Lyell's actions suggest the opposite. The Sills allege that the "negative reaction . . . within the SBC community" that followed the revelation of Lyell's relationship with David Sills "threatened her powerful vice president position at Lifeway." Compl. ¶ 34. And Plaintiffs do not allege that Lyell was even an employee of Lifeway when she made the statements that form the main grounds for Plaintiffs' claims against her. *Compare id.* ¶ 25 (alleging Lyell was a publisher at Lifeway for some part of the relevant time period), *with* ¶ 33 (identifying Lyell's statements in interviews in June 2021, May 2022, and June 2022 as those "used to excoriate and cause injury to Plaintiffs"). Although the Complaint alleges Lyell was "directly reporting" to "Defendants," including Lifeway, when she offered to write about her relationship with Sills in Baptist Press, *id.* ¶ 38, the Sills do not allege that writing the article was an act "of the kind [Lyell was] employed to perform," that it "occur[red] substantially within the authorized time and space limits" of her employment for Lifeway, or that it was motivated "by a purpose to serve [Lifeway]." *Borg*, 247 F. App'x at 640 (quoting *Tenn. Farmers*, 840 S.W.2d at 938). To the contrary, the Sills allege that Lyell "dismantl[ed the Sills'] reputations" with the highly personal goal of "restor[ing] her reputation and preserv[ing] her [professional] position." Compl. ¶ 11. Thus, the Sills' allegations against Lyell cannot form the basis of a *respondeat superior* claim against Lifeway.

The Sills' allegations supporting a *respondeat superior* theory as to Geiger fare no better. The Sills allege that Geiger left Lifeway in "spring 2018," Compl. ¶¶ 35–36, so Geiger cannot have been acting within the scope of his employment for Lifeway after that date. *See Borg*, 247 F. App'x at 640. But the Sills allege that Lyell's statements, including those in the Baptist Press

article, and the publishing of the Guidepost Report all came after spring 2018. *See* Compl. ¶¶ 38 (alleging the Baptist Press article was issued after March 2019); ¶¶ 33, 42–45, 65–66, 67 (alleging other statements by Lyell in 2021 and 2022); ¶ 49 (alleging Defendants hired Guidepost in 2021). And "making false statements" and actions related to the Guidepost Report are the only specific acts alleged in support of the Sills' negligence claim. *Id.* ¶¶ 102–103. In fact, the sole act the Sills allege anywhere in the Complaint against Geiger specifically before his departure from Lifeway is "initiating the disclosure and reporting by Defendant Lyell." *Id.* ¶ 36. But again, the Sills do not allege that these acts were "on [Lifeway's] business" or within the scope of Geiger's employment. *Wallace*, 805 F. App'x at 392. Thus, the Sills fail to plausibly allege any negligent act by Geiger for which Lifeway could be vicariously liable.

Finally, an employer cannot be held vicariously liable for the acts of an employee who is "discharge[d] from liability." *Creech v. Addington*, 281 S.W.3d 363, 374 (Tenn. 2009). Thus, if the Court dismisses the Sills' claims against either Lyell or Geiger, then the Sills' claims against Lifeway based on its vicarious liability for that employee's torts should also be dismissed. *Id.*

### C. The Sills fail to state an intentional infliction of emotional distress claim against Lifeway because the alleged conduct was not outrageous and was not alleged to cause sufficiently severe mental harm.

The Sills also allege a claim for intentional infliction of emotional distress ("IIED") against all Defendants, including Lifeway. Compl. ¶¶ 113–16. To state an IIED claim under Tennessee law, a plaintiff must plausibly allege that a defendant's conduct (1) was "intentional or reckless," (2) was "so outrageous that it is not tolerated by civilized society," and (3) "result[ed] in serious mental injury." *MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 729 (6th Cir. 2007) (quoting *Bain v. Wells*, 936 S.W.2d 618, 622 n.3 (Tenn. 1997)). "Outrageous conduct" must be "atrocious," "utterly intolerable," and "beyond all bounds of decency." *Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 903 (M.D. Tenn. 2018) (quoting *Goldfarb v. Baker*, 547 S.W.2d 567, 569 (Tenn. 1977)).

Recovery for intentional infliction of emotional distress is limited to mental stress which is so severe that "a reasonable person, normally constituted, would be unable to adequately cope." *Billiter v. SP Plus Corp.*, 329 F. Supp. 3d 459, 471 (M.D. Tenn. 2018) (citing *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 208 (Tenn. 2012)). The Sills fail to satisfy any of these elements.

***First***, as discussed in Parts I.A. and I.B., Lifeway has no mental state of its own, and the Sills do not plausibly plead that the Lifeway employees named in the Complaint were acting on Lifeway's business and within the scope of their employment when they acted as alleged in the Complaint. Thus, the Sills fail to plausibly allege that Lifeway acted intentionally or recklessly, *MacDermid*, 488 F.3d at 729, and their IIED claim should be dismissed for that reason.

***Second***, the Sills do not plausibly plead outrageous conduct by Lifeway. The Sills allege that "Defendants' defamatory statements" and "the manner in which Defendants . . . persistently repeated unsubstantiated claims of criminal activity, violent behavior, and sexual abuse" were "so outrageous" that they could not be tolerated by civilized society. Compl. ¶¶ 114–15. But "the standard for outrageous conduct is high, indeed," and very few cases have found that a defendant's conduct satisfied that standard. *Cossairt v. Jarrett Builders, Inc.*, 292 F. Supp. 3d 779, 789 (M.D. Tenn. 2018) (quoting *Levy v. Franks*, 159 S.W.3d 66, 85 (Tenn. Ct. App. 2004) (collecting cases). "It has not been enough" to satisfy this element "that the defendant acted with an intent which is tortuous or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Malmquist v. Hearst Corp.*, No. 2:09-cv-2416-JPM-CGC, 2010 WL 1257800, at *6 (W.D. Tenn. Mar. 26, 2010) (quoting *Bain*, 936 S.W.2d at 622).

Indeed, defamatory statements and "false accusations of criminal conduct generally do not rise to the necessary level of extreme and outrageous conduct." 136 Am. Jur. Proof of Facts 3d

175, Defense considerations—Other defenses § 10. In *Malmquist*, for example, the court rejected plaintiff's IIED claim, which was based on defendant's "publishing an article which falsely portray[ed] Plaintiff as an abusive spouse," because defendant's action did not "rise to the level of conduct so outrageous in character and so extreme in degree as to go beyond all bounds of decency." 2010 WL 1257800, at *6; *see also Belmont Univ.*, 334 F. Supp. 3d at 904 (dismissing IIED claim because investigation of plaintiff's alleged sexual misconduct, "[e]ven if . . . imperfect or unfair, . . . [was] not so atrocious, so beyond the bounds of decency, so utterly intolerable to society such that it meets the demanding Tennessee standard for an IIED claim"); *Finley v. Kelly*, 384 F. Supp. 3d 898, 902–03, 914 (M.D. Tenn. 2019) (holding that uploading a document to Facebook accusing the plaintiff of abusive and violent behavior and distributing that document to eighteen individuals did not satisfy outrageous conduct element).

The Sills' allegations that unspecified Defendants repeated defamatory statements accusing David Sills of sexual abuse and criminal conduct over a three-year period do not rise to the level of outrageous conduct necessary to sustain an IIED claim. *See Malmquist*, 2010 WL 1257800, at *6. Thus, the Sills fail to satisfy an essential element of an IIED claim, and their IIED claim should be dismissed.

***Third***, the Sills' allegation that "Defendants' acts and omissions resulted in serious mental injury" to them, Compl. ¶ 116, does not suffice to establish the third element of an IIED claim. The Sills plead no facts suggesting this injury was so severe that "a reasonable person, normally constituted, would be unable to adequately cope." *Billiter*, 329 F. Supp. 3d at 471. In *Rogers*, the Tennessee Supreme Court held that courts weighing this element of an IIED claim should consider factors, such as "physiological [or psychological] manifestations of emotional distress," whether a plaintiff sought medical treatment and was diagnosed with a medical or psychiatric disorder, the

duration and intensity of any symptoms and treatment, and whether the mental injury "impair[ed] the plaintiff's] daily functioning." 367 S.W.3d at 209–10.

The Sills do not allege any facts supporting any of the factors indicating severe emotional distress. They merely allege "serious mental injury," pleading in conclusory fashion that they have suffered "a severe degree of mental stress and anguish which [has] disrupted their daily routine and caused a high degree of psychological pain." Compl. ¶¶ 116–17. Indeed, the Sills' allegations do not even differentiate between the mental stress allegedly suffered by David Sills versus Mary Sills, undermining the plausibility of their claimed injuries. In *Finley*, this Court rejected even more detailed allegations of mental injury as "a formulaic recitation of the elements of [the] cause of action," which "will not do." 384 F. Supp.3d at 915 (quoting *Twombly*, 550 U.S. at 557). The Court should do the same here.

### D. The Sills fail to state a conspiracy claim against Lifeway because they do not plausibly plead a common design between Lifeway and others or an overt act by Lifeway.

Finally, the Sills allege that Defendants conspired to "accomplish their campaign of defamation." Compl. ¶ 95. The elements of a conspiracy claim under Tennessee law are: "(1) a common design between two or more persons; (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means; (3) an overt act in furtherance of the conspiracy; and (4) injury to person or property resulting in attendant damage." *Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC*, 461 F. Supp. 2d 629, 642 (M.D. Tenn. 2006). "In addition, civil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *United Data Techs., Inc. v. Byers*, No. 3:16-cv-00139, 2018 WL 11411600, at *12 (M.D. Tenn. June 29, 2018) (Campbell, J.) (quoting *Morgan v. Brush Wellman, Inc.*, 165 F. Supp. 2d 704, 721 (E.D. Tenn. 2001)). Conspiracy "must be pled with some degree of specificity." *Gann v. Kolfage*, No. 3:14-1609, 2016 WL 6127722, at *4 (M.D. Tenn. Sept. 30, 2016) (citing *McGee v. Best*, 106

S.W.3d 48, 64 (Tenn. Ct. App. 2002)), *R&R adopted by* 2016 WL 6125420 (Oct. 20, 2016). The Sills' civil conspiracy claim fails for at least three reasons.

*First*, the Sills fail to plausibly allege a common design between Lifeway and anyone else. *Freeman Mgmt. Corp.*, 461 F. Supp. 2d at 643. As evidence of a common design, the Sills only allege that Lifeway acted "in concert with" all other Defendants. Compl. ¶¶ 60, 62. This is exactly the type of conclusory allegation that the Supreme Court rejected in *Twombly*. 550 U.S. at 565–66 (dismissing the plaintiff's conspiracy-based claims that the defendants "entered into a contract, combination or conspiracy to prevent" competition because they did not give rise to "a plausible suggestion of conspiracy"). Thus, the Sills' claim against Lifeway fails because they do not adequately allege the first element of a civil conspiracy claim.

*Second*, the Sills fail to plausibly allege Lifeway had the requisite intent. "A defendant can be liable for the torts of others on a civil conspiracy theory only if the defendant has [the] intent" to accomplish "an unlawful purpose by unlawful means" and knows of the other defendants' identical intent. *JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC*, 615 F. Supp.3d 750, 782 (M.D. Tenn. 2022) (citations omitted); *see also B&L Mgmt. Grp., LLC v. Adair*, No. 17-2197, 2019 WL 3459244, at *10–11 (W.D. Tenn. July 31, 2019) ("The parties to a civil conspiracy must have a specific intent to accomplish the underlying tort."). Defamation in particular can only support a conspiracy claim if a plaintiff establishes that a defendant acted "with knowledge that the statement was false and defaming," not simply with reckless disregard or negligence. *Hudik*, 512 F. Supp. 3d at 824–25. Otherwise, the defendant would lack the "the requisite specific intent to be liable for civil conspiracy." *B&L Mgmt. Grp., LLC v. Adair*, 2019 WL 3459244, at *11; *see also JRS Partners*, 615 F. Supp. 3d at 783 ("Because negligence by definition is not an intentional wrong, one cannot agree or conspire to be negligent." (citation omitted)).

The Sills do not plausibly allege that Lifeway—much less a Lifeway employee who was "responsible for [an authorized] publication"—had the intent to defame the Sills or knew of any such intent possessed by its co-defendants. *See supra* pp. 10–11; *Holbrook*, 58 F.3d at 225. The Sills simply lump Lifeway in with other Defendants in alleging "Defendants" engaged in "a concerted effort. . . to improve the public image of SBC" by "scapegoat[ing]" David Sills. Compl. ¶ 46. This is not enough to allege Lifeway had "a specific intent" to defame the Sills. *JRS Partners*, 615 F. Supp. 3d at 782 (quoting *B&L Mgmt.*, 2019 WL 3459244, at *11). Thus, the Sills fail to establish the second element of their conspiracy claim.

**Third**, the Sills fail to plausibly allege an overt act by Lifeway in furtherance of the conspiracy. Although the Sixth Circuit does not appear to have directly addressed whether a plaintiff must allege an overt act as to each alleged co-conspirator, the consensus among courts that have confronted this issue is that a plaintiff cannot satisfy Rule 8 pleading standards without alleging a specific overt act undertaken by each defendant in furtherance of the conspiracy. *See, e.g.*, *Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 616 (E.D. Mich. 2015) (holding Plaintiffs' "group pleading problems," including their "failure to adequately plead the alleged underlying torts as to each Defendant, [were] fatal to their civil conspiracy claim"); *Berger on behalf of Income Opportunity Realty Invs., Inc. v. Transcon. Realty Invs., Inc.*, No. 3:19-CV-00286-E, 2020 WL 1528994, at *7 (N.D. Tex. Mar. 31, 2020) (holding plaintiff failed to state a plausible civil conspiracy claim when there were "no specific allegations regarding the unlawful overt acts each of the multiple Defendants took"); *Barmapov v. Amuial*, No. 9:18-CV-80390-WPD, 2019 WL 11639545, at *4 (S.D. Fla. May 24, 2019) (holding civil conspiracy claim failed because of "impermissible group pleading," including "fail[ing] to adequately plead what overt act each particular Defendant did in pursuance of the conspiracy"); *AccuImage Diagnostics Corp v.*

*Terarecon, Inc.*, 260 F. Supp. 2d 941, 948 (N.D. Cal. 2003) ("To successfully plead this cause of action, plaintiff must more clearly allege specific action on the part of each defendant that corresponds to the elements of a conspiracy cause of action.").

Here, the Sills allege a civil conspiracy based on the underlying tort of defamation, Compl. ¶ 95, but they fail to plausibly allege any overt act by Lifeway in support of the conspiracy. Rather, as discussed above, the Sills do not plausibly allege a publication by Lifeway (*see supra* Part III.A), so they also fail to plausibly plead an overt act by Lifeway in furtherance of the conspiracy to defame. Accordingly, the Sills' conspiracy claim against Lifeway fails on this ground. *See, e.g.*, *Kerrigan*, 112 F. Supp. 3d at 616.

**Finally**, regardless of whether the Sills' conspiracy claim against Lifeway would otherwise survive the grounds for dismissal discussed above, the Court must dismiss this claim if it dismisses the underlying tort claims against the remaining Defendants. When a court has dismissed all alleged claims that could be an "underlying predicate tort" for a civil conspiracy claim, it must also dismiss the civil conspiracy claim. *See United Data Techs.*, 2018 WL 11411600, at *13 (dismissing civil conspiracy claim where court had dismissed underlying tort claims against all but one defendant). Moreover, if the only remaining claims are a tort claim and a conspiracy claim based on that alleged tort asserted against one defendant, the conspiracy claim must be dismissed because a defendant cannot conspire with itself to commit a tortious act. *See id.*

Thus, here, if the Court dismisses the Sills' claims against Lifeway's co-defendants, it should also dismiss the conspiracy claim against Lifeway for lack of an underlying predicate tort.

### E.     The Sills fail to plausibly plead entitlement to punitive damages.

Finally, the Sills seek punitive damages. Compl. at 28–29. "Under Tennessee law, punitive damages are proper only if 'a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly.'" *Wright v. Citizen's Bank of E. Tenn.*, 640 F. App'x 401, 411 (6th

Cir. 2016) (quoting *Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896, 901 (Tenn. 1992)).

Here, the Sills allege claims for defamation, negligence, gross negligence, wantonness, IIED, and conspiracy. Thus, to be entitled to punitive damages, the Sills must plausibly plead that Lifeway acted with greater culpability than gross negligence as to each of these claims. *See Hodges*, 833 S.W.2d at 901. But as discussed above, the Sills fail to plausibly plead the requisite mental state as to any of these claims. Thus, any claim for punitive damages must fail. *See Wright*, 640 F. App'x at 411. Moreover, a punitive damages claim cannot survive the dismissal of the underlying claims. *See id.* (declining to remand plaintiffs' punitive damages claim because the underlying claims were properly dismissed). Thus, if the Court dismisses the Sills' claims against Lifeway for any reason, it must also dismiss the Sills' related plea for punitive damages.

## CONCLUSION

Accordingly, because the Sills' claims are time barred and because the Sills fail to state any claim against Defendant Lifeway Christian Resources of the Southern Baptist Convention, all of their claims against Lifeway should be dismissed.

Dated: July 12, 2023

Respectfully submitted,

*/s/ George H. Cate, III*
George H. Cate, III (BPR #12595)
Kimberly M. Ingram-Hogan (BPR #35191)
Virginia N. Adamson (BPR #39285)
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street
Suite 700
Nashville, TN 37203
Telephone: (615) 244-2582
Facsimile: (615) 252-6380
gcate@bradley.com
kingram@bradley.com
jadamson@bradley.com

Chuck Mangelsdorf
Terri Bernal
MCANGUS GOUDELOCK & COURIE LLC
120 Brentwood Commons Way, Suite 625
Brentwood, TN 37027
Telephone: (615) 499-7177
Facsimile: (615) 523-1496
chuck.mangelsdorf@mgclaw.com
terri.bernal@mgclaw.com

*Attorneys for Defendant*
*Lifeway Christian Resources of*
*the Southern Baptist Convention*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing was served on the following via the Court's CM/ECF system on July 12, 2023:

Gary E. Brewer
BREWER AND TERRY, P.C.
1702 W. Andrew Johnson HWY
Morristown, TN 37816-2046

John (Don) W. Barrett
Katherine Barrett Riley
BARRETT LAW GROUP, P.A.
PO Box 927
404 Court Square
Lexington, MS 39095

Shannon M. McNulty
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle Street
Suite 3100
Chicago, IL 60602

*Counsel for Plaintiffs*

Brigid M. Carpenter
Ryan P. Loofbourrow
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
1600 West End Avenue, Suite 2000
Nashville, TN 37203

*Counsel for Executive Committee of the*
*Southern Baptist Convention,*
*Willie McLaurin, and Rolland Slade*

Catherine M. Newman
R. Bruce Barze, Jr.
J. Graham Gilmore
BARZE TAYLOR NOLES LOWTHER LLC
2204 Lakeshore Drive, Suite 425
Birmingham, AL 35209

*Counsel for Defendant Eric Geiger*

Olivia Rose Arboneaux
Philip N. Elbert
Ronald G. Harris
NEAL & HARWELL, PLC
1201 Demonbreun Street
Suite 1000
Nashville, TN 37203

*Counsel for Jennifer Lyell*

John R. Jacobson
Katherine R. Klein
RILEY & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203

Steven G. Mintz
Terence William McCormick
MINTZ & GOLD LLP
600 Third Avenue
25th Floor
New York NY 10016

*Counsel for SolutionPoint International, Inc.*
*and Guidepost Solutions, LLC*

Louis Gino Marchetti, Jr.
TAYLOR, PIGUE, MARCHETTI & BLAIR, PLLC
2908 Poston Avenue
Nashville, TN 37203

*Counsel for the Southern Baptist Convention*

James C. Bradshaw III
WYATT, TARRANT & COMBS, LLP
333 Commerce Street, Suite 1050
Nashville, TN 37201

Byron Leet
Thomas E. Travis
WYATT, TARRANT & COMBS, LLP
400 West Market Street, Suite 2000
Louisville, KY 40202

*Counsel for Defendants The Southern Baptist*
*Theological Seminary and Dr. R. Albert Mohler*

*/s/ George H. Cate, III*
George H. Cate, III