# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL DAVID SILLS and MARY SILLS,<br><br>Plaintiffs,<br><br>v.<br><br>SOUTHERN BAPTIST CONVENTION, *et al.*<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CASE NO. 3:23-cv-00478

JUDGE WILLIAM L. CAMPBELL, JR.
**Magistrate Judge Jeffrey Frensley**

JURY TRIAL DEMANDED

## MEMORANDUM IN SUPPORT OF DEFENDANT JENNIFER LYELL'S MOTION TO DISMISS PLAINTIFFS' CLAIMS

Michael David Sills resigned his position at Southern Baptist Theological Seminary in disgrace. The statute of limitations has long since run on his attempt to now claim some new damage to his reputation. The statute has also run on any claim by his wife denying now what happened in her house. More importantly, this Court should, and must, decline Plaintiffs' invitation to intrude into a church's investigation, debate, and regulation of the character and conduct of its leaders. Nor should this Court permit itself, regardless of church involvement, to be used as a forum to belatedly attack, intimidate, and silence victims of previously admitted abuse.

For these reasons and those set forth more fully below, Defendants' motion seeks dismissal pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

# INTRODUCTION

At bottom, Plaintiffs' lawsuit seeks secular judicial review and critique of the Defendant Southern Baptist Convention's faith-based response to alleged mishandling of sexual abuse claims by the religious denomination's leaders and, specifically, the Defendant Executive Committee. Plaintiffs' lawsuit attacks the "task force" that the denomination created to investigate the way its leadership handled sexual abuse claims; it attacks the methodology of the investigation; and finally, it attacks some of the conclusions reached by the third-party investigator, Defendant Guidepost Solutions. Incredibly, Plaintiffs claim that these investigative efforts and the conclusions by these religious leaders were part of a conspiracy within the denomination to defame Plaintiff David Sills and thereby improve its public image. Because Plaintiffs' claims in this lawsuit are based upon, and inextricably intertwined with, matters of internal governance, faith, and doctrine of this large religious denomination, the ecclesiastical abstention/church autonomy doctrine applies to deprive this Court of subject matter jurisdiction.

Jennifer Lyell made report of sexual abuse that David Sills admitted when confronted by leadership at the seminary where Ms. Lyell was his student. She later submitted to be interviewed by the investigators for Guidepost Solutions. Yet, for her courage in speaking when duty demanded it, her character and credibility have been mercilessly attacked in an attempt to somehow recast David Sills as some kind of "victim" of the abuse he perpetrated. Plaintiffs' attempt to continue those attacks in this forum must fail.

This case need go no further. As a matter of law, Plaintiffs have failed to sufficiently plead defamation, conspiracy, and the other related causes of action. Plaintiffs' claims based upon statements that are attributed to Defendant Lyell are barred by the applicable statutes of limitation, are privileged, and otherwise not actionable as a matter of law. Dismissal is proper at this time.

## ARGUMENT

**1.      This Court lacks subject matter jurisdiction.**

Plaintiffs' lawsuit against the Southern Baptist Convention, its leaders, its related entities, and individuals alleged to be agents of Southern Baptist Convention must be dismissed for lack of subject matter jurisdiction based upon the ecclesiastical abstention/church autonomy doctrine.  As the Tennessee Supreme Court has explained, this doctrine "reflects the principle that secular courts in the United States should normally 'abstain' from adjudicating issues involving theological or spiritual judgment or the internal governance of religious bodies and, instead, should leave these matters to appropriate religious tribunals." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 448 (Tenn.  2012) (citing *Rodney A. Smolla*, 1 *Rights and Liabilities in Media Contents* § 6.25 (2 ed. 2011)).

This doctrine derives directly from the First Amendment to the United States Constitution, which provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST., Amend. 1.  This constitutional provision applies to the judiciary as well as the legislature.  *E.g., Kreshik v. St. Nicholas Cathedral*, 363 U.S. 190, 191 (1960).

The United States Supreme Court's opinion in *Watson v. Jones*, 80 U.S. 679 (1871) was one of the early pronouncements of this doctrine.  In that case, the Court held that the First Amendment limited the power of the courts to hear lawsuits concerning questions of discipline, or of faith, or ecclesiastical rule, custom, or law, stating that that:

> The right to organize voluntary religious associations to assist in the expression and dissemination of any religious doctrine, and to create tribunals for the decision of controverted questions of faith within the association, and <u>for the ecclesiastical government of all the individual members, congregations and officers within the general association is unquestioned</u>.  All who unite themselves to such a body do so with implied consent to this government and are bound to submit to it.

*Watson v. Jones*, *supra* at 728-729 (emphasis added).

The United States Supreme Court has consistently upheld this important principle that derives from the separation of church and state. "The First Amendment protects the right of religious institutions to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine'". *Our Lady of Guadalupe School v. Morrisey-Berru,* 140 S. Ct. 2049, 2055 (2020). The church autonomy doctrine "protect[s] their autonomy with respect to internal management decisions that are essential to the institutions' central missions." *Id.* at 2060.

A recent decision from the Texas Supreme Court is instructive as to the relationship between state tort law and the church autonomy doctrine in circumstances similar to the instant case. In a case styled *In re Diocese of Lubbock*, 624 S.W. 3d 506 (Tex. 2021), the Court dismissed a Catholic deacon's *defamation* claims that had arisen from the church's internal investigation of sexual abuse. The plaintiff, Mr. Guerrero, was included on a list denominated as "clergy against whom credible allegations of sexual abuse of a minor" had been made. *Id.* at 510. The defendant religious institution published the list on a website that was publicly available, beyond just the members of that religious denomination.

Rejecting plaintiff's attempt to challenge the credibility of the allegations of sexual abuse against him, the Texas Supreme Court explained that "under the First Amendment, courts must abstain from exercising civil jurisdiction over claims that require them to 'resolve a religious question' or 'impede the church's authority to manage its own affairs.'" *Id.* at 509, citing *Westbrook v. Penley*, 231 S.W. 3d 389, 397 (Tex. 2007) (emphasis added). The standard that the Court applied for its dismissal of plaintiff's claim was stated as follows:

Because courts are prohibited from risking judicial entanglement with ecclesiastical matters, *see Our Lady of Guadalupe School v Morrissey-Berru,* 140 S. Ct. 2049, 2069 (2020), <u>if the substance and nature of the Plaintiff's claims are inextricably intertwined with matters of doctrine or church governance, then the case must be dismissed.</u> [citation omitted].

*Id.* at 514 (emphasis added). The Texas Supreme Court found that since the lawsuit's claims of defamation were "'inextricably intertwined' with the Diocese's decision to investigate its own clergy, judicial review of which would impermissibly interfere with a church's ability to regulate the character and conduct of its leaders." *Id.* at 516. The same standard should be applied in this case.

Even more so than in *Diocese of Lubbock,* the Plaintiffs' Complaint in this case seeks impermissible secular judicial intrusion in, and threatens monetary sanction for, a conscience-driven debate and process through which a church and its members sought to respond responsibly and in faith to matters of church concern. Ms. Lyell's part in this process was to submit to interview when requested to do so. To avoid enmeshment in the process of debate and regulation of matters of morality concerning members of the church, this Court must decline to exercise jurisdiction over Plaintiffs' claims. The ecclesiastical abstention/church autonomy doctrine as mandated by the First Amendment to the United States Constitution requires dismissal of this case.[1]

A review of the Complaint and exhibit attached thereto clearly demonstrates that Plaintiffs' claims are rooted in issues and controversies within this large religious denomination, and seek to put at issue the denomination's internal deliberations and decisions.

The Complaint alleges that "Plaintiff Sills was a Southern Baptist Missiologist, professor, and author in the Southern Baptist Convention before resigning his professional positions as a

---

[1] The Tennessee Constitution also contains provisions protecting the free exercise of religion and against the establishment of a state religion. Tenn. Const. art. 1 § 3.

consequence of having a consensual, prurient relationship with Defendant Jennifer Lyell." D.E. 1, Complaint ("Compl.") ¶ 14. The first named Defendant in the Complaint is the Southern Baptist Convention. Each of the other Defendants are either officers or alleged agents of Southern Baptist Convention, or entities related to Southern Baptist Convention. Compl. ¶¶ 17-28.

Plaintiffs have conclusorily pled a conspiracy between all the Southern Baptist Convention-related Defendants to defame David Sills and his wife to thereby enhance Defendants' public image. *Id.* ¶¶ 46, 64. A review of the Complaint shows the conspiracy is based upon the denomination's investigation into the handling of sexual abuse claims by the Defendant Executive Committee and other denominational leaders. *E.g.,* Compl. ¶ 49; Exhibit A to Complaint. The denomination established a task force to investigate the conduct of its leadership. *Id.* Defendant Guidepost Solutions was hired by the Southern Baptist Convention task force "to investigate the Southern Baptist Convention's sexual crisis," Compl. ¶ 50. Exhibit A to Plaintiffs' Complaint is the engagement letter between Guidepost and the Southern Baptist Convention Task Force. The purpose of the investigation is stated in the agreement's first paragraph:

> 1.1 This letter confirms that, in accordance with the mandate given by the Southern Baptist Convention ("SBC") Messengers ("SBC Motion"), the SBC, through and under the leadership of the Task Force has retained Guidepost Solutions LLC and its agents (collective, "Guidepost"), to conduct an <u>independent investigation into the Executive Committee</u> (the "Engagement") and <u>an audit of the procedures and actions of the Credentials Committee</u> under the terms and conditions set forth in this engagement agreement (the "Agreement").

Compl. Exhibit A (emphasis added).

As support of its claim of conspiracy and other causes of action, Plaintiffs characterize the denomination's efforts as a "so-called investigation" and a "phony 'investigation'." Compl. ¶¶ 40, 49. The Complaint attacks the independence of the task force and the manner and purpose for which it was created. *Id.* ¶¶ 48-49. The Complaint conclusorily (and inaccurately) alleges that:

> The absence of any credible investigation into the abuse allegations was obvious. Defendants Southern Baptist Convention, Lifeway, Lyell, Geiger, the Executive Committee, McLaurin, Slade, Seminary, and Mohler, including Litton, coordinated and decided to retain an investigator.

Compl. ¶ 47. Plaintiffs' Complaint repeatedly attacks the methods of the investigations, pointing to alleged failure to seek additional interviews and more corroboration as evidence of the tortious conspiracy. *Id.* ¶¶ 47-49, 51, 60-61, 64.

According to the Complaint, Defendant Lyell and the Southern Baptist Convention defendants engaged in a "conspiracy" that was "a strategic public relations strategy in a concerted effort amongst Defendants to improve the public image of Southern Baptist Convention at the expense of one of its ministers. The scapegoat was Plaintiff Sills." Compl. ¶ 46. The Complaint quotes statements from that investigator's Report as a basis for its claims of defamation against Lyell and the other Defendants. *Id.* ¶¶ 57-60. The Complaint alleges that the statements Defendants allegedly made about the abuse were made as agents of the Southern Baptist Convention and related entities and part of the conspiracy to defame. Ms. Lyell "is named in her individual capacity and as an agent and/or employee of the Southern Baptist Convention and Lifeway." *Id.* ¶ 23. The lawsuit alleges Defendant Lyell was "the highest-ranking woman in the Southern Baptist Convention" at the time she allegedly offered to write "the public relations piece as part of the alleged conspiracy." *Id.* ¶ 38.

These allegations are not true. But, for purposes of the motion before the Court, what is important is the context of the alleged actions and statements of Defendants that are alleged as the basis for this lawsuit. As Plaintiffs' own allegations prove, the issues Plaintiffs seek to litigate in this Court all concern Defendant Southern Baptist Convention's investigation into the Defendant Executive Committee's handling of important issues of direct concern to the church and within this large religious denomination. Plaintiffs' claims seek to put at issue facts concerning past, and

ongoing internal investigations, the appointment of the task force, and conclusions reached by the third-party investigations firm, Defendant Guidepost Solutions. Inquiry into these matters by the Court would impermissibly undermine and interfere with the denomination's efforts to investigate and attempt to address problems of legitimate concern to the church. As the Texas Supreme Court stated, "To the extent that Guerrero's claims directly call into question the Diocese's investigation and conclusions that led to the creation of the list [of sex offenders], they necessarily reach behind the ecclesiastical curtain." *In re Diocese of Lubbock*, *supra* at 515.

One of the reasons that courts have rejected defamation and other tort claims under the church autonomy doctrine is that requiring church leaders to be deposed, interrogated, and hauled into court over a dispute within a religious organization can itself be a violation of the First Amendment. *See, e.g., EEOC Commission v. Catholic University of America*, 83 F.3d 455, 465-67 (D.C. Cir. 1996). The "investigation and review" necessary to resolve the merits of these defamation claims "could only produce by its coercive effect the very opposite of that separation of church and state contemplated by the First Amendment." *Alicea-Hernandez v. Catholic Bishop v. Chicago,* 32 F.3d 698, 703 (7th Cir. 2003) (quoting *McClure v. Salvation Army* 460 F.2d 553, 560 (5th Cir. 1972). If this lawsuit is allowed to proceed, there is no doubt that the denomination's internal records and those of its leaders will inevitably become subject to subpoena and discovery. *See Rayburn v. General Conference of 7th Day Adventists,* 772 F.2d 1164 (4th Cir. 1985). The Supreme Court has emphasized that it is "the very process of inquiry" in this context that can "impinge on rights guaranteed by the Religion clauses." *NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 502 (1979).

The "neutral principles" exception to the church autonomy doctrine does *not* apply in this case. This narrow exception would allow a court to adjudicate matters involving religious

institutions, as long as the court can resolve the dispute solely by applying neutral legal principles and is not required to employ or rely upon religious doctrine or governance to adjudicate the matter. *E.g.*, *Redwing v. Catholic Bishop for Diocese of Memphis supra* at 450. This exception has historically been applied to church property disputes, *e.g., In re Diocese of Lubbock*, *supra* at 513, citing *Westbrook. v. Penley,* 231 S.W. 3d 389, 398 (Texas 2007)*.* But not to internal matters relating to the conduct of church members or leadership. In *In re Diocese of Lubbock, supra,* the Texas Supreme Court recognized that: "Although tort law imposes a duty not to defame or intentionally inflict emotional distress upon others [citations omitted], a civil suit that is inextricably intertwined with a church's directive to investigate its clergy cannot proceed in the courts." *Lubbock* at 517. The "neutral principles" exception does not apply here, because Plaintiffs allege here that the denomination's response to an internal issue was part of a broad conspiracy to defame them, and thus Plaintiffs' claims, including the allegations against Ms. Lyell, are inextricably intertwined with the denomination's directive to investigate its leaders. Indeed, the conspiracy allegations against Ms. Lyell and claim that she acted as an agent of other Defendants prove the point. Plaintiffs' own allegations, if assumed true, place Ms. Lyell and everything she did or said—including in defense of her personal credibility as a witness interviewed by church officials or investigators—squarely within the context of the church's response to an internal issue of grave ecclesiastical concern.

The Complaint makes manifest that the issues Plaintiffs seek to litigate are, and have been, inter-denominational disputes that will affect the direction of the Southern Baptist Convention and all of its members. (Perhaps the Complaint was filed for that very purpose.) The issues raised by Plaintiffs' Complaint are "inextricably intertwined" with ecclesiastical issues concerning church polity and governance. Plaintiffs' allegations leave no doubt that the resolution of these issues

would involve review of communications between religious leaders and inquiry into the denomination's leaders' decisions and deliberations. Based upon the First Amendment to the United States Constitution and the church autonomy doctrine, this Court should not interfere with or impinge upon the denomination's investigation and resolution of these important inter-denominational issues.

2. **Plaintiffs' claims must be dismissed for failure to state a claim upon which relief can be granted.**

Dismissal pursuant to Rule 12(b)(6) is proper where a complaint lacks sufficient facts "to state a claim [for] relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hensley Mfg. v. ProPride, Inc.*, 597 F.3d 603, 609 (6th Cir. 2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although well-pleaded facts must be accepted as true, a "formulaic recitation of the elements of a cause of action will not do." *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 246-247 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). "[A] legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (internal quotations and citations omitted). In ruling on a Rule 12(b)(6) motion, the court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

Plaintiffs' Complaint contains a number of conclusory allegations and general, non-specific claims. For example, on a number of occasions, it lumps all the Defendants together in certain alleged actions without any attempt to specify or differentiate between which Defendants did the alleged actions or made the allegedly defamatory statements. *E.g.,* Compl. ¶¶ 50, 61, 63, 80-92, 95-97, 104, 107, 110-112, 114-116. The Complaint frequently engages in speculation about the Defendants' motivations for their alleged actions. The "Causes of Action" section of the Complaint contains little more than conclusory recitations of elements of the cause of action. *Id.* ¶¶ 94-116. The allegations regarding intentional infliction of emotional distress and conspiracy are particularly bare-bones and conclusory. *Id.*

    (a)    <u>Conspiracy</u>.

Though the concerted action alleged in this case all relates to the conduct and defense of legitimacy of a totally appropriate process of church governance clearly undertaken to address issues of broader concern, there are a number of conclusory allegations in the Complaint that claim this process was part of a broad conspiracy by all Defendants to harm just Dr. Sills, as some kind of fanciful public relations strategy. As currently pled, the Complaint does not allege sufficient facts to state a claim for relief for such a conspiracy that is plausible on its face. *Ashcroft v. Iqbal, supra* at 678.

Courts have often imposed more stringent pleading requirements for alleging such broad conspiracies. The Tennessee Court of Appeals has stated that "[c]onspiracy claims must be pled with some degree of specificity . . . . [and c]onclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Lane v. Becker,* 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010) (internal citations omitted); *Kincaid v. SouthTrust Bank,* 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006). Federal district courts applying Tennessee law have also held that civil conspiracy claims must be

pled with some level of specificity. *See Gann v. Kolfage,* 3:14-1609, 2016 WL 6127722 (M.D. Tenn. Sept. 30, 2016), report and recommendation adopted, 3:14-CV-01609, 2016 WL 6125420 at *4 (M.D. Tenn. Oct. 20, 2016); *Dauenhauer v. Bank of New York Mellon,* 3:12-CV-01026, 2013 WL 2359602 (M.D. Tenn. May 28, 2013), aff'd, 562 Fed. Appx. 473 (6th Cir. 2014) (unpublished); *Marshall v. ITT Tech. Inst.,* 3:11-CV-552, 2012 WL 1205581 (E.D. Tenn. Apr. 11, 2012); *Hagen v. U-Haul Co. of Tenn.,* 613 F. Supp. 2d 986, 996-97 (W.D. Tenn. 2009).

Pleading with specificity requires more than conclusory allegations of a civil conspiracy and a belief by a plaintiff that they have been a victim of a conspiracy. *Atkins v. Stivers*, 3:21-CV-470-RGJ, 2021 WL 3374989, at *5 (W.D. Ky. Aug. 3, 2021), appeal dismissed, 21-5798, 2022 WL 3650095 (6th Cir. Apr. 11, 2022), and appeal dismissed, 21-5799, 2022 WL 3650119 (6th Cir. Apr. 11, 2022) (ruling conspiracy insufficiently pleaded when plaintiff makes only vague and conclusory allegations that she connects to no particular person and which have no underlying factual support). *See also Cross v. Rodgers*, 3:16-CV-01128, 2017 WL 3237623, at *6 (M.D. Tenn. July 31, 2017) ("Cross also alleges that there was a concerted action accomplished by unlawful, libelous statements being posted and shared almost daily on Facebook. Cross does not allege facts indicating how this 'concerted action' came about."). *See also Downing v. Ford Motor Co.*, 17-10652, 2018 WL 3301210, at *5 (E.D. Mich. Feb. 5, 2018), report and recommendation adopted, 17-CV-10652, 2018 WL 1417599 (E.D. Mich. Mar. 22, 2018), aff'd, 18-1335, 2018 WL 4621955 (6th Cir. Sept. 24, 2018) ("Ms. Downing must present something more than her personal belief that she is the victim of a conspiracy."); *Cheryl & Co. v. Krueger*, 2:18-CV-01485, 2020 WL 5423885, at *4 (S.D. Ohio Sept. 10, 2020) (ruling that civil conspiracy was not pleaded sufficiently even where the plaintiff alleged Ms. Allwein and Mr. Adell worked closely together on the same team of plaintiff's business which used customized machinery, quit within three

months of each other, and then jointly worked to obtain machinery similar to plaintiff's customized machinery for plaintiff's competitor.)

It is not enough for a complaint to plug accusations of "collusion" into a recitation of facts that otherwise do not suggest a conspiracy, as Plaintiffs do in their Complaint. *See Hinman v. Valleycrest Landscape Dev., Inc.*, 3:19-CV-00551, 2020 WL 434161, at *13 (M.D. Tenn. Jan. 28, 2020) ("The Complaint repeatedly plugs in the words 'acting in concert,' but it does not include any actual facts that remotely suggest that Aquatic acted in concert with BrightView to build a defective pool for Hinman and then to conceal proof of the defects.").

In this case, Plaintiffs allege that twelve Defendants, individuals and large organizations alike, were so scorned by the public reaction to church scandals that, for the past five years, they have colluded and acted collectively to defame Plaintiff David Sills individually to somehow improve Defendants' own public image. "In essence, Defendants then under fire for mishandling legitimate complaints of sexual abuse, saw an opportunity to improve the appearance and reputation of SBC by adopting the narrative publicly advanced by Lyell." Compl. ¶ 40. Plaintiffs allege all the Defendants knew the allegations against Dr. Sills were false but deliberately set about spreading false statements as part of a public relations strategy. *Id.* ¶¶ 56, 87, 92, 114.

Plaintiffs offer no plausible factual support that SBC sought to restore its reputation or of a conspiracy to defame beyond the allegation that the Southern Baptist Convention supported Ms. Lyell when she revealed David Sills' sexual abuse—this is conclusory and merely reflects David Sills' attempt to frame a narrative that he is somehow the real victim, of his own admitted sexual conduct. *Id.* Nevertheless, the Complaint alleges, without factual basis, that the Defendants' legitimate concern about the conduct of its leadership "was a strategic public relations strategy in a concerted effort amongst Defendants to improve the public image of SBC at the expense of [just] one

13

of its ministers." Compl. ¶ 46. *See Gann v. Kolfage*, 3:14-1609, 2016 WL 6127722, at *4 (M.D. Tenn. Sept. 30, 2016), report and recommendation adopted, 3:14-CV-01609, 2016 WL 6125420 (M.D. Tenn. Oct. 20, 2016) ("The allegations that Kuhnen 'colluded' with Kolfage, Jr., acted as his 'proxy,' and acted 'on behalf of' or 'to benefit' of Kolfage, Jr., are conclusory, speculative, and self-serving.").

Plaintiffs allege Defendants "acted together, as a cabal" and had a "meeting of the minds" on the subject of the alleged "object or course of action." Compl. ¶ 95. This is typical of the conclusory way the alleged conspiracy was pled, claiming these multiple Defendants acted in "concert" to further the "public relations plan" to defame Plaintiffs and thereby improve the SBC's image. *Id.* ¶¶ 46, 60, 64, 69. On its face, the Complaint's attempt to characterize the denomination's investigation into the Executive Committee's handling of sexual abuse into a public relations plan to defame Plaintiffs is not plausible—and, in fact, as it is alleged, it is ludicrous.[2]

      (b)    <u>Statute of Limitations</u>.

This Complaint was filed in this Court on May 11, 2023. To the extent Plaintiffs attempt to base Defendants' liability on any alleged statements or actions taken before May 11, 2022, the relevant statutes of limitation bar these claims. In the Complaint, Plaintiffs discuss allegedly false statements and actions by Defendants dating back to 2018, which Plaintiffs claim support the causes of action of defamation, conspiracy, negligence, and intentional infliction of emotional distress. *All of these causes of action must be brought within one year.*

Federal courts in diversity jurisdiction apply the forum state's laws to determine the statute of limitations. *Richardson v. Russell*, 3:15-CV-869, 2016 WL 11431506, at *3 (M.D. Tenn. Apr. 20,

---

[2] Ironically, these very allegations bring the case squarely within the ecclesiastical abstention doctrine.

2016), report and recommendation adopted, 3:15-CV-869, 2016 WL 2941039 (M.D. Tenn. May 20, 2016) (citing *Swanson v. Wilson*, 423 F. App'x 587, 592 (6th Cir. 2011)).

Under Tennessee law, an action for libel must be commenced within one year after the cause of action occurred. Tenn. Code Ann. § 28-3-104(a)(1)(A). The statute of limitations for slander is six months. Tenn. Code Ann. § 28-3-103. The statute of limitations in a defamation case begins to run from the date of publication. *Sullivan v. Baptist Meml. Hosp.*, 995 S.W.2d 569, 574 (Tenn. 1999) (quoting *Quality Auto Parts Co., Inc. v. Bluff City Buick Co., Inc.*, 876 S.W.2d 818 (Tenn. 1994)). The Tennessee statute of limitations for civil conspiracy is also one year. Tenn. Code Ann. § 28-3-104. *See Braswell v. Carothers*, 863 S.W.2d 722, 725 (Tenn. Ct. App. 1993) (statute of limitations for tort of civil conspiracy is one year). A cause of action for civil conspiracy accrues when an overt act in furtherance of an alleged conspiracy causes damage to the complainant. *Withrow v. First Tenn. Bank Nat'l Ass'n*, No. 3:04-CV-546, 2006 WL 2981295, at *3 (E.D. Tenn. Oct. 16, 2006) (citing *Budget Rent-A-Car v. Car Servs.*, 469 S.W.2d 360, 362 (Tenn. 1971)). Intentional infliction of emotional distress is a personal injury tort governed by the general one-year statute of limitations. Tenn. Code Ann. § 28-3-104. *See Richardson v. Russell,* 3:15-CV-869, 2016 WL 11431506, at *4 (M.D. Tenn. Apr. 20, 2016), report and recommendation adopted, 3:15-CV-869, 2016 WL 2941039 (M.D. Tenn. May 20, 2016) ("Tennessee's one-year statute of limitations should be applied to Russell's counterclaims for malicious prosecution, intentional infliction of emotional distress, and libel."); *Williams v. White Castle System, Inc.,* 526 F. Supp. 2d 830, 848 (M.D. Tenn. 2007) (citing *Whaley v. Perkins,* 197 S.W.3d 665, 670-71 (Tenn.2006)).

Although Plaintiffs allege actions of Defendants which would have given rise to the causes of action they now assert against Ms. Lyell as far back as 2018, Plaintiffs did not file this case until May 11, 2023. Any claims alleging liability for damages arising out of actions that Ms. Lyell or the other

Defendants took before May 11, 2022, should be dismissed. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (ruling when the complaint's allegations make out a time-barred claim, "dismissing the claim under Rule 12(b)(6) is appropriate.").

The fact that these allegations are time barred is apparent from the face of the Complaint. Paragraphs 36-56 of the Complaint concede Plaintiffs knew of alleged statements and actions, from which they now claim their causes of action first arose, dating from "Spring 2018" through February 2022. Several paragraphs of the Complaint are devoted to statements Ms. Lyell allegedly gave in a "recorded interview" to Ron Henzel and Don Vient of Midwest Outreach on June 6, 2021. Compl. ¶¶ 42-46. Defendant Lyell disputes that the Complaint accurately states her remarks in this "interview"; but, more importantly, for the purposes of this motion, they are time-barred by the six-month statute of limitation for slander or the one-year statute of limitations for libel and other personal actions. Tenn. Code. Ann. §§ 28-3-104(a) and 28-3-103. The Complaint appears to recognize this fact as shown by the fact that the allegations under their "Count I – Defamation and Defamatory *Per Se*" only specifically list the "statements and publications of May 22, 2022; June 14, 2022; June 18, 2022; and July 8, 2022" as the basis for their defamation claim. Compl. ¶ 81. Indeed, of particular note, *the only* alleged defamatory statement concerning Plaintiff Mary Sills was allegedly made in the oral interview by Jennifer Lyell on June 6, 2021. Compl. ¶¶ 42-43. Any liability by Jennifer Lyell for allegedly making such comments would be barred by the six-month statute of limitations for slander or one-year statute for libel, and must be dismissed. As previously stated, the statute of limitations in defamation action begins to run from the date of publication. The statements published prior to one year before the filing date of May 11, 2023, are not actionable. And the one-year statute of limitations is applicable to their other claims as well. All such claims, grounded as they all are in Dr. Sills' belated attempt to retract or revise his prior admissions of sexual abuse, must

be dismissed. Plaintiffs have alleged no new actions or different harm occurring after May 11, 2022 to support their claims for negligence and intentional infliction of emotional distress. *Id.* ¶¶ 99-116. The uncontroverted running of the statute of limitations is a proper basis for this Court to grant a Rule 12(b)(6) motion.

      (c)    <u>Defamation</u>.

Plaintiffs' Complaint fails to state a claim for defamation against Defendant Lyell. The essential elements of a defamation claim under Tennessee law are that Defendant published a statement concerning the Plaintiff that is both false and defamatory, made with the requisite scienter, and caused Plaintiff actual damages. *E.g., Sullivan v. Baptist Meml. Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999); *Hibdon v. Grabowski*, 195 S.W.3d 48, 68 (Tenn. Ct. App. 2005); *Pate v. Service Merch. Co., Inc.*, 959 S.W.2d 569, 573 (Tenn. Ct. App. 1996).

Plaintiffs' Complaint often groups all Defendants together in their allegations, and that is true of the defamation allegations. Compl. ¶¶ 80-93. The defamation section of Plaintiffs' Complaint, entitled "Count I – Defamation and Defamatory *Per Se*," specifically alleges that the "statements and publications of May 22, 2022; June 14, 2022; June 18, 2022; and July 8, 2022" were the defamatory statements. *Id.* ¶ 81. (The statements prior to that date were not listed, presumably becauseeven Plaintiffs concede they are barred by the statute of limitations—as discussed at 13-15 *supra*.)

Taking each one of these four dates and examining the references in the Complaint to the statements alleged for those dates shows that the allegations fail to state a claim for defamation against Defendant Lyell:

      (1)    The May 22, 2022 statement described in the Complaint is the Report that the Complaint alleges "Defendants SPI and Guidepost published." Compl. ¶ 57. Defendant Lyell was not a *publisher* of this Report within the meaning of defamation law. The statements quoted from

the Report were made by others, not Ms. Lyell. Compl. ¶¶ 57-64. To the extent that any statements made by her to the investigators, or her superiors, are considered part of this claim, they are time barred, privileged, and otherwise not actionable.

Communications between Ms. Lyell and any of the SBC Defendants regarding these issues are privileged under the "common interest" privilege and the "public interest" privilege.

> Qualified privilege extends to all communications made in good faith upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty to a person having a corresponding interest or duty: and the privilege embraces cases where the duty is not a legal one, but where it is of a moral or social character of imperfect obligation . . .

*Pate v. Service Merchandise, supra* at 576 (citing *Southern Ice Co. v. Black,* 189 S.W. 861, 863 (Tenn. 1916)). The common interest privilege has been recognized in Tennessee to cover communications between employees or agents of the same business or corporation. *Id.* at 576.[3]

Tennessee also recognizes the "public interest privilege." The Restatement (Second) of Torts definition of the privilege has been adopted which provides as follows:

> Communication to One Who May Act in Public Interest

> > An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that

> > (a) there is information that affects a sufficiently important public interest and

> > (b) the public interest requires the communication of the defamatory matter to a public officer or private citizen who is authorized or privileged to take action if the defamatory matter is true.

*Pate v. Service Merchandise, supra* at 576, citing Restatement (Second) of Torts § 598 (1977).

---

[3] Indeed, some older cases do not consider inter-company disclosure to constitute "publication" for a defamation case. *E.g., Woods v. Helmi,* 758 S.W.2d 219, 222-223 (Tenn. Ct. App. 1988); *Freeman v. Dayton Scale Co.,* 19 S.W.2d 255, 256-257 (Tenn. 1929).

The Complaint alleges that Ms. Lyell was an agent of the SBC and employed by Defendant LifeWay during the time of her alleged statements.  Any alleged statements to her superiors and to the SBC's investigators about Plaintiff Sills' sexual abuse would be conditionally privileged. All the Defendants would have a common interest in addressing sexual abuse within the denomination, as well as an interest that the public at large shares to stop such abuse and protect the victims.  Plaintiffs have not pled specific factual allegations to show that the statements made to her employers and colleagues or the investigators were made with the requisite malice to defeat such privilege.  Compl. ¶ 87.

(2)     The alleged June 14, 2022 statement was the "Statement of Jennifer Lyell Regarding *The Daily Wire*'s Publication on June 14, 2022" ("Lyell Statement"). Compl. ¶ 65.  The Complaint gave several quotes from that statement and gave its internet address, but did not attach it.  *Id.* ¶ 65, fn 14.  The Complaint also does not allege the context for such statement.

Defendant attaches hereto as **Exhibit A** that full statement, so the Court may view the context of the quotes Plaintiffs cited in their Complaint.[4]  Ms. Lyell's statement is her response to an article published by *The Daily Wire* on June 14, 2022, that was written by a woman named Megan Basham.  Ex. A.  The Lyell Statement does not contain any false or defamatory statements about Plaintiffs, and Plaintiffs' pleading does not sufficiently allege otherwise.

The Complaint's first quote from the Lyell Statement is a portion of a sentence in which Plaintiffs allege that Ms. Lyell asserted she has "told the truth throughout this entire ordeal."  Compl. ¶ 68.  The entire sentence states as follows:  "However, knowing that I have told the truth throughout

---

[4] "This circuit has further held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim'."  *Amini v. Oberlin College,* 259 F.3d 493 (6th Cir. 2001) (citing *Weiner v. Klais & Co.,* 108 F.3d 86, 89 (6th Cir. 1997)).

19

this entire ordeal is one enduring source of peace I have so I am setting forth clarification on the material accusations Ms. Basham made that I recall from the article." Ex. A at 1.

The quoted sentence does not mention Plaintiffs and is not defamatory toward them. Plaintiffs in a defamation lawsuit must establish the allegedly false and defamatory statement was "of and concerning" them. *E.g., Steele v. Ritz,* 2009 WL 4825183 at *3 (Tenn. Ct. App. Dec. 16, 2009). The Lyell Statement says it is a "clarification" or rebuttal to false allegations about her that Ms. Basham made in the *Daily Wire* article about Ms. Lyell. Ex. A at 1. The "I told the truth" statement does not accuse Plaintiffs of any action or conduct or refer to any specific statement that Ms. Lyell contends she has told the truth about. The statement is about Ms. Lyell and not specifically about either of the Plaintiffs. Indeed, in context, her statement was clearly intended to refute an accusation that she never made a report to the police as she had said she did. That was a defense of her own reputation—not an attack on the Sillses.

"For a communication to be libelous, it must constitute a serious threat to the plaintiff's reputation . . . The words must reasonably be construed as holding the plaintiff up to public hatred, contempt or ridicule." *Brown v. Mapco Express, Inc.,* 393 S.W.3d 696, 708 (Tenn. Ct. App. 2012). Whether a statement can reasonably be considered defamatory is a matter of law for the Court to determine. *Id.; Memphis Publishing Co. v. Nichols,* 569 S.W.2d 412 (Tenn. 1978). This broad general statement that she told the truth does not identify Plaintiffs and is not defamatory toward them.

The portion of the sentence that "I have told the truth through this entire ordeal" is also not capable of being determined to be true or false as it is alleged. One of the reasons statements of opinion are often not considered actionable is that they cannot be determined to be false. *See Stones River Motors, Inc. v. Mid-South Publishing,* 651 S.W.2d 713, 720-723 (Tenn. Ct. App. 1983). The Complaint does not even specifically allege the "I told the truth" statement is false, except to state

conclusorily, and without specification, following that quote that, "As set forth herein, the statements Ms. Lyell has broadcast and published about the Sills Plaintiffs are not truthful." Compl. ¶ 65. This additional allegation (while not true) demonstrates that even by Plaintiffs' view, the quote from the Lyell Statement at issue, standing alone, is not defamatory or provably false unless some unidentified subset of other prior, time-barred statements are brought into their argument. It would be unclear which prior statements might be put at issue to try and prove falsity. This portion of the Lyell Statement is not definite enough to be false or defamatory and therefore cannot support a defamation claim against Ms. Lyell.

The next excerpt of the Lyell Statement that Plaintiffs cite in their Complaint is a portion of the statement whereby Ms. Lyell seeks to rebut Ms. Basham's allegation that Ms. Lyell never contacted the Louisville Police Department. Ex. A at 1-3. In the Lyell Statement, Ms. Lyell meticulously goes through the timeline of her contacts with the Police Department. *Id.* The excerpt quoted in the Complaint (¶ 66) does not mention either Plaintiff and is not defamatory about them. It was obviously meant to be a rebuttal of Ms. Basham's false reporting about Ms. Lyell.

Ms. Lyell's statement that she did contact the Police Department is not sufficient to support a libel by implication claim by Plaintiffs. For example, the reporting that a plaintiff had previously been arrested has been held not to give rise to a libel by implication claim. *Duncan v. Knoxville Journal Corporation,* 1992 WL 136172 (Tenn. Ct. App. June 19, 1992); *Martin v. Hearst Corporation,* 777 F.3d 546 (2nd Cir. 2015). Moreover, as stated above, the context of the statements at issue is Ms. Basham's reporting that Ms. Lyell did not contact the Police Department and Ms. Lyell's statements in rebuttal that she did, in fact, make such contacts. Ex. A. hereto. The truth or falsity being debated in this exchange is not about David or Mary Sills and is not defamatory toward them.

The other references cited in the Complaint from the Lyell Statement (Ex. A hereto) are also not defamatory to either Plaintiff. Compl. ¶¶ 69, 70. Those references are Ms. Lyell's opinions regarding the denomination's investigation and whether those investigators needed to interview additional witnesses. *Id.* These are non-actionable opinions that are her belief about the investigation and the corroboration that was obtained. These statements are not defamatory toward Plaintiffs, but rather are a response to Ms. Basham's claims and opinions regarding the way the investigators chose to proceed.

The analysis of the Lyell Statement is more difficult because Plaintiffs have intertwined their arguments on the alleged June 14, 2022 statement with a statement Ms. Lyell allegedly made on June 17, 2021 to Ron Henzel. Compl. ¶¶ 67-70. The Complaint's factual allegations proceed in chronological fashion until paragraph 67, when the alleged June 17, 2021 statement is spliced, out of order, into the discussion of statements allegedly made between June 14, 2022 (¶ 66) and July 18, 2022 (¶ 71). The argument contained in paragraph 68 appears to reference the June 17, 2021 statement to Ron Henzel. The quoted statement is not defamatory as regards either Plaintiff; and, if it occurred as alleged in the Complaint, it is more than a year prior to the Complaint's filing and thus would be time barred.

(3)     June 18, 2022, is alleged as one of the four dates for defamatory statements. Compl. ¶ 81. There is no specific allegation in the Complaint about the contents of a statement on that date.

(4)     The July 8, 2022 statement is alleged to have been a statement that was published by Defendants Seminary and Mohler. Compl. ¶ 71. Defendant Jennifer Lyell did not publish the statements allegedly made that Plaintiffs now argue were defamatory. As previously discussed, to the extent Plaintiffs attempt to rely upon *prior* statements by Ms. Lyell to her superiors and the SBC investigators, such statements are privileged and time barred.

For the reasons just discussed, the four statements that were specified in Plaintiffs' "Count I –
Defamation and Defamatory *Per Se*" as a basis for their defamation claims fail to state a claim upon
which relief can be granted against Defendant Lyell as a matter of law.

## CONCLUSION

The Court should dismiss Plaintiffs' lawsuit with prejudice based upon the lack of subject
matter jurisdiction under the ecclesiastical abstention/church autonomy doctrine.  The Court should
also dismiss all the claims against Defendant Lyell for failure to state a claim upon which relief can
be granted against her.


Respectfully submitted,

**NEAL & HARWELL, PLC**


By:      */s/  Ronald G. Harris*
        Ronald G. Harris, BPR #009054
        Philip N. Elbert, BPR #009430
        Olivia R. Arboneaux, BPR #040225

1201 Demonbreun Street, Suite 1000
Nashville, Tennessee 37203
(615) 244-1713 – Phone
(615) 726-0573 – Fax
rharris@nealharwell.com
pelbert@nealharwell.com
oarboneaux@nealharwell.com

*Counsel for Defendant Jennifer Lyell*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this the 12th day of July, 2023, the foregoing was served via the court's electronic filing system and/or by email on the following counsel of record:

| | |
|---|---|
| Gary E. Brewer<br>BREWER AND TERRY, PC<br>1702 W. Andrew Johnson Hwy.<br>P.O. Box 2046<br>Morristown, TN 37816<br><br>John W. ("Don") Barrett *(pro hac vice)*<br>Katherine Barrett Riley *(pro hac vice)*<br>BARRETT LAW GROUP, PA<br>P.O. Box 927<br>404 Court Square North<br>Lexington, MS 39095<br>dbarrett@barrettlawgroup.com<br>kbriley@barrettlawgroup.com<br><br>Shannon M. McNulty *(pro hac vice)*<br>CLIFFORD LAW OFFICES, PC<br>120 N. LaSalle St., 36th Floor<br>Chicago, IL 60602<br>smm@cliffordlaw.com<br><br>*Counsel for Plaintiffs* | John R. Jacobson<br>Katharine R. Klein<br>RILEY & JACOBSON, PLC<br>1906 West End Ave.<br>Nashville, TN 37203<br>jjacobson@rjfirm.com<br>kklein@rjfirm.com<br><br>Steven G. Mintz *(pro hac vice)*<br>Terence W. McCormick *(pro hac vice)*<br>MINTZ & GOLD LLP<br>600 Third Avenue, 25th Floor<br>New York, NY 10016<br>mintz@mintzandgold.com<br>mccormick@mintzandgold.com<br><br>*Counsel for Defendants Guidepost Solutions LLC and SolutionPoint International, Inc.* |
| L. Gino Marchetti, Jr.<br>Matthew C. Pietsch<br>TAYLOR, PIGUE, MARCHETTI & BLAIR, PLLC<br>2908 Poston Avenue<br>Nashville, TN 37203<br>gmarchetti@tpmblaw.com<br>matt@tpmblaw.com<br><br>*Counsel for Defendants Southern Baptist Convention, Dr. Ed Litton, and Dr. Bart Barber* | Catherine M. Newman<br>R. Bruce Barze, Jr. *(pending pro hac vice admission)*<br>J. Graham Gilmore *(pending pro hac vice admission)*<br>BARZE TAYLOR NOLES LOWTHER LLC<br>2204 Lakeshore Dr., Suite 425<br>Birmingham, AL 35209<br>cnewman@btnllaw.com<br>bbarze@btnllaw.com<br>ggilmore@btnllaw.com<br><br>*Counsel for Defendant Eric Geiger* |

| | |
|---|---|
| George H. Cate, III<br>Kimberly M. Ingram-Hogan<br>BRADLEY ARANT BOULT CUMMINGS LLP<br>1600 Division St., Suite 700<br>Nashville, TN 37203<br>gcate@bradley.com<br>kingram@bradley.com<br><br>Richard C. Mangelsdorf, Jr.<br>Terri L. Bernal<br>MCANGUS GOUDELOCK & COURIE, LLC<br>P.O. Box 2949<br>120 Brentwood Commons Way, Suite 625<br>Brentwood, TN 37024<br>chuck.mangelsdorf@mgclaw.com<br>terri.bernal@mgclaw.com<br><br>*Counsel for Defendant LifeWay Christian Resources of the Southern Baptist Convention* | James C. Bradshaw III<br>WYATT, TARRANT & COMBS, LLP<br>333 Commerce Street, Suite 1050<br>Nashville, TN 37201<br>jbradshaw@wyattfirm.com<br><br>Byron Leet *(pro hac vice)*<br>WYATT, TARRANT & COMBS, LLP<br>400 West Market Street, Suite 2000<br>Louisville, KY 40202<br>bleet@wyattfirm.com<br><br>Thomas E. Travis *(pro hac vice)*<br>WYATT, TARRANT & COMBS, LLP<br>250 West Main Street, Suite 1600<br>Lexington, KY 40507<br>ttravis@wyattfirm.com<br><br>*Counsel for Defendants The Southern Baptist Theological Seminary and Dr. R. Albert Mohler* |
| Brigid M. Carpenter<br>Ryan P. Loofbourrow<br>BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC<br>1600 West End Avenue, Suite 2000<br>Nashville, Tennessee 37203<br>bcarpenter@bakerdonelson.com<br>rloofbourrow@bakerdonelson.com<br><br>*Counsel for Defendants The Executive Committee of the Southern Baptist Convention, Willie McLaurin, and Rolland Slade* | |

*/s/ Ronald G. Harris*