# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL DAVID SILLS and MARY SILLS,<br><br>                Plaintiffs,<br><br>    v.<br><br>SOUTHERN BAPTIST CONVENTION, a non-profit corporation;<br>DR. ED LITTON, Individually, and as agent and/or employee of SOUTHERN BAPTIST CONVENTION;<br>LIFE WAY CHRISTIAN RESOURCES OF THE SOUTHERN BAPTIST CONVENTION, a non-profit corporation;<br>JENNIFER LYELL, Individually and as agent and/or employee of LIFEWAY CHRISTIAN RESOURCES OF THE SOUTHERN BAPTIST CONVENTION and SOUTHERN BAPTIST CONVENTION;<br>ERIC GEIGER, Individually and as agent and/or employee of LIFEWAY CHRISTIAN RESOURCES OF THE SOUTHERN BAPTIST CONVENTION and SOUTHERN BAPTIST CONVENTION;<br>EXECUTIVE COMMITTEE OF THE SOUTHERN BAPTIST CONVENTION, a non-profit corporation;<br>BART BARBER, Individually and as agent and/or employee of SOUTHERN BAPTIST CONVENTION;<br>WILLIE MCLAURIN, Individually and as agent and/or employee of SOUTHERN BAPTIST CONVENTION and EXECUTIVE COMMITTEE OF THE SOUTHERN BAPTIST CONVENTION;<br>ROLLAND SLADE, Individually and as agent and/or employee of SOUTHERN BAPTIST CONVENTION and EXECUTIVE COMMITTEE OF THE SOUTHERN BAPTIST CONVENTION; | Case No. 3:23-cv-00478<br><br>Judge Campbell<br>Magistrate Judge Frensley |

THE SOUTHERN BAPTIST
THEOLOGICAL SEMINARY, a non-profit
corporation;
DR. R. ALBERT MOHLER, Individually and
as agent and/or employee of THE
SOUTHERN BAPTIST THEOLOGICAL
SEMINARY and SOUTHERN BAPTIST
CONVENTION;
SOLUTIONPOINT INTERNATIONAL, INC.,
a corporation, individually and d/b/a
GUIDEPOST SOLUTIONS; and
GUIDEPOST SOLUTIONS, LLC, a limited
liability corporation and agent of the Southern
Baptist Convention,

               Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANTS SOLUTIONPOINT INTERNATIONAL, INC., AND GUIDEPOST SOLUTIONS LLC TO DISMISS THE COMPLAINT

### INTRODUCTION

Defendants SolutionPoint International, Inc. ("SPI") and Guidepost Solutions LLC ("Guidepost," and together with SPI, the "Guidepost Defendants") respectfully submit this memorandum of law in support of their motion pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6) to dismiss the Complaint of Plaintiffs Michael David Sills ("Dr. Sills") and Mary Sills ("Plaintiffs," or the "Sillses") for lack of subject matter jurisdiction, lack of personal jurisdiction (as to SPI), and/or for failure to state a claim for which relief may be granted.

### PRELIMINARY STATEMENT

Dr. Sills is a former professor in the Southern Baptist Convention (the "SBC") who lives in Mississippi but has chosen to sue in this Court. Evidently, Dr. Sills and his wife are chagrined that he was caught in what he admits was an "inappropriate" and "intimate" relationship with

Defendant Jennifer Lyell. However, at the outset, this Court lacks subject matter jurisdiction over the Sillses' dispute pursuant to the ecclesiastical abstention doctrine. The Guidepost Defendants are sued because Guidepost was engaged by the SBC Task Force which was established to investigate sexual abuse by EC members, retaliation, and intimidation of the victims. Because the Sillses' allegations of defamation and related torts are inextricably intertwined with the SBC's investigation into its internal ecclesiastical affairs, the Court should abstain from jurisdiction.

Apart from the subject matter jurisdiction issue, SPI is also not subject to personal jurisdiction in this Court. There is no general jurisdiction because SPI is neither organized under Tennessee law nor has its principal place of business in this State.

Specific jurisdiction over SPI is also lacking. To begin with, the Sillses are not themselves Tennessee domiciliaries; they are citizens of Mississippi forum shopping in Tennessee—*after having already forum-shopped in an Alabama court only to withdraw that action earlier this year in response to numerous defendants' motions to dismiss for lack of personal jurisdiction.* Michael David Sills and Mary Sills v. Southern Baptist Convention, et al., Case No. CV-2022-902045 (Circuit Court, Mobile County). For purposes of the personal jurisdiction analysis, any injury would have been suffered in Mississippi, not Tennessee.

Nor does the Complaint's conclusory allegation of a conspiracy support the exercise of personal jurisdiction over SPI, particularly as the supposed conspiracy does not target a Tennessee plaintiff or center on the State of Tennessee. Furthermore, not only does SPI lack minimum contacts, but the exercise of jurisdiction would offend notions of fair play and substantial justice.

Apart from the jurisdictional defects in the case, the Complaint also fails to state a claim for relief on the merits. At the threshold, the Complaint fails to give notice of any tortious act on the part of SPI (as opposed to Guidepost, which conducted the review for the SBC and supplied

its report to the SBC Task Force). In fact, the Complaint does not even attempt to identify *any* activity on the part of SPI *at all*, within Tennessee or otherwise. SPI is a holding company that does not engage in any operations. The most that the Complaint alleges regarding SPI is that it is Guidepost's parent company. The Complaint does not state facts regarding independently tortious conduct by SPI or allege vicarious liability, whether under a veil piercing theory or otherwise.

Nor does the Complaint state viable claims on the merits as to either Guidepost or SPI. Critically, Guidepost did not publish the Report—the SBC Task Force did. Guidepost merely delivered the report to its client pursuant to the terms of its engagement letter. To the extent that the Complaint refers to statements attributed to Guidepost, and particularly the Guidepost Report to the SBC Task Force, those communications were protected by the common interest privilege. The privilege arises from the common interest of the SBC Task Force in investigating EC members' responsibility for sexual abuse, retaliation, intimidation of victims and resistance to reform, and Guidepost, which was engaged to conduct a review and report to the SBC Task Force on those issues. Under Tennessee law, statements by Guidepost to its client do not constitute publication for purposes of a claim of libel, thus dooming that cause of action.

In any event, even if Guidepost's communication of the Report to the SBC Task Force were not protected as a privileged communication—and it is—the libel claim fails as to Dr. Sills because he is a limited purpose public figure and the Complaint fails plausibly to state actual malice. In the alternative, even if he were a private figure, the Complaint otherwise fails to state fault amounting to negligence (as to him or Plaintiff Mary Sills).

The remaining claims fail as well. As to the Second Cause of Action for conspiracy, the Complaint fails to state nonconclusory facts supporting a cause of action for civil conspiracy to defame the Sillses. The Third Cause of Action for negligence, gross negligence, and wantonness

is subject to dismissal because (1) it is duplicative of the libel claims and (2) the Guidepost Defendants owed a duty only to the SBC Task Force, not the Sillses. Moreover, to the extent that the Third Cause of Action relies upon allegations of gross negligence or wantonness, the Complaint still fails to state that the Guidepost Defendants consciously acted or failed to act with a reckless or conscious disregard of the Sillses' rights. Finally, the Complaint fails to allege facts amounting to the high standard of fault for the tort of intentional infliction of emotional distress ("IIED").

## FACTS

As noted above, this is the second action brought by the Sillses against Defendants. Earlier this year, the Sillses abandoned a virtually identical action in the Circuit Court for Mobile, Alabama, after the Defendants filed motions to dismiss for lack of subject matter jurisdiction under the ecclesiastical abstention doctrine and for lack of personal jurisdiction.

Dr. Sills was once a "missiologist, professor, and author in the Southern Baptist Convention" before he resigned his professional positions following the disclosure of his "consensual, prurient" and "intimate" relationship with Defendant Jennifer Lyell. (Compl., ¶¶ 6, 14.) Dr. Sills and his wife, Plaintiff Mary Sills, are citizens of the State of Mississippi.

SPI is a holding company with no employees. SPI was incorporated in Delaware and maintained its principal place of business in New York City. (See Declaration of Anthony M. Collura, Chief Legal Officer and Corporate Secretary of SPI ("Collura Decl."), ¶¶ 2-6.) As set forth in the Collura Declaration, SPI has not engaged in continuous and systematic corporate activities in the State of Tennessee. In fact, SPI, as a holding company, does not engage in any separate business operations at all. It merely holds the ownership interest in Guidepost and had no role in the SBC matter whatsoever. (Collura Decl., at ¶¶ 4-6.)

While the Complaint imprecisely ascribes various (largely unidentified) statements to "Defendants," for purposes of the instant motion the Complaint alleges that the Guidepost Defendants published (without a single fact as to how or where such publication was allegedly made by Guidepost) certain allegedly false statements regarding Dr. Sills in a report it prepared for the SBC Task Force relating to widespread allegations of sexual abuse on the part of EC members, retaliation, and intimidation of the victims (the "Report").[1]

According to the Complaint, in Spring 2018, Ms. Lyell notified Defendants Eric Geiger, Lifeway Christian Resources of the Southern Baptist Convention ("LifeWay"), SBC, the EC, Seminary, and R. Albert Mohler about an "affair" with Dr. Sills. (Compl., ¶ 35.) Dr. Sills admitted that he'd had an affair with Ms. Lyell and stepped down from his position at the Seminary. (Compl., ¶ 40.) Ms. Lyell then undertook in March 2019 to write a first-person account of her experiences with Dr. Sills to be published in the *Baptist Press*. (Compl., ¶ 38.)

In a fantastical spin on the Report, Plaintiffs suggest that the retention of the Guidepost Defendants emerged out of a cynical plot to cast Dr. Sills as a scapegoat for all the SBC's other sexual abuse scandals. (Compl., ¶¶ 37-50.) While the Report details incidents of sexual abuse and retaliation against many, many victims, according to Plaintiffs the Report was to be employed as a "narrative" about Dr. Sills in particular that former SBC President Ed Litton, "directed and approved ... with particular focus and disproportionate page space dedicated to Lyell's statements against Sills." (Compl., ¶¶ 49-50.)

---

[1] The matter was extensively covered in Christian publications at the time. See, e.g., https://religionnews.com/2021/03/18/jennifer-lyell-wanted-to-stop-her-abuser-by-telling-her-story-instead-her-life-fell-apart/. Guidepost is unaware that the Sillses at any time refuted any of the allegations that Ms. Lyell and the press reported about Dr. Sills.

But the Complaint does not allege, other than in a purely conclusory fashion, that the Guidepost Defendants agreed with the other Defendants to prepare the Report to achieve this objective. The Complaint does not include even one fact supporting this bald assertion. Moreover, the Complaint also reveals that the scope of the Report was not an investigation into the particulars of Dr. Sills's conduct or that of clergy and employees throughout the SBC, but of "the sex abuse investigation *concerning the Executive Committee.*" (Compl., ¶ 49) (emphasis supplied). Indeed, as the Complaint reveals, the entire reason why the SBC Task Force was established was to address concerns that the EC was controlling the investigation into its own conduct. (Compl., ¶ 48.) Dr. Sills was not a member of the EC and thus it was not even within the scope of Guidepost's engagement to investigate the particulars of Dr. Sills's relationship with Ms. Lyell. (Collura Decl., ¶¶ 21-23 & Exhibit A at ¶ 3.1.)

Although the Complaint also describes other allegedly defamatory statements on the part of Ms. Lyell and the other Defendants, the focus of the claim against the Guidepost Defendants is that they defamed Dr. Sills in the Report by detailing how the EC had sought to soften the March 2019 *Baptist Press* article and undermine Ms. Lyell for purposes of institutional damage control. The Complaint alleges that the Report stated:

> [Lyell] told Dr. Mohler and her boss at Lifeway that any sexual contact she had with Professor Sills had been nonconsensual and involved violence, threats of violence against her and others, and coercion. Dr. Mohler clearly understood not only the nature of Ms. Lyell's disclosure but expressly stated that he believed Ms. Lyell and stated that it was his opinion that she had been abused by Professor Sills.

(Compl., ¶ 57.)

But on the face of the Complaint, as to Ms. Lyell and Dr. Sills, the essence of the Report was *not* an investigation into what had transpired between the two during the period of the alleged abuse. Rather, the scope of the Guidepost Defendants' engagement was a review of the *EC's*

conduct and, in this context, concerned how the EC had wrongly sought to soften Ms. Lyell's account of the affair in the *Baptist Press* (which the Complaint calls "the public relations arm" of the EC, see Compl., ¶ 38) and minimize the damage to the SBC. Specifically, with respect to Dr. Sills, the Report focused upon how the March 2019 *Baptist Press* article had been reworded to leave room for a reader to infer that the relationship may have been consensual.

> The Complaint effectively admits as much, quoting the Report as follows:

> Rather than publishing Ms. Lyell's corroborated account as BP staff had originally drafted it, the account was changed to read as if Ms. Lyell was consensually involved with her alleged abuser. The article as published reported that Ms. Lyell alleged that she had a "morally inappropriate relationship" with her former seminary professor, making it appear that she engaged in a consensual sexual relationship with him.

(Compl., ¶ 58.)

While the Complaint recites that "[o]n May 22, 2022, Defendants SPI and Guidepost published the Report" (Compl., ¶ 57), it bears repeating that Guidepost did not publish the Report, it merely delivered the report to the SBC Task Force in accordance with the terms of Guidepost's engagement letter with the SBC. (Collura Decl., ¶ 26). The May 22, 2022 publication was made by the SBC Task Force on its own website, not the Guidepost Defendants (see id.), and the Complaint does not allege any other publication of the Report on the part of the Guidepost Defendants.

Finally, the Complaint does not particularly describe how the Guidepost Defendants injured Plaintiff Mary Sills in the Report or in any other way. For the reasons that follow, the Complaint should be dismissed.

* * * * *

## ARGUMENT

To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and state a claim for relief that is plausible on its face. Hensley Mfg. v. Propride, Inc., 579 F.3d 603, 609 (6th Cir. 2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[W]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted). While the Court should accept "well-pleaded" facts as true in determining whether a facially plausible claim exists, it "need not accept as true a legal conclusion couched as a factual allegation." Hensley Mfg., 579 F.3d at 609. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

## I. THE SILLSES' COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO THE ECCLESIASTICAL ABSTENTION DOCTRINE.

The United States Supreme Court has consistently held that the ecclesiastical abstention doctrine prohibits state courts from delving into matters of "'theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them.'" Serbian E. Orthodox Diocese v. Milivojevich, 426 U.S. 696, 714 (1976) (quoting Watson v. Jones, 80 U.S. 679 (1871)). The doctrine is an extension of the Free Exercise Clause and the Establishment Clause of the First Amendment.

In re Diocese of Lubbock, 624 S.W.3d 506 (Tex. 2021), cert. denied, 142 S. Ct. 434 (2021), is directly on point with the facts of this case. There, the Supreme Court of Texas granted mandamus and directed dismissal of a deacon's defamation claim even though a Catholic diocese publicly disclosed a report listing his name along with other clergy who had been credibly accused of sexual abuse. In Diocese of Lubbock, the deacon argued that the public dissemination of the

report was ineligible for protection under the ecclesiastical abstention doctrine because it post-dated the church's investigation and concerned events long past. Although the intermediate Texas court had accepted the deacon's argument, the Supreme Court of Texas squarely rejected it and reversed, holding that:

> Whether a party's claims against a church are barred by ecclesiastical abstention, though, is based not on whether a publication goes beyond church walls but rather whether the substance and nature of the plaintiff's claims implicate ecclesiastical matters, including a church's internal affairs, governance, or administration .... The court of appeals' focus on the publication ignores the real critical nuance in this case: that Guerrero's suit is "inextricably intertwined" with the Diocese's decision to investigate its own clergy, judicial review of which would impermissibly interfere with a church's ability to regulate the character and conduct of its leaders.

Diocese of Lubbock, 624 S.W.3d at 516 (internal citations omitted). See also Kaufmann v. Sheehan, 707 F.2d 355, 358-59 (8th Cir. 1983) (dismissing Catholic priest's defamation claims on ground that they "relate to his status and employment as a priest, and possibly to other matters of concern with the church and its hierarchy, and go to the heart of internal church discipline, faith, and church organization, all involved with ecclesiastical rule, custom and law").

The instant case is a paradigmatic illustration of why the ecclesiastical abstention doctrine precludes defamation actions. Here, upon motion of the Messengers at its 2021 Nashville Convention, the SBC urgently investigated a scandal that directly implicated a matter of internal governance of the nation's largest Protestant body and commissioned Guidepost to investigate and report back to the SBC Task Force. And as to Dr. Sills, the Report was concerned with an even more clearly institutional matter—the EC's policing of *its own internal response* to Ms. Lyell's allegations through efforts to soften the reporting of the matter in the *Baptist Press*. Thus, as in Diocese of Lubbock, the Sillses' claims are "inextricably intertwined" with the SBC's institutional response to the sexual abuse crisis and the conduct of its governing body in particular. 624 S.W.2d at 516. See also Ogle v. Church of God, 153 F. App'x 371, 376 (6th Cir. 2005)

(rejecting bishop's claim that resolution of libel claim under neutral principles implicated only secular considerations and finding court lacked subject matter jurisdiction where bishop's defamation and related tort claims arose out of church investigation and disciplinary action). Cf. Ogle v. Hocker, 279 F. App'x 391, 396 (6th Cir. 2008) (later action by same plaintiff did not require application of abstention doctrine to libel claims arising out of statements by accuser from pulpit because they did not implicate pastor-parishioner discipline where bishop did not belong to or attend defendant's church). Accordingly, the Complaint should be dismissed.

## II.     THE COURT LACKS PERSONAL JURISDICTION OVER SPI.

"'The Tennessee long-arm statute has been interpreted as coterminous with the limits on personal jurisdiction imposed by the due process clause.'" Bridgeport Music, Inc. v. Still N The Water Pub., 327 F.3d 472, 477 (6th Cir. 2003) (quoting Payne v. Motorists' Mut. Ins. Cos., 4 F.3d 452, 454 (6th Cir. 1993)). The Due Process Clause permits the exercise of personal jurisdiction only when a defendant has purposefully established "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citations omitted).

The jurisdiction conferred by "minimum contacts" can take two forms: general or specific. Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003). General jurisdiction is present when a defendant's contacts with the forum state are "substantial" and "continuous and systematic," such that a state may exercise personal jurisdiction over a defendant for all purposes. Youn, 324 F.3d at 418. Specific jurisdiction is present when the claims in the case arise from or are related to the defendant's contacts with the forum. See Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005). Here, SPI is subject to neither general jurisdiction nor specific jurisdiction in Tennessee.

A.    SPI Is Not Subject to General Jurisdiction In Tennessee.

General jurisdiction may only be asserted over defendants whose affiliation with the forum is so "'continuous and systematic' as to render them essentially at home in the forum State." Daimler AG v. Bauman, 571 U.S. 117, 127 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). Corporations are generally found to be "at home" only in their place of incorporation and their principal place of business. As set forth in the accompanying Declaration of Anthony Collura, SPI is a Delaware corporation with its principal place of business in New York City. SPI does not have any employees in Tennessee or elsewhere. Accordingly, following Daimler, SPI is not "at home" in Tennessee.

While Daimler allowed for the theoretical possibility of an "exceptional case" in which a corporation's "operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature" as to make it "at home" for general jurisdiction purposes, Daimler, 571 U.S. at 139 & n.19, the Complaint in this action alleges no basis whatsoever for such a finding with respect to SPI, nor could it. SPI maintains no "operations" as such in Tennessee. In fact, SPI is not engaged in any independent business operations whatsoever. It is merely a holding company which owns Guidepost. It did not participate in the SBC investigation. As stated in the Collura Declaration:

- SPI maintains a mailing address in New York at Guidepost's office; however Guidepost's officers and employees manage the day-to-day operations of Guidepost, and Guidepost has its own Board of Directors separate from SPI's.

- SPI does not have an office, real estate, personal property, assets, or operations in Tennessee.

- SPI does not possess computer servers, other electronic equipment, or records in the State of Tennessee.

- SPI does not maintain any bank accounts in the State of Tennessee. SPI's bank accounts and financial records are separate from Guidepost.

12

- SPI has not borrowed money in the State of Tennessee.

- SPI has not received any financial benefits, privileges, subsidies, incentives, compensation, or protection from the State of Tennessee.

- SPI has not paid taxes in the State of Tennessee.

- SPI has not registered with the Secretary of State to do business in Tennessee.

- SPI does not have a registered agent in the State of Tennessee.

(See Collura Decl., ¶¶ 7-17.) SPI does not itself engage in any business in Tennessee. Any investigative work or other business in Tennessee is conducted by Guidepost. (Id. at ¶ 18.) Accordingly, SPI is not "at home" in Tennessee and is not subject to general jurisdiction.

    B.    SPI Is Not Subject to Specific Jurisdiction In Tennessee.

        1.    The Complaint Does Not Allege any In-State Conduct on the Part of SPI.

For a court to have specific jurisdiction, a plaintiff must plead specific facts sufficient to satisfy the three-part test established in Southern Mach. Co. v. Mohasco Industries, Inc.:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

401 F.2d 374, 381 (6th Cir. 1968). Purposeful availment may only be found if the defendant's contacts with the forum "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (emphasis in original), and are such that he "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980).

 SPI did not have any forum contacts and did not purposefully avail itself of the privilege of acting in the forum state. Its only connection to the action is that it owns Guidepost. However, it is well settled that "a company does not purposefully avail itself merely by owning all or some

of a corporation subject to jurisdiction." <u>Dean v. Motel 6 Operating L.P.</u>, 134 F.3d 1269, 1274 (6th Cir. 1998). Here, any investigative work in Tennessee was done by Guidepost investigators, not by SPI. SPI did not engage in any activities in Tennessee or elsewhere in connection with the SBC matter and the Complaint is devoid of any assertion to the contrary.

        2.      The Complaint Does Not Support the Exercise of Personal Jurisdiction <u>Under a Conspiracy Theory</u>.

The only other basis upon which the Sillses might seek to base personal jurisdiction would be their allegation of a conspiracy among the Guidepost Defendants and the other Defendants to defame them. But this theory fails as well.

*First,* it is doubtful that the conspiracy theory of personal jurisdiction is viable at all. The Sixth Circuit has not expressly adopted the conspiracy theory of personal jurisdiction. <u>See</u> <u>Chrysler Corp. v. Fedders Corp.</u>, 643 F.2d 1229, 1237 (6th Cir. 1981) (neither recognizing nor rejecting conspiracy jurisdiction). Moreover, even if allegations of a conspiracy historically could support specific jurisdiction, those earlier decisions are now untenable. In <u>Walden v. Fiore</u>, 134 S. Ct. 1115, 1122 (2014) the Supreme Court established that mere foreseeability or knowledge that extraterritorial conduct will produce harmful effects in the forum state is insufficient to constitute the "express aiming" or "purposeful targeting" necessary to support jurisdiction. Rather, as the Supreme Court stated in <u>Walden</u>, "it is the defendant, not the plaintiff *or third parties* [such as the SBC, Litton, or other Defendants], who must create contacts with the forum State." <u>Walden</u>, 134 S. Ct. at 1126 (emphasis added). <u>See</u> <u>also</u> <u>EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.</u>, 246 F. Supp. 3d 52, 91 (D.D.C. 2017), <u>aff'd</u>, 894 F.3d 339 (D.C. Cir. 2018), <u>cert</u>. <u>denied</u>, 139 S. Ct. 1324 (2019) (declining to resolve issue, but requiring plaintiff to "plead, at a minimum, that the defendant *knew* his co-conspirator was carrying out acts in furtherance of the conspiracy in the forum") (emphasis in original). The Complaint does not allege any such knowledge on SPI's part.

Thus, even if another Defendant committed an act within Tennessee, that would no longer be jurisdictionally relevant after Walden in determining whether SPI had *itself* created a relationship with Tennessee (or even Mississippi, where Plaintiffs reside).

*Second,* even if the doctrine of conspiracy-based jurisdiction were still valid after Walden, a plaintiff cannot predicate conspiracy jurisdiction upon rank speculation or conclusory allegations of conspiracy. See, e.g., Am. Copper & Brass, Inc. v. Mueller Eur., Ltd., 452 F. Supp. 2d 821, 832 (W.D. Tenn. 2006). See also Chrysler Corp., supra, 643 F.2d at 1237 (neither recognizing nor rejecting conspiracy jurisdiction but affirming dismissal where plaintiff failed to make a "minimal factual showing" and denying jurisdictional discovery). Likewise, in this case the Complaint lacks sufficiently particular allegations of a conspiracy between SPI and any other Defendant.[2]

3. The Exercise of Personal Jurisdiction Would Offend Notions of Fair Play and Substantial Justice.

Even if minimum contacts existed between SPI and the forum (which is not conceded), the exercise of jurisdiction in Tennessee would violate traditional notions of "fair play and substantial justice." International Shoe v. Washington, 326 U.S. 310, 320 (1945)). The factors governing the due process analysis are: "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980). The Sillses fail the "fair play" test of personal jurisdiction altogether. The Plaintiffs reside in Mississippi (not Tennessee) and have sued a host of non-domiciliaries in what can only be described as an exercise in forum

---

[2]  Plaintiffs could not seriously make such as argument because, of course, Guidepost was engaged to investigate the other Defendants.

shopping, *having already done the same thing once before in an Alabama court.* Thus, the exercise of personal jurisdiction over SPI would not comport with fundamental due process.

## III.    THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION AGAINST THE GUIDEPOST DEFENDANTS.

A.    <u>The Complaint Fails to State a Claim Against SPI Under Any Theory</u>.

The Complaint indiscriminately lumps SPI and Guidepost together as Defendants but does not identify any tortious conduct on the part of SPI. The only notice the Complaint gives is that SPI owns Guidepost. (Compl., ¶¶ 27-28.) The Complaint does at points specify that Guidepost was the "investigator" (Compl., ¶ 47), which it was, and refers to the engagement letter between the SBC and Guidepost (to which SPI was not a party). (Compl., ¶ 64; Collura Decl., ¶¶ 4, 20 & <u>Exhibit A</u>). But the Complaint does not state any basis for finding that SPI performed any act independent of Guidepost and does not state grounds upon which to pierce the corporate veil. Accordingly, the Complaint must be dismissed *in toto* as to SPI.

B.    <u>Tennessee Law Applies to the Sillses' Causes of Action</u>.

Because the parties in this diversity action are domiciled in several different states, this Court must consider whether it is necessary to resolve a conflict of laws. To the extent that any such analysis is required, in Tennessee the state with the most significant relationship to the occurrence and the parties applies. See <u>Seals v. Delta Air Lines, Inc.</u>, 924 F. Supp. 854, 859 (E.D. Tenn. 1996) (citing <u>Hataway v. McKinley</u>, 830 S.W.2d 53, 55 (Tenn. 1992)). In the instant case, Mississippi and Tennessee are the two states that likely have the most significant relationship to the Sillses' claims. On the one hand, Mississippi is the domicile of the Plaintiffs. (Compl., ¶¶ 14-15.) On the other hand, Plaintiffs chose Tennessee as the forum in which to bring their claims and Tennessee is the domicile of the largest grouping of the Defendants, *i.e.,* the SBC, the EC, Lyell, Lifeway, and McLaurin. (Compl., ¶¶ 16, 19, 20, 24, 25.) In addition, Plaintiffs allege that "a

substantial number" of the acts complained of took place in Nashville, TN, including acts allegedly performed by Defendants who are not otherwise domiciled in Tennessee. (Compl., ¶¶ 16-28.) Significantly, Tennessee was the state from which the allegedly defamatory statements emanated.[3] In multistate defamation cases such as the instant case, where a state other than the plaintiff's domicile has a greater interest (such as the state from which the allegedly defamatory statement was published, which in this case was Tennessee), that state's law will apply. See, e.g., Davis v. Costa-Gavras, 580 F. Supp. 1082 (S.D.N.Y. 1984) (citing Restatement (Second) of Conflict of Laws § 150 cmt. (e) (1977)). And, in any event, as between Mississippi and Tennessee, the Guidepost Defendants are unaware of any meaningful difference between the laws of those two jurisdictions.[4] Accordingly, the Court should apply Tennessee law.

---

[3]    See SBC website at https://www.sataskforce.net/updates/guidepost-solutions-report-of-the-independent-investigation, and Collura Decl., at ¶ 26.

[4]    Compare Sullivan v. Baptist Mem'l Hosp., 995 S.W.2d 569, 571 (Tenn. 1999) (elements of libel are that a party published a statement with knowledge that the statement is false and defaming to the other or with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement) with Whitten v. Commercial Dispatch Publishing Co., Inc., 487 So.2d 843, 844 (Miss. 1986) (same as Tennessee law); Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 703 (Tenn. 2002) (defining civil conspiracy under Tennessee law as "combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff") with Wells v. Shelter Gen'l Ins. Co., 217 F. Supp. 2d 744, 753-54 (S.D. Miss. 2002) (same for civil conspiracy in Mississippi); Byers v. Middle Tennessee Elec. Membership Corp., 467 F.2d 641, 642 (6th Cir. 1972) (elements of willful, wanton or gross negligence under Tennessee law) with Davis v. City of Clarksdale, 18 So. 3d 246, 249 (Miss. 2009) (Mississippi law); and Goldfarb v. Baker, 547 S.W.2d 567, 569 (Tenn. 1977) (under Tennessee law conduct amounting to IIED "must be so outrageous in character and extreme in degree as to be beyond the pale of decency and that it must have caused serious mental injury to the plaintiff") with Pierce v. Cook, 992 So. 2d 612, 626-27 (Miss. 2008) (in Mississippi IIED requires conduct causing emotional injury which "evokes outrage or revulsion in civilized society"). Thus, there does not appear to be a meaningful conflict between two states' laws.

17

C.    The First Cause of Action Fails to State a Claim for Defamation.

To establish a prima facie case of defamation, the plaintiff must prove that (1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. Sullivan v. Baptist Mem'l Hosp., 995 S.W.2d at 571. Here, the Complaint fails to state a claim for defamation for two reasons.[5]

*First,* on the face of the Complaint, Guidepost's delivery of the Report to the SBC Task Force pursuant to the terms of its letter of engagement did not constitute a publication at all under Tennessee law. Because the affirmative defense of lack of publication appears on the face of the Complaint, it may be raised by a pre-answer motion under Rule 12(b). See Delauter v. Nissan Supplemental Exec. Ret. Plan II, No. 3:20-cv-00609, 2021 WL 1530926, at *3 (M.D. Tenn. Apr. 19, 2021). The mere bald statement that Guidepost "published" the Report is not supported in the Complaint with a single fact as to how or where Guidepost allegedly published the Report. Tennessee protects statements made in furtherance of a common interest and holds that as a matter of law any such communications negate the element of publication for purposes of a claim of defamation. See Woods v. Helmi, 758 S.W.2d 219 (Tenn. Ct. App. 1988), appeal denied (Tenn. 1988) (communications between persons in "need to know" relationship held not a publication for purposes of libel claim even though publisher of statement and recipient worked for different corporate entities, where the communication was within a shared interest).

---

[5] To the extent the Complaint also pleads the libel claim as libel per se, under Tennessee law a claim of libel per se is redundant of the libel claim and is dismissible. See Memphis Pub. Co. v. Nichols, 569 S.W.2d 412, 419 (Tenn. 1978).

Here, the Complaint reveals that the Report was commissioned "to investigate the SBC's sexual abuse crisis," a matter of urgent concern to the SBC. (Compl., ¶ 50.) [6] In investigating, compiling facts and presenting them to the SBC Task Force, the Guidepost Defendants (but really, Guidepost) were plainly communicating with their client within the boundaries of their common concern to determine the breadth of the EC's responsibility for sexual abuse and subsequent efforts at a cover up on the part of the EC.

It should be repeated that under Tennessee law, the communication between Guidepost and the SBC Task Force is not a publication at all for purposes of libel law, and therefore the required element of publication to a third party is not present. Accordingly, the allegation of a libelous publication is not entitled to any presumption of truth for purposes of this motion. See, e.g., Engagement Letter, ¶¶ 3.4-3.6. [7] As stated above, the SBC Task Force, *not Guidepost*, published the Report on its website on May 22, 2022, *i.e.,* after Guidepost submitted the Report to its client, a point that Dr. Sills is aware of but misleadingly seeks to obscure (as he did in his Alabama complaint). [8] Pursuant to Fed. R. Evid. 201(c), Guidepost requests that the Court take judicial

---

[6]     While the Complaint goes on to allege that the Guidepost engagement was "with particular focus on and disproportionate page space dedicated to Lyell's statements against Plaintiff Sills" (id.), the letter of engagement to which the Complaint refers belies this allegation and makes *no* reference to the Sillses (see Compl., ¶ 64 & n. 13, citing Report of the Independent Investigation Appendices Volume 1, sections 5.1, 7.2 and 8.1). Rather, the engagement specifically concerned investigation into allegations of abuse by Executive Committee members; mishandling of those allegations when they were reported; mistreatment or intimidations of the victims; and resistance to reform initiatives. See also Collura Decl. at Exhibit A, ¶ 3.1.

[7]     Moreover, even if the issue were examined through the prism of a qualified privilege (as opposed to a complete absence of publication under Woods), the burden would shift to the plaintiff to plead an absence of good faith or actual malice to overcome the privilege. Woods, 758 S.W.2d at 224. The Complaint comes nowhere near alleging facts supporting any inference that Guidepost had displayed previous ill will or hostility toward the Sillses, made threats, previously defamed them, or otherwise exhibited common law malice or bad faith. Nor could it; the Sillses are strangers to the Guidepost Defendants.

[8]     https://www.sataskforce.net/updates/guidepost-solutions-report-of-the-independent-investigation

notice of the SBC Task Force's publication of the Report on its website on May 22, 2022, for the fact of the website's publication to indicate what was in the public realm, who published it, and when. See Benak ex rel. All. Premier Growth Fund v. All. Cap. Mgmt. L.P., 435 F.3d 396, 401 (3d Cir. 2006); Harbison v. Hamilton Cnty., Tenn., No. 1:11-CV-178, 2012 WL 1071259, at *3 (E.D. Tenn. Mar. 29, 2012) (citing Weiner v. Klais & Co., 108 F.3d 86-88-89 (6th Cir. 1999)). The Complaint identifies no other publication of the Report on *Guidepost's* part. To the extent that the Court wishes to consider it, Guidepost also offers the Collura Declaration to confirm that only the SBC Task Force, and not Guidepost, published the Report publicly.

*Second,* even if the statements in the Report were not exempted from liability under Wood—and they are—the Complaint fails to state a cognizable claim that the Guidepost Defendants otherwise published the allegedly false statements with the requisite level of fault. At the outset, the Guidepost Defendants note Dr. Sills's own allegation that he was a "missiologist, professor, and author in the SBC" (Compl., ¶ 32). Accordingly, Dr. Sills was at least a limited purpose public figure drawn into the vortex of the sexual abuse crisis, see Gertz v. Robert Welch, Inc., 418 U.S. 323, 351 (1974), and thus was required to allege actual malice in support of his cause of action for libel. However, nothing in the Complaint suggests or supports an inference that Guidepost *knew* of any false statement regarding the Sillses or, for purposes of a claim of recklessness, "in fact entertained serious doubts as to the truth of [the Report's] publication, and that publishing, with such doubt, show[ed] reckless disregard for truth or falsity." Moore v. Bailey, 628 S.W.2d 431, 434 (Tenn. Ct. App. 1981) (quoting St. Amant v. Thompson, 390 U.S. 727, 731 (1968)). Indeed, the Complaint reveals that Ms. Lyell's allegations were published in the *Baptist Press* and by Ms. Lyell years before Guidepost was engaged by the SBC. Nowhere do the Sillses assert that they had previously put Guidepost on notice that her statements were false by refuting

the public reports of Ms. Lyell's allegations. As set forth above, Guidepost's letter of engagement did not authorize Guidepost to investigate the allegations against Dr. Sills and, regardless, a failure to investigate does not constitute evidence of recklessness. Harte-Hanks Commc'ns Inc. v. Connaughton, 491 U.S. 657 (1989). Thus, as to the Guidepost Defendants the Sillses' cause of action for libel fails as a matter of law.

However, assuming, without conceding, Dr. Sills's *ipse dixit* that he is a private figure (see id.), the Complaint still fails plausibly to allege that Guidepost published the Report negligently. The Complaint fails to identify any legal requirement that the Guidepost Defendants ask the Sillses, their pastor, or any other person possibly sympathetic to them for comment on the allegations of the Report. As stated above, as to the Sillses, the Complaint itself confirms that Guidepost was only engaged to investigate sexual abuse allegations if those allegations concerned conduct on the part of the EC or its members. (Compl., ¶¶ 48-49.) Dr. Sills was not a member of the EC. By the terms of the Engagement Letter, the object of the Report was not to make specific findings regarding Dr. Sills's inappropriate affair with Ms. Lyell but to assess and report *the EC's response* to Ms. Lyell's allegations. Specifically, the Report detailed whether the EC wrongfully sought to blunt the force of her story in an article published in the *Baptist Press* and whether by changing the original draft of the article the EC caused readers to have false impression that the relationship was consensual rather than abusive. (Compl., ¶ 58.)

Finally, the Guidepost Defendants note the allegation that "Defendants published on page 169 of their "List of Abusers" a photo of Plaintiff Sills, styled as a "mug shot" alongside which Defendants labeled Plaintiff Sills as an abuser." (Compl., ¶ 63.). To begin with, the Complaint does not identify *Guidepost* as the publisher of that statement or allege to whom it published it or when (it cannot because Guidepost didn't), and thus it cannot support a claim of libel against

Guidepost for purposes of Rule 12(b)(6). But in any event, to avoid any doubt, as Guidepost explained in an affidavit that it filed in the former action in Alabama in opposition to the Sillses' motion for jurisdictional discovery, that list was prepared and published by the SBC Executive Committee, and while it was furnished to Guidepost, it was not appended to the Report or otherwise published by Guidepost. (Collura Decl., ¶ 28 & Exhibit B at ¶¶ 9-10.) This matter can be verified simply by looking at the SBC website. It is troubling that the Sillses have persisted in suggesting to this Court that Guidepost published the "List of Abusers" after having already been put on notice to the contrary in the Alabama action. Thus, the Complaint fails to state fault on the Guidepost Defendants' part.

D.    The Second Cause of Action Fails to State a Claim for Conspiracy.

The tort of civil conspiracy to defame consists of the following elements: "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." O'Dell v. O'Dell, 303 S.W.3d 694, 697 (Tenn. Ct. App. 2008). Furthermore, conspiracy claims must be pled with "some degree of specificity," and conclusory allegations of conspiracy are insufficient to state a viable claim. Id. Each conspirator must have the intent to accomplish an unlawful purpose by unlawful means for purposes of damaging the plaintiff, and each conspirator must know of the other conspirator's intent to do the same. JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC, 615 F. Supp. 3d 750, 782 (M.D. Tenn. 2022). The Complaint fails plausibly to allege nonconclusory facts to establish that the Guidepost Defendants entered into a specific agreement with the other Defendants to harm the Sillses. Nor could it—as the Complaint itself reveals, the scope of the Report was "the SBC's sexual abuse crisis" and specifically the conduct of the EC (Compl., ¶ 50), not the Sillses. This claim must be dismissed.

E.  The Third Cause of Action Fails to State a Claim for Negligence.

As a threshold matter, the Third Cause of Action for negligence, gross negligence, and "wantonness" is predicated entirely upon the publication of the Report. It therefore duplicates the First Cause of Action for libel and should be dismissed on that basis alone.

In any event, the negligence claim is defective as a matter of law. The elements of a claim for negligence are: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995). The threshold question of whether the defendant owed the plaintiff a duty of care is an issue of law to be determined by the court. See West v. E. Tennessee Pioneer Oil Co., 172 S.W.3d 545, 550 (Tenn. 2005). Fundamentally, where there is no duty there can be no negligence.

As the Complaint itself alleges, Guidepost was conducting an investigation pursuant to an engagement by the SBC, acting through the SBC Task Force. It follows that, as a matter of law, the Guidepost Defendants undertook no duty at all to the Sillses and the claim for negligence should be dismissed as to the Guidepost Defendants. Guidepost's duty is analogous to that of an auditor, and by the terms of the engagement that duty is generally limited to the SBC Task Force, the client with which Guidepost was in privity. See Delmar Vineyard v. Timmons, 486 S.W.2d 914, 921 (Tenn. Ct. App. 1972). See also Brackin v. Trimmier Law Firm, 897 So. 2d 207, 226 (Ala. 2004) (auditor engaged by law firm to investigate misconduct at credit union owed a duty only to her principals, not to the subject of the investigation). The absence of any duty is doubly clear where Mrs. Sills is concerned, as the Complaint nowhere alleges that the Guidepost Defendants were engaged to investigate any misconduct on her part rather than the EC's (or that the Report even mentioned any).

Nor does the Complaint plausibly allege gross negligence or wantonness. To prevail on a theory of gross negligence plaintiff must allege conduct amounting to an "utter unconcern for the safety of others, or one done with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law." Ruff v. Memphis Light, Gas & Water Div., 619 S.W.2d 526, 528 (Tenn. Ct. App. 1981). "Wantonness" is similarly predicated upon recklessness and constitutes "intentional wrongful conduct, done either with knowledge that serious injury to another will probably result, or with a wanton and reckless disregard of the possible results." 8 Tenn. Prac. Pattern Jury Instr. – Civil § 3.30 (2022 ed.). But as noted above, the Complaint fails plausibly to allege facts amounting to recklessness. Thus, the Complaint alleges neither gross negligence nor wantonness and the Third Cause of Action should be dismissed.

F. The Fourth Cause of Action Fails to State a Claim for Intentional Infliction of Emotional Distress.

A plaintiff asserting a claim for IIED must plead and prove that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff. See Lourcey v. Estate of Scarlett, 146 S.W.3d 48, 51 (Tenn. 2004). Moreover, IIED is a very narrow tort in Tennessee and "recovery for intentional infliction of emotional distress is limited to mental injury which is 'so severe that no reasonable [person] would be expected to endure it.'" Joiner v. Meharry Med. Coll., No. 3:18-CV-00863, 2020 WL 7027505, at *14 (M.D. Tenn. Nov. 28, 2020) (quoting Arnett v. Domino's Pizza I, L.L.C., 124 S.W.3d 529, 540 (Tenn. Ct. App. 2003)).

This is not such a case. Apart from parroting the "extreme and outrageous" standard of conduct required for a claim of IIED, the Sillses' Complaint does not identify what it is that makes Guidepost's conduct extreme or outrageous other than the alleged falsity of the statements in the Report (or elsewhere). The Sillses' Fourth Cause of Action is actually nothing more than a

duplicative, repackaged version of their defective libel claim and does not allege mental anguish in other than a purely formulaic manner. See, e.g., Levin v. McPhee, 917 F. Supp. 230, 242 (S.D.N.Y. 1996), aff'd, 119 F.3d 189 (2d Cir. 1997) ("[r]ecovery on a theory of intentional infliction of emotional distress for the emotional distress caused by publication of a libel has been held to be duplicative and more properly addressed within the context of a libel suit"). See also In re Byrnes, 638 B.R. 821, 831 (Bankr. D.N.M. 2022) and cases there cited.

## CONCLUSION

The Complaint should be dismissed with prejudice, with costs and attorney's fees as against the Guidepost Defendants.

Respectfully submitted,

**RILEY & JACOBSON, PLC**

s/ John R. Jacobson
John R. Jacobson, Esq. (BPR # 014365)
Katharine R. Klein, Esq. (BPR # 019336)
1906 West End Avenue
Nashville, TN 37203
Telephone: (615) 320-3700
jjacobson@rjfirm.com
kklein@rjfirm.com

-and-

**MINTZ & GOLD LLP**
Steven G. Mintz (admitted pro hac vice)
Terence W. McCormick (admitted pro hac vice)
600 Third Avenue – 25th Floor
New York, NY 10016
Telephone: (212) 696-4848
mintz@mintzandgold.com
mccormick@mintzandgold.com

*Counsel for SolutionPoint International, Inc. and Guidepost Solutions LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing has been served via the ECF

Court System on this 12th day of July, 2023 on the following:

Gary E. Brewer
Brewer and Terry, P.C.
1702 W. Andrew Johnson Hwy.
P.O. Box 2046
Morristown, TN 37816
robin@brewerandterry.com

John W. Barrett
Katherine Barrett Riley
Barrett Law Group, P.A.
P.O. Box 927
404 Court Square North
Lexington, MS 39095
dbarrett@barrettlawgroup.com
kbriley@barrettlawgroup.com

Shannon M. McNulty
Clifford Law Office, P.C.
120 N. LaSalle Street, 36th Floor
Chicago, IL 60602
smm@cliffordlaw.com

*Attorneys for Plaintiffs*

Catherine M. Newman
R. Bruce Barze, Jr.
J. Graham Gilmore
Barze Taylor Noles Lowther LLC
2204 Lakeshore Drive, Suite 425
Birmingham, AL 35209
cnewman@btnllaw.com
bbarze@btnllaw.com
ggilmore@btnllaw.com

*Attorneys for Eric Geiger*

Ronald G. Harris
Philip N. Elbert
Olivia R. Arboneaux
Neal & Harwell, PLC
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
rharris@nealharwell.com
pelbert@nealharwell.com
oarboneaux@nealharwell.com

*Attorneys for Jennifer Lyell*

Gino Marchetti, Jr.
Matthew C. Pietsch
Taylor, Pigue & Marchettie & Blair, PLLC
2908 Poston Avenue
Nashville, TN 37203
gmarchetti@tpmblaw.com
matt@tpmblaw.com

*Attorneys for Southern Baptist Convention, Dr. Ed Litton and Dr. Bart Barber*

George H. Cate, III
Kimberly M. Ingram-Hogan
Bradley Arant Boult Cummings LLP
1600 Division Street, Suite 700
Nashville, TN 37203
gcate@bradley.com
kingram@bradley.com

*Attorneys for LifeWay Christian Resources*

James C. Bradshaw, III
Wyatt, Tarrant & Combs, LLP
333 Commerce Street, Suite 1050
Nashville, TN 37201
jbradshaw@wyattfirm.com

Byron Leet
Thomas E. Travis
Wyatt, Tarrant & Combs, LLP
400 West Market Street, Suite 2000
Louisville, KY 40202
bleet@wyattfirm.com
ttravis@wyattfirm.com

*Attorneys for The Southern Baptist Theological Seminary and Dr. R. Albert Mohler*

Brigid M. Carpenter
Ryan P. Loofbourrow
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
1600 West End Avenue, Suite 2000
Nashville, TN 37203
bcarpenter@bakerdoneslon.com
rloofbourrow@bakerdonelson.com

*Attorneys for Executive Committee of Southern Baptist Conventions, Willie McLaurin and Rolland Slade*

Richard C. Mangelsdorf, Jr.
Terri L. Bernal
McAngus Goudelock & Courie, LLC
P.O. Box 2949
120 Brentwood Commons Way, Suite 625
Brentwood, TN 37024
Chuck.mangelsdorf@mcgclaw.com
Terri.bernal@mgclaw.com

*Attorneys for Lifeway Christian Resources of the Southern Baptist Convention*

s/ John R. Jacobson