# Exhibit B

| | |
|---|---|
| MICHAEL DAVID SILLS and MARY SILLS, | |
| Plaintiffs, | |
| v. | CASE NO. CV-2022-902045 |
| SOUTHERN BAPTIST CONVENTION, a non-profit corporation; DR. ED LITTON, Individually, and as agent and/or employee of SOUTHERN BAPTIST CONVENTION; LIFEWAY CHRISTIAN RESOURCES OF THE SOUTHERN BAPTIST CONVENTION, a non-profit corporation; JENNIFER LYELL, Individually and as agent and/or employee of LIFEWAY CHRISTIAN RESOURCES OF THE SOUTHERN BAPTIST CONVENTION and SOUTHERN BAPTIST CONVENTION; ERIC GEIGER, Individually and as agent and/or employee of LIFEWAY CHRISTIAN RESOURCES OF THE SOUTHERN BAPTIST CONVENTION and SOUTHERN BAPTIST CONVENTION; EXECUTIVE COMMITTEE OF THE SOUTHERN BAPTIST CONVENTION, a non-profit corporation; BART BARBER, Individually and as agent and/or employee of SOUTHERN BAPTIST CONVENTION; WILLIE MCLAURIN, Individually and as agent and/or employee of SOUTHERN BAPTIST CONVENTION and EXECUTIVE COMMITTEE OF THE SOUTHERN BAPTIST CONVENTION; ROLLAND SLADE, Individually and as agent and/or employee of SOUTHERN BAPTIST CONVENTION and EXECUTIVE COMMITTEE OF THE SOUTHERN BAPTIST CONVENTION; THE SOUTHERN BAPTIST THEOLOGICAL SEMINARY, a non-profit corporation; DR. R. ALBERT MOHLER, Individually and as agent and/or employee of THE SOUTHERN BAPTIST THEOLOGICAL SEMINARY and SOUTHERN BAPTIST CONVENTION; SOLUTIONPOINT INTERNATIONAL, INC., a corporation, individually and d/b/a GUIDEPOST SOLUTIONS; | |

GUIDEPOST SOLUTIONS, LLC, a limited
liability corp.,

          **Defendants.**

## AFFIDAVIT OF ANTHONY M. COLLURA

STATE OF NEW YORK    )
                                ) .ss.
COUNTY OF NEW YORK  )

      I, Anthony M. Collura, submit this affidavit on behalf of Defendants Guidepost Solutions, LLC ("Guidepost") and SolutionPoint International, Inc. ("SPI," and together with Guidepost, the "Guidepost Defendants"), in opposition to the motion of Plaintiffs Michael David Sills and Mary Sills ("Plaintiffs," or the "Sills") for jurisdictional discovery and hereby state, aver, and declare the following:

      1.     I am the Chief Operating Officer and Chief Legal Officer of Guidepost and Chief Legal Officer and Corporate Secretary of SPI. I am fully familiar with the facts and circumstances of Guidepost's engagement by the Southern Baptist Convention (the "SBC") to conduct an investigation on behalf of the SBC's Sexual Abuse Task Force (the "SBC Task Force").

      2.     The scope of the investigation was defined by an engagement letter entered into between the SBC and Guidepost, dated October 5, 2021, and executed by Dr. Bruce Frank, Task Force Chair of the SBC; Rolland Slade, on behalf of the Executive Committee ("EC") of the SBC; and Julie Myers Wood, Chief Executive Officer of Guidepost (the "Engagement Letter"). A true and correct copy of the Engagement Letter is attached to this Affidavit as Exhibit A.

      3.     Specifically, as revealed in Paragraph 3.1 of the Engagement Letter, Guidepost was hired to investigate and report on the following topics: (i) allegations of abuse by EC

members; (ii) mishandling of abuse allegations by EC members between January 1, 2000 and June 14, 2021; (iii) allegations of mistreatment of sexual abuse victims by EC members from January 1, 2000, to June 14, 2021; (iv) patterns of intimidation of sexual abuse victims or advocates from January 1, 2000, to June 14, 2021; and (v) resistance to sexual abuse reform initiatives from January 1, 2000, to June 14, 2021.

4. I am informed and understand that the Sillses have alleged in their Complaint that the Guidepost Defendants entered into a conspiracy with the other Defendants in this action to create a report with a "particular focus on and disproportionate page space dedicated to [Defendant Jennifer] Lyell's statements against Sills." I understand that the Sillses are seeking to conduct jurisdictional discovery in an effort to prove that the Guidepost Defendants agreed to conduct a "sham" investigation of the SBC's larger sexual abuse crisis and turn Dr. Sills into a "scapegoat."

5. The Engagement Letter does not express an undertaking to create a report with a "particular focus on and disproportionate page space dedicated to [Defendant Jennifer] Lyell's statements against Sills." In fact, the Engagement Letter does not make any reference to Dr. Sills whatsoever.

6. For the avoidance of any doubt, the Guidepost Defendants entered into no "conspiracy" with any of the other Defendants to defame or otherwise harm the Sillses and they did not enter into the Engagement Letter for the purpose of turning him into a scapegoat. Dr. Sills was only one of many persons whose alleged sexual misconduct was, in turn, relevant toward understanding the EC's role in the larger sexual abuse crisis within the SBC.

7. Guidepost conducted the investigation pursuant to the Engagement Letter by obtaining and reviewing documents and conducting witness interviews. At the end of the

3

investigation, Guidepost prepared and submitted a written report to the SBC Task Force (the "Report").

8. As explained in the Guidepost Defendants' motion to dismiss the Complaint, Guidepost provided the Report to the SBC Task Force on or about May 15, 2022. The SBC Task Force (not Guidepost or SPI) then published the Report on the SBC Task Force website on or about May 22, 2022.

9. I am also informed and understand that the Sillses have made the following assertion in their motion for jurisdictional discovery: "Guidepost and/or the SBC and Executive Committee researched, compiled, and published a report that included a list of hundreds of alleged sexual abuse perpetrators within the SBC family, [which] included 33 Baptist ministers and staff in Alabama—and Dr. Sills—and received wide coverage in the mainstream news media in Alabama."

10. The list to which the Sillses refer in their motion for jurisdictional discovery was not prepared by the Guidepost Defendants but was a record internally compiled within the EC. The list was provided to Guidepost by an SBC EC staff member to assist it in its investigation of the EC, but the list was never appended to the Report and it was never published by Guidepost in any forum. Rather, as stated by the SBC on its website, the list was made public by the SBC after the SBC Task Force had already released the Report on the SBC Task Force website.

\* \* \* \* \*

11. I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: May 2, 2023
      New York, NY

_____
Anthony M. Collura

Sworn to before me this
2nd day of May, 2023

_____
Notary Public

Joseph Jaffe
Notary Public, State of New York
Registration No. 02JA6363651
Qualified in New York County
Commission Expires Aug 24, 2025

5

Case 3:23-cv-00478   Document 79-2   Filed 07/12/23   Page 6 of 18 PageID #: 403

# Exhibit A to Collura Affidavit

*(Engagement Letter)*

October 5, 2021

Dr. Bruce Frank
Task Force Chair
Southern Baptist Convention
bfrank@biltmorechurch.com

Pastor Rolland Slade
Southern Baptist Convention
Executive Committee
pastor@meridianbaptist.com

*VIA EMAIL*

Dear Dr. Frank and Dr. Slade,

### **Engagement**

1.1     This letter confirms that, in accordance with the mandate given by the Southern Baptist Convention ("SBC") Messengers ("SBC Motion"), the SBC, through and under the leadership of the Task Force has retained Guidepost Solutions LLC and its agents (collectively, "Guidepost"), to conduct an independent investigation into the Executive Committee (the "Engagement") and an audit of the procedures and actions of the Credentials Committee under the terms and conditions set forth in this engagement agreement (the "Agreement").

### **Client**

2.1     Our client in this matter will be the Task Force of the SBC. As authorized by the SBC, Guidepost will act under the leadership and take direction and guidance from the SBC Task Force appointed by President Litton in July 2021, while engaging with the Committee on Cooperation of the Executive Committee as described further herein.

2.2.    The Committee on Cooperation of the Executive Committee ("Committee on Cooperation") will be headed by the President of the SBC, who will also be a member of the Committee. The remaining four members will be members of the Executive Committee who were appointed to their first term on the Executive Committee in June 2021. Two members of the Committee will be chosen by the Executive Committee, and two will be chosen by the Task Force.

415 Madison Avenue
11th Floor
New York, NY 10017
212.817.6700
www.guidepostsolutions.com

2.3. The Committee on Cooperation will ensure that the Executive Committee fulfills its fiduciary obligations to the SBC and the Messengers. Specifically, the Committee is charged with the following:

- Financial oversight of the independent investigation in addition to the financial oversight exercised by the Task Force.
- Electing, in cooperation with the Task Force, a liaison between the Executive Committee and Guidepost Solutions to ensure smooth flow of information and response to information requests.
- Receipt of periodic monthly updates noting document, witness, and information requests made to the Executive Committee, to ensure information sought is consistent with and responded to in cooperation with the Motion passed by the Messengers at the SBC Convention in June 2021.
- Ensuring that the Executive Committee and SBC are fully cooperative in this matter.

**Scope of Engagement**

3.1. In accordance with the SBC Motion, the purpose of the Engagement is for Guidepost to conduct an independent investigation into the Executive Committee of the SBC, and an audit of the procedures and actions of the Credentials Committee.

Specifically, and as directed by the SBC Motion, Guidepost will investigate:

- Allegations of abuse by Executive Committee members.
- Mishandling of abuse allegations by Executive Committee members between January 1, 2000, to June 14, 2021.
- Allegations of mistreatment of sexual abuse victims by Executive Committee members from January 1, 2000, to June 14, 2021.
- Patterns of intimidation of sexual abuse victims or advocates from January 1, 2000, to June 14, 2021.
- Resistance to sexual abuse reform initiatives from January 1, 2000, to June 14, 2021.

In addition, Guidepost will perform an audit of the procedures and actions of the Credentials Committee after its formation in mid-June 2019, using best standards and practices designed to ensure accountability, transparency, and care for the wellbeing of survivors of sexual abuse.

Guidepost will only request documents and interview relevant to the items specified above from the Motion.

3.2 The key principles of Guidepost's work will include but not be limited to the following best practices:

- Trauma-Informed Survivor and Witness Interviews: Compassion and Care.
- Anonymity and Confidentiality for Survivors and Witnesses, where permitted by law.

- Independence: No Attorney-Client Privilege.
- Transparency: Public Report.
- Dedicated, Publicly-Advertised, Reporting System for Survivors and Witnesses to Contact Guidepost and Provide Information.
- Voluntary Listening Sessions, Focus Groups and Sexual Abuse Climate Survey focused on the specific requirements in the Motion, such as resistance to sexual abuse reforms.
- Structural Audit of the Credentials Committee and Practical Recommendations that are Trauma-Informed and Scripturally Guided.
- Commitment to Provide the SBC with a Comprehensive Framework to Implement Sexual Abuse Reforms in a Fully Transparent Manner.

3.3     Except as expressly set forth in Section 2, neither the Executive Committee nor the Committee on Cooperation of the Executive Committee will conduct, direct, or otherwise manage or influence our independent investigation in any manner. Though the Task Force is overseeing the investigation, Guidepost will remain independent. No attorney-client relationship will be formed between Guidepost and any other party. Accordingly, communications between Guidepost (including its employees and agents) on the one hand, and the Committee on Cooperation, the Task Force, the SBC, the Executive Committee, and/or the Credentials Committee will not be protected by the attorney-client privilege.

3.4     At the conclusion of the investigation and audit, Guidepost will prepare a complete set of factual findings and a comprehensive recommended framework within which the SBC can operate in order to continue to address the concerns raised by the SBC Motion in a transparent, accountable, and scriptural manner that prioritizes survivor support and care and enhances practices for the prevention of sexual abuse, harassment, and violence.

3.5     For the sole purpose of ensuring the factual accuracy of its report, Guidepost will provide a draft of any factual information contained in the report to the Task Force and the Committee on Cooperation 35 days prior to submitting it to the Task Force. The Committee on Cooperation may review the draft with Guidepost together with any supporting documents and/or information, in order to confirm the accuracy of the factual information presented in, relied upon, or related to matters and/or issues contained in the draft Report. Guidepost shall allow the Committee on Cooperation five (5) calendar days to review and dispute the factual information presented in, or relied upon, and/or related conclusions reached in the draft Report, and to provide supplemental documents and/or information to Guidepost.

3.6     No later than thirty calendar days prior to the 2022 SBC Annual Meeting, Guidepost will provide this report to the Task Force. No member of the Committee on Cooperation, Task Force, the SBC, the Executive Committee, or the Credentials Committee shall be permitted by Guidepost to edit the report prior to its public release. A written report will be made public in its entirety prior to the 2022 SBC Annual Meeting.

3.7 To ensure appropriate levels of independence for the Guidepost investigation and audit, the Task Force, the SBC, the Executive Committee, or the Credentials Committee, or any member thereof, will not request, receive, or claim ownership of Guidepost's work product, including but not limited to interview notes, internal memoranda, and draft, non-public reports.

3.8 Guidepost's investigative process will include interviews of survivors, witnesses, and others, as well as reviews of existing and new documentation and evidence. Survivor and witness interviews will be trauma-informed and will offer privacy and confidentiality if desired and permitted by law. The SBC, the Committee on Cooperation, the Task Force, the Executive Committee, the Credentials Committee, and members of the aforementioned will not have access to names of, or identifying information about, survivors or witnesses without the consent of the survivors or witnesses.

3.9 Guidepost will establish an independent, 24/7 reporting mechanism to facilitate communication, either anonymously or otherwise, with Guidepost and encourage all those with relevant information to come forward. The establishment of the reporting mechanism will be publicized by the Task Force to the SBC community and the public, including the contact information for the 24/7 reporting mechanism established for contacting Guidepost, and the email and mail addresses designated by Guidepost. Such notice shall inform the SBC community and the public that they may communicate with Guidepost anonymously or in true name, and that the SBC community and the public shall be protected from retaliation and not be penalized in any way or form for providing information to Guidepost. In addition, such notice shall direct that, if anyone is aware of any violation of any law or any unethical conduct that falls under the scope of this investigation and audit, that the individual is encouraged to report such violation or unethical conduct to Guidepost.

3.10 In order to provide appropriate support for survivors, Guidepost will consult with the Task Force to create a dedicated and trauma-informed resource to assist survivors by serving as an additional reference and communication point for the survivors during the investigation, including but not limited to assisting with access to accurate information and support. Guidepost will subcontract for this resource.

**Access to Information**

4.1 Guidepost shall have the authority to take such reasonable steps, in Guidepost's view, as necessary to be fully informed about the operations of the SBC, the Executive Committee, and the Credentials Committee as is required by this Agreement.

4.2 The SBC, the Committee on Cooperation, and the Task Force will take all reasonable steps to ensure that all relevant persons within the SBC, the Executive Committee, the Credentials Committee, and the Task Force cooperate fully with Guidepost and provide Guidepost with access to all relevant records, documents, reports, systems, software and hardware, or other information that Guidepost may seek in the performance of its duties hereunder. In the event that any such officer, employee, agent, or consultant fails to cooperate

with Guidepost or withholds from Guidepost the access described above, the Task Force shall take appropriate action regarding said lack of cooperation and endeavor to obtain cooperation.

4.3. Guidepost will treat and maintain as confidential and private all information that has been or will be communicated or provided to Guidepost relating to any survivor or witness identity and will not reveal or utilize it in any way except with appropriate survivor approval; provided, however, that, subject to the provisions of Article 7 of this Agreement, Guidepost may reveal such information pursuant to a lawful, final judicial or administrative order. Upon receipt of any government process requesting such information, Guidepost will provide notice to the Task Force and the Committee on Cooperation. In addition, when possible and to the extent permissible by law under the circumstances, Guidepost and this Agreement requires the SBC to challenge such process to protect the anonymity of all anonymous survivor identities at their sole expense.

**Indemnification**

5.1 The SBC agrees to indemnify Guidepost for any actions, judgments, or claims against Guidepost arising out of the Engagement, including but not limited to reimbursement for all Guidepost time charges, fees, costs, reasonable attorney's fees and disbursements and defense or other costs associated with any such actions, judgments, or claims, unless and until it were to be finally adjudicated that Guidepost's actions were negligent, tortious, or beyond the scope of the Engagement.

**Lawful Conduct and EU-U.S. Privacy Shield Program**

6.1 In the course of the Engagement, Guidepost shall not knowingly engage in any activity, undertaking, or project that is unlawful or illegal under U.S. law or the laws of the place in which the activity occurs.

6.2 Guidepost has EU-U.S. and Swiss-U.S. Privacy Shields documenting its intent to comply with the requirements of the EU-U.S. and Swiss-U.S. Privacy Shield Frameworks, in any engagement to which the Privacy Shield Framework is applicable. Our Privacy Shield Policies appears on our website (www.guidepostsolutions.com).

6.3 For any Engagement involving the export of Personal Data from the European Union, the European Economic Area and their member states, Switzerland and the United Kingdom, Task Force recognizes Task Force is the Data Controller as that term is used under the General Data Protection Regulation 2016/679 of the European Union. Task Force Regents recognizes and agrees that Task Force has sole responsibility to provide any notice which may be required by any applicable law to the subject of the Engagement, including a link to the Guidepost Privacy Shield.

8

### Subpoena or Third-Party Efforts to Thwart the Engagement

7.1	Guidepost shall notify the SBC of any effort (a) either by subpoena or otherwise to gain access to information, documents, materials, or work product, or information of any kind in the possession of Guidepost that has been generated, obtained, or learned as a result of the work performed by Guidepost under the Engagement, or (b) to otherwise stop, interrupt, or interfere with the performance of Guidepost's work in connection with the Engagement, whether by judicial action or other means. To the extent feasible and permissible by law under the circumstances, Guidepost shall follow lawful directions from the SBC with respect to Guidepost's response to any such effort. Consistent with paragraph 4.3 above, unless the survivor provides express consent, Guidepost shall not reveal information about their identity gathered during the monitorship absent a lawful, final judicial or administrative order.

7.2	The SBC agrees to pay, reimburse, indemnify, and/or hold harmless Guidepost for all Guidepost time charges, fees, costs, reasonable attorney's fees and disbursements that may be incurred or generated by Guidepost or that may arise out of or relate to any effort that Guidepost may undertake in response to any effort or judicial process or pursuant to any direction from you as provided in this Agreement.

### Guidepost Liability

8.1	In no event shall Guidepost be liable to the SBC, the SBC Executive Committee, the Committee on Cooperation or Task Force for any claims for incidental, special, indirect, or consequential damages of any nature connected with or resulting from Guidepost's performance of the Engagement under this Agreement and the Task Force waives any and all right it may have to hold Guidepost liable for any such damages.

### Fees

9.1	Unless you request otherwise in writing, Guidepost shall submit invoices to the Committee on Cooperation on a monthly basis. In order to maintain the independence of our investigation, the Committee on Cooperation agrees that we may omit from our invoices those details that we determine could reveal the course and/or progress of our investigation. Guidepost will retain our customary detailed billing records, including a description of the tasks performed and time worked by each person working on the Engagement, as well as a statement of the total amount of out-of-pocket expenses and disbursements incurred with subtotals by category. Guidepost will review the detailed billing records with the Task Force at its request. Unless otherwise requested by you, Guidepost's bills will be sent to Rev. Slade's attention at the above email address.

9.2	Our discounted professional rates for the services to be performed under this Engagement will be between the range of $200 - $575/hour depending on the Guidepost team member performing the services.

We will bill you a separate charge for any actual out of pocket costs, such as travel expenses and other disbursements. Other expenses that are generated as part of the internal services that we utilize in our office, including database fees, will be allocated in a way to fairly reflect your usage of and benefit from those services.

9.3     The SBC will process Guidepost's billings promptly and will remit payment to Guidepost within thirty days after an invoice is received by you.  Payments should be sent to Guidepost Solutions LLC, 260 Madison Avenue, Third Floor, New York, NY 10016. Instructions for payment by wire transfer will be provided upon request.

9.4     If bills remain outstanding for more than thirty (30) days, Guidepost reserves the right to stop all work.

9.5     If Guidepost must engage counsel or otherwise expend funds to collect bills over 60 days old, the SBC agrees to reimburse Guidepost for all associated fees and costs, plus interest on the outstanding balance.

9.6     Certain of Guidepost's services may be subject to mandatory state or local sales taxes.

### Conflict of Interest

10.1    The SBC agrees that the Engagement and any assignments performed thereunder to assist the Task Force pertain to a discreet matter, and that our undertaking any assignment pursuant to this Agreement would not provide a basis for precluding our future services for clients adverse to the SBC on matters that are not substantially related to the matter Guidepost is handling as part of this Engagement.

10.2    Guidepost is not aware at this time of any conflict of interest that would preclude Guidepost from providing services to the Task Force in this Engagement. Should Guidepost become aware, however, of any such conflict, upon reasonable notice to you, Guidepost may withdraw from and terminate the Engagement at that time.  In that event, the SBC agrees to pay and/or reimburse Guidepost for all fees, out-of-pocket expenses, disbursements, and applicable taxes accrued or incurred as of the date of such withdrawal, including but not limited to all fees, out-of-pocket expenses, disbursements, and applicable taxes associated with the transition, if any, from Guidepost to a replacement provider of the same or similar services provided by Guidepost as part of this Engagement.

### Termination

11.1    The agreements, terms, and understandings set forth in this letter shall survive the termination of any and all work performed pursuant to the Engagement.

11.2    Either party may terminate the Engagement upon 30 days written notice to the other.  Termination shall become effective 30 days following the date any such notice is received by the other party.  If the Engagement is terminated, the SBC agrees to pay and reimburse Guidepost pursuant to the terms set forth in this Agreement for all fees, costs, and disbursements accrued or incurred as of the effective date of the termination.

11.3    Pursuant to its Records Management Policy ("RMP"), at the conclusion of the Engagement, Guidepost will notify you that the Engagement is closed, and that it will return to you any material provided by you, or if you do not respond to our inquiry, we will, after 30 days, or if you so direct, destroy such material. Materials which we are required to maintain, according to the RMP, will be electronically or physically maintained for the required period, after which they too will be destroyed.

### Jurisdiction and Applicable Law

12.1    The parties consent to the jurisdiction of the federal, state, and local courts in or for the County of New York, State of New York.

12.2    The interpretation and application of the terms of this Agreement shall be governed and construed according to the laws of the State of New York as specified in the previous paragraph, excluding (to the greatest extent a court of such state would permit) any rule of law that would cause application of the laws of any jurisdiction other than the law of the state so specified.

### Arbitration

13.1    At the option of Guidepost or the Task Force or SBC, any disagreement or controversy arising out of or relating to this Agreement and/or Engagement, including but not limited to any dispute concerning Guidepost's fees or expenses, can be submitted for resolution to arbitration before three arbitrators according to the then prevailing Commercial Rules of the American Arbitration Association.  The arbitration shall be held in the location specified in paragraph 12.1 above.  The award rendered in said proceeding shall be made in writing and shall be final and binding upon both parties and judgment upon the award may be entered in any court having jurisdiction thereof.  The arbitrators shall award reasonable attorneys' fees and the costs of the arbitration to the prevailing party, except that the fees and expenses of the arbitrators, if any, shall be borne equally by the parties.  At the request of any party, the arbitration will be conducted in secret.

13.2    The arbitrators shall not have authority to amend, alter, modify, add to, or subtract from the provisions of this Agreement. The award of the arbitrators, in addition to granting the relief prescribed above and such other relief as the arbitrators may deem proper, may contain provisions commanding or restraining acts or conduct of the parties or their representatives and may further provide for the arbitrators to retain jurisdiction over the Agreement and the enforcement thereof. If any party shall deliberately default in appearing before the arbitrators, the

arbitrators are empowered, nonetheless, to take the proof of the party or parties appearing and render an award thereon. The arbitrators shall state in writing the reasons for their award.

### **No Waiver**

14.1    Guidepost's failure to put into effect, exercise, or enforce (in a timely manner or otherwise) any term, condition, or provision of this Agreement shall not be deemed to be a waiver of such term, condition, or provision, or of Guidepost's right to enforce it.

### **Signings and Headings**

15.1    Should any part of this Agreement be rendered or declared illegal, legally invalid, or unenforceable by a court of competent jurisdiction or by the decision of an authorized governmental agency, such invalidation of such part of this Agreement shall not invalidate the remaining portions thereof.

15.2    Section headings are for convenience only and are not part of the Agreement.

### **Modification of Agreement and Notice**

16.1    There have been no representations, inducements, promises, or agreements of any kind that have been made by either party or by any person acting on behalf of either party that are not embodied within this Agreement. This Agreement may not be changed or altered except in writing duly executed by a duly authorized agent of all parties hereto.

16.2    Notices and communications directed to Guidepost shall be sent to the undersigned at the address shown above. Notices and communications directed to the SBC and Task Force shall be sent to the addressees of this Agreement.

### **Effective Date**

17.1    The Engagement and the terms of this Agreement shall be deemed to be effective as of September 1, 2021.

### **Execution of the Agreement and Signatures**

18.1    The Agreement may be executed in one or more counterparts, all of which together shall constitute one and the same Agreement and each of which shall be an original. This Agreement shall be binding on all parties and their respective heirs, successors, and assigns.

Please execute and return this letter of engagement at your first opportunity.

We look forward to working with you toward a successful completion of the Engagement.

Very truly yours,

_____   _10/6/2021_____
Julie Myers Wood   Date
Chief Executive Officer
Guidepost Solutions, LLC

AGREED AND ACCEPTED:

*Dr. Bruce Frank* (DocuSigned)   10/6/2021
_____   _____
Dr. Bruce Frank   Date

AGREED AND ACCEPTED:

_____   _____
Pastor Roland Slade   Date



Please execute and return this letter of engagement at your first opportunity.

We look forward to working with you toward a successful completion of the Engagement.

Very truly yours,

_____  _____
Julie Myers Wood  Date
Chief Executive Officer
Guidepost Solutions, LLC

AGREED AND ACCEPTED:

_____  _____
Dr. Bruce Frank  Date

AGREED AND ACCEPTED:

*/s/ Roland Slade*  10-5-21
Pastor Roland Slade  Date