**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| MICHAEL DAVID SILLS and MARY SILLS, | ) ) ) | |
| | ) | **Case No. 3:23-cv-00478** |
| Plaintiffs, | ) ) | |
| v. | ) ) | **Judge Campbell** **Magistrate Judge Frensley** |
| SOUTHERN BAPTIST CONVENTION, et al. | ) ) ) | **JURY DEMAND** |
| Defendants. | ) ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY EXECUTIVE
COMMITTEE OF THE SOUTHERN BAPTIST CONVENTION, WILLIE MCLAURIN,
<u>AND ROLLAND SLADE</u>**

Plaintiffs—David Sills and his wife Mary—seek damages claiming that David Sills was defamed by an accusation that he sexually abused defendant Jennifer Lyell when he was a professor at Southern Baptist Theological Seminary ("SBTS") and she was a student. This accusation was first made in 2018 and resulted in Sills's termination and was made public in 2019.[1] But Sills waited until now to bring suit, claiming that the sexual abuse allegation set forth in a report related to an independent investigation of the Executive Committee of the Southern Baptist Convention ("ECSBC") released in May 2022 was false. Here, despite his silence before, the Sills assert defamation and other tort claims. Because the Sillses' claims would entangle the court in the religious beliefs and practices of Southern Baptists, and because the Sillses do not allege facts stating a plausible claim for relief, the Court should dismiss the Complaint.

---

[1] In this memorandum, "Sills" refers to Michael David Sills. "Mary Sills" or "Mrs. Sills" refers to Mary Sills.

1

I.  **Ecclesiastic Abstention, The 2021 Southern Baptist Convention, and the Independent Guidepost Investigation**

At the outset, the First Amendment to the United States Constitution does not allow the Court—a branch of the secular United States Government—to intrude on the internal governance and practices of religious institutions. The Sillses ask the Court to do exactly what the First Amendment prohibits and enmesh itself in deciding matters of faith integral to Southern Baptists.

The Guidepost investigation at the heart of the Complaint had its genesis at the 2021 Annual Meeting of the Southern Baptist Convention ("SBC" or "Convention"). The Messengers — members of autonomous Southern Baptist Churches in attendance[2] — approved a motion calling for the appointment of a task force to oversee a third-party investigation into several issues, including the alleged mishandling of sexual abuse claims and mistreatment of victims by staff and members of the ECSBC for the time period of January 1, 2000 to June 14, 2021. The approved motion further provided that the factual findings of the investigation were to be presented to the

---

[2]     Under Article III of its Constitution, the Convention "consist[s] of messengers who are members of Baptist churches in cooperation with the Convention." For each annual meeting, each cooperating church is entitled to send two messengers, with the ability to send additional messengers depending on the amount of contributions to the Convention's Cooperative Program. The SBC's governing documents, including its Constitution and Bylaws, are available at https://www.sbc.net/about/what-we-do/legal-documentation/. As the Sills relied on these documents for allegations on the SBC's governing structure, so their reliability cannot be reasonably questioned, the Court can take judicial notice of these legal documents on this motion to dismiss. (Compl. ¶ 16 n.1); Fed. R. Civ. P. 201(b). Moreover, because the documents are integral to showing how the Sills' Complaint implicates matters of internal church governance by the SBC, the Court can consider them for purposes of the motion to dismiss for lack of subject matter jurisdiction. *See McCool v. AHS Mgmt. Co., Inc.*, No. 3:19-cv-1158, 2021 WL 826756, at *1 (M.D. Tenn. March 4, 2021) (citing *Cooley v. United States*, 791 F. Supp. 1294, 1298 (E.D. Tenn. 1992)).

task force thirty days prior to the 2022 SBC Annual Meeting and then made public in full form within one week of the task force's receipt of the report.[3]

As directed in the motion, the SBC President appointed members to form the Sexual Abuse Task Force (the "Task Force"). The Task Force then retained Guidepost Solutions, LLC ("Guidepost") to conduct the independent investigation,[4] and a Committee on Cooperation was to

---

[3]    The full text of the motion was as follows:

> That we ask the newly elected president of the SBC to appoint a task force within 30 days of the dates of this Convention that shall be comprised of members of Baptist churches cooperating with this Convention and experts in sexual abuse and the handling of sexual abuse-related dynamics. This task force shall either assume oversight of the third-party review announced previously by the Executive Committee or initiate a separate third-party review. Said task force shall ensure that the third-party review includes an investigation into any allegations of abuse, mishandling of abuse, mistreatment of victims, a pattern of intimidation of victims or advocates, and resistance to sexual abuse reform initiatives. The investigation shall include actions and decisions of staff and members of the Executive Committee from January 1, 2000, to June 14, 2021. This investigation should include an audit of the procedures and actions taken by the Credentials Committee of the Southern Baptist Convention, which was formed at the Convention meeting in Birmingham, Alabama, June 11-12, 2019. The review shall be funded by allocations from the Cooperative Program. We further move that the task force agree to the accepted best-standards and practices as recommended by the commissioned third-party, including but not limited to the Executive Committee staff and members waiving attorney client privilege in order to ensure full access to information and accuracy in the review. A written report on the factual findings of this review shall be presented to the task force 30 days prior to the SBC annual meeting in 2022, and made public in full form within one week of the task force's receipt of the report along with suggestions from the task force for actions to be taken by our Convention.

[4]    The Engagement letter between the Task Force and Guidepost is attached as Exhibit A to the Complaint and, therefore, is considered part of the Complaint. *See* Fed. R. Civ. P. 10(c) (2023) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

3

be formed to act as a liaison between Guidepost and the ECSBC to ensure the flow of information and full cooperation.

A fundamental tenet of the engagement was Guidepost's independence. Section 3.3 of the contract provided that "neither the Executive Committee nor the Committee on Cooperation of the Executive Committee will conduct, direct, or otherwise manage or influence our independent investigation in any manner. Though the Task Force is overseeing the investigation, Guidepost will remain independent." Section 3.6 further provided that "[n]o member of the Committee on Cooperation, the Task Force, the SBC, the ECSBC, or the Credentials Committee shall be permitted by Guidepost to edit the report prior to its public release."

On May 15, 2022, Guidepost provided its Report of the Independent Investigation (the "Report") to the Task Force. In accordance with the 2021 Messengers' motion, the Report was made public on May 22, 2022.[5] Guidepost's Report included the ECSBC's handling of Jennifer Lyell's claim that she had a non-consensual relationship with Sills beginning when she was a student and he was her professor at SBTS. Sills admits to the relationship, but contends it was consensual. Guidepost's investigation corroborated Ms. Lyell's claim that the relationship was not consensual and was abusive, and that Ms. Lyell's reporting of the abuse was not initially handled appropriately by the ECSBC.

In the Complaint, the Sillses now essentially argue that the Guidepost investigation was a hoax, and the defendants, including the ECSBC are out to get him to improve their public image. But the Sillses' claims would entangle the Court in a matter of the internal governance of a

_____

[5] The Report is referenced frequently in the Complaint and can therefore be reviewed by the Court. The report is publicly available at https://www.sataskforce.net/updates/guidepost-solutions-report-of-the-independent-investigation.

4

religious entity—the Messengers' decision to investigate SBC leaders' handling of allegations of sexual abuse and the merits of that investigation. That kind of intrusion by the secular courts of the United States is not permitted by the First Amendment. For these reasons, and because the Sillses do not allege facts to state a plausible claim for relief, the Court should dismiss the Complaint.

## II. David Sills's Relationship with Jennifer Lyell.

Sills, self-described as a "Southern Baptist missiologist, professor, and author," was formerly employed as a professor by SBTS. (Compl. ¶ 32). Sills admits in the Complaint that he had a sexual relationship with Jennifer Lyell, and an article he cites notes that the relationship began when she was a student and he was her professor at SBTS, but asserts the relationship was "consensual." (Compl. ¶¶ 38 n.7 (article at link), 40.) "This case arises out of accusations initially made by defendant Lyell, including the false claim that Plaintiff Sills physically and sexually abused her, and threatened her with violence and other criminal activity." (*Id.* ¶ 33.)

Sills cabins his claims to statements made by Lyell on "June 2021, May 22, 2022, May 28, 2022, June 14, 2022, and June 18, 2022, …." (*Id.*). In March 2018, Jennifer Lyell first disclosed that she had an abusive sexual relationship with Sills to her employer, Lifeway Christian Resources, and Dr. Albert Mohler, President of the SBTS. (*Id.* ¶ 35). Based upon the disclosure, it was Dr. Mohler's belief that the relationship was abusive. (Report at pp. 81-82).[6] Sills "never

---

[6]     The Complaint repeatedly quotes, cites to, and/or references the Report. (Compl. ¶¶ 57-58, 60). Indeed, the Report forms the basis of at least a portion of the defamation claim and nearly all of the harm the Sills allegedly suffered. As a result, the contents of the Report can be considered at the motion to dismiss stage (while taking the Plaintiffs' version of whether the Report should be believed). *See, e.g.*, *Thomas v. Tennessee Dep't of Human Services*, No. 3:21-cv-00426, 2022 WL 2286780, at *5 (M.D. Tenn. June 23, 2022) ("When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment."); *Evans v. Vanderbilt University School of Medicine*, 589 F. Supp. 3d 870, 890 n.13 (M.D. Tenn. 2022) ("The Handbook has been expressly and

Case 3:23-cv-00478    Document 87    Filed 07/12/23    Page 5 of 26 PageID #: 457

denied that an inappropriate relationship took place." (Compl. ¶ 9.) "As a result of her disclosure, Professor Sills resigned from his position at SBTS after being confronted by SBTS leadership in a meeting." (Report at 82; Compl. ¶ 40.) And while the Complaint suggests that Lyell ginned up a "devastating attack against Plaintiff Sills after he ended their consensual adult relationship," (Compl. ¶ 34), Sills ignores the fact – that he most certainly knew – that at Ms. Lyell's request, "no public disclosures were made of the abuse by Lifeway or SBTS." (Report at 82.)

In 2019, Ms. Lyell agreed to provide the Baptist Press with her "first person" account of her sexual abuse. (Compl. ¶ 38; Report at 82-88.) However, when the story was published on March 8, 2019, the wording of Ms. Lyell's statement was changed to omit any references to her being "sexually abused" or that the relationship was non-consensual. (Report at 88; Compl. ¶ 38 n.7 (article at link).) Instead, the words "morally inappropriate relationship" were inserted. (Report at 88; Compl. ¶ 38 n.7 (article at link).). As a result, Ms. Lyell published her original statement on the relationship on the website www.lyellstatementonabuse.com. The statement was titled "My Story of Sexual Abuse & Initial Response in the SBC," and made clear the abusive, non-consensual nature of the relationship.[7] In October 2019, the Baptist Press publicly apologized, acknowledging that the story published on March 8, 2019 did not accurately

---

extensively referenced in the Complaint, and the Handbook is integral to Plaintiff's claims. Accordingly, the Court considers this document in its entirety for purposes of the pending Motion.").

Even if the Court were not to consider the Report for the purposes of ruling on the Rule 12(b)(6) motion, it can consider the Report in determining whether the ecclesiastical abstention doctrine applies under Rule 12(b)(1). *See McCool*, 2021 WL 826756, at *1 (citing *Cooley*, 791 F. Supp. at 1298).

[7]     The statement is not being relied on for the truth of the matter for the purposes of this motion to dismiss. Nevertheless, for background information, it is available online at https://www.lyellstatementonabuse.com/abuse-disclosure-march-2019.

reflect Ms. Lyell's allegations regarding the abusive nature of the relationship. (Report at 107).

On June 6, 2021, Lyell told her story in a recorded interview with Midwest Outreach. She said that the sexual abuse by Sills started on a mission trip in 2004, continued on the plane ride home. (Compl. ¶ 43.) Thereafter, the abuse continued for "more than a decade," even though Lyell "verbally and physically resisted Dr. Sills . . . throughout all . . . encounters." (*Id.*). Over the decade, Lyell alleged that "Sills had threatened her, possibly broke into her home, and tracked her phone." (*Id.* ¶ 42.) Lyell said that her relationship with Sills "'was never consensual' and 'was always forced'" and she "always resisted." (*Id.*). Lyell contended that Sills also threatened Lyell with a gun and physically abused her. (*Id.*).

Thereafter, in addition to the Baptist Press' apology in October 2019, on February 22, 2022, the ECSBC issued an apology regarding the handling of Ms. Lyell's allegations; that the allegations of non-consensual sexual abuse had been investigated and corroborated and inaccurately characterized by the Baptist Press. (*Id.* ¶¶ 53-54).

As previously stated, at the 2021 Annual Meeting, the Messengers approved a motion calling for the appointment of a task force to oversee a third-party investigation into the mishandling of sexual abuse claims and mistreatment of victims by staff and members of the ECSBC. The independent investigation by Guidepost, released on May 22, 2022, corroborated Ms. Lyell's claim that the relationship was not consensual, but was sexual abuse, and that Ms. Lyell's reporting of the abuse was not initially handled appropriately by the ECSBC.

Plaintiffs now assert the ECSBC has defamed them as a result of Guidepost's Report and his inclusion on a list of credibly accused sexual abusers.

7

**ARGUMENT**

## I.    Standard of Review.

All four claims brought by the Sillses are state-law claims, so the federal procedural rules apply and the state's substantive rules apply. *Jackson v. Ford Motor Co.*, 842 F.3d 902, 907 (6th Cir. 2016).  Motions to dismiss are governed by Federal Rule of Civil Procedure 12.  *See Moderwell v. Cuyahoga Cty., Ohio*, 997 F.3d 653, 659 (6th Cir. 2021) (noting that Rule 12(b)(6) applies to motions to dismiss).

To survive dismissal for lack of subject matter jurisdiction under Rule 12(b)(1), Plaintiffs bear the burden of establishing jurisdiction. *Pryor Oil Co. Inc. v. United States*, 299 F. Supp. 2d 804, 807 (E.D. Tenn. 2003). If Plaintiffs fail to meet his burden, the motion to dismiss must be granted. *Id*.  The Court is not limited to jurisdictional allegations in the Complaint but may properly consider evidence submitted for the limited purpose of ascertaining whether subject matter jurisdiction exists.  *Id*.  For example, an affidavit establishing the citizenship of the parties is appropriate for consideration on a motion to dismiss for subject matter jurisdiction. *See, e.g.*, *Whitlock v. FSL Mgmt., LLC*, No. 3:10CV-00562-JHM, 2012 WL 3109491, at *3 (W.D. Ky. July 31, 2012) (statements contained in Defendant's affidavit identifying the citizenship of members was accepted to determine diversity of the parties).

Under Federal Rule of Civil Procedure 12(b)(6), a claim is subject to dismissal if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is "plausible on its face" when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While this standard is lower than a "probability requirement," it "asks for more than a sheer possibility

8

that a defendant has acted unlawfully." *Id.* In other words, a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

The Court need not accept legal conclusions or unwarranted factual inferences, or legal conclusions masquerading as factual allegations. *Philadelphia Indem. Ins. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013); *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 274 (6th Cir. 2010). Only well-pleaded *facts* are entitled to be construed in the light most favorable to the party opposing the Motion to Dismiss. *See Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010) (citing *Twombly*, 550 U.S. at 570); *Lillard v. Shelby Cnty. Bd. of Ed.*, 76 F.3d 716, 726 (6th Cir. 1996). Moreover, in a lawsuit with multiple defendants, the plaintiff must do more than collectively group defendants together and present conclusory allegations against the entire group to survive a motion to dismiss. *See Watkins v. Kajima Int'l Corp.*, No. 3:08-0426, 2011 WL 98592, at *4 (M.D. Tenn. Jan. 12, 2011) (granting defendant's motion to dismiss because the plaintiff failed to allege specific allegations against the defendant and instead grouped the defendant "along with other defendants in allegations that amount to no more than conclusions of law.").

## II. The Complaint Must Be Dismissed for Lack of Subject Matter Jurisdiction or, In the Alternative, For Failure to State a Claim.

The Complaint asserts four causes of action against all defendants, without distinguishing which defendant is liable for what: (1) defamation and defamation per se, (2) conspiracy, (3) negligence, gross negligence, and wantonness, and (4) intentional infliction of emotional distress. All four claims are barred by the ecclesiastical abstention doctrine. Moreover, even if not barred, the Complaint fails to state a claim upon which relief may be granted against the ECSBC, McLaurin, and Slade.

9

**A. The First Amendment Prohibits the Court From Reviewing the Southern Baptists' Independent Investigation Into Sexual Abuse Under The Ecclesiastical Abstention Doctrine, so the Court Lacks Subject Matter Jurisdiction Over This Dispute.**

The Sillses ask the Court to review the decision of the Messengers to investigate, using an independent third party, allegations that the ECSBC mishandled sexual abuse claims, and find the entire investigation a sham and its conclusion untrue. The First Amendment prohibits the Court from doing so.

The First Amendment prohibits Congress from making any law "respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const amend. 1. Under what is now called the "ecclesiastical abstention doctrine" or the "church autonomy doctrine," courts have no subject matter jurisdiction to consider disputes of "theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them." *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 714 (1976).[8] Under the doctrine, "civil courts should not review the internal policies, internal procedures, or internal decisions of the church, and this includes review of whether a church followed its own internal policies or procedures." *Ginyard v. Church of God in Christ Ky. First Jurisdiction*, 6 F. Supp. 3d 725, 729 (W.D. Ky. 2014) (compiling cases). Federal courts "should be loath to assert jurisdiction over internal church disputes." *Ogle v. Church of God*, 153 F. App'x 371, 375 (6th Cir. Oct. 31, 2005) (quoting *Yaggie v. Ind.-Ky. Synod, Evangelical Lutheran Church*, No. 94-5892, 1995 WL 499468, at *3 (6th Cir. Aug. 21, 1995)).

---

[8]    Because the ecclesiastical abstention doctrine because it is rooted in the First Amendment, federal law applies. *See Bullitt Cty. Fiscal Ct. v. Newsome*, 60 F.3d 828 (6th Cir. 1995) (explaining that defenses rooted in the First Amendment implicate federal law even when the claim arises under state law).

At an annual meeting, the Messengers approved a motion calling for an independent investigation of allegations of the ECSBC's mishandling of allegations of sexual abuse and treatment of victims. For Plaintiffs to prevail on any of their claims, the Court would necessarily need to examine the reasoning and decision of the Messengers to initiate an independent investigation of SBC leaders, the appropriateness of the investigation, and results of the investigation. This type of examination by a secular court is exactly what the First Amendment prohibits. And just because the Sillses believe that the whole investigation was a "sham" does not open the door for Plaintiffs' claims. While the Supreme Court did not completely foreclose the possibility of "'marginal review' for fraud or collusion," that possibility has twice been rejected by the Sixth Circuit. *Hutchison v. Thomas*, 789 F.2d 392, 395 (6th Cir. 1986); *see also Ogles*, 153 F. App'x at 376. As applied to the ECSBC, McLaurin, and Slade, this is not a case of a pastor accusing another pastor of lying about him outside the church's internal procedures, *see Ogle v. Hocker*, 279 F. App'x 391, 396 (6th Cir. 2008) (noting that the "bulk" of the defamatory statements were "outside of the religious practice context"). This is a question about whether a denomination's internal procedures should be examined through the secular civil courts. The answer is no.

The Texas Supreme Court came to the same conclusion in *In re Lubbock*, 624 S.W.3d 506 (Tex. 2021). There, a former Catholic priest sued the Lubbock Diocese for defamation because it included him on a list, published to the public, called: "Names of All Clergy with a Credible Allegation of Sexual Abuse of a Minor." *Id.* at 510-11. The court reversed both the trial court and appellate court's decisions to exercise jurisdiction over the case, finding that the suit "is 'inextricably intertwined' with the Diocese's decision to investigate its own clergy, judicial review of which would impermissibly interfere with a church's ability to regulate the character and conduct of its leaders." *Id.* at 512 (citing references omitted). The same is true here.

11

In sum, the Court cannot review the investigation of the ECSBC authorized by the Messengers. A secular court telling a religious entity that it acted inappropriately in investigating the handling of sexual abuse claims by its leaders is not permitted under the First Amendment and the Court should dismiss this case for lack of subject matter jurisdiction.

### B. The Complaint Impermissibly Utilizes "Group Pleading."

The Complaint fails to plead any specific facts implicating tortious conduct by the ECSBC, McLaurin, or Slade, and, instead, impermissibly utilizes a practice of "group pleading" to assert the claims in the Complaint against all the Defendants generally. *See, e.g., Accord Rodriguez v. Providence Cmty. Corrs., Inc.*, 3:15–CV–01048, 2016 WL 3351944, at *11 (M.D. Tenn. June 9, 2016) ("A complaint that fails to impute concrete acts to specific litigants, fails to state a plausible claim." (internal quotation marks and citations omitted)); *DeSoto v. Metro. Gov't of Nashville & Davidson County*, 64 F. Supp. 3d 1070, 1087 (M.D. Tenn. 2014) ("Here, [the] Amended Complaint in general alleges claims against 'the defendants,' without specifying which defendants are the actual target of certain claims, what actions those defendants allegedly took related to that particular claim, and why those actions could support a given claim."). Here, the Complaint in general alleges claims against the Defendants without specifying which defendants are the actual target of certain claims, what actions those defendants allegedly took related to that particular claim, and why those actions could support a given claim.

This is particularly relevant as it pertains to the ECSBC. Applying this standard of review, the Complaint fails to contain sufficient factual allegations to make the claims against the ECSBC plausible under the standards of *Iqbal* and *Twombly*. For example, the defamation claim in Count I alleges that "statements and publications of May 22, 2022; June 14, 2022; June 18, 2022; and July 8, 2022" were defamatory. (Compl. ¶ 81). However, there is no allegations as to which of

these defamatory statements were made by and/or attributed to the ECSBC.  Instead, the Complaint simply refers to them collectively as "Defendants' statements in 2022" and "Defendants' defamatory publications."  (Compl. ¶¶ 84, 91).  This type of conclusory, group pleading is not appropropriate and insufficient to demonstrate plausible claims or entitlement to relief under the standards of *Iqbal* and *Twombly*.  For these reasons, the Complaint fails to state a claim for which relief can be granted against the ECSBC, and its motion to dismiss should be granted.

C.     **Choice of Law.**

If the Court retains subject matter jurisdiction, the Sillses' claims against the ECSBC, McLaurin, and Slade should still be dismissed. Because these tort claims involve interstate parties and actions, the Court first must decide which state's law to apply.

A federal court sitting in diversity, as here, applies the forum state's choice of law rules. *State Farm Mut. Auto. Ins. v. Norcold, Inc.*, 849 F.3d 328, 331 (6th Cir. 2017) (citing *NILAC Int'l Mktg. Grp. v. Ameritech Servs., Inc.*, 362 F.3d 354,358 (6th Cir. 2004)). Here, Tennessee—the forum state—applies the rule in the Restatement (Second) of Conflict of Laws for tort claims, applying the law of the state with the most significant relationship to the tort. *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992). For multistate defamation, "the state of the most significant relationship will usually be the state where the [person who was allegedly defamed] was domiciled at the time, if the matter complained of was published in that state." Restatement (Second) of the Law – Conflict of Laws § 150(2).

The Sillses allege they are domiciled in Mississippi. (Compl. ¶ 14.) For purposes of this motion, the SBCEC will assume, but does not concede, that Mississippi law applies to the

defamation claims.[9] And because the negligence and intentional infliction of emotional distress claims are derivative of the defamation claim, those, too, will involve Mississippi law. *See McClendon v. N. Carolina Mut. Life Ins. Co.*, 406 F. Supp. 3d 677, 683 (M.D. Tenn. 2019) (explaining that the choice of law rule is determined by "examining: (1) the place of the alleged injury; (2) the place where the injurious conduct occurred; (3) the domicile and/or place of business of the parties involved; and (4) the place where the relationship of the parties is centered").

> ### D. Under Mississippi Law, the Statute of Limitations for Defamation is One Year.

In Mississippi, the statute of limitations for defamation and intentional infliction of emotional distress is one year. Miss. Code Ann. § 15-1-35; *CitiFinancial Morg. Co., Inc. v. Washington*, 967 So.2d 16, 19 (Miss. 2007) ("The claim for intentional infliction of emotion distress is subject to a one-year statute of limitations under Mississippi Code Annotated Section 15-1-35.") (citing references omitted). The negligence and civil conspiracy claims, however, have a three-year statute of limitations. Miss. Code Ann. § 15-1-49(1); *see also Jourdan River Estates, LLC v. Favre*, 278 So.3d 1135, 1148-49 (Miss. 2019) (civil conspiracy has a three-year statute of limitations).[10]

---

[9]    While the Complaint alleges the Sills are domiciled in Mississippi, there is no allegation or knowledge as to when the Sills began to reside to Mississippi and how that relates to the time period of the alleged defamatory statements in this case. Additionally, in any choice-of-law analysis, "the first step is to decide whether a conflict actually exists between the relevant laws of the different jurisdictions." *Boswell v. RFD-TV the Theatre, LLC*, 498 S.W.3d 550, 555 (Tenn. Ct. App. 2016). If there is no conflict between state's laws, then there is no need for a court to make a choice of law determination. *See Columbia Casualty Company v. Century Surety Company*, 203 F. Supp. 3d 863, 868 (M.D. Tenn. 2016) ("In Tennessee, the first step in deciding which state's law to apply is to determine whether there is a material difference in the laws of the relevant states . . . [T]here there is no actual conflict on the relevant issues in this case between the laws of Tennessee, South Carolina, and Georgia. Therefore, the Court does not have to determine which state's law applies.") (citation omitted).

[10]    There is no conflict between Tennessee and Mississippi law with respect to the governing statute of limitations.

14

Within the context of statutes of limitation, Mississippi courts do "not recognize claims for intentional torts veiled in a cloak of negligence." *Sanderson Farms, Inc. v. McCullough*, 212 So.3d 69, 80 (Miss. 2017) (citations omitted). Additionally, Mississippi courts "prohibit the characterization of an intentional tort as an act of negligence in order to escape the one-year bar." *Howard v. Wilson*, 62 So.3d 955, 956 (Miss. 2011). "There can be no escape from the bar of the statute of limitations applicable to intentional torts by the mere refusal to style the cause brought in a recognized statutory category and thereby circumvent prohibition of the statute." *Dennis v. Travelers Ins. Co.*, 234 So.2d 624, 626 (Miss.1970)

The Complaint alleges defamatory statements as far back as 2019. (Compl. ¶ 38.) The Complaint was filed on May 11, 2023, and the same claims were previously filed in Alabama on November 21, 2022. (Alabama Complaint, Exhibit 1). Even if the statute of limitations was tolled during the period the prior (voluntarily dismissed) defamation action based on the same conduct was pending in Alabama, any claim that arose before November 21, 2021, should be dismissed.

The civil conspiracy claim also carries a one-year statute of limitations because the underlying claim is defamation. *McGuffie v. Herrington*, 966 So.2d 1274, 1278 (Miss. Ct. App. 2007) (citing *Gasparrini v. Bredemeier*, 802 So.2d 1062, 1065-66 (Miss. Ct. App. 2001)) (applying one-year statute of limitations to civil conspiracy claim). That said, because the conspiracy claim accrues when the conspiracy begins, it is time-barred under either a one- or three-year statute of limitations because the Complaint alleges the conspiracy began over three years ago. *See Jourdoan River Estates*, 278 So.3d at 1149 (statute of limitations expired when conspiracy began more than three years before filing suit). The conspiracy allegedly began in March 2019 when Lyell offered to write a "public relations piece" to be published by the Baptist Press for the Executive Committee and SBC. (Compl. ¶¶ 38-39.) Because three years before the date the Sillses

filed the Alabama Complaint is November 21, 2019, and the conspiracy allegedly started in March 2019, the Sillses's conspiracy claim is time-barred.

E.  **Michael Sills's Tort Claims Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted.**

Sills does not allege that the ECSBC, Slade, or McLaurin (1) gave any statement that affected his reputation in the community, or (2) acted with actual malice, so his defamation claim should be dismissed. And because the other three tort claims are derivative of the defamation claim, they also should be dismissed.

1.  **Defamation.**

Sills alleges that on February 22, 2022, "Defendants Executive Committee, McLaurin, and Slade published a public statement that offered an apology to Defendant Lyell." The ECSBC "tweeted" this public statement, which was attributed to "Executive Committee Chairman Rolland Slade." Nowhere is McLaurin mentioned. The Tweet read:

> The @SPCExecComm acknowledges its failures to Ms. Lyell, including the unintentional harm created by its failure to report her allegations of nonconsensual sexual abuse were investigated and unequivocally corroborated by the SBC entities with authority over her and her abuser.

(Compl. ¶ 54.) It then included Slade's statement on behalf of the ECSBC. In a paragraph above the above language, Slade stated:

> The SBC Executive Committee acknowledges its failure to adequately listen, protect, and care for Jennifer Lyell when she came forward to share her story of abuse by a seminary professor. Baptist Press failed to accurately report the sexual abuse Jennifer Lyell reported to two SBC entities and local Southern Baptist Churches.

(*Id.*). These are the only allegedly defamatory statements alleged in the Complaint to be published by the ECSBC, Slade, or McLaurin.

16

### a.      Legal Standard for Defamation

A person commits the tort of defamation when she makes a statement about another person that "tends to injure one's reputation 'as to lower him in the estimation of another or to deter third persons from associating or dealing with him.'" *Lamb v. Lowndes Cty. Sch. Dist.*, No. 1:07-CV-125-SA-JAD, 2008 WL 2699801, at \*5 (S.D. Miss. July 2, 2008) (citing *Eselin-Bullock & Assocs.*, 604 So.2d 236, 241 (Miss. 1992)). To plead defamation under Mississippi law, an "ordinary plaintiff must show: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Simmons Law Grp., P.A. v. Corporate Management, Inc.*, 42 So.3d 511, 517 (Miss. 2010). If the plaintiff is a public figure, or a limited purpose or "vortex" public figure in the subject matter of the dispute, he must also show "actual malice—that is, with knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *Id.*  (quoting *Moon v. Condere Corp.*, 690 So.2d 1191, 1195-96 (Miss. 1997)).

Sills alleges that the publication of his extramarital affair in 2018 caused "the public reaction to the malicious branding of Plaintiff Sills as a pervert." (Compl. ¶ 38.) In other words, Sills alleges that he has "become[ ] thrust into the vortex of a matter of legitimate public interest," so Mississippi law would consider him a limited purpose public figure. *Blake v. Gannett Co., Inc.*, 529 So.2d 595, 601 (Miss. 1988) (quoting *Ferguson v. Watkins*, 448 So.2d 271 (Miss. 1984)). Thus, Sills must also allege actual malice.

**b. Sills Does Not Allege that the ECSBC, Slade, or McLaurin Made a False and Defamatory Statement About Him.**

First, there is no allegation that McLaurin published any statement about Sills. The only time in the Complaint that mentions McLaurin making a statement is with relation to the February 22, 2022 apology to Lyell. (Compl. ¶¶ 52-53.) But Sills included a screenshot of that statement and included it in the Complaint, which unequivocally says it was made by "SBC Executive Committee Chairman Rolland Slade," not McLaurin. (Compl. ¶ 54.) When a "written instrument contradicts allegations in the complaint to which it is attached," the written instrument controls. *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536 (6th Cir. 2017) (citing reference omitted). Thus, because there is no plausible allegation that McLaurin published any statement against Sills, the defamation claim against him should be dismissed.

Moreover, regardless of who made it, the February 2022 statement is simply not defamatory to Sills. According to the Complaint, he already lost his job and was "labeled as a pervert," essentially outcasted from the Southern Baptist community, after the 2018 report of his extramarital affair—for which he does not contest the validity. Sills alleges no additional harm to his reputation from the reporting that the affair was nonconsensual and abusive, only emotional harm. But "[n]ot every 'false statement about another person' rises to the level of a 'defamatory statement.'" *Perkins v. Littleton*, 270 So.3d 208, 218 (Miss. Ct. App. 2018) (quoting *Lawrence v. Evans*, 573 So.2d 695, 697 (Miss. 1990)). "Mississippi law does not 'assess damages for all bruised feelings.'" *Id.* (quoting *v. Watkins*, 448 So.2d 271, 276 (Miss 1984)). Rather, the allegedly false statement must expose the plaintiff "to public hatred, contempt or ridicule, degrade him in society, lessen him in public esteem or lower him in the confidence of the community." *Id.* (citing *J. Pub. Co. v. McCullough*, 743 So.2d 352, 360 (Miss 1999)). Because the statements that Sills claims are true—that he had a non-abusive, but inappropriate sexual relationship with Lyell—already ruined

his reputation in the community and there are no allegations that other allegedly false statements did any other damage, Sills cannot state a claim for defamation.

> ### c. The Complaint Fails to Allege that ECSBC and Slade Acted With Actual Malice in Making the February 2022 Statement By Believing Lyell over Sills.

Likewise, there is no allegation that the ECSBC or Slade acted with actual malice. Sills alleges in the Complaint that Lyell reported that she had a consensual affair with him in 2018, and then changed her story in 2019 to state that the sexual relationship was nonconsensual and Sills was abusive. (Compl. ¶ 38.) At that point, the ECSBC and Slade had a choice of whether to believe Lyell or Sills. Even before the Guidepost Report, it cannot be said that the ECSBC and Slade acted with "reckless disregard" to believe Lyell's story over Sill's. And the Guidepost Report, which Sills concedes is independent from the ECSBC (Compl. ¶ 49), further corroborates that Lyell's story is at the very least plausible, if not probable. Thus, the ECSBC and Slade cannot have "knowledge that the statement was false" or recklessly disregard "ether it was false or not." *Simmons*, 42 So.3d 511, 517 (Miss. 2010). They had the ability to believe Lyell.

> ## 2. Intentional Infliction of Emotional Distress.

According to the Mississippi Supreme Court, "meeting the requisites of a claim for intentional infliction of emotional distress is a tall order in Mississippi." *Speed v. Scott*, 787 So.2d 626, 630 (Miss. 2001) (quoting *Jenkins v. City of Grenada*, 813 F. Supp. 443, 446 (N.D. Miss. 1993)). To state a claim for intentional infliction of emotional distress, the plaintiff must allege:

> (1) the defendant acted willfully or wantonly toward the plaintiff by committing certain described actions; (2) the defendant's acts are ones that evoke outrage or revulsion in civilized society; (3) the acts were directed at, or intended to cause harm to, the plaintiff; (4) the plaintiff suffered severe emotional distress as a direct result of the acts of the defendant; and (5) such resulting emotional distress was foreseeable from the intentional acts of the defendant."

19

*Jones v. City of Hattiesburg*, 228 So.3d 816, 819 (Miss. Ct. App. 2017) (citing *Rainer v. Wal-Mart Assocs. Inc.*, 119 So.3d 398, 403-04 (¶ 19) (Miss. Ct. App. 2013)). While the "standard for an intentional-infliction-of-emotional-distress claim is malicious intentional, willful, wanton, grossly careless, indifferent, or reckless," when it "arises out of the same acts as [the] defamation claim," the claim "must be based on malicious conduct," at least for limited purpose public figures. *Jones*, 228 So.3d at 819; *see also Miller v. Target Corp.*, 854 F. App'x 567, 569 (5th Cir. 2021) (under Texas law, IIED claim derivative of defamation claim should be dismissed when defamation claim fails).

Here, just as the Court should dismiss the defamation claim, it should also dismiss the intentional infliction of emotional distress claim because the Complaint does not allege malicious conduct by the ECSBC, Slade, or McLaurin against Sills.

### 3. Negligence.

Sills's negligence claims should be dismissed because the Complaint does not allege a duty that the ECSBC, Slade, or McLaurin owed to him. To allege negligence, the plaintiff must allege "duty, breach, causation, and injury." *Darling Ingredients Inc. v. Moore*, 337 So.3d 214, 216 (Miss. 2022) (citing *Sanderson Farms, Inc. v. McCullough*, 212 So.3d 69, 76 (Miss. 2017)). Plaintiffs repeat one allegation about the duty owed to them by the ECSBC:

> At all relevant times, Plaintiffs were owed a duty of care by their church and employer, namely, Defendants SBC, Executive Committee, Lifeway, and Seminary. Defendants were obligated to refrain from treating Plaintiffs unfairly or maliciously and to refrain from making false statements about either Plaintiff.

(Compl. ¶¶ 102, 108.)

First, the ECSBC is not Sills's church or employer. Sills concedes this in the Complaint which alleges the ECSBC is a "non-profit corporation that serves as 'the fiduciary, the fiscal, and executive entity of the [SBC].'" (Compl. ¶ 19.) The ECSBC is not a church, and the Complaint

20

plainly alleges that the Seminary – not the SBC or ECSBC - was Sills' employer. (*See id.* ¶ 40 (requiring him to "leave his position at the Seminary" because of his sexual relationship with his student).)

Second, there is no duty, in the law or otherwise, to refrain from treating a person "unfairly or maliciously" or "making false statements" outside the defamation context. Rather, this claim is derivative of the defamation claim. *See Gales v. CBS Broad., Inc.*, 269 F. Supp. 2d 772, 784 (S.D. Miss. 2003) ("Because the plaintiffs have not stated a claim against defendants . . . for defamation . . . , they cannot state a claim against either defendant under any of the remaining counts [including gross negligence], which are derivative of the defamation and invasion of privacy claims."); *see also Smith v. Wal-Mart Stores, Inc.*, No. 4:17-CV-02579, 2019 WL 5457798, at *9 (S.D. Tex. Oct. 24, 2019) ("[U]nder Texas law there is no duty, outside the intentional torts of malicious prosecution and defamation, to not to falsely accuse someone of criminal wrongdoing.") (citing references omitted). Because Sills has not identified a duty that the ECSBC, Slade, or McLaurin owed to him and breached, he cannot state a claim for negligence.

### 4. Conspiracy.

Finally, Sills does not state a claim for civil conspiracy because it, too, is derivative of his defamation claim. To claim civil conspiracy under Mississippi law, a plaintiff must show "(1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, and (4) damages to the plaintiff as a result." *Rex Distrib. Co., Inc. v. Anheuser-Busch, LLC*, 271 So.3d 445, 455 (Miss. 2019).

The claim fails at the second element. To state a claim for a civil conspiracy, there must be an "underlying wrong"—such as an underlying tort or violation of a statute. *Rex Distributing Co.,*

*Inc.*, 271 So.3d at 455. But here, the underlying tort is defamation, for which Sills cannot state a claim. Thus, the civil conspiracy claim must be dismissed.

Nor does Sills allege any "overt act" by McLaurin to participate in the civil conspiracy. *See Fikes v. Wal-Mart Stores, Inc.*, 813 F. Supp. 2d 815, 822 (N.D. Miss. 2011) (dismissing claims against two defendants because the plaintiff "have not identified any unlawful overt act"). Thus, Sills's claim against McLaurin should be dismissed for this reason as well.

### F. Claims by Mrs. Sills.

Mary Sills does not assert any unique claims, but is a named plaintiff for each of Michael Sills's claims. Yet each plaintiff must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights and interests of third parties." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (quoting reference omitted). Thus, the Court must examine each claim asserted by Mary Sills.

Mary Sills's defamation claim fails at step one. She does not allege any statements related to her. All allegations concern Michael Sills's extramarital and predatory relationship with Jennifer Lyell. Mississippi courts "strictly enforce[ ]" the "requirement that allegedly defamatory statements be 'clearly directed toward' and 'of and concerning' the plaintiffs." *Gales v. CBS Broad., Inc.*, 269 F. Supp. 2d 772, 779 (S.D. Miss. 2003) (quoting references omitted). Thus, Mary Sills cannot state a claim for defamation.

And because the other three tort claims are derivative of the defamation claim, they should also be dismissed. Nothing in the Complaint suggests that the ECSBC, McLaurin, or Slade directed any action toward Mary Sills to inflict severe mental distress, owed any duty to Mary Sills outside the defamation context, or conspired to harm Mary Sills in any way. If anything, Mary Sills appears

to be attempting to assert a derivative claim, such as a loss of consortium claim, without stating so in the Complaint. That is not allowed.

Because Mary Sills does not assert any claim individually, her claims against the ECSBC, McLaurin, and Slade should be dismissed.

## CONCLUSION

The Southern Baptist Convention investigated the handling of sexual abuse claims among its leaders. As a religious entity, it may do so, and the secular government cannot intrude on the investigation. Because the Sillses ask the Court to find that the investigation was a fraud and its findings of fact are false, the Court should dismiss the Complaint for lack of subject matter jurisdiction.

Respectfully submitted,

*s/ Brigid M. Carpenter*
Brigid M. Carpenter (BPR #018134)
Ryan P. Loofbourrow (BPF #033414)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
bcarpenter@bakerdonelson.com
rloofbourrow@bakerdonelson.com
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37203
Telephone:  (615) 726-7341
Fax:  (615) 744-7341

*Attorneys for Executive Committee of the*
*Southern Baptist Convention, Willie*
*McLaurin, and Rolland Slade*

23

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum in Support of Motion to Dismiss was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular United States mail. Parties may access this filing through the Court's electronic filing system.

John W. Barrett
Katherine Barrett Riley
Barrett Law Group. P.A.
P.O. Box 927
404 Court Square
Lexington, Mississippi 39095
dbarrett@barrettlawgroup.com
kbriley@barrettlawgroup.com

Shannon M. McNulty
Clifford Law Offices, P.C.
120 N. LaSalle Street, Suite 3100
Chicago, Illinois 60602
smm@cliffordlaw.com

Gary E. Brewer
Brewer & Terry, P.C.
1702 W. Andrew Johnson HWY
Morristown, Tennessee 37816-2046
robin@brewerandterry.com

*Attorneys for Plaintiffs*

Oliva Rose Arboneaux
Philip N. Elbert
Ronald G. Harris
Neal & Harwell, PLC
1201 Demonbreun Street, Suite 1000
Nashville, Tennessee 37203
oarboneaux@nealharwell.com
pelbert@nealharwell.com
rharris@nealharwell.com

*Attorneys for Jennifer Lyell*

R. Bruce Barze
Catherine M. Newman
Barze Taylor Noles Lowther, LLC
2204 Lakeshore Drive, Suite 425
Birmingham, Alabama 35209
bbarze@btnllaw.com
cnewman@btnllaw.com

*Attorneys for Eric Geiger*

James C. Bradshaw, III
Wyatt, Tarrant & Combs, LLP
333 Commerce Street, Suite 1050
Nashville, Tennessee 37201
jbradshaw@wyattfirm.com

Byron E. Leet
Wyatt, Tarrant & Combs
400 West Market Street
Louisville, Kentucky 40202
bleet@wyattfirm.com

Thomas E. Travis
Wyatt, Tarrant & Combs
250 W. Main Street, Suite 1600
Lexington, Kentucky
ttravis@wyattfirm.com

*Attorneys for The Southern Baptist Theological Seminary and Dr. R. Albert Mohler*

24

Louis Gino Marchetti, Jr.
Matthew C. Pietsch
Taylor, Pigue, Marchetti & Blair, PLLC
2908 Poston Avenue
Nashville, Tennessee 37203
gmarchetti@tpmblaw.com
matt@tpmblaw.com

**Attorneys for Southern Baptist Convention,**
**Dr. Ed Litton and Bart Barber**

Terence William McCormick
Steven G. Mintz
Mintz & Gold LLP
600 Third Avenue, 25th Floor
New York, New York 10016
mccormick@mintzandgold.com
mintz@mintzandgold.com

**Attorneys for Solutionpoint**
**International, Inc.**

George H. Cate, III
Kimberly Michelle Ingram-Hogan
Bradley Arant Boult Cummings LLP
1600 Division Street, Suite 700
P.O. Box 340025
Nashville, Tennessee 37203-0025
gcate@bradley.com
kingram@bradley.com

Richard C. Mangelsdorf, Jr.
Terri L. Bernal
P.O. Box 2949
120 Brentwood Comms Way
Suite 625
Brentwood, Tennessee 37024
Chuck.mangelsdorf@mgclaw.com
Terri.bernal@mgclaw.com

**Attorneys for Lifeway Christian Resources**
**of the Southern Baptist Convention**

John R. Jacobson
Katharine R. Klein
Riley & Jacobson
1906 West End Avenue
Nashville, Tennessee 37203
jjacobson@rjfirm.com
kklein@rjfirm.com

**Guidepost Solutions, LLC and**
**Solutionpoint International, Inc.**

this 12th day of July, 2023.

_s/ Brigid M. Carpenter_
Brigid M. Carpenter

Client Work\4870-6379-7871.v2-7/12/23