| | |
|---|---|
| **MICHAEL DAVID SILLS,** *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | **Docket No.: 3:23-CV-00478** |
| v. ) | **JURY DEMAND** |
| ) | |
| **SOUTHERN BAPTIST CONVETION,** *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
BY DEFENDANTS SOUTHERN BAPTIST CONVENTION,
BART BARBER AND ED LITTON**

Defendants Southern Baptist Convention ("SBC"), Bart Barber ("Dr. Barber") and Ed Litton ("Dr. Litton") submit this memorandum of law in support of their Motion to Dismiss Plaintiffs' Complaint ("Complaint") pursuant to Fed. R. Civ. P. 12(b)(1), Fed. R. Civ. P. 12(b)(2) and/or 12(b)(6) for lack of subject matter jurisdiction, personal jurisdiction and/or failure to state a claim upon which relief may be granted.

I.      **INTRODUCTION AND FACTUAL BACKGROUND**

The SBC is a network of autonomous churches whose purpose is to "provide a general organization for Baptists in the United States and its territories for the promotion of Christian missions at home and abroad."  ("The Southern Baptist Convention Executive Committee's Response to Sexual Abuse Allegations and an Audit of the Procedures and Actions of the Credentials Committee" (the "Guidepost Report") is referenced frequently in the Complaint and can therefore be reviewed by the Court.  The report is publicly available at https://www.sataskforce.net/updates/guidepost-solutions-report-of-the-independent-

investigation); Guidepost Report, at 29 (quoting Article II of the SBC Constitution)). Over 47,000 Baptist Churches in the United States and its territories cooperate with the SBC, encompassing over 14 million people. *Id*. The SBC "is under the direction of the Messengers, i.e., the representatives of local churches that cooperate with the SBC." *Id*., at 32. The "day-to-day functioning of the SBC" is managed by Defendant Executive Committee of the Southern Baptist Convention (the "EC") whose operations are "intended to carry out the business" of the convention between the annual two-day meeting of the Messengers that convenes once a year in June. *Id*., at 32-33.

In 2021, a Sexual Abuse Task Force ("Task Force") was created by motion of the Messengers (the "Messengers' Motion") at the SBC annual in June 2021 (the "2021 Convention"). *Id*., at 15. The Task Force was approved to oversee an independent third-party review and investigation into "any allegations of abuse, mishandling of abuse, mistreatment of victims, a pattern of intimidation of victims or advocates, and resistance to sexual abuse reform initiatives" by the EC between January 1, 2000 to June 14, 2021. *Id*., at 16. Defendant Guidepost Solutions, LLC ("Guidepost") was engaged to conduct the independent investigation which resulted in the Guidepost Report that was issued by Guidepost on May 15, 2022. *Id*.

Plaintiffs Michael David Sills ("Plaintiff Sills") and Mary Sills ("Mrs. Sills") filed this lawsuit on May 11, 2023, in the U.S. District Court for the Middle District of Tennessee[1] against the SBC, its current and former president Bart Barber ("Dr. Barber") and Ed Litton ("Dr. Litton"), along with five other entities, and five other individuals, for a total of thirteen defendants (collectively the "Defendants"). The gravamen of Plaintiffs' Complaint against the SBC – as best

---

[1] Plaintiffs previously filed nearly identical claims in the Circuit Court for Mobile, Alabama in November 2022, which were subsequently voluntarily dismissed in 2023 (the "Alabama Complaint").

as can be discerned from the claims asserted – is that Guidepost's investigation and the Guidepost Report, which included the EC's handling of Defendant Jennifer Lyell's ("Ms. Lyell") claims that she had a non-consensual relationship with Plaintiff Sills (the "Lyell Allegations") amounted to deliberate publication of the "unsubstantiated and malicious claim that 'any sexual contact [Ms. Lyell] had with her abuser [Plaintiff Sills] was nonconsensual and involved violence, threats of violence against [Ms. Lyell] and others, and coercion." Doc. 1, at ¶ 60.

The Lyell Allegations were originally made by Ms. Lyell in 2018 concerning "her affair with [Plaintiff Sills]," which began in 2004 when he was a professor at Defendant Southern Baptist Theological Seminary (the "Seminary") located in the State of Kentucky, while Ms. Lyell was at first a coworker and then a Seminary student, and which included claims of physical and sexual abuse. Doc. 1, at ¶¶ 22, 25, 33, 35, 43. Plaintiff Sills asserts that he "immediately admitted to the affair" with Ms. Lyell and resigned from his Seminary position as a result of Ms. Lyell's allegations, and that he and his wife now live in the State of Mississippi. Doc. 1, at ¶¶ 9, 14, 15, 40. Plaintiff Sills admits to an inappropriate intimate relationship with Ms. Lyell but denies the allegation of sexual abuse, which he claims she did not specifically assert until March 2019. Doc. 2, ¶ 2, 9, 13, 36. The Guidepost Report corroborated Ms. Lyell's claim that the relationship was not consensual and was abusive, and that Ms. Lyell's reporting of the abuse was not initially handled appropriately by the EC.

In the Complaint, Plaintiff Sills now argues that the Guidepost Report resulted from "a so-called investigation that included a component specifically designed to shame [Plaintiff Sills] and exonerate [Ms. Lyell]." Doc. 1, at ¶ 40. Based on the factual allegations in the Complaint – or lack thereof – Plaintiffs attempt to articulate causes of action against all thirteen Defendants collectively and indiscriminately for (1) defamation and defamation per se, (2) conspiracy, (3)

negligence, gross negligence, and wantonness, and (4) intentional infliction of emotional distress. Doc. 1, at ¶¶ 78-116.

As it pertains to the SBC, Dr. Barber and Dr. Litton, Plaintiffs' Complaint contains no factual allegations relative to any claimed tortious conduct on their part until July 9, 2021, when then-SBC president Dr. Litton chose a seven-member task force to oversee a sex abuse investigation concerning the EC. Doc. 1, at ¶ 49. Plaintiffs alleges in bare and unsupported conclusory claims that, in doing so, Dr. Litton "directed and approved" a "narrative against Plaintiffs" in conjunction with the appointment of the task force to oversee the third-party investigation into the EC. Doc. 1, at ¶ 49. However, contrary to this allegation, the document Plaintiffs specifically cite and reference in support, in footnote 10 of the Complaint, is a June 2021 article by the Baptist Press which contains no mention whatsoever of Plaintiffs or the Lyell Allegations, but rather establishes that the "Messengers to the 2021 SBC Annual Meeting overwhelmingly approved a motion calling for a task force to oversee a third-party investigation into allegations of mishandling abuse claims at the [EC]." Doc. 1, at fn. 10 (citing Erin Roach, Motion Spurs Task Force to Oversee EC Review, BAPTIST PRESS (June 16, 2021), publicly available at https://www.baptistpress.com/resource-library/news/motion-spurs-task-force-to-oversee-ec-review/).[2]

"Under the terms of the approved motion, all EC members and staff serving from January 2000 to June 2021 are subject to the investigation." *Id*. "The motion also calls for an audit of the 'procedures and actions' taken by the SBC Credentials Committee, which was formed two years ago to address allegations of sexual abuse in churches." *Id*. "A written report on the findings of

---

[2] When a "written instrument contradicts allegations in the complaint to which it is attached," the written instrument controls. *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536 (6th Cir. 2017) (citing reference omitted).

the review will be presented to the task force 30 days before the 2022 SBC Annual Meeting in Anaheim, Calif., and made public in full form within one week along with suggestions from the task force for actions to be taken by the convention, according to the motion." *Id*.

Again, in unsupported and conclusory fashion, Plaintiffs allege that the Defendants collectively – all thirteen of them – "hired [Defendant SolutionPoint International, Inc. ("SPI")] and [Guidepost] to investigate the SBC's sexual abuse crisis, with particular focus on and disproportionate page space dedicated to [Ms. Lyell's] statements against [Plaintiff Sills]." *Id*., at ¶ 50. However, once again, the document Plaintiffs cite and attach to their Complaint in support – the 2021 engagement letter attached as Exhibit A to Plaintiffs' Complaint (the "Engagement Letter") – not only fails to support Plaintiffs' claims in this regard, but flatly contradicts them in every material respect. The Engagement Letter is is considered part of the Complaint. See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

There is no mention whatsoever of Ms. Lyell or her claims against Mr. Sills, nor any reference to any "focus" on Plaintiffs or any other individuals in the Engagement Letter. To the contrary, Section 3.3 of the Engagement Letter provides that "neither the Executive Committee nor the Committee on Cooperation of the Executive Committee will conduct, direct, or otherwise manage or influence our independent investigation in any manner. Though the Task Force is overseeing the investigation, Guidepost will remain independent." *Id*. In addition, Section 3.6 provides that "[n]o member of the Committee on Cooperation, the Task Force, the SBC, the [EC], or the Credentials Committee shall be permitted by Guidepost to edit the report prior to its public release." *Id*.

Plaintiffs' entire theory against the SBC, Dr. Barber and Dr. Litton is premised on the fact that – pursuant to the Messengers' Motion and the results of the Guidepost investigation – the Lyell Allegations were included within Guidepost Report in May 2022. Doc. 1, at ¶ 57. Plaintiffs attempts to allege in purely conclusory fashion that SPI and Guidepost "in concert with Defendants SBC, Lifeway, Lyell, Geiger, [EC], [Dr. Barber], McLaurin, Slade, Seminary, and Mohler, including [Dr. Litton], deliberately published the unsubstantiated and malicious claim that 'any sexual contact [Ms. Lyell] had with her abuser [Plaintiff Sills] was nonconsensual and involved violence, threats of violence against [Ms. Lyell] and others, and coercion." Doc. 1, at ¶ 60. Plaintiffs claim that, as a result, they have suffered "reputational harm, emotional distress, physical pain, and financial loss." Doc. 1, at ¶ 13.

The Complaint also references a tweet from Dr. Barber from July 7, 2022 (the "Barber Tweet") which merely comments on the Guidepost Report and accurately states that the Guidepost investigation and the Guidepost Report found corroboration and support for the Lyell Allegations. Doc.1, at ¶ 72. There is no mention of Plaintiffs whatsoever, nor any recitation or reproduction of the specific claims made by Ms. Lyell or the Lyell Allegations. *Id*.

As set forth in greater detail below, Plaintiffs' Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) because the ecclesiastical abstention doctrine does not permit subject matter jurisdiction over Plaintiffs' defamation and related claims which are inextricably intertwined with the SBC's investigation into internal ecclesiastical affairs. The Complaint fails to establish personal jurisdiction over Dr. Barber and Dr. Litton, which requires dismissal pursuant to Fed. R. Civ. P. 12(b)(2). In addition, Fed. R. Civ. P. 12(b)(6) requires dismissal because Plaintiffs have failed to sufficiently plead the required elements of the defamation torts asserted against the SBC, Dr. Barber and Dr. Litton. The remaining torts are entirely founded upon the same alleged

defamatory speech, which are subject to the same pleading standard, which requires their dismissal as well.

## II. LEGAL STANDARD

### A. Subject Matter Jurisdiction.

In deciding a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), Plaintiffs bear the burden of establishing jurisdiction. *Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990); *see also Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003); *Madison–Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). If Plaintiffs fail to meet this burden, the motion to dismiss must be granted. *Moir*, 895 F.2d at 269; *Madison–Hughes*, 80 F.3d at 1130.

### B. Personal Jurisdiction.

Under Fed. R. Civ. P. 12(b)(2), a party may present a defense of lack of personal jurisdiction by filing a motion. A motion asserting such a defense "must be made before pleading if a responsive pleading is allowed." *Id*.

> [T]he issue of whether [a] court may exercise personal jurisdiction over [a] defendant[ ] depends on the specific limitations of Tennessee's long-arm statute and the constitutional principles of due process. Tennessee's long-arm statute has been consistently construed to extend to the limits of federal due process, and, therefore, the two inquiries are merged, and the court need only determine whether exercising personal jurisdiction over the[ ] defendant[ ] is consistent with federal due process requirements. In order for due process to permit the exercise of personal jurisdiction over a non-resident defendant, the defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" The Supreme Court has identified "general" jurisdiction and "specific" jurisdiction as distinct bases for personal jurisdiction. A demonstration of the contacts necessary for either basis is sufficient to establish personal jurisdiction.

*Receiver of Assets of Mid-Am. Energy, Inc. v. Coffman*, 719 F. Supp. 2d 884, 887–88 (M.D. Tenn. 2010) (internal citations omitted).

**C.     Failure to State a Claim.**

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679; *Twombly*, 550 U.S. at 556.

A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss. *Id*.; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id*., at 681. Moreover, factual allegations that are merely

consistent with the defendant's liability do not satisfy the plaintiff's burden, as mere consistency does not establish plausibility of entitlement to relief, even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678.

Generally, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, it has long been the rule that a court may consider, not only the Complaint and exhibits attached to it, but also exhibits attached to a defendant's motion to dismiss, "so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018) (citation omitted).

## III. ARGUMENT

### A. Plaintiffs' Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction

Civil courts are barred by the First Amendment of the Constitution from interfering with determinations involving "questions of discipline, or of faith, or ecclesiastical rule, custom or law." *Watson v. Jones*, 80 U.S. 679, 727 (1871); *Lewis v. Seventh Day Adventists Lake Region Conference*, 978 F.2d 940, 941-42 (6th Cir. 1992). The ecclesiastical abstention doctrine prohibits courts from interfering with determinations regarding matters that include, among other things, "the conformity of the members of the church to the standards of morals required of them." *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 714 (1976) (quoting *Watson*, 80 U.S. at 679)). Applying the doctrine, courts have dismissed defamation claims resulting from internal church investigations when it is apparent from the Complaint that "regardless of how the claims set forth in the plaintiffs' complaint may be labeled, resolving the plaintiffs' claims would require [] this court to enter into areas implicating the First Amendment." *Ogle v. Church of God*, 153 Fed.Appx. 371, 375-76 (6th Cir. 2005) (internal citations omitted) (defamation and related tort

9
Case 3:23-cv-00478   Document 89   Filed 07/12/23   Page 9 of 20 PageID #: 527

claims of a bishop asserted against the church rejected based upon lack of subject matter jurisdiction where the claims arose out of an internal church investigation).

In this case, Plaintiff's claims questioning the propriety of the decision to include the Lyell Allegations in the Guidepost Report and its relevance to the mandate for the investigation as set forth in the Messengers' Motion as adopted at the 2021 Convention, as well as questions related to the propriety of the Barber Tweet, necessarily and inextricably intertwine the precise matters that include, among other things, "the conformity of the members of the church to the standards of morals required of them" that are prohibited from review under *Milivojevich*, 426 U.S. at 714, and *Watson*, 80 U.S. at 679, as well as questions of church discipline. *Watson*, 80 U.S. at 727.

As set forth above, the Guidepost Report was created as a result of the Messengers' Motion at the 2021 SBC annual meeting to investigate and expose, among other things, "any allegations of abuse, mishandling of abuse, mistreatment of victims, a pattern of intimidation of victims or advocates, and resistance to sexual abuse reform initiatives" by the EC between January 1, 2000 to June 14, 2021." The SBC "is under the direction of the Messengers, i.e., the representatives of local churches that cooperate with the SBC," who – in 2021 – directed, via the Messengers' Motion, the internal investigation that resulted in the Guidepost Report.

The controversy raised by Plaintiffs' Complaint over whether Plaintiff Sills' own conduct as set forth in the Lyell Allegations merited inclusion in the Guidepost Report necessarily requires this Court to delve into and intertwine itself in the underlying motivations and interpretation of the Messengers' Motion and whether the Guidepost Report appropriately responded to the Messengers' mandate. As previously noted, the First Amendment prohibits courts from interfering with determinations regarding matters that include, among other things, "the conformity of the

members of the church to the standards of morals required of them," *Milivojevich*, 426 U.S. at 714, as well as questions of church discipline. *Watson*, 80 U.S. at 727.

In other words, "regardless of how the claims … may be labeled, resolving [Plaintiffs'] claims would require [] this court to enter into areas implicating the First Amendment." *Ogle*, 153 Fed.Appx. at 375-76 (internal citations omitted). No secular evaluation of the Guidepost Report can be undertaken without consideration of the underlying 2021 mandate of the Messengers' Motion and the motivations for the internal investigation – which necessarily include matters of church governance, discipline, and the conformity of the members of the church to the standards of morals required of them. As such, this Court does not have subject matter jurisdiction over Plaintiffs' claims and the same must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

**B.     The Complaint Fails to Establish Personal Jurisdiction Over Dr. Barber and Dr. Litton.**

"In any proceeding, [ ] the party asserting jurisdiction has the burden of proof." *Ingram Barge Co. LLC v. Bunge North America, Inc.*, 455 F.Supp.3d 558, 568 (M.D. Tenn. 2020) (citing *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)). Here, Plaintiffs have not met their burden as to Dr. Barber and Dr. Litton. Dr. Barber is a citizen of the State of Texas, Doc. 1, at ¶ 18, and Dr. Litton is a citizen of the State of Alabama. Doc. 1, at ¶ 17. However, the allegations in the Complaint fail to show that Dr. Barber and Dr. Litton have sufficient contacts with the State of Tennessee to warrant personal jurisdiction over them. *See Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 380 (6th Cir. 1968) (Due process requires that if a defendant is not present within the territory of the forum, it must have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.)

Instead, Plaintiffs' Complaint asserts nothing more than the mere "legal conclusions" or "[t]hreadbare recitals of the elements" that *Iqbal* prohibits. *See* Doc. 1, at ¶¶ 17 ("[Dr.] Litton has continuous and systematic contact with this forum"), ¶ 18 ("[Dr.] Barber has continuous and systematic contact with this forum"), ¶ 30 ("the subject-matter and allegations at bar arise out of and relate to the Defendants' contacts with this forum); *Iqbal*, 556 U.S. at 679 ("A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss.") The Complaint fails to contain any sufficient factual allegations to establish Dr. Barber's or Dr. Litton's "continuous and systematic contact" necessary to establish general jurisdiction. General jurisdiction may only be asserted over defendants whose affiliation with the forum is so "'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Likewise, Plaintiffs fail to allege sufficient facts to establish specific jurisdiction, which exists when a state exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum. *Receiver of Assets of Mid- Am. Energy, Inc.*, 719 F. Supp. 2d at 888. In *Southern Machine Co. v. Mohasco Industries, Inc.*, the Sixth Circuit established a three-part test for determining whether the exercise of specific jurisdiction was consistent with the principles of due process. "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id*., at 380. Purposeful availment requires contacts with the forum which "proximately result from

actions by the defendant himself that create a 'substantial connection' with the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Again, Plaintiffs – citizens of the State of Mississippi – fail to do more than assert "bare assertions," and "conclusory" or "bald" allegations as to any actions on the part of Dr. Barber and Dr. Litton that could plausibly establish that any of the complained of conduct "arise[s] from [Dr. Barber's or Dr. Litton's] activities [in the State of Tennessee] or "have a substantial enough connection" to the State of Tennessee to make the exercise of jurisdiction over them in the State of Tennessee reasonable. *Id*. Plaintiffs bear the burden of proof of establishing jurisdiction over Dr. Barber and Dr. Litton and their failure to do so requires dismissal.

C. **The Complaint Impermissibly Utilizes "Group Pleading."**

Plaintiffs' Complaint fails to plead any specific facts implicating tortious conduct by the SBC, Dr. Barber, or Dr. Litton and, instead, impermissibly utilizes the practice of "group pleading" to assert the claims in the Complaint against all the Defendants generally. *See, e.g., Accord Rodriguez v. Providence Cmty. Corrs., Inc.*, 3:15–CV–01048, 2016 WL 3351944, at *11 (M.D. Tenn. June 9, 2016) ("A complaint that fails to impute concrete acts to specific litigants, fails to state a plausible claim." (internal quotation marks and citations omitted)); *DeSoto v. Metro. Gov't of Nashville & Davidson County*, 64 F. Supp. 3d 1070, 1087 (M.D. Tenn. 2014) ("Here, [the] Amended Complaint in general alleges claims against 'the defendants,' without specifying which defendants are the actual target of certain claims, what actions those defendants allegedly took related to that particular claim, and why those actions could support a given claim."). Plaintiffs' Complaint in this case alleges – persistently and in merely general and indiscriminate terms – claims against the Defendants – all thirteen (13) of them – without specifying which defendants

are the actual target of certain claims, what actions those defendants allegedly took related to that particular claim, and why those actions could support a given claim.

This is particularly relevant as it pertains to the SBC, Dr. Barber and Dr. Litton. Applying this standard of review, the Complaint fails to contain sufficient factual allegations to make the claims against them plausible under the standards of *Iqbal* and *Twombly*. As previously mentioned, other than being included in listings of the multiple Defendants, the SBC, Dr. Barber, and Dr. Litton are, in large measure, rarely mentioned by name in the Complaint. Instead, they are grouped collectively along with other Defendants in allegations that amount to no more than conclusions of law. These conclusory allegations are not entitled to a presumption of truth, nor are they sufficient to demonstrate plausible claims or entitlement to relief under the standards of *Iqbal* and *Twombly*. For these reasons, the Complaint fails to state a claim for which relief can be granted against the SBC, Dr. Barber, and Dr. Litton, and their motion to dismiss should be granted.

**C.      Plaintiff's Tort Law Claims Fail as a Matter of Law**

Courts "ordinarily must apply the choice-of-law rules of the State in which it sits." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 244 n. 8, (1981). A federal court sitting in diversity applies the substantive law of the state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001). Tennessee applies the rule in the Restatement (Second) of Conflict of Laws for tort claims, applying the law of the state with the most significant relationship to the tort. *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992). For multistate defamation, "the state of the most significant relationship will usually be the state where the [person who was allegedly defamed] was domiciled at the time, if the matter complained of was published in that state." Restatement (Second) of the Law – Conflict of Laws § 150(2).

As Plaintiffs allege in the Complaint that they are residents of the State of Mississippi, Doc. 1, at ¶ 14, the SBC, Dr. Barber, and Dr. Litton will utilize - for purposes of this motion only and without concession or waiver of a future choice-of-law argument – Mississippi law as it applies to the defamation claims, as well as the derivative conspiracy, negligence and intentional infliction of emotional distress claims.

1. **The Defamation Claims.**

Under Mississippi law, the tort of defamation requires proof of "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Simmons Law Grp., P.A. v. Corporate Management, Inc.*, 42 So.3d 511, 517 (Miss. 2010). If the plaintiff is a public figure, or a limited purpose or "vortex" public figure in the subject matter of the dispute, he must also show "actual malice—that is, with knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *Id*. (quoting *Moon v. Condere Corp.*, 690 So.2d 1191, 1195-96 (Miss. 1997)).

Plaintiffs' claims against the SBC, Dr. Barber and Dr. Litton fail in this regard because there is no plausible allegation in the Complaint that any of them published any defamatory statement about Plaintiff Sills. "Not every 'false statement about another person' rises to the level of a 'defamatory statement.'" *Perkins v. Littleton*, 270 So.3d 208, 218 (Miss. Ct. App. 2018) (internal citations omitted). "Mississippi law does not 'assess damages for all bruised feelings.'" *Id*. (internal quotations and citations omitted). Rather, the allegedly false statement must expose the plaintiff "to public hatred, contempt or ridicule, degrade him in society, lessen him in public esteem or lower him in the confidence of the community." *Id*. (internal citations omitted). In this

case, Plaintiff Sills has already admitted that – even in his own account of the Lyell Allegations – he had an inappropriate and intimate relationship with Ms. Lyell which forced his resignation from the Seminary and which had already negatively impacted his reputation in the community. As such, the Complaint fails to state any plausible allegations that any statement by the SBC, Dr. Barber, or Dr. Litton caused any harm to Mr. Sills.

Likewise, there is no allegation that the SBC, Dr. Barber, or Dr. Litton acted with any form of negligence or malice. The Guidepost Report was the result of an independent third-party review and investigation into "any allegations of abuse, mishandling of abuse, mistreatment of victims, a pattern of intimidation of victims or advocates, and resistance to sexual abuse reform initiatives" by the EC between January 1, 2000 to June 14, 2021, as demanded by the Messengers' Motion in 2021. The SBC had no role in inserting itself into the findings of the Guidepost Report, including but not limited to whether Plaintiff Sills or Ms. Lyell's version of the Lyell Allegations were to be accepted or believed. Instead, pursuant to the terms of the Engagement Letter, the purpose of the Guidepost Report was not to render a verdict as to the specifics of the Lyell Allegations, but rather to examine and report on the EC's response to Ms. Lyell's allegations. Accordingly, the Guidepost Report, pursuant to its independent investigation, found the existence of evidence that corroborated Ms. Lyell's version of events as at the very least plausible, if not probable. As such, no action or inaction on the part of the SBC, Dr. Barber or Dr. Litton as described in the Complaint, can plausibly be deemed to constitute negligence or malice toward Plaintiffs.

Finally, as it pertains to the Barber Tweet, it specifically references the Guidepost Report as the basis for the statements contained therein and, as such, does not constitute any separate or independent actionable defamatory claim. Plaintiffs' characterizations of the Guidepost Report, as well as the Barber Tweet, are nothing more than that – their characterizations – which this Court

is not bound to accept. To the contrary, the words themselves are not capable of conveying the defamatory meaning Plaintiff asserts. The Barber Tweet merely comments on the contents and findings of the Guidepost Report and accurately states that the Guidepost investigation found corroboration and support for the Lyell Allegations. Doc.1, at ¶ 72. There is no mention of Plaintiffs whatsoever, nor any recitation or reproduction of the specific claims made by Ms. Lyell or the Lyell Allegations themselves. *Id.* Accordingly, the defamation claims against the SBC, Dr. Barber and Dr. Litton must be dismissed.

### 2. The Derivative Conspiracy, Negligence and Emotional Distress Claims.

A civil conspiracy claim under Mississippi law requires proof of "(1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, and (4) damages to the plaintiff as a result." *Rex Distrib. Co., Inc. v. Anheuser-Busch, LLC*, 271 So.3d 445, 455 (Miss. 2019). However, there is no alleged unlawful purpose or act alleged in the Complaint other than the defamation claims. As those claims fail as a matter of law, the derivative civil conspiracy claim must be dismissed as well.

Similarly, the derivative negligence claims must be dismissed because the Complaint does not allege any recognized legal duty that the SBC, Dr. Barber, or Dr. Litton owed to Plaintiffs, nor do Plaintiffs plausibly allege that the SBC was – at any time relevant herein – Plaintiff Sills' employer. *See* Doc. 1, at ¶¶ 102, 108. To the contrary, Plaintiffs allege Plaintiff Sills' was employed by the Seminary – not the SBC. *Id.*, at ¶ 40.

Finally, to state a claim for intentional infliction of emotional distress in Mississippi, the plaintiff must allege: (1) the defendant acted willfully or wantonly toward the plaintiff by committing certain described actions; (2) the defendant's acts are ones that evoke outrage or

17
Case 3:23-cv-00478    Document 89    Filed 07/12/23    Page 17 of 20 PageID #: 535

revulsion in civilized society; (3) the acts were directed at, or intended to cause harm to, the plaintiff; (4) the plaintiff suffered severe emotional distress as a direct result of the acts of the defendant; and (5) such resulting emotional distress was foreseeable from the intentional acts of the defendant." *Jones v. City of Hattiesburg*, 228 So.3d 816, 819 (Miss. Ct. App. 2017) (internal citations omitted). However, once again, any such claim is derivative of the defamation claims, and requires proof of willful and malicious conduct on the part of the SBC, Dr. Barber, and Dr. Litton. *Id*., at 819. As Plaintiffs' Complaint fails as a matter of law on all of these matters, these derivative claims must be dismissed as well.

## IV. CONCLUSION

Based upon the argument and authority cited above, the SBC, Dr. Barber and Dr. Litton request that the Court dismiss Plaintiffs' Complaint with prejudice.

**DATED: July 12, 2023**

        Respectfully submitted,

        **TAYLOR, PIGUE, MARCHETTI & BLAIR, PLLC**

By:  */s/ Matthew C. Pietsch*
      L. Gino Marchetti, Jr., BPR No. 005562
      Matthew C. Pietsch, BPR No. 024659
      2908 Poston Avenue
      Nashville, TN 37203
      (615) 320-3225
      (615) 320-3244 Fax
      gmarchetti@tpmblaw.com
      matt@tpmblaw.com
      *Counsel for Defendant*
      *Southern Baptist Convention*

# CERTIFICATE OF SERVICE

The undersigned certifies that a true and complete copy of the foregoing has been served through the Court's electronic filing system to the following on **July 12, 2023**:

| | |
|---|---|
| Gary E. Brewer<br>Brewer and Terry, P.C.<br>1702 W. Andrew Johnson Hwy.<br>P.O. Box 2046<br>Morristown, TN 37816<br>robin@brewerandterry.com<br><br>John W. Barrett<br>Katherine Barrett Riley<br>Barrett Law Group, P.A.<br>404 Court Square North<br>P.O. Box 927<br>Lexington, MS 39095<br>dbarrett@barrettlawgroup.com<br>kbriley@barrettlawgroup.com<br><br>Shannon M. McNulty<br>Clifford Law Office, P.C.<br>120 N. LaSalle Street, 36th Floor<br>Chicago, IL 60602<br>smm@cliffordlaw.com<br><br>*Counsel for Plaintiff* | John R. Jacobson, Esq.<br>Katherine R. Klein, Esq.<br>Riley & Jacobson, PLC<br>1906 West End Avenue<br>Nashville, TN 37203<br>jjacobson@rjfirm.com<br>kklein@rjfirm.com<br><br>Steven G. Mintz, Esq.<br>Terence W. McCormick, Esq.<br>600 Third Avenue, 25th Florr<br>New York, NY 10016<br>mintz@mintzandgold.com<br>mccormick@mintzandgold.com<br><br>*Counsel for Defendants Guidepost Solutions, LLC and SolutionPoint International, Inc.* |
| George H. Cate, III<br>Kimberly M. Ingram-Hogan<br>Bradley Arant Boult Cummings LLP<br>1600 Division St., Suite 700<br>Nashville, TN 37203<br>gcate@bradley.com<br>kingram@bradley.com<br><br>*Counsel for Defendant LifeWay Christian Resources* | R. Bruce Barze, Jr.<br>Barze Taylor Noles Lowther LLC<br>2204 Lakeshore Dr., Suite 425<br>Birmingham, AL 35209<br>bbarze@btnllaw.com<br><br>*Counsel for Defendant Eric Geiger* |
| | |

| | |
|---|---|
| Ronald G. Harris<br>Philip N. Elbert<br>Olivia R. Arboneaux<br>Neal & Harwell, PLC<br>1201 Demonbreun St., Suite 1000<br>Nashville, TN 37203<br>rharris@nealharwell.com<br>pelbert@nealharwell.com<br>oarboneaux@nealharwell.com<br><br>*Counsel for Defendant Jennifer Lyell* | Brigid M. Carpenter<br>Baker, Donelson, Bearman, Caldwell &<br>Berkowitz, P.C.<br>1600 West End Avenue, Suite 2000<br>Nashville, TN 37203<br>bcarpenter@bakerdonelson.com<br><br>*Counsel for Defendants, Executive Committee of the Southern Baptist Convention, Willie McLaurin, and Rolland Slade* |
| James C. Bradshaw III<br>Wyatt, Tarrant & Combs, LLP<br>333 Commerce Street, Suite 1050<br>Nashville, TN 37201<br><br>Byron Leet<br>Thomas E. Travis<br>Wyatt, Tarrant & Combs, LLP<br>400 West Market Street, Suite 2000<br>Louisville, KY 40202<br><br>*Counsel for Defendants The Southern Baptist Theological Seminary and Dr. R. Albert Mohler* | |

            /s/ Matthew C. Pietsch