THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL DAVID SILLS and MARY SILLS, | ) ) ) |
| Plaintiffs, | ) ) CIVIL ACTION NO. 3:23-CV-00478 ) JUDGE WILLIAM L. CAMPBELL, JR. ) MAGISTRATE JUDGE CHIP FRENSLEY |
| v. | ) ) |
| SOUTHERN BAPTIST CONVENTION, et al., | ) JURY TRIAL DEMANDED ) |
| Defendants. | ) ) |

**DEFENDANT ERIC GEIGER'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BASED ON LACK OF PERSONAL JURISDICTION AND LACK OF SUBJECT MATTER JURISDICTION**

Defendant Eric Geiger ("Geiger") respectfully submits this Memorandum of Law in support of his Motion to Dismiss (Doc. 91).

**Introduction**

This is the second time Plaintiffs have sued Geiger in the wrong forum. Just as in Alabama,[1] Plaintiffs' claims against Geiger are doomed to fail, and dismissal is proper because Geiger is not subject to personal jurisdiction in this Court. He does not have sufficient contacts with Tennessee for this Court to exercise personal jurisdiction over him. He is not domiciled in Tennessee and does not have continuous and systematic contacts with Tennessee. Critically, none of Plaintiffs' claims arises from Geiger's contacts with Tennessee. Because there is no legitimate

---

[1] On November 21, 2022, Plaintiffs' filed a nearly identical lawsuit in the Circuit Court of Mobile County, Alabama, Case No. CV-2022-902045. Following motions to dismiss filed by all Defendants, and after Plaintiffs had filed this lawsuit (on May 11, 2023), Plaintiffs' filed a motion for leave to dismiss the Alabama action without prejudice on May 23, 2023. The motion was granted that same day.

basis for the exercise of either general or specific personal jurisdiction over Geiger, all claims against him should be dismissed entirely. Although Tennessee recognizes conspiracy theory jurisdiction, it cannot exist over Geiger because totally unsupported allegations of conspiracy cannot constitute sufficient contacts to justify an exercise of personal jurisdiction.

It should come as no surprise that Geiger is not subject to jurisdiction where, as here, Plaintiffs' claims against him arise from an allegedly concerted smear campaign they say ***began in March 2019***—six months after Geiger had left Tennessee and his employment with Defendant Lifeway Christian Resources ("Lifeway") and moved to California to pastor a church unaffiliated with the Southern Baptist Convention ("SBC"). (See Compl., ¶¶ 36, 40.) Even a cursory review of Plaintiffs' Complaint demonstrates they cannot connect any wrongful conduct by Geiger (or even any conduct in Tennessee) to their alleged injuries.

David and Mary Sills allege that in Spring 2018, during Jennifer Lyell's employment at Lifeway, she confessed to Geiger about an affair with David Sills. (Id. at ¶ 35.) Plaintiffs concede that, shortly after this confession, Geiger moved and became the Senior Pastor at a church in Orange County, California. (Id. at ¶ 36.)[2] Plaintiffs' lawsuit is not based on Lyell's 2018 communication to Geiger. Rather, Plaintiffs' claims are based on allegedly defamatory statements made beginning in March 2019. The gist of their allegations is this: a once "reportedly consensual affair was now not consensual . . . [but] deemed abusive and forced." (Id. at ¶ 53.) Plaintiffs aver

---

[2] Geiger expects the evidence would refute many of Plaintiffs' allegations, including their claim that Mariners Church is affiliated with the SBC. In considering whether a complaint is sufficient to withstand a motion to dismiss, uncontroverted factual allegations in the complaint must be taken as true. Santoni v. Mueller, No. 3:20-CV-00975, 2022 WL 97049, at *2 (M.D. Tenn. Jan. 10, 2022). However, when allegations in the complaint have been controverted by evidence such as affidavits, the "plaintiff may not stand on his pleadings, but must show the specific facts demonstrating that the court has [personal] jurisdiction." Ramsey v. Greenbush Logistics, Inc., 263 F. Supp. 3d 672, 676 (M.D. Tenn. 2017) (quoting Miller v. AXA Winterthur Ins. Co., 694 F.3d 675, 678 (6th Cir. 2012)). Plaintiffs are unable to do so here.

that in March 2019, while Lyell was still employed by Lifeway and "directly reporting to Geiger,"[3] she acted in concert with other defendants in "rebranding" the affair story as a sexual abuse story. (Id. at ¶ 38.) Plaintiffs allege in summary fashion that Geiger was among the defendants who "saw an opportunity to improve the appearance and reputation of SBC's handling of abuse cases" and wanted to make an example out of Sills. (Id. at ¶ 40.) Plaintiffs also make a non-specific assertion that, in or around May 2022, all Defendants (including Geiger), acted in concert to "deliberately publish[] the unsubstantiated and malicious claim that 'any sexual contact [Lyell] had with her abuser [Sills] was nonconsensual and involved violence, threats of violence against her and others, and coercion.'" (Id. at ¶ 60.) But the facts demonstrate all these alleged wrongful acts took place, by Plaintiffs' own admission, after Geiger had left Tennessee and ceased his affiliation with Lifeway.

Plaintiffs' claims also are subject to dismissal for lack of subject matter jurisdiction. The gravamen of Plaintiffs' Complaint is that Defendant Guidepost's investigation and the subsequent Guidepost Report, which included the handling of Lyell's claims, amounted to intentional defamation. The ecclesiastical abstention doctrine does not permit subject matter jurisdiction over Plaintiffs' defamation and related claims which are inextricably intertwined with the SBC's investigation into internal ecclesiastical affairs.

**Facts**

Eric Geiger is a former Lifeway employee and the current Senior Pastor at Mariners Church in Irvine, California. (Ex. A, Declaration of Eric Geiger, ¶ 3.) Mariners Church is a non-denominational Christian church that is not associated or affiliated with the SBC or any other

---

[3] Plaintiffs cannot have it both ways. After admitting that Geiger left Lifeway in 2018 for a church in California (Compl., ¶ 36), they cannot thereafter credibly claim he was Lyell's direct supervisor at Lifeway.

Defendant. (Ex. A, ¶ 4.) Since September 2018, Geiger has not worked for, or been a representative of, Lifeway or any other Defendant. (Ex. A, ¶ 15.) Although Geiger entered into a noncompete agreement with Lifeway when he left his employment, he did not have any interaction with Lifeway, meetings with Lifeway, or any visits to Lifeway. (Ex. A, ¶ 10.)

Before September 2018, while still working for Lifeway, Geiger lived in Tennessee and it was there that Lyell told Geiger about her relationship with David Sills. (Ex. A, ¶¶ 5, 6.) Upon learning this information, Geiger immediately communicated it by phone to Defendant Albert Mohler, who was located in Kentucky. (See id.) However, Geiger was not a participant in any subsequent investigations into Lyell's claims. (Ex. A, ¶ 7.) By the time Lyell wrote her allegedly "rebranded" abuse story in March 2019, Geiger was no longer an employee or agent of Lifeway. (Ex. A, ¶¶ 13-14.) Thus, contrary to Plaintiffs' unsupported contention, Lyell did not "report to Geiger" at that time. (See id.)

Geiger is alleged to be a Lifeway agent and a co-conspirator with the other Defendants in an elaborate plot to tarnish Plaintiffs' reputation for the benefit of the reputation of SBC and the other Defendants. (Compl., ¶¶ 94-97.) However, Plaintiffs do not allege any actions were undertaken in Tennessee before September 2018 by Geiger or any other Defendant in furtherance of this alleged conspiracy. (See Compl., ¶¶ 36, 43, 55.) Rather, all the acts of the alleged conspiracy occurred—based on Plaintiffs' own allegations and Geiger's affidavit—after he was no longer employed by Lifeway. For instance, the first publication relating to the abuse story was released by Baptist Press in March 2019 and the Guidepost report was published in May 2022—long after Geiger had relocated to California. (Ex. A, ¶15; see Compl., ¶¶ 36, 43, 55.) Moreover, despite alleging Geiger regularly appears in this District in relation to his work (see Compl., ¶ 30), Geiger's

4

sworn declaration demonstrates only three visits to Tennessee since September 2018. (See Ex. A, ¶ 8.)

## Law and Analysis

### I. Geiger should be dismissed from the lawsuit because this Court lacks personal jurisdiction over him.

#### A. Applicable Legal Standard

Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons. Walden v. Fiore, 571 U.S. 277, 283 (2014). Tennessee law authorizes its courts to exercise jurisdiction over persons on "any basis not inconsistent with the constitution of this state or of the United States." TENN. CODE ANN. § 20-2-214(a)(6) (West 2017); see also Bulso v. O'Shea, 730 F. App'x 347, 349 (6th Cir. 2018). Therefore, in order to determine whether this Court has personal jurisdiction over Geiger, the Court must decide whether the exercise of jurisdiction comports with the limits imposed by federal due process. Walden, 571 U.S at 283; Bulso, 730 F. App'x at 349.

The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution permits a forum state to subject a nonresident defendant to its courts only when that defendant has "'minimum contacts' with the forum state sufficient to accord with 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). There are two varieties of personal jurisdiction: specific jurisdiction and general jurisdiction. Gordon v. Greenview Hosp., Inc., 300 S.W.3d 635, 647 (Tenn. 2009). "The general jurisdiction inquiry is very different from the specific jurisdiction inquiry." Id.

"The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." Young v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003) (citing Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883 (6th Cir. 2002)). To do so, "plaintiff bears the

5

burden of establishing ***through 'specific facts'*** that personal jurisdiction exists over the non-resident defendant...." Conn v. Zakharov, 667 F.3d 705, 711 (6th Cir. 2012) (emphasis added). "[T]he court must consider the pleadings and affidavits in a light most favorable to the plaintiff," CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996). But "[w]hen a defendant supports its [12(b)(2)] motion with affidavits, the burden is on the plaintiff to make a 'prima facie showing of personal jurisdiction over the defendant by filing its own affidavits or other written evidence.'" First Cmty. Bank, N.A. v. First Tennessee Bank, N.A., 489 S.W.3d 369, 382 (Tenn. 2015) (quoting Gordon, 300 S.W.3d at 644). Plaintiffs are not permitted to simply rely on the complaint's allegations. Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991).

   **B.**   **Geiger is not subject to general or specific jurisdiction in Tennessee.**

   1.   General personal jurisdiction does not exist over Geiger as an individual or agent of Lifeway.

Geiger lacks the contacts with Tennessee necessary to support a finding of general jurisdiction. General jurisdiction allows a plaintiff to sue a defendant on all claims regardless of the connection between the claim and the forum. TailGate Beer, LLC v. Boulevard Brewing Co., No. 3:18-CV-00563, 2019 WL 2366948, at *2 (M.D. Tenn. June 5, 2019) (citing Daimler AG v. Bauman, 571 U.S. 117, 138-39 (2014)). The logic of general jurisdiction is that a state has power over its citizens that is not entirely confined to in-state activities. See Milliken v. Meyer, 311 U.S. 457, 463-64 (1940) (explaining jurisdiction in terms of each state's power over its citizens). "General jurisdiction" requires that a plaintiff have continuous and systematic contacts with the forum state, such that a person is "essentially at home" in the forum state. Tailgate Beer, 2019 WL 2366948, at *2 (quoting Daimler, 571 U.S. at 138-39). Thus, "[f]or general jurisdiction, the 'paradigm forum' is an 'individual's domicile[.]'" Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.,137 S. Ct. 1773, 1776, (2017). The Daimler court stressed that

6

"only a limited set of affiliations with a forum will render a defendant amendable to all-purpose jurisdiction." 571 U.S. at 137.[4]

Plaintiffs make only a conclusory allegation that Geiger's contacts with this forum are "continuous and systematic." (Compl., ¶ 26.) Such an allegation, without specific factual assertions to support it, is insufficient to establish a basis for the exercise of personal jurisdiction. Hamm v. Wyndham Resort Dev. Corp, No. 3:19-CV-00426, 2020 WL 5995050, at *5 (M.D. Tenn. Oct. 9, 2020). Rather, Geiger as an individual is not subject to general jurisdiction in Tennessee because he is a citizen of California and is domiciled in California. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011). Geiger's contacts with Tennessee are insufficient to render him "essentially at home" in Tennessee. See Conn, 667 F.3d at 711 (holding nonresident defendant who owned property in Ohio, traveled annually to Ohio, maintained an Ohio bank account, and engaged in Ohio litigation related to his property ownership, did not have "pervasive" contacts with the State of Ohio and was not subject to general jurisdiction there); Dunn as Next Friend J.D. v. Cone, No. 3:19-CV-00920, 2020 WL 2193960, at *2 (M.D. Tenn. May 6, 2020), aff'd sub nom. Dunn v. Cone, No. 20-5938, 2021 WL 3671143 (6th Cir. Mar. 2, 2021) (holding Missouri defendants were not subject to general jurisdiction in Tennessee because they were not "essentially at home" in Tennessee); see also Bobick v. Wyndham Worldwide Operating, Inc., No. 3:18-cv-00514, 2018 WL 4566804, at *5 (M.D. Tenn. Sept. 24, 2018) (noting that general jurisdiction over the defendants was lacking even though they had "contacts in Tennessee via the

---

[4] The Supreme Court has rarely upheld a finding of general jurisdiction. See, e.g., Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952). Moreover, courts across the nation "regularly have declined to find general jurisdiction even where the contacts were quite extensive." Amoco Egypt Oil Co. v. Leonis Navigation Co., 1 F.3d 848, 851 n.3 (9th Cir. 1993).

resorts they own, the Tennesseans they employ, the offices they maintain, and the marketing efforts undertaken in the state").

Since moving to California from Tennessee in 2018, Geiger's contacts in this State have not been continuous or systematic. (Ex. A, ¶¶ 8-10.) He has only returned to Tennessee three times since moving in September 2018. (Ex. A, ¶ 8.) Geiger spoke once at a conference at Longhollow Baptist in Hendersonville in November 2018, and he has visited his parents two times in Knoxville. (Id.) Since his move to California, he has not had any interaction with Lifeway, meetings with Lifeway, or any visits to Lifeway. (Ex. A, ¶ 10.) These contacts are simply not of the type and quality to render Geiger "essentially at home" in Tennessee. Conn, 667 F.3d at 711.

Nor is Geiger subject to general jurisdiction in Tennessee as an agent of Lifeway (or to the extent he ever was one, the SBC) because Geiger's employment with Lifeway ceased in 2018 at the time he moved to California. Mariners Church is not associated with Lifeway or the SBC in any manner. (Ex. A, ¶ 4.) Moreover, the actions taken by Geiger in 2018 while an agent of Lifeway are not alleged to be defamatory. (See Compl., ¶35.)[5] Therefore, as either an individual or agent of Lifeway, this Court cannot exercise general jurisdiction over Geiger.

### 2. Specific personal jurisdiction does not exist over Geiger as an individual or agent of Lifeway.

The Sixth Circuit has laid out a three-prong test for determining whether specific jurisdiction is met and whether the defendant's due process rights are protected. See S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968). The three prongs under the "Mohasco"

---

[5] Nevertheless, even if he were still employed by Lifeway, "[t]he law is well-settled that a trial court may not exercise personal jurisdiction over a nonresident defendant merely because the defendant is employed by a company domiciled in the forum state." Manufacturers Consolidation Serv., Inc. v. Rodell, 42 S.W.3d 846, 859 n.8 (Tenn. Ct. App. 2000). Geiger's employment would just be one factor among this Court's analysis of his other contacts with Tennessee.

test are as follows: (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state"; (2) "the cause of action must arise from the defendant's activities there;" and (3) "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." Elcan v. FP Assocs., No. 3:19-cv-01146, 2020 WL 2769993, at *7 (M.D. Tenn. May 28, 2020) (quoting S. Mach. Co., 401 F.2d at 381). "Specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" Goodyear, 564 U.S. at 919.

Plaintiffs first must show the nonresident defendant has purposely established significant contact with the forum state. Gordon, 300 S.W.3d at 635 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). Geiger's contacts with the forum state must be sufficient to enable a court to conclude that Geiger "should reasonably anticipate being haled into court there." Lindsey v. Trinity Commc'ns, Inc., 275 S.W.3d 411, 418 (Tenn. 2009) (quoting World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). The Supreme Court has stated that a defendant should not be brought to court in a particular forum "solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts" with that forum. Burger King, 471 U.S. at 475.

Second, Plaintiffs' claims must have arisen from Geiger's activities in Tennessee. Elcan, 2020 WL 2769993, at *8. "The Sixth Circuit has, in some cases, applied a proximate causation standard to resolve this issue." Willock v. Hilton Domestic Operating Co., 474 F. Supp. 3d 938, 949 (M.D. Tenn. 2020) (citing Beydoun v. Wataniya Rests. Holding, Q.S.C., 768 F.3d 499, 508 (6th Cir. 2014)). "[T]he operative question is whether the plaintiff can demonstrate a *causal nexus* between the defendant's contacts with the forum state and the plaintiff's cause of action." Moore v. Shanahan Eng'g, Inc., No. 3:20-CV-00021, 2020 WL 5039443, at *6 (M.D. Tenn. Aug. 25,

9

2020) (citing Burger King, 471 U.S. at 474) (emphasis added). It "requires more than a bare showing of 'relatedness'" . . . ." Willock, 474 F. Supp. 3d at 950. It is the Plaintiffs burden to meet these first two prongs.

And, finally, "[i]f the court finds that the plaintiff has established the first two prongs of the specific-jurisdiction inquiry, the burden shifts to the defendant to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Ncontracts LLC. v. Holmberg, No. 3:22-CV-00868, 2022 WL 17724148, at *6 (M.D. Tenn. Dec. 15, 2022). "[T]he acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." S. Mach. Co., 401 F.2d at 381. "The Supreme Court has explained that the 'minimum requirements inherent in the concept of "fair play and substantial justice" *may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities*.'" Elcan, 2020 WL 2769993, at *8 (citing Burger King, 471 U.S. at 477-78); see also Asahi Metal Indus. Co., Ltd. v. Superior Court, 480 U.S. 102 (1987) (holding the assertion of personal jurisdiction by California court over Japanese defendant would be unreasonable, even if the "minimum contacts" inquiry was satisfied). The Sixth Circuit has stated that, "[i]n determining reasonableness, we examine three factors: (1) the burden on the defendant; (2) the forum state's interest; and (3) the plaintiff's interest in obtaining relief." Bulso, 730 F. App'x at 351.

Specific jurisdiction does not exist with respect to Geiger. Plaintiffs claim Geiger was first an agent of Lifeway and continued his association with Lifeway and the SBC after he became the pastor at Mariners Church; however, these *ipse dixit* claims are not only contradictory, but they are also inaccurate. Geiger ceased being an agent or employee of Lifeway when his employment with Lifeway ended and he moved to California in September 2018 to take the Senior Pastor

10

position at Mariners Church. (Ex. A, ¶¶ 3-5.) Since that time, Geiger has been working at a church unaffiliated with the SBC or any other Defendant; he has not been an employee or agent of Lifeway or any other Defendant. (Ex. A, ¶¶ 4, 15.)

This litigation—on the face of the Complaint—does not result from any of Geiger's pre-September-2018 activities undertaken while employed by Lifeway. Burger King, 471 U.S. at 472; Willock, 474 F. Supp. 3d at 949. There is no causal nexus even alleged. Moore, 2020 WL 5039443, at *6. The only allegation made by Plaintiffs about Geiger while he was employed by Lifeway is contained in paragraph thirty-five of the Complaint:

> In Spring 2018, Defendant Lyell confessed to Defendant[] Geiger . . . about her affair with Plaintiff Sills. Defendant Lyell had not anticipated the significant amount of negative reaction she would receive within the SBC community. The negative opinions threatened her powerful vice president position at Lifeway, a subsidiary of SBC.

(Compl., ¶ 35.) In paragraph thirty-eight, Plaintiffs allege that it was not until "March 2019 [that] Defendant Lyell rebranded what she had first reported about the affair . . . [and] offered to write about the affair." (Id. at ¶ 38.) Plaintiffs' own pleading and Geiger's declaration establish that Geiger's only involvement with this matter was his receipt of Lyell's confession and subsequent reporting to Defendant Mohler in 2018. (Ex. A, ¶ 6.)

Yet, Plaintiffs' tort claims do not arise out of Geiger's 2018 conduct. Willock, 474 F. Supp. 3d at 949. Plaintiffs do not claim Lyell's Spring 2018 confession to Geiger (that allegedly was later rebranded), caused Plaintiffs' injuries, or that the confession is even related to the rebranded story. See Burger King, 471 U.S. at 472. Instead, at all times while the allegedly tortious acts were occurring (from March 2019 through 2022), Geiger was living in California, completely unaffiliated with the SBC, Lifeway, or any other Defendant. (Ex. A, ¶ 15.) Accordingly, Geiger's

11
Case 3:23-cv-00478   Document 92   Filed 07/17/23   Page 11 of 18 PageID #: 555

contacts with Tennessee are not related to the operative facts of the controversy, and Plaintiffs' claims were not caused by Geiger's in-state activities.

Where, as here, allegations in the complaint have been controverted by evidence such as a declaration, Plaintiffs must present more than conclusory statements, unsupported by evidence, to establish personal jurisdiction. See Theunissen, 935 F.2d at 1458. Because they cannot demonstrate their claims arise out of any act or omission by Geiger in Tennessee (pre-September 2018), and they are unable to point with specificity to any conduct taken by Geiger (as an individual or an agent of Lifeway) from California directed toward Tennessee (post-September 2018), this Court may not exercise specific personal jurisdiction over Geiger. Plaintiffs' claims against him should be dismissed.

       3.       Exercising personal jurisdiction over Geiger would offend traditional notions of fair play and substantial justice.

Even if Plaintiffs could somehow show that Geiger had sufficient contacts with Tennessee, which they cannot, "[t]he strictures of the Due Process Clause forbid a state court to exercise personal jurisdiction over [Geiger] under circumstances that would offend traditional notions of fair play and substantial justice." Asahi, 480 U.S. at 113 (finding that forcing a Japanese company to defend suit in California violated traditional notions of fair play and substantial justice) (quotation omitted). "A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)).

Similar to the defendant in Asahi, the burden on Geiger in defending this case in Tennessee "is severe." 480 U.S. at 114. Geiger potentially would be subjected to "travers[ing] the distance between [his domicile] in [California]" and Tennessee and "to submit [his] dispute . . . to a foreign [state's] judicial system" despite having sporadic and insubstantial contacts with Tennessee. Id.;

see also World-Wide Volkswagen, 444 U.S. at 293 ("we have never accepted the proposition that state lines are irrelevant for jurisdictional purposes, nor could we, and remain faithful to the principles of interstate federalism embodied in the Constitution."). Similar to the World-Wide Volkswagen defendant, Geiger "carr[ies] on no activity whatsoever in [Tennessee] . . . and avail[s] [himself] of none of the privileges and benefits of [Tennessee] law." Id. at 295. Moreover, Plaintiffs are not citizens of Tennessee, therefore, Tennessee's legitimate interests in the dispute are seriously diminished. Asahi, 480 U.S. 102 at 114.

Because Geiger has not had the requisite minimum contacts with Tennessee, is domiciled across the country in California, and Plaintiffs are not Tennessee residents, it would offend traditional notions of fair play and substantial justice to hale Geiger into court in Tennessee. Id.

    4.    Personal jurisdiction under a "conspiracy theory" does not exist.

Plaintiffs may attempt to argue personal jurisdiction attaches to Geiger under a "conspiracy theory" approach. See First Cmty. Bank, N.A. v. First Tennessee Bank, N.A., 489 S.W.3d 369, 394 (Tenn. 2015). But such an argument would be unavailing. "Under this theory, 'an out-of-state defendant involved in a conspiracy who lacks sufficient "minimum contacts" with the forum state may nevertheless be subject to jurisdiction because of a co-conspirator's contacts with the forum.'" Id. (citing Chenault v. Walker, 36 S.W.3d 45, 51 (Tenn. 2001)). Chenault defined conspiracy personal jurisdiction as follows:

> Under [this] doctrine, when (1) two or more individuals conspire to do something, (2) that they could reasonably expect to lead to consequences in a particular forum, if (3) one co-conspirator commits overt acts in furtherance of the conspiracy, and (4) those acts are of a type which, if committed by a non-resident, would subject the non-resident to personal jurisdiction under the long-arm statute of the forum state, then those overt acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction in the forum, even if they have no direct contacts with the forum.

13

Id. (citing Chenault, 36 S.W.3d at 56).

"However, circumstantial evidence regarding the existence of a civil conspiracy must create more than a suspicion or conjecture that a conspiracy exists. It must enable reasonable persons to infer that two or more persons jointly assented to accomplish [the conspiracy]." Stanfill v. Hardney, No. M2004–02768–COA–R3–CV, 2007 WL 2827498, at *8 (Tenn. Ct. App. Sept. 27, 2007). Conspiracy claims must be pled with some degree of specificity, and vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim. Bickerstaff v. Lucarelli, 830 F.3d 388, 400 (6th Cir. 2016). "The Sixth Circuit has ruled that unsupported allegations of the existence of a conspiracy are insufficient contacts to justify the exercise of personal jurisdiction over a nonresident." Alvion Properties, Inc. v. Weber, No. 3:08-0866, 2012 WL 481858, at *5 (M.D. Tenn. Feb. 13, 2012), report and recommendation adopted, No. 3:08-0866, 2012 WL 847797 (M.D. Tenn. Mar. 12, 2012) (citing Chandler v. Barclays Bank PLC, 898 F.2d 1148, 1155 n. 3 (6th Cir. 1990)). The Sixth Circuit has also held that:

> totally unsupported allegations of conspiracy cannot constitute sufficient contacts . . . to justify an exercise of personal jurisdiction . . . . Similarly, the allegation of conspiratorial activities with tortious consequences in the forum state is insufficient to support jurisdiction under the long-arm statute *in the absence of some minimal factual showing of . . . participation in the conspiracy*.

Id. (citing Chrysler Corp. v. Fedders Corp., 643 F.2d 1229, 1237 (6th Cir. 1981)) (emphasis added).

Here, Plaintiffs have made incredibly vague—and demonstrably false—allegations that Geiger conspired with other defendants to circulate fake news relating to Sills through the resources of SBC and Lifeway for Defendants' own gain. (See Compl., ¶¶ 94-97.) Plaintiffs allege the Sills-Lyell affair story was "rebranded" in March 2019 (Compl., ¶ 38) **after** Geiger had left Tennessee for his position at Mariners Church in California. There is no factual allegation linking

14

Case 3:23-cv-00478   Document 92   Filed 07/17/23   Page 14 of 18 PageID #: 558

Id. (citing Chenault, 36 S.W.3d at 56).

"However, circumstantial evidence regarding the existence of a civil conspiracy must create more than a suspicion or conjecture that a conspiracy exists. It must enable reasonable persons to infer that two or more persons jointly assented to accomplish [the conspiracy]." Stanfill v. Hardney, No. M2004–02768–COA–R3–CV, 2007 WL 2827498, at *8 (Tenn. Ct. App. Sept. 27, 2007). Conspiracy claims must be pled with some degree of specificity, and vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim. Bickerstaff v. Lucarelli, 830 F.3d 388, 400 (6th Cir. 2016). "The Sixth Circuit has ruled that unsupported allegations of the existence of a conspiracy are insufficient contacts to justify the exercise of personal jurisdiction over a nonresident." Alvion Properties, Inc. v. Weber, No. 3:08-0866, 2012 WL 481858, at *5 (M.D. Tenn. Feb. 13, 2012), report and recommendation adopted, No. 3:08-0866, 2012 WL 847797 (M.D. Tenn. Mar. 12, 2012) (citing Chandler v. Barclays Bank PLC, 898 F.2d 1148, 1155 n. 3 (6th Cir. 1990)). The Sixth Circuit has also held that:

> totally unsupported allegations of conspiracy cannot constitute sufficient contacts . . . to justify an exercise of personal jurisdiction . . . . Similarly, the allegation of conspiratorial activities with tortious consequences in the forum state is insufficient to support jurisdiction under the long-arm statute *in the absence of some minimal factual showing of . . . participation in the conspiracy*.

Id. (citing Chrysler Corp. v. Fedders Corp., 643 F.2d 1229, 1237 (6th Cir. 1981)) (emphasis added).

Here, Plaintiffs have made incredibly vague—and demonstrably false—allegations that Geiger conspired with other defendants to circulate fake news relating to Sills through the resources of SBC and Lifeway for Defendants' own gain. (See Compl., ¶¶ 94-97.) Plaintiffs allege the Sills-Lyell affair story was "rebranded" in March 2019 (Compl., ¶ 38) **after** Geiger had left Tennessee for his position at Mariners Church in California. There is no factual allegation linking

either Mariners Church or Geiger to this alleged conspiracy. Plaintiffs' threadbare allegations are insufficient to even raise a suspicion or conjecture of Geiger's participation in the alleged conspiracy. Weber, 2012 WL 481858, at *5.

Indeed, the Complaint only mentions Geiger in laundry-list fashion six times after Plaintiffs admit he moved to California. The following is a summary of those allegations:

- In March 2019, Lyell rebranded her original story while directly reporting to Geiger, Lifeway, SBC, Executive Committee, Seminary Mohler. (Compl., ¶ 38.)
- All Defendants, including Geiger, "understood the value of making an example out of Plaintiff Sills." (Compl., ¶ 40.)
- The Defendants, including Geiger, "coordinated and decided to retain an investigator." (Compl., ¶ 47.)
- In May 2022, SPI and Guidepost, in concert with Geiger and other Defendants, "published the unsubstantiated and malicious claim." (Compl., ¶ 60.)
- The investigators merely relied upon "the original unchecked misinformation propagated by" the Defendants, including Geiger. (Compl., ¶ 61.)
- This false narrative was perpetuated by SPI and Guidepost in concert with Geiger and the other Defendants. (Compl., ¶ 62.)

Plaintiffs patently fail to state a claim for civil conspiracy against Geiger with specificity—they do not allege how this "concerted action" came about; thus, it cannot be a basis for personal jurisdiction over Geiger. See Cross v. Rodgers, No. 3:16-CV-01128, 2017 WL 3237623, at *6 (M.D. Tenn. July 31, 2017) (holding conspiracy theory jurisdiction was inappropriate because plaintiffs failed to allege the conspiracy with specificity). Plaintiffs do not (and cannot) allege that Geiger, as the pastor of the unaffiliated Mariners Church, knew of the other defendants' alleged intent to defame, talked with the other defendants, assented to a common plan to defame, and joined together for this purpose. Id. Plaintiffs' conclusory and vague claims are precisely the sort of allegations described by the Sixth Circuit as "totally unsupported allegations of conspiracy [that] cannot constitute sufficient contacts . . . to justify an exercise of personal jurisdiction." Chrysler

15
Case 3:23-cv-00478   Document 92   Filed 07/17/23   Page 15 of 18 PageID #: 559

Corp., 643 F.2d at 1237.[6] Moreover, Geiger's declaration directly contradicts these conclusory allegations:

- Lyell did not report to Geiger in March 2019. (Ex. A, ¶ 13.)
- Geiger was not involved with Lyell's decision to write the March 2019 article and did not take part in the SBC investigation or any alleged conspiracy. (Ex. A, ¶¶ 7, 11-14.)
- Geiger did not have any involvement with coordinating or deciding to retain an investigator in 2021. Geiger has not communicated with Guidepost or Solutionpoint and has no connection with either of them. (Ex. A, ¶ 16.)
- Upon learning of the nature of Lyell's relationship with Sills in May 2018, Geiger reported the information up the chain of command. (Ex. A, ¶ 6.)
- Geiger did not (either individually or as an agent for Lifeway or SBC) assist anyone in the publishing or propagation of the Guidepost report. (Ex. A, ¶ 17.)
- Geiger did not communicate or engage with any Defendants in an effort to tarnish Plaintiffs' reputation. Moreover, he has no knowledge of any conspiracy between the other defendants or knowledge of any intent to defame Plaintiffs. (Ex. A, ¶ 12.)

Based on Plaintiffs' conclusory allegations and Geiger's sworn testimony, a reasonable person could not conclude Geiger conspired with any other defendant while working across the country in California for a different and unaffiliated organization. Stanfill, 2007 WL 2827498, at *8. For this reason, this Court should not exercise personal jurisdiction over Geiger based upon the conspiracy theory because Plaintiffs have failed to provide even a minimal factual showing of Geiger's participation in the alleged conspiracy.

---

[6] Plaintiffs' shotgun style, "group pleading" allegations also render them vulnerable to dismissal under Rule 12(b)(6). See, e.g., Rodriguez v. Providence Cmty. Corrs., Inc., 3:15–CV–01048, 2016 WL 3351944, at *11 (M.D. Tenn. June 9, 2016) ("A complaint that fails to impute concrete acts to specific litigants, fails to state a plausible claim." (internal quotation marks and citations omitted)); DeSoto v. Metro. Gov't of Nashville & Davidson County, 64 F. Supp. 3d 1070, 1087 (M.D. Tenn. 2014) ("Here, [the] Amended Complaint in general alleges claims against 'the defendants,' without specifying which defendants are the actual target of certain claims, what actions those defendants allegedly took related to that particular claim, and why those actions could support a given claim."). Geiger fully adopts and incorporates by reference the Motions to Dismiss filed by Defendants Jennifer Lyell, the Seminary Defendants, SolutionPoint, and Guidepost to the extent the arguments stated therein apply to Geiger.

For all of the above stated reasons, Geiger is not subject to personal jurisdiction in Tennessee and, consequentially, all of Plaintiffs' claims against Geiger are due to be dismissed.

## II. Plaintiffs' Complaint should be dismissed for lack of subject matter jurisdiction.

Civil courts are barred by the First Amendment of the Constitution from interfering with determinations involving "questions of discipline, or of faith, or ecclesiastical rule, custom or law." Watson v. Jones, 80 U.S. 679, 727 (1871); Lewis v. Seventh Day Adventists Lake Region Conference, 978 F.2d 940, 941-42 (6th Cir. 1992). The ecclesiastical abstention doctrine prohibits courts from interfering with determinations regarding matters that include, among other things, "the conformity of the members of the church to the standards of morals required of them." Serbian E. Orthodox Diocese v. Milivojevich, 426 U.S. 696, 714 (1976) (quoting Watson, 80 U.S. at 679)). Applying the doctrine, this Court should dismiss Plaintiffs' defamation claims resulting from internal church investigations because it is apparent from the Complaint that "regardless of how the claims set forth in the plaintiffs' complaint may be labeled, resolving the plaintiffs' claims would require [] this court to enter into areas implicating the First Amendment." Ogle v. Church of God, 153 Fed. Appx. 371, 375-76 (6th Cir. 2005) (internal citations omitted) (defamation and related tort claims of bishop asserted against church rejected based upon lack of subject matter jurisdiction where the claims arose out of internal church investigation). As further grounds and support for this argument, Geiger adopts and incorporates the arguments based on the ecclesiastical abstention doctrine asserted by Defendants SBC, Barber, and Litton (Doc. 89, pp. 9-11) and Defendant Lyell (Doc. 76, pp. 3-10).

**Conclusion**

For the reasons stated herein, Defendant Eric Geiger respectfully requests that this Honorable Court enter an order dismissing the claims against him, pursuant to Rules 12(b)(1) and (2) of the *Federal Rules of Civil Procedure*, and granting such other, further, or different relief to which he may be entitled.

Respectfully submitted this 17th day of July, 2023.

*s/ Catherine M. Newman*
Catherine M. Newman (BPR 039181)
R. Bruce Barze, Jr. (admitted PHV)
J. Graham Gilmore (admitted PHV)
BARZE TAYLOR NOLES LOWTHER LLC
2204 Lakeshore Drive, Suite 425
Birmingham, AL 35209
205-872-1032
bbarze@btnllaw.com
cnewman@btnllaw.com
ggilmore@btnllaw.com

*Attorneys for Defendant Eric Geiger*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Memorandum of Law in Support of Motion to Dismiss Based on Lack of Personal Jurisdiction and Lack of Subject Matter Jurisdiction was filed electronically on this 17th day of July 2023. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*s/ Catherine M. Newman*
Catherine M. Newman
