**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MICHAEL DAVID SILLS and MARY SILLS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **NO. 3:23-cv-00478** |
| **v.** | ) | |
| | ) | **JUDGE CAMPBELL** |
| **SOUTHERN BAPTIST CONVENTION, et al.,** | ) | **MAGISTRATE JUDGE FRENSLEY** |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM</u>

Pending before the Court are Defendants' motions to dismiss (Doc. Nos. 73, 75, 77, 83, 86, 88, 91), which are fully briefed (Doc. Nos. 104, 108, 115, 105, 116, 110, 112, 111). For the reasons discussed below, Lifeway and Eric Geiger's motions to dismiss (Doc. No. 73, 91) will be granted; the motions to dismiss filed by SolutionPoint International, Inc. and Guidepost Solutions, LLC (Doc. No. 77) and Jennifer Lyell (Doc. No. 75) will be granted in part and denied in part; and the remaining defendants' motions to dismiss (Doc. Nos. 83, 88, 86) will be denied.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

This case arises from purportedly defamatory statements about Plaintiffs Michael David Sills ("Sills" or "Mr. Sills") and Mary Sills ("Mrs. Sills") (collected "the Sills"). According to the complaint, Defendants conspired to create and succeeded in publishing a false narrative about the Sills to improve their own appearances and reputations.

---

[1]     The facts set forth herein are summarized from the facts alleged in the complaint. (Doc. No. 1),

*The Parties*

Sills was a Southern Baptist missiologist, professor, and author in the Southern Baptist Convention. (Doc. No. 1 ¶ 14). Mr. and Mrs. Sills have been married for 45 years. (*Id*. ¶ 15).

Defendant Southern Baptist Convention is a non-profit corporation headquartered in Nashville, Tennessee. (*Id*. ¶ 16). Defendant Dr. Ed Litton ("Litton") was the President of the Southern Baptist Convention for the 2021-2022 term. (*Id*. at ¶¶ 17, 40 n.8). Defendant Bart Barber ("Barber") was also a president of the Southern Baptist Convention. (*Id*. at ¶ 18). Defendant Executive Committee of the Southern Baptist Convention ("Executive Committee") is a non-profit corporation that serves as the fiduciary, fiscal, and executive entity of the Southern Baptist Convention. (*Id*. at ¶ 19). Defendant Willie McLaurin ("McLaurin") was the Interim President/CEO of the Executive Committee. (*Id*. at ¶ 20). Defendant Rolland Slade ("Slade") was the Chairman of the Executive Committee. (*Id*. at ¶ 21).

Defendant The Southern Baptist Theological Seminary ("Seminary") is a non-profit corporation that trains, educates, and prepares ministers, churches, and denominational entities. (*Id*. at ¶ 22). Defendant Dr. R. Albert Mohler ("Mohler") is president of the Seminary. (*Id*. at ¶ 23). Defendant Lifeway Christian Resources of the Southern Baptist Convention ("Lifeway") is non-profit corporation that supplies Christian resources and is a subsidiary of the Southern Baptist Convention. (*Id*. at ¶¶ 24, 35). Defendants Eric Geiger ("Geiger") and Jennifer Lyell ("Lyell") were vice presidents of Lifeway. (*Id*. at ¶¶ 25-26).

Defendant SolutionPoint International, Inc. d/b/a Guidepost Solutions ("SPI") provides global business intelligence, security, and compliance services. (*Id*. at ¶ 27). SPI owns Defendant Guidepost Solutions LLC ("Guidepost"). (*Id*. ¶¶ 27, 28). Guidepost provides solutions to help with risk mitigation, dispute resolution, problem solving, and protecting reputations. (*Id*.).

*The Sills/Lyell Relationship*

According to the complaint, Sills met Lyell when she was 26 years old. (*Id.* ¶ 6). Lyell allegedly initiated and aggressively cultivated and maintained a personal, consensual, prurient, and emotionally intimate relationship with Sills. (*Id.* ¶¶ 6, 14). According to the complaint, Sills did not, at any time, sexually abuse, force himself upon, engage in sexual intercourse with, threaten or use violence against Lyell. (*Id.* ¶¶ 2-5). Sills ended the relationship with Lyell, but Lyell allegedly persisted in her pursuit of Sills and undertook efforts to reach him through his family. (*Id.* ¶ 8).

*2018-2019*

According to the complaint, Lyell, a seasoned writer and publishing executive, coordinated an implemented an attack against Sills after he ended their "consensual adult relationship." (*Id.* ¶ 34). In the spring of 2018, Lyell told Mohler, Geiger, and the Executive Committee, about her relationship with Sills. (*Id.* ¶ 35). Geiger initiated the disclosure and reporting by Lyell, and shortly thereafter moved to California. (*Id.* at ¶ 36). According to the complaint, Sills, immediately and without controversy, admitted to having an "inappropriate relationship" with Lyell and accepted the Southern Baptist Convention's requirement that he leave his position at the Seminary. (*Id.* ¶¶ 9, 40).

Lyell subsequently received negative attention within the Southern Baptist Community, which allegedly threatened her position as a vice president at Lifeway. (*Id.* ¶ 35). In this same time period, Mohler was allegedly looking for, and found in Lyell's story, an opportunity to restore his own reputation in the Southern Baptist Convention, particularly on the subject of concealing sexual abuse. (*Id.* ¶ 37). [2] According to the complaint, when Sills' relationship with Lyell "was

---

[2]    In 2013, Mohler signed a public statement supporting a former leader of Sovereign Grace Ministries after they allegedly covered up incident of child sex abuse. (*Id.* ¶ 37). In February 2019, to restore his reputation in the Southern Baptist Convention, Mohler denied knowing that leaders of Sovereign Grace Ministries had not participated in the independent investigation of the alleged abuse. (*Id.*).

3

discovered to be consensual," there was an unanticipated public reaction to the "branding" of Sills as a "pervert," which the Southern Baptist Convention tried to control. (*Id*. ¶ 38).

The complaint alleges that, in March 2019, Lyell responded to "backlash" by "rebrand[ing]" what she had first reported about her relationship with Sills. (*Id*.). Lyell allegedly offered to write about her relationship with Sills for the public relations arm of the Executive Committee. (*Id*.). According to the complaint, the Seminary and Mohler urged Lyell to write the public relations piece, which was expected to demonstrate the Southern Baptist Convention's reformative efforts in addressing sexual abuse cases. (*Id*. ¶¶ 38, 39). At the time, Lyell was allegedly the highest-ranking woman in the Southern Baptist Convention. (*Id*. ¶ 38). According to the complaint, Lyell's offer was meaningful for the Southern Baptist Convention and the Executive Committee because they were experiencing extensive criticism for their alleged mishandling of significant sexual abuse cases. (*Id*. ¶ 39).

The Southern Baptist Convention, Litton, Lifeway, Lyell, Geiger, the Executive Committee, McLaurin, Slade, the Seminary, and Mohler allegedly understood the value of making an example out of Sills. (*Id*. ¶ 40). These defendants were allegedly still under fire for mishandling complaints of sexual abuse unrelated to the Sills and saw Sills as an easy target and an opportunity to improve the Southern Baptist Convention's appearance and reputation by adopting the narrative publicly advanced by Lyell. (*Id*. ¶¶ 40, 41).

*2021*

In an interview on June 6, 2021, Lyell made a series of statements about the Sills, including that Sills began sexually abusing her on a mission trip in 2004 and that it continued and escalated for more than a decade. (*Id*. ¶ 43). Lyell stated that she verbally and physically resisted Sills in the initial encounter and throughout all subsequent encounters. (*Id*.). She stated that her relationship with Sills was always forced, never consensual, and that she always resisted. (*Id*. ¶ 42). Lyell

4

further stated that Sills had threatened her, possibly broke into her home, and tracked her phone. (*Id*.). Lyell described the police waiting for Sills, called Sills a cult leader, and reported that Sills had a gun and threatened to destroy her. (*Id*.). Lyell attributed bruises on her arms to Sills and claimed a church official told her: "I've never had someone who's been beaten show up and ask for church discipline like what are you trying." (*Id*.). Lyell further stated she:

> could very easily picture some 24-year-old Trinidadian young woman who would come up to him after hearing him preach being spiritually moved by something he said thanking him and then knowing him as I did being able to equally imagine how he would turn that into access to force himself upon her I wondered who would be there to help that Trinidadian young woman when he flew off to the next place

(*Id*. ¶ 44). The Sills allege the foregoing statements are false and malicious. (*Id*. ¶¶ 42-44). Lyell also stated that Southern Baptist Convention leaders handled her case well, which the Sills allege was a public relations strategy in a concerted effort amongst Defendants to improve the public image of the Southern Baptist Convention at the expense of Sills. (*Id*. ¶¶ 45-46). The Sills allege the Southern Baptist Convention could control the response to Lyell's claim of abuse in coordination with Lyell, such that it would improve its tarnished reputation and Lyell would be paid a confidential amount of money. (*Id*.).

The Southern Baptist Convention, Litton, Lifeway, Lyell, Geiger, the Executive Committee, McLaurin, Slade, the Seminary, and Mohler allegedly coordinated and decided to retain an investigator. (*Id*. ¶ 47). At the 2021 Southern Baptist Convention Annual Meeting in Anaheim, California, various fractions of the Southern Baptist Convention observed that the Executive Committee was overseeing the hiring of an investigator, namely Guidepost, to investigate itself. (*Id*. ¶ 48). Observers noted that such an arrangement provided the Executive Committee with control over the investigation's outcome. (*Id*.). A motion was made and approved to transfer oversight from the Executive Committee investigating itself to a new committee with

members handpicked by Litton, who was president of the Southern Baptist Convention at the time. (*Id*. ¶¶ 49, 40 n.8). Litton chose his seven-member committee to purportedly oversee the sex abuse investigation concerning the Executive Committee. (*Id*. ¶ 49). The Committee of Cooperation was also formed and served as the exclusive go-between amongst the Executive Committee, the seven-member "task force," and Guidepost. (*Id*.). The Committee of Cooperation was composed of five Executive Committee members, including Litton. (*Id*.).

In September 2021, Defendants hired SPI and Guidepost to investigate the Southern Baptist Convention's sexual abuse crisis, with particular focus on and disproportionate page space dedicated to Lyell's statements against Sills. (*Id*. ¶ 50). The Sills were not interviewed by SPI or Guidepost, nor were they contacted by the police or an investigator. (*Id*. ¶¶ 51, 53).

*2022*

On February 22, 2022, in anticipation of Guidepost's report (the "Report"), the Executive Committee, McLaurin, and Slade published the following public statement:

> **A statement from SBC Executive Committee Chairman Rolland Slade on a resolution being reached with Jennifer Lyell**
>
> February 22, 2022
>
> The SBC Executive Committee acknowledges its failure to adequately listen, protect, and care for Jenniffer Lyell when she came forward to share her story of abuse by a seminary professor. Baptist Press failed to accurately report the sexual abuse Jennifer Lyell reported to two SBC entities and local Southern Baptist churches.
>
> The SBC Executive Committee acknowledges its failures to Ms. Lyell, including the unintentional harm created by its failure to report Ms. Lyell's allegations of nonconsensual sexual abuse were investigated and unequivocally corroborated by the SBC entities with authority over Ms. Lyell and her abuser.

6

> The SBC Executive Committee apologizes for all the hurt it has caused, is grateful for Ms. Lyell's perseverance and engagement, and prays for her complete healing from the trauma she has endured.

(*Id*. ¶¶ 52-54). At the same time, the Southern Baptist Convention, Executive Committee, McLaurin, and Slade paid Lyell an undisclosed amount, purportedly in lieu of Lyell filing a defamation and libel suit. (*Id*. ¶ 52). Defendants also "tweeted" their foregoing statement with the added commentary:

> The @SBCExecComm acknowledges its failures to Ms. Lyell, including the unintentional harm created by its failure to report her allegations of nonconsensual sexual abuse were investigated and unequivocally corroborated by the SBC entities with authority over her and her abuser.

(*Id*. ¶ 54). Lyell responded to the tweet as follows:

> Beyond grateful for this [emoji omitted]. Although I knew it was a possibility, I'm in shock that almost 4 years after @albertmohler investigated & corroborated what I reported as nonconsensual abuse, it is finally public that there was never any ambiguity. Thank you @SBCExecComm.

(*Id*. ¶ 55). The Sills allege Defendants' suggestion of unequivocal corroboration was untrue and reinforced the unchecked false narrative that had been repeatedly reported since 2021. (*Id*. ¶ 56).

On May 22, 2022, SPI and Guidepost published the Report, stating in part:

> [Lyell] told Dr. Mohler and her boss at Lifeway that any sexual contact she has with Professor Sills had been nonconsensual and involved violence, threats of violence against her and others, and coercion. Dr. Mohler clearly understood not only the nature of Ms. Lyell's disclosure but expressly stated that he believed Ms. Lyell and stated that that it was his opinion that she had been abused by Professor Sills.

> Rather than publishing Ms. Lyell's corroborated account as BP staff had originally drafted it, the account was changed to read as if Ms. Lyell was consensually involved with her alleged abuser. The article as published reported that Ms. Lyell alleged that she had a 'morally inappropriate relationship' with her former seminary professor, making it appear that she engaged in a consensual sexual relationship with him.

7

…any sexual contact she had with her abuser was nonconsensual and involved violence, threats of violence against her and others, and coercion.

(*Id*. ¶¶ 57, 58, 60). The Report included a photo of Sills and labeled him as an abuser. (*Id*. ¶ 63). Very few of the individuals listed as abusers had a photo entry, primarily accompanying the listing for individuals lawfully convicted of heinous crimes. (*Id*.). The Report allegedly published statements that were not true and unsubstantiated. (*Id*. ¶¶ 60, 61, 62).

On the same day the Report was published, May 22, 2022, Mohler stated:

From the beginning we were prepared and determined to assist the investigators in any way possible and to support their work. What happened to Jennifer [Lyell] was sexual abuse, unquestionably.

(*Id*. ¶ 59). On June 14, 2022, Lyell stated she "told the truth through this entire ordeal" and that:

I first contacted the Louisville Police Department, through their Sex Victims Unit, in May 2018, after I had disclosed to the seminary. I told Ms. Basham what I had told Baptist Press in 2019, that I had gotten their voicemail, so hung up initially, but then later called back and left a message. However, I never received a return call from the unit.

the Guidepost report is equally clear that while their conjecture was not rooted in any material information provided to them, all the material provided to the SBC's news reporting agency on the matter was from individuals in positions of denominational and professional authority over the matter who had been directly involved in questioning both me and the professor.

Guidepost did not need to interview the professor's pastor or my former boss to assert in the report that those individuals had corroborated the abuse allegations to the EC because the EC's own records – and public statements – reveal it.

(*Id*. at ¶¶ 65-70). The Sills allege the foregoing was not accurate and intended to mislead. (*Id*.).

On July 7, 2022, Barber published the following statements:

Jennifer Lyell's claims have been investigated and corroborated. They have been investigated by people close to the situation who have first-hand knowledge of the people and context involved.

8

> Those people, including people I know at SBTS with whom I have spoken directly, have said that they believe Jennifer and that what she has said about the abuse she experienced is true.
>
> Her claims have been investigated by @GuidepostGlobal, and whatever you think of their political positions or positions on social issues of the day, they are experts in this subject matter: investigation of sexual abuse claims. That is what they do.

(*Id*. at ¶ 72). On July 8, 2022, the Seminary and Mohler published the following statement:

> In 2018, Jennifer Lyell came to me with an accusation of sexual abuse by David Sills. We followed appropriate processes and the accusation of abuse was confirmed, as we indicated publicly and have subsequently confirmed. Statements directly made by Sills in the course of our confrontation clearly confirmed the allegations of abuse.

(*Id*. at ¶ 71). The Sills allege this statement falsely accuses Sills of criminal conduct, while at the same time denying him due process. (*Id*.). The Sills further allege these statements made in early July 2022 by the Southern Baptist Convention, Barber, the Seminary, and Mohler were an effort to add authenticity and legitimacy to the Report that leveled unsubstantiated accusations and conclusions against Sills. (*Id*. at ¶ 73). The Sills allege Defendants' May, June, and July 2022 statements were false and a continuation of a yearslong campaign to attack the honesty of the Sills, (*id*. at ¶¶ 74, 76), that that the Report published in May 2022 intensified the controversy surrounding the allegations and investigation, while also resurrecting and placing back into circulation Defendants' malicious statements made against the Sills. (*Id*. at ¶¶ 75, 77).

*2023*

On May 11, 2023, the Sills filed this action against the Southern Baptist Convention, the Executive Committee, the Seminary, Lifeway, Litton, Lyell, Geiger, Barber, McLaurin, Rolland Slade, Mohler, SPI, and Guidepost for defamation, conspiracy, negligence, and intentional

9

infliction of emotional distress based on diversity of citizenship and an amount in controversy exceeding $75,000.00. (*See* Doc. No. 1).

In July 2023, Geiger, SPI, Barber, and Litton filed the pending motions to dismiss the Sills' claims against them under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Additionally, Lifeway, Lyell, Guidepost, the Seminary, Mohler, the Executive Committee, McLaurin, Slade, Barber, Litton, and the Southern Baptist Convention move to dismiss the Sills' claims against them under Rule 12(b)(6) for failure to state claim.

## II.    STANDARDS OF REVIEW

### A.  Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to file a motion to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The district court has discretion in how to resolve such a motion. *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 505 (6th Cir. 2020). "If it decides that the motion can be ruled on before trial, the court may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Id.* (quoting *Serras v. First Tenn. Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). A plaintiff bears the burden of establishing personal jurisdiction. *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). The court's choice in how to resolve a motion to dismiss for lack of personal jurisdiction affects the plaintiff's burden. *Malone*, 965 F.3d at 505. When the district court rules based on written submissions alone, as in the present case, the plaintiff need only make out a prima facie showing that personal jurisdiction exists, which can be done through the complaint. *Id.* at 504-05. "The court must view the pleadings and affidavits in a light most favorable to the plaintiff and not weigh the controverting assertions

of the party seeking dismissal." *Ingram Barge Co., LLC v. Zen-Noh Grain Corp.*, 3 F.4th 275, 278 (6th Cir. 2021) (citation and internal quotations omitted).

"A federal court sitting in diversity may not exercise jurisdiction over a defendant unless courts of the forum state would be authorized to do so by state law—and any such exercise of jurisdiction must be compatible with the due process requirements of the United States Constitution." *Malone*, 965 F.3d at 502. "Due process requires that an out-of-state defendant have 'minimum contacts' with the forum state sufficient to comport with 'traditional notions of fair play and substantial justice.'" *Blessing v. Chandrasekhar*, 988 F.3d 889, 904 (6th Cir. 2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Tennessee's long-arm statute "extends its jurisdiction to due process's limits, so due process is all [the court] must address." *Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019).

## B.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*.  In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the

11

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012).

While the Court's decision to grant or deny a motion to dismiss "rests primarily upon the allegations of the complaint, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint [ ] also may be taken into account." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (citation and internal quotations omitted). The Court may also consider "exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011) (citation omitted).

## III.    LAW AND ANALYSIS

### A.  Personal Jurisdiction

The Court will first address whether it has personal jurisdiction over Defendants Geiger, Litton, Barber, and SPI. As noted above, because the Court resolves these defendants' motions to dismiss for lack of personal jurisdiction without a hearing or jurisdictional discovery, plaintiffs bear the low burden of making out a prima facie showing that personal jurisdiction exists, which can be done through the complaint. *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504-05 (6th Cir. 2020).

#### 1.  Geiger

Geiger is a former senior vice president of Lifeway who presently lives and works in California. (Doc. No. 1 ¶ 26). Through his pending motion, Geiger argues there is no basis for the exercise of general, specific, or co-conspirator personal jurisdiction over him because he is not domiciled in Tennessee, does not have continuous and systematic contacts with Tennessee,

Plaintiffs' claims do not arise from any of his contacts with Tennessee, traditional notions of fair play and substantial justice would be offended by exercising personal jurisdiction over him, and the complaint fails to state a claim for civil conspiracy against him with the required specificity. (Doc. No. 92 at 6-16). In their response, the Sills argue jurisdiction over Geiger is appropriate because of his alleged involvement in 2018 with the initial reporting of the Sills/Lyell relationship that was part of a chain of events that led to the claim. The Sills also argue their conspiracy claim is sufficient to establish personal jurisdiction over Geiger. (Doc. No. 104 at 20 (citing *First Cmty. Bank, N.A. v. First Tennessee Bank, N.A.*, 489 S.W.3d 369, 394 (Tenn. 2015)).

a.   Specific Personal Jurisdiction

"Specific jurisdiction turns on the affiliation between the forum and the underlying controversy." *Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019). For a nonresident defendant to be subject to specific personal jurisdiction, the Sixth Circuit requires:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 441 (6th Cir. 2022) (citations omitted).

Here, according to the allegations in the complaint, Geiger was a Tennessee resident employed as a senior vice president of Lifeway in the spring of 2018 when Lyell disclosed her affair with Sills to Geiger and other defendants. (*See* Doc. No. 1 ¶ 35). Shortly after Lyell's disclosure, Geiger moved to California for a new job. (*Id*. ¶ 36). The complaint does not allege Geiger had any contacts with Tennessee following his 2018 move to California. Thus, Geiger's only alleged contacts with Tennessee occurred in 2018 – at least three years *before* the alleged

13

conduct of other defendants that serves as the basis for the claims at issue. Even viewing the facts alleged in the light most favorable to the Sills and drawing all reasonable inferences in their favor, the Sills have failed to meet their low burden of pleading a prima facie basis for specific personal jurisdiction over Geiger.

### b. Co-Conspirator Jurisdiction

"Under this theory, an out-of-state defendant involved in a conspiracy who lacks sufficient 'minimum contacts' with the forum state may nevertheless be subject to jurisdiction because of a co-conspirator's contacts with the forum." *First Cmty. Bank,* 489 S.W.3d at 394. Geiger argues the Court should not exercise personal jurisdiction over him based upon the Sills' alleged civil conspiracy because the complaint fails to allege facts showing his participation in the alleged conspiracy. (*See* Doc. No. 92 at 14-15 (citing Doc. No. 1 ¶¶ 38, 40, 47, 60-62)). In their response, plaintiffs contend the complaint alleges Geiger became a member of the conspiracy by contributing to and/or approving the publication of the allegedly defamatory statements about Mr. Sills. (*See* Doc. No. 104 at 21 (citing "generally" Doc. No. 1 ¶¶ 32-97)).

Here, the complaint alleges that Lyell reported her relationship with Sills in the spring of 2018 and "soon thereafter" Geiger moved to California. (Doc. No. 1. ¶¶ 35-36). The complaint also alleges the genesis of the alleged conspiracy to be in March 2019. (*Id*. ¶¶ 38-39). While the Sills list Geiger among many defendants who purportedly began a series of events that predate the conduct that serves as the basis of the claims at issue, the Sills do not allege facts showing how Geiger personally remained involved after his move to California. Accordingly, the Court is left with only conclusory and vague references to Geiger's purported involvement after May 2018.

In sum, based on the allegations in the complaint,[3] the Sills have failed to carry their burden establishing that this Court's exercise of jurisdiction over Geiger would be consistent with due process and does not offend "traditional notions of fair play and substantial justice." *Johnson v. Griffin*, 85 F.4th 429 (6th Cir. 2023) (internal citation omitted). Accordingly, the Court will grant Geiger's motion to dismiss for lack of personal jurisdiction.

2.  Barber and Litton

Barber and Litton argue the complaint contains only threadbare allegations of their conduct to support exercising personal jurisdiction over either of them. The Court agrees that the complaint fails to assert facts sufficient to establish general personal jurisdiction over Barber or Litton.[4] As for specific personal jurisdiction, the complaint alleges that Barber and Litton engaged in conduct in 2021 and 2022 that gives rise to the claims at issue, including that:

- Litton served as president of the Southern Baptist Convention in 2021 and 2022 (Doc. No. 1 ¶¶ 17, 40 n.8);

- The Southern Baptist Convention is headquartered in Nashville (*Id*. ¶ 16);

- Barber served as the president of the Southern Baptist Convention (*Id*. ¶ 18);

- Litton and other defendants sought to make an example of Sills (*id*. ¶ 40) and improve the image of the Southern Baptist Convention (*Id*. ¶ 46);

- Litton selected a committee to oversee a sex abuse investigation in July 2021 (*Id*. ¶ 49);

---

[3]     Because the Court finds the Sills have failed to meet their initial burden of pleading a prima facie basis for specific personal jurisdiction and for conspiracy-based jurisdiction over Geiger, the Court does not reach or rely on Geiger's declaration filed in support of his jurisdictional challenge.

[4]     General jurisdiction exists when the defendant's affiliations with the forum state are so continuous and systematic as to render the defendant essentially at home there. *See Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 660 (6th Cir. 2023) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Here, the Sills do not argue any of Defendants' contacts with Tennessee are "continuous and systematic" to warrant the exercise of general personal jurisdiction over them. (*See* Doc. No. 104 at 13-21).

15

- Litton directed and approved the narrative against Sills (*Id*. ¶ 49);

- Litton was involved in publishing allegedly defamatory statements in May 2022 (*Id*. ¶ 60);

- Litton is one of the defendants who relied upon "unchecked information" and acted in concert with Guidepost to publish defamatory statements in May 2022 (*Id*. ¶ 62);

- Barber tweeted about the accusations against Sills in July 2022 (*Id*. ¶ 72); and

- Defendants, including Barber and Litton, conspired to defame Sills (*Id*. ¶ 95)

The complaint sets forth sufficient facts, accepted as true, that Barber and Litton purposely availed themselves of the privilege of acting in this forum, their actions give rise to the causes of action, and the acts or consequences of those acts have a substantial connection with the forum such that exercising specific personal jurisdiction over them would not violate due process or be contrary to notions of fair play and substantial justice. Accordingly, Barber and Litton will not be dismissed for lack of personal jurisdiction.

3. <u>SPI</u>

Plaintiffs do not argue the Court has general jurisdiction over SPI or that SPI has sufficient contacts with Tennessee for specific personal jurisdiction. Instead, the Sills argue exercising jurisdiction over SPI would not violate due process because SPI is structurally and operationally indistinguishable from Guidepost for purposes of jurisdictional review. [5] The Sixth Circuit has "endorsed the use of the alter-ego theory to exercise personal jurisdiction." *Est. of Thomson ex rel. Est. of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008). In applying the alter-ego theory of personal jurisdiction in a diversity action, the Court must look to Tennessee

---

[5] The Sills also argue the Court has co-conspirator jurisdiction over SPI; however, for the same reasons the complaint fails to state a claim for civil conspiracy against Guidepost, *see Section III, H., infra*, the co-conspirator personal jurisdiction theory as to SPI fails.

law. *See id.*; *see, e.g.*, *Se. Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 672 (6th Cir. 2006) (applying state alter ego law to state law claim brought under diversity jurisdiction).

Tennessee law presumes parent and subsidiary corporations are separate and distinct legal entities. *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 651 (Tenn. 2009). Under Tennessee law, "[a]n alter ego ... relationship is typified by" one "corporation's control of [another] corporation's internal affairs or daily operations." *Wells ex rel. Baker v. State*, 435 S.W.3d 734, 756 (Tenn. Ct. App. 2013) (quoting *Gordon*, 300 S.W.3d at 652). While the Sills allege SPI owns Guidepost (*see* Doc. No. 1 ¶ 27), they do not allege a disregard of corporate formalities, that SPI and Guidepost commingle funds, that SPI was acting through Guidepost in anyway, or that SPI's control over Guidepost caused their injuries. The complaint also does not contain allegations suggesting that an inequitable result would follow if SPI were not held liable for Guidepost's alleged wrongdoing. Accordingly, the complaint does not allege facts to establish a *prima facie* basis for the exercise of personal jurisdiction over SPI based on alter-ego personal jurisdiction. Because the Sills' reliance on an alter-ego theory of jurisdiction is unavailing, the Court will grant SPI's motion to dismiss for lack of personal jurisdiction.

## B.  Choice of Law

The Executive Committee, McLaurin, Slade, Southern Baptist Convention, Barber, Litton, and Guidepost argue Mississippi law applies because the Sills are domiciled in Mississippi.[6] The other defendants appear to concede that Tennessee law governs and rely on it in their motions. In their response, the Sills argue Tennessee law applies because Tennessee has the most significant relationship to the occurrence and the parties.

---

[6]     No party articulated how application of Mississippi law alters the Rule 12 analysis.

The instant matter was brought to this Court pursuant to diversity jurisdiction under 28 U.S.C. § 1332. A federal court sitting in diversity applies the law of the forum state, including the forum's choice-of-law rules. *Atl. Marine Constr. Co. Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49 (2013). In tort cases, Tennessee abides by the Restatement (Second) of Conflict of Laws, *see Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992); *Wahl v. General Elec. Co.*, 786 F.3d 491, 494 (6th Cir. 2015), which provides that "the rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state, which with respect to that issue, has the most significant relationship to the occurrence and the parties under the principals stated in [Restatement (Second) of Conflict of Laws] § 6." *Hataway*, 830 S.W.2d at 59 (citation omitted).

Accordingly, the Court must apply the law of the state with the most significant relationship to the occurrences and parties. In a libel action, the location of the reputational harm to the plaintiff typically provides the applicable law. *See Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 137 (6th Cir. 1996). Here, the complaint does not specify whether the plaintiffs' reputational harm was primarily experienced in a specific geographical location. Conversely, the Southern Baptist Convention – a central figure in the Sills' claims – is located in Tennessee, as is the Executive Committee. Guidepost contracted with the Southern Baptist Convention to conduct an investigation into, among other things, the actions of the Executive Committee, and multiple defendants are located in Tennessee. Given these facts and the lack of a clear choice-of-law based on reputational harm to the Sills, Tennessee has the most significant relationship to the occurrences and the parties.

## C. Affirmative Defenses

A plaintiff typically does not have to anticipate or negate an affirmative defense to survive a motion to dismiss. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). However, an

18

affirmative defense can be the basis for dismissal under Rule 12(b)(6) if "the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief." *Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013) (citation omitted). Through their pending motions, the Southern Baptist Convention, Barber, Litton, the Seminary, Mohler, Guidepost, Lyell, the Executive Committee, McLaurin, and Slade seek dismissal of the Sills' claims based on the affirmative defense of the ecclesiastical abstention doctrine.[7] Lyell, the Executive Committee, McLaurin, and Slade also argue the Sills' defamation claims against them are time-barred. Accordingly, the Court must review the allegations in the complaint to determine if either of the foregoing affirmative defenses clearly apply.

    1.   Ecclesiastical Abstention Doctrine

Rooted in the First Amendment, the ecclesiastical abstention doctrine cautions against courts weighing into internal church matters that involve "questions of discipline, or of faith, or ecclesiastical rule, custom, or law [that are decided by] church judicatories." *Ogle v. Hocker*, 279 Fed. Appx. 391, 395 (6th Cir. 2008). A companion doctrine involving the review by courts of employment decisions is referred to as the "ministerial exception," which is also based on First Amendment concerns. *See Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171 (2012); *see also Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829 (6th Cir. 2015). The ecclesiastical abstention doctrine looks to whether the lawsuit would require the court to consider disputes involving "theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of

---

[7]    While Defendants argue the ecclesiastical doctrine deprives this Court of subject matter jurisdiction, courts have been clear that this doctrine constitutes an affirmative defense, not a jurisdictional bar. *See Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 202 n.4 (2012); *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 833 (6th Cir. 2015). Defendants cite no law to the contrary.

them." *Serbian E. Orthodox Diocese for U. S. of Am. & Canada v. Milivojevich*, 426 U.S. 696, 714 (1976).

While some of the defendants rely on *Ogle v. Church of God*, 153 F. App'x 371 (6th Cir. 2005) and *In re Lubbock*, 624 S.W.3d 506, 509 (Tex. 2021), neither are applicable in the present case because *Ogle* involved requested judicial review of church disciplinary proceedings and *Lubbock* concerned defamation claims resulting from an application of Canon law.

On the other hand, Defendants largely ignore the case of *Ogle v. Hocker*, which is more applicable to the claims alleged by Hunt. In *Hocker*, a church bishop sued a fellow pastor for defamation and intentional infliction of emotional distress for statements made in sermons and elsewhere. In analyzing the applicability of the ecclesiastical abstention doctrine, the *Hocker* court asked "[w]hether a secular court may hear a tort suit despite the church autonomy doctrine turns on the availability of secular standards and the ability of a court to resolve the controversy without reference to religious doctrine." 279 Fed. Appx. at 395. The *Hocker* court went on to point out that "the relevant question … is whether the court would interfere with any matter of church doctrine or practice by ruling on this case." *Id*. at 396. The *Hocker* court declined to invoke the ecclesiastical abstention doctrine when: (1) the majority of the purportedly defamatory statements occurred "outside of the religious practice context," and (2) no party identified "any doctrinal issues that will be involved." *Id*. In contrast, in an earlier suit filed by Bishop Ogle – *Ogle v. Church of God*, cited *supra* – challenging internal church disciplinary proceedings against him, the Sixth Circuit applied the ecclesiastical abstention doctrine because "all of defendants' actions of which Ogle complains were part of church disciplinary proceedings which were initiated precisely because Ogle's actions violated the Church of God Minutes of the General Assembly." *Ogle*, 153 F. App'x at 376.

20

Here, the complaint does not seek judicial review of a "theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them." *Milivojevich*, 426 U.S. at 714. Rather, according to the complaint, the Southern Baptist Convention hired a third party to investigate how its Executive Committee handled matters involving sexual abuse. The fact that a church body was involved in the decision to hire Guidepost and that the resulting investigation and report involved a church entity does not prevent the court from resolving the claims asserted without reference to religious doctrine. Because it is not clear from the allegations that the ecclesiastical abstention doctrine bars this Court from presiding over the claims asserted, Defendants' motions to dismiss will not be granted on ecclesiastical abstention grounds.

### 2. Statute of Limitations

Lyell, the Executive Committee, McLaurin, and Slade argue the Sills' defamation claims against them are time-barred. Dismissal on timeliness grounds – an affirmative defense – is appropriate "if the allegations in the complaint affirmatively show that the claim is time-barred." *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022) (internal quotations omitted). But "it is the defendant's burden to show that the statute of limitations has run." *Id*. Here, the complaint states that the allegedly defamatory statements were made within a year of the filing of this action, thus it is not clear from the complaint that the limitations defense defeats the defamation claims. As such, these defendants have not met their burden of showing that Mr. Sills' defamation claim is time-barred. *See id*.

However, Lyell also asserts that none of the post May 11, 2022 statements were about Mrs. Sills. The Court agrees; the post-May 11, 2022 allegedly defamatory statements described in the complaint are void of any mention or reference to Mrs. Sills, so, to the extent the Sills assert a

defamation claim against Lyell for statements made prior to May 11, 2022 about Mrs. Sills, that claim will be dismissed as time-barred.

**D. Group Pleading**

1. <u>Lifeway</u>

Lifeway argues that the complaint simply includes it among references to "Defendants" without setting forth specific acts of Lifeway that are actionable or sufficient facts to provide it with fair notice of the grounds of the claims against it. *Rhodes v. R & L Carriers, Inc.*, 491 F. App'x 579, 582 (6th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In their response, the Sills argue that Lyell and Geiger were Lifeway executives "at various times relevant to the issues in this case." The Sills further argue Lyell and Geiger's conduct may be imputed to Lifeway under respondeat superior. Yet, the Sills allege that Geiger left Lifeway for a pastor position in 2018 – three years before the acts that serve as the basis for the claims – so his actions post 2018 cannot be fairly attributed to Lifeway under a respondeat superior theory.

As for Lyell, the complaint alleges that she worked for Lifeway and reported the alleged abuse to Lifeway executives in spring 2018. (Doc. No. 1 ¶¶ 25, 35). It also alleges Lyell was a senior executive with Lifeway (*see id.* ¶ 25), but does not specify when. Otherwise, Lifeway is only mentioned among a list of defendants, but no specific allegations explain what actions of Lifeway give rise to the Sills' claims. Given that the Sills rely solely on the doctrine of respondeat superior based on the actions of Lyell, the Court considers whether the complaint alleges facts sufficient to apply that doctrine. *Tennessee Farmers Mut. Ins. Co. v. Am. Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992).

22

Here, the Sills allege that Lyell was employed by Lifeway, but fail to allege that she was on Lifeway's business or acting within the scope of her employment when she allegedly defamed the Sills in 2022, conspired with others, acted negligently or intentionally inflicted intentional emotional distress on the Sills. The Sills also point to allegations that specifically name Lifeway (*see* Doc. No. 104 at 22 (citing Doc. No. 1 ¶ 47)), but the paragraph cited simply includes Lifeway among other defendants without specifying what acts Lifeway engaged in giving rise to the claims.

Plaintiffs' factual allegations are too sparse and do not have sufficient context or support to "plausibly suggest entitlement to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009), from Lifeway under a theory of respondeat superior that fails to rise "above the speculative level." *Twombly*, 550 U.S. at 555. Without pleading facts to support the elements of respondeat superior against Lifeway, Plaintiffs have not adequately placed Lifeway on notice of the grounds upon which the claims against it rests. *Rhodes*, 491 F. App'x at 582. Given this ruling, the Court does not need to address Lifeway's arguments as to specific claims or the statute of limitations.

2. <u>The Southern Baptist Convention, Barber, and Litton</u>

These defendants argue that the Sills impermissibly group "Defendants" together without specifying what individual actions of these defendants give rise to the Sills' claims.[8] Plaintiffs respond that the Southern Baptist Convention is mentioned over 80 times in the complaint with specific allegations concerning the Southern Baptist Convention. After reviewing the complaint, the Court agrees and will not dismiss the Southern Baptist Convention based on its "group pleadings" argument.

---

[8] These defendants did not defend this argument for dismissal in their reply. (*See* Doc. No. 112).

As for Litton, the Sills allege that he, as president of the Southern Baptist Convention, acted in concert with the other defendants to publish defamatory information and, the report that serves as the basis for some of the claims. (Doc. No. 104 at 24 (citing Doc. No. 1 ¶¶ 60, 61, 62)). Given his leadership role with the Southern Baptist Convention and accepting the Sills factual allegations as true, the Court finds that the Sills have alleged sufficient facts to overcome Litton's "group pleading" argument.

Turning to Barber, the complaint alleges that he "tweeted" defamatory information in July 2022 (Doc. No. 1 ¶ 72) and served as the Southern Baptist Convention's president during the relevant time period and thus was involved in the Guidepost investigation and report. This is sufficient to overcome Barber's "group pleading" argument.

3.  Executive Committee, McLaurin, and Slade

These defendants argue that the complaint impermissibly alleges claims against all the defendants without specifying what each of these defendants did; the Executive Committee argues this is particularly true as to itself. The Sills respond by pointing out that the Executive Committee requested that Guidepost conduct the investigation at issue, had control over the outcome of the investigation, its members worked with Guidepost, McLaurin and Slade issued an apology to Lyell, and the Executive Committee entered into the Guidepost contract on behalf of the Southern Baptist Convention. (*See* Doc. No. 1 ¶¶ 47, 48, 49, 52, 53, 60, 64). The Court finds that the Sills have alleged specific actions against the Executive Committee to avoid dismissal on the grounds that impermissible "group pleading" occurred.

As for McLaurin, the Sills allege that he served as the Interim President/CEO of the Executive Committee (*id.* ¶ 20), understood the value of making an example out of Sills (*id.* ¶ 40), played a role in hiring Guidepost (*id.* ¶ 47), issued a statement that refuted that the Lyell/Sills

24

relationship was consensual (*id*. ¶ 53), and acted in concert with Guidepost to publish the report in May 2022 (*id*. ¶ 62). The Court finds that the Sills have alleged specific actions against McLaurin to survive his motion to dismiss on "group pleading" grounds.

Finally, as for Slade, the complaint identifies him as the chairman of the Executive Committee (*id*. ¶ 21), alleges that he understood the importance of making an example out of Sills (*id*. ¶ 40), participated in hiring Guidepost (*id*. ¶ 47), issued a statement that refuted that the Lyell/Sills relationship was consensual (*id*. ¶ 53), and facilitated the publication of the Guidepost report (*id*. ¶ 60). The Court finds that the Sills have alleged specific actions against Slade to avoid dismissal on grounds of impermissible "group pleading" occurred.

## E. Defamation

To state a claim for defamation under Tennessee law, a plaintiff must allege: (1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 50 (Tenn. Ct. App. 2013).

### 1. Lyell

Lyell first argues that any actionable defamatory statements included in the Guidepost report are covered by the "common interest" privilege and the "public interest" privilege. As the Sills point out in their response, the applicability of the defense of "common interest" or "public interest" privileges turn on specific factors and facts. Such a defense is not a sufficient basis for dismissal of the defamation claim against Lyell because: (1) the Sills have alleged facts to state a defamation claim against her; and (2) it is not clear from the face of the complaint that this defense bars that claim. *See Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013).

25

Lyell also seeks to inject into the record an interview, then argue for dismissal based on her characterization of the interview. The Court considers only the complaint and even if it considered the interview, it cannot draw inferences in Lyell's favor, which she invites the Court to do. Accordingly, the Court will not grant Lyell's motion on this basis.

### 2. Guidepost

Guidepost denies the Sills' allegation that it "published" the report to the Southern Baptist Convention and argues its "sending" the report to the Southern Baptist Convention was covered by the "common interest privilege." As noted in Lyell's similar argument, the applicability of a privilege as a defense turns on factors and facts outside of the pleadings and for which the Court would be required to draw inferences in favor of Guidepost; the Court declines to do so. *See supra*.

Guidepost next argues that Sills is a public figure, thus the actual malice standard applies and the complaint is void of allegations that guidepost showed actual malice toward him in the publication of the report. Here, the complaint does not include sufficient factual allegations for the Court to conclude that Sills was a public figure. *See Thomas M. Cooley L. Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 527 (6th Cir. 2014); *Santoni v. Mueller*, No. 3:20-CV-00975, 2022 WL 97049, at *11 (M.D. Tenn. Jan. 10, 2022). As for the remainder of Guidepost's arguments, they turn on Guidepost's denial of liability and rely on construing information and records outside of the record of this case at this juncture; the Court will confine its analysis to the Complaint and its Exhibit. Accordingly, the Court will not grant Guidepost's motion on this basis.

### 3. The Southern Baptist Convention, Barber, and Litton

The Southern Baptist Convention, Barber, and Litton argue the complaint fails to include any factual allegations to support the claim that they published defamatory statements. Even a cursory review of the complaint shows the Sills allege the Southern Baptist Convention published

26

defamatory statements (Doc. No. 1 ¶¶ 60, 62, 63). As for Barber, the complaint alleges that he published statements in July 2022 concerning Lyell's claims against Sills. (*Id*. ¶ 72). The Sills allege that Litton directed and approved the narrative against Sills. (*Id*. ¶ 49). Thus, the Sills have stated a defamation claim against Barber, Litton, and the Southern Baptist Convention.

### 4. Executive Committee, McLaurin, and Slade

These defendants argue the February 2022 statement by Slade wasn't defamatory. Acceptance of this argument as grounds for dismissal would require the Court to construe the allegations against the non-movant, which the Court cannot do. The complaint alleges the Executive Committee published a statement in February 2022 that was a precursor to and consistent with the allegedly defamatory statements made in May-July 2022; McLaurin was the Interim President/CEO of the Executive Committee and acted in concert with others to publish defamatory statements; Slade served as Chairman of the Executive Committee, which was experiencing criticism before the defamatory statements, and understood the need to address controversy, all of which resulted in the hiring of Guidepost and the resulting investigative report. (*See* Doc. No. 1 ¶¶ 54, 60-63, 20, 49). Taking all those allegations as true, the Sills have stated a defamation claim against the Executive Committee, McLaurin, and Slade.

## F. Conspiracy

To state a claim for civil conspiracy under Tennessee law, a plaintiff must allege: (1) a common design between two or more persons; (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means; (3) an overt act in furtherance of the conspiracy; and (4) injury to person or property resulting in attendant damage. *See Pagliara v. Moses*, 605 S.W.3d 619, 627 (Tenn. Ct. App. 2020). A claim for civil conspiracy must have an underlying predicate tort committed in the course of the conspiracy. *See id*.

1. <u>Lyell</u>

Lyell argues that conspiracy claims should be pleaded with "some level of specificity" and cites state and federal cases in support of that argument. The Sills respond that they pled facts sufficient to state the elements of a civil conspiracy claim and cites numerous specific allegations in the complaint. The Court agrees Plaintiffs have sufficiently alleged a factual basis for the conspiracy claim against Lyell. Moreover, Lyell's arguments ask the Court to draw inferences from the factual allegations in her favor, which the Court cannot do at this stage. Accordingly, the Court will not grant Lyell's motion on this basis.

2. <u>The Seminary and Mohler</u>

The Seminary and Mohler argue that the complaint fails to allege facts to state a civil conspiracy claim against them because "there is no plausible allegation" to support the existence of a conspiracy "beyond the allegation that the Seminary [and Mohler] simply supported Lyell when she revealed Sills's sexual abuse." (Doc. No. 84 at 7). While the Seminary and Mohler characterize the investigation in a manner favorable to them, the Court cannot do the same at this stage.

The complaint alleges that the Seminary and Mohler urged Lyell to write a "public relations piece" at a time when the Southern Baptist Convention and Mohler were struggling with circumstances arising from other scandals. (Doc. No. 1 ¶¶ 37, 38). The complaint further alleges the Seminary and Mohler saw an opportunity to improve the reputation of the Southern Baptist Convention which resulted in what became the Guidepost investigation report (*Id*. ¶ 40). Further, the report, as it related to Sills, allegedly relied primarily on Mohler's statements, Mohler and the Seminary published the report, and Mohler made a statement concerning the purported abuse of

Lyell soon after the publication of the report. (*Id*. ¶¶ 51, 59, 60). Given these allegations, the Court finds the Sills have adequately alleged a claim for civil conspiracy against these defendants.

### 3. Guidepost

Guidepost argues Plaintiffs' claim for civil conspiracy against it fails because the complaint fails to allege facts to show that it had the intent to cause them harm. In response, the Sills argue the complaint alleges that Guidepost's "sham investigation" and the false statements in exchange for payment are sufficient to plead intent by Guidepost to participate in and common design to harm them. The allegation of a "sham investigation" and publication of the report may support the Sills' claims for defamation and negligence, but the complaint must allege some factual basis for the conspiracy claim. Under Tennessee law, each co-conspirator "must have the intent to accomplish th[e] common purpose, and each must know of the other's intent." *First Cmty. Bank, N.A. v. First Tennessee Bank, N.A.*, 489 S.W.3d 369, 396 (Tenn. 2015). However, it is "not essential that each conspirator have knowledge of the details of the conspiracy." *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 67 (Tenn. 2001) (citation omitted). While actionable civil conspiracy does not require uniformity of knowledge among all co-conspirators, it does require that each conspirator intend to accomplish the common purpose.

Here, the Sills allege the Executive Committee hired Guidepost to conduct an investigation of the Southern Baptist Convention's "sexual abuse crisis" in September 2021 (Doc. No. 1 ¶ 50); the Sills also allege Guidepost, acting in concert with the Southern Baptist Convention, published an "unsubstantiated" allegation against Sills. (*Id*. ¶ 60). What's missing, however, is any allegation that in conducting the investigation and publishing its report that Guidepost intended to defame Sills to distract from the Southern Baptist Convention's sex abuse scandal – the purported goal and purpose of the conspiracy. (*Id*. ¶ 95). There are not even allegations from which a reasonable

29

inference of Guidepost's intent to defame Sills for this purpose can be drawn. Accordingly, Guidepost's motion to dismiss will be granted as to the Sills' conspiracy claim against it.

### 4. Southern Baptist Convention, Litton, and Barber

The Southern Baptist Convention, Litton, and Barber argue that the conspiracy claim against them must be dismissed because it is derivative of the defamation claim. Because the Court has found that the Sills have stated defamation claims against these defendants, *see supra*, and the complaint alleges that they acted in concert with others to harm the Sills. Accordingly, dismissal of the Sills' civil conspiracy claim against these defendants would be inappropriate.

### 5. Executive Committee, McLaurin, and Slade

These defendants argue the conspiracy claim must be dismissed because the Sills have not plausibly alleged an underlying tort. Having found that the Sills' tort claims survive, the Court will not dismiss on that basis. McLaurin also argues dismissal is appropriate because the complaint does not allege that he engaged in an overt act. (Doc. No. 87 at 22). As noted by the Sills in their response, the complaint alleges McLaurin issued a statement characterizing the Baptist Press' reporting as inaccurate, meaning, the reportedly consensual affair was now not consensual, and the relationship between Lyell and Sills was deemed abusive and forced. (Doc. No. 1 ¶ 53). Accordingly, the Court will not dismiss the Sills' civil conspiracy claim against these defendants.

## G. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress under Tennessee law, a plaintiff must allege that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff. *Lemon v. Williamson Cnty. Sch.*, 618 S.W.3d 1, 21 (Tenn. 2021). Guidepost, the Executive

Committee, McLaurin, and Slade argue the complaint does not allege facts showing outrageous or malicious conduct by them against Sills. (Doc. No. 78 at 24-25; Doc. No. 87 at 20). The Sills respond that, under *Ogle v. Hocker*, a reasonable jury could potentially find that Guidepost's conduct was "extreme and outrageous" by participating in a process that labeled Sills as a "violent sex abuser." The Court agrees and, construing all facts in favor of the Sills, finds that they have stated a claim for intentional infliction of emotional distress.

The Southern Baptist Convention, Barber, and Litton argue the intentional infliction of emotional distress claim should be dismissed because it is derivative of the defamation claim. (Doc. No. 89 at 17-18). This argument fails because the Court is not dismissing the Sills' defamation claim against these defendants. *See supra*.

## H. Negligence

A claim for negligence under Tennessee law requires: (1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause. *Cotten v. Wilson*, 576 S.W.3d 626, 637 (Tenn. 2019). Guidepost, the Southern Baptist Convention, Barber, Litton, the Executive Committee, McLaurin, and Slade argue this claim must be dismissed because the complaint fails to allege they owed a duty of care to the Sills. (Doc. No. 78 at 23; Doc. No. 87 at 20-21; Doc. No. 89 at 17). The Sills argue Tennessee courts balance "the foreseeability and gravity of the potential harm against the feasibility and availability of alternatives that would have prevented the harm." (Doc. No. 104 at 33 (citing *In re AME Church Emp. Ret. Fund Litig.*, 2023 WL 2562784, at *32 (W.D. Tenn. Mar. 17, 2023)). The Sills also argue that when determining a duty to a third party, Tennessee law requires a balancing of several factors. (*Id.* (citing *Biscan v. Brown*, 160 S.W.3d 462, 479 (Tenn. 2005)). The gravamen of the Sills' negligence claim is that

these defendants owed them a duty of care and breached that duty in the manner in which the investigation and report were performed and published, respectively. At this stage, drawing all reasonable inferences in favor of the Sills, the Court finds the complaints states a claim for negligence against these defendants.

## I. Mrs. Sills' Claims

The Seminary, Mohler, the Executive Committee, McLaurin, and Slade generally challenge the claims asserted by Mrs. Sills on the grounds that the complaint is void of any allegations that they defamed, conspired against, were negligent towards, or intentionally inflicted emotional distress against her. The Sills point to the Seminary and Mohler's allegedly wrongful acts against the Sills and argue these defendants perpetuated Lyell's assertion that Mrs. Sills enabled the affair. While the complaint is admittedly thin on factual allegations concerning Mrs. Sills, when taking the allegations as true and giving her all reasonable inferences, Mrs. Sills has stated a claim.

## IV.    CONCLUSION

For the foregoing reasons Geiger and SPI's motions (Doc. No. 91, 77) will be granted for lack of personal jurisdiction, Lifeway's motion (Doc. No. 73) will be granted for failure to state claim, Guidepost's motion (Doc. No. 77) will be granted only as to the conspiracy claim; Lyell's motion (Doc. No. 75) will be granted only as to the defamation claim against her for statements about Mrs. Sills. The remaining defendants' motions (Doc. No. 83, 88, 86) will be denied.

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE