# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL DAVID SILLS and MARY SILLS, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| | ) Case No.: 3:23-cv-00478 |
| v. | )<br>) |
| | ) Judge William L. Campbell, Jr. |
| SOUTHERN BAPTIST CONVENTION, *et al.*, | ) Magistrate Judge Jeffery S. Frensley<br>)<br>) |
| | ) JURY TRIAL DEMANDED |
| Defendants. | ) |

## JOINT MOTION TO AMEND CASE MANAGEMENT ORDER DEADLINES AND RESET TRIAL DATE

The Parties, by and through their undersigned counsel, respectfully move this Court to amend the case management order deadlines and reset the trial date. In support of this motion, the Parties state as follows:

1. This matter is currently set for trial on June 3, 2025 [Dkt. No. 101]. After meeting and conferring, the Parties respectfully and jointly seek entry of an Order that modifies case management deadlines and resets the trial date to February 2026.

2. The Parties have been diligently engaged in discovery, conferring to reach agreement where possible and attempting to defer areas of disagreement, in favor of advancing the tremendous volume of discovery in this case. Essentially, the process has been successful for the Parties to acquire the facts necessary for all claims and defenses. Even so, the document burden in this case has consistently proven to be beyond that which any Party anticipated.[1]

---

[1] The nature of the witnesses and their respective professions (i.e., publishers, professors, reporters, etc.), and their longevity in those professions, makes for extensive volumes of documents to identify and search.

3. Following entry of an agreed protective order, substantial discovery began in earnest in April 2024.[2] Since that time, the Parties have propounded 172 interrogatories (most with multi-part inquiries which are not tallied, here), 163 requests for production and 47 Requests for Admission. Some 89 witnesses have been disclosed by the Parties, and more than a dozen additional witnesses have been identified during discovery. That written discovery has largely been both answered and objected to by the Parties, with a multitude of extensive meet-and-confer sessions. Answers and documents are still under review by all Parties, and the Parties are exchanging ideas about the reduction of witnesses. Presently, each side has agreed to ten depositions per side, with Plaintiffs taking one deposition per defendant, with any additional depositions to be discussed between the requesting party and producing party.[3]

4. In terms of the tremendous volume exchanged, ESI vendors have processed some 1.413 terabytes of data. Approximately 125,494 documents consisting of more than a half million pages have been produced by the Parties and third-party witnesses in this action. Phones and hard drives have been imaged, and search terms negotiated. Document productions are ongoing and de-duping is extensive. This particular aspect of the case has exceeded the Parties' expectations. That said, it has also prevented depositions from proceeding; all Parties necessarily want the documents before the depositions.

5. The documentary discovery has had a substantial impact on time, staff, and money. The collection and processing of electronically stored information (ESI) involves several steps that

---

[2] This dispute involves allegations of defamation in relation to allegations of sexual abuse and investigations associated with those allegations. As such, a Protective Order [Dkt. No. 149] was entered on March 26, 2024, to protect, among other things, the sensitive nature of the materials and information that will be exchanged in this lawsuit.

[3] The parties continue to discuss the best way to count a deposition that takes longer than seven hours.

2

cannot be rushed or abbreviated. [*See* The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 Sedona Conf. J. 1 (2018). e.g., Principal 10, Comment10.a. ("The volume and form of ESI productions have substantially increased the burdens and costs of privilege and confidentiality reviews and the risks of inadvertent production of privileged and work product protected information."); *see also*, The Sedona Conference, Commentary on Protection of Privileged ESI, 17 Sedona Conf. J. 95, Appendix F, Federal Rule 502—State Law Analogues, at 199 (2016)].

6. The Parties have met and conferred to discuss efficiencies and their progress in written discovery. All Parties have been diligent, particularly in light of the volume of documents and electronically stored information processed and produced to date. The Parties are nearly done with written discovery.

7. As the Court is aware, this case involves: two plaintiffs, four organizational defendants, five individual defendants, and more than a dozen third-party witnesses. The dispute at issue in this case was a widely reported story, the discovery has been very substantial, and the history of the discovery is also known to this Court. [*See e.g.*, Dkt. Nos. 169, 170]. In necessarily pursuing intensive fact discovery, it has been the experience of the Parties that even when they reach an agreement in good faith, a detail unknown at the time of agreement surfaces and pushes back the timing all originally thought sufficient. At the last status hearing, the Parties indicated a need to modify the discovery schedule to accommodate additional document production, which necessarily would result in a delay in taking party depositions. The Court took that matter under advisement, asking the parties to continue working diligently but to return to the Court to formalize an extension if needed.

8. Although minimal modifications were made to the schedule [Dkt. Nos. 173, 174, 181], to accommodate production delays, those production deadlines ultimately could not be met despite the Parties' best efforts. The Parties worked together as best they could in light of the processing that is necessary before the documents could be produced.

9. For instance, on September 12, 2024, third-party witness, Lifeway, identified approximately 130,000 documents in response to a subpoena sent more than a month ago, and now wishes to negotiate additional terms to reduce the document volume. Plaintiffs have obliged the request by Lifeway, but the witness will necessarily require additional processing time before making their production. Third-party witness, Reaching and Teaching, was subpoenaed more than a month ago and recently sought a 21-day extension. Reaching and Teaching has contacted Plaintiffs' counsel for additional time.

10. Without question, the document volume, identification of potential witnesses and tracking down those witnesses (before the Parties can even ascertain the need for a deposition), has created a substantial timing burden experienced by all Parties in this litigation.

11. For all of the foregoing reasons, to date only one deposition has been taken. The Parties are working in good faith to schedule depositions, but due to the volume of documents and number of witnesses in this litigation, the nature of the witnesses' work and scheduling difficulties associated with their work, and the need to travel for many of the depositions, there remains a substantial number of depositions yet to be taken. Indeed, documents are still coming in from third-party witnesses.

12. The current fact discovery window is set to close on September 18, 2024 [Dkt. No. 181]. The current status of discovery - namely ongoing document productions and outstanding depositions - does not allow the Parties to complete discovery within the current timeframe.

Accordingly, last week the Plaintiffs filed a Motion to Extend Discovery which was largely unopposed. [Dkt. No. 190].

13. In particular, the Parties previously met and conferred on this topic by teleconference and email. Defendants agreed that additional time is necessary to adequately complete fact discovery, and specifically agreed to an extension to October 18, 2024, provided other deadlines were not changed at this time.

14. Plaintiffs filed a motion that set forth this same history in support of a modification to the discovery deadlines, also stating that practical considerations did not make October 18, 2024, a realistic deadline for completion of discovery. [Dkt. No. 190].

15. Since that recent filing, the Parties met and conferred, again. Each Party offered perspective concerning the practical aspects of the discovery that remains. Efficiencies were discussed at length. The Parties collectively agreed that they must seek a minimum 180-day extension of time to account for the extensive document discovery and adequately prepare this case for trial.

16. The Parties could not, without seeking extension, devise a schedule that permitted completion of discovery and compliance with the 90-day rule in advance of the trial date. Despite the Parties' best efforts, practical considerations warranted seeking the instant relief from the Court. No Party is prejudiced by this joint request.

17. The current dates and proposed dates are as follows:

| Event | Current Date[4] | Proposed New Date |
|---|---|---|
| All Written Discovery and Depose All Fact Witnesses | September 18, 2024 | February 17, 2025 |
| Case Resolution Plan and Joint Status Report | September 29, 2024 | February 27, 2025 |
| All Discovery Disputes Brought to Court | September 29, 2024 | February 27, 2025 |
| Expert Disclosures | Oct. 16, 2024 (Plaintiffs)<br>Nov. 13, 2024 (Defendants)<br>Rebuttal only by leave of Court | Mar. 14, 2025 (Plaintiffs)<br>Apr. 14, 2025 (Defendants)<br>Rebuttal only by leave of Court |
| Expert Depositions | December 22, 2024 | May 21, 2025 |
| Dispositive Motions | January 8, 2025 | June 9, 2025 |
| Serve Copy of Direct Testimony of Experts | May 5, 2025 | November 3, 2025 |
| Motions *in limine* | May 12, 2025 (File)<br>May 19, 2025 (Respond) | *[5] |
| Exchange Exhibits and Deposition Designations | May 12, 2025 | * |
| Joint Pre-trial Order, Jury Instructions, Witness & Exhibit Lists, Stipulations | May 19, 2025 | * |
| Pre-trial Conference | May 23, 2025 | * |
| Final Settlement Status Report | Thursday, May 29, 2025 | * |
| Trial | June 3, 2025 | February 2026 |

18. There is good cause to modify the current scheduling order and trial date because the Parties have diligently worked to comply with the order, discussed alternatives, and the Parties have regularly met-and-conferred in good faith to move discovery forward apace, but the Parties

---

[4] *See* Dkt. No. 170.
[5] The Parties did not include proposed dates for these several tasks out of deference for the Court's own scheduling needs.

cannot reasonably meet the current schedule. Rule 16 provides a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Washington v. Riverview Hotel, Inc.*, No. 3:19-CV-00097, 2020 WL 12990974, at *2 (M.D. Tenn. May 14, 2020) citing to *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002). Whether "good cause" exists is a matter within the court's discretion. *Masonite Corp. v. Craftmaster Mfg., Inc.*, 09 CV 2131, 2011 WL 1642518, at *2 (N.D. Ill. Apr. 29, 2011) citing to *United States v. One Parcel of Real Estate Located at 1948 S. Martin Luther King Drive*, 270 F.3d 1102, 1110 (7th Cir.2001).

19. Notably, "good cause to modify a scheduling order may be found to exist when the moving party shows that it diligently assisted the district court with creating a workable scheduling order, that it is unable to comply with the scheduling order's deadlines due to matters that could not have reasonably been foreseen at the time of the issuance of the scheduling order, and that it was diligent in seeking an amendment once it became apparent that the party could not comply with the scheduling order." *Kuschner v. Nationwide Credit, Inc.*, 256 F.R.D. 684, 687 (E.D. Cal. 2009), citing 6A Wright, Miller & Kane, Federal Practice and Procedure § 1522.1 at 231 (2d ed.1990) ("good cause" means scheduling deadlines cannot be met despite party's diligence). "[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 717 (8th Cir. 2008) citing Fed. R. Civ. P. 16(b), advisory committee note (1983 Amendment).

20. The Parties have shown good cause. The Court has been regularly updated with the challenges confronting the Parties during document discovery, and the Parties have exhausted all options. They cannot comply with the Order.

For these reasons, the Parties jointly and respectfully request an amendment to the current case management schedule, including resetting of the current trial date to January 2026.

Dated: September 18, 2024                                        Respectfully submitted,

By: /s/ *Katherine B. Riley*  
Katherine Barrett Riley (TN BPR#021155)  
John W. ("Don") Barrett (admitted *pro hac vice*)  
Sterling Aldridge (admitted *pro hac vice*)  
BARRETT LAW GROUP, P.A.  
P.O. Box 927  
404 Court Square North  
Lexington, MS 39095  
Ph: (662) 834-2488  
Fax: (662) 834-2628  
kbriley@barrettlawgroup.com  
dbarrett@barrettlawgroup.com  
saldridge@barrettlawgroup.com  

Shannon M. McNulty (admitted *pro hac vice*)  
CLIFFORD LAW OFFICES, P.C.  
120 N. LaSalle Street, 36th Floor  
Chicago, Illinois 60602  
(312) 899-9090  
(312) 251-1160 Facsimile  
SMM@cliffordlaw.com  

Gary E. Brewer (TN BPR#: 000942)  
BREWER AND TERRY, P.C.  
Attorneys at Law  
1702 W. Andrew Johnson Hwy.  
Morristown, TN 37816-2046  
(423) 587-2730  

**Counsel for Plaintiffs**

/s/ *Brigid M. Carpenter*  
Brigid M. Carpenter (BPR #018134)  
Ryan P. Loofbourrow (BPR #033414)  
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.  
bcarpenter@bakerdonelson.com  
rloofbourrow@bakerdonelson.com  
1600 West End Avenue, Suite 2000  
Nashville, Tennessee 37203  
Telephone: (615) 726-7341  
Fax: (615) 744-7341  

**Attorneys for Executive Committee of the Southern Baptist Convention and Rolland Slade**

/s/ *Byron E. Leet*  
Byron E. Leet (Admitted *Pro Hac Vice*)  
Wyatt, Tarrant & Combs  
400 West Market Street  
Louisville, Kentucky 40202  
bleet@wyattfirm.com  

James C. Bradshaw, III (BPR #13170)  
Wyatt, Tarrant & Combs, LLP  
333 Commerce Street, Suite 1050  
Nashville, Tennessee 37201  
jbradshaw@wyattfirm.com  

Thomas E. Travis (Admitted *Pro Hac Vice*)  
Wyatt, Tarrant & Combs  
250 W. Main Street, Suite 1600

Lexington, Kentucky
ttravis@wyattfirm.com

**Attorneys for The Southern Baptist Theological Seminary and Dr. R. Albert Mohler**

/s/ Mariam N. Stockton
Oliva Rose Arboneaux (BPR #040225)
Philip N. Elbert (BPR #009430)
Ronald G. Harris (BPR #009054)
Mariam N. Stockton (BPR #029750)
Neal & Harwell, PLC
1201 Demonbreun Street, Suite 1000
Nashville, Tennessee 37203
oarboneaux@nealharwell.com
pelbert@nealharwell.com
rharris@nealharwell.com
mstockton@nealharwell.com

**Attorneys for Jennifer Lyell**

/s/ Matthew C. Pietsch
Louis Gino Marchetti, Jr. (BPR #005562)
Matthew C. Pietsch (BPR #024659)
Taylor, Pigue, Marchetti & Blair, PLLC
2908 Poston Avenue
Nashville, Tennessee 37203
gmarchetti@tpmblaw.com
matt@tpmblaw.com

**Attorneys for Southern Baptist Convention, Dr. Ed Litton and Bart Barber**

/s/ Katharine R. Klein
John R. Jacobson (BPR #014365)
Katharine R. Klein (BPR #019336)
Riley & Jacobson
1906 West End Avenue
Nashville, Tennessee 37203
jjacobson@rjfirm.com
kklein@rjfirm.com

**Attorneys for Guidepost Solutions, LLC**

/s/ Alan S. Bean
Alan S. Bean (BPR #26194)
Starnes Davis Florie LLP
3000 Meridian Boulevard, Suite 350
Franklin, Tennessee 37067
abean@starneslaw.com

**Attorney for Willie McLaurin**

9

Case 3:23-cv-00478   Document 191   Filed 09/18/24   Page 9 of 10 PageID #: 1666

## CERTIFICATE OF SERVICE

I, Katherine B. Riley, hereby certify that on September 18, 2024, I served the above and foregoing on all counsel of record via the Court's CM/ECF filing system.

/s/ *Katherine B. Riley*
Katherine B. Riley
