IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL DAVID SILLS and MARY SILLS, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| | ) Case No.: 3:23-cv-00478 |
| v. | )<br>) |
| | ) Judge William L. Campbell, Jr. |
| SOUTHERN BAPTIST CONVENTION, *et al.*, | ) Magistrate Judge Jeffery S. Frensley<br>)<br>) |
| | ) JURY TRIAL DEMANDED |
| Defendants. | ) |

**PLAINTIFFS' RESPONSE[1] TO DEFEDANT EXECUTIVE COMMITTEE'S
MOTION FOR DISCOVERY CONFERENCE**

COME NOW, Plaintiffs, Michael David Sills and Mary Sills, through their attorneys, and in response to Defendant EXECUTIVE COMMITTEE's Motion For Discovery Conference (Dkt. No. 217) state as follows:

Local Rule 37.01 states in pertinent part:

> (b) Joint Statement. If the parties are not able to resolve the discovery issue, they must, in connection with any request for a discovery conference or a discovery motion, file a joint discovery dispute statement: (1) detailing their attempt at resolution; (2) setting forth exactly what discovery is in dispute (either by including the text of the discovery requests and responses or by attachment as exhibits); and, (3) detailing the parties' respective positions. This joint statement must be filed before any request for a telephonic discovery conference with the Judge is made, and must be attached to any filed discovery motion.

Defendant failed to comply with the Local Rule in that a joint statement was neither drafted nor filed. To accommodate Defendant's deviation from the rule, Plaintiff attempts to respond by

---

[1] Plaintiff has pending a motion for leave to provisionally file under seal exhibits and portions of the brief that contain or reference confidential material.

numbered paragraphs that directly correspond with the numbered paragraphs in Defendant's motion.

1. Plaintiffs did serve on EXECUTIVE COMMITTEE a Notice of Deposition for 30(b)(6) witness. The September 16, 2024 Notice (Defendant's Exhibit 1) is no longer the relevant Notice. It was supplanted by an Amended Notice served on February 5, 2025.

2. Defendant complains about the September 16, 2024 Notice, which is <u>no longer the operative Notice.</u> Plaintiffs shall briefly address the commentary by Defendant. Plaintiffs' Notice required the EXECUTIVE COMMITTEE to designate witnesses to testify about 51 specific topics, all of which relate to the claims and defenses at bar. Notably, EXECUTIVE COMMITTEE publicly defines itself as only "86 representatives chosen from qualified states and regions, [to act] on behalf of the Convention between sessions. EXECUTIVE COMMITTEE officers are elected from these representatives."[2] In the Notice, EXECUTIVE COMMITTEE was properly defined to include its "affiliated, members, directors, officers, agents, employees, and/or independent contractors, consultants, and all persons (including, without limitation, its attorneys, accountants, and advisors) acting or purporting to act on its behalf." The one topic about which Executive Committee persistently complains ("All communications with anyone associated with the Executive Committee, the SBC, the Task Force, and the Cooperation Committee relating to the Report and the portion of the Report relating to Plaintiffs or Defendant Jennifer Lyell.") is hardly a heavy lift and will clearly yield substantive evidence. The various committees and subdivisions listed in the topic do exist within the EXECUTIVE COMMITTEE as depicted in its fairly sparse organizational structure concisely set forth in the 2023 Annual Report. [Exhibit A, e.g., *see* title page (*copyright* and *prepared by)*; *see also* pp. 8 (Art. VI, #3); 10 (Art. XII, #2-#4); 54-55

---

[2] See https://www.sbc.net/about/what-we-do/sbc-entities/executive-committee/.

(Executive Committee Reports); 57 (#16); 64]. Exhibit A fully demonstrates the common place usage of "Executive Committee" and "Executive Committee staff." Exhibit B similarly provides a rather concise depiction of Executive Committee staff. There is no difficulty in understanding who is encompassed in the "Executive Committee" or its staff, agents, employees, independent contractors or consultants. Indeed, the word "consultant" is used some fifty (50) times throughout the 2023 Annual Report [Ex. A, pp. 471-472, 544-550]; the word "employee" some seventy-five (75) times; and the word "contract" (e.g., contractor) is used some thirty-nine (39) times, including in connection with identifying by name or dollar amounts various contractors. This terminology is common to the EXECUTIVE COMMITTEE and reflected in several Annual Reports that have been publicly posted. EXECUTIVE COMMITTEE is stalling when it feigns confusion over these terms.

3. Plaintiffs received EXECUTIVE COMMITTEE's objection to the now defunct first Notice.

4. The Parties met and conferred about the objections.

5. On November 14, 2025, Plaintiffs' counsel sent EXECUTIVE COMMITTEE case law that supported plaintiff's position [Exhibit C]. In short, Plaintiffs' counsel provided authority to demonstrate the proper scope of the topics included in the 30(b)(6) Notice under the facts of this case. EXECUTIVE COMMITTEE does not want to identify and prepare individuals to speak for the corporate entity, and considers *that* burdensome, however, the law counsels against EXECUTIVE COMMITTEE's position, and Plaintiffs provided in email [Ex. C] the following case law:

- *Coryell v. Phipps*, 317 U.S. 406, 410–11, 63 S. Ct. 291, 293, 87 L. Ed. 363 (1943) ("A corporation necessarily acts through human beings. The privity of some of those persons must be the privity of the corporation else it could always limit its liability. Hence the search in those cases to see where in the managerial hierarchy the fault lay.).

- *United States v. One Parcel of Land Located at 7326 Highway 45 N., Three Lakes, Oneida Cnty., Wis.*, 965 F.2d 311, 316 (7th Cir. 1992) ("The task then becomes to ascertain the extent of Modernaire's actual knowledge, and therein lies the rub. As a legal fiction, a corporation cannot "know" like an individual "knows." We treat corporations as separate legal entities and enable them to own property and enter contracts by relying on agency precepts. A corporation and its agents relate to one another like a principal to its agents. A corporation acts through its agents. Similarly, a corporation "knows" through its agents. W. Fletcher, 3 Corporations § 787 (1986)).

- *King v. Pratt & Whitney, a Div. of United Techs. Corp.*, 161 F.R.D. 475, 476 (S.D. Fla. 1995), aff'd sub nom. *King v. Pratt & Whitney*, 213 F.3d 646 (11th Cir. 2000), and aff'd sub nom. *King v. Pratt & Whitney*, 213 F.3d 647 (11th Cir. 2000) (Rule 30(b)(6) does not limit what can be asked at deposition. Since there is no specific limitation of what can be asked at deposition, the general deposition standards govern. The reason for adopting Rule 30(b)(6) was not to provide greater notice or protections to corporate deponents, but rather to have the right person present at deposition. The Rule is not one of limitation but rather of specification within the broad parameters of the discovery rules. This is made clear by both the Advisory Committee's statement that 30(b)(6) "should be viewed as an added facility for discovery ..." and the Rule's final sentence: "This subdivision (b)(6) does not preclude taking a deposition by any other procedure authorized in these rules." Fed.R.Civ.P. 30(b)(6) advisory committee's note.)

It was proper for EXECUTIVE COMMITTEE to withdraw 12 objections, and more should have been withdrawn. To date, EXECUTIVE COMMITTEE has not identified or produced a single designated witness, not even for the Noticed topics to which they do not object.

6. At Plaintiff's request [Exhibit C], on November 19, 2024, counsel for the respective parties, met and conferred in-person. A copy of that transcript is attached hereto as <u>Exhibit D</u>. Irrefutably, there was no agreement to revise 15 of the 18 topics as EXECUTIVE COMMITTEE mistakenly suggests. In actuality, Plaintiffs' counsel specifically offered to revise three topics. [<u>Exhibit D</u>, p. 32:12-25]. Otherwise, as reflected in the transcript and wholly contrary to Rule 30, EXECUTIVE COMMITTEE largely objected that everything was too broad [<u>Exhibit D</u>, pp. 6:25-10:3; 13:4-25; 16:24-19:19; 19:21-22:12; 23:5-24:3; 29:19-31:1].

7. Unquestionably, EXECUTIVE COMMITTEE has unnecessarily caused an inordinate amount of time to be spent discussing a proper Notice for its 30(b)(6) witness(es). The EXECUTIVE COMMITTEE's purported attempts to "reach a compromise" are wholly contrary to the law, and the so-called efforts merely serve as delay tactics.

8. Plaintiffs served an amended Notice on February 5, 2025. The purpose was to address EXECUTIVE COMMITTEE's position that it could not identify actual witnesses by name for the topics, apparently not even for the topics on which it had agreed. No name has ever been provided. Contrary to the suggestion, there were no "expanded topics." Instead, Plaintiffs reviewed the testimony given in this case by ███████████████████████ ███████████████, as well as the materials used to prepare for the February 11, 2025 depositions of ███████████ (Executive Committee employee) and ███████████ (Executive Committee employee), and further refined the topics. [See Exhibits E, F, G; see also, Exhibit K, ███████ email dated 4/8/22, Bates No. EC_0011793, EC_0011362].

9. Although Defendant provided another chart with so-called objections, the Parties discussed at length the chart's characterizations and corresponding objections. First, Plaintiff does not accept that topics 8, 10, 20 and 33 are completely new. Rather, those topics were revised and included as a way to alleviate the ongoing difficulty described by EXECUTIVE COMMITTEE with regard to their identification of witnesses responsive to the proper topics, as well as in response to the since collected and highly relevant testimony of other EXECUTIVE COMMITTEE agents and employees, namely, ████████████████████████ [Exhibits E, F, G]. EXECUTIVE COMMITTEE persistently struggled with, for example, Original Notice Topics 6 and 50. Testimony taken in the case subsequent to the original meet-and-confers made excessively clear that ███████████ was instrumental in ████████████████████ for EXECUTIVE COMMITTEE, including on the topic ███████████ [Exhibit H, see also Exhibit K, Bates Nos. EC_0003077; EC_0007832; EC_011396 – 399; EC_0114480 – 81; EC_0011497 – 11500]. ███████ similarly testified to the role of █████. [Exhibit E, pp. 129-130]. Plaintiff purposely made Topic #33 explicit, so that EXECUTIVE COMMITTEE would not struggle with producing

a witness on this highly relevant topic, yet they still do struggle. Similarly, the names identified in Topic #20 of the amended Notice narrows the universe of people over whom EXECUTIVE COMMITTEE was fretting in connection with the original Notice [See Exhibit D]. Defendant also ███████████████ describes many of the topics at issue. [See Exhibit K, Bates No. EC_0003072 – 077]. Plaintiffs now supplied names, therefore, the communications requested in original notice Topic #6 have been significantly reduced by virtue of providing the actual names. For Topic #10 concerning Elizabeth Dixon, Plaintiffs offered that EXECUTIVE COMMITTEE could ███████████████████████████████. EXECUTIVE COMMITTEE has not done that, but instead wishes to spin its wheels over the highly relevant ████████ it's agent, ████████ who ████████ and also ████████ ████████████. [Exhibit G, 73:1-22; 112:1-4]. With respect to #8 on the amended Notice, it is, again, a topic that explicitly describes the same information sought in original Notice Topics #7, 9, 10, 12, 19, 20, 22. These are hardly new topics, and in any event, all topics in the original and amended Notices are proper, relevant and deserving of EXECUTIVE COMMITTEE's immediate attention.

10. The EXECUTIVE COMMITTEE will not act on its obligation to produce witnesses on Topics 5, 7, 9, 10, 18, 20, 25, 26, 28 or 33.

11. The obligations under the initial case management order are clear. So too are the Parties' obligations pursuant to Rule 30(b)(6). This dispute is a manufactured delay.

12. Local rules set forth the obligations concerning a request for a discovery conference. EXECUTIVE COMMITTEE undertook no effort to prepare a joint discovery statement. This has again created unnecessary delay for a rather straightforward issue. Based on prior discovery disputes presented to this Court, Plaintiff believes the Court can rule on these issues from the bench either in a status conference or in the docket. It is important to rule expeditiously.

13. Again, EXECUTIVE COMMITTEE should have undertaken its obligations per this Court's order and local rules.

14. Plaintiffs have indicated their position that EXECUTIVE COMMITTEE's objections are improper. EXECUTIVE COMMITTEE did not confer with Plaintiffs about the instant motion. Discovery will soon close, and EXECUTIVE COMMITTEE knows that it should identify and produce its witness(es). Instead, EXECUTIVE COMMITTEE contends that it should not have to identify a single witness until the court has ruled on these improper objections. [Exhibit D, 8:1-13]. This is another inefficiency intended to cause delay. Plaintiffs do not oppose a discovery conference, however, the court can likely expeditiously issue a ruling concerning topics 5, 7, 9, 10, 18, 20, 25, 26, 28 and 33 by simply reviewing them and without creating more pleadings and work.

With respect to **Topic No. 5**, Plaintiff seeks testimony about the Executive Committee's interactions with Defendant Lyell. More specifically, broken down, the Topic seeks to explore:

> First, the Executive Committee's prior adversarial proceedings with/against Jennifer Lyell in all respects, its outreach to Jennifer Lyell by the SBC and its President(s) or officers, and by Executive Committee and its members, and by Al Mohler, and by Ed Litton, including with respect to articles, social media posts, and payments for release of claims she alleged.
> Second, Topic No. 5 seeks testimony about Jennifer Lyell's reports to Executive Committee leadership, including to Litton, Barber, McLaurin, Slade, Howe, Besen, Nokes, Thomspon, Upton, Floyd, Dixon and Schroeder, regarding reports of bad conduct by any pastors, professors or Lifeway authors.
> Third, Topic No. 5 seeks testimony about Guidepost's inquiries into Jennifer Lyell and her reports of misconduct by any co-workers, subordinates, employees, affiliates and/or members of the SBC.
> Lastly, Topic 5 seeks testimony from Executive Committee concerning Guidepost's efforts to corroborate Jennifer Lyell's accusations against David Sills.

With respect to **Topic No. 7**, Plaintiff seeks testimony concerning all complaints, calls, messages, alerts, reports, requests, inquiries or doubts, of any kind, received by or known to the Executive Committee, through any means whatsoever, concerning the content of the Report,

including but not limited to the phone calls and reports referenced in the joint apology by Executive Committee's Willie McLauren and Gene Besen who publicly stated: "The truth is, at this moment, phones are ringing at the Executive Committee, at Guidepost and other Baptist entities with more who are coming forward at this very moment to report and acknowledge their own abuse in the SBC." This is a very clear Topic concerning testimony that will be highly relevant. The Report has spawned a fair amount of litigation on a wide range of topics, including what ▮▮▮▮▮ ▮▮▮▮▮. [Exhibit K, see also Exhibit L]. That testimony is relevant evidence that will demonstrate what the Defendant did, or did not, do with respect to the content. ▮▮▮▮▮ ▮▮▮▮▮ that she ▮▮▮▮▮ but did not know ▮▮▮▮▮ and did not ▮▮▮▮▮ of the ▮▮▮▮▮ [Exhibit F, 73:1-22; 114:10-14].

With respect to **Topic No. 9**, this is very straightforward. Plaintiffs seek testimony concerning emails, correspondence, text messages exchanged or received by Executive Committee or Sexual Abuse Task Force employees or independent contractors with any witnesses, interviewees, consultants, contributors, relating to the Report and its contents, Jennifer Lyell, David Sills or Rachel Denhollander. ▮▮▮▮▮ testified that ▮▮▮▮▮ Task Force [Exhibit E, p. 29].

With respect to **Topic No. 10**, ▮▮▮▮▮ that contained David Sills' name, photo and what Lyell alleges; it was attached to the Report and published on the SBC webpage, even to date. ▮▮▮▮▮ testified that ▮▮▮▮▮ [Exhibit G, 105:21-23]. ▮▮▮▮▮ was taken [Exhibit G] and EXECUTIVE COMMITTEE could and should ▮▮▮▮▮. But if they choose not to, they need to produce a witness. Topic 10 is highly relevant and is properly included in the 30(b)(6) Notice.

With respect to **Topic No. 18** ("Any communications between Executive Committee members Litton, Barber, McLaurin, Slade, Howe, Besen, Nokes, Thompson, Upton, Floyd, Dixon, and Schroeder relating to the allegations made by Jennifer Lyell, the allegations made against Plaintiff Michael David Sills or the decision to include the allegations against Plaintiff Michael David Sills in the Report. This includes communications after publication of the Report") it is difficult to understand how this topic could be objectionable. All of the persons listed are employees, agents or consultants to EXECUTIVE COMMITTEE; the list reduces the burden of talking to 80 people, which was Defendant's repeated complaint (albeit, improper). To the extent any further objection involves testimony concerning ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, they have inserted themselves as witnesses, by acting in capacities outside ▓▓▓▓▓▓▓▓▓▓ Southern Baptist Convention, including by making statements in public and in the media, for which they should be questioned. <u>First</u>, privilege only protects legal advice; <u>second</u>, the communication must be confidential. Undisputedly, Executive Committee very prominently and knowingly waived its attorney-client privilege on the issue of Lyell's allegations against Sills. They boasted about doing so in the Guidepost Report and dozens of emails exist on the topic.[3] Further, ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ have made themselves fact witnesses in this matter. Statements they publicly made to the media cannot be deemed privileged, including for the fact that such statements were not legal advice and the communications were not confidential. [Exhibit E, 85-89 and Ex. 5 to same].

---

[3] See https://www.baptistpress.com/wp-content/uploads/2022/05/FINAL-Guidepost-Solutions-Independent-Investigation-Report-.pdf. "No agreement was reached after an initial series of meeting s but on Oct ober 5, 2021, the SBC EC held a deciding vote in favor of waiving privilege." (p. 9); "On October 5, 2021, the SBC EC held another session and ultimately voted in favor of waiving privilege." (p. 16); "There is no attorney-client relationship between Guidepost and any other party and none of the communications between Guidepost and the SBC or its entities are protected by the attorney-client privilege." (p. 18); "We note that the EC Trustees' waiver of attorney-client privilege was integral to our ability to conduct a thorough investigation." See also https://religionnews.com/2021/10/05/sbc-committee-waives-privilege-abuse-investigation-moves-forward/.

Moreover, ▮▮▮ have ▮▮▮, who is not their client. [See e.g., Exhibit I]. ▮▮▮ even testified about ▮▮▮. [Exhibit J, 121:1-122:13].

Attorney-client privilege is a matter of common law right, it is not a creature of contract, arranged between parties to suit the whim of the moment. *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289 (6th Cir. 2002). Attorney-client privilege is that of client, and by disclosing privileged communication, does in fact waive privilege as to that communication and all other communications on the same subject. *Anderson v. Clarksville Montgomery Cnty. Sch. Bd. & Sch. Dist.*, 229 F.R.D. 546 (M.D. Tenn. 2005). (Emphasis supplied). The standard for waiving the attorney-client privilege is plain: once the privilege is waived, waiver is complete and final. *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289 (6th Cir. 2002). Just as the attorney-client privilege itself provides certainty to litigants that information relayed to one's attorney will not be disclosed, rejection of selective waiver provides further certainty that waiver of the privilege ensures that the information <u>will be</u> disclosed. *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 304 (6th Cir. 2002) (Emphasis supplied). Indeed, the Sixth Circuit has "reject[ed] the concept of selective waiver, in any of its various forms." *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 302 (6th Cir. 2002). EXECUTIVE COMMITTEE has waived its attorney-client privilege with respect to the allegations made by Lyell and its handling of the matter, including with respect to the Guidepost Report, statements made to the media, and ▮▮▮. ▮▮▮ made themselves witnesses. EXECUTIVE COMMITTEE has waived their privilege with regard to the topics contained in the Notice, including with respect to various public statements and communications by ▮▮▮.

With respect to **Topic No. 20** ("All communications transmitted by Executive Committee members Litton, Barber, McLaurin, Slade, Howe, Besen, Nokes, Thompson, Upton, Floyd, Dixon and Schroeder, or their acting or interim replacements, after the Report's publication to churches, seminaries, schools, and publishers relating to Plaintiffs or Lyell's allegations against Plaintiff Michael David Sills.") the same arguments for #18 (above) apply. These individuals transmitted press releases which intensified the misinformation spread concerning Sills. Further, ▮▮▮▮ made public statements, and those are not privileged. [Exhibit E.5]. Additionally, ▮▮▮▮ established a ▮▮▮▮ which connotes a bias Plaintiffs are entitled to explore on cross-examination. [Exhibit I].

With respect to **Topic No. 25**, Plaintiff seeks to explore the basis for making certain responses, including the highly relevant fact that EXECUTIVE COMMITTEE made ▮▮▮▮. Further, the responses are only signed by their attorney, and not by any person on behalf of EXECUTIVE COMMITTEE, thus depriving plaintiff an opportunity to cross examine Defendant in deposition or at trial. [Exhibit L].

With respect to **Topic No. 26** ("The Ministry Check initiative, including the definition and standards for credibly accused and the engagement of Guidepost for the initiative 28 and 33") this is again a highly relevant topic that Plaintiff is entitled to explore in deposition. The Ministry Check initiative ▮▮▮▮, but it ▮▮▮▮ and Plaintiffs should be permitted to explore ▮▮▮▮ allegations made by Lyell.

With respect to **Topic No. 28** ("All communications with Executive Committee outside counsel regarding the allegations by Defendant Jennifer Lyell against Plaintiffs") these communications were made part of the Guidepost Report and should be subject to cross-

examination. To the extent ███████████████████ made public statements and/or

███████████████████████████████ (who is not their client) [Exs. E.5 and I] and

███████████████████████ against Plaintiffs, that is not privileged and is discoverable. The bias is relevant and should be known by the trier of fact.

With respect to **Topic No. 33**, again, Jonathon Howe is key figure who ███████████

████████████████████████████, as set forth, herein. Plaintiff further cites to the information in para. 9, above.

WHEREFORE, Plaintiff respectfully seeks entry of an Order that states (1) the Amended Notice for the EXECUTIVE COMMITTEE 30(b)(6) Witness is proper; (2) that in light of the evidence set forth in Plaintiff's response (which is not even all the evidence taken to date, but is sufficient for ruling on the objections at bar) the objections are misplaced and over-ruled; and (3) that EXECUTIVE COMMITTEE shall identify the witnesses and present them for deposition to proceed within the next 14 days.

Respectfully submitted,

By: /s/ *Katherine B. Riley*
Katherine Barrett Riley (TN BPR#021155)
John W. ("Don") Barrett (admitted *pro hac vice*)
Sterling Aldridge (admitted *pro hac vice*)
BARRETT LAW GROUP, P.A.
P.O. Box 927
404 Court Square North
Lexington, MS 39095
Ph: (662) 834-2488
Fax: (662) 834-2628
kbriley@barrettlawgroup.com
dbarrett@barrettlawgroup.com
saldridge@barrettlawgroup.com

/s/ *Shannon M. McNulty*
Shannon M. McNulty (admitted *pro hac vice*)

CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle Street, 36th Floor
Chicago, Illinois 60602
(312) 899-9090
(312) 251-1160 Facsimile
SMM@cliffordlaw.com

Gary E. Brewer (TN BPR#: 000942)
BREWER AND TERRY, P.C.
Attorneys at Law
1702 W. Andrew Johnson Hwy.
Morristown, TN 37816-2046
(423) 587-2730

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Shannon M. McNulty, hereby certify that on March 27, 2025, I served the above and foregoing on all counsel of record via the Court's CM/ECF filing system.

/s/ *Shannon M. McNulty*
Shannon M. McNulty