# Exhibit A



# Office of the Attorney General
## Washington, D. C. 20530

September 23, 2020

The Honorable Michael R. Pence
President
United States Senate
Washington, DC 20510

Dear Mr. President:

On behalf of the Administration, I am pleased to present for consideration by Congress a legislative proposal to modernize and clarify the immunity that 47 U.S.C. § 230 provides to online platforms that host and moderate content. Ensuring that the internet is a safe, but also vibrant, open, and competitive environment is vitally important to America. This proposed legislation recalibrates Section 230 immunity to take into account the vast technological changes that have occurred since the Communications Decency Act of 1996 was passed to incentivize online platforms to better address criminal content on their services and to be more transparent and accountable when removing lawful speech.

Section 230 was enacted in the early days of internet commerce to immunize online platforms (which the statute refers to as "interactive computer services") for claims based on third-party content hosted by the platform and for the good-faith removal of harmful content to children. Before Section 230 was enacted, courts held that an online platform that removes certain content from its service could be held liable as a publisher or speaker for all other content. Platforms thus faced a dilemma. Platforms could have tried to moderate third-party content but risk being held liable for any and all content posted by a third party, or choose not to moderate content to avoid liability but risk having the platform overrun with obscene or defamatory content. Section 230 resolved this problem by providing that online platforms were not liable for third-party content posted on their services and were not liable for removing certain categories of harmful content.

The beneficial role Section 230 played in building today's internet, by enabling innovations and new business models, is undisputed. It is equally undisputed, however, that the internet has drastically changed since 1996. Many of today's online platforms are no longer nascent companies but have become titans of industry. Platforms have also changed how they operate. They no longer function as simple forums for posting third-party content, but use sophisticated algorithms to suggest and promote content and connect users. Platforms can use this power for good to promote free speech and the exchange of ideas, or platforms can abuse this power by censoring lawful speech and promoting certain ideas over others.

Against these changed technological and economic backdrops, courts also have interpreted Section 230 immunity broadly, thereby expanding the scope of immunity far beyond speech torts such as defamation. For example, platforms have been allowed to invoke Section 230 to escape liability even when they knew their services were being used for criminal activity. Platforms also have used Section 230 immunity to evade laws and regulations applicable to brick-and-mortar competitors. The proposed legislation accordingly seeks to align the scope of Section 230 immunities with the realities of the modern internet while ensuring that the internet remains a place for free and vibrant discussion.

The statute currently provides two types of immunity. Section 230(c)(1) currently provides that platforms shall not "be treated as the publisher or speaker of any information provided by [third parties]," while Section 230(c)(2) shields certain content moderation decisions "voluntarily taken in good faith." This structure allows platforms to moderate harmful content while not being automatically liable for overlooked content. Unfortunately, the statute has not always functioned in that manner. To address this problem and clarify the intended scope of immunity, the proposed legislation first revises the text of 47 U.S.C. §§ 230(c)(1) and (c)(2) and then provides new exclusions from the immunity and definitions to other parts of the statute. The proposed legislation represents a measured but concrete approach to reforming Section 230 in a number of important respects.

The first category of amendments clarifies the scope of immunity as applied to content moderation decisions to ensure that platforms cannot hide behind the shield of Section 230 to censor lawful speech in bad faith and inconsistent with their own terms of service.

First, the legislation clarifies the interplay between §§ 230(c)(1) and (c)(2), specifically that platforms cannot use § 230(c)(1) as a shield against moderation decisions that fall outside the explicit limitations of § 230(c)(2). The proposed legislation further revises the existing language of § 230(c)(2) to replace vague terms that may be used to shield arbitrary content moderation decisions with more concrete language that gives greater guidance to platforms, users, and courts. Currently, § 230(c)(2)(A) shields "any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable." While courts should construe "otherwise objectionable" in light of the surrounding statutory terms, some courts have read the language so broadly that platforms essentially use it as blank check to take down any content they want. The proposed reform therefore replaces "otherwise objectionable," with more specific language, including "promoting terrorism or violent extremism", "promoting self-harm," and "unlawful."

Section 230(c)(2) is also amended to require platforms to have an "objectively reasonable belief" that the speech they are removing indeed falls within the enumerated categories. In addition, a new statutory definition of "good faith" is provided in new section, § 230(g)(5), to require plain and particular terms of service and explanations for take-down decisions. These reforms will discourage deceptive or pretextual takedowns of lawful content. Just as Section 230 immunity promotes free speech by limiting a heckler's ability to credibly threaten a platform with

liability for failing to remove content, it should not hinder free speech by making platforms completely unaccountable for moderation decisions.

A platform that chooses not to host certain types of content would not be required to do so, but it must act in good faith and abide by its own terms of service and public representations. Platforms that fail to do those things should not enjoy the benefits of Section 230 immunity. The proposal adds a provision § 230(c)(1)(C) to make clear that online platforms can continue to take down content in good faith and consistent with their terms of service without automatically becoming a publisher or speaker of all other content on their service.

The legislative proposal also adds language to the definition of "information content provider" under current § 230(f)(3). Under the existing statute, an online platform that is "responsible, in whole or in part, for the creation or development of information" is not entitled to Section 230 immunity. The proposal clarifies that being responsible "in whole or in part" includes situations in which a platform "solicits, comments upon, funds, or affirmatively and substantively contributes to, modifies, or alters the content of another person or entity." This amendment is consistent with the original purpose of Section 230. While online platforms do not have an obligation to monitor and screen all third-party content, they cannot avoid liability for harms arising from specific material if the platforms actively choose to modify or encourage it.

The second category of amendments is aimed at incentivizing platforms to address the growing amount of illicit content online, while preserving the core of Section 230's immunity for defamation claims. Section 230 immunity is meant to incentivize and protect online Good Samaritans, as evidenced by the original title of § 230(c): "Protection for 'Good Samaritan' blocking and screening of offensive material." As the famous parable recounts, a Good Samaritan is someone who goes out of his or her way to help another in need. It therefore follows that platforms that purposely solicit and facilitate harmful criminal activity—in effect, online Bad Samaritans—should not receive the benefit of this immunity. Accordingly, the proposed legislation adds a new section, § 230(d). This section identifies three specific exclusions from immunity— platforms that (1) purposefully promote, facilitate, or solicit third-party content that would violate federal criminal law; (2) have actual knowledge that specific content it is hosting violates federal law; and (3) fail to remove unlawful content after receiving notice by way of a final court judgment.

These new provisions are narrowly tailored in two important ways. First, they require a heightened *mens rea*—either acting "purposefully" or having actual knowledge. These requirements avoid sweeping in innocent or accidental acts or omissions by online platforms. Second, other than the court-order provision, the exclusions are limited to distribution or facilitation of third-party content that would violate *federal criminal* law. Providing platforms with civil immunity for facilitating such egregious illicit content is inconsistent with the purpose of Section 230 of the Communications Decency Act to encourage platforms to make the internet a safer place for children.

In addition to new § 230(d), the proposal would add two sets of new carve-outs to those currently listed under § 230(e), which defines the statutory immunity's "effect on other

laws." First, carved out from immunity are three specific categories of claims: (1) child exploitation and sexual abuse; (2) terrorism; and (3) cyber-stalking. These are targeted carve-outs to address the over-expansion of Section 230 immunity that has limited the ability of victims of these specific offenses to seek civil redress in causes of action far afield from the statute's core objectives. The proposal also provides an explicit carve-out for claims brought under the federal antitrust laws, which promotes competition and clarifies that Section 230 immunity is unavailable to internet companies when they assert it against claims of anticompetitive conduct.

Finally, the proposed legislation would amend current § 230(e) to expressly confirm that the immunity provided by this statute does not apply to civil enforcement actions brought by the federal government. In the decades since Congress passed Section 230, the widespread availability of internet access, the growth in the number of "interactive computer services," the ubiquity of smartphones, and the advent of social media have all contributed to an exponential increase in online crimes. Although federal criminal enforcement actions have always been outside the scope of Section 230 immunity, online crime is a serious and growing problem, and there is no justification for blocking the federal government from civil enforcement. The proposed provision is narrowly tailored to clarify that the government's civil enforcement capabilities are uninfringed by Section 230 without opening the floodgates to private damages lawsuits.

Thank you for the opportunity to present this proposed legislation.

We are sending an identical response to The Honorable Nancy Pelosi, Speaker of the U.S. House of Representatives.

Sincerely,

William P. Barr
Attorney General

Enclosures