IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL DAVID SILLS and MARY SILLS, <br><br> Plaintiffs, <br><br> v. <br><br> SOUTHERN BAPTIST CONVENTION, et al., <br><br> Defendants. | Case No.: 3:23-cv-00478 <br><br> Judge William L. Campbell, Jr. <br> Magistrate Judge Jeffery S. Frensley |

**JOINT DISCOVERY STATEMENT REGARDING PLAINTIFFS' REQUEST FOR PRODUCTION NO. 19 TO GUIDEPOST SOLUTIONS, LLC**

Pursuant to the Court's Initial Case Management Order (ECF 99) and Local Rule 37.01(b), Plaintiffs Michael David Sills and Mary Sills ("Plaintiffs") submit this Discovery Statement regarding their Motion to Compel the production of Guidepost Solutions, LLC invoices.

**I.     PLAINTIFFS' POSITION:**

    **A.     Introduction**

Plaintiffs filed this action alleging defamation, negligence, conspiracy, and related claims arising from a purported investigation of the sexual abuse allegations concerning David Sills and report written and produced by Guidepost Solutions, LLC ("Guidepost"), commissioned by Defendant Southern Baptist Convention ("SBC"). Plaintiffs seek production of Guidepost's invoices related to its investigation of Plaintiff David Sills, as these documents are highly relevant to multiple core issues in this litigation, including the nature and scope of Guidepost's work, the credibility of their investigative process, the conflict of interest of employees and agents, and Defendants' good faith in making defamatory statements. The Parties met and conferred in person on this issue on February 11, 2025. Despite Plaintiffs repeated and good faith efforts to obtain

1

these invoices, Defendants have withheld them on grounds of privilege, confidentiality, burden, and purported irrelevance, even though no authority justifies withholding billing records that bear directly on the claims and defenses at issue.

  **B.**  **Relevance and Proportionality of Requested Invoices**

Under Federal Rule of Civil Procedure 26(b)(1), discovery must be relevant to any party's claim or defense and proportional to the needs of the case. The Guidepost invoices are relevant and proportional for the following reasons: They reveal the scope, duration, conflicts of interest, disproportionate amount of time spent on David Sills's allegations, and intensity of the investigation underlying the allegedly defamatory report on Plaintiff David Sills. These factors are directly relevant to Plaintiffs' claims of defamation, negligence, and conspiracy, including whether Defendants acted with actual malice or reckless disregard for truth. The invoices assist in assessing whether Guidepost's investigation was conducted with reasonable care or negligence, a key element of Plaintiffs' negligence claim against Guidepost. The documents are crucial to evaluating Defendants' defenses and damages, particularly as Defendants assert they acted in good faith relying on Guidepost's work product. The invoices contain straightforward billing information, including dates, hours worked, and descriptions of services rendered.

Guidepost wholly ignores the relevance of the invoices as they relate to Plaintiffs' conspiracy claim. Plaintiffs allege that Defendants used David Sills as a "scapegoat" to improve the public image of the SBC. *See* Compl. ¶¶ 41, 46. The invoices will show how much time was devoted to "investigating" David Sills as compared to other individuals who were identified in the Report. The information regarding how much time Guidepost spent preparing its Report as to the other individuals identified therein has not otherwise been produced. Such records are not tangential or cumulative but central to understanding Defendants' conspiratorial conduct.

2

Production of these relevant invoices is not burdensome and is proportional to the needs of the case. Despite Guidepost's claim of burden in identifying and producing the invoices, it is likely that less than 20 invoices even exist. The engagement letter between Guidepost and the SBC Task Force requires monthly billing. Guidepost was engaged in October 2021, and the Report was published in May 2022. While there may be some pre- and post-engagement billing records, it is unlikely that they are so voluminous as to be too burdensome to locate or redact.

Similarly, there is no need for the invoices to be redacted. First, the Report was published without any redactions, so the names of the individuals in the Report have already been made public. Second, redaction is unnecessary because the Protective Order protects this information. As the Court is aware, the Parties have continued to comply with the Protective Order's requirements by filing materials marked as Confidential under seal. There is no reason why the invoices would be treated differently than any other previously produced confidential material.

Guidepost's refusal to produce its invoices significantly prejudices Plaintiffs by depriving them of contemporaneous, objective evidence that bears directly on the core issues of this case. The invoices would show the scope, depth, and focus of the investigation underlying the allegedly defamatory statements, and thus are critical to Plaintiffs' ability to prove that Guidepost acted with actual malice, gross negligence, or in furtherance of a conspiracy. The entries would identify who performed what tasks, when, and how much time was spent — information that is directly relevant to whether Guidepost acted as a neutral investigator or instead promoted a predetermined narrative at the bidding of other Defendants. Without this information, Plaintiffs cannot adequately test Guidepost's claimed impartiality or the truthfulness of its report, nor can they fully prepare for depositions of Guidepost witnesses. Plaintiffs are also prejudiced in their expert discovery, as the absence of invoice data inhibits expert analysis of Guidepost's investigatory methodology,

timeline, and potential bias. Additionally, Guidepost's invoices may contain evidence relevant to the financial incentives or coordination among Defendants, which goes directly to Plaintiffs' claims of motive and conspiracy. Guidepost's continued withholding of this evidence hampers Plaintiffs' ability to challenge those defenses and impairs their right to a fair and complete record.

## II. DEFENDANT'S POSITION

Plaintiffs' Motion to Compel the production of Guidepost's invoices (ECF 242-243) seeks documents that are not relevant to their claims, and the burden of reviewing and producing such documents outweighs any marginal benefit of their disclosure. This is particularly true for the information Plaintiffs seek here, since Guidepost has already produced thousands of pages of documents in this case, many of which provide Plaintiffs precisely the information they claim they need from the invoices – who worked on the Sills portion of the investigation which led to the issuance of the Report. Guidepost also has provided Plaintiffs with the total amount it billed the SBC for the services it provided to conduct its investigation and issue the Report. Moreover, Guidepost has agreed to provide Guidepost's annual revenues for the years 2020-2022 as part of its Fed. R. Civ. P. 30(b)(6) deposition testimony, so Plaintiffs can compare the total revenues to the amount billed on this matter. The above provides Plaintiffs with more than enough information to make whatever arguments they wish regarding Guidepost's purported motivation or bias in preparing the 288-page Report (there was no bias)[1]. And, contrary to Plaintiffs' argument, they have more than enough information to properly depose Guidepost's 30(b)(6) representatives. Indeed, Plaintiffs have set the 30(b)(6) deposition twice, once in February 2025, which they canceled not because of documentation, but because of Plaintiffs' attorneys' schedules, and once

---

[1] Plaintiff states that the "Report was published without any redactions, so the names of the individuals in the Report have already been made public." This is a red herring. The Report "scrubbed" all confidential names by listing them as "witnesses" as opposed to having redactions throughout the Report. Guidepost does not dispute that individuals who were named in the Report are public.

in April 2025, which the parties agreed to postpone after Plaintiffs raised a document "discrepancy" issue unrelated to the invoices. Until now, the invoices have never been a barrier to Guidepost's deposition.

In both the February 2025 meet and confer, and in Guidepost's March 10, 2025 letter to Plaintiffs' counsel, Guidepost explained why the invoices submitted to the SBC are not relevant in this case:

1. Guidepost has produced approximately 18,942 thousand pages to Plaintiffs as part of discovery in this case, identifying (a) the individuals who performed work on the Sills portion of the Report, (b) the nature of the work performed, and (c) the level of detail Guidepost provided in investigating the Executive Committee's response to allegations of sexual abuse as it related to Jennifer Lyell's allegations against David Sills;

2. Guidepost's verified interrogatory responses identified the dates, times, and individuals that spoke with Guidepost regarding Plaintiffs' portion of the Report. Guidepost also identified which of its personnel spoke with each of those identified individuals;

3. Guidepost provided to Plaintiffs the total amount Guidepost billed the SBC for the 8-month long investigation which led to the 288-page Report; and

4. Guidepost has also agreed to provide (through its Corporation Representative's deposition testimony) Guidepost's annual revenues for the years 2020-2022.

In sum, Guidepost provided the "who", the "what", and the "how much" as set forth above. While Plaintiffs' claim that Guidepost was somehow financially motivated to make David Sills the focus of this Report is entirely meritless, the above information and materials provide Plaintiffs with more than enough discovery to make that (specious) argument.

5

Case 3:23-cv-00478   Document 285   Filed 06/10/25   Page 5 of 8 PageID #: 5585

Plaintiffs claim that they need the invoices to assist with their conspiracy claim against Guidepost. This is demonstrably untrue, since the Court **dismissed** the conspiracy claim against Guidepost at the motion to dismiss stage. (ECF 134 at 29-30, ECF 135.) Plaintiffs also claim that they need the invoices because they may contain evidence "relative to the financial incentives or coordination among Defendants[.]" Since the inception of their lawsuit, Plaintiffs have had in their possession Guidepost's Engagement Letter with the SBC. The letter details the process, scope, timing, responsibility, and financial considerations agreed upon by Guidepost and the SBC, as well as the interplay between Guidepost and the SBC, the Task Force, the EC, and the Committee on Cooperation throughout the investigation process. In other words, the Engagement Letter sets forth precisely the nature of "financial incentives and coordination with Defendants" for purposes of the investigation and the Report. Invoices are irrelevant to any such concern.

Finally, for the first time in this Joint Discovery Statement, Plaintiffs assert that they need Guidepost's invoices to establish "conflicts of interest" (p. 2 above) and that failure to produce the invoices somehow impairs Plaintiffs' expert analysis (pp. 3-4 above). These arguments are new and were not raised in Plaintiffs' Request for Discovery Conference (ECF 219), Motion to Compel (ECF 242, 243), or Omnibus Motion (ECF 247) nor were these issues raised in their meet and confer with Guidepost's counsel. In fact, Plaintiffs' pending "Emergency Motion" seeking an extension of their expert disclosure deadline does not address Guidepost or the invoices that purportedly are so critical to Plaintiffs' case. (ECF 262.) The Court should not consider these facts in its evaluation of Plaintiffs' request.

### III. MEET AND CONFER CERTIFICATION

The Parties certify that an in-person meet and confer on the issue presented in this Joint Discovery Statement was held on February 11, 2025, in Nashville, TN. The Parties engaged in good faith efforts to resolve this dispute, but to date have been unable to do so.

Respectfully submitted this the 10th day of June 2025.

By: /s/ *Katherine B. Riley*
Katherine Barrett Riley (TN BPR#021155)
John W. ("Don") Barrett (admitted *pro hac vice*)
Sterling Aldridge (admitted *pro hac vice*)
BARRETT LAW GROUP, P.A.
P.O. Box 927
404 Court Square North
Lexington, MS 39095
Ph: (662) 834-2488
Fax: (662) 834-2628
kbriley@barrettlawgroup.com
dbarrett@barrettlawgroup.com
saldridge@barrettlawgroup.com

Shannon M. McNulty (admitted *pro hac vice*)
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle Street, 36th Floor
Chicago, Illinois 60602
(312) 899-9090
(312) 251-1160 Facsimile
SMM@cliffordlaw.com

*Counsel for Plaintiffs*

By: */s/ Katharine R. Klein*
John R. Jacobson, Esq. (BPR # 014365)
Katharine R. Klein, Esq. (BPR # 019336)
Riley & Jacobson, PLC
1906 West End Avenue Nashville, TN 37203
Telephone: (615) 320-3700
jjacobson@rjfirm.com
kklein@rjfirm.com

-and-

MINTZ & GOLD LLP
Steven G. Mintz (admitted pro hac vice)
Terence W. McCormick (admitted pro hac vice)
Scott Klein (admitted pro hac vice)
Alex Otchy (admitted pro hac vice)
600 Third Avenue 25th Floor New York, NY 10016
Telephone: (212) 696-4848
mintz@mintzandgold.com
mccormick@mintzandgold.com
klein@mintzandgold.com
otchy@mintzandgold.com

*Counsel for Defendant Guidepost Solutions LLC*

## **CERTIFICATE OF SERVICE**

I, Katherine B. Riley, hereby certify that on June 10, 2025, I served the above and foregoing on all counsel of record via the Court's CM/ECF filing system.

>/s/ *Katherine B. Riley*
>Katherine B. Riley

8

Case 3:23-cv-00478    Document 285    Filed 06/10/25    Page 8 of 8 PageID #: 5588