UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL DAVID SILLS and MARY SILLS, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | No. 3:23-cv-00478 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| SOUTHERN BAPTIST CONVENTION, *et al*. ) | MAGISTRATE JUDGE FRENSLEY |
| ) | |
| *Defendants*. ) | JURY DEMAND |
| ) | |
| ) | |
| ) | |

**JOINT DISCOVERY DISPUTE STATEMENT**

Pursuant to Section G of the Case Management Order [Doc. 170 at p.4] and the Court's Order of May 23, 2025 [Doc. 263], the Executive Committee of the Southern Baptist Convention ("ECSBC") and Plaintiffs submit this Joint Discovery Dispute Statement regarding the ECSBC's objections to certain topics of Plaintiffs' Amended 30(b)(6) Notice of Deposition of the ECSBC (the "Amended Notice"). The parties certify that counsel conducted multiple meet and confers on this issue, including an in-person meet and confer. The parties have made a good faith effort to resolve the dispute between them but have not been able to reach an agreement.

**I.    (A) THE ECSBC'S STATEMENT OF THE DISPUTE.**

Plaintiffs' original 30(b) Notice of Deposition of the ECSBC contained 51 separate deposition topics. The ECSBC thereafter provided its responses and objections to each of the 51 topics. Through a series of remote and in-person meet and confer conferences, the EC agreed it would produce a designee on 33 of the 51 topics. On the afternoon of February 5, 2025, Plaintiffs provided the Amended Notice, which contains 33 topics. While some topics from the original

notice were removed, the reduction in topics was in large part due to reorganizing and combining previously separate topics. The Amended Notice also contained four wholly, new topics.

In response to the Amended Notice, the ECSBC has again negotiated and made concessions and agreed to produce a designee with respect to 23 of the 33 topics. The ECSBC has reserved its objections for those topics that are clearly and facially objectionable, and provided case law to support its objections. Those are Topic Nos. 5, 7, 9, 10, 18, 20, 25, 26, 28, and 33. The ECSBC's objections and their basis are set forth below.

**(B) PLAINTIFF'S STATEMENT OF THE DISPUTE.**

Plaintiffs agree that the original notice of deposition served on September 16, 2024 contained 51 topics. On November 4, 2024, ECSBC served objections. Each of the 51 topics had an objection of some sort; no topic was agreeable to ECSBC. [Exhibit 1, Dkt. No. 217-2]. A series of meet-and-confers followed the objections. Plaintiffs provided written justification for each of the topics and three cases in support of the topics noticed.[1] Some topics were agreeable, but many remained in dispute. On November 14, 2025, Plaintiffs' counsel proposed an in-person meet-and-confer, and further proposed transcription of that conference to advance the issues and alleviate any further misstatements.

---

[1] *Coryell v. Phipps*, 317 U.S. 406, 410–11, 63 S. Ct. 291, 293, 87 L. Ed. 363 (1943) ("A corporation necessarily acts through human beings. The privity of some of those persons must be the privity of the corporation else it could always limit its liability. Hence the search in those cases to see where in the managerial hierarchy the fault lay.);
*United States v. One Parcel of Land Located at 7326 Highway 45 N., Three Lakes, Oneida Cnty., Wis.*, 965 F.2d 311, 316 (7th Cir. 1992) ("The task then becomes to ascertain the extent of Modernaire's actual knowledge, and therein lies the rub. As a legal fiction, a corporation cannot "know" like an individual "knows." We treat corporations as separate legal entities and enable them to own property and enter contracts by relying on agency precepts. A corporation and its agents relate to one another like a principal to its agents. A corporation acts through its agents. Similarly, a corporation "knows" through its agents. W. Fletcher, 3 *Corporations* § 787 (1986));
*King v. Pratt & Whitney, a Div. of United Techs. Corp.*, 161 F.R.D. 475, 476 (S.D. Fla. 1995), aff'd sub nom. *King v. Pratt & Whitney*, 213 F.3d 646 (11th Cir. 2000), and aff'd sub nom. *King v. Pratt & Whitney*, 213 F.3d 647 (11th Cir. 2000) (Rule 30(b)(6) does not limit what can be asked at deposition. Since there is no specific limitation of what can be asked at deposition, the general deposition standards govern. The reason for adopting Rule 30(b)(6) was not to provide greater notice or protections to corporate deponents, but rather to have the right person present at deposition. The Rule is not one of limitation but rather of specification within the broad parameters of the discovery rules. This is made clear by both the Advisory Committee's statement that 30(b)(6) "should be viewed as an added facility for discovery ..." and the Rule's final sentence: "This subdivision (b)(6) does not preclude taking a deposition by any other procedure authorized in these rules." Fed.R.Civ.P. 30(b)(6) advisory committee's note.).

Unable to close the gap any further on the September 16, 2024 Notice, Plaintiffs used the notes and transcript from the prior meet-and-confers, materials gleaned from other depositions that were proceeding at the time, along with the topics for which there had been some agreement, and on February 4, 2025, issued an Amended Notice of 30(b)(6) Deposition. [Exhibit 2, Dkt. No. 217-3]. The Amended Notice consolidated several topics and added specificity to other topics that had been portrayed as difficult for the ECSBC to understand or prepare a witness. Of the 33 topics, the parties reached agreement on 23 topics, or approximately two-thirds of the topics noticed. Ten topics remained in dispute: Topic Nos. 5, 7, 9, 10, 18, 20, 25, 26, 28, and 33.

A.      **(1) The Amended Notice's Definition of the ECSBC Is Facially Overbroad.**

The Amended Notice defined the ECSBC to include its "affiliates, members, directors, officers, agents, employees, and/or independent contractors, consultants, and all persons (including, without limitation, its attorneys, accountants, and advisors) acting or purporting to act on its behalf." Such definitions nearly identical have been found to be "facially overbroad" and "unreasonably expand[ing] the breadth" of a request.[2] This is particularly so in a case such as there where here are over 80 individual trustees of the Executive Committee. These individuals do not have SBC-related email addresses or devices.

**(2) Plaintiffs state that the Amended Notice Comports with Rule 30(b)(6).** This is a discovery deposition, and based on the ECSBC's own definition of itself, The unreported case from Connecticut (*Kirby*, 2021 WL 4520157) on which ECSBC relies relates to a post-judgment discovery request concerning who was responsible for paying a judgment entered. Plaintiffs explained in both the meet-and-confer and subsequent written correspondence that with respect to the definition, Plaintiffs proposed that a witness for topic #1 (which addressed the organizational

---

[2]      *Bruce Kirby, Inc. v. LaserPerformance (Europe) Limited*, No. 3:13-cv-00297(JAM), 2021 WL 4520157, at *3-4 (D. Conn. Oct. 4, 2021).

3

structure of ECSBC) be produced first, so that Plaintiffs could better address any concerns. That was rejected.

ECSBC has Officers, Trustees (who may be "volunteers"), day-to-day administrative employees, and any number of committees that may be formed with any number of "messengers." Sometimes a person who is an attorney by trade has spoken on behalf of the ECSBC. Without this definition, the pool of witnesses who may ultimately be identified and/or prepared to submit 30(b)(6) testimony would be artificially narrowed.

### B. (1) Topic Nos. 7, 9, 18, 20, and 28 Are Overly Broad, Unduly Burdensome, and Disproportionate.

A common theme throughout the Amended Notice are topics seeking a 30(b)(6) designee to testify as to "any" or "all" communications. At issue topics falling within this category include Topic Nos. 7, 9, 18, 20, and 28.[3] Courts, including the Middle District of Tennesee, have recognized that Rule 30(b)(6) topics seeking testimony on "any communications" or "all communications" are overly broad.[4] Additionally, these topics are unduly burdensome disproportionate in that they are effectively a request for production of documents. As has been

---

[3] As discussed below, there are additional grounds upon which these topics are objectionable, such as relevance and invasion of the attorney-client privilege.

[4] *See, e.g.*, *Marti v. Schreiber/Cohen, LLC*, No. 4:18-cv-40164-TSH, 2020 WL 3412748, at *3 (D. Mass. Mar. 17, 2020) ("As several courts have held, blanket requests for testimony regarding unidentified and broadly classified 'communications' do not meet the Rule 30(b)(6) reasonable particularity standard . . . Thus, these topics which relate to 'all communications' are overly broad."); *Phoenix Life Ins. Co. v. Raider-Dennis Agency, Inc.*, No. 07-cv-15324, 2010 WL 4901181, at *3 (E.D. Mich. Nov. 24, 2010) (denying plaintiff's request for deposition testimony regarding "all communication" relating to an issue in the case because the "burden of this far-reaching topic (all communications) far outweighs its likely benefit."); *Richardson v. Rock City Mechanical Co., LLC*, No. 3-09-0092, 2010 WL 711830, at *10 (M.D. Tenn. Feb. 24, 2010) (topic of "[t]he communications relating to or leading up to the layoff at Morgan County Correctional Facility in December 2007" was overbroad and directing the plaintiff to revise the wording "to a more narrowed request designed to focus on the information he really seeks in contrast to all communications"); *Krieger v. Fadely*, 199 F.R.D. 10, 13 (D.D.C. 2001) (holding that a request for "all communications" was "fatally overbroad").

noted in recent filings, the document discovery in this case has been voluminous. It is unreasonable and unduly burdensome to seek a Rule 30(b)(6) to testify as to the contents of all of these communications already produced in discovery.[5]

In addition to the above, the problematic nature of these topics is only further compounded in that Topic Nos. 7 and 9 seek testimony on all of the communications relating not only to the portions of the Guidepost Report pertaining to Plaintiffs or Jennifer Lyell, but all of the communications "concerning the content of the Report" and "relating to the Report." Guidepost's Report is nearly 300 pages long, the vast majority of which does not pertain and has no relevance to Plaintiffs and Jennifer Lyell and the claims in this matter and the entire Report is, therefore, outside the scope of discovery. *See* Fed. R. Civ. P. 26(b)(1) (2025).

Two of these topics also intrude upon the attorney-client privilege. Topic No. 18 seeks testimony related to communications between members of the ECSBC and Gene Besen and Scarlett Nokes. Gene Besen and Scarlett Nokes were not EC members or staff, but outside counsel for the EC, a fact of which Plaintiffs are very aware. Similarly, Topic No. 28 seeks testimony on

---

[5] *See, e.g.*, *Dongguk University v. Yale University*, 270 F.R.D. 70, 74 (D. Conn. 2010) ("Courts have found Rule 30(b)(6) notices to be unduly burdensome which merely request the duplication of other information already obtained through other discovery methods . . . Where the notice seeks information which could more easily be obtained from another source, the court may refuse to allow that topic to be the subject of a 30(b)(6) deposition."). In *Dongguk*, the topic sought testimony concerning "[a]ny communications between or among Dongguk and the media concerning Jeong Ah Shin, Yang Kyun Byeon or Yale, including but not limited to any Dongguk press conferences, press releases, or public statements concerning Jeong Ah Shing, Yang Kyun Byeon or Yale between 2005 and the present." The court found this topic to be unreasonable because the information had already been produced in response to requests for production. *See id.* at 75 ("Dongguk has produced all communications between or among Dongguk and the media concerning Shin, Yang Kyun Byeon or Yale, and all press releases and articles concerning those subjects. Thus, information sought in Topic 7 is unreasonably cumulative or duplicative and has already been obtained from some other source that is more convenient and less burdensome."). The ECSBC would further note that it has agreed to stipulate to the authenticity of any documents that it produced during the course of discovery. *See* 1/16/25 Depo. Tr. J. Austin 163:20-165:19. Therefore, testimony on topics that are akin to requests for production, such as "all communications," is only further unnecessary and objectionable.

"[a]ll communications with Executive Committee outside counsel regarding the allegations by Defendant Jennifer Lyell against Plaintiffs." This topic, on its face, clearly seeks to invade the attorney-client relationship.

(2) **Plaintiffs state that Topics 7, 9, 18, 20, and 28 Are Relevant, Not Privileged and Properly Discoverable**.

**Topic No. 7:** EC argues this topic covers 'all communications' and is thus burdensome. In truth, Plaintiffs identified specific statements in the Report that prompted widespread public responses. The topic seeks testimony on complaints and feedback received—relevant to causation, knowledge, and foreseeability. Naming specific recipients and call-outs, Plaintiffs substantially narrowed the request.

**Topic No. 9:** This seeks communications with Task Force and Guidepost actors regarding Lyell and Sills. These communications shaped the narrative included in the Report. ECSBC's objections fail to acknowledge that these actors functioned at ECSBC's direction or with its endorsement. Plaintiffs are entitled to institutional testimony about those interactions.

**Topic No. 18:** ECSBC asserts attorney-client privilege, but the communications in question were disclosed publicly and discussed by ECSBC and Guidepost in their report and in public media publications. Moreover, the individuals identified were acting in public, non-legal capacities. Further, Besen and Nokes have email communications with Jennifer Lyell, who was not their client, many of which were made after the Guidepost Report was published, and some of which address coordination with respect to the accusations alleged. Plaintiffs can supply these documents for *in camera* inspection. No privilege exists, but if one is encountered during the deposition (which is not likely), it can be made specific to the pending question and addressed later by the Court. It should not prevent this topic from being addressed in a 30(b)(6) deposition.

6

**Topic No. 20**: Similar to Topic 18, this seeks external-facing communications with religious institutions and publishers after the Report's release. These were often authored or sent by ECSBC staff and spokespeople, and their drafting and transmission formed part of the smear campaign to spread the allegations. No privilege exists, however, public dissemination nullifies any privilege claim.

**Topic No. 28:** ECSBC objects based on privilege, but this topic seeks only those communications that were provided to Guidepost or discussed in its Report. Guidepost and Executive Committee do not have a relationship that invokes privilege. In fact, the relationship was described by ECSBC as "independent." ECSBC's answers to the complaint plead that very fact. (See Dkt. No. 218-2; ¶¶ 49, 50)[6]. By authorizing disclosure to a third-party investigator and adopting its findings, EC waived any privilege.

C.     **(1) Topic No. 5: "The Executive Committee's prior adversarial proceedings with/against Jennifer Lyell in all respects . . . ."**

Topic No. 5 is facially vague, overbroad and does not meet the "reasonable particularity" requirement of Rule 30(b)(6). Topic No. 5 seeks testimony regarding the ECSBC's prior adversarial proceedings with Jennifer Lyell "in all respects." As drafted, this would require the ECSBC to produce a designee knowing any and all details, communications, etc. concerning the entirety of the ECSBC's dealings with Jennifer Lyell. It is akin to asking for a designee to testify about a civil action in all respects. While this is alone sufficient to render this topic objectionable, Topic No. 5 continues on for a quarter page with additional areas. This includes "outreach to Jennifer Lyell . . . with respect to articles, social media posts, payments for release of claims she alleged" This is simply another way of seeking all communications with Ms. Lyell.

---

[6] In paragraphs 49 and 50 of its answer to the complaint, the ECSBC pleads in pertinent part: "The EC admits that, in accordance with the mandate given by the SBC's Messengers, the SBC, through and under the leadership of the Sexual Abuse Task Force ("Task Force"), retained Guidepost to conduct an independent investigation into the EC . . ." and " . . . retained Guidepost in October of 2021 to conduct an independent investigation into the EC. . ."

**(2) With regard to Topic No. 5, Plaintiffs state:** ECSBC contends this topic is vague and overly broad, but it is precisely delineated: Plaintiffs seek testimony on EC's interactions with Jennifer Lyell, its decision-making processes in handling her allegations, and how that factored into public and media statements. This includes outreach efforts, releases, and communications with named individuals. It is not a fishing expedition but a request for targeted institutional knowledge. Emails have been produced to substantiate a need to explore this topic, and it is neither vague nor overly broad.

D. (1) **Topic No. 10: "Elizabeth Dixon's file, notes . . . ."**

Topic No. 10 seeks information on the employment of Elizabeth Dixon and her work. Plaintiffs took the deposition of Ms. Dixon on February 11, 2025 and this consisted of multiple hours of testimony. As Ms. Dixon confirmed, she was not an ECSBC employee after 2002, but instead performed work on specific projects on a contract basis. Ms. Dixon was asked questions on the information sought in Topic No. 10 during her deposition and a deposition of an ECSBC designee would be unnecessarily cumulative and burdensome.

**(2) With regard to Topic No. 10, Plaintiffs state:** EC claims that Dixon's prior deposition suffices. It does not. Dixon was not speaking for the ECSBC and her testimony was not binding to the ECSBC. Plaintiffs seek EC's knowledge of Ms. Dixon's work product, her inclusion of Sills' name and image in Report exhibits, and EC's post-publication retention or review of that content. This cannot be evaded by pointing to individual testimony of a witness who does not make binding admissions for ECSBC. Moreover, at no time during the deposition of Dixon did the ECSBC designate Dixon as a 30(b)(6) witness. Doing so mid-deposition would have violated Rule 30(b)(6), however, Plaintiffs would be further prejudiced by a belated and improper attempt to unilaterally

8

designate a witness, post-deposition, as a 30(b)(6) witness without ever telling Plaintiffs' counsel. That is simply impermissible under the law.

E. **(1) Topic No. 25: "The Executive Committee's discovery responses."**

Topic No. 25 is overly broad and fails to meet the "reasonable particularity" requirement of Rule 30(b)(6). It is well recognized that 30(b)(6) topics such as a party's "discovery responses" do not meet the rule's requirements.[7] This is particularly so in a case such as this where all parties have acknowledged the particularly voluminous nature of the written and document discovery. It would require a 30(b)(6) designee to review and have detailed knowledge of the entirety of the discovery materials in this case. Accordingly, the ECSBC should not be required to produce a designee as to this topic.

**(2) With regard to Topic No. 25, Plaintiffs state:** Plaintiffs seek to understand the basis and authorship of ECSBC's discovery responses, many of which were submitted by counsel without any corporate attestation and signed only by counsel, or an attestation was belatedly transmitted by Jonathon Howe, who ECSBC also says should not be caused to testify. This topic is essential for understanding whether responses accurately reflect EC's knowledge and beliefs. Otherwise, Plaintiffs risk using the interrogatory answers for impeachment or cross-examination at trial, and having the ECSBC witness say, "I don't know; I did not make the answers."

---

[7] *See, e.g.*, *Acosta v. Med. Staffing of Am., LLC*, No. 18-226, 2019 WL 911268, at *1 (E.D. Va. Feb. 20, 2019) (finding overly broad and not reasonably particular Rule 30(b)96) deposition topic on "[t]he subjects addressed in Plaintiffs Interrogatories, Requests for Admissions and Requests for Production of Documents"); *Green v. Platinum Restaurants Mid-America, LLC*, NO. 3:14-CV-439-GNS, 2017 WL 11682937, at *22 (W.D. Ky. Oct. 24, 2017) ("A request for a corporate representative to testify about all prior discovery, produced and not produced, is the very essence of an overbroad request and is not reasonably particular in the Court's view."); *Catt v. Affirmative Ins. Co.*, No. 8-CV-243-JVB-PRC, 2009 WL 1228605, *7 (N.D. Ind. April 30, 2009) (granting motion for protective order and finding noticed 30(b)(6) topic did not satisfy the reasonable particularity requirement where noticed 30(b)(6) topic was: "The answers made by defendant to the plaintiffs' interrogatories and the responses made by defendant to plaintiffs' request for production").

**F.     (1) Topic No. 26: "The Ministry Check initiative, including the definition and standards for credibly accused and the engagement of Guidepost for the initiative.**

Topic No. 26 is not relevant to the claims or defenses of any party and, therefore, outside the scope of discovery. *See* Fed. R. Civ. P. 26(b)(1). The Ministry Check initiative has no relationship to or bearing to Plaintiffs' claims herein. The Ministry Check website initiative was proposed after the allegedly defamatory statements at issue in this litigation were made and that initiative was placed on hold and has never come into existence.

**(2) With regard to Topic No. 26, Plaintiffs state:** The Ministry Check initiative speaks directly to the ECSBC's standards and mechanisms for classifying individuals as 'credibly accused'—a key issue given the defamatory impact of those classifications. ECSBC's assertion that the initiative never launched does not diminish the relevance of its design and intent. It is highly relevant to the case at bar.

**G.     (1) Topic No. 33: "The role of Jonathan Howe for the years 2015 through the present, including . . . "**

Topic No. 33 is facially unreasonable and unduly burdensome. Topic No. 33 consists of nearly a page of single-spaced text that seeks virtually all information about any job functions that Jonathan Howe performed for a ten-year period. There can be no doubt where these "topics" came from. A comparison of Topic No. 33 to Mr. Howe's personal LinkedIn page reveals that Plaintiffs have simply cut and pasted from that personal profile:



While taking this tactic is unreasonable and unduly burdensome even for Mr. Howe's time with the ECSBC, it should be noted that Plaintiffs did not even distinguish the information on Mr. Howe's LinkedIn page that he associated with other employers. Below is the information on Mr. Howe's LinkedIn for his employment at LifeWay Christian Resources from November 2011 through August 2019:



Plaintiffs also simply cut and paste these bullet points into Topic No. 33.

Topic No. 33 amounts to nothing more than asking the ECSBC to prepare a corporate designee to testify about anything and everything Jonathan Howe, an employee, personally did on

11

any job he held for a decade. This is facially unreasonable and if Plaintiffs desire this level of granular detail on an individual, the proper course of action would be to take Mr. Howe's personal deposition.

**(2) With regard to Topic No. 33, Plaintiffs state:** ECSBC's claim that Plaintiffs copied from Jonathan Howe's LinkedIn page is a red herring. Plaintiffs did so – admittedly and intentionally-- to identify specific job functions over a 10-year period relevant to public communications. Mr. Howe has a recurring role in the center of coordination of communications amongst the defendants in this case; in one instance criticizing, in another instance facilitating, over the course of many years. ECSBC continues to rely on Howe's role and statements, but resists testifying as to his actions as an employee. If the ECSBC will not designate on this topic, then Howe himself must be produced.

Respectfully submitted,

*/s/ Brigid M. Carpenter*
Thomas J. Hurney, Jr. *pro hac vice*
Gretchen M. Callas, *pro hac vice*
Jonathan Anderson, *pro hac vice*
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
Post Office Box 553
Charleston, West Virginia 25322
Telephone: 304-340-1000
Fax: 304-340-1150
thurney@jacksonkelly.com
gcallas@jacksonkelly.com

and

Brigid M. Carpenter (BPR #018134)
Ryan P. Loofbourrow (BPR #033414)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37203
bcarpenter@bakerdonelson.com
rloofbourrow@bakerdonelson.com
Telephone: (615) 726-7341
Fax: (615) 744-7341

***Attorneys for Executive Committee of the Southern Baptist Convention and Rolland Slade***

*s/ Katherine Barrett Riley by BMC by permission*
John W. Barrett (Admitted *Pro Hac Vice*)
Katherine Barrett Riley (BPR #021155)
Barrett Law Group. P.A.
P.O. Box 927
404 Court Square
Lexington, Mississippi 39095
dbarrett@barrettlawgroup.com
kbriley@barrettlawgroup.com

Shannon M. McNulty
(Admitted *Pro Hac Vice)*
Clifford Law Offices, P.C.
120 N. LaSalle Street, Suite 3100
Chicago, Illinois 60602
smm@cliffordlaw.com

Gary E. Brewer (BPR #000942)
Brewer & Terry, P.C.
1702 W. Andrew Johnson HWY
Morristown, Tennessee 37816-2046
robin@brewerandterry.com

***Attorneys for Plaintiffs***