IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **MICHAEL DAVID SILLS and MARY SILLS,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:23-00478 |
| ) | Judge Campbell/Frensley |
| **SOUTHERN BAPTIST CONVENTION, et al.,** ) | |
| ) | |
| Defendants. ) | |

## ORDER

### I. INTRODUCTION

Plaintiffs Michael David Sills and Mary Sills brought this lawsuit against the Southern Baptist Convention ("SBC"), the Executive Committee of the Southern Baptist Convention ("ECSBC"), several other corporations and multiple individual Defendants, including Rolland Slade, Ed Litton, Bart Barber, and Willie McLaurin, alleging "defamation, conspiracy, intentional infliction of emotional distress, and negligence concerning untrue claims of sexual abuse declared by Defendant Jennifer Lyell, and, thereafter repeated and published by remaining Defendants, as well as untrue claims that Mrs. Sills aided, abetted, facilitated, or otherwise enabled the said sexual abuse." Docket No. 1 (Complaint), p. 3. Defendants have denied the substantive allegations and asserted affirmative defenses. Docket Nos. 152-159, 161.

This matter is now before the Court upon a Joint Motion seeking leave to amend their answers filed by SBC, ECSBC, Mr. Slade, Mr. Litton, Mr. Barber, and Mr. McLaurin

(collectively, "Movants"). Docket No. 218.[1] Movants have also filed supporting documents. Docket Nos. 218-1 through 218-7. Mr. and Mrs. Sills (collectively, "Plaintiffs") have filed a Response in Opposition and supporting documents. Docket Nos. 227, 227-1 through 227-6; Docket Nos. 228-1, 229, 229-1 through 229-5.[2] Movants have filed a Reply. Docket No. 233. For the reasons set forth below, Movants' Motion (Docket No. 218) is GRANTED.

## II. LAW AND ANALYSIS

### A. Motions to Amend Under Rules 15 and 16

There are two potential standards to consider when determining whether to grant a motion to amend. Rule 16 requires the judge to issue a scheduling order and provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The purpose of this requirement is "to ensure that at some point both the parties and the pleadings will be fixed." *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003), *quoting* Fed. R. Civ. P. 16, 1983 advisory committee's notes (internal quotation marks omitted). In contrast, Rule 15 contains a liberal standard instructing that courts should freely give leave to amend when justice so requires. Fed. R. Civ. P. 15(a)(2). The decision of which standard to apply depends on the timing of the motion. "Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary*, 349 F.3d at 909.

The Court set November 30, 2023, as the deadline for filing any motions to amend. Docket No. 99, p. 5. Movants filed their Motion on March 17, 2025, which is outside the time

---

[1] This document also comprises Movants' Supporting Memorandum.
[2] Some of these documents are filed both under seal and in redacted form in the public record.

allowed for such motions.  Docket No. 218.  Therefore, Movants must first meet the "good cause" requirement of Rule 16 before the Court can assess the merits of the Motion under Rule 15.  Fed. R. Civ. P. 16(b)(4).

The "good cause" requirement is "a threshold that requires late-moving litigants to show that 'despite their diligence they could not meet the original deadline.'" *Shane v. Bunzl Dist. USA, Inc.*, 275 F. App'x 535, 536 (6th Cir. 2008), *quoting Leary*, 349 F.3d at 907.  In determining whether good cause exists, the "overarching inquiry" is whether the moving party was diligent in attempting to meet the Court's deadlines.  *Marie v. Am. Red. Cross*, 771 F.3d 344, 366 (6th Cir. 2014), *quoting Bentkowski v. Scene Magazine*, 637 F.3d 689, 696 (6th Cir. 2011).  "A plaintiff does not establish 'good cause' to modify a case schedule to extend the deadline to amend the pleadings where she was aware of the facts underlying the proposed amendment to her pleading but failed, without explanation, to move to amend the complaint before the deadline." *Ross v. Am. Red Cross*, 567 F. App'x 296, 306 (6th Cir. 2014).

Movants contend that good cause exists to modify the scheduling order because "[t]he Complaint was largely devoid of any allegations with respect to the basis for Mary Sills' claims" and "[i]t was not until Mrs. Sills was deposed [in October 2024] that defendants were able to learn which statements Mrs. Sills contended were directed to her and which formed the basis for her independent causes of action."  Docket No. 218, p. 2.  Movants argue that while "[t]he Complaint makes no mention of the retweet by Bart Barber," "[b]ecause Mary Sills has now identified Mr. Barber's retweet on X [of a post made by Eric Geiger] as the basis for her claims, this brings into play the defense of immunity/preemption under Section 230 of the Communications Decency Act ("CDA").  *Id.*  Movants seek leave to amend their Answers to assert those defenses.  *Id.* at 2, 4. Movants maintain that the proposed amendment would cause no prejudice to Plaintiffs because

3

"[t]he amendment is for the sole purpose of adding a purely legal defense and will not require any additional discovery." *Id.* at 4.

Plaintiffs respond that "the information supporting the proposed amendment to their answers was available and known to each of these Defendants even before the lawsuit was filed" because "[t]he tweet was first made in early July 2022" and "[t]here was even media coverage about the very tweet that Defendants now claim they learned about in Mary Sills' deposition." Docket No. 229, p. 3. Plaintiffs argue that Mr. Barber's testimony "illustrated [his] keen awareness of his tweeting and social media presence, and he admitted that the tweet he made at the expense of Mary Sills was, indeed, his." *Id.* Plaintiffs contend that "these SBC and Executive Committee defendants had social media teams and were mindful of the 'chatter' on this topic." *Id.*

Additionally, Plaintiffs argue that "even if the Defendants deny knowing about the tweet (which contradicts the Record), they surely knew of the tweet as of October 4th [the date of Mrs. Sills' deposition], and again on October 30th at the Geiger deposition," yet "[a]t no point over nearly six months was any attempt made to seek amendment." *Id.* at 4.

Plaintiffs also assert that they would be "highly and irreparably prejudiced" by the proposed amendment because "[w]ith barely 21 days left in discovery, the Plaintiffs would be left without any ability to adjust their litigation strategy." *Id.*

Movants reply that while "[a]s a general rule, in pleading a defamation claim, a plaintiff is required to identify the alleged defamatory statement, the speaker of the statement, when it was made, etc.," "[t]he Complaint contains none of this information with respect to Mary Sills." Docket No. 233, p. 1-2 (footnote omitted). Movants argue that "[g]iven the lack of any specificity with respect to the claims of Mary Sills, there was no notice to Defendants that the claims of Mary

4

Sills could invoke a defense under the [CDA] until long after the November 30, 2023 deadline for motions to amend in the case management order." *Id.* at 2.

As to prejudice, Movants maintain that:

> The only question as it pertains to immunity under Section 230 of the CDA is whether it applies to bar any liability for the retweet. This is a purely legal question based upon statutory interpretation. Either Section 230 immunity applies to retweets or it does not. There is no additional factual discovery needed.
>
> Along those lines, Plaintiffs claim they would be left without the ability to adjust their "litigation strategy." This has nothing to do with litigation strategy. Mary Sills filed a lawsuit. Mary Sills testified that a retweet by Bart Barber was the only statement she knows of that forms the basis for her claims.
>
> . . .
>
> In these circumstances, it is difficult to imagine what a different "litigation strategy" could involve and Plaintiffs do not explain.

*Id.* at 3.

The Court finds that good cause exists to modify the scheduling order. Regardless of media coverage and personal awareness of the tweet/retweet, Defendants were not on notice that it formed the basis of Mrs. Sills' claims until her deposition in October 2024, nearly one year after the November 30, 2023, deadline for motions to amend. Docket No. 99, p. 5. Plaintiffs point out that Movants did not move for leave to amend until March of 2025, but the Court's inquiry when assessing good cause is whether Movants have shown that is "despite their diligence they could not meet the original deadline." *Shane*, 275 F. App'x at 536. While it might have been better had Movants filed for leave to amend sooner, the Court finds that they have demonstrated that despite their diligence, they could not meet the original deadline of November 30, 2023, because Mrs. Sills had not yet identified the retweet as the basis of her claims as of that date. Finally, the Court

5

finds that Plaintiffs would not be unduly prejudiced by modifying the scheduling order, because no additional discovery is sought and it appears unlikely that other deadlines will be affected.

**B. Rule 15 Factors**

Because Movants have met their burden to demonstrate good cause to amend the scheduling order, the Court will proceed to analyze Movants' proposed amendments under Fed. R. Civ. P. 15. Rule 15 provides, in relevant part:

> **(a) Amendments Before Trial.**
>
> > **(1)** *Amending as a matter of course.* A party may amend its pleading once as a matter of course within:
> >
> > (A) 21 days after serving it, or
> >
> > (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading . . . .
> >
> > **(2)** *Other amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a).

Movants cannot amend as a matter of course under Fed. R. Civ. P 15(a)(1)(A), because more than 21 days have passed since Movants' Answers were served in April 2024. *See* Docket Nos. 154-159. Plaintiffs oppose the Motion, so Movants' only recourse is to amend with leave of court pursuant to Fed. R. Civ. P. 15(a)(2).

Under Rule 15, a court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). But, leave to amend should be denied if the Court finds factors such as: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party by virtue of allowance of the amendments." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see Duchon v. Cajon Co.*, 791 F.2d 43, 48 (6th Cir. 1995). "Thus, leave should be given unless there is a showing of undue delay, bad faith or dilatory motive on the part of the moving party, undue prejudice to the non-moving party, or futility of the proposed amendment." *Dyer v. Wiregrass Hospice, L.L.C.*, 532 F. Supp. 2d 933, 935 (M.D. Tenn. 2008), *citing Foman*, 371 U.S. at 182.

Plaintiffs argue that leave to amend should not be given because Plaintiffs would be irreparably prejudiced and because the proposed amendment is futile. Docket No. 229, p. 4-5.

1. **Prejudice**

Plaintiffs' argument regarding prejudice, set forth above, is that the proposed amendment would leave them "without any ability to adjust their litigation strategy." Docket No. 229, p. 4.

"In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction." *Phelps v. McClellan*, 30 F.3d 658, 662-63 (6th Cir. 1994). As Movants note, the issue of whether Section 230 of the CDA applies to a retweet is purely a legal one, not requiring any additional discovery. The Court does not perceive that the addition of the defense would cause Plaintiffs to expend significant additional resources to prepare for trial; marshaling their arguments and (if applicable) authorities would seem to be the only additional tasks. Nor does the Court perceive that the new defense would significantly delay the resolution of the dispute or prevent Plaintiffs from bringing a timely action in another jurisdiction. Therefore, the Court finds that the proposed amendment would not unduly prejudice Plaintiffs.

7

## 2. Futility

Plaintiffs contend that the proposed amendment is futile because "Section 230 of the [CDA] provides immunity to providers of interactive computer services from liability for content created by third parties" and does not apply to Movants because "none of these Defendants is an online platform or social media platform as contemplated by the CDA . . . [and] none of these Defendants is sued because of what a random person said . . . ." Docket No. 229, p. 4-5. Plaintiffs argue that "[n]one of these Defendants is a website operator, and each of them is responsible for the creation and development of the content at issue in this case." *Id.* at 5.

Movants respond that:

> Section 230(c)(1) of the CDA provides immunity to two categories of individuals or entities: providers of an interactive computer service and users of an interactive computer service. It states, "No provider <u>or user</u> of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1) (emphasis added). . . .
>
> . . .
>
> Specifically, when an individual retweets the post of another, without any additional content or commentary, is that individual a "user" of the interactive computer service entitled to Section 230 immunity? Courts addressing the issue have answered in the affirmative.

Docket No. 233, p. 4.

In the Sixth Circuit, any analysis of the futility of proposed amendments is equivalent to the analysis undertaken as part of a Rule 12(b)(6) motion to dismiss. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000). The policy consideration behind futility analysis and motions to amend is to prevent the expenditure of unnecessary effort and resources by the parties as well as the court. Generally, rather than a magistrate judge deciding

8

that a claim or defense is legally insufficient at the motion to amend stage, "it is usually a sound exercise of discretion to permit the claim [or defense] to be pleaded and to allow the merits of the claim to be tested before the District Judge by way of a motion to dismiss." *Durthaler v. Accounts Receivable Mgmt., Inc.*, No. 2:10-cv-1068, 2011 U.S. Dist. LEXIS 121573, 2011 WL 5008552, at *4 (S.D. Ohio Oct. 20, 2011).

Neither party has provided controlling authority on the exact question of whether a person who retweets the post of another, without additional content or comment, is a "user" entitled to immunity for the content of that post under Section 230 of the CDA. The case cited by Plaintiffs, *Jones v. Dirty World Entm't Recordings LLC*, addressed the status of a website operator who was himself creating the alleged defamatory content on his website. 755 F.3d 398 (6th Cir. 2014). There was no question in that case that the website operator was the original creator of the content, and he was found not to have immunity under Section 230. *Id.*

Here, in contrast, Movants contend that they were retweeting the post of another without additional content or comment. Docket Nos. 218, 233. It is not apparent from the face of the proposed defense or from any authorities provided by the parties or located by the Court that Movants cannot avail themselves of the protection of Section 230. Under these circumstances, the Court finds that the proposed defense raises issues of proof and law that should not be decided on a motion to amend. At this stage in the proceedings, the Court cannot conclude that the proposed defense would be futile.

### III. CONCLUSION

For the foregoing reasons, Movants' Motion (Docket No. 218) is GRANTED. The Clerk is directed to enter Docket Nos. 218-2 through 218-7 as the First Amended Answers of the respective Movants.

                            **IT IS SO ORDERED.**

**Jeffery S. Frensley**
**United States Magistrate Judge**