IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MICHAEL DAVID SILLS and MARY SILLS, )
    Plaintiffs, )
     )
v. ) Civil Action No. 3:23-cv-00478
     ) Chief Judge Campbell/Frensley
SOUTHERN BAPTIST CONVENTION, et al., )
    Defendants. )

**ORDER**

**I.    INTRODUCTION**

Plaintiffs Michael David Sills and Mary Sills brought this lawsuit against the Southern Baptist Convention ("SBC"), the Executive Committee of the Southern Baptist Convention ("ECSBC" or "EC"), several other corporations and multiple individual Defendants, alleging "defamation, conspiracy, intentional infliction of emotional distress, and negligence concerning untrue claims of sexual abuse declared by Defendant Jennifer Lyell, and, thereafter repeated and published by remaining Defendants, as well as untrue claims that Mrs. Sills aided, abetted, facilitated, or otherwise enabled the said sexual abuse." Docket No. 1 (Complaint), p. 3. Defendants have denied the substantive allegations and asserted affirmative defenses. Docket Nos. 161, 293-298.

This matter is now before the Court upon Guidepost's Motion to Amend its Answer to the Complaint. Docket No. 221.[1] Guidepost has also filed supporting documents. Docket Nos. 221-1 through 221-3. Mr. and Mrs. Sills (collectively, "Plaintiffs") have filed a Response in Opposition and supporting documents. Docket Nos. 234, 234-1 through 234-4. Guidepost has filed a Reply

---

[1] This document also comprises Guidepost's supporting memorandum.

and an additional supporting document. Docket Nos. 236, 236-1. For the reasons set forth below, Guidepost's Motion (Docket No. 221) is **GRANTED.**

## II. LAW AND ANALYSIS

### A. Motions to Amend Under Rules 15 and 16

There are two potential standards to consider when determining whether to grant a motion to amend. Rule 16 requires the judge to issue a scheduling order and provides that "a schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4) (citation modified). The purpose of this requirement is "to ensure that at some point both the parties and the pleadings will be fixed." *Leary v. Daeschner*, 349 F. 3d 888, 906 (6th Cir. 2003), *quoting* Fed. R. Civ. P. 16, 1983 advisory committee's notes (internal quotation marks omitted). In contrast, Rule 15 contains a liberal standard instructing that courts should freely give leave to amend when justice so requires. Fed. R. Civ. P. 15(a)(2). The decision of which standard to apply depends on the timing of the motion. "Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary*, 349 F. 3d at 909.

The Court set November 30, 2023, as the deadline for filing any motions to amend. Docket No. 99, p. 5. Guidepost filed its Motion on March 25, 2025, which is outside the time allowed for such motions. Docket No. 221. Therefore, Guidepost must first meet the "good cause" requirement of Rule 16 before the Court can assess the merits of the Motion under Rule 15. Fed. R. Civ. P. 16(b)(4).

The "good cause" requirement is "a threshold that requires late-moving litigants to show that despite their diligence they could not meet the original deadline." *Shane v. Bunzl Dist. USA, Inc.*, 275 F. App'x 535, 536 (6th Cir. 2008), *quoting Leary*, 349 F. 3d at 907 (citation modified).

2

In determining whether good cause exists, the "overarching inquiry" is whether the moving party was diligent in attempting to meet the Court's deadlines. *Marie v. Am. Red. Cross*, 771 F. 3d 344, 366 (6th Cir. 2014), *quoting Bentkowski v. Scene Magazine*, 637 F. 3d 689, 696 (6th Cir. 2011). "A plaintiff does not establish good cause to modify a case schedule to extend the deadline to amend the pleadings where she was aware of the facts underlying the proposed amendment to her pleading but failed, without explanation, to move to amend the complaint before the deadline." *Ross v. Am. Red Cross*, 567 F. App'x 296, 306 (6th Cir. 2014) (citation modified).

Guidepost seeks to amend its Answer to add the following affirmative defense:

> Plaintiffs' claims are barred by immunity and/or preemption defense [*sic*] under Section 230 of the Communications Act of 1934, enacted as part of the Communications Decency Act [of] 1996 (the "CDA") as it relates to the hyperlink to the List of Abusers Guidepost placed on its website.

Docket No. 221-1, p. 19.

Guidepost asserts that it could not have added the defense prior to the November 30, 2023, deadline because facts underlying the defense were only discovered at depositions that took place after the deadline had passed:

> David Sills was deposed on October 1-2, 2024. During that deposition, David Sills and his counsel insisted that Guidepost "was the source of the information" for the "List of Abusers" and Guidepost "published" the "List of Abusers" on its website through a hyperlink.
>
> On February 11, 2025, the parties deposed Elizabeth Dixon, an administrative employee/contractor for the EC. During that deposition Ms. Dixon confirmed that the EC was responsible for the creation and content of the List of Abusers beginning in 2006; that the List of Abusers was provided to Guidepost by a representative of the EC on or about February 28, 2022 in connection with Guidepost's investigation; that the List of Abusers was not published contemporaneously with the Report, rather, following a vote of the EC, the List of Abusers was published May 26, 2022 through a hyperlink on the SBC's website.

Docket No. 221, p. 3-4 (citation modified).

In relevant part, the CDA provides that "no provider or user of an interactive computer

3

service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1) (citation modified). Thus, in order to potentially avail itself of this defense, Guidepost must establish that (1) it is a provider or user of an interactive computer service; and (2) the information in question was provided by another information content provider. *Id.*

Guidepost argues that it learned this specific information through the depositions of Ms. Dixon and Mr. Sills, as the Complaint only alleges that "Defendants" published a "List of Abusers" that included Mr. Sills. Docket No. 221, p. 2, *quoting* Docket No. 1, p. 19.

> This defense only came into clear focus following the depositions of David Sills (October 1-2, 2024) where he endeavored to explain his defamation claim associated with the List of Abusers, and the deposition of Elizabeth Dixon (February 11, 2025), who testified specifically as to the genesis of the List of Abusers, the individual(s) responsible for its creation and its content, how the List of Abusers came into the possession of Guidepost, and the publication of the List on May 26, 2022 through a link on the SBC's website, and accompanied by a statement from Rolland Slade, former President and CEO of the EC at the time, and Willie McLaurin, current president and CEO of the EC at the time.

*Id.* at 6.

Additionally, Guidepost maintains that modification of the scheduling order will not prejudice Plaintiffs, because "although it is Guidepost's position that the addition of the proposed Section 230 immunity defense in this matter should not require any additional discovery, to the extent Plaintiffs claim to need discovery relating to Guidepost's proposed defense, they may address that issue in due course at the 30(b)(6) deposition." *Id.* at 7 (citation modified).

Plaintiffs argue that "Guidepost knew of the affirmative defense (Dkt. No. 1, ¶ 64) since the time of the complaint being filed and took no action," adding that Guidepost "knew of the allegation concerning Guidepost's malicious interpretation of the List and posting of the List" at that time. Docket No. 234, p. 4-5. Plaintiffs maintain that "nothing about the testimony of Ms.

Dixon was new to Guidepost as it had already interviewed Ms. Dixon several years back, in connection with its Report." *Id.* at 4 (citation modified)  Further, Plaintiffs contend that "even if Guidepost denies knowing (which contradicts the Record) they [*sic*] surely knew of the allegation as of October 1 and 2, 2025, during the deposition of David Sills," yet "at no point over nearly six months was any attempt made to take discovery (because it was already known to Guidepost), and at no point did Guidepost seek leave to amend." *Id.* at 5 (citation modified).

The Court finds that good cause exists to modify the scheduling order.  Although Plaintiffs cite to paragraph 64 of the Complaint to support their contention that "Guidepost knew of the affirmative defense (Dkt. No. 1, ¶ 64) since the time of the complaint being filed," that paragraph only states:

> 64.     Defendants SPI and Guidepost understood their complicit role in Defendants' public relations plan, and at all relevant times acted as agents of Defendants SBC, Executive Committee and Lyell.  Notably, Defendants included language in their agreement that Defendants SBC and Executive Committee would indemnify Guidepost under a variety of circumstances, and under no circumstance would Guidepost be liable to Defendants SBC or Executive Committee for its work in relation to the investigation.  In other words, the risk to Defendants SPI and Guidepost for failing to implement the well-established principals [*sic*] of independent investigation was eliminated.  Defendants SPI and Guidepost were not independent and were merely an extension of Defendants SBC, Executive Committee, Lyell, and Mohler.

Docket No. 1, p. 19-20 (citation modified).  As can be seen, this paragraph does not address the source of information in the List and does not demonstrate that Guidepost had information related to a potential affirmative defense under Section 230 of the CDA at the time the Complaint was filed.  And while Plaintiffs maintain that Guidepost "had received the List in February 2022," they provide no support for this statement and do not explain how, even if true, it would have provided sufficient foundation for Guidepost to assert a defense under Section 230 at that time.  Docket No. 234, p. 4-5.

As to Plaintiffs' contention that "nothing about the testimony of Ms. Dixon was new to Guidepost as it had already interviewed Ms. Dixon several years back, in connection with its Report," Plaintiffs do not provide any support for what, exactly, they contend that Guidepost learned from Ms. Dixon in that prior interview. They do not, for example, allege that in the interview, Ms. Dixon told Guidepost that it was the EC that was responsible for the creation and the content of the List, or that the List was provided to Guidepost by the EC. *See* Docket No. 234.

As for Plaintiffs' assertion that Guidepost "surely knew of the allegation as of October 1 and 2, 2024, during the deposition of David Sills" but did not move for leave to amend until March of 2025, the Court's inquiry when assessing good cause is whether Guidepost has shown that "despite its diligence it could not meet the original deadline," not how quickly it moved to amend after that deadline had passed. *Shane*, 275 F. App'x at 536 (citation modified). While it might have been better had Guidepost filed for leave to amend sooner, the Court finds that it has demonstrated that despite its diligence, it could not meet the original deadline of November 30, 2023, because it did not have the information from the Dixon and David Sills depositions as of that date. Finally, the Court finds that Plaintiffs would not be unduly prejudiced by modifying the scheduling order, because if additional discovery is needed, it can be sought at the Rule 30(b)(6) deposition of Guidepost, which has not yet taken place. Further, it appears unlikely that other deadlines will be affected by the proposed amendment.

   **B.** **Rule 15 Factors**

Because Guidepost has met its burden to demonstrate good cause to amend the scheduling order, the Court will proceed to analyze Guidepost's proposed amendment under Fed. R. Civ. P. 15. Rule 15 provides, in relevant part:

6

Case 3:23-cv-00478 Document 320 Filed 06/30/25 Page 6 of 10 PageID #: 5946

> **(a) Amendments Before Trial.**
>
> **(1) *Amending as a matter of course.*** A party may amend its pleading once as a matter of course within:
>
>> (A) 21 days after serving it, or
>>
>> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading . . . .
>
> **(2) *Other amendments.*** In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a).

Guidepost cannot amend as a matter of course under Fed. R. Civ. P 15(a)(1)(A), because more than 21 days have passed since Guidepost's Answer was served in April 2024. *See* Docket No. 161. Plaintiffs oppose the Motion, so Guidepost's only recourse is to amend with leave of court pursuant to Fed. R. Civ. P. 15(a)(2).

Under Rule 15, a court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). But, leave to amend should be denied if the Court finds factors such as: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party by virtue of allowance of the amendments." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see Duchon v. Cajon Co.*, 791 F.2d 43, 48 (6th Cir. 1995). "Thus, leave should be given unless there is a showing of undue delay, bad faith or dilatory motive on the part of the moving party, undue prejudice to the non-moving party, or futility of the proposed amendment." *Dyer v. Wiregrass Hospice, L.L.C.*, 532 F. Supp. 2d 933, 935 (M.D. Tenn. 2008), *citing Foman*, 371 U.S. at 182.

Plaintiffs argue that leave to amend should not be given because Plaintiffs would be irreparably prejudiced and because the proposed amendment is futile. Docket No. 234, p. 6-7.

7

### 1. Prejudice

Plaintiffs' argument regarding prejudice is that the proposed amendment would leave them "without any ability to adjust their litigation strategy." Docket No. 234, p. 6.

"In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction." *Phelps v. McClellan*, 30 F.3d 658, 662-63 (6th Cir. 1994). The Court does not perceive that the addition of the defense would cause Plaintiffs to expend significant additional resources to prepare for trial; Guidepost's deposition pursuant to Rule 30(b)(6) has yet to take place, and Plaintiffs can inquire there into the basis for the defense if they wish. Nor does the Court perceive that the new defense would significantly delay the resolution of the dispute or prevent Plaintiffs from bringing a timely action in another jurisdiction. Therefore, the Court finds that the proposed amendment would not unduly prejudice Plaintiffs.

### 2. Futility

Plaintiffs contend that the proposed amendment is futile because "Section 230 of the [CDA] provides immunity to providers of interactive computer services from liability for content created by third parties" and does not apply to Guidepost because "Guidepost is not an online platform or social media platform as contemplated by the CDA and Guidepost is not sued because of what a random person said." Docket No. 234, p. 7 (citation modified). Plaintiffs argue that "Guidepost is not a website operator, and is responsible for the creation and development of the content at issue in this case." *Id.*

Guidepost responds that:

> Guidepost is an interactive computer service provider under the CDA, and despite Plaintiffs' misstatement of the facts, Guidepost is not responsible for the content or the publication of the List. *First*, an interactive computer service provider under the CDA "means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2). Guidepost, which operates the website www.guidepostsolutions.com, meets that definition: "[t]hese providers include broadband providers, hosting companies, **and website operators**." *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 407 n.2 (6th Cir. 2014) (emphasis supplied).

Docket No. 236, p. 3-4 (citation modified).

In the Sixth Circuit, any analysis of the futility of proposed amendments is equivalent to the analysis undertaken as part of a Rule 12(b)(6) motion to dismiss. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000). The policy consideration behind futility analysis and motions to amend is to prevent the expenditure of unnecessary effort and resources by the parties as well as the court. Generally, rather than a magistrate judge deciding that a claim or defense is legally insufficient at the motion to amend stage, "it is usually a sound exercise of discretion to permit the claim [or defense] to be pleaded and to allow the merits of the claim to be tested before the District Judge by way of a motion to dismiss." *Durthaler v. Accounts Receivable Mgmt., Inc.*, No. 2:10-cv-1068, 2011 U.S. Dist. LEXIS 121573, 2011 WL 5008552, at *4 (S.D. Ohio Oct. 20, 2011).

Here, Guidepost offers a colorable argument that it qualifies as a website operator entitled to immunity under Section 230 of the CDA and that someone else authored the content of the List. It is not apparent from the face of the proposed defense or from any authorities provided by the parties or located by the Court that Guidepost cannot avail itself of the protection of Section 230. Under these circumstances, the Court finds that the proposed defense raises issues of proof and law that should not be decided on a motion to amend. At this stage in the proceedings, the Court

9

cannot conclude that the proposed defense would be futile.

## III. CONCLUSION

For the foregoing reasons, Guidepost's Motion (Docket No. 221) is **GRANTED**. The Clerk is directed to enter Docket No. 221-1 as Guidepost's Second Amended Answer.

**IT IS SO ORDERED.**

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**