# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **MICHAEL DAVID SILLS**<br>**and MARY SILLS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CASE NO. 3:23-cv-00478** |
| **v.** | ) | |
| | ) | **JUDGE WILLIAM L. CAMPBELL, JR.** |
| | ) | **Magistrate Judge Frensley** |
| **SOUTHERN BAPTIST CONVENTION,** | ) | |
| *et al.* | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF ROLLAND SLADE AND WILLIE MCLAURIN'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFFS DAVID and MARY SILLS

Defendants Rolland Slade and Willie McLaurin respectfully submit this Memorandum of Law in Support of their Motion for Summary Judgment with Respect to Plaintiffs David Sills and Mary Sills[1] and state as follows:

### INTRODUCTION AND FACTS

On May 11, 2023, plaintiffs David and Mary Sills ("Sills") filed this action against a number of entities and individuals, including Rolland Slade ("Slade") and Willie McLaurin ("McLaurin"), alleging that they published untrue statements that David Sills had sexually abused Jennifer Lyell. [Doc. 1 at ¶¶1, 20-21]. Slade, who is now and has always been a pastor from California, served as the Chairman of the Executive Committee of the Southern Baptist

---

[1] Rolland Slade has filed a separate Motion for Summary Judgment as to the claims brought by plaintiff Mary Sills. [Doc. 310].

Convention (the "ECSBC") from June 2020 through June 2022. [*Id.* at ¶21; Ex. A, Depo. R. Slade 10:17-25]. McLaurin was the Interim President / CEO of the ECSBC from February 2022 to August 2023. [Doc. 1 at ¶20; Ex. B, Depo. W. McLaurin 58:3-5]. The Complaint asserts claims for defamation, negligence, intentional infliction of emotional distress, and civil conspiracy.

The only statement made by Slade and McLaurin after May 11, 2022, is a joint statement issued in connection with the release of a list of alleged abusers on May 26, 2022. [Ex. A, Depo. R. Slade at ex.10; Ex. D, App'x D to Jansen Rpt. at p.11]. Specifically, the Guidepost Report (the "Report") was released publicly on May 22, 2022. The Report mentioned that an ECSBC staff member had been maintaining a list of ministers accused of sexual abuse, including the minister's name, year reported, relevant news articles, state, and denomination ("the list"). [Ex. C, Guidepost Rpt. at pp.4-5]. According to the Report, the most recent version of the list contained the names of 703 individuals, with 409 believed to have been in SBC-cooperating churches at some point in time. [*Id.* at p.5].

The list was compiled over the years by an ECSBC employee from information "largely pulled from news articles compiled from 2007 until 2022." [Ex. E, excerpts of list at p.1]. The employee would periodically use Google to search for news articles regarding church sexual abuse which would then be added to the spreadsheet. [Ex. F, Depo. E. Dixon 47:2-15, 103:10-15]. With respect to Sills, The Tennessean article from March 2019, was located in a Google search. [*Id.* at 23:2-19, 37:16-38:7, 46:21-47:15, 51:18-24, 52:10-19]. As a result, information from this article, including Sills' photo, was pasted into the spreadsheet. [*Id.* at 60:4-25]. The spreadsheet or list consists of 205 total pages containing over 700 entries. The entry with the Sills article appears on page 169.

The ECSBC decided to publicly release the list on May 26, 2022, with a separate statement made by Slade and McLaurin, in their official capacities. [Ex. A, Depo. R. Slade at ex.10]. The statement does not mention the Sills by name, or any name on the list but does describe a process by which names on the list were redacted or left unredacted. Sills asserts he was defamed by his inclusion on the list and that his name should have been redacted. In other words, it is only because Sills is on the list that he appears to contend the accompanying statement by Slade and McLaurin is defamatory. [Doc. 1 at ¶63].

It is undisputed that neither Slade nor McLaurin knew of the existence of the list prior to the Guidepost investigation and Report. [Ex. A, Depo. R. Slade 86:12-87:20; Ex. B, Depo. W. McLaurin 68:20-69:2]. Neither Slade nor McLaurin made the decisions about what should be redacted from the list. Instead, the ECSBC's outside counsel determined the parameters for redaction from the list and made redaction decisions. [Ex. A, Depo. R. Slade 89:10-15, 92:10-93:3, 94:10-24; Ex. B, Depo. W. McLaurin 65:23-66:6, 73:5-8].

## ARGUMENT

### I. CLAIMS PREDICATED ON STATEMENTS MADE AND/OR CONDUCT OCCURRING PRIOR TO MAY 11, 2022 ARE BARRED BY THE ONE-YEAR STATUTE OF LIMITATIONS.

Under Tennessee law, actions for libel and personal injury, including negligence and intentional infliction of emotional distress, are subject to a one-year statute of limitations. *See* Tenn. Code Ann. § 28-3-104(a)(1); *Johnson for Estate of Johnson v. Fitz*, No. 2:24-cv-02722-TLP-tmp, 2025 WL 1659245, at *2 (W.D. Tenn. June 10, 2025) (negligence subject to a one-year limitations period under Tennessee law); *Jackson v. Falcon Transport Co.*, No. 3:08–0771, 2011 WL 1627319, at *3 (M.D. Tenn. Apr. 29, 2011) ("The statute of limitations in Tennessee for invasion of privacy, false imprisonment, personal injury and libel are expressly subject to the one-

year Tennessee statute of limitations."); *Leach v. Taylor*, 124 S.W.3d 87, 91 (Tenn. 2004) ("[I]ntentional infliction of emotional distress is a personal injury tort, governed by the general one-year statute of limitations."). Here, David and Mary Sills did not file this Complaint until May 11, 2023, making any statements / actions occurring prior to May 11, 2022, outside of the one-year limitations period. For example, the Complaint contains allegations of an apology to Jennifer Lyell that Slade made on behalf of the ECSBC on February 22, 2022. [Doc. 1 at ¶¶52-54]. Any claims related to this statement are outside the one-year limitations period. In this regard, the Court has already found May 11, 2022 to be the operative date in the context of Jennifer Lyell's motion to dismiss. [*See* Doc. 134 at pp.21-22 ("[T]o the extent the Sills assert a defamation claim against Lyell for statements made prior to May 11, 2022 about Mrs. Sills, that claim will be dismissed as time-barred.")].

To the extent the Sills attempt to rely upon a prior action filed in Alabama state court on November 21, 2022, this is without merit. While Tennessee does have a savings statute, it does not apply when the first action is commenced outside of Tennessee, but only when the first action is commenced in Tennessee. *See Graham v. Ferguson*, 593 F.2d 764, 766 (6th Cir. 1979) (per curiam) ("[W]e decline to extend the exception to the statute of limitations provided in T.C.A. s 28-106 to actions filed outside the state of Tennessee."); *Sigler v. Youngblood Truck Lines, Inc.*, 149 F. Supp. 61, 66-67 (E.D. Tenn. 1957) (savings statute only applies when first action is commenced in Tennessee). Nor can the Sills rely upon a continuing tort theory. *See Clark v. Viacom Intern. Inc.*, 617 Fed. Appx. 495, 501 (6th Cir. 2015) (unpublished) ("We conclude that the Tennessee Supreme Court would not diverge from the majority trend and adopt the 'continuing tort' theory in the defamation context."); *Rose v. Cookeville Regional Medical Center*, No. M2007-02368-COA-R3-CV, 2008 WL 2078056, at *5 (Tenn. Ct. App. May 14, 2008) ("Tennessee courts

4

have never recognized a 'continuing defamation.'").  Accordingly, claims and damages based upon any statements / actions of Slade or McLaurin prior to May 11, 2022 are time barred.

## II.    SILLS' DEFAMATION CLAIM AGAINST SLADE AND MCLAURIN FAILS AS A MATTER OF LAW.

"'To establish a *prima facie* case of defamation in Tennessee, the plaintiff must establish that: 1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement.'"  *Finley v. Kelly*, 384 F. Supp. 3d 898, 906 (M.D. Tenn. 2019) (quoting *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571-72 (Tenn. 1999).  "In addition, a plaintiff must prove actual reputation damages from the defamation; damages cannot be presumed."  *Doe v. Andrews*, 275 F. Supp. 3d 880, 890 (M.D. Tenn. 2017); *see also Davis v. The Tennessean*, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001) ("Damages from false or inaccurate statements cannot be presumed; actual damage must be sustained and proved.").[2]

Sills cannot establish at least two of these elements as a matter of law.  First, Sills cannot establish any actual damages from the allegedly defamatory statements made within the one-year limitations period.  Second, Sills cannot prove Slade or McLaurin acted with the requisite level of fault.

### A.    Sills Cannot Show That Any Statements Made Within the One-Year Limitations Period Caused Him Reputational Harm and Actual Damages.

---

[2]    Tennessee has eliminated the distinction between defamation per se, where damages were presumed, and defamation per quod, where damages must be proven.  *Hunt v. Southern Baptist Convention*, No. 3:23-cv-00243, 2024 WL 1019276, at *4 (M.D. Tenn. Mar. 8, 2024).  As a result, "[u]nder Tennessee law, a plaintiff is required to prove actual damages in all defamation cases." *Hibdon v. Grabowski*, 195 S.W.3d 48, 68 (Tenn. Ct. App. 2005).

5

Because the only statement made by Slade and McLaurin within the one-year limitations period is the statement accompanying the list of alleged abusers released on May 26, 2022, it is incumbent upon Sills to prove that his reputation was injured and he suffered resulting damages as a result of this statement. Because Sills cannot show reputational injury and actual damages, Slade and McLaurin are entitled to summary judgment on Sills' defamation claim. In this regard, Slade and McLaurin fully incorporate and rely upon the argument and authorities set forth in the summary judgment brief of the ECSBC concerning Sills' lack of damages.

### B. Sills Cannot Show That Slade or McLaurin Acted With the Requisite Level of Fault.

#### 1. Sills cannot show Slade or McLaurin acted with actual malice.

As the Tennessee Supreme Court observed, "[t]here are three kinds of public figures: general purpose, limited purpose, and involuntary." *Charles v. McQueen*, 693 S.W.3d 262, 274 (Tenn. 2024). When the plaintiff in a defamation case is a public figure, constitutional concerns require the plaintiff to prove that the libelous statement was made with actual malice, *i.e.,* "'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Hudik v. Fox News Network, LLC*, 512 F. Supp. 3d 816, 825 (M.D. Tenn. 2021). Whether one is a public figure in the first instance is a "question of law to be determined by the courts." *Falls v. Sporting News Pub. Co.*, 899 F.2d 1221 (Table), 1990 WL 41001, at *3 (6th Cir. 1990) (citing, *inter alia*, *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1293 n.12 (D.C. Cir. 1980)).

First, the controlling consideration is whether Sills is a public figure within the relevant community. *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 351-52 (1974) (noting that plaintiff had "no general fame and notoriety in the community" and that he was not generally known to "the local population."); *Waldbaum*, 627 F.2d at 1295 n.22 (nationwide fame not required); *Sack on Defamation* § 5:3:9 ("The president of a college student body, for example, might be a

6

'pervasive' public figure for purposes of commentary by the student newspaper but not for commentary by Time magazine or the 'CBS Evening News.'").

Sills' expert referred to him as an "international lecturer" and "prolific writer." [Ex. I, Depo. R. Fisher 93:4-10, 109:8-16]. News articles described Sills as a "prominent author and professor." [Ex. J, Courier Journal Article]. Sills testified that prior to 2019, he was scheduled 360 days a year and had "an international worldwide ministry." [Ex. H, Depo. D. Sills 142:17-20; 124:21-125:5].

Even before the allegations of sexual abuse became public in 2019, Sills' sudden resignation from the SBTS in 2018 was newsworthy in the evangelical community. [Ex. K, Biblical Recorder Article]. [3] Sills confirmed there was widespread knowledge of his resignation and the connection to Lyell. When he was contacted by Baptist Press in March of 2019, about the relationship with Lyell, he stated, "I had just resigned from everything in the whole world. Everybody knew that that was the case." [Ex. H, Depo. D. Sills 87:2-22]. Sills also contends that when the BP published an apology to Lyell for mischaracterizing her allegations of sexual abuse as a "morally inappropriate relationship," because of his high profile, everyone in the SBC community instantly knew that he was the unnamed abuser. He testified, "So you may not see my name. There's nobody in the executive -- in the SBC or in evangelicalism at large that would not read that David Sills abused Jennifer Lyell in this statement. Everybody knows who this is talking about." [*Id.* 170:8-12].

By virtue of his high public profile, Sills has thus "invite[d] attention and comment." *Gertz*, 418 U.S. at 345. Even reading the record in the light most favorable to Sills, there is no doubt that he was—and is—a public figure in the evangelical community. It is the very reason

---

[3] https://www.brnow.org/news/David-Sills-resigns-leadership-roles/.

his resignation from the SBTS was newsworthy. Sills testified, within a day or two of resigning from the SBTS, "the rumors were everywhere." [Ex. H, Depo. D. Sills 91:18-92:1].

Sills is required to prove facts establishing actual malice—*i.e.*, that the challenged statements were made with knowledge of their falsity or reckless disregard for their truth. *See Moore v. Bailey*, 628 S.W.2d 431, 434 (Tenn. Ct. App. 1981) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). Moreover, to defeat summary judgment, Sills must point to evidence sufficient to prove actual malice with "clear and convincing clarity." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-257 (1986); *see also Falls*, 1990 WL 41001, at *5 (affirming summary judgment where no evidence existed that defendant "entertained serious doubts about the truth of what he said [and] … [n]o reasonable jury could find clear and convincing evidence of actual malice."). As described above, Sills has presented no evidence that Slade or McLaurin acted with actual malice.

### 2. Sills cannot prove Slade was negligent, much less grossly negligent.

At all times relevant to the allegations made against him, Slade was acting as a member of the ECSBC and Chairmen of the ECSBC[4] and there have been no allegations made or evidence developed in this case that Pastor Slade engaged in any defamatory or other conduct outside of his

---

[4]     Under the ECSBC's Bylaws, "members" are intended to refer to and synonymous with the directors of the ECSBC:

> 3.1 Nomenclature. The directors of the Corporation may be referred to as trustees of the Corporation, and the board of directors may be referred to as the board of trustees. Because the trustees constitute a committee of the Convention, the trustees may also be referred to as the members of the Executive Committee, using the word "members" here not as that word is defined in the Act. The sole Member of the Corporation, as the term "member" is defined in the Act, is the Convention.

[Ex. G, ECSBC Bylaws at p.2].

role as a member and Chairman of the ECSBC. The ECSBC is a non-profit corporation operating for exempt purposes within the meaning of §501(c)(3) of the Internal Revenue Code. [Ex. G, ECSBC Bylaws at p.1]. As a result, Sills is required to establish a heightened level of fault with respect to Slade.

Specifically, Section 48-58-601 of the Tennessee Code states, in relevant part:

> (c) All directors, trustees or members of the governing bodies of nonprofit cooperatives, corporations, clubs, associations and organizations described in subsection (d), whether compensated or not, shall be immune from suit arising from the conduct of the affairs of such cooperatives, corporations, clubs, associations or organizations. Such immunity from suit shall be removed when such conduct amounts to willful, wanton or gross negligence . . . Nothing in chapters 51-68 of this title shall be construed to grant immunity to the nonprofit cooperative, corporation, association or organization.

> (d) Subsection (c) shall apply to the following:

> ***

> (3) Nonprofit corporations, associations and organizations which are exempt from federal income taxation under § 501(c)(3) of the Internal Revenue Code of 1986 (26 U.S.C. § 501(c)(3)), as amended.

Tenn. Code. Ann. § 48-58-601. Accordingly, Slade is immune from suit unless his conduct "amounts to willful, wanton, or gross negligence."

As for establishing "gross negligence," unlike ordinary negligence, "it requires proof of the defendant's subjective mental state." *Lawson v. Hawkins County*, 661 S.W.3d 54, 61 (Tenn. 2023). "The required 'mental attitude' is instead 'one of indifference to injurious consequences, conscious recklessness of the rights of others." *Id*. at 61-62 (quoting *Craig v. Stagner*, 159 Tenn. 511, 19 S.W.2d 234, 236 (1929)). "In order to prevail on a claim of gross negligence, a plaintiff must prove that the act was 'done with utter unconcern for the safety of others, or one done with

such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law.'" *McCaig v. Whitmore*, No. W2015–00646–COA–R3–CV, 2016 WL 693154, at *6 (Tenn. Ct. App. Feb. 22, 2016) (quoting *Leatherwood v. Wadley*, 121 S.W.3d 682, 693–94 (Tenn. Ct. App. 2003)); *see also Conroy v. City of Dickson,* 49 S.W.3d 868, 871 (Tenn. Ct. App. 2001) ("Gross negligence has been defined as arising from "a conscious neglect of duty or a callous indifference to consequences.") (internal quotations and citation omitted).

There is no evidence that Slade's conduct in any way rises to the level of willful, wanton, or gross negligence. Slade was unaware the list even existed prior to the Guidepost Report being published on May 22, 2022. [Ex. A, Depo. R. Slade 86:12-87:20]. Slade did not make any decisions about what entries should or should not be included on the list, and instead, the ECSBC's outside counsel determined the parameters for redaction from the list and made redaction decisions. [*Id*. at 89:10-15, 92:10-93:3, 94:10-24]. Under these facts, no reasonable person could find Slade to have been grossly negligent because Sills was included on the list.

Even assuming the standard was one of ordinary negligence, Slade would still be entitled to summary judgment. The case of *Evans v. Amcash Mortg. Co., Inc.*, No. 01A01-9608-CV-000386, 1997 WL 431187 (Tenn. Ct. App. Aug. 1, 1997) is instructive, where the court found reliance on counsel's work was sufficient evidence of reasonable conduct to defeat a claim of negligence. A female employee telephoned the defendant's CEO and alleged that the plaintiff, a store manager, had fondled and sexually battered her. The CEO called one of the company's attorneys and relayed the allegations against the plaintiff. The attorney arranged for a meeting with the female employee the following morning regarding her allegations. Following that meeting, a decision was made that the plaintiff's employment should be terminated. The attorney's interview with the female employee was the only investigation that the defendant undertook in

10

evaluating the truthfulness of the employee's allegations against the plaintiff and the defendant never discussed with the plaintiff the allegations the employee had made against him prior to him being terminated.

In the defamation suit that followed, the plaintiff argued that the defendant acted negligently in failing to ascertain whether the female employee's allegations of sexual harassment were true or false. *Id*. at *4. Specifically, the plaintiff argued that because the attorney's interview with the alleged victim was the only investigation that the defendant undertook in evaluating the truthfulness of the sexual harassment allegations against the plaintiff prior to terminating him, the defendant was negligent in investigating the allegations. *Id*. The court held that the defendant was not negligent and exercised reasonable care in investigating the veracity of the allegations because a reasonable and prudent person would rely upon their attorneys' observations and insights:

> We believe Defendant exercised reasonable care and caution in investigating the veracity of Reynold's allegations of sexual harassment against Plaintiff before Plaintiff was terminated. Reynolds called Hackney at home one evening and complained that Plaintiff had fondled and had sexually battered her. Hackney then called Jordan and apprised Jordan of Reynold's allegations against Plaintiff. Jordan arranged to meet Reynolds the following morning in his law office. Reynolds was interviewed by one of Defendant's attorneys, Anderson, the morning after Reynolds complained to Hackney of Plaintiff's conduct. After interviewing Reynolds regarding her allegations against Plaintiff, Defendant formed the belief that Reynold's allegations were well-grounded in fact and that Plaintiff should be terminated. Because we find that the Defendant exercised reasonable care and caution in investigating the truth or falsity of Reynold's allegations, an essential element of Plaintiff's defamation claim fails. A reasonable and prudent person would rely upon their attorneys' observations and insights into a situation. Defendant, therefore, acted reasonably in relying upon its attorneys' judgment that Reynold's allegations were sincere and true and in relying upon its attorneys' advice to fire Plaintiff.

*Id.*; *see also Pate v. Serv. Merch. Co., Inc.*, 959 S.W.2d 569, 575 (Tenn. Ct. App. 1996) (affirming summary judgment in defamation claim brought by nurse accused of stealing a co-worker's credit card because "the defendants exercised reasonable care and caution").

This situation is no different. Slade, in his capacity as Chairman, was relying upon outside counsel to establish the parameters for redaction of the list and determining which entries should be redacted. Just as in *Evans* where the defendant employer did not act negligently by relying solely on its attorney's investigation when evaluating the truthfulness of sexual harassment allegations against the plaintiff employee, Slade likewise did not act negligently.

### 3.   Sills cannot prove McLaurin was negligent.

At all times relevant to the allegations made against him, McLaurin was acting as the Interim President / CEO of the ECSBC. There are no allegations or evidence that McLaurin engaged in any defamatory or other conduct outside of his role as Interim President / CEO of the ECSBC. Section 48-58-403 of the Tennessee Code governs the standard of conduct for officers of nonprofit corporations. It states, in relevant part:

> (a) An officer with discretionary authority shall discharge all duties under that authority:
>
> (1) In good faith;
>
> (2) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and
>
> (3) In a manner the officer reasonably believes to be in the best interests of the corporation.
>
> (b) In discharging such duties, an officer is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, if prepared or presented by:
>
> ***

12

      (2) Legal counsel, public accountants, or other persons as to matters the officer reasonably believes are within the person's professional or expert competence.

     (d) An officer is not acting in good faith if the officer has knowledge concerning the matter in question that makes reliance otherwise permitted by subsection (b) unwarranted.

     (e) An officer is not liable for any action taken as an officer or any failure to take any action, if the officer performed the duties of office in compliance with this section.

Tenn. Code. Ann. § 48-58-403.

For much the same reasons discussed above with respect to Slade, McLaurin cannot be considered to have been negligent either. McLaurin did not know of the list prior to the Guidepost investigation and Report. [Ex. B, Depo. W. McLaurin 68:20-69:2]. McLaurin did not make the decisions about who or what entries should be redacted from the list. Instead, he relied upon the ECSBC's outside counsel to determine the parameters for redaction from the list and to make redaction decisions. [*Id.* at 65:23-66:6, 73:5-8]. In that regard, the statute expressly states McLaurin is entitled to rely upon information, opinions or reports prepared or presented by legal counsel. Tenn. Code. Ann. § 48-58-403(b)(2). Just like Slade, McLaurin's reliance on such input from counsel was reasonable and prudent, as supported by *Evans*. There being no evidence of McLaurin's negligence, he is entitled to summary judgment.

## III.   SILLS' NEGLIGENCE CLAIM FAILS FOR THE SAME REASONS.

Count III of the Complaint is titled "Negligence, Gross Negligence, and Wantonness." This claim should be dismissed as duplicative of and for the same reasons discussed above with respect to Sills' defamation claim.

13

As explained above, in order to establish a *prima facie* case of defamation in Tennessee, a plaintiff must establish the requisite level of fault on the part of a defendant. In the case of a private figure, the statement must be, at a minimum, published "'with negligence in failing to ascertain the truth of the statement.'" *Finley*, 384 F. Supp. 3d at 906 (quoting *Sullivan*, 995 S.W.2d at 571-72). As opposed to a standalone cause of action, the allegations in Count III of the Complaint do nothing more than recite the standard of fault required for a defamation claim. [Doc. 1 at pp.26-28]. It should, therefore, be dismissed as duplicative. In this regard, Slade and McLaurin fully incorporate and rely upon the argument and authorities set forth in the summary judgment brief of the ECSBC concerning Sills' lack of damages. But, even if not duplicative, Sills cannot prove Slade or McLaurin were negligent for the reasons already identified.

## IV. SILLS' INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM FAILS AS A MATTER OF LAW.

"[U]nder Tennessee law, there are three essential elements to a cause of action: (1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). "[T]o demonstrate outrageous conduct is a high burden," *Lemon v. Williamson Cnty. Sch.*, 618 S.W.3d 1, 21 (Tenn. 2021), and requires "an exacting standard." *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999). "To say that Tennessee courts narrowly define 'outrageous conduct' would be something of an understatement." *Finley*, 384 F. Supp. 3d at 911. As the Supreme Court of Tennessee has stated:

> [I]t is not sufficient that a defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress. A plaintiff must in addition show that the defendant's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004) (internal quotations and citations omitted). Along those lines, Tennessee "has adopted and applied the high threshold standard described in the Restatement (Second) of Torts," *Bain v. Wells*, 936 S.W.2d 618, 622-23 (Tenn. 1997), which states as follows:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

*Id.* at 623 (quoting, Restatement (Second) of Torts § 46 cmt. d); *see also Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 903 (M.D. Tenn. 2018) ("It is clear from this explanation that (a) the standard is not whether *an aggrieved person* (such as [plaintiff]) considers a party's actions to have been so outrageous, but whether *a civilized society* would so find, and (b) a plaintiff must prove that the conduct is outrageous in *character*, and not just in *motive*.") (emphasis in original). "It is for the trial court to determine, in the first instance, whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. Thus, the trial court may reasonably dismiss this legal theory as a matter of law." *Lane v. Becker*, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010) (citation omitted).

"[C]ases finding conduct sufficient to support an intentional infliction of emotional distress claim are few and far between." *Cossairt v. Jarrett Builders, Inc.*, 292 F. Supp. 3d 779, 789 (M.D. Tenn. 2018). In describing the level of conduct required for a claim of intentional infliction of emotional distress, the court in *Cossairt* stated:

Often cited in this regard is Johnson v. Woman's Hosp., 527 S.W.2d 133 (Tenn. Ct. App. 1975) where a mother was shown her deceased premature baby in a gallon jar of formaldehyde; Dunbar v. Strimas, 632 S.W.2d 558 (Tenn.Ct.App.1981), where a mother (who had recently had a nervous breakdown) was told her infant daughter had been sexually abused and there was a large tear in her rectum where sperm cells were found, when, in fact, the child had suffered a "crib death," and Dunn v. Moto Photo, Inc., 828 S.W.2d 747 (Tenn. Ct. App. 1991) where plaintiff was told that her film could not be developed when, in fact, it had been developed and nude photographs of plaintiff were shown to other employees and plaintiff's acquaintances. Another example is Lourcey v. Estate of Scarlett, 146 S.W.3d 48 (Tenn. 2004) where a postal worker suffered post-traumatic stress disorder after coming across a semi-nude woman in the middle of the street, was told by the husband that his wife was having a seizure, and, when the postal employee used her cellphone to call 911, witnessed the husband shoot his wife in the head and then turned the gun on himself, committing suicide.

*Id.* at 798-90. Also, "[o]utrageous conduct claims are not evaluated in a vacuum; they are evaluated in light of the category of conduct alleged. *Stacy v. MVT Servs., LLC*, No. 3:11-CV-01241, 2012 WL 2281495, at *8 (M.D. Tenn. June 18, 2012)). For example, "[s]exual harassment will only support an outrageous conduct claim when the harassment alleged is especially heinous compared to other sexual harassment claims." *Id*.

Slade and McLaurin are entitled to summary judgment because none of the required elements are met. First, there is no evidence that either acted negligently, much less in an intentional or reckless matter. Next, neither played a role in the decision not to redact Sills' entry from the list. They relied upon counsel to review the list and make those determinations. Relying upon counsel to make redactions from the list and then making an accompanying statement in connection with the release of the list can hardly be said to rise to the extreme level of outrageous conduct. Finally, as set forth in the ECSBC's Memorandum in Support of Summary Judgment, which Slade and McLaurin incorporate and join in, there is no evidence that Sills has suffered serious mental injury as a result of the alleged conduct of Slade or McLaurin. [Doc. 356].

16

## V.    SILLS' CIVIL CONSPIRACY CLAIM FAILS AS A MATTER OF LAW.

In Count II of the Complaint, Sills alleges that the defendants conspired to defame him. [Doc. 1 at p.25]. "The elements of a cause of action for civil conspiracy under Tennessee common law are: (1) a common design between two or more persons; (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means; (3) an overt act in furtherance of the conspiracy; and (4) injury to person or property resulting in attendant damage." *Freeman Management Corp. v. Shurgard Storage Centers, LLC*, 461 F. Supp. 2d 629, 642 (M.D. Tenn. 2006).

"Under Tennessee law, civil conspiracy is not itself a cause of action." *JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC*, No. 3:19-cv-00469, 2020 WL 5877131, at *8 (M.D. Tenn. Oct. 2, 2020). Instead, it "requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Freeman*, 461 F. Supp. 2d at 642. Along those lines, not any underlying tort will suffice. "[A] civil conspiracy requires that the alleged conspirators possess the specific intent to commit an unlawful act or a lawful act by unlawful means." *Nippert v. Jackson*, 860 F. Supp. 2d 554, 568 (M.D. Tenn. 2012). "Each conspirator must have the intent to accomplish this common purpose, and each must know of the other's intent." *Brown v. Birman Managed Care, Inc.,* 42 S.W.3d 62, 67 (Tenn. 2001). Thus, individuals cannot conspire to be negligent because negligence is not an intentional wrong. *See Nippert*, 860 F. Supp. 2d at 568 *Watson's Carpet and Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 186 (Tenn. Ct. App. 2007) ("A civil conspiracy is an intentional tort that requires damage to the plaintiff before it is actionable.").

Sills' claim of a civil conspiracy fails for multiple reasons. First, because his underlying defamation claim fails for the reasons stated above, Sills' claim of civil conspiracy also must fail.

17

Second, Sills has no evidence that Slade or McLaurin, along and in agreement with another party, had the specific intent to defame him with false allegations of sexual abuse. During its investigation, Guidepost uncovered the existence of the list . Sills had already been placed on the list years prior as a result of The Tennessean article. Because the list was referenced in Guidepost's Report, in the interests of transparency, the decision was made to release the list publicly. Counsel for the ECSBC made redaction decisions and then Slade and McLaurin released a statement accompanying the release of the list, a statement that did not mention Sills by name. There is no evidence of and no reasonable person could find that Slade or McLaurin had an agreement with another party and specific intent to defame Sills.

## VI. MARY SILLS' CLAIMS AGAINST MCLAURIN ALSO FAIL AS A MATTER OF LAW.[5]

The Complaint broadly alleges Defendants (collectively) defamed both David and Mary Sills. However, Mary Sills testified that her allegations against any individual Defendants are limited to only Bart Barber's retweet of a tweet initially published by Eric Geiger. [Doc. 316-2 at p.7]. That was the only statement allegedly made about her. [*Id*. at p.11]. When given an opportunity to provide facts to support any allegations against any other *individual* Defendants, including McLaurin, Mrs. Sills was unable to do so, and in fact denied that McLaurin himself engaged in any conduct that was harmful to her, specifically. [*Id*. at pp.10-11]. As such, there is no evidence that McLaurin defamed Mrs. Sills, and any claim she has asserted against McLaurin fails as a matter of law.

---

[5]     Rolland Slade has filed a separate Motion for Summary Judgment as to the claims brought by plaintiff Mary Sills. [Doc. 310].

## CONCLUSION

For the above reasons, Slade and McLaurin respectfully request that their Motion for Summary Judgment be granted and the claims of David and Mary Sills against them be dismissed, with prejudice.

ROLLAND SLADE AND WILLIE MCLAURIN

By counsel

*/s/ Gretchen M. Callas*
Thomas J. Hurney, Jr. (WVSB #1833)
(pro hac vice)
Gretchen M. Callas (WVSB #7136)
(pro hac vice)
Jonathan L. Anderson (WVSB #9628)
(pro hac vice)
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
Post Office Box 553
Charleston, West Virginia 25322
Telephone: 304-340-1000
Fax: 304-340-1150
thurney@jacksonkelly.com
gcallas@jacksonkelly.com

Brigid M. Carpenter (BPR #018134)
Ryan P. Loofbourrow (BPR #033414)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
bcarpenter@bakerdonelson.com
rloofbourrow@bakerdonelson.com
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37203
Telephone: (615) 726-7341
Fax: (615) 744-7341

***Attorneys for Executive Committee of the***
***Southern Baptist Convention and Rolland Slade***

19

<u>/s/ Alan S. Bean</u>
Alan S. Bean
STARNES, DAVIS, FLORIE LLP
3000 Meridian Blvd., Suite 350
Franklin, Tennessee 37067
Telephone: (615) 905-7200
Fax: (615) 807-4802
abean@starneslaw.com

**Attorneys for Willie McLaurin**

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2025, the *foregoing MEMORANDUM OF LAW IN SUPPORT OF ROLLAND SLADE AND WILLIE MCLAURIN'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFFS DAVID and MARY SILLS* has been served through the Court's electronic filing system on the following:

John W. Barrett
Katherine Barrett Riley
Barrett Law Group. P.A.
P.O. Box 927
404 Court Square
Lexington, Mississippi 39095
dbarrett@barrettlawgroup.com
kbriley@barrettlawgroup.com

Shannon M. McNulty
Clifford Law Offices, P.C.
120 N. LaSalle Street, Suite 3100
Chicago, Illinois 60602
smm@cliffordlaw.com

*Attorneys for Plaintiffs*

James C. Bradshaw, III
Wyatt, Tarrant & Combs, LLP
333 Commerce Street, Suite 1050
Nashville, Tennessee 37201
jbradshaw@wyattfirm.com

Byron E. Leet
Wyatt, Tarrant & Combs
400 West Market Street
Louisville, Kentucky 40202
bleet@wyattfirm.com

Thomas E. Travis
Wyatt, Tarrant & Combs
250 W. Main Street, Suite 1600
Lexington, Kentucky
ttravis@wyattfirm.com
*Attorneys for The Southern Baptist*
*Theological Seminary and Dr. R. Albert Mohler*

Alan S. Bean
Starnes, Davis, Florie LLP
3000 Meridian Blvd., Suite 350
Franklin, Tennessee 37067
Abean@starneslaw.com
**Attorneys for Willie McLaurin**

Matthew C. Pietsch
Gordon Rees Scully Mansukhani,
4031 Aspen Grove Drive
Suite 290
Franklin, Tennessee 37067
mpietsch@grm.com
**Attorneys for Southern Baptist Convention,**
**Dr. Ed Litton and Bart Barber**

Steven G. Mintz
Scott Klein
Alex Otchy
Mintz & Gold LLP
600 Third Avenue, 25th Floor
New York, New York 10016
mintz@mintzandgold.com
klein@mintzandgold.com
otchy@mintzandgold.com

John R. Jacobson
Katharine R. Klein
Riley & Jacobson
1906 West End Avenue
Nashville, Tennessee 37203
jjacobson@rjfirm.com
kklein@rjfirm.com
**Guidepost Solutions, LLC**

*/s/ Gretchen M. Callas*