**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MICHAEL DAVID SILLS and MARY SILLS,** | ) | |
| **Plaintiffs,** | ) | **Case No. 3:23-cv-00478** |
| **v.** | ) | **Jury Demand** |
| **SOUTHERN BAPTIST CONVENTION, et al.,** | ) | |
| **Defendants.** | ) | |

---

**DEFENDANT SOUTHERN BAPTIST CONVENTION'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

The Defendant, Southern Baptist Convention ("SBC"), by and through counsel, submits this memorandum of law in support of its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

## I. INTRODUCTION

The SBC is an ecclesiastical association formed by thousands of independent Baptist churches nearly two hundred years ago, in 1845.[1] Its purpose is to "provide a general organization for Baptists in the United States and its territories for the promotion of Christian missions at home and abroad."[2] The SBC allows Baptists to cooperate together to share the Christian faith both domestically and internationally, provide advanced Christian education at Baptist seminaries, and

---

[1] SBC Charter, publicly available at https://www.sbc.net/about/what-we-do/legal-documentation/charter/.

[2] SBC Constitution, Article II, publicly available at https://www.sbc.net/about/what-we-do/legal-documentation/constitution/.

demonstrate the love of Christ through services to at-risk children and families and in disaster relief efforts.

In this case, Plaintiff David Sills – a former Southern Baptist professor the Southern Baptist Theological Seminary (the "Seminary"), and his wife Mary Sills, claim that the SBC, as part of a massive conspiracy that is alleged to have included the Seminary, Seminary President Dr. Al Mohler ("Dr. Mohler"), the Executive Committee of the Southern Baptist Convention ("EC"), former EC Presidents Willie McLaurin and Rolland Slade, former SBC Presidents Dr. Bart Barber ("Dr. Barber") and Dr. Ed Litton ("Dr. Litton"), and Guidepost Solutions LLC ("Guidepost"), all of whom conspired to defame David and Mary Sills based almost entirely upon the inclusion by Guidepost, in its May 2022 Guidepost Report, of a section addressing the propriety of the EC's response to the public allegations made by Jennifer Lyell in 2019 that she was subject to non-consensual sexual abuse at the hands of David Sills, beginning in 2004-2005 when she was a Seminary student (the "Lyell Allegations"). As described in greater detail below, Plaintiffs claims against the SBC are completely false and lack any legal merit or factual evidence.

**A. Case Background**

Plaintiffs' claim against the SBC in this case – as best can be discerned from their Complaint [Doc. 1] – is that the May 2022 Guidepost Report, which included a section addressing the handling by the EC of Jennifer Lyell's public allegations in 2019 that she was the victim of a non-consensual sexual relationship with David Sills (the "Lyell Allegations") amounted to a deliberate and defamatory publication of the "unsubstantiated and malicious claim" that any sexual contact Jennifer Lyell had with David Sills was nonconsensual. In doing so, David and Mary Sills attempt to assert causes of action against all defendants, including the SBC, collectively and

indiscriminately, for (1) defamation and defamation per se, (2) conspiracy, (3) negligence, gross negligence, and wantonness, and (4) intentional infliction of emotional distress.

However, despite Plaintiffs' initial efforts at impermissible group pleading, and as it pertains to the SBC, they have failed to produce or establish any actual evidence during the course of discovery in this case that constitutes evidentiary support for their claim of tortious conduct on the part of the SBC. For context, in June 2021, a Sexual Abuse Task Force ("Task Force") was created by motion of the Messengers (the "Messengers' Motion") at the SBC annual meeting in June 2021 (the "2021 SBC Convention"). The Task Force was approved to oversee an independent third-party review and investigation into "any allegations of abuse, mishandling of abuse, mistreatment of victims, a pattern of intimidation of victims or advocates, and resistance to sexual abuse reform initiatives" by the EC between January 1, 2000, to June 14, 2021. Guidepost was subsequently engaged by the Task Force to conduct the investigation which resulted in the publication of the Guidepost Report on May 15, 2022.

As it pertains to the allegations against the SBC, in July 2021, then-SBC President Dr. Litton appointed the seven-member Task Force to oversee the investigation, as he was required to do by the Messengers' Motion. Plaintiffs' Complaint alleges in bare and unsupported conclusory language that, in doing so, Dr. Litton "directed and approved" a "narrative against [David and Mary Sills]" in conjunction with the appointment of the Task Force. Compl., at ¶ 49. Nothing could be further from the truth. No evidence has been elicited during discovery that supports this claim, as it is patently false.

Plaintiffs' entire theory against the SBC is premised on the fact that – pursuant to the Messengers' Motion and the results of the Guidepost investigation – the Lyell Allegations were included within the Guidepost Report in May 2022 in a conspiratorial and tortious effort by the

SBC, amongst others, to defame David and Mary Sills. Plaintiffs allege in purely conclusory fashion that Guidepost, "in concert" with the SBC, Jennifer Lyell, the EC, Dr. Barber, Dr. Litton, Willie McLaurin, Rolland Slade, the Seminary, and Dr. Dr. Mohler, "deliberately published the unsubstantiated and malicious claim" that David Sills had a nonconsensual sexual relationship with Jennifer Lyell with the intent (deliberate or otherwise) to cause damage to the reputation of David and Mary Sills. In other words, Plaintiffs have attempted from the outset of this litigation to prove a conspiracy that never existed and the fact and expert discovery in this case has not identified any evidence that implicates any of the Defendants in such a conspiracy, including but not limited to the SBC.

As part of Plaintiff misguided efforts, they have also asserted individual claims against former SBC President Dr. Litton and Dr. Barber as part of Plaintiff's perceived notion of a vast multi-party conspiracy against them. As it pertains to Dr. Litton, as SBC President, one of his responsibilities was to appoint the members of the Task Force no later than July 15, 2021 – which was prior to the selection and engagement of Guidepost which occurred nearly three months later. Dr. Litton was not responsible for hiring the entity or agency to conduct the third-party investigation (Guidepost). Dr. Litton did not have any role or involvement in the Task Force after fulfilling his duty to appoint its members on July 15, 2021.

As it pertains to personal "tweets" on Dr. Barber's Twitter account from July 2022 referenced in the Complaint – which were posted several months after the publication of the Guidepost Report (the "Barber Tweets"), they specifically reference the Guidepost Report as the basis for the statements contained therein and set forth Dr. Barber's own opinions on the public discourse pertaining to the Guidepost Report. The Barber Tweets do constitute any statement on the part of the SBC, nor do they rise to the level of any actionable defamatory claim. Plaintiffs'

characterizations of the Guidepost Report, as well as the Barber Tweets, are nothing more than that – their characterizations – which neither a Court nor a jury are not bound to accept. On the contrary, the words themselves are not capable of conveying the defamatory meaning Plaintiff asserts.[3]

As set forth in greater detail below, and notwithstanding David Sills' own misconduct and admitted lies, he seeks to cast blame on the SBC itself, based upon the information contained in the Guidepost Report. The SBC is entitled to summary judgment on each of these claims because there is no evidence that the SBC acted with any degree of fault in connection with the issuance of the Guidepost Report. For these reasons, and as discussed in greater detail below, the SBC is entitled to summary judgment in its favor as to all claims asserted by David and Mary Sills with prejudice.

## II. MATERIAL FACTS

### A. The SBC.

The SBC is a religious association that operates pursuant to and under the direction of the Messengers, i.e., the representatives of the more than 47,000 local Baptist Churches in the United States and its territories that cooperate with the SBC, encompassing over 14 million people. SOF ¶ 1. The Messengers convene once a year at a two-day meeting in June, referred to as the annual meeting or convention, where the Messengers confer and determine the officers, programs, policies, and budget of the SBC. SOF ¶ 2. Because the Messengers are so numerous and only meet once per year, the day-to-day functioning of the SBC is managed by the EC, whose operations

[3] The Barber Tweets merely comment on the contents and findings of the Guidepost Report and accurately state that the Guidepost investigation found the existence of corroboration and support for the Lyell Allegations. There is no mention of Plaintiffs whatsoever, nor any recitation or reproduction of the Lyell Allegations themselves. There are no statements made that could legally constitute the basis of any form of liability against the SBC.

are intended to carry out the business of the convention between the annual two-day June meeting of the Messengers. SOF ¶ 3.

**B. David Sills and Jennifer Lyell.**

Prior to May 2018, David Sills was a Southern Baptist missiologist, professor, and author employed as a professor by the Seminary in Louisville, Kentucky. SOF ¶ 4. In or around 2004-2005, David Sills began a sexual relationship with Jennifer Lyell while she was a Seminary student. SOF ¶¶ 5, 6. In May 2018, Jennifer Lyell disclosed the sexual relationship with David Sills to her then-employer, Lifeway Christian Resources, and David Sills' employer, the Seminary, including her allegation that her years-long sexual relationship with David Sills, which began when she was a student at the Seminary and David Sills was a professor, was sexual abuse. SOF ¶ 6. As a result, the Seminary President, Dr. Mohler, arranged an in-person meeting with David Sills, in which also included three other witnesses were present: Adam Greenway, Randy Stinson and Craig Parker. SOF ¶ 7.

During the May of 2018 meeting, David Sills was confronted with the Lyell Allegations. SOF ¶ 8. David Sills was presented with two options: (1) dispute the Lyell Allegations and face an investigation by the Seminary into his sexual relationship with Jennifer Lyell; or (2) resign. SOF ¶ 9. David Sills chose to resign the same day. SOF ¶ 10. Following his resignation from the Seminary, David Sills' publisher(s) also terminated his contracts. SOF ¶ 11.

In March 2019, Jennifer Lyell approached the Baptist Press[4] regarding the Lyell Allegations. SOF ¶ 12. In the interest of judicial economy, the SBC adopts and incorporates by reference, pursuant to Fed. R. Civ. P. 10(c), the facts and discussion set forth in greater detail

[4] The Baptist Press is the official news service of the SBC, which administered and staffed by the EC.

regarding the specific facts and supporting evidence collected by the EC in relation to the March 2019 publication by the Baptist Press concerning the Lyell Allegations and the corrections, as set forth in the separately filed EC Motion for Summary Judgment. *See* Doc. 360, at P. 7-8.

Suffice to say, by no later than February 2022, the Lyell Allegations had received both local and national public media attention in the form of both internet postings and news articles, including in The Tennessean, The Louisville Courier Journal, USA Today, Baptist News Global and the Religion News Service. *See* Doc. 357, at P. 4-6; SOF ¶ 13. Throughout the years of publicity and public attention to the Lyell Allegations – between 2019 and 2022 – David Sills remained silent: no response, no denial. SOF ¶ 14. For a more detailed discussion of the events during this period, the SBC incorporates by reference pursuant to Fed. R. Civ. P. 10(c) the facts and discussion contained in the separately filed EC Motion for Summary Judgment. *See* Doc. 360, at P. 8; Doc. 357, at P. 4-6.

**C. The Guidepost Report.**

As noted above, the Messengers approved a motion authorizing the creation of the Task Force to engage a third party to conduct an independent investigation of the EC at the 2021 SBC Convention held in Nashville, Tennessee in June 2021, and in response to allegations suggesting that the EC had ignored complaints of sexual abuse. SOF ¶ 15. The Task Force subsequently retained Guidepost, a self-described "global leader in investigations" with hundreds of professionals, including former prosecutors and law enforcement officials. SOF ¶¶ 15-16. The scope of Guidepost's engagement included investigating the following: (1) allegations of abuse by Executive Committee members; (2) mishandling of abuse allegations by Executive Committee members between January 1, 2000, to June 14, 2021; (3) allegations of mistreatment of sexual abuse victims by Executive Committee members from January 1, 2000, to June 14, 2021; (4)

patterns of intimidation of sexual abuse victims or advocates from January 1, 2000, to June 14, 2021; and (5) resistance to sexual abuse reform initiatives from January 1, 2000, to June 14, 2021. SOF ¶ 17.

Guidepost took numerous precautions to ensure the independence and integrity of its investigation, including ensuring the EC had absolutely no insight or input into the investigative process or responsibility for the contents of the Guidepost Report. SOF ¶ 18. The EC could not "conduct, direct, or otherwise manage or influence [Guidepost's] independent investigation in any manner." *Id*. The EC had no ability to edit, alter, modify, or otherwise have input into the contents of the Report. SOF ¶ 19. On May 22, 2022, the Guidepost Report was released to the public. *Id*. The Guidepost Report contained a section addressing the Lyell Allegations and the nature of the sexual relationship between Jennifer Lyell and David Sills, and the EC's handling of her disclosure and related Baptist Press publications. *See* Doc. 1, at ¶ 57; Doc. 355-17.

In the interest of judicial economy, the SBC adopts and incorporates by reference, pursuant to Fed. R. Civ. P. 10(c), the facts and discussion set forth in greater detail regarding the specific facts and supporting evidence Guidepost obtained in authoring the Guidepost Report, as set forth in the separately filed Guidepost Motion for Summary Judgment. *See* Doc. 370, at P. 5-6.

**D. Dr. Litton and Dr. Barber.**

As set forth in greater detail in the separately filed summary judgment motions on behalf of Dr. Litton and Dr. Barber, the SBC incorporates by reference those filings pursuant to Fed. R. Civ. P. 10(c). In short, Plaintiffs have no evidence that either Dr. Litton or Dr. Barber made any statements, allegedly defamatory or otherwise, pertaining to David or Mary Sills on behalf of the SBC, or in their official capacities as the duly elected Presidents of the SBC.

Dr. Litton served as the elected President of the Southern Baptist Convention from June 2021 to June 2022. SOF ¶ 25. One of Dr. Litton's responsibilities as SBC President in 2021 was to appoint the members of the Task Force no later than July 15, 2021 – which was prior to the selection and engagement of Guidepost which occurred nearly three months later. SOF ¶ 27. The Task Force – not Dr. Litton – was responsible for hiring the entity or agency to conduct the third-party investigation. SOF ¶ 28. Dr. Litton did not have any role or involvement in the Task Force after fulfilling his duty to appoint its members on July 15, 2021. SOF ¶ 29.

As it pertains to Dr. Barber, who served as the duly elected President of the Southern Baptist Convention from June 2022 to June 2024, he was not a member of the Task Force and was not involved with the Task Force's engagement with Guidepost in 2021. SOF ¶¶ 31, 34. Dr. Barber was not a member of nor had any involvement with the Committee on Cooperation. SOF ¶ 35. Dr. Barber never saw the Guidepost Report prior to its publication in May 2022. SOF ¶ 36. Dr. Barber was not elected President of the SBC until June 2022, which was after the May 2022 publication of the Guidepost Report.

At the time of Dr. Barber's Tweets in July 2022, Dr. Barber made comments based upon his understanding and belief, based upon his reading of the Guidepost Report, that Jennifer Lyell's claims pertaining to David Sills had been investigation and corroborated. SOF ¶ 37. Dr. Barber's Tweets in July 2022 were made in response to public comments in the form of Tweets made by others who, in Dr. Barber's opinion, "had declared authoritatively that [Jennifer Lyell] was a woman of loose morals who was making a false accusation" and "to say to them that they needed to evaluate whether the sources that they were listening to" in reaching their conclusions regarding Jennifer Lyell "were stronger than the sources that [Dr. Barber] listed as authorities who had taken

[Jennifer Lyell's] side." SOF ¶ 38. In his role as SBC President, Dr. Barber did not Tweet on behalf of the SBC. SOF ¶ 39.

Neither Dr. Litton nor Dr. Barber has any recollection of ever having met David or Mary Sills, nor have they ever made any public statement on behalf of the SBC pertaining to the Lyell Allegations. SOF ¶¶ 26, 30, 32, 39.

## III. LAW AND ARGUMENT

### A. Standard of Review.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The substantive law will determine which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. "So long as the movant has met its initial burden of a demonstrat[ing] the absence of a genuine issue of material fact, 'the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.''" *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) and Fed. R. Civ. P. 56(e)).

### B. The SBC is Not Liable for Plaintiffs' Defamation Claims.

For the SBC to be liable for defamation in Tennessee, Plaintiffs must prove that the SBC published a "matter that is both defamatory and false." *Brown v. Mapco Exp., Inc.*, 393 S.W.3d 696, 708 (Tenn. Ct. App. 2012). "[I]t is not enough for the statement in question to be false;" the plaintiff must also show "that the defamation has resulted in an injury to the person's character and reputation." *Id*. (quoting *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 50 (Tenn. Ct. App. 2013)) ("It is reputation which is defamed, reputation which is injured, and reputation which is protected by the law of defamation.").

Plaintiffs must prove that the SBC: 1) published a statement; 2) with knowledge that the statement is false and defaming to Plaintiffs; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *Finley v. Kelly*, 384 F. Supp. 3d 898, 906 (M.D. Tenn. 2019) (quoting *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571-72 (Tenn. 1999). In addition, Plaintiffs must prove *actual reputation damages* from the alleged defamation on the part of the SBC; damages cannot be presumed." *Doe v. Andrews*, 275 F. Supp. 3d 880, 890 (M.D. Tenn. 2017); *see also Davis v. The Tennessean*, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001) ("Damages from false or inaccurate statements cannot be presumed; actual damage must be sustained and proved.").[5]

Plaintiffs have no evidence that the SBC published any statement that identified, much less defamed, David or Mary Sills. In addition, to the extent that David Sills or Mary Sills previously suffered actual reputational damages as a result of the Lyell Allegations they cannot prove that any new or distinct damage was suffered from any alleged defamatory statement made by the SBC

---

[5] Courts have recognized that evidence of Plaintiffs' tarnished reputation has bearing on the existence of defamatory harm." *Benanti v. Satterfield*, No. E2018-01848-COA-R3-CV, 2020 WL 1491374, at *4 (Tenn. Ct. App. Mar. 27, 2020).

after May 11, 2022,[6] including but not limited to the Guidepost Report. David Sills himself and his own experts have testified that the Lyell Allegations in 2019 had already negatively and permanently damaged his reputation, including but not limited to his employability, prior to the publication of the Guidepost Report in May 2022.

David Sills acknowledged in 2021 that his ministry and career in Baptist ministry had effectively ended by March 2019 – because of the Lyell Allegations in 2019, which "prevented [him] from finding a job of any kind since then." [CITE]. There is no evidence in this case that any statement by the SBC in May 2022 or after caused any actual harm to David Sills' reputation in a legally cognizable or articulable degree beyond that which the undisputed material facts establish already existed well prior to May 2022. *See Service Jewelry Repair, Inc. v. Cumulus Broadcasting, LLC*, 145 F. Supp. 3d 737, 744 (M.D. Tenn. 2015) (Conclusory statements of harm to reputation are insufficient to create a triable issue of fact.); *Thompson v. Hayes*, 748 F. Supp. 2d 824, 832 (E.D. Tenn. 2010) (Given the plethora of negative reviews posted online …, plaintiff's claim of reputational harm was speculative.).

Plaintiffs' claim(s) against the SBC arising from the May 2022 publication of the Guidepost Report are impermissibly and unlawfully premised upon a lack of any legal merit or factual

---

[6] The statute of limitations for libel and personal injury, including derivative claims for negligence and intentional infliction of emotional distress, are subject to a one-year statute of limitations in Tennessee. *See* Tenn. Code Ann. § 28-3-104(a)(1); *Johnson for Estate of Johnson v. Fitz*, No. 2:24-cv-02722-TLP-tmp, 2025 WL 1659245, at *2 (W.D. Tenn. June 10, 2025) (negligence subject to a one-year limitations period under Tennessee law); *Jackson v. Falcon Transport Co.*, No. 3:08-cv-0771, 2011 WL 1627319, at *3 (M.D. Tenn. Apr. 29, 2011) ("The statute of limitations in Tennessee for invasion of privacy, false imprisonment, personal injury and libel are expressly subject to the one-year Tennessee statute of limitations."); *Leach v. Taylor*, 124 S.W.3d 87, 91 (Tenn. 2004) ("[I]ntentional infliction of emotional distress is a personal injury tort, governed by the general one-year statute of limitations."). Plaintiffs did not file their Complaint in this case until May 11, 2023, making any statements or actions occurring prior to May 11, 2022, outside of the one-year limitations period.



Case 3:23-cv-00478 Document 378 Filed 09/19/25 Page 12 of 21 PageID #: 11200

evidence as to the SBC. Mere conclusory or speculative allegations of liability or reputational harm cannot substantiate, much less establish a triable issue of material fact, for any cause of action for defamation against the SBC. Accordingly, the SBC is entitled to summary judgment in its favor as a matter of law.

**C. The SBC is Not Liable for Civil Conspiracy.**

Civil conspiracy is not an independent cause of action in Tennessee. *JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC*, No. 3:19-cv-00469, 2020 WL 5877131, at *8 (M.D. Tenn. Oct. 2, 2020).[7] Rather, in order to establish a legally cognizable claim, civil conspiracy requires evidence of "an underlying predicate tort [that was allegedly committed by the named defendant] pursuant to the conspiracy," *Freeman*, 461 F. Supp. 2d at 642; *Pagliara*, 605 S.W.3d at 627. Plaintiffs' claim(s) must include sufficient evidence of "the specific intent" of each alleged conspirator "to commit an unlawful act or a lawful act by unlawful means." *Nippert v. Jackson*, 860 F. Supp. 2d 554, 568 (M.D. Tenn. 2012). "Each conspirator must have the intent to accomplish this common purpose, and each must know of the other's intent." *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 67 (Tenn. 2001); *First Cmty. Bank, N.A., v. First Tennessee Bank, N.A.*, 498 S.W.3d 369, 396 (Tenn. 2015).[8]

---

[7] A claim for civil conspiracy in Tennessee requires evidence of (1) a common design between two or more persons; (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means; (3) an overt act in furtherance of the conspiracy; and (4) injury to person or property resulting in attendant damage." *Pagliara v. Moses*, 605 S.W.3d 619, 627 (Tenn. Ct. App. 2020); *Freeman Management Corp. v. Shurgard Storage Centers, LLC*, 461 F. Supp. 2d 629, 642 (M.D. Tenn. 2006).

[8] As the element of specific intent is required, Plaintiffs cannot establish a cause of action for civil conspiracy against an individual, much less a religious organization such as the SBC, based upon a claim of negligence – as negligence is not an intentional wrong. *See Nippert*, 860 F. Supp. 2d at 568; *Watson's Carpet and Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 186 (Tenn. Ct. App. 2007) ("A civil conspiracy is an intentional tort that requires damage to the plaintiff before it is actionable.").

As set forth above, Plaintiffs' civil conspiracy against the SBC fails as a matter of law. Plaintiffs have no evidence of "an underlying predicate tort," i.e., defamation or any other tort on the part of the SBC. Plaintiffs have no evidence that the SBC, in agreement with another party, had the specific intent to defame David or Mary Sills with allegedly false allegations of sexual abuse. In fact, this Court has already decided that there is no evidence of any conspiracy by the SBC with Guidepost – or any other defendant – in this case.[9] *See* Doc. 134, at P. 29-30. As Guidepost has already been found not to have participated in any conspiracy regarding the Lyell Allegations in its authoring of the Guidepost Report – by even greater weight of logic, the SBC cannot have conspired to do the same. Based upon the record in this case, the SBC is entitled to summary judgment on this claim.

**D. The SBC is Not Liable for Negligence.**

To the extent that Plaintiffs attempt to assert a claim for negligence as a separate and independent cause of action against the SBC in this case, the same fails because any such claim is, objectively and as a matter of law, duplicative of Plaintiffs' defamation claim. *See, e.g., Macineirghe v. County of Suffolk*, No. 13–cv–1512 (ADS)(SIL), 2015 WL 4459456, at *15 (E.D.N.Y. July 21, 2015) (Plaintiff's negligence claim is "duplicative of and subsumed within their defamation claim" because "an essential element of libel also requires [Plaintiff] to establish that [the defendants'] statements were negligently made"); *Wagner v. Allen Media Broadcasting*, 3

[9] "What's missing [in Plaintiffs' Complaint], however, is any allegation that in conducting the investigation and publishing its report that Guidepost intended to defame Sills to distract from the Southern Baptist Convention's sex abuse scandal – the purported goal and purpose of the conspiracy." Doc. 134, at P. 29 (citing Doc. 1, at ¶ 95). "There are not even allegations from which a reasonable inference of Guidepost's intent to defame Sills for this purpose can be drawn." *Id.*, at P. 29-30. "Accordingly, Guidepost's motion to dismiss will be granted as to the Sills' conspiracy claim against it." *Id.*

N.W.3d 758, 785 (Wis. Ct. App. 2024) ("If negligence is the degree of fault applicable to [Plaintiff's] defamation claim, [Plaintiff] does not identify any benefit of maintaining two causes of action that are entirely duplicative, one for defamation and another for negligence."); *Cook v. American Gateway Bank*, 49 So. 3d 23, 32 (La. Ct. App. 2010) (Plaintiff's defamation and negligence claims are both based upon the identical communications supposedly made by defendants and the same operative facts.").

Plaintiffs cannot establish that the SBC was negligent, or at fault, to any degree as it pertains to the May 2022 publication of the Guidepost Report. *See Finley*, 384 F. Supp. 3d at 906; *Memphis Pub. Co. v. Nichols*, 569 S.W.2d 412, 418 (Tenn. 1978) (The conduct of the defendant is to be measured against what a reasonably prudent person would, or would not, have done under the same or similar circumstances.); *See Pate*, 959 S.W.2d at 574 ("[D]efamation is not a strict liability tort. To prevail in a defamation cause of action, the plaintiff must also show some level of fault on the part of the defendant.").

Guidepost was retained by the Task Force to conduct an independent investigation of the EC. The EC did not, nor could not, direct or in any way influence the investigation and could not have any input into the contents of the Report. Plaintiffs have no evidence that the SBC did otherwise. The SBC did not fail to act with any legally cognizable or deficient standard of care as it pertains to its role in the commissioning of what ultimately resulted in the publication of the Guidepost Report, nor in its alleged acceptance or reliance upon the Guidepost Report's investigation and conclusions – and Plaintiff has no evidence to the contrary. *See Hunt v. Southern Baptist Convention*, 777 F. Supp. 3d 776, 829 (M.D. Tenn. 2025); *see also Evans v. Amcash Mortg. Co., Inc.*, No. 01A01-9608-CV-00386, 1997 WL 43118713, at *4 (Tenn. Ct. App. Aug. 1, 1997).

There is no evidence that the SBC acted negligently in connection with Guidepost's investigation and publication of the Guidepost Report. Based upon the record in this case, the SBC is entitled to summary judgment on this claim.

**E. The SBC is Not Liable for Intentional Infliction of Emotional Distress.**

Tennessee law requires that a claim for intentional infliction of emotional distress provides evidence that the SBC's alleged conduct was (1) intentional or reckless; (2) so outrageous that it is not tolerated by civilized society; and (3) resulted in serious mental injury to the plaintiff. *Lemon v. Williamson Cnty. Sch.*, 618 S.W.3d 1, 21 (Tenn. 2021); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). In this case, Plaintiffs have no evidence that any conduct on the part of the SBC was extreme or outrageous, and Plaintiffs have no evidence that either of them has suffered any "serious" or "severe" injury as the result of any action on the part of the SBC.

"The standard for demonstrating 'outrageous' conduct is high." *Hunt*, 777 F. Supp. 3d at 832 (quoting *Finley v. Kelly*, 384 F. Supp. 3d 898, 911-12 (M.D. Tenn. 2019)). "To say that Tennessee courts narrowly define 'outrageous conduct' would be something of an understatement. The conduct must be 'atrocious,' 'utterly intolerable,' and 'beyond all bounds of decency.'" *Hunt*, 777 F. Supp. 3d at 832 (quoting *Finley*, 384 F. Supp. 3d at 911-12). "A plaintiff must in addition show that the defendant's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*; *Lane v. Becker*, 334 S.W.3d 756, 763 ("It is for the trial court to determine, in the first instance, whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. Thus, the trial court may reasonably dismiss this legal theory as a matter of law."). Further, "[o]utrageous conduct claims are not evaluated in a

vacuum; they are evaluated in light of the category of conduct alleged. *Stacy v. MVT Servs., LLC*, No. 3:11-CV-01241, 2012 WL 2281495, at *8 (M.D. Tenn. June 18, 2012)).

The record in this case is replete with evidence that David Sills had a sexual relationship with Jennifer Lyell during the time that David Sills was a professor at the Seminary and Jennifer Lyell was a student. David Sills himself admitted in 2018 that his relationship with Jennifer Lyell was sexual in nature, and he resigned to avoid a Seminary investigation of that relationship. In 2019, Jennifer Lyell publicly came forward with her allegations against David Sills, including the fact that it was non-consensual sexual abuse. David Sills remained silent over the next several years and never publicly denied or challenged in any manner the Lyell Allegations. The fact that the SBC commissioned an investigation that ultimately resulted in the Guidepost Report, which included a section on the EC's handling of its response to the Lyell Allegations, does not give rise or qualify as conduct "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hunt*, 777 F. Supp.3d at 833.

Further still, there is no evidence that either Plaintiff has suffered the required serious mental injury as the result of any action taken by the SBC in or after May 2022. David Sills claims that he suffered embarrassment and humiliation when his relationship with Jennifer Lyell was initially disclosed in 2018. However, there is no evidence that David or Mary Sills has sustained "serious mental injury" or suffered from any new or otherwise distinct injury that did not already exist prior to the Guidepost Report publication in May 2022. Based upon the record in this case, the SBC is entitled to summary judgment on this claim.

**F. The SBC is Not Liable for Claims Arising from Dr. Litton or Dr. Barber.**

As set forth in greater detail in the separately filed summary judgment motions on behalf of Dr. Litton and Dr. Barber, which the SBC incorporates by reference pursuant to Fed. R. Civ. P. 10(c), Plaintiff has no evidence that either Dr. Litton or Dr. Barber made any statements, allegedly defamatory or otherwise, pertaining to the Lyell Allegations, or in their capacities as the then-elected Presidents of the SBC. Plaintiffs have no evidence that Dr. Litton's July 2021 appointment of the members of the Task Force to oversee what became the Guidepost investigation of the EC, as he was required to do by the Messengers' Motion, constitutes any tortious conduct of any kind. Similarly, the July 2022 Barber Tweets that specifically reference the Guidepost Report as the basis for the statements contained therein, and which set forth Dr. Barber's own opinions and commentary on the public discourse pertaining to the Guidepost Report do not establish liability either. The Barber Tweets do not constitute a statement on the part of the SBC, and do not rise to the level of any actionable defamatory claim. There were no statements made by Dr. Litton or Dr. Barber that constitute the basis of any form of liability against the SBC.

## IV. CONCLUSION

For the foregoing reasons, the SBC respectfully requests that the Court enter summary judgment in its favor on each of the claims alleged by Plaintiffs against the SBC.

**DATED: September 19, 2025.**

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

By: *s/ Matthew C. Pietsch*
**MATTHEW C. PIETSCH**, TN Bar No. 024659
4020 Aspen Grove Drive, Suite 500
Franklin, TN 37067
Phone: 615-722-9000
Fax: 615-970-7490
mpietsch@grsm.com

*Counsel for Defendant Southern Baptist Convention*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and complete copy of the foregoing has been served via the Court's e-filing system to the following on **September 19, 2025**:

| | |
|---|---|
| John W. Barrett<br>Katherine Barrett Riley<br>Sterling Aldridge<br>Barrett Law Group, P.A.<br>404 Court Square North<br>P.O. Box 927<br>Lexington, MS 39095<br>dbarrett@barrettlawgroup.com<br>kbriley@barrettlawgroup.com<br>saldridge@barrettlawgroup.com<br><br>Shannon M. McNulty<br>Kristofer S. Riddle<br>Clifford Law Office, P.C.<br>120 N. LaSalle Street, 36th Floor<br>Chicago, IL 60602<br>smm@cliffordlaw.com<br>ksr@cliffordlaw.com<br><br>*Counsel for Plaintiff* | John R. Jacobson<br>Katherine R. Klein<br>Riley & Jacobson, PLC<br>1906 West End Avenue<br>Nashville, TN 37203<br>jjacobson@rjfirm.com<br>kklein@rjfirm.com<br><br>Steven G. Mintz<br>Terence W. McCormick<br>Adam Kahan Brody<br>Alex Otchy<br>Mintz & Gold LLP<br>600 Third Avenue, 25th Floor<br>New York, NY 10016<br>mintz@mintzandgold.com<br>mccormick@mintzandgold.com<br>brody@mintzandgold.com<br>otchy@mintzandgold.com<br><br>*Counsel for Defendants Guidepost Solutions, LLC* |
| Brigid M. Carpenter<br>Ryan P. Loofbourrow<br>Baker Donelson Bearman Caldwell & Berkowitz, PC<br>1600 West End Ave<br>Suite 2000<br>Nashville, TN 37203<br>bcarpenter@bakerdonelson.com<br>rloofbourrow@bakerdonelson.com<br><br>Thomas J. Hurney, Jr.<br>Gretchen M. Callas<br>Jonathan L. Anderson<br>Jackson Kelly PC<br>500 Lee Street East<br>Suite 1600<br>Charleston, WV<br>thurney@jacksonkelly.com<br>gcallas@jacksonkelly.com | Alan S. Bean<br>Kimberly Nicole Poole<br>Starnes Davis Florie, LLP<br>3000 Meridian Blvd., Suite 350<br>Franklin, TN 37067<br>abean@starneslaw.com<br>npoole@starneslaw.com<br><br>*Counsel for Defendant Willie McLaurin*<br><br>James C. Bradshaw, III<br>Wyatt, Tarrant & Combs, LLP<br>333 Commerce Street, Suite 1050<br>Nashville, TN 37201<br>jbradshaw@wyattfirm.com<br><br>Byron E. Leet<br>Wyatt, Tarrant & Combs, LLP<br>400 West Market Street |

| | |
|---|---|
| jlanderson@jacksonkelly.com<br><br>*Counsel for Defendants Executive Committee of the Southern Baptist Convention and Rolland Slade* | Louisville, KY 40202<br>bleet@wyattfirm.com<br><br>Thomas E. Travis<br>Wyatt, Tarrant & Combs, LLP<br>250 W. Main Street, Suite 1600<br>Lexington, KY<br>ttravis@wyattfirm.com<br><br>*Counsel for Defendants The Southern Baptist Theological Seminary and Dr. R. Albert Mohler* |

*/s/ Matthew C. Pietsch*