# Exhibit I

> **WARNING**: This report includes information and descriptions related to sexual assault. This may be triggering to readers who have had similar experiences. We encourage you to care for your safety and well-being. The content of this report is not appropriate for children.

# Report of the Independent Investigation

## The Southern Baptist Convention Executive Committee's Response to Sexual Abuse Allegations and an Audit of the Procedures and Actions of the Credentials Committee

May 15, 2022



Guidepost Solutions LLC
1130 Connecticut Avenue NW
Suite 520
Washington, DC 20036
T: 202.499.4330
F: 202.331.3989

Greear naming the church.[207] That church ended up withdrawing voluntarily from the SBC in February 2020 while it was under inquiry by the Credentials Committee.

After Dr. Greear sent a proposal to the Bylaws Work Group for how SBC churches could take "action steps" to address sexual abuse claims, Mr. Guenther sent Mr. Boto and Mr. Jordan a memorandum taking issue with Dr. Greear's approach. In pertinent part, Mr. Guenther wrote:

> I see Dr. Greear's communication to the workgroup as that of a gratuitously offered document which he thinks "could" be sent to a church by the EC when a church is dealing with an incident of sex abuse…. I see a big difference between providing churches with generic resources on the one hand, and starting to hand churches "instructions" …[t]he latter is a sure-fire way to cause the victim to see the SBC as a "party" in the matter.
> …
> So I don't think we ought to engage in discussions with Dr. Greear about the merits of the document. I think we ought to thank Dr. Greear for sharing this idea with us, as we would any Southern Baptist who offered thoughts, and assure him the EC is working on this. In other words I think we ought to tell him "Thank you – we are on it; we welcome ideas." We ought not assume that he thinks as President of the Southern Baptist Convention he plays a management role in the Executive Committee.
> ….
> In short, it seems to me we ought not engage with Greear on the wording or possible use of his document.[208]

Jennifer Lyell, a survivor of sexual abuse, agreed in March 2019 to publicly disclose the details of her abuse. Prior to this time, Ms. Lyell had not disclosed her abuse to anyone other than her therapist, closest friends, and her pastor and his wife. At the request of executives at Lifeway as well as SBC entity heads, Ms. Lyell agreed to go public with her sexual abuse after she learned that her abuser had been appointed as a missionary for a non-SBC entity and would be in a position to groom and abuse young women again as

---

[207] Interview Memorandum of EC Staff Member 1.
[208] SBC_EC_GJPLaw_00008576.pdf.

Force, EC, and CC were not given access to the names of, or identifying information about, survivors or related witnesses without the consent of the survivors or witnesses.

We have been contacted by and corresponded with several survivors who ultimately chose not to participate in an interview, but contributed to our investigation through email correspondence, documentary evidence, and suggested recommendations for the future state of the SBC. We also held listening sessions with survivors and advocates who provided numerous recommendations.

We realize that participating in the investigation interview process can create added stress related to underlying trauma. Our desire was to provide survivors a safe and confidential space to debrief and process their interviews and participation with this investigation. In order to provide this support to survivors, the Guidepost team engaged Dr. Phil Monroe of Langberg, Monroe & Associates as a Survivor Care Liaison. Dr. Monroe is a licensed psychologist who specializes in treating trauma-related problems. Dr. Monroe was available to survivors to raise questions and talk through their investigation experience with a professional who is trauma-informed and understands the process, as well as to provide suggestions for resources for mental health care. Survivors were provided with contact information for Dr. Monroe, and all interactions with Dr. Monroe remained confidential. A survivor's identity or interaction with Dr. Monroe was not shared with the investigative team without express permission from the survivor. Our connection with Dr. Monroe has been valuable to our work as it has provided a safe space for survivors to debrief following the interview process.

### d. Survivor Advocates and other Witness Interviews

We also met with advocates for survivors, survivors' family members, witnesses who corroborated survivors' histories, whistleblowers who have reported church clergy and staff sexual offenders, experts in issues related to sexual abuse and clergy sexual abuse in particular, and therapists. Survivor advocates, such as Dee Ann Miller and Carol Shelton, provided many suggestions for how the SBC could improve its response to

28

thinks his wife may have said something to Survivor, and that all he knew was that Survivor was not there anymore. When asked whether his wife was there the whole time with him, he stated that there may have been a brief time that she was not there because of an event at Southeastern Baptist Theological Seminary where she may have flown in and out in one day or the next day. He said it was possible that she was not there some of the time that Survivor was there.

When asked if he contacted Mr. Blankenship, the counselor, because there was a problem between Pastor and Survivor, he said that he did not contact him in regard to that but just for general help because Pastor was transitioning in ministry and Dr. Hunt had always been a sounding board for him.

Dr. Hunt remembers only one meeting with the couple on August 2, 2010. He said the meeting was brief and that he and his wife, along with Pastor and Survivor and Mr. Blankenship were present. Dr. Hunt claims that he never directed the couple towards Mr. Blankenship for counseling.

Dr. Hunt said that he did not apologize to Survivor for sexually assaulting her during this meeting because there was no contact between the two of them. He denied saying "Praise Jesus that I didn't consummate the relationship." If there was an apology, Dr. Hunt believed it was related to Mrs. Hunt offending Survivor about being concerned with her being there alone, and them apologizing for her having to leave. He stated that "Someone has created a story on me. I would like to hear her story on this." Dr. Hunt said that Survivor had never come on to him and he never felt threatened by her. Dr. Hunt stated that he and Pastor have stayed in contact over the years. Investigators asked Dr. Hunt if there were any similar allegations with other women. Dr. Hunt answered no.

Several times during the interview, Guidepost investigators directly asked Dr. Hunt about specific allegations of sexual abuse against the Survivor, controlling the narrative through the use of an unlicensed therapist, and trying to protect his ministry, 40,000 churches, and the SBC, all of which he denied. The investigators asked Dr. Hunt if there was anyone