THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL DAVID SILLS and MARY SILLS, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| SOUTHERN BAPTIST CONVENTION, *et al.* | ) ) ) ) |
| Defendants. | ) ) |

CASE NO. 3:23-cv-00478

JUDGE WILLIAM L. CAMPBELL, JR.
Magistrate Judge Chip Frensley

JURY TRIAL DEMANDED

## DEFENDANT GUIDEPOST SOLUTIONS LLC'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO SUPPLEMENT EXPERT REPORTS

### I. Introduction

Plaintiffs, who have the burden of proof in this case, seek to gain advantage through a liberal interpretation of supplementation to make up for the fact that they failed to retain their investigative expert within sufficient time to properly review and assess the volumes of discovery that had been taken well in advance of the expert disclosure deadline. Plaintiffs' investigative expert, Amy McDougal, spoke with Plaintiffs' counsel for the first time on June 2, 2025, a mere nine days prior to the amended disclosure deadline of June 11, 2025.[1] Ms. McDougal, a licensed lawyer who states she does not have access to Pacer, did not receive any documents from Plaintiffs' counsel regarding the matter until June 4, 2025, one week prior to the deadline, although at that point she still had not been formally retained. The original report of Ms. McDougal, ultimately disclosed on June 20, 2025, was merely a placeholder, not because "critical discovery," including

---
[1] At that point, the expert disclosure deadline had already been extended twice, first from October 16, 2024 to March 14, 2025 (Doc. No. 192) and again from March 14, 2025 to June 11, 2025. (Doc. No. 208.)

the 30(b)(6) depositions of the ECSBC, SBC, and Guidepost, had yet to be taken; rather, the partial report was a placeholder because Plaintiffs failed to timely hire an expert and provide that expert with sufficient information to review, assess, and formulate opinions prior to the expert disclosure deadline. Ms. McDougal testified that it was always her understanding that the June 20 Report was only a partial report which would be further supplemented. (McDougal Depo. 34:24-35:9.)

The "final" report, submitted by Plaintiffs and Ms. McDougal on August 26, 2025 (the "August Report"), added 17 pages of new material and argument to the original report, submitted June 20, 2025 (the "June Report").[2] The vast majority of new material and argument contained in the August 26 "supplement" was based on information previously produced in discovery or that was publicly available well before the June Report's submission. Substantively, Ms. McDougal's August Report was untimely as it could have and should have been submitted prior to the June expert disclosure deadline.

The supplementation requested by Plaintiffs in the pending motion does not seek to address "incomplete or incorrect" information, as required by Fed. R. Civ. 26(e); rather, it is an attempt to bolster a hurriedly prepared "partial report" with previously produced and publicly available information. *TX Direct, LLC v. First Data Merchant Services, LLC*, 2025 WL 2073814, *6 (W.D. Tenn. July 22, 2025) (citing Fed. R. Civ. P. 26(e)); *see also Yoe v. Crescent Sock Co.*, 2017 WL 11218929, *9-10 (E.D. TN. Aug. 31, 2017). Plaintiffs' Motion for Leave to Supplement their expert reports should be denied.[3]

---

[2] During her deposition, Ms. McDougal acknowledged that the August Report replaced her June Report, rather than supplemented it, confirming that the June Report was merely a placeholder for the actual report which was not submitted until August 26. (McDougal Depo. 50:1-52:8) (Q: So there's nothing in the June report that you're offering and relying on that isn't in the August report, correct? A: That was my intent …. that the final report would stand on its own and reflect the old and the new.")

[3] In addition to Ms. McDougal's expert report, Plaintiffs' motion seeks leave to supplement the expert report of Dr. Bernard Jansen. Guidepost joins, adopts, and incorporates herein by reference the facts and arguments set forth in the ECSBC and Rolland Slade's Response in Opposition to Plaintiffs' motion, and respectfully asks that the Court deny Plaintiffs' motion in its entirety.

## II. Background Facts

Under the Case Management Order, as amended on February 14, 2025 (Doc. No. 208), Plaintiffs' expert disclosure date was June 11, 2025, with Defendants' expert disclosure date 30 days later, on July 11, 2025 (*Id*. at 4). On May 23, 2025, Plaintiffs filed an Emergency Motion for Relief Concerning 30(b)(6) Testimony and Expert Disclosures ("Plaintiffs' Emergency Motion"), seeking to extend the deadlines for expert disclosures until 21 days after the ECSBC and the SBC 30(b)(6) depositions were taken. (Doc. No. 262.) Plaintiffs' position was that they would be unfairly prejudiced if they were required to submit expert disclosures prior to those depositions taking place. (*Id*. at 4-5.) In opposition, Defendants argued that, given the extensive discovery taken in this case over a two-year period,[4] Plaintiffs were fully capable of disclosing experts and their reports, with the understanding that Plaintiffs could supplement those reports with **new** material that was otherwise not available until after the disclosure deadline. (Doc. No. 276 at 3 and Doc. No. 278.)

While the Emergency Motion was pending, Plaintiffs asked and Defendants agreed to a short extension of time for Plaintiffs to disclose their experts, up to June 13, 2025. (Doc. No. 291 at 2.) But when June 13, 2025 arrived, Plaintiffs did not disclose their experts or serve their reports as agreed; instead, Plaintiffs filed a Formal Objection, claiming that they would be irreparably harmed if they were required to produce their disclosures at that time. (*Id*.) On June 18, 2025, the Court denied Plaintiffs' Emergency Motion and required Plaintiffs to file their expert disclosures and serve reports no later than June 20, 2025. (Doc. No. 305.)

---

[4] All parties agree that significant discovery had taken place as of the filing of the Emergency Motion, including hundreds of thousands of documents, 172 interrogatories, 163 requests for production of documents, 47 requests for admission, and at the time, 14 depositions, 10 of which were taken by Plaintiffs. (Doc. No. 276 at 1-2.)

Notably, at the time Plaintiffs filed their May 23, 2025 Emergency Motion, Plaintiffs had not even made contact – either personally or through a third party – with their investigative expert, Amy McDougal. Plaintiffs' first contact with their investigative expert was on June 2, 2025, consisting of a 20-minute phone conversation with counsel. (McDougal Depo. at 223:24-226:5.)[5] Ms. McDougal, who had no previous knowledge about the case or Plaintiffs' counsel, had been contacted about a possible engagement through an expert search firm, sometime during the week of May 28, 2025. (*Id.* at 13:5-16:8, 17:15-20, 224:14-225:19.) Documents for review were provided to Ms. McDougal by Plaintiffs' counsel on June 4, 2025 – one week prior to the Court's expert disclosure deadline. (*Id*. at 225:20-226:5.) Yet she was not yet formally retained until after that date. (*Id*. at 224:10-24.)

On June 20, 2025, Plaintiffs disclosed six experts including Ms. McDougal and Mr. Jansen. Ms. McDougal's report was styled "Partial Report," stating in pertinent part:

> This is not a final report. The partial report was drafted under the assumption that all requested information provided to me was current, true, and accurate. It is my understanding that discovery is not complete in this case and various motions are pending with regard to discovery, including but not limited to discovery from Guidepost that may influence my partial analysis, preliminary opinions, and conclusions reflected in this report. I am aware that Guidepost produced to Plaintiff's counsel approximately 1,196 documents. It would be impossible for me to assess the content of that production and how it may or may not impact my analysis in the time between production and the due date of this partial opinion. To form a full and final opinion, I will need to review and analyze all new discovery material.

(June Report at 5 (Doc. No. 390-1 at 6).)

Ultimately the ECSBC's 30(b)(6) deposition was taken on July 15, 2025, Guidepost's 30(b)(6) deposition was taken on July 29, 2025, and the SBC's 30(b)(6) deposition was taken on August 28, 2025. Notwithstanding the fact that the final transcript of Guidepost's 30(b)(6)

---

[5] Excerpts from Ms. McDougal's Deposition are attached as **Exhibit 1**.

deposition was available August 13, 2025,[6] Plaintiffs did not provide Ms. McDougal's "final" report until August 26, 2025, which included the 17 new pages of material. A redline comparison of Ms. McDougal's June Report and her "final" August Report is attached as **Exhibit 2**. Upon receipt of Ms. McDougal's August Report, Guidepost served written objections to the report because it was and is effectively an entirely new report intended to replace the "partial" report. A copy of Guidepost's August 27, 2025 objection letter is attached as **Exhibit 3**. Plaintiffs never provided a written response to Guidepost's objection letter. Ms. McDougal's deposition was taken on September 10, 2025.

### III. Argument

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) and the Court's Case Management Order, as amended, Plaintiffs were required to produce their expert disclosures and accompanying reports on or before June 11, 2025. On May 23, 2025, Plaintiffs sought an "emergency" extension of those deadlines, which was denied. The Court allowed Plaintiffs to file their expert disclosures on June 20, 2025. (Doc. No. 305.)

Rule 26(a)(2)(B) requires the expert disclosure to be accompanied by a written report, prepared and signed by the witness, and it requires the report to contain (i) a complete statement of all opinions the witness will express and the basis and reasons for them, (ii) the facts or data considered by the witness in forming them, and (iii) any exhibits that will be used to summarize or support them. Fed. R. Civ. P. 26(a)(2)(B).

Federal Rule of Civil Procedure 26(e) allows for supplementation of an expert report if the original disclosure "in some material respect … is incomplete or incorrect." *TX Direct, LLC*, 2025 WL 2073814, *6 (citations omitted). Under Rule 26(a)(2)((B), the duty to supplement extends to

---

[6] Ms. McDougal was in possession of Guidepost's 30(b)(6) transcript prior to August 13, 2025, having received a rough draft of the transcript shortly after the deposition. (McDougal Depo. 37:23-38:6.)

information included in the report and given during the expert's deposition. Additions or changes must be disclosed by the time the party's pretrial disclosures are due. Fed. R. Civ. P. 26(e)(2).

Nevertheless, Rule 26(e) does not allow parties to "freely amend" their initial expert disclosure "to bolster a party's position." *TX Direct, LLC,* 2025 WL 2073814, *6 (citing *Bentley v. Highlands Hosp. Corp.*, 2016 WL 5867496, at *4 (E.D. Ky. Oct. 6, 2016).) "***This is especially true when the information underlying the new opinion was available to the party at the time of her initial disclosure***. *See Matilla v. S. Ky. Rural Elec. Coop. Corp.*, 240 Fed. Appx. 35, 43 (6th Cir. 2007); *see also* Black's Law Dictionary 563 (10th ed. 2014) (defining "supplemental disclosure" as "[t]he disclosure of additional facts and information, usu[ally] because of previous unavailability")." *Bentley,* 2016 WL 5867496, at *4 (emphasis supplied).

Nor is Rule 26(e) a license to add new opinions to a previously disclosed expert report. *Yoe v. Crescent Sock Co.*, 2017 WL 11218929, *9-10 (E.D. TN. Aug. 31, 2017) (citations omitted). "If a party's supplemental or rebuttal disclosure is, in truth, neither supplemental nor rebuttal … substance triumphs over form: The Court will look past the party's label and construe the report as an initial disclosure of an affirmative expert opinion under Rule 26(a)(2)(A)-(C)." *Id.* at *10. Indeed, "the district court has broad discretion to impose the appropriate sanction, and the sanction of exclusion is certainly appropriate when the failure to abide by the requirements of Rule 26 is not substantially justified. *Id*. at *4. Ms. McDougal's "supplement" is not justified.

Plaintiffs cite four areas in which Ms. McDougal "updated" her opinions ostensibly based on new information provided in Guidepost's and the ECSBC's 30(b)(6) depositions:

1. Guidepost's investigation was illegal;
2. Guidepost's client in the investigation was the Executive Committee, not the Sexual Abuse Task Force;

3. Guidepost conducted an investigation (as opposed to an inspection) of the Engagement Letter's Second Mandate; and

4. Samantha Kilpatrick was not objective in her investigative role and created a direct conflict of interest.

Long before the "partial" June report was submitted, the information upon which Ms. McDougal relies for these four opinions was already available to Plaintiffs and, therefore, Ms. McDougal. Plaintiffs' claim that the opinions were incomplete because the 30(b)(6) depositions had not yet been taken is subterfuge, as is Ms. McDougal's claim that her June Report was incomplete because she did not have time to review the 1,196 pages of Guidepost documents produced just prior to the June Report's submission.[7] (June Report at 5; *see also* p. 4, *supra*.) In fact, Ms. McDougal admits that prior to submitting her August Report she did not even fully review the 1,196 pages of documents she claimed to be critical, nor did she rely on any of those documents. (McDougal Depo. 35:14-36:20.) Yet she references those 1,196 pages of documents again in her August Report as justification for the supplementation of her June Report. (August Report at 5 (Doc. No. 390-7 at 6).)

In fact, Ms. McDougal's opinions were incomplete because: (1) she was hired at the eleventh hour (several days ***after*** Plaintiffs moved to extend the expert disclosure deadline), (2) she was not provided sufficient information from Plaintiffs, and (3) she did not have time to assess relevant information prior to the original June 11, 2025 deadline or even the Court's extended June 20, 2025 deadline. Nevertheless, given the volume of discovery and publicly available material prior to June 2025, Plaintiffs (and Ms. McDougal) had ample time to commission and complete the report prior to the expert disclosure deadline. *Estate of Barnwell v. Roane County, Tenn.*, 2016

---

[7] Guidepost's document production was largely duplicative of previously produced documents, even though it was a stated reason for postponing the Guidepost 30(b)(6) deposition from taking place in April 2025.

WL 5938910, at *1 (E.D. Tenn. Apr. 5, 2016). The "final" August Report is, therefore, untimely, warranting denial of Plaintiffs' Motion for Leave to Supplement. *See also Yoe*, 2017 WL 11218929, *4.

### A. Updated Opinion 1 – The alleged illegality of Guidepost's investigation.

In Ms. McDougal's June Report, she "analyzed … whether Guidepost's investigation was conducted in compliance with the law," relying upon Tenn. Code Ann. §§ 62-26-201, *et seq*. (June Report at 7-9.) Noting the exception that practicing attorneys need not be licensed to conduct an investigation, Ms. McDougal surmised that if Guidepost's investigators – who were also attorneys – did not qualify as exempt from the licensure statute, then the "entire Guidepost investigation would violate Tennessee law." (*Id*. at 8.)

In her August Report, however, relying upon the same Tennessee statutory scheme, Ms. McDougal changed the basis of her "illegality" opinion from Guidepost's individual attorney-investigators were not exempt from licensure requirements to Guidepost was not properly licensed in Tennessee (since Guidepost was actually engaged to investigate the ECSBC's conduct and practices) (August Report at 7-14.) In reaching her conclusion, Ms. McDougal relied upon information to which she had access well before preparing her June Report:

- Guidepost's Engagement Letter with the Task Force of the SBC ("SATF"), which was provided to her prior to the June Report and cited repeatedly throughout. A copy of the Engagement Letter is attached as **Exhibit 4**;

- Guidepost's public website, https://guidepostsolutions.com, to which Ms. McDougal cited at least six times in her June Report;[8]

---

[8] June Report at 9, 16 n.10, 27, 28 n.18

- A licensure database to which Ms. McDougal has access – and had access prior to June 2025 (McDougal Depo. 82:2-20); and

- Tenn. Code Ann. §§ 62-26-201 *et seq*. upon which she based her illegality opinion. (McDougal Depo. 80:14-82:1).

In June, Ms. McDougal also researched the licensure status of Julie Myers Wood, who was Guidepost's CEO, and Krista Tongring, who was the "Project Manager" of the Guidepost investigation, as well as licensure statutes in the locations where those individuals worked and resided. (June Report at 8-9.) Ms. McDougal states in her August Report:

> The Guidepost 30(b)(6) deposition makes clear that neither Ms. Wood nor Ms. Tongring were engaged to do the investigation. Ms. Tongring testified on behalf of Guidepost that none of Guidepost's attorneys practice as attorneys (GP Deposition, pg. 38, lines 13-16). The EC engaged Guidepost to perform the investigation, so the relevant analysis is whether Guidepost had sufficient authority under Tennessee law to perform and an investigation in Tennessee.

(August Report at 11.)

Ms. McDougal's alleged reliance on the deposition testimony is wholly irrelevant. The Engagement Letter, which was signed by Guidepost, through its CEO Ms. Wood, made clear throughout that Guidepost, not any specific individual, was engaged by the SATF to perform the investigation. (Engagement Letter, Section 1.1.) Further, the information cited in the August Report "confirming" the applicability of Tennessee law in this instance was all publicly available through internet research. (McDougal Depo. 95:23-107:11.)

Ms. McDougal's incomplete legal analysis at the June Report stage[9] cannot be bolstered with "new" evidence, which is not new at all. "Rule 26(e) does not permit supplementation of an expert report to remedy an inadequate or incomplete preparation or review by an expert in the first

---

[9] Guidepost intends to file a *Daubert* motion seeking to exclude certain portions of Ms. McDougal's report/testimony including, but not limited to, any statements, opinions, or testimony about the legality of the investigation.

instance …. Likewise, parties may not add new analysis, opinions, or theories under the guise of supplementation….” *TX Direct, LLC*, 2025 WL 2073814, *6 (citations omitted).

Nothing in Guidepost's 30(b)(6) testimony about the licensure issue offered Ms. McDougal new information to expand her opinion on this issue; she simply had more time to finesse, bolster, and review her opinion, as is evidenced by the redline comparison of the two Reports.[10] (Exhibit 2; *see also* Guidepost 30(b)(6) excerpts (Doc. No. 390-10 at 2-4).)

**B. Updated Opinion 2 – Guidepost's client allegedly is the ECSBC, not the SATF.**

In the context of Ms. McDougal's opinion that Guidepost's investigation was not an "independent" investigation, Ms. McDougal includes as a "new" opinion in her August Report that Guidepost's actual client was the ECSBC, not the SATF, as stated in the Engagement Letter. (August Report at 14-16.) As set forth above, as of, presumably, June 4, 2025, when she received documents from Plaintiffs' counsel, Ms. McDougal was in possession of the Engagement Letter, which clearly states that the SATF is the client, and "[a]s authorized by the SBC, Guidepost will act under the leadership and take direction and guidance from the SBC Task Force … while engagement with the Committee on Cooperation of the Executive Committee as described further herein." (Engagement Letter, Section 2.1-2.3.) Bruce Frank, on behalf of the SATF, and Pastor Rolland Slade, on behalf of the ECSBC, both signed the Engagement Letter. (*Id*.) Further, the Engagement Letter states:

> No attorney-client relationship will be formed between Guidepost and any other party. Accordingly, communications between Guidepost (including its employees and agents) on the one hand, and the Committee on Cooperation, the Task Force, the SBC, the Executive Committee, and/or the Credentials Committee will not be protected by the attorney-client privilege.

---

[10] Ms. McDougal's attempt to criticize Guidepost's representative as being "unprepared" on the licensure issue is entirely misplaced, as Plaintiffs did not include this issue as a topic in Plaintiffs' 30(b)(6) Notice. (August Report at 11 and n.2.)

(Engagement Letter, Section 3.3.)

Additionally, prior to submitting her June Report, Ms. McDougal was in possession of not only Guidepost's 30(b)(6) deposition taken in *Hunt v. Guidepost Solutions LLC*, Case No. 3:23-cv-00243 (M.D. Tenn.), but also the Guidepost Report itself, both of which detailed the interplay between Guidepost, the ECSBC and specifically the Committee on Cooperation, and the SATF, as set forth in the Engagement Letter. (*See, e.g.*, Guidepost Report at 4, 15-18, 149 (Doc. No. 364-3); *see also* June Report at 54.) Further, Ms. McDougal concedes that, in advance of the June Report, she had access to the Messengers mandate for the investigation as well as the internet. (McDougal Depo. 97:11-14, 121:8-12.)

Nothing in the ECSBC's or Guidepost's 30(b)(6) deposition is contrary to or changes the terms of the Engagement Letter, nor warrants a newly "updated" opinion as to which entity was Guidepost's client. *See Bentley,* 2016 WL 5867496, at *4, *supra* (supplementation is improper when the supplemental information was available prior to the initial expert disclosure).

### C. Updated Opinion 3 – Improperly relying upon Doug Leff's expert report, Ms. McDougal challenges Mr. Leff's opinion that Guidepost engaged in an inspection rather than an investigation.

In what can only be construed as improper rebuttal without leave of Court,[11] Ms. McDougal includes in her August Report an updated opinion that Guidepost conducted an investigation rather than an inspection as it relates to the Engagement Letter's Second Mandate. (August Report at 12-13; *see also* McDougal Depo. 155:1-157:19.) Doug Leff, Guidepost's investigative expert, provided his report on July 19, 2025, 30 days after Ms. McDougal, and he opined that, pursuant to investigative standards and protocols and the Second Mandate, Guidepost's "investigation" of the ECSBC's mishandling of abuse allegations, including those raised by Jennifer Lyell against David

---

[11] Initial Case Management Order, Section I (Doc. No. 99.)

Sills, was actually an inspection, as it included an extensive review of documents provided to Guidepost from, among others, the ECSBC, its officers, and its members to evaluate ECSBC's conduct. (Leff Report at 11-12, 21-25;[12] *see also* Engagement Letter, Section 3.1.) Ms. McDougal, having reviewed Mr. Leff's report in this matter as well as his expert report in the *Hunt* matter, "bolstered" her opinion that Guidepost engaged in an investigation, subject to various rules and protocols as cited by Ms. McDougal.

In any event, Ms. McDougal did not need to wait on information from Guidepost's 30(b)(6) deposition to "bolster" these opinions (August Report at 45-46, 54, 59-60, 67-68) regarding Guidepost's work. Since July 30, 2024, Plaintiffs were in possession of Guidepost's Verified (by Ms. Tongring) Supplemental Responses to Interrogatories, setting forth, among others, the individuals Guidepost interviewed and the steps it took in reviewing the actions of David Sills, in the context of the ECSBC's mishandling of the Lyell abuse allegations. A copy of Guidepost's July 30, 2024 Verified Supplemental Responses was previously filed under seal in this matter in connection with Guidepost' Motion for Summary Judgment. (Doc. No. 373.40 – Exhibit 37.)[13] Well in advance of the June 2025 disclosure deadline, Plaintiffs and therefore, Ms. McDougal, would have been in possession of the Guidepost Report, documents produced by both Guidepost and Jennifer Lyell, and Guidepost's 30(b)(6) testimony and the April 1, 2025 summary judgment opinion of Judge Campbell in the *Hunt* matter.[14] Again, the information Ms. McDougal claims to have necessitated the revision and bolstering of her opinion regarding the distinction between an

---

[12] A copy of Mr. Leff's Report in this matter is attached as **Exhibit 5**.
[13] Guidepost 2024 Verified Supplemental Response to Interrogatory No. 21, which includes an objection that Plaintiffs' inquiries proceed from an erroneous premise regarding the scope of Guidepost's "investigation" as set forth in the Engagement Letter, cites, among others, (1) first-hand conversations with Jennifer Lyell regarding detail of sexual abuse at by a person in a position of greater power, (2) email from Dr. Mohler, (3) Baptist Press articles acknowledging wrongdoing in the reporting of Jennifer Lyell's story, and (4) David Sills's failure to come forward, complain, sue, demand, or make any statement regarding the Baptist Press articles.
[14] *See* McDougal Depo. 91:6-92:4; 99:12-100:17, 149:4-150:7

investigation or an inspection was in Plaintiffs' possession in 2024 and was certainly available to her prior to June 2025.

### D. Updated Opinion 4 – Samantha Kilpatrick allegedly created a "conflict of interest" and the impression of bias for Guidepost because of her work multiple years prior to the Guidepost investigation.

In her June Report, Ms. McDougal discusses Samantha Kilpatrick's work on the Guidepost Report, her ties to the Southern Baptist community, her Southern Baptist faith, and her contribution to the Southern Baptist's Caring Well curriculum, as bases for her opinion that Guidepost did not conduct an independent investigation. (June Report at 27-28.) In her August Report, Ms. McDougal expands that opinion, concluding that Ms. Kilpatrick was "biased in conducting the investigation and created an appearance of bias." (August Report at 18-20, *see also id.* at 33, 40-41.) She cites as support for her opinion Ms. Kilpatrick's work on the Caring Well curriculum – in 2019 – something she specifically referenced in her June Report. Ms. McDougal also cites to Ms. Kilpatrick's comments in that 2019 conference, as evidence of bias, which she obtained through publicly available sources. (McDougal Depo. 153:3-154:24.)

Any reliance placed on the Guidepost's 30(b)(6) testimony in this matter to bolster her opinions is wholly improper as nothing about the 30(b)(6) testimony, as it relates to Ms. Kilpatrick, was new. The 30(b)(6) deposition exhibits utilized in Plaintiffs' line of questioning about Ms. Kilpatrick were all focused on events occurring in the 2019-2021 timeframe, when Ms. Kilpatrick was neither an employee nor an independent contractor. (Guidepost 30(b)(6) Depo. 54:14-55:12, excerpts of which are attached as **Exhibit 6**.) Indeed, Exhibits 8 and 9 to the deposition were documents Plaintiffs' counsel pulled from the internet – to which Ms. McDougal concedes she had access at all times relevant. (McDougal Depo. 97:7-14; Guidepost 30(b)(6) Depo. 55:13-62:4). The other exhibits utilized by Plaintiffs' counsel on the topic of Ms. Kilpatrick had been produced

13
Case 3:23-cv-00478    Document 398    Filed 10/14/25    Page 13 of 19 PageID #: 12586

in discovery by third-party Lifeway in October 2024 (Exhibits 11 (Guidepost 30(b)(6) Depo. 68:1-12), and by Guidepost in June 2024 (Exhibit 13 (*id*. at 74:1-77:5))[15] long before Ms. McDougal was ever contacted to serve as an expert witness.

### E. Additional Updated Opinions – Guidepost's alleged conflicts of interest included interactions between Rachel Denhollander, Jennifer Lyell, and Guidepost.

Although Ms. McDougal's June Report includes extensive discussion regarding Rachel Denhollander, Jennifer Lyell, and their interactions with Guidepost (June Report at 13-30, 36, 46), the August Report includes at least three additional "updated" opinions on these issues, notwithstanding the fact that the source material for the alleged facts forming those opinions was in Plaintiffs' position well in advance of the June expert disclosure deadline. On page 28 of the August Report, Ms. McDougal adds as a criticism of Guidepost that Ms. Denhollander recommended Guidepost to the Southern Baptist Theological Seminary prior to Guidepost's engagement with the SATF to produce the Guidepost Report. Dr. Albert Mohler testified to this fact in October 2024, and a copy of his deposition was provided to Ms. McDougal by Plaintiffs' counsel in advance of the June Report. (June Report at 54.)

At pages 29-31, two additional updated opinions regarding Ms. Denhollander, Ms. Lyell and Guidepost are included in which Ms. McDougal relies upon the Engagement Letter as well as exhibits to Guidepost's 30(b)(6) deposition, presumably Exhibits 12-15, 24-25,[16] and Guidepost document GPSILLS_009717-18. Again, this information was produced either by Guidepost or Jennifer Lyell in discovery in advance of the June 2025 disclosure deadline.

---

[15] Exhibit 13, produced in discovery a year prior to expert disclosures, was specifically referenced as an "updated opinion" at page 33 of the August Report.
[16] *See* Guidepost 30(b)(6) Depo. 65:14-67:25, 72:16-73:19, 78:10-79:3, 80:1-14, 140:18-141:14, 144:8-24.

14
Case 3:23-cv-00478    Document 398    Filed 10/14/25    Page 14 of 19 PageID #: 12587

### F. Plaintiffs' gamesmanship regarding their expert disclosures is neither harmless nor justified.

Plaintiffs argue that Ms. McDougal's "updated" August Report is harmless because Defendants had the opportunity to depose Ms. McDougal following the supplementation of her June Report. However, "[harmlessness] involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Yoe*, 2017 WL 11218929, *4 (quoting *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003).) Plaintiffs claim the "updates" are justified based upon the 30(b)(6) depositions taken in July 2025. The criteria for determining whether the supplementation is substantially justified or harmless include the following: (1) surprise to the party against whom the evidence would be offered, (2) the ability of that party to cure the surprise, (3) the extent to which allowing the evidence would disrupt the trial, (4) the importance of the evidence, and (5) the nondisclosing party's explanation for its failure to disclose the evidence. *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015).

The content of the August Report was not borne from an "honest" mistake or "justified" new information. Plaintiffs waited too long to secure an expert, hurriedly hired one just nine days prior to the disclosure deadline, submitted a "placeholder" report, and then sandbagged Defendants, and particularly Guidepost, with a largely new report based not on the missing 30(b)(6) testimony but on information that was already publicly available and in the possession of Plaintiffs (and Ms. McDougal). It is evident from the above undisputed facts that Plaintiffs never intended to "supplement" Ms. McDougal's report. Instead, Plaintiffs always intended to re-do Ms. McDougal's report under the guise of supplementing it, even allowing Ms. McDougal to go as far as striking facts and opinions in the June Report that Ms. McDougal no longer adopted in the August Report. (*See* Exhibit 2.) Plaintiffs' transparent attempt to obtain additional time to re-write expert reports after the Court denied their request to extend those deadlines should not be

countenanced. That Plaintiffs' eleventh hour hiring of an expert resulted in an incomplete report is not the fault of any of the Defendants.

Ms. McDougal's access to reams of discovery materials and publicly available information prior to June 2025 makes her effort to expand on her "partial" opinions improper and unjustified. These expansions "could have and should have been" included in her June Report, consistent with the Court's expert disclosure deadline. *Estate of Barnwell*, 2016 WL 5938910, at *1. Ms. McDougal's new and bolstered opinions are untimely. *Yoe*, 2017 WL 11218929, *10 (citing *Bentley*, 2016 WL 5867496, at *5). Leave to supplement is not warranted in this matter, and Plaintiffs' motion should be denied in its entirety.

## IV. Conclusion

For the reasons set forth in this Response as well as the Response filed by the ECSBC and Rolland Slade, Plaintiffs' Motion for Leave to Supplement should be denied, in its entirety.

Respectfully submitted,

/s/ John R. Jacobson
John R. Jacobson, BPR #14365
Katharine R. Klein, BPR #19336
Riley & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
(615) 320-3737 *Facsimile*
jjacobson@rjfirm.com
kklein@rjfirm.com

-and-

Steven G. Mintz (admitted pro hac vice)
Terence W. McCormick (admitted pro hac vice)
Scott Klein (admitted pro hac vice)
Alex Otchy (admitted pro hac vice)
Mintz & Gold LLP
600 Third Avenue
25th Floor
New York, NY 10016
Telephone: (212) 696-4848
mintz@mintzandgold.com
mccormick@mintzandgold.com
klein@mintzandgold.com
otchy@mintzandgold.com

*Counsel for Guidepost Solutions LLC*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via the ECF Court System on this 14th day of October, 2025 on the following:

| | |
|---|---|
| John W. Barrett<br>Katherine Barrett Riley<br>Sterling Aldridge<br>Barrett Law Group, P.A.<br>P.O. Box 927<br>404 Court Square North<br>Lexington, MS 39095<br>dbarrett@barrettlawgroup.com<br>kbriley@barrettlawgroup.com<br>saldridge@barrettlawgroup.com<br><br>Shannon M. McNulty<br>Kristofer S. Riddle<br>Clifford Law Office, P.C.<br>120 N. LaSalle Street, 36th Floor<br>Chicago, IL 60602<br>smm@cliffordlaw.com<br>KSR@cliffordlaw.com<br><br>***Attorneys for Plaintiffs***<br><br>James C. Bradshaw, III<br>Wyatt, Tarrant & Combs, LLP<br>333 Commerce Street, Suite 1050<br>Nashville, TN 37201<br>jbradshaw@wyattfirm.com<br><br>Byron Leet<br>Thomas E. Travis<br>Wyatt, Tarrant & Combs, LLP<br>400 West Market Street, Suite 2000<br>Louisville, KY 40202<br>bleet@wyattfirm.com<br>ttravis@wyattfirm.com<br><br>***Attorneys for The Southern Baptist Theological Seminary and Dr. R. Albert Mohler*** | Ronald G. Harris<br>Philip N. Elbert<br>Mariam N. Stockton<br>Satchel Fowler<br>Neal & Harwell, PLC<br>1201 Demonbreun Street, Suite 1000<br>Nashville, TN 37203<br>rharris@nealharwell.com<br>pelbert@nealharwell.com<br>mstockton@nealharwell.com<br>sfowler@nealharwell.com<br><br>***Attorneys for Jennifer Lyell***<br><br>Matthew C. Pietsch<br>Gordon & Rees Scully Mansukhani LLP<br>4031 Aspen Grove Drive<br>Suite 290<br>Franklin, TN 37067<br>mpietsch@grsm.com<br><br>Louis Gino Marchetti, Jr.<br>Taylor, Pigue, Marchetti & Blair, PLLC<br>2908 Poston Avenue<br>Nashville, TN 37203<br>gmarchetti@tpmblaw.com<br><br>***Attorneys for Southern Baptist Convention, Dr. Ed Litton and Dr. Bart Barber***<br><br>Alan S. Bean<br>Starnes, Davis, Florie LLP<br>3000 Meridian Blvd., Suite 350<br>Franklin, Tennessee 37067<br>Abean@starneslaw.com<br><br>***Attorneys for Willie McLaurin*** |

| | |
|---|---|
| Thomas J. Hurney, Jr.<br>Gretchen M. Callas<br>Jonathan Anderson<br>Jackson Kelly PLLC<br>500 Lee Street East, Suite 1600<br>Post Office Box 553 Charleston, West Virginia 25322<br>thurney@jacksonkelly.com<br>gcallas@jacksonkelly.com<br>jlanderson@jacksonkelly.com | Brigid M. Carpenter<br>Ryan P. Loofbourrow<br>Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.<br>1600 West End Avenue, Suite 2000<br>Nashville, TN 37203<br>bcarpenter@bakerdoneslon.com<br>rloofbourrow@bakerdonelson.com<br><br>***Attorneys for Executive Committee of Southern Baptist Convention and Rolland Slade*** |

 

       s/ John R. Jacobson