- ■ *"Reputation Damage Can Emanate From Actions/In-Actions...As well as Words."*

- ■ *"Defamation Cases: Why an Expert Witness is Vital."*

## **RECORD OF TESTIMONY**

Following is a list of the cases that I have provided testimony in some form – depositions, arbitration hearings and trials during the past four years.

Depositions

During this period I have had my deposition taken 22 times:

- January 23, 2020 – *Kenneth L. Creal and Kenneth L. Creal, an Accountancy Corporation v Amitiss Nasiri,* Superior Court of the State of California for the County of Los Angeles

- January 31, 2020 – *Examination Board of Professional Home Inspectors and American Society of Home Inspectors, Inc. v International Association of Certified Home Inspectors and Nickifor Gromicko a/k/a Nick Gromicko.* United States District Court for the District of Colorado

- February 27, 2020 – *Party Animal, Inc. v Evanger's Dog and Cat Food Co, Inc., Nutripack, LLC,* United States District Court, Central District of California.

- June 12, 2020 – *Riley's American Heritage Farms, James Patrick Riley v James Elsasser, Steven Llanusa, Hilary LaConte, Beth Bingham, Nancy Treser Osgood, David S. Nemer, Ann O'Connor, and Brenda Hamlett,* United States District Court Central District of California – Eastern Division

- February 24, 2021 - *Hebrew Health Homes Network, Inc., Arch Plaza, Inc. Arch Plaza Properties, Inc. Aventura Plaza, Inc. Jackson Plaza, Inc., Hebrew Homes of Miami Beach, Inc., Ponce Plaza, Inc. Ponce Plaza Properties, Inc., Hebrew Home Sinai, Inc., South Beach Plaza, Inc., Hebrew Homes of South Beach, Inc., South Beach Nursing and Rehabilitation Center, Inc., University Plaza Rehabilitation and Nursing Center, Inc., University Plaza Properties, Inc., Hebrew Homes management Services, Inc. v* Greenberg Traurig, P.A., a Florida Corporation, Greenberg Traurig, LLP, a New York Limited Liability Partnership and William B. Eck. Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida

- April 27, 2021 – *Russ Newman v American Psychological Association (APA), David H. Hoffman, Sidley Austin LLP and Sidley Austin (D.C.) LLP.* American Arbitration Association, Washington, D.C.

- June 18, 2021 - *The Law Offices of Brenden R. Appel and Brenden R. Appel v Georgia's Restaurant and Pancake House, Inc. and Harry Kulubis.* Circuit Court of Cook County, Illinois County Department, Law Division.

- December 10, 2021 – *Legno Bastone, Inc. v Provenza Floors, Inc. and Brian J. Sullivan.* In the Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida Civic Action.

- March 16, 2022 – *Doan Restoration of Arizona, LLC and Doan Restoration of Michigan, LLC v Paul Curtis,Jane Doe Curtis and PR&C Specialities, LLC*, Superior Court of the State of Arizona, Maricopa County.

- April 7, 2022 – *Michael Coleman and Jamael Stewart v City of Delray Beach.* In the Circuit Court of the 15th Judicial District in and for Palm Beach County, Florida.

- September 30, 2022 – *Linda Fairstein v Netflix, Inc., Ava DuVernay and Attica Locke,* United States District Court, Southern District of New York.

- October 31, 2022 – *Cumberland Family Medical Centers, Inc., d/b/a Health Kids Clinics v James A. Miller, M.D. and Blue Grass Clinics, PLLC.*, Commonwealth of Kentucky, Casey Circuit Court.

- November 29, 2022 – *San Juan Products, Inc. and American Environmental Corporation v River Pools & Spas, Inc.; River Pools Franchising, Inc.; and Thursday Pools, LLC.*, The United States District Court for the Middle District of Florida, Tampa Division.

- December 14 and 20, 2022 - *E. Jean Carroll v Donald J. Trump,* Supreme Court of the State of New York, County of New York.

- February 6, 2023 - *E. Jean Carroll v Donald J. Trump,* Supreme Court of the State of New York, County of New York.

- February 24, 2033 – *Michael Coleman v City of Delray Beach.* In the Circuit Court of the 15th Judicial District in and for Palm Beach County, Florida.

- April 3, 2023 – *John Cooksey v Roosevelt Benford.* Superior Court of New Jersey, Law Division, Camden County.

- June 19, 2023 - *Rexidence Residential Services, LLC v The Regents of the University of California.* Superior Court of the State of California, County of Orange – Central Justice Center.

- August 24, 2023 - *Pacific Coast Family Entertainment, LLC v Indoor Golf Design, LLC*, Superior Court of the State of California for the County of Monterey.

- October 4, 2023 - *Kaitlyn Kuchar v Western Reserve Academy, Thomas Siegenthaler v Western Reserve Academy and Suzanne Walker Buck*, In the Court of Common Pleas, Summit County, Ohio

- May 30, 2024 – *Karla K. Allsberry v Judge Patrick S. Flynn, Kathy Hall and Circuit Court of Lincoln County, Missouri*, In the Circuit Court of Lincoln County, State of Missouri.

8

- June 21, 2024 - *Theodore Topolewski, DMH v Madison Parish Police Jury, Madison Parish Service District Hospital Board of Commissioners, and Madison Parish Service District Hospital d/b/a Madison Parish Hospital*, United States District Court for the Western District of Louisiana, Monroe Division.

<u>Arbitration Hearings</u>

During this period, I have testified at the following one arbitration hearing:

- On December 11, 2019, I testified at an arbitration hearing in the case of *Susan M. Packard v Morgan Stanley,* Financial Industry Regulation Authority, Washington, D.C.

<u>Trials</u>

During this period I have testified in five jury trials:

- On January 24, 2020, I testified in the trial of *Harry Loveland; Charlene Loveland v Sol Del Cielo, LLC; Abraham Sandoval, Jr, an individual; M. L. Culkin Construction Company, Inc.,* Superior Court of California County of Los Angeles

- On February 24 and March 2, 2020, I testified in the trial of *Justice Protection Project, Lenore Albert v Xcentric Ventures LLC, Yelp, Inc. George Olivo, Megan Nikolic, Pam Ragland, Karen Rozier, Sheryl Alexander and Rene Dawson,* Superior Court of California County of Orange

- On February 25, 2020, I testified in the trial of *Sandra Linn v Scottsdale Police Department,* United States District Court, District of Arizona

- On May 4, 2023, I testified in the trial of *Party Animal, Inc. v Evanger's Dog and Cat Food Co, Inc. and Nutripack, LLC,* United States District Court, Central District of California.

- On September 27, 2023, I testified in the trial of Pacific Family Entertainment Group, LLC d.b.a. Links Club v Interior Golf Design, LLC, Superior Court of the State California, County of Monterey.

During this period, I have testified in one bench trial:

- On September 21, 2021 I testified in the trial of *Kenneth L. Creal and Kenneth L. Creal, an Accountancy Corporation v Amitiss Nasiri,* Superior Court of the State of California for the County of Los Angeles.

## **CASE BACKGROUND**

<u>Reason for Lawsuit</u>

Following is the Plaintiff's stated reason and justification for the filing of this lawsuit. As a result of his attendance at the "Save American Rally" at the Washington Monument in Washington, D.C. on January 6, 2021, the Defendants incorrectly assumed he was at and possibly participated in the "riot" leading to the break-in of the Capitol Building on the same

9

day. They proceeded to make those assertions in various forms of communications which generated significant online and media exposure that led to significant reputation damage to him both within the school community and the general populace. When they became aware he was not at the Capitol Building rioting, they failed to correct their error. Eventually this led to public condemnation at two board meetings and eventually his termination as a teacher. The reputation damage has had a devastating negative impact on him professionally and personally.

Profile of Parties in This Case

A brief profile of the litigants as well as other entities and individuals germane to the issues that resulted in this lawsuit is as follows:
Plaintiff

- Jason Moorehead ("Moorehead") – A resident of Allentown, Pennsylvania, he was a former teacher at the Raub Middle School in the Allentown School District for approximately 18 years.

Defendants

- School District of the City of Allentown ("ASD") – A public school district located in the City of Allentown, Pennsylvania.

- Board of School Directors of the School District of the City of Allentown ("Board") – The governing body of the ASD.

- Thomas Parker ("Parker") – A resident of Michigan, he was the Superintendent of the ASD up until May 1, 2021.

- Anthony Pidgeon ("Pidgeon") – A resident of Pennsylvania, he was Executive Director of Human Resources for the ASD until November 2021.

- Jennifer Ramos ("Ramos") – A resident of Pennsylvania, she was Assistant Superintendent and/or Acting Superintendent of the ASD during all relevant events. She is responsible for technology, finance, resources, facilities and operations.

- Marilyn Martinez ("Martinez") – A resident of Pennsylvania, she was interim Superintendent of the ASD between May 1, 2021 and July 22, 2021).

- John D. Stanford ("Stanford") – A resident of Pennsylvania, he has served as Superintendent of the ASD from around November 15, 2021 to the present.

- Nancy Wilt ("Wilt") – A resident of Pennsylvania, she was President of the Board of the ASD during all relevant events and formerly the Vice President.

- Nicholas Miller ("Miller") – A resident of Pennsylvanian, he was a member of the Board of the School District at all relevant times and also was Vice President in 2021.

- Lisa Conover ("Conover") – A resident of Pennsylvania, she has served as Vice President of the Board of the ASD since late 2021.

10

- <u>Phoebe D. Harris ("Harris")</u> – A resident of Pennsylvania, she was a member of the Board of the ASD at all relevant times.

- <u>Audrey Mathison ("Mathison")</u> – A resident of Pennsylvania, she is the current President of the Board, a past President, headed committees and was a member of the Board of the ASD at all relevant times.

- <u>Charles F. Thiel ("Thiel")</u> – A resident of Pennsylvania, he was a member of the Board of the ASD at all relevant times.

- <u>Patrick Palmer ("Palmer")</u> – A resident of Pennsylvania, he is a member of the Board of the School District, beginning on January 16, 2022.

- <u>LaTarsha Brown ("LBrown")</u> – A resident of Pennsylvania, she is a member of the Board of the ASD, beginning on January 16, 2022 and oversees communications).

- <u>Jennifer Lynn Ortiz ("Ortiz")</u> – A resident of Pennsylvania, she is a member of the Board of the ASD, beginning on December 16, 2021).

<u>Others</u>

- <u>John Freund ("Fruend")</u> – A resident of Pennsylvania, he was the Solicitor and legal counsel for the ASD.

- <u>Francis Alexander Malofiy ("Malofiy")</u> – Attorney whose law firm was retained by Moorehead to represent him.

- <u>Jeffrey T. Sultanik ("Sultanik")</u> – An Attorney was the law firm of Fox Rothchild, he was appointed to be the Hearing Officer for the three hearings on Moorehead's employment status.

- <u>Lucretia Brown ("LucretiaB")</u> – Director of Equity for the ASD.

- <u>The Donovan Group ("Donovan")</u> – A communications firm with an office in Philadelphia, Pennsylvania, it represented ASD.

<u>Plaintiff Background</u>

A native of Orange County, California, Moorehead attended Western Washington University where he received his Bachelor of Science degree in Political Science. He subsequently attended Lehigh University where he obtained a Master's degree in Education. Moorehead began teaching at Raub Middle School in May of 2003 after having relocated from Seattle, Washington for the purposes of working in the disadvantaged minority community. He has instructed both seventh and eighth graders as well as tutored, been involved in after school programs and coached sports at the school. He is divorced and has two children. He is currently employed by the law firm of Frances Alexander, LLC.

11

Defendants Background

ASD is located in the Lehigh Valley region of Eastern Pennsylvania and in 2016-2017, was the fourth largest school district in Pennsylvania. It operates 24 schools, ranging from elementary to high schools. The Raub Middle School, at which the Plaintiff was an instructor, has an ethnic makeup of students that were 10% Caucasian, 15% African-American and 70% Hispanic.

Plaintiff's Washington, D.C. Trip

On January 6, 2021, The Plaintiff traveled to Washington, D.C. to attend the "Save American Rally" at the Washington Monument which featured President Donald Trump as a speaker. He traveled with his brother-in-law and three other individuals on a bus provided by the 9-12 Project. After he left the rally, while waiting for the bus to return to Pennsylvania, he ate a hot dog and made four posts to his private Facebook account. They included:

- A photo of him holding a Benjamin Franklin-created flag (partially in view) with the slogan "Join or Die" on it which was originally created to encourage colonial unity. His text on the post was *"Doing my civic duty."*

- A photo of him holding the hot dog with the text *"Mostly peaceful protest. Not aware of any violence at the time."* (A reference to how CNN had described riots in the past.)

- In response to a post which stated *"Don't worry everyone the capitol is insured."* He put up a post with a text of one word *"This"*. (This he reported was in reference to comment by" left wing" rioters in Summer of 2020 when billions of dollars in property damage was caused by protests.)

- Reposted a meme making fun of the photo taken during the January 6 rioting at the Capitol that showed a man in buffalo horns sitting in the house chamber during the January 6 break-in with the text *"Protestor challenges Pelosi for speaker via trial by combat circa 2021."* The text in his post said, *"Wrong on so many levels but hilarious none the less."* (The Plaintiff stated that he felt what the man was doing was wrong but the meme was nevertheless humorous. To show his true feelings, in private conversations that day, he told people the man was an *"asshole"* and a *"loser."*)

    (Note: In all the photographs posted on his Facebook account that day, none of them Contained images of the Capitol building nor of any type of skirmish or confrontation.)

When the bus was ready to depart, the Plaintiff boarded it and returned to Pennsylvania never leaving the area of the Washington Monument (which is 1.5 miles from the Capitol building).

In his deposition, the Plaintiff was questioned as to why he attended the rally. He testified:

> Q. *What was your purpose for going to the rally?*
> A. *I have tried to attend political events, especially when you have an opportunity to hear politicians. Yes. Obviously I'm a Trump supporter in general, not everything, obviously, but in general, I supported President Trump, being conservative. I wanted to share support for a man I believed in, who I thought had done a decent job as president and have the opportunity to hear him speak one more time before the changeover in leadership. So, no, I wasn't down there because I believed the*

12

*election was stolen. I was down there because, in part, I wanted to support Trump and, in part, because I wanted to, you know, show support for -- to ensure clean elections and fair elections, especially when it involves the media.*

Q.   *In any way did you ever voice support for the people who invaded the Capitol building?*

A.   *Not at all. I think it's a crime that they went in.*

Q.   *Did anything that you posted on January 6th ever identify, state, or imply that you were at the US Capitol building on January 6, 2021?*

A.   *Not at all.*

Community Reaction

The Plaintiff's Facebook account is private and therefore the ability of the general public in the community to view his posts would only happen if the posts were republished by other individuals. This occurred and awareness in the community of his trip to Washington was spread throughout the community even before he returned home. Post on social media to included:

*"Your teacher, Jason Moorehead, participated in the riot and attack on our nation's Capitol yesterday and bragged about it on FB. He should not be teaching children."* (Deidre Lutes)

*"Please take care of your Jason Moorehead situation this is not acceptable!*  (Clary Peralta Colon)

*"This man no longer deserves the position of "teacher" in a public school. If he is so opposed to the laws of this Nation, he should not have access to our Nation's children and he should not benefit from the taxes of our Nation's citizens."  Anyone who supports RACIST TRUMP is a RACIST."*(Pat Smith*)*

(Note:  Additional social media posts will be located in a later section of this report.)

This is evidence that residents of the community knew it was Moorehead that was the "teacher" referenced by the ASD in its statement even before it was created and distributed.   In her deposition, Ramos acknowledged this in the following excerpt of her testimony:

Q.   *You knew that people believed that Jason Moorehead was physically present at the U.S. Capitol building on January 6, 2021.  Correct?*

A.   *That's correct.*

Community awareness continued to increase even without public identification of the Plaintiff as the teacher who was in Washington, D.C. The reactions progressively became angrier as time passed as evidenced by an email sent to Wilt two days later on January 8, by a local citizen, Dave Vegara, who issued this warning:

*"If he participated in the storming of the Capitol Building where 5 people died, including a police officer, and was involved with terrifying Senators, members of Congress, and the Vice President of the United States, not only will we release his name but also his home address, his family members names, etc."*

(Note: Vegara is a public relations executive and professional communicator.)

13

Initial Inactions and Actions of ASD

ASD officials were made aware as early as 4:36 p.m. on January 6 that the Plaintiff had been in Washington, D.C. when they began to receive notifications of his Facebook posts from people inside and outside of the ASD. The sequence of inactions and actions taken were as follows:

- At no time did anyone from the ASD ask the Plaintiff if he was at the Capitol Building and whether he participated in the riot. This was verified by Mathison in her deposition.

- At 7:50 a.m. on January 7, Pidgeon called Moorehead and instructed him not to come to school because an investigation was commencing.

- Pidgeon wrote to Moorehead on January 7. Following is the text:

    *"This will confirm my earlier direction to you that based upon certain social media posting that raise serious concerns about your involvement in the civil unrest that occurred at the United States Capitol Building yesterday and the substantial disruption that has already occurred in by the public in reaction to those postings, you are hereby assigned to home with pay and benefits pending further investigation of your involvement. While your assignment to home remains you are relieved of your teaching duties and you are directed to have no contact with students, or staff members outside of union representation. In the meantime, if you have not already done so you are strongly advised to take down any posting you have placed on social media.*

    *We will be in contact with you in the near future."*

- At 11:45 a.m., Pidgeon sent Moorehead an email requesting he attend a meeting on January 8 to discuss the situation.

- The FBI contacted the ASD the morning of January 7 and reported holding its own investigation and asked questions. Moorehead was never informed of this contact by the FBI.

- A statement was prepared to be sent out under the name of Parker. It was written, edited and/or approved by Parker, Wilt, Ramos and LBrown with consultation from the Donovan firm. Following is the initial part of the statement:

    *"On January 7, 2021, the Allentown School District (ASD) was made aware of a **staff member who was involved in the electoral college protest that took place at the United States Capitol Building** on January 6, 2021.*

    *We understand that many members of our community are upset by the image. At the same time, the district has an obligation to respect the First Amendment rights of our staff and students.*

    *Because of the emotion and controversy stirred by the events of the January 6, 2021, the teacher has been temporarily relieved of his teaching duties until the School District can complete a formal investigation of his involvement."*

*The chaos that took place in the nation's capital yesterday was deeply troubling and acknowledge that these actions have caused immense pain in our community ....."*

(Note: Evidence showed that the "staff member" was never at the Capitol Building so this was a false statement.)

- The statement was issued and disseminated through the following communications channels:

  - ■ Placed on the ASD website.
  - ■ Placed on the ASD Facebook and Instagram pages.
  - ■ Placed on the Raub Middle School Facebook and Twitter pages.
  - ■ Also disseminated through School Messenger, Let's Talk platform, Robo Calls and sent to 2,400 staff members.

- On January 8, the statement was the basis of a news article in The Morning Call, a daily newspaper serving the Lehigh Valley. The article was titled "Allentown School District Removes Teacher Who Took Part in Washington, D.C. Protest." Following are the first few paragraphs of the article:

  *"A Pennsylvania teacher was suspended this week after taking part In Wednesday's riot at the U.S. Capitol, pending an investigation, the Allentown School District said, according to a report.*

  *The unnamed educator was among a number of people who have reportedly been fired or asked to resign from jobs after being identified as a Capitol rioter, The Morning Call in Allentown reported."*

  Later in the day, the publication issued a new version of the article after an interview with Freund and added the following text:

  *"The district is taking the matter seriously and has started the process of investigating the extent of the teacher's involvement [in the Capitol Building riot], district solicitor John E. Freund III said."*

  *"The district has to balance the employee's right to free speech and association, against teachers' duty not to participate in or advocate un-American or subversive doctrines," he said, referencing the Pennsylvania public school code.*

  The Morning Call article was picked up and published in other media nationally including the New York Post, Politico and Fox News.

- To counter the negative exposure in the media, which was damaging his reputation, the Plaintiff began doing interviews himself to attempt to set forth the fact that he was not at the Capitol Building and did not participate in the riot and also to mitigate the damage to his reputation. Following is a list of the interviews he conducted with the media:

  - ■ Smerconish, CNN, Jan. 23, 2021
  - ■ The Dom Giordano Program – January 25, 2021/August 29, 2022
  - ■ NBC10 – January 26, 2021

15

- WFMZ-TV – January 2021
- New York Times – January 21, 2021
- Associated Press – January 21, 2021

- On January 8, a 1-1/2 hour Zoom meeting was held with Moorehead by Pidgeon, Fruend and Mark Leibold (a union representative).

- On January 8, A Garrity Notice was sent to the Plaintiff officially informing him that he was under investigation. An excerpt from the notice follows:

  *"You are hereby ordered to fully cooperate with the investigating official(s). Your failure to cooperate will create an objective and subjective fear of termination………….."*

  Plaintiff was required to answer questions which Plaintiff's legal counsel claims were asked on behalf of the FBI.

- On January 14, to protect his interests, The Plaintiff sought legal representation and retained the law firm of Francis Alexander, LLC.

- On January 21, Malofiy sent a "cease and desist" letter to the ASD on behalf of Moorehead. An excerpt from the letter:

  *"You are directed to cease and desist your current course of conduct suspending Mr. Moorehead and to reinstate him. At all points, he was one mile away from the Capitol. He never left the Washington Monument."*

- On February 8, 2021, in response to his letter, Freund sent Malofiy a letter detailing the reasons for Moorehead's suspension.

  *"The initial reason for assignment to home was to investigate the extent of Mr. Moorehead's involvement in the events of January 6 to determine whether he was involved in any activity that could constitute a violation of Section 1122 of the Pennsylvania School Code.*

  *A secondary reason for his assignment to home was to investigate and consider his decision to post items on the internet that he knew or should have known posed a risk of undermining his role and credibility as a teacher or otherwise posed a risk of disruption to the educational process or was in violation of district policy regarding off duty conduct of teachers.*

  His letter also addressed the issue why a demand was made for the return of the laptop:

  *Review of district owned devices is a common practice in teacher investigations. In this case it was particularly necessary to corroborate or contradict the information supplied during his interview that he did engage various extremist websites, which if done through the district network or with district equipment would have been a violation of the district's Acceptable Use Policy.*

16

Investigations, Meetings and Community Protests

- The FBI concluded its investigation and issued its findings which concluded that there was no evidence that the Plaintiff was at the Capitol Building on January 6 not did anything illegal. Its report concluded:

   > "FBI had not -- has not opened a case on Jason Moorehead as they have no information that he was directly involved in the incident at the U.S. Capitol Building, nor do they have any investigation any information that he was near the U.S. Capitol Building. Agent Jacobs could not comment on other pending investigations, but did say that no individual that was on the bus trip which Jason Moorehead was on that day has been charged with any offenses; and the FBI does not have information that anyone on that bus was involved in the incident at the U.S. Capitol Building or near the U.S. Capitol Building."

- A local organization, Promise Neighborhoods of the Lehigh Valley, initiated a Change.org petition drive to force the removal of the Plaintiff from the ASD. With its petition, it provided the following justification:

   > "White supremacists and terrorists do not belong in our country, let alone teaching children. The teacher from ASD who stormed the Capitol on January 6th in attempt to execute members of Congress and <u>overthrow our government deserves to be fired and forever remembered as a traitor to our country</u>."

- On January 28, Moorehead watched the ASD Board Meeting on Zoom at which some people who spoke offered supporting views.

- On February 11 and 25, at the ASD Board meetings, a forum was provided for the public to offer their comments about the Plaintiff's visit to Washington, D.C. on January 6. With the active communications and promotion of the meeting by Promise Neighborhoods, a strong showing of local residents attended and Moorehead was portrayed as a racist, terrorist and insurrectionist.

- On July 16, Pidgeon sent a letter to Moorehead informing him that the ASD's investigation of his actions on January 6 had concluded. He stated its findings were:

   > "After fully investigating your involvement in the events of January 6, 2021, in Washington, D.C., the district has concluded that your presence at the January 6th gathering did not violate School Board policy 419 relating to teacher non-school activities. The district does conclude, however, that you violated the district's acceptable use policy by using your district-owned electronic equipment for non-school purposes."

   He informed the Plaintiff that he would be reinstated under three conditions and added a warning:

   - "...you are to use the district electronic equipment for school purposes as directed by the district policy.

   - You are expected to teach according to the Pennsylvania Public School Code

17

*and Standards, implement the ASD curriculum with fidelity, and avoid offending the morals of the community of which you serve and that may set a bad example for students.*

■ *You are required to undergo training in cultural competencies related to the history of African Americans and Hispanics in U.S. History.*

*Failure to adhere to these requirements may result in further disciplinary action including the possibility of termination."*

- On August 16, Moorehead sent the following letter to Pidgeon in response:

"T*here is no way that I can return to the Allentown School District given the way the District has publicly vilified and defamed me, poisoned the community against me, put me and my family's safety in jeopardy, and never corrected the record.*

*I was a 17-year teacher with no discipline or complaints. Yet, on January 7, 2021, without even speaking with me, the District publicly and falsely claimed that I participated in the violent riots that took place at the US Capitol Building on January 6th, and suspended me indefinitely. The District told the media that the basis for my removal was that I had engaged in un-American and subversive conduct. This is flatly unconstitutional and factually false. I was nowhere near the Capitol Building and did nothing wrong.*

*I was given no notice or chance to defend myself, which is also unconstitutional. These attacks on myself also directly violated the Collective Bargaining Agreement which only allow teachers to be disciplined for just cause and prohibits the District from publicly criticizing teachers. Worse, the District has known since January 8th that I was never near the riots, yet they have deliberately remained silent and refused to correct the record.*

*As a result of the District's inexcusable conduct and omissions, I was verbally attacked at school board meetings and slandered mercilessly on social media. My private address and phone number was posted. I received death threats and other threatening phone calls. My wife and kids were scared senseless. We had to install security cameras and file police reports. This has turned my world upside down.*

*Because of the District, the community and school think that I participated in a dark moment in American history and they hate me for it. Google my name and look what pops up.*

*You now send me a letter which pretends as if the last 7 months did not happen. Your letter only states that I will be reinstated to a different school if I take sensitivity training—as if I did something wrong. I cannot state strongly enough that I reject what you and the District are trying to do.*

*You cannot pretend as if you did not illegally destroy my life and career.*

18

*For the last 17 years, I have been a dedicated and effective teacher in the Allentown School District. Raub Middle School, its faculty, students, and community have been like my second home. I have poured my soul into being a part of the Raub Family. While many look to leave the district to teach in other settings, I have jumped at opportunities to become even more involved in the lives of our students. As a teacher, multiple sport coach, advisor to numerous clubs, 21st century participant, and summer school teacher, I have always tried to make a positive impact on the lives of my students. My record speaks for itself. I have had solid teacher observations, a clean professional file, multiple requests to partner with colleges and universities in taking on student teachers, and my own colleagues have chosen me as the team leader. I am proud to say that in all those years, I have not had one complaint filed by a student or parent or had one disciplinary action against me from human resources.*

*Every relationship is built upon trust. You destroyed the trust I had with my students, parents, and the community. You have made it impossible for me to trust the District; how can I return to an employer who has defamed me, will not correct the record, and has no concern that it illegally violated my rights? You have created a hostile work environment.*

*Accountability matters. The District and Board need to publicly post an apology on the website and social media unequivocally correcting the record and clearing my name, and send the apology to the newspapers and news stations in Allentown. They also need to send an email to all students, parents, teachers, administrators, and staff doing the same. There also needs to be mandatory training for all staff and Board Members on free speech and due process so that this never happens again.*

*I have asked for accountability for 7 months but the District has failed to correct the false statements that destroyed my life, making that harm permanent."*

In his deposition, Moorhead further addressed the issue of his not returning to work because of the hostile atmosphere he would face and his concerns about his personal safety. Following are some excerpts from his testimony:

> *Q.  Now, do you have -- I've heard it through other depositions, but I guess now is your opportunity for you to tell us, what were the reasons why you did not return to work?*
>
> *A.  Because the statement by the school district and Thomas Parker on January 7th which told and confirmed to the community that I had been an active participant in a riot and showed me some people had information or misinformation about whether I had a role in that, with my name already being known, confirming that I was there, so everybody who may or may not have hatred either towards the rally or hatred towards the violence turned that hatred towards me. We've neglected to speak about the board meetings or board members colluding with the community.*
>
> *Q.  Do you recall Anthony Pidgeon testifying in his deposition that the community outrage was so great, you couldn't return to any in-school teaching position within the Allentown School District?*

19

A.    I do.

## Loudermill Hearings and Termination

On September 17, ASD notified Moorehead that a Loudermill Hearing would be held to address his employment situation and his attendance was required. The notice outlined the issues to be addressed which were:

- Whether Moorehead's posting of photographs to his social media on January 6, 2021 violated local community standards.

- Whether Moorehead violated the District's Acceptable Use Policy.

- Whether Moorehead violated School Board policy 419 regarding standards of off-campus conduct.

- Whether Moorehead violated the personal day leave policy.

The Loudermill Hearing was held in three sessions as detailed below:

- November 22, 2021    Loudermill Hearing Part I was held at which ASD presented its case.

- December 14, 2021    Loudermill Hearing Part II was held at which Moorehead presented a witness.

- March 16, 2022    Loudermill Hearing Part III at which Moorehead presented more witnesses.

Following the Loudermill Hearings, the ASD offered the following determination from the hearing officers:

> "After a careful review of all the evidence presented, testimony, received, and the briefing of the counsel for Moorehead and the ASD, the Hearing Officers conclude that Jason Moorehead did neglect his duties and should therefore be terminated."

- *The ASD invited Moorehead to return to work, he stated his intention to not work for the ASD in the future, then failed to show up for work.*

- *Moorehead left the ASD no choice but to terminate him when he refused to return to work.*

- *The ASD's decision to terminate Moorhead based upon his willful neglect of duties is both legally and factually supported.*

The ASD also released the following Summation Brief:

> "Jason Moorehead was ordered to return to work in Juily 2021 following an internal investigation into the nature of his involvement and participation into an insurgency and attack on the United States Capitol building. Knowledge of his participation and support

20

*on the insurgency in the community in which he teaches was solely the result of his online activities including postings of his location along with disturbing comments and captions of the events. Despite being ordered to return to work, Mr. Moorehead has refused to do so for almost a year.*

*In sum, Mr. Moorehead has offered no valid reason under the Pennsylvania School Code or his Collective Bargaining Agreement for his refusal to report. As such, the Administration believes the evidence at Moorehead's Loudermill and Termination hearings justify a termination of his employment and respectfully request a recommendation to the Board of Directors that Jason Moorehead be terminated immediately."*

After the release of these findings, on October 16, Wilt formerly notified Moorehead by email of the intention to terminate him:

*"You are hereby notified, pursuant to Chapter XI of the Public School Code, that the Allentown School District will recommend to the Board of Directors that you be removed and dismissed from your employment as a social studies teacher at Raub Middle School."*

Accusations Against Defendants

In this lawsuit, the Plaintiff maintains that numerous actions and inactions attributable to the Defendants have resulted in extensive harm to him both professionally and personally. Following are some of the Defendants' actions that were harmful:

- Failure to talk to him to ascertain whether he participated in Capitol Riots before issuing statement.

- Failure to conduct preliminary investigation prior to suspending him.

- Information provided in writing and verbally to the community and media that was negative and harmful to him.

- Secretly acted as an arm of the FBI while violating his constitutional rights against self-incrimination and unreasonable search and seizures.

- Indefinitely and illegally suspending Plaintiff without Loudermill notice or hearing, and with intent to terminate, for an unconstitutional reason.

- Violation of school policies guaranteeing free expression and affiliation.

- Violation of the CBA prohibition on public criticism of teachers.

- Violation of Constitutional rights guaranteeing free expression, assembly, and affiliation.

- Violation of his property interest in not being suspended without notice.

- He was maliciously prosecuted—both in the initiation and continuation without probable cause for engaging in constitutionally protected conduct and speech, and Defendants then pretextually continued the prosecution even when they knew the given bases for the discipline were false.

21

- He was repeatedly defamed by Defendants in retaliation for peacefully exercising his First Amendment Rights to Assemble, petition his government, associate and affiliate, and engage in free speech.

- Publicly and falsely inferred in newspaper interview that Plaintiff had engaged in un-American and subversive behavior.

- Refusing to correct the knowingly false defamatory statements made on January 7, 8 and February 11, 2021.

- Publicly criticizing, condemning, defaming, retaliating, and insulting Plaintiff on January 7, 2021, and afterwards up through February 11, 2021, due to political animus for the Plaintiff's political affiliations, and disagreement with the viewpoints expressed in the Plaintiff's social media posts. These public and defamatory attacks on Plaintiff made it impossible for him to return to the district.

- Orchestrating defamatory attacks at the February 11, 2021, board meeting on Plaintiff.

- ADS Board members actively soliciting and promoting negative communications towards him.

- An ongoing, overly lengthy investigation and subject him to multiple hearings.

- Arranged for Plaintiff to be further defamed at a board hearing with the vilest accusations.

- The biased board and the board's own solicitor presided over and voted to terminate Plaintiff.

- Holding a biased, unfair, and not impartial board hearing in violation of § 1129 and the United States and Pennsylvania Constitutions and appointing a biased hearing officer.

- Issuing a fake reinstatement notice, to a nonexistent position, when Defendants were aware that Plaintiff could not return to the ASD.

- Reassigning him to a nonexistent position and baselessly requiring him to take diversity classes.

- Outrageously conditioned his reinstatement on taking "cultural competency" courses which had no connection to the issues,.

- Predetermining Plaintiff's termination for failing to show up to work.

- Proceeded to terminate Plaintiff on a pretextual and false basis to try to cover up their egregious misconduct, which warranted his termination him knowing this was not true,

- His constructive termination,

- The deprivation of ability to pursue his occupation due to egregious and public nature of the defamation.

Some inactions cited by the Defendant are:

- Prior to investigation, never told him why he was being suspended.

22

- Privately admitting he was not at the Capitol Building but refusing to issue a public correction,

- The failure to afford him pre-deprivation and post-deprivation due process.

- Claiming that Defendants were doing an investigation of Plaintiff, when no real investigation took place or was necessary.

- Not providing a prompt hearing or Loudermill notice after his suspension and delaying the process for six months.

- Inexcusably delayed for six months in making a decision while they tried to dig up dirt to justify discipline, including unconstitutionally searching his devices with the help of the FBI

- Defendants did not attend the hearings when the Constitution and School Code requires full participation. Board members are required to be fully informed to make determinations. They did not read hearing transcripts of only portions. Did not review record of know defenses.

- Arbitrarily and capriciously ignoring Plaintiff's objections to the given reason for the board's termination, including pretext, hostile/unsafe work environment, broken employment relationship, and bias.

<u>Timeline</u>

Following is a timeline of the actions of both the Plaintiff and Defendants that are germane to this litigation.

| | |
|---|---|
| January 6, 2021 | Moorehead attends "Save America Rally" at Washington Monument in Washington, D.C. |
| January 7, 2021 | ASD suspends Moorehead with pay and benefits. |
| January 7, 2021 | Parker issues statement to Allentown families, ASD Staff and the Allentown community. |
| January 7, 2021 | Pidgeon sent email to Moorehead documenting suspension |
| January 21, 2021 | Moorehead's legal counsel sent a letter to ASD demanding he be reinstated. |
| January 25, 2021 | ASD legal counsel responded and rejected request and said an investigation was underway. |
| January 25, 2021 | ASD legal counsel sends letter to Moorehead requesting the Laptop be returned. |
| January 28, 2021 | Moorehead's legal counsel sent letter to ASA legal counsel stating social media posts are protected political expressions. |
| February 8, 2021 | ASD legal counsel sent letter to Moorehead legal counsel detailing the basis for suspending him. |
| February 9, 2021 | Laptop returned. |
| February 11 & 25, 2021 | ASD Board Meetings at which Moorehead was accused in public comments of being a terrorist, racist and insurrectionist. |
| March 17, 2021 | ASD Investigation Report submitted. |

23

- March 31, 2021          ASD announced that the investigation was completed.
- April 1, 2021           Moorehead's legal counsel demanded ASD issue a correction and pay $5 million.
- April 9, 2021           ASD gave Moorehead notice of a Loudermill hearing scheduled for April 15, 2021. (The hearing was not held on that date.)
- July 16, 2021           ASD sent Moorehead letter notifying him the investigation was over and stating that he was being returned to a teaching assignment. Reinstatement would be conditional on him undergoing training in cultural competencies relating to African American and Hispanic United States History.
- July 30, 2021           Moorehead's legal counsel notified ASD that Moorehead would not attend diversity training classes.
- August 9, 2021          Pidgeon sent letter to Moorehead to declare intentions.
- August 16, 2021         Moorehead sent email to Pidgeon said he could not return to ASD for personal safety reasons.
- September 13, 2021      Pidgeon wrote to Moorehead documenting that he was not present when school began in fall.
- September 17, 2021      Notified him that a Loudermill Hearing would be held.
- October 12, 2021        ASD issued a statement of charges and notified Moorehead that it would hold hearing to determine if his employment should be terminated based on his refusal to report for his teaching assignment.
- November 12, 2021       Pre-Loudermill Hearing conference held.
- November 22, 2021       Loudermill Hearing Part I was held at which ASD presented its case.
- December 14, 2021       Loudermill Hearing Part II was held at which Moorehead presented a witness.
- March 16, 2022          Loudermill Hearing Part III at which Moorehead presented more witnesses.
- July 28, 2022           ASD terminated employment of Moorehead.

## LAWSUIT INFORMATION

The lawsuit was filed on behalf of Jason Moorehead against School District of the City of Allentown; Board of School Directors of the School District of the City of Allentown; Thomas Parker; Nancy Wilt; Nicholas Miller; Lisa A. Conover; Phoebe D. Harris; Audrey Mathison; Charles F. Thiel; Anthony Pidgeon; Marilyn Martinez; Jennifer Ramos; John D. Stanford; Patrick Palmer; LaTarsha Brown; and Jennifer Lynn Ortiz in the United States District Court, Eastern District of Pennsylvania.

Causes of Action

In its Complaint, the Plaintiff cites the following Causes of Action:

- First Amendment Retaliation For Expression, Assemble, and Petition For Redress of Grievances

- First Amendment Retaliation For Political Affiliation

- Procedural Due Process

- Violations of Fourth, Fifth, and Fourteenth Amendments to the US Constitution For Coerced Statements and Unreasonable Search and Seizure on Behalf of the FBI

- Declaratory and Equitable Relief – Name-Clearing Hearing

Relief Sought in Lawsuit

Through its lawsuit, the Plaintiff is seeking the following relief:

- A name-clearing hearing and public retraction and correction of defamatory statements.

- Compensatory damages, inclusive of all harm attributable to Defendants' actions or inaction, including loss of earnings, loss of career, reputation damage, personally and professionally.

- Mental and emotional pain and suffering.

- Punitive damages to punish the Defendants for their outrageous conduct, self-interest, and duplicitous behavior, reckless and callous indifference to Plaintiff's rights, and evil motives.

- Exemplary damages to set an example for others.

- Attorneys' fees, costs and court costs under 1988.

- Interest

- Prejudgment interest.

- Delay damages.

- Other equitable relief that may be necessary to enforce Plaintiff's rights.

- Such other and further relief and/or equitable relief that this Court deems just and/or necessary.

Plaintiff's Contentions

The Plaintiff maintains that the Defendants are liable for:

- Suspending him indefinitely for unconstitutional reasons with intent to terminate on January 7, violating the First Amendment.

- Defaming him as an "insurrectionist" who rioted at the Capitol Building in Washington, D.C. on January 6, 2021.

25

- Assisted the FBI when questioning him and never reading him his rights.

- Keeping him suspended indefinitely for unconstitutional reasons despite knowledge there was no basis to support suspension, violating the First Amendment.

- Putting out defamatory communications about him on January 7 and 8, 2021 for unconstitutional reasons, violating First and Fourteenth Amendments.

- Failing to correct the Jan 7 and 8, 2021 defamatory communications for unconstitutional reasons, violating First and Fourteenth Amendments.

- Hiding that he was under criminal investigation (thereby violating his Fourth Amendment and Garrity rights) before interviewing him on Jan 8, 2021 for unconstitutional reasons, violating the First Amendment.

- Hiding that he was under criminal investigation (thereby violating his Fourth Amendment and Garrity rights) and forcing him to turn over district devices to be searched, for unconstitutional reasons, violating the First Amendment.

- Organizing defamatory attacks on him at board meetings for unconstitutional reasons, violating the First and Fourteenth Amendments.

- Colluded with community organizations to push the false and defamatory narrative at board meetings.

- Constructively terminating him by no later than February 11, 2021, because of hostile work environment and broken employment relationship created by Defendants, violating First Amendment.

- At any point failing to correct the Jan 7 and 8, 2021 and board meetings, defamatory communications for unconstitutional reasons, violating First and Fourteenth Amendments.

- Specifically, never correcting or retracting its defamatory statements to the public and clearing his good name.

- Keeping him indefinitely suspended despite knowing there was no grounds to do so for unconstitutional reasons, violating the First Amendment.

- Never accepting the fact that he did not return to work because of a hostile and dangerous work environment.

- Issuing an April 9, 2021, Loudermill Notice with Intent to Terminate which advanced basis for discipline Defendants knew to be false, and invented new pretextual grounds for discipline, violating First Amendment.

- Reassigning him to a materially worse position, and placing multiple pretextual warnings in his personnel file, for unconstitutional reasons, violating the First Amendment.

26

- Recommending his termination for pretextual reasons, violating the First Amendment and Fourteenth Amendments.

- Conducting a biased, impartial, and incomplete board hearing process for unconstitutional reasons, violating First Amendment and Fourteenth Amendments.

- Terminating him for pretextual, unconstitutional reasons, violating the First Amendment and Fourteenth Amendments.

The Plaintiff further contends that even though he had done nothing wrong, the Defendants viewed him as a racist conservative who must be reeducated. Further, he maintains the reason they were going after him was because he offended people in the community who agreed with Defendants' liberal politics.

Affirmative Defenses

In response to the allegations in the Plaintiff's lawsuit, the Defendants offer the following Affirmative Defenses:

- Plaintiff's amended complaint fails to set forth a claim entitling him to recovery under any of his listed theories of law.

- Plaintiff posted and published numerous photographs of his image that self-identified himself to the world and solely created the image held by him by many members of the public including those in the area where he was employed as a public school teacher.

- Administration issues a statement regarding the suspension and investigation of a school district employee who was in Washington DC on January 6, 2021, but never in any capacity, shape or form identified the Plaintiff.

- Plaintiff was untruthful to his employer and lied about his whereabouts to the District Human Resources Department.

- Plaintiff misused school district owned property in violation of district policy.

- Plaintiff refused to return school owned and issued property.

- Administration provided Plaintiff a legal sufficient Garrity Warning, Loudermill Notice, Loudermill Hearing and Termination Hearing.

- Plaintiff was ordered to return to work and failed to ever do so and except for a short period of time caused by his failure to report to work, Plaintiff was paid his full salary until the conclusion of his Loudermill hearing.

- There is no evidence that any of the Defendants had prior knowledge or subsequently took action against Plaintiff based upon his political viewpoints or associations.

- The Defendants have taken no action that warrants a name clearing process.

27

- Neither the Defendants or their counsel have never "worked" with the FBI on any level or capacity.

- The Board had a legitimate business-related basis for terminating Plaintiff under the Pennsylvania School Code when he refused to report to work without legitimate basis for months.

- There is no evidence that the Plaintiff suffered a stigma or reputation injury that was caused by the Defendants.

- The individual Defendants are entitled to qualified immunity for all actions taken in relation to Plaintiff's employment.

- There is no evidence establishing a basis for individual capacity liability or punitive damages.

- The school district is not liable pursuant to the Monell doctrine.

- Plaintiff's Amended pleadings was made in bad faith and contains numerous spurious and libelous statements against the individual Defendants and their attorneys.

- Plaintiff's suspension with pay pending investigation of possible policy and School Code violations was not an adverse employment action.

- The alleged defamatory statements in the Superintendent's posting did not result in a change of legal status and therefore were not violative of Plaintiff's due process rights.

- Plaintiff's loss of employment and any claims of damages resulting therefrom was the result of his failure to return to work and did not violate any constitutional right.

- There is no connection between Plaintiff's political speech and/or associations and the Board's decision to terminate him for failing to report to work.

- All the administrative and procedural steps and actions taken by the district administration, the Hearing Officer and counsel complied with the Federal and State law, and specifically, the Pennsylvania School Code of 1949.

- Plaintiff is not entitled to compensatory damages, punitive damages, exemplary damages, attorneys fees, costs, court costs, interest, prejudgment interest, delay damages or any other equitable relief.

- Plaintiff's failure to appropriately appeal the School Board's adjudication in accordance with the Public School Code prevents the plaintiff from challenging his deliberate abandonment of employment charge.

- Plaintiff has effectively waived his right to challenge his abandonment of employment dismissal and even assuming it was not waived did not provide any substantive evidence justifying his failure to report to work.

- Plaintiff's numerous specious procedural challenges to the termination hearing proffered by the school board, assuming they are valid, could have cured by electing to arbitration pursuant to the collective bargaining agreement.

- Defendant school board members have "high official immunity" from any form of defamation claims.

- Plaintiff's verbose, unfocused and "let's throw in the kitchen sink" allegations constitute "vexatious" litigation.

- Plaintiff has not exercised his best efforts to mitigate his damages by seeking and obtaining other employment opportunities.

Defense Admissions

In their legal filings for this case, the Defendants offered the following admissions in reference to the facts as they relate to this words and actions that are at issue in this lawsuit:

- Plaintiff was teacher for 18 years, social studies teach and led extracurricular activities.

- ASD suspended Plaintiff with pay pending an investigation.

- Parker issued a press release on ASD website notifying the public that an unidentified staff member was under investigation.

- Plaintiff's reinstatement was conditioned upon him taking cultural competency courses.

- Plaintiff was terminated at July 28, 2022 board meeting.

- Plaintiff received an email from Pidgeon regarding the initiation of an investigation.

- On January 7, 2021 Defendant Superintendent Thomas Parker posted a message on the School District's website regarding the events of January 6, 2021.

- The statement, which did not identify Plaintiff, was posted on the District's Facebook and Twitter accounts.

- The online statement issued by the district did not identify the Plaintiff.  Plaintiff self-identified himself to the public.

- The district solicitor and Defendant Pidgeon met with Plaintiff via Zoom on January 8, 2021.

- The solicitor issued several statements concerning an investigation.

- Harris reposted a flyer about an upcoming school board meeting which she was obligated to attend as a Board member.

- Admitted that the solicitor spoke at the meeting.

- Defendant Conover called on members of the public.

- Defendants demanded that Plaintiff return his school-issued and owned electronic devices.

- Plaintiff used his school-issued devices in a manner that violated District policy.

- Plaintiff demanded that the Defendants reinstate him.

- District wrote a letter on July 16, 2021 to the Plaintiff reinstating him to work.

- Defendants would reinstate Plaintiff if he took cultural competency classes on African American and Hispanic history.

- Plaintiff's counsel wrote to the District on July 30, 2021.

- Defendant Pidgeon wrote to Plaintiff to see if he intended to return to work.

- Plaintiff wrote to Defendant Pidgeon on August 16, 2021.

- Defendants refused to produce the investigation report as it was not an employment file or a record to which Plaintiff was entitled.

- Defendant Pidgeon sent Plaintiff a notice for his Loudermill hearing.

- Plaintiff's pay was temporarily stopped because of his failure to report to work and enter the appropriate employment information into the district's computerized payroll system.

- Loudermill hearing took place on September 22, 2022.

- On November 10, 2021 Plaintiff submitted a pre-hearing memorandum.

- The hearing officer determined that Plaintiff had elected not to follow the grievance process under the collective bargaining agreement.

- The hearing officer denied Plaintiff's subpoenas and that they were in fact irrelevant and unrelated to the issue at hand.

- Plaintiff objected to Samuel Haaz acting as a co-hearing officer.

- Fox Rothschild LLP served as the hearing officer.

- The hearing Officer wrote a report and recommendation which was given to the board and that the board voted to terminate the Plaintiff on July 28, 2022.

- Plaintiff gave a speech at the board meeting.

- On July 29, 2022 Plaintiff's council was sent a copy of the Hearing Officer's report.

- The hearing officer determined that Plaintiff presented no evidence of a hostile work environment or legitimate fear of returning to work. The hearing officer also determined that it was Plaintiff's own social media post that had caused his difficult work environment.

- There was a substantial amount of community outrage expressed at the February 11, 2021 board meeting solely because of Plaintiff's own conduct.

- Plaintiff sent written correspondence to the district refusing to return to work.

- The plaintiff attempted to raise a hostile work environment argument and that the hearing officer determined that the subpoenas of the state police and school board would not be issued.

- The hearing officer correctly determined that the January 7, 2021 letter from the Superintendent did not name the Plaintiff nor did it state he engaged in a riot or any other unlawful activity.

- The Plaintiff is an adult and was a tenured teacher.

- Plaintiff self-published photographs of himself in Washington D.C. on January 6, 2021.

- Defendants interviewed and questioned Plaintiff on January 8, 2021.

- Plaintiff's counsel returned property owned by the District that was being improperly withheld by Plaintiff.

- The FBI contacted administration and Plaintiff was questioned by the former solicitor.

- The administration refused to accommodate Plaintiff's fishing expedition and produce its privileged investigation report during the administrative phase of this case.

Defense Denials

The Defendants issued the following denials as to the facts associated with the issues relating to this lawsuit:

- School Board members are not left-wing ideologues who hate right-of-center opinions and political affiliations.

- Board Members Conover and Harris working with any community group to defame Plaintiff.

- None of the Defendants ever identified Plaintiff to the public.

- The Defendants never published a false or defamatory statement regarding Plaintiff nor was the statement issued in violation of the CBA prohibition on public criticism of teachers.

- Defendants Conover and Harris colluded to attack and retaliated against Plaintiff.

31

- Defendant school district is not an official partner of Promise Neighborhood.

- Defendant Conover never started, directed or authorized a Change.org petition.

- Defendants Conover and Harris deny being involved in creating and advertising a petition or attacking Plaintiff at the February 11, 2021, Board Meeting.

- Defendants never directed or authorized the sharing of a Change.org petition.

- Defendants are not responsible for directed postings by Promise Neighborhoods.

- Defendants deny colluding with Simpson or Promise Neighborhood.

- Defendants Conover and Harris specifically deny arranging for comments at the meeting.

- Defendants did not commit any due process violations of law.

- Plaintiff's counsel did not voice any legitimate objections on substantive and procedural grounds.

- Plaintiff's prehearing memorandum is not evidence.

- Defendant Pidgeon has never been involved in any FBI investigation of district employees.

- The FBI did not conduct any investigation of the Plaintiff that involved any of the Defendants.

- Hearing Officer report and recommendation was not hidden from the Plaintiff nor was Plaintiff entitled to a copy of the report and recommendation under Pennsylvania state law.

- Plaintiff's letter was not a sufficient basis for refusal to report to work as directed.

- Plaintiff is not entitled to any recovery including punitive damages.

- Defendants have never admitted to identifying Plaintiff to the public.

- Defendants have never made a private admission of any liability.

Summary Judgment Motion

On May 8, 2024, the Defendants filed a Motion for Summary Judgment. In support of granting the motion, it cited the following factors and points of law:

- A government entity cannot be liable for a federal rights violation under a doctrine of respondeat superior.

  - The ASD is immune from liability for the actions of its employees.

- The record does not demonstrate deliberate indifference on the part of the ASD employees.

- The Statement does not identify him by name, race, physical characteristics, teaching assignment, area of expertise, work location, or in any other matter other than he is one of the more than 2,000 people employed by the ASD.

- The Statement does not state or imply that Plaintiff has committed a crime.

- ASD School Board members improperly identified him at School Board meetings after January 6.

- School Board members did not solicit the public to express specific views regarding Plaintiff.

- The record does not identify a single ASD custom or policy that deprived plaintiff of any rights.

- The doctrine of qualified immunity provides that government officials performing discretionary functions are granted qualified immunity and are shielded from liability for civil damages as far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

- Defendants did not violate Plaintiff's First Amendment Rights.

- Plaintiff's procedural due process claim should be denied.

- Plaintiff's "Reputation Plus" Claim should be denied.

- In this case, there has been no defamatory statement by the Defendants.

- Plaintiff received the appropriate due process, failed to take advantage of additional process afforded to him.

In his opposition to the motion, the Plaintiff cited negative actions and inactions by the Defendants which caused him harm:

- The District and Board knew within days of January 7, 2021, that Moorehead was not at the Capitol Building, but did not correct the press release. Board President Nancy Wilt "signed off" on the defamatory press release, which she admitted violated District and Board Policies prohibiting comments about personnel, as well as the Collective Bargaining Agreement.

- Defendants admit that Moorehead was suspended, kept suspended, and further disciplined because they were offended by his political opinions, association with President Trump, and attendance at the rally.

- Defendants hid from Plaintiff that they were in contact with the FBI and that he had a right against self-incrimination and unreasonable search and seizure—they even assured his counsel there was no criminal investigation—even as they interviewed him,

33

questioned him about accomplices, and searched his devices trying to connect him to the Capitol Building riot.

- Defendant Lisa Conover orchestrated and masterminded the defamatory attacks on Moorehead at the February 11 and 25, 2021 board meetings, along with Defendant Phoebe Harris. Two explosive text message chains show Conover colluding with a prominent community group to publicly attack Moorehead at board meetings.

- Defendants engaged in a pretextual investigation and disciplinary process, changing the grounds for his discipline, trying to manufacture a pretextual basis for his discipline because they had "trepidation" about losing a lawsuit.

- Defendants knew that Moorehead could not return to work because of extreme community outrage caused by the defamatory and uncorrected press release but concocted an unconstitutional reassignment/demotion as a pretext to fire him when he rejected it due to the hostile work environment they had created.

- Defendants claimed that there is no evidence that Board Members had a role in attacking Plaintiff at the Board Meetings, when text messages show that board member Lisa Conover started and ran the whole operation using her community group Promise Neighborhoods (she was a board member) as a catspaw. Conover was boasting about her role in having Moorehead harshly attacked as a Capitol Building rioter and white supremacist, even as the District Solicitor warned her about the egregious defamation being committed. During an ASD Board meeting, Conover was texting a Promise Neighborhoods employee about the best way to influence the District and Board to get Plaintiff fired.

- The Board Defendants refused to attend the Board Hearing process so they could not be confronted on their involvement and bias, and then did not read the hearing transcripts and did not understand or consider Plaintiff's defenses before they voted to unanimously fire him.

In support of the motion, they filed a Statement of Undisputed Facts. Following are the facts they cited as well as the comment on each (in bold type) provided by the Plaintiff in response.

- Plaintiff, Jason Moorehead (hereafter "Plaintiff" or "Moorehead") was employed by the District as a Social Studies teacher for sixteen (16) years, most recently as a history teacher at Raub Elementary School. See Amended Complaint
  **(Plaintiff's entire career at Raub Middle School – 17-1/2 years teaching.)**

- Plaintiff attended the "Stop the Steal" rally in Washington, D.C. on January 6, 2021.
  **(The rally was at the Washington Monument, 1.8 miles from the Capitol building.)**

- In order to get the day of January 6, 2021 off from work, Moorehead misrepresented his reason for being absent from his teaching post that day.
  **(Inaccurate. Contradicts Defendant Pidgeon's own testimony.)**

- During the rally, Moorehead published photos of himself on his public Social Media account. The photos depicted him wearing a "MAGA" hat, holding a flag stating the term

"Join or Die," and posting "memes" in support of the violence at the United States Capitol Building.
**(Moorehead's Facebook page was not public.  Did not post memes supporting violence, made political satire comments.)**

- Before Plaintiff returned home on the night of January 6, 2021, and before School officials even became aware of the situation, news of his attendance spread online throughout the ASD Community.
**(True.  Moorehead's Facebook page was shared by opponents of Trump.)**

- Many members of the ASD community appeared at School Board meetings in January and February 2021 to speak regarding Moorehead during the public comment section of those meetings. Many of the comments were in support of Moorehead, and many expressed concerns that someone with his views was responsible for teaching primarily students of color.
**(Fact that someone is offended by his political opinions or party affiliation has no relevance to this lawsuit.)**

- Neither the School Board nor the ASD solicited members of the public to comment in any specific way regarding Moorehead. Community Alarm, ASD Response, and Investigation.
**(Inaccurate. Harris and Conover both were actively involved in soliciting comments.)**

- Plaintiff's self-circulated support for the insurgency, including photographs in which he identified himself, caused alarm among the student body, parents, and the ASD community.
**(Nothing Moorehead posted or depicted showed support for violence, placed him at the Capitol Building, or did anything illegal or wrongful.)**

- On January 7, 2021, the ASD Superintendent at the time, Thomas Parker, along with the ASD public relations firm, the Donovan Group, issued a statement on the district website regarding a teacher's attendance at the rally on January 6, 2021.
**(Incorrect.  The statement didn't mention a "rally," it stated: *"involved in the electoral college protest that took place at the United States Capitol Building on January 6, 2021." Ramos and Wilt were also involving in the preparation and release of the statement.  In addition to placement on  the website, it also went out to other social media outlets, robo calls, an email to all employees and the alert system.*)**

- The statement did not mention Plaintiff by name, nor did it reference Plaintiff by building assignment, area of teaching content, class roster, tenure with the district, school club, or team affiliation, or by any personal characteristic such as race, weight, or height.
**(Defendants were aware that Moorehead had already been identified on social media at the teacher that was in Washington when the statement was issued.  The Defendants were aware at that time that he had been identified in the community.)**

- The statement was not released to the press but was posted on the ASD's website.
**(The press had access to any information posted on the website and multiple Facebook accounts.  The lead investigator on the matter specifically gave comments**

about the press release and Plaintiff to primary Allentown newspaper, The Morning Call.)

- Per protocol, On January 7, 2021, Plaintiff was suspended from his duties as a teacher with pay and benefits while an investigation was commenced to determine the extent of his participation, and specifically whether he may have engaged in conduct constituting immorality as defined in the Pa. School Code.
  **(Evidence only supports that Moorehead was suspended. Issue of immorality was never raised or mentioned. Defendants have repeatedly stated the suspension related to being offended by the content of his posts, his support of Trump and because he attended a rally they disagreed with.)**

- When the statement was posted on the district's website, the only people who were aware that it regarded Moorehead were the senior administrators, Plaintiff himself, and whichever members of the public may have viewed Moorehead's posting placing him in Washington, D.C.
  **(Incorrect. The statement was posted to both the main ASD Facebook page and Raub Middle School's Facebook page where Moorehead taught, and commenters identified Moorehead by name on the Raub Facebook page comments.)**

- Plaintiff admitted in his Complaint that the Superintendent's statement which he labels as a "press release," did not specifically mention him by name, nor does he plead facts that demonstrate that he was easily identifiable.
  **(Incorrect. The statement identified a male ASD staff members who was in Washington DC on January 6, 2021. The statement was posted to both the main ASD Facebook page and Raub Middle School's Facebook page where Moorehead taught, and commenters identified Moorehead by name on the Raub Facebook page comments r. Moorehead was easily identifiable as the teacher by the readers of the release.)**

- However, Plaintiff was identified by social media users after Plaintiff, not Allentown School District, posted multiple photographs at the "Stop the Steal Rally" of himself sans any attempt to conceal his identity as his account was open and available to the public.
  **(Moorehead's account was not open to the public. Defendants' argument that he publicized his own name constitutes an admission that Moorehead was easily identifiable as the subject of the release.)**

- The Plaintiff met with the district solicitor on January 8, 2021, but then ceased to participate in and assist in the investigation.
  **(It is specifically denied that Moorehead ceased to participate or assist in any investigation, and the cited evidence does not support this assertion.)**

- Later in January 2021, Plaintiff appeared on CNN and confirmed that the statement referred to him.
  **(It is denied that Moorehead "confirmed" the statement was about him. Moorehead only appeared on CNN to correct the record because Defendants had refused for over two weeks to issue a correction.)**

- The investigation was focused on whether Moorehead had acted "immorally" as defined by the PA School Code.

36

**(The cited evidence does not support this assertion. Immorality was never raised with Plaintiff.)**

- Plaintiff's laptop, Chrome Book and an iPad were owned by the district and issued solely for the purpose of assisting him in the delivery of educational content pursuant to and subject to the district's acceptable use policy as set forth in Policy.
  **(Incorrect. The cited policy relates to out of school activities, and the cited appendix number does not support this averment.)**

- The purported search was of school-owned and issued electronic devices he used for non-school purposes.
  **(The cited evidence does not support the averment.)**

- The investigation was delayed by Moorehead's failure to cooperate by turning over his ASD-owned electronic devices, including his computer and iPad.
  **(Incorrect. The Plaintiff did not delay in handing over the devices and the investigation was not delayed.)**

- F.B.I.'s inquiry into Plaintiff was prompted by his own online posting activity, and the Administration did not share any information with law enforcement.
  **(The cited evidence does not support this averment.)**

- Plaintiff was never criminally charged or even questioned by the F.B.I.
  **(While the Plaintiff was not criminally charged, the District and FBI were regularly communicating from January to March of 2021)**

- At the conclusion of the investigation, it was determined that Moorehead could return to work for the ASD on July 16, 2021.
  **(Incorrect. The letter reinstating the Plaintiff to a non-existing position was conditional on him taking racial reduction courses. Pidgeon testified that he could not return to in-school teaching because of safety concerns and community outrage against him.)**

- Former Superintendent Dr. Marilyn Martinez testified that she did not even consider the F.B.I. telephone inquiry in determining whether to bring Plaintiff back to work.
  **(The cited evidence does not support this averment. Harris testified that the Board was dictating the Moorehead disciplinary matter.)**

- Moorehead was also directed to take a course on the history of African Americans and Latinos in America.
  **(This requirement was political and Defendants refuse to identify any connection to his suspension.)**

- Nonetheless, Mr. Moorehead responded in writing, indicating that he was not willing to return to work and not willing to take a course. Mr. Moorehead never returned to work.
  **(Incorrect. Moorehead said he could not return to work due to an unsafe and hostile environment. He also said he would not take a racial reeducation course because it would indicate he did something wrong and he said he would not accept an illegal retaliatory reassignment/demotion.)**

37

- The ASD's only other public interaction with the Plaintiff was his three-day termination hearing, during which the administration presented evidence limited solely to his failure to report to work.
  **(Incorrect. There was a Loudermill hearing where Plaintiff objected to the illegal actions taking place.)**

- Fox Rothschild, LLP was labor and employment counsel for the district when it was appointed and acted as Hearing Officer during the three scheduled hearings that took place on November 22, 2021, December 14, 2021 and March 16, 2022.
  **(Incorrect. Fox Rothschild LLP was the District Solicitor. King Spry prosecuted Moorehead. Jeffrey Sultanik of Fox Rothschild was appointed as the hearing officer.)**

- Plaintiff was provided Garrity Warnings, a Loudermill hearing and an administrative termination hearing under Pennsylvania law pertaining to schools.
  **(It is not clear what the phrase "administrative termination hearing" means and what is it referring to.)**

- Plaintiff was terminated by the District on July 28, 2022, pursuant to an Adjudication and recommendation of a hearing officer following a Loudermill Hearing and a three-day-long termination hearing.
  **(Admitted.)**

- The Adjudication given to the School Board clearly stated that the sole reason for the recommendation of termination was a failure to return to work as directed by the Administration.
  **(The Report and Recommendation ignored Plaintiff's defense of pretext, misrepresented the defamation committed by Defendants, and misrepresented the hostile work environment defense.)**

- At the hearing, Moorehead argued that he would not return to work because he felt "unsafe." The report of the hearing officer reflects that Mr. Moorehead had not pointed to any specific treats to his safety emanating from the ASD, and that while he advised the hearing officer of menacing phone calls received in early 2021, there was no indication that Moorehead's safety would be diminished if he were to report to work.
  **(Incorrect. The testimony of Executive Director of HR Anthony Pidgeon was that Moorehead could not return to in-school teaching because of safety concerns and community outrage against Moorehead, caused by the district's false and uncorrected Press Release. Pidgeon confirmed this at this deposition.)**

- The Adjudication and recommendation of the hearing officer clearly stated that the sole reason for the recommendation of termination was Moorehead's express refusal to return to work as directed by the Administration.
  **(The Report and Recommendation ignored Plaintiff's defense of pretext, misrepresented the defamation committed by Defendants, and misrepresented the hostile work environment defense.)**

- Moorehead was terminated for his failure to report to work under the Pennsylvania School Code.

**(The real reason was speech, association, and assembly retaliation, in addition to Defendants' self-interested cover up of how they harmed him. Furthermore, Plaintiff was constructively terminated either on January 7, but no later than February 11, 2021.)**

- Every member of the School Board has testified that they reviewed the material prior to voting and that the basis of their vote was the Plaintiff's failure to report to work and misuse of time and district devices.
  **(The testimony from the Board Defendants was that they voted to adopt this determination by Sultanik without reading the transcripts at all, or only reading part of the transcript, or understanding Plaintiff's defenses. Palmer testified at his deposition that Sultanik told the Board members that it was better if they did not know what Moorehead's defenses were to insulate them.)**

- Moorehead Received Fully Pay and Benefits until his Termination. Except for a short period of time caused by his failure to report to work, Plaintiff was paid his full salary and benefits until the conclusion of his Loudermill hearing. The discrepancy was corrected and plaintiff was reimbursed that missing salary.
  **(Admitted except why the pay was stopped.)**

- Plaintiff was represented by counsel at all relevant procedural steps, including the aforementioned hearings.
  **(Incorrect. Plaintiff was not represented by counsel on January 7 and 8, 2021)**

- Plaintiff testified that he has not even attempted to find employment as a teacher elsewhere – he has not applied for a single teaching position in the entire Commonwealth of Pennsylvania.
  **(Admitted that Plaintiff has not applied to be a teacher. Defendants' actions have made it impossible for him to pursue a career in education. Defendants accused him of a serious felony. In any teaching position he applied for, if he were hypothetically hired, he would be forced to relive and explain over and over what happened and that he is not a danger to students and parents and faculty. The fact of the matter is that this will follow him for the rest of his life. It is not reasonable to expect Plaintiff to endure this, spending every day at any educational job that did hire him waiting for this hammer to fall.)**

## INFORMATION/INPUT REVIEWED TO FORM OPINIONS

In connection with my preparation of this report, I have received and reviewed from the Plaintiff's legal counsel, the following documents and information relating to this case:

Complaint

First Amended Complaint: Jason Moorehead v School District of the City of Allentown; Board of School Directors of the School District of the City of Allentown; Thomas Parker; Nancy Wilt; Nicholas Miller; Lisa A. Conover; Phoebe D. Harris; Audrey Mathison; Charles F. Thiel; Anthony Pidgeon; Marilyn Martinez; Jennifer Ramos; John D. Stanford; Patrick Palmer; LaTarsha Brown; and Jennifer Lynn Ortiz. (May 15, 2023)

Legal Documents

- Defendants' Answer to Plaintiff's Amended Complaint (June 19, 2023
- Defendant School District of the City of Allentown Motion for Summary Judgment (July 18, 2023)
- Defendants', Administration (Stanford, Parker, Ramos, Pidgeon and Martinez) Response to Plaintiff's Request for Product of Documents (July 18, 2023)
- Defendants', Board Members (Wilt, Miller, Conover, Harris, Matheson, Thiel, Palmer, Brown and Ortiz) Response to Plaintiff's Request for Production of Documents (July 18, 2023)
- Defendants' Statement of Undisputed Facts Relating to Their Motion for Summary Judgment (May 8, 2024)
- Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment (May 8, 2024)
- Plaintiff's Statement of Disputed Facts Responding in Opposition to Defendants' Motion for Summary Judgment (May 22, 2024)
- Plaintiff's Statement of Additional Facts in Opposition to Defendants' Motion for Summary Judgment (May 22, 2024)
- Declaration of Jason Moorehead (May 22, 2024)
- Plaintiff's Response to Interrogatories of Defendants (August 18, 2023)

Depositions

- Jennifer Ramos (October 5, 2023)
- Nancy Wilt (October 11, 2013)
- Audrey Mathison (October 30, 2023)
- Jason Moorehead (April 24, 2024)
- Thomas Parker (April 29, 2024)

Miscellaneous Documents

- Promised Neighborhood of the Lehigh Valley Petition (No date)
- Allentown School District Policy Manuel (No date)
- Garrity Notice Statement of Rights (January 8, 2021)
- Facebook Announcement of School Board Meeting (February 11, 2021)
- Employer Allentown School District's Summation Brief (March 16, 2021)
- Jason Moorehead Investigation Report, Findings and Analysis Regarding Professional Employee Jason Moorehead (March 17, 2021)
- Notice of Loudermill Hearing (April 9, 2021)
- Allentown School District: Determinations of Hearing Officers (July 7, 2022)

Letters

- Thomas Parker to Allentown Families, Staff and Community (January 7, 2021)
- Francis Alexander Malofiy to Allentown School District (January 21, 2021)
- John E. Freund III to Francis Alexander Malofiy (January 25, 2021)
- Francis Alexander Malofiy to John E. Freund III (January 26, 2021)
- John E. Freund III to Francis Alexander Malofiy (January 27, 2021)
- Francis Alexander Malofiy to John E. Freund III (January 28, 2021)
- Francis Alexander Malofiy to John E. Freund III (April 1, 2021)
- Anthony Pidgeon to Jason Moorehead (July 16, 2021)

40

- Anthony Pidgeon to Jason Moorehead  (August 9, 2021)
- Jason Moorehead to Anthony Pidgeon  (August 16, 2021)
- Anthony Pidgeon to Jason Moorehead  (September 13, 2021)
- Francis Alexander Malofiy to FBI  (December 5, 2021)
- FBI to Francis Alexander Malofiy  (December 5, 2021)
- FBI to Francis Alexander Malofiy  (April 26, 20212
- FBI to Francis Alexander Malofiy  (August 11, 2022)

Emails

- Katie Schick to Superintendent and Board Secretary  (January 6, 2021)
- Nancy Wilt to Jennifer Ramos, Thomas Parker, Lucretia Brown  (January 7, 2021)
- Anthony Pidgeon to Jason Moorehead  (January 7, 2021)
- Jennifer Ramos to Thomas Parker  (January 7, 2021)
- Dave Vegara to Nancy Wilt  (January 8, 2021)
- Francis Alexander Malofiy to Allentown School District and Thomas Parker  (January 21, 2021)
- Howard Weiss to Francis Alexander Malofiy  (January 23, 2021)
- John E. Freund III to Francis Alexander Malofiy  (January 28, 2021)
- John E. Freund III to Francis Alexander Malofiy  (February 1, 2021)
- John E. Freund III (2) to Francis Alexander Malofiy  (February 3, 2021)
- Francis Alexander Malofiy to John E. Freund III  (February 3, 2021)
- Jennifer Ramos to Thomas Parker  (January 29, 2021)
- Francis Alexander Malofiy to John E. Freund III  (February 5, 2021)
- John E. Freund III (2) to Francis Alexander Malofiy  (February 5, 2021)
- Jennifer Ramos to Thomas Parker  (February 6, 2021)
- John E. Freund III (2) to Francis Alexander Malofiy  (February 7, 2021)
- Francis Alexander Malofiy to John E. Freund III  (February 8, 2021)
- John E. Freund III (2) to Francis Alexander Malofiy  (February 8, 2021)
- Francis Alexander Malofiy to John E. Freund III  (March 31, 2021)
- John E. Freund III (2) to Francis Alexander Malofiy  (March 31, 2021)
- Anthony Pidgeon to Jason Moorehead  (April 9, 2021)
- Francis Alexander Malofiy to John E. Freund III  (April 13, 2021)
- John E. Frueud III (2) to Francis Alexander Malofiy  (April 13, 2021)
- Francis Alexander Malofiy to John E. Freund III and Judy Moore  (May 4, 2021)
- Francis Alexander Malofiy to John E. Freund III and Judy Moore  (May 24, 2021)
- Anthony Pidgeon to Jason Moorehead  (July 16, 2021)
- Francis Alexander Malofiy to John E. Freund III  (July 30, 2021)
- Francis Alexander Malofiy to John E. Freund III  (September 9, 2021)
- John E. Freund III to Francis Alexander (September 15, 2021)
- Francis Alexander Malofiy to John E. Freund III  (September 16, 2021)
- John E. Freund III (2) to Francis Alexander Malofiy  (September 17, 2021)
- Anthony Pidgeon to Jason Moorehead  (October 7, 2021)
- Nancy Wilt to Jason Moorehead  (October 16, 2021)
- AJ Fluehr to Francis Alexander Malofiy  (November 18, 2021)
- AJ Fluehr to Jeffrey T. Sultanik  (November 18, 2021)
- Jeffrey T. Sultanik to AJ Fluehr  (November 18, 2021)
- Jennifer Ramos to Thomas Parker  (July 6, 2023)

41