# Exhibit 6

```
1              IN THE UNITED STATES DISTRICT COURT
2             FOR THE MIDDLE DISTRICT OF TENNESSEE
3                       NASHVILLE DIVISION
4    MICHAEL DAVID SILLS and      §
     MARY SILLS,                   §
5                                  §
        Plaintiffs,               §       CASE NO.:
6                                  §
     Vs.                          §       3:23-cv-00478
7                                  §
     SOUTHERN BAPTIST CONVENTION,  §
8    a non-profit corporation;    §
     et al.,                       §
9                                  §
        Defendants.               §
10
11
12
13
14   **************************************************
15           ORAL AND VIDEOTAPED DEPOSITION OF
16               CHRISTOPHER "BART" BARBER
17               6th day of December, 2024
18   **************************************************
19
20
21
22
23
24
25   Job No. 7047522
```

Page 1

Case 3:23-cv-00478   Document 411-5   Filed 11/03/25   Page 2 of 32 PageID #: 13294

```
 1    roles you've had.
 2         A.    I served on the Committee on Committees
 3    for the Southern Baptist Convention a long time
 4    ago.  I don't remember exactly what year.  I served
 5    as first vice president of the Southern Baptist
 6    Convention.
 7         Q.    What year?
 8         A.    For the first vice president of the
 9    Southern Baptist Convention?  It was Fred Winters'
10    second year.  The convention was in Baltimore.  I
11    think that was 2014.
12              And I served as president of the
13    Southern Baptist Convention starting in June of
14    2022 through June of 2024.
15         Q.    Have you been on any other committees
16    like the Nominations Committee?
17         A.    I'm sorry.  Yes.  I was on the Committee
18    on Resolutions, and I served in that role for two
19    years.  I served on the Committee on Resolutions in
20    the year 2021 and then also 2022, and I was the
21    chair of that committee in 2022.
22         Q.    Any others?
23         A.    No, that's it.
24         Q.    And I should have asked this earlier.
25    What are the three depositions you've taken?
```

Alpha Reporting                    800-556-8974
A Veritext Company                 www.veritext.com

1      A.    I took a deposition in the case I found
2    Rollins v Pressler because the Southern Baptist
3    Convention was a named defendant, and I was
4    president of the Southern Baptist Convention at the
5    time.
6           I took a deposition in the -- I guess I
7    gave a deposition is the way to say it.  I gave a
8    deposition in the case Johnny Hunt.  The Southern
9    Baptist Convention and other people attended to
10   that, and then this one.
11     Q.    Okay.  Have you ever been a paid staff
12   member of the Executive Committee?
13     A.    No.
14     Q.    Were you on the Sexual Abuse Task Force?
15     A.    No.
16     Q.    What were your duties as Southern
17   Baptist Convention president?
18     A.    Primary duty of the Southern Baptist
19   Convention president is to -- is to preside over
20   the annual meeting that happens, so to moderate the
21   meeting according to the Robert's Rules of Order.
22   The president of the Southern Baptist Convention
23   also has the responsibility to appoint some
24   committees.  I can name them if you want, but you
25   appoint some committees.  And then the Southern

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1    Baptist Convention president also has the
 2    responsibility to encourage people to give to the
 3    Cooperative Program, and then he serves as an
 4    ex-officio member of four boards of other
 5    organizations.
 6         Q.   What do you mean by that?
 7         A.   So an ex-officio member of the board of
 8    trustees for the International Mission Board, the
 9    North American Mission Board, Lifeway Christian
10    Resources and GuideStone Financial Resources, so
11    for those four organizations, you serve as a member
12    of the board, and then, finally, you serve as an
13    ex-officio member of the Executive Committee in
14    Southern Baptist Convention.
15         Q.   And does that mean that you attend all
16    these board meetings?
17         A.   I do not attend all of these board
18    meetings.
19         Q.   The ones that you did attend, do you
20    attend via Zoom or do you attend in person?
21         A.   In person.
22         Q.   During your two years that you were
23    Southern Baptist president, did you attend all of
24    the executive -- Executive Committee board
25    meetings?
```

Alpha Reporting
A Veritext Company

800-556-8974
www.veritext.com

```
1          A.    No, not until today.

2                MR. PIETSCH:  We've met before though.

3          A.    Not for this.  He represented me also in

4    the Hunt matter so...

5    BY MS. RILEY:

6          Q.    Did he show any documents?

7          A.    Uh-huh.  Yes, he did.  Sorry.

8          Q.    Did you review any deposition testimony

9    of prior depositions in this case?

10         A.    No.

11         Q.    And you stated you do not know David

12   Sills personally, correct?

13         A.    I do not.  I've known who he was for --

14   for a long time, but -- but I don't think that I've

15   ever met him.

16         Q.    Did you know him by reputation before

17   May 2018?

18         A.    Yes.

19         Q.    And what was his reputation?

20         A.    He was a missions professor at Southern

21   Baptist Theological Seminary.  I -- in 2007 maybe,

22   2008, someone told me that something that I had

23   written about a missiological method called the

24   Camel Method was something that he liked, so I

25   had -- I had the favorable opinion that you have of
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

1    someone who likes something that you did.
2         Q.    But by 2018, you had not heard anything
3    that would cause you to think of him negatively, do
4    you?
5         A.    I had not.
6         Q.    Did David Sills ever serve as trustee on
7    the executive board, Executive Committee board?
8         A.    I don't know.
9         Q.    As far as you know, was David Sills ever
10   a paid staff member on the Executive Committee?
11        A.    Not to my knowledge.
12        Q.    As far as you know, did David Sills ever
13   hold any position in the Executive Committee or on
14   the Executive Committee board?
15        A.    No, not to my knowledge.
16        Q.    No, he was not elected to any office --
17   office of the Executive Committee that you're aware
18   of?
19        A.    That's a long list of people over a long
20   period of time.  To my knowledge, no.
21        Q.    After May 2018, when Jennifer Lyell made
22   her allegations, did you ever have a conversation
23   with anyone that said he or she knew David Sills
24   personally?
25        A.    A conversation with someone who knew him

Alpha Reporting          800-556-8974
A Veritext Company        www.veritext.com

```
 1    what communications you had regarding the
 2    allegations against Mary and David Sills, and you
 3    responded that you had, quote, no personal
 4    knowledge outside of information publicly reported
 5    pertaining to those allegations.
 6              Is that a true statement?
 7       A.    Yes.
 8       Q.    Did you read and approve all your
 9    interrogatory answers before they were produced to
10    plaintiffs?
11       A.    I did.
12       Q.    So all the information contained in your
13    responses are accurate and true, correct?
14       A.    Yes, to my knowledge.
15       Q.    So you did not personally investigate to
16    determine if the allegations of the abuse were true
17    or not, did you?
18       A.    No.
19       Q.    Nor did you cause an investigation to be
20    conducted, did you?
21       A.    I voted in favor of the Convention
22    hiring Guidepost Solutions, but apart from that,
23    personally, individually, no.
24       Q.    Pastor Barber, I'm going to show you
25    your first exhibit.
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
1          Q.    Is it true that you have no training to
2    know if a person is lying about or
3    mischaracterizing his or her abuse?
4          A.    That's true.
5          Q.    What does the term "corroborating
6    evidence" mean to you, Pastor Barber?
7          A.    Evidence that suggests the truthfulness
8    of somebody's account.
9          Q.    Would you agree that it commonly --
10   commonly means that it's evidence that confirms a
11   fact or gives support to a fact?
12         A.    Yes.
13         Q.    So if I ask you to provide corroborating
14   evidence regarding Jennifer Lyell's allegation of
15   sexual abuse against David Sills, I'm asking you to
16   provide some evidence in addition to what Jennifer
17   Lyell produced, correct?
18              MR. PIETSCH:  Object to the form.
19         A.    Uh-huh.  Yes.
20   BY MS. RILEY:
21         Q.    Is it true that you have never seen any
22   corroborating evidence that would support Jennifer
23   Lyell's accusations that David Sills sexually
24   abused her?
25              MR. PIETSCH:  Object to the form.
```

Page 30

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com
Case 3:23-cv-00478   Document 411-5   Filed 11/03/25   Page 9 of 32 PageID #: 13301

```
 1          A.    Yes.
 2    BY MS. RILEY:
 3          Q.    Nor have you seen any corroborating
 4    evidence that would support her claims that he was
 5    violent with her, have you?
 6                MR. PIETSCH:  Same objection.
 7          A.    I have not.
 8    BY MS. RILEY:
 9          Q.    The next exhibit will be EC-009938.
10                (Deposition Exhibit 2 marked.)
11    BY MS. RILEY:
12          Q.    Pastor Barber, this document looks like
13    a copy of a newspaper -- newspaper article but it
14    isn't an article, correct?
15          A.    Correct.
16          Q.    Can you tell me what it is?
17          A.    This appears to be the daily bulletin
18    for the -- well, it's either -- yeah, it says it's
19    the daily bulletin.  This is the daily bulletin for
20    the SBC annual meeting.
21          Q.    And what is -- what is the daily
22    bulletin?
23          A.    Well, so in advance of the convention
24    meeting, we'll publish an order of business that we
25    expect to conduct, but business happens at the
```

Alpha Reporting                      800-556-8974
A Veritext Company                www.veritext.com

```
 1        A.    I don't -- I don't recall whether I read
 2    all of that.
 3    BY MS. RILEY:
 4        Q.    Okay.  What was your involvement with
 5    hiring of Guidepost, if any?
 6        A.    As a messenger, I voted in favor of the
 7    motion to hire someone to conduct an investigation.
 8        Q.    Whose idea was it to hire Guidepost?
 9        A.    So I don't know other than I can say
10    that the Sex Abuse Task Force had been given the
11    job of finding a firm to conduct the investigation.
12        Q.    And you told me you were not a member of
13    the Sexual Abuse Task Force?
14        A.    I was not.
15        Q.    What was your role at Southern Baptist
16    Convention when Guidepost was hired?
17        A.    I was a messenger.  That's it.
18        Q.    What was your role at Southern Baptist
19    Convention when it was published?
20        A.    By that time, I had been named to the
21    Committee on Resolutions, so I was a member of the
22    Committee on Resolutions and a messenger.
23        Q.    Do you know who recommended using
24    Guidepost?
25        A.    I can tell you everything that I know
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1    about that.
 2           Q.    Yes, sir.
 3           A.    There were, in Nashville, in 2021,
 4    competing ideas about how to conduct an
 5    investigation.  At that time, the president and CEO
 6    of the Executive Committee was Ronnie Floyd.  He
 7    had chosen Guidepost Solutions to conduct an
 8    in-house investigation that the messengers did not
 9    approve, and then the messengers approved a motion
10    that did not specify what firm to use but that
11    there should be a third-party investigation, and
12    then the Sex Abuse Task Force chose Guidepost
13    Solutions.  I don't know if that's because Ronnie
14    Floyd recommended them or someone else.  I have no
15    knowledge of how the Sex -- Sexual Abuse Task Force
16    came to make that choice.
17           Q.    Okay.  So you don't know who negotiated
18    the contract with Guidepost?
19           A.    I do not.  The Sex Abuse Task Force was
20    given that job.
21           Q.    Do you know who was on the Sexual Abuse
22    Task Force during the time that Guidepost was
23    hired?
24           A.    I can name some people that I know were
25    on it.  Bruce Frank was the chair of the Sex Abuse
```

Alpha Reporting                           800-556-8974
A Veritext Company                    www.veritext.com

```
 1    accusation in some cases I think might define what
 2    mistreatment would be or would not be.
 3        Q.    But this bullet point doesn't say that
 4    they're going to investigate the underlying
 5    allegations, does it?
 6        A.    It does not say that.
 7        Q.    Let's go to the fourth bullet point.
 8    The fourth bullet states, Guidepost is going to
 9    investigate patterns of intimidation of sexual
10    abuse, correct?
11        A.    It does, yes.
12        Q.    That doesn't apply to the underlying
13    allegations made against David Sills, does it?
14            MR. PIETSCH:  Object to the form.
15        A.    I don't know.
16    BY MS. RILEY:
17        Q.    The fifth bullet point states that
18    Guidepost will investigate resistance to sexual
19    abuse reform, correct?
20        A.    Yes.
21        Q.    That wouldn't apply to whether Guidepost
22    was going to investigate the underlying allegations
23    made against David Sills, would it?
24            MR. PIETSCH:  Object to the form.
25        A.    It would not, no.
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

1          MR. PIETSCH:  Object to the form.

2          MR. LEET:  Objection to form.

3     A.    Any sexually inappropriate relationship

4     between a professor and a student is abusive, so I

5     would say -- I would say that I don't agree with

6     what you're saying.

7     BY MS. RILEY:

8     Q.    Okay.  But back to where we started, my

9     definition of sexual abuse for this deposition is

10    that anything that is -- could be criminally

11    convicted for in the state of Tennessee, right?

12    A.    As long as we have on the record that

13    that is not my definition of sexual abuse.

14    Q.    Okay.  Well, I've asked you for your

15    definition of sexual abuse, and you didn't tell me.

16    Tell me what your definition is of sexual abuse.

17    A.    What I told you was that -- sure.  Let's

18    talk about this for a second.

19    Q.    I don't want to talk about it.  I just

20    want to know your definition.

21    A.    Well, I have to talk to tell you.  So I

22    think sexual abuse, like most things that we

23    encounter in terms of law, are defined inductively

24    rather than deductively by way of case law.  If

25    you -- if you look in any given state for

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1    definition of sexual abuse, what you're going to
 2    find is numerous statutes, usually, that will say
 3    if this happens in this circumstance, this is
 4    sexual abuse and then another statute that says
 5    also if this happens in this circumstance, this is
 6    sexual abuse.  It's not an overarching Webster's
 7    definition, so I would say I was -- I was trained
 8    in the Southern Baptist Seminary in ethics classes
 9    and pastoral ministry classes that there are --
10    that there are -- that one way that you can
11    recognize sexual abuse is that sometimes people are
12    in relationships of trust that can be violated in a
13    way that is abusive.
14         Q.    Could be sexual abuse, right?
15         A.    Is sexual abuse if it happens in a
16    certain way.
17         Q.    But just because there's a position of
18    trust doesn't mean it's sexual abuse, does it?
19         A.    Depending on the position, yes, it does
20    mean that.
21         Q.    So would you agree with what Rachael
22    Denhollander said that David raped Bathsheba?
23               MR. PIETSCH:  Object to form.
24         A.    I don't agree with Rachael on that.
25    BY MS. RILEY:
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1          Q.     Did Dr. Molder ever confirm anything to
 2    you?
 3          A.     No.
 4          Q.     Did Dr. Mohler ever provide you with any
 5    corroborating evidence of the allegations?
 6          A.     No.
 7          Q.     And if you'll go to the next paragraph,
 8    the third sentence, do you see where it says
 9    Dr. Sills?
10          A.     Yes.
11          Q.     Dr. Sills did not respond for comment.
12    Well, actually, let's read the second sentence.  It
13    says, Mr. Roach confirmed Dr. Sills' phone number
14    and tried contacting him to discuss the
15    allegations.  Dr. Sills did not respond for
16    comment.
17                 Did your counsel inform you that we had
18    the actual voicemail recording of Dr. Roach?
19                 MR. PIETSCH:  I'm going to object to the
20    extent you're asking what I've discussed with him.
21                 MS. RILEY:  Let me rephrase.
22                 MR. PIETSCH:  And instruct him not to
23    answer.
24                 MS. RILEY:  Yeah -- well, no.  Let me
25    rephrase.
```

Alpha Reporting                    800-556-8974
A Veritext Company                 www.veritext.com

```
 1    you, said that SBC kept a list that over 700 names
 2    of people that had been credibly accused.
 3              Do you remember him saying that on that
 4    interview?
 5         A.   Yes.
 6         Q.   Ryan Burge also said that you have a
 7    huge impact as SBC president with how people vote.
 8              Do you remember him saying that in the
 9    interview?
10         A.   You mean talking about the presidential
11    election?
12         Q.   I just remember him saying you had a
13    huge impact on how people vote.
14         A.   He seemed to be under that impression,
15    yes.  That's what he said.
16         Q.   Do you agree with him that, as SBC
17    president, that you had the ability to have a huge
18    impact -- a huge impact on people?
19         A.   No.
20         Q.   Well, you stated in the interview,
21    quote, 50,000 churches of people I love are
22    represented by me when I speak, and so do I feel a
23    sense of needing to be more wise and careful about
24    things I say now?  Absolutely, I do, end quote.
25              Did you say that?
```

Alpha Reporting                800-556-8974
A Veritext Company           www.veritext.com

1    Ryan Burge was talking about.

2    BY MS. RILEY:

3          Q.    Okay.

4          A.    Yes, I do think the president of the

5    Southern Baptist Convention has influence on what

6    happens in the SBC.

7          Q.    And what about an impact on how members

8    within the SBC think?

9                MR. PIETSCH:  Object to the form.

10         A.    Southern Baptists are a notoriously

11   independent lot.  I -- I think that -- I think that

12   I had some influence on Southern Baptist opinion

13   before I was president of the SBC.  I think I had

14   some while I was president of the SBC.  I think I

15   still have some today.

16   BY MS. RILEY:

17         Q.    But do you think during the time --

18   you're president of the SBC.  You don't think you

19   have influence on what the members think?

20               MR. PIETSCH:  Object to the form.

21         A.    Yes, as I said, I do think that you have

22   some influence as president of the SBC.

23   BY MS. RILEY:

24         Q.    You also stated in the interview that

25   you wanted to serve God well, correct?

Alpha Reporting                          800-556-8974
A Veritext Company                    www.veritext.com

```
1              MR. PIETSCH:  Object to the form.
2         A.    I can't answer that because I don't know
3    all the details of her allegations, specific
4    details about her allegations so -- so I don't
5    know.
6    BY MS. RILEY:
7         Q.    But my question -- you know that he --
8    she claims sexual abuse and that the relationship
9    was nonconsensual, correct?
10        A.    I do not know all the details of her
11   allegations about what was and was not consensual.
12        Q.    Do you know that Jennifer Lyell said
13   that that her relationship with David Sills was
14   nonconsensual, correct?
15        A.    I do not know that, that she's saying
16   that every aspect of her relationship with him was
17   nonconsensual from start to finish.  I don't know
18   that.
19        Q.    Do you acknowledge that she claims the
20   sexual portion of their relationship was
21   nonconsensual?
22             MR. PIETSCH:  Object to the form.
23        A.    I don't know.
24   BY MS. RILEY:
25        Q.    So you're -- so you're -- as you sit
```

Page 134

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com
Case 3:23-cv-00478    Document 411-5    Filed 11/03/25    Page 19 of 32 PageID #: 13311

```
 1                   MS. ARBONEAUX:  Object to the form.
 2      BY MS. RILEY:
 3           Q.    Or to Baptist Press?
 4                   MR. PIETSCH:  Object to the form.
 5                   MS. ARBONEAUX:  Object to the form.
 6           A.    No, I'm not aware.
 7      BY MS. RILEY:
 8           Q.    Did she produce them to you?
 9           A.    No.  She didn't produce anything to me.
10           Q.    Okay.  All right.  I noticed on X or
11      Twitter -- for the sake of this deposition, may I
12      say Twitter?
13           A.    That's still what I'm saying.
14           Q.    I notice that all your posts were
15      deleted before 2024.  When did you delete those
16      posts?
17           A.    I've never deleted posts on Twitter.
18      I've not deleted posts before 2024.
19           Q.    Are you aware that they -- I couldn't
20      find them.
21           A.    They're there.
22           Q.    But you didn't produce them in this
23      litigation, did you?
24           A.    All of my tweets or --
25           Q.    About Jennifer Lyell.
```

Page 136

Alpha Reporting                      800-556-8974
A Veritext Company                   www.veritext.com
Case 3:23-cv-00478    Document 411-5    Filed 11/03/25    Page 20 of 32 PageID #: 13312

```
 1    many people had read something that I wrote was bad
 2    for me.  I liked to see that a lot of people read
 3    what I wrote, and I stopped looking at things like
 4    that because --
 5         Q.    Is it fair to say you --
 6         A.    -- it would be prideful.
 7         Q.    -- you had anything between 5 and 25,000
 8    back in 2022?
 9         A.    Yeah.  I would say that's probably
10    right.
11         Q.    Okay.
12         A.    I mean --
13               THE REPORTER:  Slow down, everybody.
14               THE WITNESS:  I'm so sorry.  I'm so
15    sorry.
16         A.    I would guess that I had around 20,000
17    maybe.
18    BY MS. RILEY:
19         Q.    I'm not trying to hold you.  I'm just
20    trying to see if --
21         A.    I --
22         Q.    -- you have a general idea of how many
23    followers you had.
24               Okay.  Now let's get into your tweets.
25         A.    Okay.
```

Page 139

Alpha Reporting                          800-556-8974
A Veritext Company                    www.veritext.com
Case 3:23-cv-00478    Document 411-5    Filed 11/03/25    Page 21 of 32 PageID #: 13313

```
 1          A.    Oh, no.  It would mean that she would
 2    see it, and I don't know beyond that operation.
 3          Q.    I don't either.
 4          A.    Yeah.
 5          Q.    Okay.  In your tweet you state, Jennifer
 6    Lyell's claims have been corrob -- have been
 7    investigated and corroborated.  They have been
 8    investigated by people close to the situation who
 9    have firsthand knowledge of the people and context
10    involved.
11                Did I read that correctly?
12          A.    Yes.
13          Q.    And you posted that statement on July
14    the 7th, 2022?
15          A.    Yes.
16          Q.    Guidepost stated they weren't hired to
17    investigate and didn't investigate the underlying
18    allegations of abuse alleged by Jennifer Sills
19    against -- I mean Jennifer Lyell against David
20    Sills, so my question to you is who were the people
21    close to the situation who investigated the claims?
22                MR. PIETSCH:  Object to the form.
23          A.    The people I'm mentioning there are
24    principally Adam Greenway and secondhand Albert
25    Mohler.
```

Alpha Reporting                           800-556-8974
A Veritext Company                     www.veritext.com

```
 1    BY MS. RILEY:
 2         Q.    So if it is determined that neither one
 3    of those men investigated, then your tweet would be
 4    incorrect, right?
 5                 MR. PIETSCH:  Object to the form.
 6         A.    That's correct.  If it is determined
 7    that they did not do that, then this tweet would be
 8    incorrect.
 9    BY MS. RILEY:
10         Q.    Okay.  And you never actually spoke to
11    Dr. Mohler; is that correct?
12         A.    I did not speak to Dr. Mohler.
13         Q.    About the allegations.
14         A.    Right.
15         Q.    And you've testified previously you
16    didn't investigate anything, correct?
17         A.    Correct.
18         Q.    Did you call anyone that worked at the
19    seminary when Jennifer and David Sills were there?
20         A.    Well, I spoke to Adam Greenway.
21         Q.    Did you call anybody at the seminary
22    when they were there, that -- people that would
23    have been there when they were there?
24         A.    Adam Greenway worked there when they
25    were there --
```

Page 147

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

1      Q.    Okay.
2      A.    -- and was an employee at Southern
3   Seminary at the time I spoke to him.
4      Q.    Okay.  And did he speak to you about
5   their relationship -- like having personal
6   knowledge of their relationship back when Jennifer
7   was at the seminary?
8      A.    I -- he did not.
9          MR. PIETSCH:  Just going to object to
10  the form of the question.
11  BY MS. RILEY:
12     Q.    You understand what I'm asking.  I want
13  to know did you speak to anybody who actually was
14  there working on a day-to-day basis with Jennifer
15  and David Sills during the time frame when Jennifer
16  was at seminary?
17     A.    So the conversations that I had went to
18  the matter of whether Adam Greenway had
19  appropriately responded to Jennifer Lyell's claims.
20     Q.    Gotcha.
21     A.    And the conversations that were held
22  were held with a focus on that.
23     Q.    Yes, sir.  Did you call Mr. Bill Cook?
24     A.    No.
25     Q.    Could you have if you had wanted to?

Page 148

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com
Case 3:23-cv-00478    Document 411-5    Filed 11/03/25    Page 24 of 32 PageID #: 13316

1         A.    I didn't know who he was, so, no.  I
2    didn't have his phone number or didn't have any
3    knowledge of who he was, could not have called him
4    without that knowledge.
5         Q.    You never asked -- let me scratch that.
6    We'll come back to that one.
7         A.    Okay.  Still don't know that he's
8    relevant to Adam Greenway's performance in that
9    meeting, whether he acted appropriately or not.
10        Q.    I wasn't asking that.
11        A.    Right.
12        Q.    I wasn't connecting Bill Cook to Adam
13   Greenway at all.
14        A.    Okay.
15        Q.    Yeah, just for clarification.
16              Did you ever in any form of
17   communication reach out to David Sills to ask him
18   if the allegations were true?
19        A.    No.
20        Q.    Did you direct any agent or employee of
21   Southern Baptist Convention to interview David
22   Sills?
23        A.    No.
24        Q.    Or go speak to David Sills?
25        A.    No.

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
1     correct?
2           A.    Yes.
3           Q.    And that's what I'm asking.  Is that
4     what you're referring to?
5           A.    I'm referring to the claim that David
6     Sills, who had been her professor, and Jennifer
7     Lyells, who had been not on a faculty, had a sexual
8     relationship.
9           Q.    Okay.  So when you make this statement,
10    you're referring to your definition.
11          A.    Yes.
12          Q.    Do you think most of your readers
13    understood that's what you were talking about?
14                MR. PIETSCH:  Object to the form.
15          A.    I would think so.  I arrived at my
16    definition of sexual abuse from standard textbooks
17    on ministerial ethics that I was educated on at
18    seminary.  I think most of my followers are
19    Southern Baptist pastors and ministers and
20    administrators who have been trained in the same
21    way that I have been.
22    BY MS. RILEY:
23          Q.    Are you aware that I didn't know that's
24    what you were talking about?
25                MR. PIETSCH:  That's not -- was that a
```

Page 151

Alpha Reporting                          800-556-8974
A Veritext Company                    www.veritext.com
Case 3:23-cv-00478    Document 411-5    Filed 11/03/25    Page 26 of 32 PageID #: 13318

1          Q.    Okay.  You state in a tweet, I think
2     it's on the next page.  The second one -- tweet
3     says, These -- These subject matter experts have
4     said that they believe Jennifer about the abuse
5     she's experienced and that what she has said is
6     true.
7               Did I read that correctly?
8          A.    Yes.
9          Q.    And you -- and you tweeted that?
10         A.    Yes.
11         Q.    Just because they believed her doesn't
12    mean they actually investigated the underlying
13    allegations, correct?
14              MR. PIETSCH:  Object to the form.
15         A.    I'll agree that you cannot conclude that
16    they conducted an investigation just from the fact
17    that they say they believe her, yes.
18    BY MS. RILEY:
19         Q.    Did you tweet all these tweets on this
20    page just --
21         A.    Yes.
22         Q.    You state at the top, Her claims have
23    been investigated by Guidepost.
24              But according to the letter of
25    engagement that you and I have gone over and the

                                        Page 156

Alpha Reporting                      800-556-8974
A Veritext Company                www.veritext.com
Case 3:23-cv-00478    Document 411-5    Filed 11/03/25    Page 27 of 32 PageID #: 13319

1   Guidepost interrogatory answers, that's an untrue
2   statement, isn't it?
3               MR. PIETSCH:  Object to the form.
4               MS. ARBONEAUX:  Object to the form.
5        A.    I differ as to whether it's untrue based
6   on the engagement letter.  We talked about that.
7   The interrogaty -- the interrogatory response
8   certainly seems to say that they did not
9   investigate this claim.  The report that they
10  gave --
11  BY MS. RILEY:
12       Q.    I'm not asking --
13       A.    -- mentioned seems to say differently.
14       Q.    I didn't ask you about the report.  I
15  asked you based on their interrogatory answers, is
16  that a true statement?
17              MR. PIETSCH:  Object to the form.
18       A.    If their interrogatory --
19              MS. KLEIN:  Objection.
20       A.    If their interrogatory answers are
21  accurate, then this tweet is inaccurate.
22  BY MS. RILEY:
23       Q.    Okay.  All right.  You can turn the
24  page, Pastor Barber.
25       A.    Okay.

Page 157

Alpha Reporting                                800-556-8974
A Veritext Company                          www.veritext.com
Case 3:23-cv-00478   Document 411-5   Filed 11/03/25   Page 28 of 32 PageID #: 13320

```
 1        Q.    And the Jen Lyell referenced here is
 2   Jennifer Lyell that's the defendant in this
 3   lawsuit?
 4        A.    Yes.
 5        Q.    Okay.  Okay.  You state in here that
 6   Mohler -- Albert Mohler time and time again has
 7   said Jen Lyell was abused?  Is that what you're
 8   stating?
 9        A.    Yes.
10        Q.    Do you think your tweet -- you would
11   have tweeted that if you had known at the time that
12   Al Mohler didn't investigate it for corroborating
13   evidence, other than speaking to David and
14   Jennifer?
15             MR. PIETSCH:  Object to the form.
16             MR. LEET:  Form and asked and answered.
17        A.    So I think knowing Albert Mohler's claim
18   that a confession was made to a sexual
19   relationship, I would still feel comfortable in --
20   in tweeting this, yes.
21   BY MS. RILEY:
22        Q.    Confession to the sexual relationship
23   but not confession to the sexual abuse, correct?
24             MR. PIETSCH:  Object to the form.
25        A.    I think that a sexual relationship
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1                  MS. RILEY:  I don't know that it has
 2      one.  Does it have --
 3                  THE WITNESS:  I don't see one.  No,
 4      there's nothing under the sticker.
 5                  (Deposition Exhibit 15 marked.)
 6                  THE WITNESS:  So Exhibits 13 and 14
 7      we're finished with?
 8                  MS. RILEY:  Yes, sir.
 9                  THE WITNESS:  Okay.
10      BY MS. RILEY:
11          Q.    Did you ever see this threatening email
12      or text that Eric Geiger claims that he saw from
13      Mary to Jennifer?
14                  MR. PIETSCH:  Object to the form.
15          A.    No.
16      BY MS. RILEY:
17          Q.    I've just handed you a document with
18      Sills_082292.
19          A.    Yes.
20          Q.    And is that an email from Mary Sills to
21      Jennifer Lyell on Wednesday, the 23rd, 2018?
22          A.    Yes.
23          Q.    And it states, Why would you want to
24      completely destroy the lives of people that opened
25      their home, heart, family, and lives to you?
```

Page 182

Alpha Reporting                    800-556-8974
A Veritext Company                www.veritext.com
Case 3:23-cv-00478    Document 411-5    Filed 11/03/25    Page 30 of 32 PageID #: 13322

```
 1              Did I read that correctly?
 2      A.    Yes.
 3      Q.    Does that sound threatening to you?
 4      A.    No.
 5              MS. ARBONEAUX:  Object to that question.
 6   BY MS. RILEY:
 7      Q.    And you've never -- I think you
 8   testified that you've not spoken to Mary, right?
 9      A.    I've not.
10      Q.    Okay.  Did you ever ask anybody whether
11   Mary Sills was capable of threatening Jennifer
12   Lyells or her personality capable of it?
13      A.    No.
14      Q.    Did you ever ask anyone if Mary Sills
15   had a propensity for violence before you posted --
16   retweeted what Eric Geiger tweeted?
17      A.    Retweets are not endorsements, but, no,
18   I never did.
19      Q.    Did you ever see that Capstone article
20   that called you out for retweeting it?
21      A.    No.
22      Q.    The Capstone article claims that by you
23   retweeting it, that you compounded the damage to
24   Mary, and my question to you is do you agree that's
25   what they said, that by retweeting it, that more
```

Page 183

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com
Case 3:23-cv-00478    Document 411-5    Filed 11/03/25    Page 31 of 32 PageID #: 13323

```
 1    sexual abuse, been convicted, had a judgment
 2    entered against them of sexual abuse, been
 3    sentenced for sexual abuse, or listed on a sex
 4    offender registry.
 5              That's correct, right?
 6         A.    Yes, that's what it says.
 7         Q.    Are you aware if David Sills has ever
 8    confessed the sexual abuse?
 9         A.    We've talked about that.
10         Q.    My definition.
11         A.    No.
12         Q.    Has David Sills ever made an admission
13    of guilt of sexual abuse that would be considered a
14    crime?
15         A.    Not to my knowledge.
16         Q.    Has David Sills ever entered a plea of
17    sexual abuse, a guilty plea of sexual abuse?
18    Excuse me.
19         A.    Not to my knowledge.
20         Q.    Has David Sills ever been convicted of
21    sexual abuse in the state of Tennessee?
22         A.    Can I ask a question --
23         Q.    Yes.
24         A.    -- just for a moment of my --
25         Q.    If you need to -- I mean, of course.
```

Page 196

Alpha Reporting
A Veritext Company

800-556-8974
www.veritext.com