# Exhibit 20

Pg 88 – States no one contacted her before it was published to notify her of the language change. Actually, she was notified about 15 minutes before it went live and told in vague terms that it had been altered, but reassured it wouldn't harm her. It was communicated as a decision already made, not up for discussion (See Lyell Timeline, March 8, 2019)

Pg 101 – Can it be added that, after Jen saw that the article had been removed with no correction issued, and after Mr. Oldham confirmed to her that no action would be taken to correct the article, she reached out to Dr. Floyd directly via email and asked for his help in correcting the story, and that Dr. Floyd replied with his support of Sing's actions? (I have that email exchange in my possession.) Ronnie's knowledge and especially any actions he directly took have been a matter of huge controversy and question for the past two years – Jen reaching out to directly to him and him directly confirming his support of the actions taken, is significant, especially since the report earlier rightly notes that he mostly "stayed out" of the decision-making process.

Pg 102 – At the end of the first paragraph noting the damage to Jen, could it somehow be added that these effects were being repeatedly brought to the attention of Dr. Floyd and BP and EC staff as we attempted to bring resolution to the situation with Jen? Maybe putting something like "and repeatedly brought to the attention of Executive Committee and Baptist Press staff, including Ronnie Floyd's personal assistant, during the timeframe that Jennifer was requesting that Baptist Press correct the article" into the sentence about her harms being corroborated? It's not just that her claims were *eventually* verified, it's that they KNEW the entire time what this was doing to her, and still refused to change the story.

(I can testify to all of this because I had all that documentation and I personally discussed these realities myself with Jonathan Howe, Ed Upton to provide to Ronnie Floyd, Todd Unzicker and Dr. Mohler, and presented documentation during our efforts to schedule mediation. I'm also aware of the professional retaliation and its corroboration, some of it in writing/text, with records I retained. They knew *exactly* what they were doing to her, to the point that Ed and Jonathan both expressed concern to me that she may not live through this process. Ed confirmed to me that he had communicated this, and my concerns, to Ronnie.)

Pg 105 – I really don't think this is accurate in the impression it gives. . .Saying that Ronnie had "regular communication with Ms. Lyell" really gives the impression that he was talking with her and listening, but he wasn't. He was ignoring and deflecting and refusing to meet with her and with me. I was working directly with Jonathan and Ed to try to get him to meet with her or I to get this cleaned up quickly and he just absolutely refused. Is there any way to change the language to more accurately reflect what those communications were? Even if it's just to say Jen regularly reached out to him to request help or a meeting to discuss correcting the story? I have the texts and emails, he really wasn't regularly communicating with her :P

Pg 107 – Is there a way here or somewhere (maybe 105) to simply reference that Dr. Mohler had also reached out to Dr. Floyd on more than one occasion to attempt to discuss correction of the article, but that Dr. Floyd was not responding to him? Dr. Mohler confirmed this to me himself at least twice when I

CONFIDENTIAL                                                                                           GPSILLS_007953

was working with him to try to reach a private and calm resolution. Even if it's just to say, after the first sentence, something like "During this time frame Dr. Mohler also reached out to Dr. Floyd to attempt to aid Ms. Lyell in her pursuit of correcting the story, and did not receive responses."

Pg 108 – Totally understand if you can't do this, but I think the names of the survivors/advocates being criticized would be impactful, unless it's a survivor or advocate name who has requested confidentiality.

Pg 114 – Can a paragraph about Jen's settlement and the apology this year please somehow be included? Her settlement and the hiding of it from the EC has been the driving force in getting this investigation underway in the last two years – this absolutely would not be happening if that had not happened. Because this has been *the* topic of conversation and the lynchpin for why we are here, and also for why privilege ultimately got waived (Jen's conversations with the EC Trustees in the week leading up to the October vote was responsible for nearly all of the vote changes – trustees realized they had been directly lied to by Ronnie about the settlement – this is on video – I know you can't get into it at this point, but it's on video because she recorded all of those meetings). It is going to seem very off to everyone if Christa's settlement is discussed but Jen's is not, nor the hiding of it from the trustees. Could a factual paragraph something like the following be added (everything in here I was a witness to and can attest to myself and provide you with names and documentation):
"After approximately eight months of Ms. Lyell and her advocate, as well as individuals within SBC leadership, attempting to obtain a proper retraction of the inaccurate story and redress of the damage caused to Ms. Lyell, Ms. Lyell retained an attorney. This was done at the counsel of high-profile SBC and EC leadership who stated to Ms. Lyell and a witness, that no help was likely to be granted to her without resorting to legal action. In May of 2020, Ms. Lyell reached a settlement with the Executive Committee for her claim of defamation. Dr. Floyd's presence at mediation was requested, but denied. Despite reaching the initial settlement, EC Trustees were largely entirely uninformed, or misinformed, about Ms. Lyell's settlement and the reasons behind it, until a second settlement was reached in 2022, which was accompanied by a formal apology from the Executive Committee. The apology acknowledged the Committee's failure to "adequately listen, protect and care for Jennifer Lyell when she came forward to share her story of abuse by a seminary professor." The Executive Committee further acknowledged that they had failed to accurately report her abuse as nonconsensual, and failed to accurately report that her abuse had been reported to multiple SBC Entities, as well as investigated and corroborated by the SBC Entities with authority over both Ms. Lyell and her abuser."

Pg 115 – This really is important – Jen did *not* ASK Rolland to speak. Rolland asked HER to speak. When he became Chairman he realized how in the dark he and most of the trustees were about her case even though this was post-settlement and he'd been the VP during everything. He was appalled that he did not know any of what had transpired despite being the VP during the process, and felt it was very important that the trustees were made aware of what had happened (this is all in writing). He assured her of his help and support and *he* asked *her* if she would speak to the trustee board to inform them of what had taken place, and asked her pastor to send a letter to help convince the EC to let her speak (which her pastor did). Greg Addison informed Slade that Slade did not have the power to invite Jen to speak. Rolland asked Jen to reach out to Greg directly to appeal the decision, which she did, at Rolland's request, and this was again denied. This context really is critical. First, it shows that even the chair was unaware of what had taken place, and it also shows how Jen worked within the system and did

CONFIDENTIAL GPSILLS_007954

everything she was directed to do, and was still thwarted at every turn. This wasn't Jen asking for stuff, it was the Chairman of the EC Board realizing everyone had been lied to and left in the dark, and asking *her* to come blow the whistle. It also demonstrates how even the good leaders are continually putting the responsibility of advocacy and truth-telling on the shoulders of the victims, instead of doing it themselves. When Rolland was denied the right to bring Jen in to speak, he then dropped everything and never informed the rest of the trustee board. Eventually she offered in person zoom meetings to any trustee who wanted to speak with her, during October while we were pushing for waiver. None of them had been informed of anything, even though Rolland knew they were kept in the dark, and that he had been too. Responsibility still fell on the victims even when the highest ranking leaders knew the truth.

### *Note in case you find it important*
Pg 173 – Following where Rod Martin reaches out to Susan Codone, she told him that if he wanted to help he needed to reach out to me (the survivor's legal and medical advocate at the time). He did not do so. (Susan texted me right away when Rod reached out to her and kept me updated on her communications with him.) Popping this in here as additional context to whether or not Rod was actually interested in helping, since he raised that as something positive he did :P

**Final Note 1:** One thing I personally find very compelling about Jen's case that isn't raised in the analysis as clearly as it is in Christa or Tiffany's case, is that Jen was the highest-paid, highest-ranked female executive in the SBC, and followed absolutely everything she was told to do within the system. She wasn't an "outsider" during any of this – she'd literally managed all these guy's book deals and the biggest budgets in the SBC. And not even those things were enough to make the system work – if that can happen to her, what happens to a survivor who doesn't have even that much on her side?

Jen pushed so hard on her case because she knew it was the only one that could raise the others up again (Christa, Jules, Tiffany). She knew if she could use her case to push this investigation, it would open the door to be able to bring them back to front and center. The Gaines motion was about Jen's case, I expanded the date range to ensure we could go well beyond her.

CONFIDENTIAL                                                                                           GPSILLS_007955