Exhibit 43

Case 3:23-cv-00478    Document 411-26    Filed 11/03/25    Page 2 of 48 PageID #: 14900

```
 1                    IN THE UNITED STATES DISTRICT COURT
 2                    FOR THE MIDDLE DISTRICT OF TENNESSEE
 3                         NASHVILLE DIVISION
 4
 5      MICHAEL DAVID SILLS and       )
        MARY SILLS,                   )
 6                                    )
                 Plaintiffs,          )
 7                                    )
             vs.                      )   Case No. 3:23-cv-00478
 8                                    )
        SOUTHERN BAPTIST CONVENTION,  )
 9      a nonprofit corporation;      )
        et al.,                       )
10                                    )
                 Defendants.          )
11                                    )
12
                    VIDEOTAPED DEPOSITION OF ROLLAND SLADE
13
                         November 19, 2024
14
15
16
17
18
19
20
21
22
23
24
25         Reported by:  T. A. Martin, CSR 3613
```

Alpha Reporting                    800-556-8974
A Veritext Company                 www.veritext.com

1   the roles of pastor, my current role.  I've also served
2   as a missionary assigned by the North American Mission
3   Board for the State of California to the San Diego
4   Southern Baptist Association as the Director of Church
5   and Community Ministry.  I also have served on the --
6   served on the North American Commission Board as a
7   national missionary in the area of ministry evangelism.
8   I am currently serving as a pastor.  I also serve as
9   moderator of the San Diego Southern Baptist Association,
10  and currently I'm serving my second year as president of
11  the California Southern Baptist Convention.  I also
12  served as a member of the Southern Baptist Executive
13  Committee.  I served as a member.  I served as a
14  committee chair of the Cooperative Program Committee.  I
15  served as vice-chairman of the Executive Committee and as
16  chairman of the Executive Committee.
17        Q.  What years were you vice-chair?
18        A.  Let's see.  I was vice-chair in -- I'm working
19  the math back in my head.
20            Okay.  So I was chair in 19 -- 2019 and 2020.
21        Q.  That's when you were chair?
22        A.  Vice-chair.
23        Q.  Vice-chair.
24            When were you chair?
25        A.  '21 and '22.

Page 10

Alpha Reporting                              800-556-8974
A Veritext Company                      www.veritext.com
Case 3:23-cv-00478    Document 411-26    Filed 11/03/25    Page 3 of 48 PageID #: 14901

```
 1          Q.  Did you review documents?
 2          A.  No.
 3          Q.  Did you review any deposition testimony from
 4    other witnesses that have given testimony?
 5          A.  No.
 6          Q.  Pastor Slade, do you know David Sills
 7    personally?
 8          A.  No, I do not.
 9          Q.  Have you ever met him?
10          A.  No, I have not.
11          Q.  Before May 2018, did you know him by reputation?
12          A.  No, I did not.
13          Q.  Did David Sills ever play a role in the
14    Executive Committee that you're aware of?
15          A.  Not to my knowledge.
16          Q.  Was he ever on the Executive Committee staff?
17          A.  Not to my knowledge.
18          Q.  Not president?
19          A.  Not to my knowledge.
20          Q.  Not vice-president?
21          A.  (Witness shakes head.)
22               MS. CALLAS:  You should offer --
23               THE WITNESS:  No.
24               MS. CALLAS:  You shook your head as opposed --
25               THE WITNESS:  Oh, yeah.
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1          Q.  Does the Southern Baptist Convention have its
 2     own separate president?
 3          A.  Yes, it does.
 4          Q.  Okay.  Who was the president when you were the
 5     chair for the Executive Committee?
 6          A.  Ed Litton and then Bart Barber.
 7          Q.  What are the responsibilities of the president
 8     of the Southern Baptist Convention?
 9          A.  President of the Southern Baptist Convention is
10     really a spokesperson, kind of the head PR, kind of face
11     of the convention, and will -- has responsibilities for
12     making appointments to certain committees, like the
13     Resolutions Committee.  And he becomes a -- as he's
14     elected, he becomes a member of the Executive Committee
15     as well.
16          Q.  How many members are part of the Executive
17     Committee?
18          A.  86.
19          Q.  And how many positions are appointed by the
20     Executive Committee to be staff other than the president
21     that you've already testified to?
22          A.  The president.
23              Other than the president?
24          Q.  (Nods head.)
25          A.  The other staff members are brought to --
```

Page 16

Alpha Reporting                          800-556-8974
A Veritext Company                    www.veritext.com
Case 3:23-cv-00478   Document 411-26   Filed 11/03/25   Page 5 of 48 PageID #: 14903

1    BY MS. RILEY:
2        Q.  Do you remember seeing this document, Pastor
3    Slade?  If you look on the front, you can see where
4    you're cc'd.
5        A.  Oh, okay.
6            And you're referring to the document as Exhibit
7    E?
8        Q.  Yes, sir.
9            You are cc'd on this document, correct?
10       A.  Yes.
11       Q.  Do you remember receiving it?
12       A.  Yes.
13       Q.  Then if you will turn to Exhibit E, which is
14   Bates No. 178298 through 304, does this refresh your
15   recollection about your conversation with Guy Frederick?
16       A.  Yes.
17       Q.  At the time that you spoke to him, did he have
18   concerns about whether or not Ms. Lyell's allegations
19   were accurate?
20       A.  As he stated in the -- in his message, he had
21   those concerns, yes.
22       Q.  And he shared those with you?
23       A.  No, he did not share those with me.
24       Q.  So when you spoke to him he didn't share those,
25   but you were aware of it through these tweets?

Page 19

Alpha Reporting                      800-556-8974
A Veritext Company                   www.veritext.com
Case 3:23-cv-00478    Document 411-26    Filed 11/03/25    Page 6 of 48 PageID #: 14904

```
 1    Sills -- Jennifer Lyell.  Sorry.

 2          Q.   It happens.

 3          But the -- it states:  The Southern Baptist

 4    Executive Committee acknowledges its failures to

 5    Ms. Lyell, including the unintentional harm created by

 6    its failure to report Ms. Lyell's allegations of

 7    nonconsensual sexual abuse were investigated and

 8    unequivocally corroborated by the SBC entities with

 9    authority over Ms. Lyell and her abuser.

10          My question to you is, are Ms. Lyell's

11    allegation of nonconsensual sexual abuse against David

12    Sills?

13          A.   That's -- yes, that's her allegation.

14          Q.   What does the term "corroborating evidence" mean

15    to you?  And you can put that down.

16          A.   It's been, you know, checked out and agreed on

17    and found to be true.

18          Q.   And supported?

19          A.   Yes.

20          Q.   What did you mean in that sentence when you said

21    the allegations were unequivocally corroborated by the

22    SBC entities?

23          A.   The entities in the SBC that were involved

24    agreed that it was -- that -- with her story.

25          Q.   What did they base that on?  What did they
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1    agree?
 2           A.   They agreed that what she said was abuse.
 3           Q.   Are you saying that the allegations of
 4    nonconsensual sexual abuse were investigated and
 5    unequivocally corroborated by the SBC?
 6           A.   No, not by the SBC, not by the Executive
 7    Committee.  By the entities that were involved.
 8           Q.   Which is who?
 9           A.   The entities that were involved are Southern
10    Seminary, Lifeway Christian Resources.  The Southern
11    Baptist Theological Seminary.  I need to say it to be
12    correct.  And Lifeway Christian Resources.  That's one
13    word.
14           Q.   Are you aware that Dr. Mohler said he did not do
15    any investigation?
16           A.   I'm not aware --
17                MR. LEET:  Objection to the form.
18                Court Reporter, this is Byron Leet on behalf of
19    the Seminary.  Thank you.
20    BY MS. RILEY:
21           Q.   Pastor Slade, I'm going to show you what is an
22    excerpt from Dr. Mohler's deposition testimony.
23                (Exhibit 5 marked for identification.)
24    BY MS. RILEY:
25           Q.   If you'll look at Line 3, it says:
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1    BY MS. RILEY:
 2         Q.  Were you aware of that?
 3         A.  Can you repeat that?
 4             (The following question was read:
 5             Q.    Were you aware that he admitted that they
 6             had had a relationship, but that it was just
 7             consensual?)
 8             THE WITNESS:  No, I'm not aware of that.  I'm
 9    not aware of any statement that -- any conversation that
10    Dr. Sills had with Dr. Mohler and the content of that
11    conversation.
12    BY MS. RILEY:
13         Q.  Are you aware that he would have been fired for
14    having an affair?
15         A.  I -- I'm aware of that.  I'm aware of that
16    because I think most colleges and schools would do that.
17         Q.  So just because he resigned or was let go
18    doesn't mean the allegations of sexual abuse were
19    correct; is that --
20         A.  I've never until now heard that Dr. Sills said
21    that they were consensual.  What you just shared with me
22    is the first time anyone has said to me that Dr.  Sills
23    said it was consensual.
24         Q.  Why didn't you ask?
25         A.  Because what I was dealing with was how the
```

Page 32

Alpha Reporting                    800-556-8974
A Veritext Company                 www.veritext.com
Case 3:23-cv-00478   Document 411-26   Filed 11/03/25   Page 9 of 48 PageID #: 14907

```
 1    Executive Committee had treated Jennifer Lyell.
 2         Q.  So everybody just assumed she was telling the
 3    truth --
 4             MS. CALLAS:  Object to the form.
 5    BY MS. RILEY:
 6         Q.  -- is that right?
 7         A.  Well, what had happened in -- the story that was
 8    given to Baptist Press staff was changed.  What she gave
 9    and what was published were not the same.
10         Q.  Right.  Because the attorneys said we have no
11    evidence to be able to publish this story; isn't that
12    right?
13             MS. CALLAS:  Object to the form.
14             THE WITNESS:  But I wasn't involved in
15    publishing the story.  I wasn't vice-chair or chairman
16    when that happened.
17             What was -- we were coming out of convention.
18    The sexual abuse task force had been formed, and now we
19    are dealing with how the Executive Committee had now gone
20    on record.  How has the Executive Committee treated
21    abusers -- victims of sexual abuse.  This is -- this is
22    how the Executive Committee treated a victim of sexual
23    abuse.
24    BY MS. RILEY:
25         Q.  How do you know she was a victim other --
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

1           MS. CALLAS:  2016.

2           THE WITNESS:  2016.

3           Okay.  I really have no judgment of this or

4    opinion of these two lines.

5    BY MS. RILEY:

6       Q.  The next e-mail is LYELL 00074752.

7           Again, if you'll look at it, Pastor Slade, where

8    it says -- it is from Jennifer Lyell and it is to David

9    Sills at e-mail mdsphd@gmail.com on 11/27/2006 at 8:03

10   p.m.

11          And if you'll read that first paragraph.  It

12   says:  Thanks for writing.

13      A.  Uh-huh.

14      Q.  Keep writing me all the time.  It makes me

15   smile.  I'm glad you're having fun, but sad I'm not there

16   having fun with y'all or you here having fun where I can

17   enjoy it, too.  Miss me much and buy me a surprise.

18          Do you see that?

19      A.  Uh-huh.

20      Q.  Does that look like abuse to you?

21          MS. STOCKTON:  Object to form.

22   BY MS. RILEY:

23      Q.  And underneath that it says:  I miss you so

24   much.

25          Do you see that under 11 -- the paragraph I just

                                           Page 38

Alpha Reporting                    800-556-8974
A Veritext Company                 www.veritext.com
Case 3:23-cv-00478    Document 411-26    Filed 11/03/25    Page 11 of 48 PageID #:
14909

1    read?  And then if you'll go down within that same
2    paragraph where it says:  I love, miss and need you much,
3    much, much.
4            And then the last sentence of that paragraph
5    says:  Did I mention I miss you, question mark, question
6    mark.  Come home.  Jeffiner/poophead.
7            Did I read that correctly?
8            MS. CALLAS:  Object to form.
9    BY MS. RILEY:
10        Q.  Did I read that correctly?
11        A.  Yes.
12        Q.  All right.  The next one is LYELL 00080432.
13            And this one is an e-mail from Jennifer Lyell to
14    David at mdsphd@gmail.  Subject is:  Good morning
15    pooeyhead.  Jennifer states:  Hey, I was just thinking
16    about the fact that I miss ya, so I thought I'd tell ya
17    again.
18            And the second-to-the-last sentence says:  Just
19    don't forget to miss me, too.
20            Did you read that?
21        A.  Uh-huh.
22        Q.  And then the next paragraph underneath that
23    says:  Good morning.  I woke up thinking about you, so I
24    thought I'd send a note.
25            And if you'll go down to the third line where it

                                                    Page 39

Alpha Reporting                          800-556-8974
A Veritext Company                       www.veritext.com
Case 3:23-cv-00478    Document 411-26    Filed 11/03/25    Page 12 of 48 PageID #:
14910

1    says:  I love you and miss you and hope all is well
2    there.
3            Do you see that --
4        A.  Yes, I do.
5        Q.  -- Pastor Slade?
6        A.  Uh-huh.
7        Q.  So far does it appear to you that they had a
8    consensual relationship?
9            MS. CALLAS:  Object to form.
10           MS. STOCKTON:  Object to form.
11           THE WITNESS:  These are -- what you have read to
12   me are --
13   BY MS. RILEY:
14       Q.  If you don't mind, if you'll just answer the
15   question and then explain.
16           MS. CALLAS:  Well, let's go back, if you don't
17   mind.
18           MS. RILEY:  Reread the question?
19           MS. CALLAS:  Yeah.
20           THE WITNESS:  Yeah, yeah.
21           (The following question was read:
22           Q.    So far does it appear to you that they
23           had a consensual relationship?)
24           THE WITNESS:  No, it doesn't.
25

                                          Page 40

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com
Case 3:23-cv-00478    Document 411-26    Filed 11/03/25    Page 13 of 48 PageID #:
                                    14911

```
 1    BY MS. RILEY:
 2         Q.  Does it look like it's nonconsensual at this
 3    point?
 4              It doesn't look like it's a nonconsensual
 5    relationship at this point, does it?
 6              MS. CALLAS:  Object to the form.
 7              THE WITNESS:  It doesn't look like it's a
 8    relationship.  It looks like it's a one-sided
 9    conversation.
10              What you have read -- asked me to read is a
11    one-sided conversation, or one -- one side of a
12    conversation.
13    BY MS. RILEY:
14         Q.  From Jennifer primarily, correct?
15         A.  Uh-huh.  Uh-huh.
16              MS. CALLAS:  Is that a yes?
17    BY MS. RILEY:
18         Q.  All right.  The next document --
19              MS. CALLAS:  Say yes.
20              THE WITNESS:  Oh, say yes.  I'm sorry.
21    BY MS. RILEY:
22         Q.  The next document is LYELL 00069305.
23         A.  Okay.
24         Q.  If will turn -- we will start from the bottom,
25    so we will work backwards chronologically.
```

Alpha Reporting                          800-556-8974
A Veritext Company                       www.veritext.com

```
1              If you note, it is an e-mail from Jennifer Lyell
2    to David, and if you'll go down where it says:  I'm
3    really sorry that I wigged out so bad earlier.  Just
4    didn't realize what it was going to feel like to be so
5    sad and scared, but I'm not letting myself dwell on it
6    and putting one foot in front of the other to make you
7    proud.  Please let me hear from you if you get this and
8    be careful and keep praying for me.  I still need you
9    lots.  You're still there for me, right?  Ta-ta,
10   Jeffiner.
11           Do you see that?
12       A.  Yes.
13       Q.  And if you go right above that, do you see where
14   David Sills responded and says:  I hope you're better.
15   It's just going to take time to get more normal.
16           Do you see that?
17       A.  Yes.
18       Q.  Then if you'll turn the page, Pastor Slade, to
19   the beginning of the -- that down here at the bottom --
20       A.  Okay.
21       Q.  -- where Jennifer says:  Hey, I'm so happy to
22   hear from you.  I miss you so much.  I think that this is
23   part of why I freaked out so bad.
24           Do you see that?
25       A.  Uh-huh.
```

Page 42

Alpha Reporting                          800-556-8974
A Veritext Company                     www.veritext.com
Case 3:23-cv-00478    Document 411-26    Filed 11/03/25    Page 15 of 48 PageID #:
14913

1          Q.  And then if you'll go down -- maybe start on the
2      right side -- maybe eight or ten lines, and it says:  I
3      really didn't think I could do it and was thinking I just
4      needed to die, and then I remembered that you know me
5      really well and that you thought I could do it.
6              Do you see that?
7          A.  Yes.
8          Q.  Okay.  And then right above that, Mr. Sills is
9      responding to her.  Do you see that?
10             It says:  You can do this.  You're ready and God
11     is so good and patient and loving and protecting.  He's
12     not going to let you down.  Each passing moment will make
13     it more normal and you stronger.  Mary is fine with you.
14     I'm here for you.  I'm hurting for you.  I have a lump in
15     my throat, too.  I wish I could hug your neck, but God
16     has made it this way so you can lean on Him more than
17     people.  Breathe, pray, sleep, dream sweet dreams, rest.
18     The Lord is near.  Refuse to fear.  Enjoy His love.
19             Do you see that response?
20         A.  Yes.
21         Q.  Then up above she says:  Thank you so much.  It
22     makes me feel less alone to know that you really care and
23     you hurt for me.
24             It says:  I'm also praying for you this week.  I
25     love you, and thank you again.  Always, your Jeffiner.

                                              Page 43

Alpha Reporting                         800-556-8974
A Veritext Company                      www.veritext.com
Case 3:23-cv-00478    Document 411-26    Filed 11/03/25    Page 16 of 48 PageID #:
14914

1    Mental hug at 11:00, question mark.

2         Do you see that?

3    A.   Uh-huh.

4    Q.   Okay.  This one is LYELL 00080033.

5         And this is -- if you'll just look at the top

6    part, Pastor Slade, that first sentence, do you see that

7    that's an e-mail from Jennifer to David's e-mail address?

8    A.   Yes.

9    Q.   In December of 2006.

10        And it says -- and this is in response to the

11   e-mails we just read.  It was just a different thread.

12   But it says:  No one has ever hurt with me before and had

13   a lump in their throat for me before.  Thank you for

14   that.  I don't know how you could care so much about me,

15   but I'm eternally truly grateful.

16        Okay.  You can put that aside.

17        All right.  This one is an e-mail in 2007 from

18   Jennifer to David.  Do you see the highlighted portion

19   that states:  I miss you and am hoping you'll have e-mail

20   in Nazca?

21        Do you see that?

22   A.   Uh-huh.  Yes.

23   Q.   And that was in 2007, so after the previous

24   e-mails, correct?

25   A.   Correct.

Page 44

Alpha Reporting                      800-556-8974
A Veritext Company                   www.veritext.com
Case 3:23-cv-00478    Document 411-26    Filed 11/03/25    Page 17 of 48 PageID #:
14915

```
 1          Q.  So her e-mails are ongoing with Dr. Sills,
 2    correct?
 3          A.  Yes.
 4          Q.  All right.
 5              MS. STOCKTON:  Counsel, I'm sorry to interrupt,
 6    but we can't see the documents anymore.  Do you mind if
 7    you keep them on the screen while you're asking the
 8    questions just so we can see that on Zoom?
 9              MS. RILEY:  T, did you hear that?
10              MS. MADDUX:  Yeah, but I don't have the document
11    you just went over.
12              MS. RILEY:  Oh, okay.  All right.  The next one
13    is Bates No. 00087567.
14          Q.  This is an e-mail from Jennifer to David Sills,
15    correct, in 2007?
16          A.  Yes.
17          Q.  It says:  Yay.  I'm so, so, so happy to hear
18    from you.  Sorry you are sleepy.  I knew you would be.
19    Just talked with Steve --
20              Wait a minute.  Excuse me.  Not that sentence.
21              I'm praying for you and here if you need
22    anything.
23              Do you see that?
24          A.  Yes.
25          Q.  Okay.  The next one is LYELL 00069925.  And that
```

Alpha Reporting                          800-556-8974
A Veritext Company                    www.veritext.com

1     is -- you can put the other one down, Pastor Slade, if
2     you want -- an e-mail from Jennifer Lyell to David Sills,
3     but this one is in 2008, correct?
4         A.  Yes.
5         Q.  It says:  Yay.  I miss you, with maybe ten
6     exclamation points.  I had horrible dreams about you
7     getting rid of me again last night.  What is that about?
8     Sheesh, don't do that.  It wouldn't be fun.  Let me know
9     what I can do for you.  I'm really ready for you to come
10    home, back to the land where I can help you with
11    Manillionth infinity.  Lots.
12            MS. CALLAS:  Let me object to the form, because
13    I think you added a word.
14            THE WITNESS:  Yes.
15            MS. RILEY:  Which one?
16            MS. CALLAS:  Home.
17            THE WITNESS:  Home.
18            MS. RILEY:  Oh, back to the land.
19            MS. CALLAS:  Yeah.
20    BY MS. RILEY:
21        Q.  And then underneath it -- it's from David Sills,
22    and it says:  Okay we are on.  In first.  Pooped but
23    headed that way.
24            Do you see that?
25        A.  Yes, I do.

                                              Page 46

Alpha Reporting                          800-556-8974
A Veritext Company                    www.veritext.com
Case 3:23-cv-00478    Document 411-26    Filed 11/03/25    Page 19 of 48 PageID #:
14917

1      Q.  Okay.  All right.  The next document is LYELL
2  00060006.  And it's an e-mail from Lyell in July of '08,
3  correct?
4      A.  Yes.
5      Q.  And at the end of that paragraph with the
6  wording or at the end of the second sentence it says:
7  BTW, I miss you.
8          And it has an entire page of exclamation points,
9  doesn't it?
10     A.  Yes.
11     Q.  That's a lot of exclamation points, isn't it?
12     A.  Yes, it is.
13     Q.  Does it look at this point to you that there is
14 an abusive relationship between the two of them?
15         MS. CALLAS:  Object to the form.
16 BY MS. RILEY:
17     Q.  It doesn't, does it, Pastor Slade?
18         MS. CALLAS:  Object to the form.
19         Let him answer before you ask him another
20 question.
21         THE WITNESS:  No, it doesn't.
22 BY MS. RILEY:
23     Q.  The next one is LYELL 00160710.  That is also in
24 July of 2008.
25         If you go to the bottom, it's an e-mail from

                                                  Page 47

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com
Case 3:23-cv-00478    Document 411-26    Filed 11/03/25    Page 20 of 48 PageID #:
14918

```
 1     David -- excuse me -- Jennifer to David.  It states:
 2     Siwwyhead, I just landed in STL.  Where is my e-mail from
 3     ya saying how much I'm missed?
 4             And then David Sills responds:  You're a DDH.
 5     We are eating at Bembos.  That's you.
 6             MS. MADDUX:  Katherine, what is that Bates
 7     number?
 8             MS. RILEY:  I'm sorry.  LYELL 00160710.
 9             You got it up?
10             MS. MADDUX:  No.  I'm looking for it.
11             MS. RILEY:  You want to go back on mute, T.
12        Q.  And then she responds:  Meanihead, I miss you so
13     times a manillion to infinity power.  I'm going to make
14     you know it.  What can I do for ya?
15             And then he responds back up the at top and asks
16     her how her eye is.
17             Do you see that?
18        A.  Yes, I do.
19        Q.  Okay.  The next document is LYELL 00070838.
20             If you look down at the bottom -- we will start
21     there, Pastor Slade.  It's an e-mail from Jennifer to
22     David Sills home in 2008; is that correct?  If you'll
23     look --
24        A.  Yes, July 16, 2008.
25        Q.  And the second sentence states:  I'm pooped and
```

Page 48

```
1    not so happy about it, especially because I'm guessing
2    I'm going to miss you again.  I hope you are remembering
3    that you like me lot even though I haven't been able to
4    talk to you online.  I'm feeling super out of touch.  I
5    miss you, with a lot of exclamation points, a lot, a lot
6    of exclamation points.  Let me know how you are.
7              Do you see that?
8         A.  Yes.
9         Q.  And do you see that David Sills does respond
10   back to her in the next paragraph up?
11        A.  Yes.
12        Q.  Okay.  And then if you go up, at the very top it
13   says that Dana just ordered a copy of your book.  I made
14   her buy it.
15             Do you see that?
16        A.  Yes.
17        Q.  And then underneath that it says:  I miss you.
18   And the last sentence says:  I hope that it isn't in any
19   way negatively impacting my relationship with ya that I'm
20   here instead of at home.  I'm praying for you.
21             You saw that?
22        A.  Yes.
23        Q.  The next document is LYELL 00048840.
24             If you'll look at it, Pastor Slade, does it
25   appear to be an e-mail string with a conversation between
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

1    Jennifer and David?

2         A.  Yes, it does.

3         Q.  And if you'll go down to the second paragraph,

4    it states:  Carolyn just told me she'd been thinking of

5    you a lot and felt impressed to pray for you several

6    times.  Isn't that sweet?

7              And then above that David responds:  Yep, I

8    appreciate that.  Too bad you never think of me and pray

9    for me.

10             Did I read that correctly?

11             It's right here, Pastor Slade.  Sorry.

12        A.  Oh, okay.

13             Yes, I see it.  Yes, I see it.

14        Q.  And then at the very top she -- Jennifer Lyell

15   responds:  Are you kidding, lots of question marks.  I

16   think of you all -- in all caps -- the time and I pray

17   for you at least six or seven very specific times a day

18   as well as other random times as it pops up.  You are the

19   first person I pray for every morning and the first

20   person on my list every night.  I, however at your own

21   admission, am not even on your daily prayer list.  Hmmmm.

22   Siwwyhead.  I'm always praying for you.

23             Do you see that?

24        A.  Yes, I do.

25        Q.  And this was in 2008, correct?

                                        Page 50

                    Alpha Reporting                    800-556-8974
                    A Veritext Company              www.veritext.com
Case 3:23-cv-00478    Document 411-26    Filed 11/03/25    Page 23 of 48 PageID #:
                                    14921

```
 1        A.  Yes.
 2        Q.  Do you see why David Sills was surprised when he
 3   was accused of a nonconsensual relationship with Jennifer
 4   Lyell?
 5            MS. CALLAS:  Object to the form.  Speculation.
 6   BY MS. RILEY:
 7        Q.  Just from the e-mails that you have read.
 8            MS. CALLAS:  Again, let him answer the question
 9   before you ask him a followup.
10   BY MS. RILEY:
11        Q.  I can clarify the question.
12        A.  Yeah.  I -- as I'm reading these, as you're
13   sharing this with me, it's my -- my response is it's a
14   strange relationship.  Strange.
15        Q.  But it doesn't appear to be abusive within the
16   e-mails, does it?
17            MS. CALLAS:  Object to the form.
18            THE WITNESS:  The language of the e-mails is not
19   abusive.  The language.
20   BY MS. RILEY:
21        Q.  All right.  The next one is LYELL 00075627.
22            And, also, it -- does this appear to be another
23   e-mail string from Jennifer Lyell and David Sills in
24   2008?
25        A.  This one appears different because it says on
```

Page 51

Alpha Reporting
A Veritext Company

800-556-8974
www.veritext.com

Case 3:23-cv-00478   Document 411-26   Filed 11/03/25   Page 24 of 48 PageID #:
14922

```
 1    the heading "on behalf of," and there is another e-mail
 2    address added.
 3         Q.  Are we looking at -- what are you looking at?
 4         A.  Same -- Line 2, the second line at the top -- at
 5    the very top where it says from Jennifer.
 6         Q.  Uh-huh.
 7         A.  And then the next one there -- it says "on
 8    behalf of," and then there is another e-mail there.
 9         Q.  Yes.  That's Jennifer's reaching-and-teaching
10    e-mail address.
11         A.  Okay.  All right.
12         Q.  But good catch.
13              Down at the bottom, in September 2008, David
14    Sills wrote:  Hey, I know you're asleep.  I just wanted
15    you to know that I'm praying for you.  I know that you
16    will handle yourself well.  Don't forget that you have
17    already -- that you already have a job and don't have to
18    take anything off of those folks.  Just listen to what
19    they have to say and smile and say I'll be in touch.  And
20    don't forget that I love you and I'm thankful for you and
21    I'm glad that you are my friend.  I do love you.
22              Do you see that?  Did I read that correctly?
23         A.  Yes.
24         Q.  And then she responds:  There is nothing that
25    anyone in the whole world could say that would be more
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1    encouraging to me or mean more to me than this.  Thank
 2    you for your prayers and for your love, David.  I know
 3    you're tired, discouraged and stressed, so it means so
 4    very much that you took the time to write and that you
 5    wrote this.  I know you love me, and you know this gives
 6    me great peace and encouragement.  I cannot say thank you
 7    strong enough.  I love and appreciate you so very, very
 8    much.  Really.
 9              Do you see that?
10        A.   Yes, I do.
11        Q.   This one is LYELL 00104960.
12              And what is the date of that e-mail?
13        A.   March 18, 2013.
14        Q.   Okay.  And then this one is -- what's it state
15    on there?  What's the message?
16        A.   SWH whaddya doin?  I want to chat with ya.
17        Q.   Okay.
18        A.   I'm assuming the W means "with" ya.  That's it.
19        Q.   You can put that down.
20              The next one is LYELL 00037999.
21              That is an e-mail from Jennifer Lyell to David
22    Sills in April of 2013, correct?
23        A.   Yes.
24        Q.   Okay.  It says:  Ready for you to come home SWH.
25              Did I read that correctly?
```

Alpha Reporting                          800-556-8974
A Veritext Company                    www.veritext.com

```
1          A.  Yes.

2          Q.  Last one.

3              The next one is LYELL 00068665.

4              It is an April 2013 e-mail from Jennifer to

5      David, correct?

6          A.  Uh-huh.  Yes.

7          Q.  In the second paragraph it says:  Lest there be

8      any confusion, I'll state what I believe very bluntly.  I

9      believe your best days are ahead of you.  I believe this

10     season has been horrified and is refining for what He has

11     for you.  I do not believe you can have ruined your life,

12     chances or future.  I believe you could do many things

13     and ultimately it's going to require stepping out in

14     faith without everything perfected.  This will not be a

15     perfect option because there never is, but I believe

16     there are several about which we know.  Raising support

17     and doing RT in us, doing RT and living overseas, IMB,

18     another unknown opportunity the Lord could open.  I

19     believe we can change every heart at IMB or SBTS.  I've

20     always believed in you and been on your side.  I believe

21     you're giftedness is a blessing to the kingdom and pray

22     it finds expression that brings you joy.  I have never

23     thought you were limited or any other negative thing.  I

24     thought you knew how fully on your side and in belief of

25     you that I am.  I'm praying for you and always on your
```

Page 54

Alpha Reporting                           800-556-8974
A Veritext Company                    www.veritext.com
Case 3:23-cv-00478   Document 411-26   Filed 11/03/25   Page 27 of 48 PageID #:
14925

```
 1    side.
 2              (Exhibit 6 marked for identification.)
 3    BY MS. RILEY:
 4         Q.  So I have showed you, Pastor Slade, a series of
 5    e-mails between David Sills and Jennifer Lyell that go
 6    from 2006 to 2013.
 7              It appears -- after reading those e-mails, does
 8    it appear to you that they did have a relationship?
 9         A.  Yes, it appears that they did have a
10    relationship.
11         Q.  Is there anything in those e-mails that causes
12    you to be concerned that the relationship was
13    nonconsensual?
14              MS. CALLAS:  Object to the form.
15              MS. STOCKTON:  Object to form.
16              THE WITNESS:  The e-mails are evidence that they
17    had a relationship.  It doesn't speak to me as to whether
18    it was consensual or abusive, because that's not -- what
19    you have shown me is they were communicating with each
20    other and, over a seven-year period, concern for each
21    other.  And that's -- that's what I see.
22              Again, I go back to --
23    BY MS. RILEY:
24         Q.  If you don't mind, there is no pending question.
25         A.  Okay.
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

1      A.  She said she was.  So her definition of abuse --
2    by her definition of abuse, she was abused.
3      Q.  Right.
4          But you realize that's not why you're here,
5    because she said.  You're here because you went on social
6    media and publicly affirmed and said that her allegations
7    were unequivocally corroborated against David Sills?
8          MS. CALLAS:  Object to the form.
9    BY MS. RILEY:
10     Q.  Do you realize that's why you're here?
11     A.  I disagree with that -- I mean that's why you
12   say I'm here.  That's why you say I'm here.  I'm here
13   because I found that the Executive Committee, which I was
14   the chairman of, had treated her badly, caused harm to
15   her.  And we subsequently were asked to make that right
16   or to do something in that regard.  And -- that was going
17   to come out -- come out in the report and all that kind
18   of stuff.  And we -- we said no, we're not going to do --
19   what I was asked to do was really, you know, own how we
20   had -- in terms of Baptist Press, how we had handled it.
21     Q.  What do you mean -- let's see.
22         You did no investigation yourself into whether
23   the allegations against David Sills were actually true,
24   did you?
25     A.  No, I did not.

Page 34

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com
Case 3:23-cv-00478    Document 411-26    Filed 11/03/25    Page 29 of 48 PageID #:
14927

1      Q.  Do you know anyone that investigated the
2   allegations to determine if Ms. Lyell was actually
3   telling the truth?
4      A.  No, I do not know of any investigator or
5   investigation that was done.
6      Q.  Pastor Slade, we have been going an hour.  Would
7   you like to take a break?
8      A.  Sure.
9      Q.  Are you okay?
10      A.  I'm really okay.
11          MS. RILEY:  Okay.  Gretchen?
12          MS. CALLAS:  Yeah.  I'm fine.  Thank you.
13   BY MS. RILEY:
14      Q.  All right.  Pastor Slade, are you aware of any
15   social media postings out there that have your name on it
16   that you in fact didn't write?
17      A.  Not that I'm aware of.
18      Q.  And you testified that you never personally saw
19   Jennifer Lyell and David Sills together, correct?
20      A.  Correct.
21      Q.  And you have no firsthand knowledge, correct?
22      A.  Correct.
23      Q.  Would you agree if the relationship between
24   David Sills and Jennifer Lyell actually was consensual,
25   that the postings should come down?

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1    BY MS. RILEY:
 2         Q.  Does it look like it's nonconsensual at this
 3    point?
 4              It doesn't look like it's a nonconsensual
 5    relationship at this point, does it?
 6              MS. CALLAS:  Object to the form.
 7              THE WITNESS:  It doesn't look like it's a
 8    relationship.  It looks like it's a one-sided
 9    conversation.
10              What you have read -- asked me to read is a
11    one-sided conversation, or one -- one side of a
12    conversation.
13    BY MS. RILEY:
14         Q.  From Jennifer primarily, correct?
15         A.  Uh-huh.  Uh-huh.
16              MS. CALLAS:  Is that a yes?
17    BY MS. RILEY:
18         Q.  All right.  The next document --
19              MS. CALLAS:  Say yes.
20              THE WITNESS:  Oh, say yes.  I'm sorry.
21    BY MS. RILEY:
22         Q.  The next document is LYELL 00069305.
23         A.  Okay.
24         Q.  If will turn -- we will start from the bottom,
25    so we will work backwards chronologically.
```

Page 41

Case 3:23-cv-00478   Document 411-26   Filed 11/03/25   Page 31 of 48 PageID #:
14929

1         Q.   Okay.   That's a lot of moving parts to try to
2    figure out.
3         A.   Yes.
4         Q.   Okay.   So you had no involvement in determining
5    what third party to hire to investigate?
6         A.   That is correct.
7         Q.   At this time were you VP or chair?
8         A.   I was chair.
9         Q.   Do you know who recommended using Guidepost?
10        A.   No, I do not.
11        Q.   But you signed the letter of engagement as the
12   chair?
13        A.   Yes.   It was the sexual abuse task force's
14   responsibility to choose the investigator.
15        Q.   But you signed on the dotted line, correct?
16        A.   Because the Executive Committee had to write the
17   check.
18        Q.   Right.   So that's why your name was on there,
19   because you were chair of the Executive Committee?
20        A.   Right, because at that point Dr. Floyd had left
21   and we had not appointed anyone to be interim president.
22   And our executive vice-president had also left at that
23   time.
24        Q.   Who was that?
25        A.   Greg Addison was the executive vice-president.

Alpha Reporting                           800-556-8974
A Veritext Company                      www.veritext.com

```
 1    Tennessee.
 2            Q.   How many times did you meet with them?
 3            A.   One time.
 4            Q.   And how long was that meeting?
 5            A.   I don't recall how long it was.
 6            Q.   Day?  Half day?
 7            A.   It was just a few hours.
 8            Q.   Okay.  And other than you and the Guidepost
 9    interviewers, was there anyone else in the room?
10            A.   I believe our attorney -- I believe our
11    attorneys were in the room as well.  Our attorneys from
12    Bradley.
13            Q.   Okay.  Other than Guidepost's agents, employees
14    and anybody connected to the Executive Committee or SBC,
15    were there third parties in the interview room with you?
16            A.   Not that I recall.
17            Q.   Did they ask you any questions about Jennifer
18    Lyell?
19            A.   No, they did not.
20            Q.   Okay.  Did you e-mail Guidepost -- did you
21    communicate at all with Guidepost via text or e-mail?
22            A.   Not that I recall.
23            Q.   You have already stated that you never called
24    Dr. Mohler to ask him if the allegations -- you never
25    asked Dr. Mohler if David denied the allegations, did
```

Page 62

Alpha Reporting                              800-556-8974
A Veritext Company                          www.veritext.com
Case 3:23-cv-00478    Document 411-26    Filed 11/03/25    Page 33 of 48 PageID #:
14931

1     you?

2          A.   No, I did not.

3          Q.   You never made a phone call to Dr. Mohler at all

4     about the allegations, did you?

5          A.   No, I did not.

6          Q.   Did you ask any of David's colleagues, like Guy

7     Frederick, if the allegations were true?

8          A.   No, I did not.

9          Q.   Did you ask anyone for any corroborating

10    evidence?

11         A.   No, I did not.

12         Q.   Are you aware that Randy Stinson was in the room

13    when Dr. Mohler confronted David Sills?

14         A.   No, I did not know that.

15         Q.   Did you know that Adam Greenway was in the room?

16         A.   No, I did not.

17         Q.   Did anyone from Baptist Press do an

18    investigation of the allegations?

19         A.   I do not know.

20         Q.   Do you think that Baptist Press should have done

21    some form of investigation to corroborate the allegations

22    before they published their first article?

23              MS. CALLAS:   Object to the form.

24              THE WITNESS:   You have to understand my role as

25    the chairman of the Executive Committee.   I don't have

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

1  to the extent that that question could include
2  conversations with counsel.
3  BY MS. RILEY:
4      Q.  I don't want to know what your lawyers said,
5  but I -- I do up to the point where they were waived,
6  but --
7          Will you read the question back, please, for
8  Pastor Slade, with the noted objections.
9          (The following question was read:
10         Q.    Did anyone ever tell you if they had
11         concerns about the accuracy of the allegations
12         of sexual abuse?)
13         THE WITNESS:  Yes.
14  BY MS. RILEY:
15     Q.  And who was that?
16     A.  Some of the other officers.  It was discussed in
17  our officers meeting.
18     Q.  What was said?
19     A.  What was -- did we look at that, and that was
20  again brought up.  Did we look at the allegations.  And
21  it wasn't the allegation of -- what we were dealing with
22  was not the allegations.  We were dealing with how we had
23  handled -- how Baptist Press had handled the story that
24  was given to us -- given to them.  That was where we came
25  into play.

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com
Case 3:23-cv-00478   Document 411-26   Filed 11/03/25   Page 35 of 48 PageID #:
14933

```
 1      the fact that the allegations are corroborated, are those

 2      documents produced by anyone other than Jennifer?

 3          A.  No, those documents are not.

 4          Q.  And when you state that you are referring to --

 5      that the supporting documents.  Hold on.

 6              The documents that you say support the

 7      allegations of it being nonconsensual, every one of those

 8      documents was produced by Ms. Lyell, right?

 9              MS. CALLAS:  Let me object to the form, because

10      I think the statement you're referring to in his

11      interrogatory responses is a statement of counsel

12      pursuant to Rule 33(d).  I'm just lodging a note that

13      that is not Pastor Slade's reference to the federal

14      rules, but to counsel's.

15      BY MS. RILEY:

16          Q.  Okay.  But you can still answer my question.

17              Is there any document out there that you're

18      aware of that supports the allegations made by Jennifer

19      Lyell that was produced by someone other than Jennifer

20      Lyell?

21          A.  No.

22              MS. RILEY:  I'm going to need that back, please.

23      The questions are based on the first one, not the

24      supplemental.

25              I'm trying to cull the questions.
```

Page 74

Alpha Reporting                          800-556-8974
A Veritext Company                      www.veritext.com
Case 3:23-cv-00478    Document 411-26    Filed 11/03/25    Page 36 of 48 PageID #:
14934

```
 1           MS. MADDUX:  What is the document?
 2           MS. RILEY:  It is -- because I don't have the
 3    Bates numbers.  It's the web-page statement and the -- a
 4    statement -- a PDF of the statement on the release of a
 5    list of alleged abusers.
 6         Q.  Pastor Slade, can you tell me what the
 7    screenshot is?
 8         A.  It's a screenshot from the May 26th release of
 9    the statement -- a statement on the release of alleged --
10    of the list of alleged abusers, the joint statement
11    between -- from myself and Dr. Willie McLaurin or Willie
12    McLaurin.
13         Q.  And when was that written?
14         A.  That was written in May -- it may have been the
15    26th, it may have been the 25th of 2002.
16           MS. CALLAS:  '22?  I think you said 2002.
17           THE WITNESS:  No.  I'm sorry.  '22.
18    BY MS. RILEY:
19         Q.  May 26, 2022?
20         A.  Yes.
21         Q.  And what prompted this posting?
22         A.  The Guidepost report.
23         Q.  Okay.  And if you would, Pastor Slade, tell me
24    what this is.  Or I'll tell you.  It's the PDF of the
25    actual statement.
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
1              And will you read it and make sure that
2       everything in it is correct.  That way we're not looking
3       on this tiny document.
4              A.  Uh-huh.  Okay.
5              Q.  Okay.  The title is "A statement on the release
6       of a list of alleged abuser," correct?
7              A.  Yes, it is.
8              Q.  Abusers.  Excuse me.
9                  Who wrote this?
10             A.  This would have been -- would have been written
11      by our -- by staff -- public relations staff within the
12      Executive Committee.
13             Q.  But you personally didn't write the words,
14      correct?
15             A.  Correct.
16             Q.  What was the purpose of it?
17             A.  The purpose of this -- of this statement
18      releasing the list that was discovered -- okay -- because
19      there had been a demand for the release of the list.  So
20      in releasing the list, this statement went ahead of that
21      release to explain the list.
22             Q.  All right.  You said -- did you just say that
23      the --
24                 Can you read back his last -- I just don't want
25      to misquote you in my question.
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1              (The following answer was read:
 2              A.    So in releasing the list, this statement
 3              went ahead of that release to explain the list?)
 4              MS. RILEY:  But what did he say about the --
 5         it's beginning actually that I was thinking about.
 6         Sorry.
 7              (The following answer was read:
 8              A.    The purpose of this statement releasing
 9              the list that was discovered, because there had
10              been a demand for the release of the list.)
11    BY MS. RILEY:
12         Q.  All right.  So you talk about the list that was
13    discovered.  Can you tell me about that?  What do you
14    mean by that?
15         A.  It was discovered in the Guidepost investigation
16    of our allegations.  When we waived attorney-client
17    privilege, they were given access to the mainframe and --
18         Q.  Yes, sir.
19         A.  -- and that's where they found it.
20         Q.  Okay.  And did you know the list existed before
21    Guidepost alerted you to the list?
22         A.  No.
23              MS. CALLAS:  Object to the form.
24    BY MS. RILEY:
25         Q.  Who was the employee?
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

```
 1          A.  That gave them the --
 2          Q.  That drafted it.
 3          A.  I don't know.
 4          Q.  Do you know when the information was compiled to
 5     go on a list?
 6          A.  No, I do not.
 7          Q.  Do you know when the list was compiled?
 8          A.  No, I do not.
 9          Q.  Do you know who asked her to compile it, or the
10     staff person?
11          A.  I do not.
12          Q.  Do you know how she compiled the list?
13          A.  I do not.
14          Q.  Do you know if she was given instructions to
15     compile the list?
16          A.  I do not.
17          Q.  I guess my question is, first of all, was she
18     instructed to compile the list?
19          A.  I had no idea the list existed until the
20     Guidepost report.
21          Q.  And so you don't know what instructions she was
22     given regarding the list itself?
23          A.  Not -- no, I do not.
24          Q.  Okay.  And this list was published along with
25     the Guidepost report?
```

Alpha Reporting                          800-556-8974
A Veritext Company                    www.veritext.com

```
1              MS. KLEIN:  Object to form.
2     BY MS. RILEY:
3          Q.  You can answer.
4          A.  No.  It was -- if I recall correctly, it was --
5     it was mentioned in the report that it existed.  And
6     that's what triggered it being released.  It wasn't
7     released as part of the report.
8          Q.  So it was released after?
9          A.  After.
10         Q.  Okay.  Do you know how long after?
11         A.  Well -- because the statement says that the
12    Guidepost report was released.  So it's maybe days --
13    it's days after release of the report.
14         Q.  Okay.
15         A.  Which was -- by the motion -- if I remember the
16    motion from Nashville, it had to be released publicly
17    before -- 30 days before the annual meeting in Anaheim in
18    June of 2022.  So it would have been mid May that the
19    report was released, and then subsequently.
20         Q.  Yes, sir.
21              Okay.  In your statement you state:  Each entry
22    in this list reminds us of the devastation and
23    destruction brought about by sexual abuse.
24              Correct?
25         A.  Correct.
```

Alpha Reporting                    800-556-8974
A Veritext Company            www.veritext.com

1      Q.  And by "each entry," are you saying that every
2   name shown on the list has committed an act of sexual
3   abuse?
4      A.  No, that's not what I'm saying.
5      Q.  What are you saying?
6      A.  I'm saying each name on -- each name on the list
7   reminds us that sexual abuse does exist in the church.
8   It does happen.
9      Q.  Yes, sir.
10         But why would you have a name on the list if
11  that person wasn't involved with sexual abuse?
12     A.  Well, the names that were -- we didn't know the
13  list existed.  And the names were reviewed by our
14  counsel.  That's who was in charge of doing the redaction
15  of the list.
16     Q.  Yes, sir.
17         So what is the purpose of a particular name
18  being on that list?
19     A.  I don't -- that wasn't the issue about the list.
20     Q.  I know, but --
21     A.  The issue was that we were dealing with the
22  demand for the list after years of being -- of it coming
23  from the Executive Committee that a list could never be
24  compiled.
25     Q.  And I get that that was the issue for you.

Page 89

Alpha Reporting                      800-556-8974
A Veritext Company              www.veritext.com
Case 3:23-cv-00478    Document 411-26    Filed 11/03/25    Page 42 of 48 PageID #:
14940

```
 1          A.   Yes, ma'am.

 2          Q.   But what if your name is on the list and you

 3     didn't commit sexual abuse?  Do you agree that that list

 4     would have your reasonable person -- if your name is on

 5     that list, wouldn't a reasonable person, after reading

 6     your article, seeing this list, assume this person has

 7     been accused of sexual abuse or has committed sexual

 8     abuse?

 9               MS. CALLAS:  Object to the form.

10               THE WITNESS:  Yeah, that's reasonable.

11     BY MS. RILEY:

12          Q.   Okay.  You state in your prayer -- you state

13     that it is your prayer that churches will utilize this

14     list proactively to protect and care for the most

15     vulnerable among us.

16               Is that correct?

17          A.   Yes.

18          Q.   Okay.  Are you encouraging churches to use this

19     list to warn people away from the entries that are on

20     that list?

21          A.   No.

22          Q.   Then why would you post that particular list?

23          A.   Well, again, the demand for the list is

24     separate -- in my eyes the demand for the list is

25     separate from the names on the list.
```

Page 90

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com
Case 3:23-cv-00478    Document 411-26    Filed 11/03/25    Page 43 of 48 PageID #:
14941

1    website.
2              MS. CALLAS:  I'll object to the form.
3              MS. KLEIN:  Object to the form.
4    BY MS. RILEY:
5         Q.  You state:  We are releasing the list in the
6    exact form that it was provided to Guidepost Solutions by
7    an Executive Committee staff member.
8              Is that correct?
9         A.  Yes.
10        Q.  We have not made any additions to the list nor
11   any alterations other than converting it from Microsoft
12   Word to portable document format, PDF, and redacting
13   information as detailed below.
14             Is that a correct statement; that nothing was
15   changed except for redactions?
16        A.  Yes.
17        Q.  Okay.
18        A.  And the reason being just --
19        Q.  I'll get there.
20        A.  Okay.  All right.  Make sure we're clear.
21        Q.  So do you know when the redactions were made?
22        A.  In that time frame -- in the time frame of the
23   release of the report and before this statement.  So I'll
24   say it's between May 14th, 15th and May 26th.
25        Q.  Okay.  So no more than ten days?

                                          Page 92

Alpha Reporting                          800-556-8974
A Veritext Company                      www.veritext.com
Case 3:23-cv-00478    Document 411-26    Filed 11/03/25    Page 44 of 48 PageID #:
14942

```
 1          A.   Right.

 2          Q.   Who made the redactions?

 3          A.   Our counsel.

 4          Q.   Were they redacted -- so they were not redacted

 5     when Guidepost had the list, correct?

 6          A.   Correct.

 7          Q.   Why were the redactions made?

 8          A.   The redactions were of information identifying

 9     survivors or individuals unrelated to the offender.

10          Q.   Any other reasons?

11               Take the time to read it if you need to, Pastor

12     Slade.

13          A.   I go back to the beginning of that paragraph:

14     In the -- in making the redaction decisions, counsel to

15     the Executive Committee included, in their entirety,

16     entries that reference an admission, confession, guilty

17     plea, conviction, judgment, sentencing or inclusion on a

18     sexual offender registry.  The only exception to those in

19     this redaction of names or identifying information of

20     survivors and/or other individuals unrelated to the

21     offender.

22          Q.   Okay.  If you go down to the bottom, what's the

23     last sentence of that paragraph?

24          A.   Entries that do not relate to sexual abuse or

25     that resulted in an acquittal are also redacted.
```

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

1          Q.   Okay.  So if their names are redacted, they were
2     initially put on the list, but then later found out that
3     they shouldn't have been on the list; is that correct?
4               MS. CALLAS:  Object to the form.
5               THE WITNESS:  I don't know.
6     BY MS. RILEY:
7          Q.   Okay.  All right.  I think I'm about to read the
8     same sentence you just read, so bear with me.
9          A.   No problem.
10         Q.   All right.  You state in here:  In making
11    redaction decisions, counsel to the Executive Committee
12    included, in their entirety, entries that reference an
13    admission, a confession, a guilty plea, conviction, a
14    judgment, sentencing or inclusion on a sex offender list.
15              Did I read that sentence correctly?
16         A.   Yes, you did.
17         Q.   The only exception to those entries is the
18    redaction of names or identifying information of
19    survivors and/or individuals unrelated to the offender.
20              Did I read that correctly?
21         A.   Correct.
22         Q.   And is that a true statement?
23         A.   It is a true statement that that's what counsel
24    did.
25         Q.   All right.  So you are saying that if a person

Alpha Reporting                    800-556-8974
A Veritext Company              www.veritext.com

1  on the list is left completely unredacted, except for
2  those exceptions of being a victim or a third-party
3  information, then that person has confessed to sexual
4  abuse, correct?
5      A.  Uh-huh.
6      Q.  Or --
7      A.  Yes.
8      Q.  -- made an admission of guilt of sexual abuse?
9      A.  Yes.
10     Q.  Or entered a guilty plea of sexual abuse?
11     A.  Yes.
12     Q.  Been convicted of sexual abuse?
13     A.  Yes.
14     Q.  Had a judgment entered against them of sexual
15 abuse?
16     A.  Yes.
17     Q.  Been sentenced for sexual abuse or listed on a
18 sex offenders registry, is that correct?
19     A.  Yes.
20     Q.  Has David Sills confessed to sexual abuse?
21     A.  My answer to that is no.
22     Q.  Has David Sills made an admission of guilt to
23 sexual abuse?
24     A.  From the information you shared with me today,
25 no.

Alpha Reporting                    800-556-8974
A Veritext Company            www.veritext.com

```
 1          Q.  Has David Sills been convicted of sexual abuse?
 2          A.  No.
 3          Q.  Has David Sills had a judgment entered against
 4     him for sexual abuse?
 5          A.  No.
 6          Q.  Has David Sills been sentenced for sexual abuse?
 7          A.  No.
 8          Q.  Has David Sills been listed on a sex offender
 9     registry?
10          A.  No, he has not.
11          Q.  If the answer is no to all of these questions,
12     which it was, then David Sills should not in fact be
13     included on this list, should he?
14          A.  Based on that -- that list and that sentence,
15     no, he should not.
16          Q.  But he is on the list, isn't he?
17          A.  Yes, he is.
18          Q.  All right.  This will be the next exhibit.  And
19     this, for the Zoom participants, is the --
20              Gretchen, it's the first page of the list, but
21     rather than print 250-something pages, I did the first
22     page and then I printed the page with David Sills on it.
23     I don't have a Bates number.
24              (Exhibit 11 marked for identification.)
25
```

Alpha Reporting                          800-556-8974
A Veritext Company                       www.veritext.com