# Exhibit 59

# GUENTHER, JORDAN & PRICE
## ATTORNEYS-AT-LAW

James P. Guenther
James D. Jordan*
J. Terry Price

* Also Admitted in Kentucky and Texas

P.O. Box 696
101 Fifth Avenue West, Suite 102
Springfield, Tennessee 37172-0696

Telephone
615-329-2100

Fax
615-329-2187

JDJordan@GJPLaw.com

October 13, 2019

To: Dr. Ed Upton

From: Jaime Jordan

Re: BP - Lyell Article

Ed, here is what Jim and I I can tell you of the history of the Jennifer Lyell story.

On March 5, Shawn Hendricks sent Augie, me, and Sing an email with a copy of Jennifer Lyell's letter to BP. It was my impression that BP was considering printing Ms. Lyell's letter in BP as a first person account. Shawn said, "Let me know if you have other questions."

After reading the letter, I did have several questions, which I emailed to Shawn (cc: Augie, Jim, Sing). Here is that email from 3-5-19:

> I can understand there are good reasons why BP would want to run this first-person story. I've thought of several of those reasons myself, but I will leave it to BP to determine the value of printing the story.
>
> Several questions and concerns popped into my head as I read this Jennifer's [sic] narrative:
>
> - What age is Jennifer Lyell?
> - Her story uses the term "sexual abuse" but it is not clear to me whether she means child sexual abuse, abusing a relationship of trust, or some type of power differential abuse (such as professor/student). I think we need to be careful about those distinctions. Does this article cast Sill in a "false light" as a sex offender? Or is he someone who violated employment policies, Biblical commandments, and ethical standards but not any civil laws?
> - She says that the abuse continued for more than a decade, apparently part of which time she was in counseling. When such a relationship continues for a long time and the victim has become a mature adult, I think the case that it was all "abuse" may be harder to make, at least to a jury.
> - What has BP done or what can it do to corroborate this story if you decide to run

Confidential
GPSILLS_002326

> it?
> - Will Dr. Mohler say that Sill confessed to "sexual abuse?"
> - The author never indicates what the sexual abuse was. While BP would not want to print all the sexual details, it may need to know what they are in order to decide whether or not to run this story. People define abuse in different ways, and if the abuse in her case consisted of hugs and kisses, would BP still want to run the story?
> - Will BP ask Sill to comment before it runs the story? In a defamation lawsuit, one of the indicia of malice is whether the publisher of the defamatory statement gave the allegedly defamed person an opportunity to dispute the facts.
> - The first paragraph republishes statements allegedly made by Megan Lively that Paige Patterson "did not take proper steps reporting the sexual assault or caring for Megan in its aftermath." I know that Dr. Patterson vigorously denies that allegation. Will BP include his denial in an editor's footnote?
> - BP may get inundated with personal stories such as this one. How will it decide which stories are worthy of publication? If BP establishes standards for publishing such stories, does this story meet those standards?
>
> I'll be glad to think about these issues further if you would find that helpful.
>
> - Jaime

A few days later David Roach sent the proposed BP story about Ms. Lyell to Jim (I was traveling) and asked him if he would "review the story for legal concerns." Jim's reponse was very short:

> Might you say in the first paragraph: details of WHAT SHE SAYS WAS a morally inappropriate relationship with Sills for more than a decade, beginning while she was a Southern Seminary student.
>
> and the ALLEGED relationship continued in the second.
>
> I am glad to see you tried to contact Sills.

Here is the story as it was sent to Jim, except that I have included and highlighted the two changes he recommended:

> New details of former SBTS
> prof's resignation alleged
> By David Roach & Shawn Hendricks
>
> LOUISVILLE, Ky. (BP) -- Nine months after Southern Baptist Theological Seminary

Confidential
GPSILLS_002327

professor David Sills resigned for undisclosed reasons, a woman has released a statement of allegations including details of what she says was a morally inappropriate relationship with Sills for more than a decade, beginning while she was a Southern Seminary student.

In a release to Baptist Press and others, Jennifer Lyell, now 41 and director of the books ministry area at LifeWay Christian Resources, alleged sexual contact with Sills began on a mission trip in 2004. At the time, she was a 26-year-old master of divinity student, and the alleged relationship continued until she was 38, spanning a period in which Lyell moved from Louisville, Ky., to Chicago and then to Nashville, she told BP. She graduated from Southern with a master of divinity in 2006 and enrolled in an SBTS doctoral program for one year after that.

Southern Seminary President R. Albert Mohler Jr. told BP he could not say why Sills' employment at the seminary ended. But Mohler confirmed that Lyell shared allegations with him in May 2018 and that Southern, as Lyell stated, "immediately took action."

Lyell said in her statement, "The denominational institutions, the local church, and the missions agency [Sills led] ultimately believed me, supported me, and took the action for which they were responsible."

BP reported Sills' resignation in June 2018 based on reporting by North Carolina's Biblical Recorder newsjournal, which cited a statement from the seminary affirming that Mohler "received the resignation of Dr. David Sills from the Southern Seminary faculty on May 23, 2018."

It further stated, "Southern Seminary is committed to the highest standards of both principle and policy. Our policies and procedures are clear and are consistently applied. Because this is a personnel matter, we cannot comment further."

Sills, former professor of missions and cultural anthropology at Southern, did not respond to BP's request for comment.

Part of Lyell's reason for remaining silent and in the relationship for as long as she did, she stated, was because she "became like part of [Sills'] family" and feared "the collateral damage that telling would cause for those around him." In her statement, Lyell accused Sills of "grooming and taking advantage of his student."

Lyell first disclosed the alleged relationship to a therapist in March 2016, she said. Just over two years later, she stated the allegations to then-LifeWay Senior Vice President Eric Geiger and Mohler.

"When I shared what had happened to me with my boss at LifeWay [Geiger] and then

Confidential

GPSILLS_002328

later with SBTS President Dr. R. Albert Mohler, I was quick to also share the responsibility I bore for being compliant at times, for not telling immediately and for so idolizing the idea of a whole family that I protected it despite what was happening within it," Lyell said. "I am not a sinless victim. But I am a victim nonetheless."

Geiger, senior pastor of Mariners Church in Irvine, Calif., confirmed to BP that Lyell shared her allegations with him. Geiger told Lyell he was "responsible to share" the allegations with Southern and invited her to participate in the process, Geiger recounted to BP. The same day, Geiger and Lyell contacted Mohler, he said.

Mohler told BP his "encouragement from the start in any case such as this is that authorities be contacted" and that only law enforcement should judge whether laws may have been violated in such situations. Yet victims who are not minors must decide for themselves whether to contact authorities, he said. Lyell told BP she has attempted to contact the Louisville Metro Police Department's Special Victims Unit.

Mohler commended Lyell's courage in coming forward. "I stand behind her in [her public statement] and believe she is acting righteously," he told BP.

The Louisville, Ky., church where Sills was a member, Lyell said, also "took action" following the seminary's action.

Louisville's Ninth and O Baptist Church told BP it is the congregation referenced in Lyell's statement. The church said it acted "swiftly and firmly" and that Sills is no longer a member.

Sills also served as an International Mission Board trustee and a member of the IMB's presidential search committee. He resigned from his trustee post, and as a result from the search committee, in May 2018.

Lyell decided to make her allegations public, she said, when she "learned that Dr. Sills had been appointed as a missionary with a non-SBC missions agency."

"I now realize that despite SBTS handling the situation justly and as I asked -- without stating the reason for his resignation -- it led to the exact kind of scenario the SBC is now trying to prevent," she said.

"If I were not to come forward with this [statement], a church or ministry who receives Dr. Sills' [resume] and does an internet search for him would have no way to know the truth behind his resignation. There are plenty of reasons to stay silent in a situation such as this. But we must not be silent."

Confidential
GPSILLS_002329

> Geiger said he contacted the other missions agency -- which he identified as Global Outreach International -- and they removed Sills from their employment.
>
> In June, BP reported Sills also had resigned as president of Reaching and Teaching International Ministries, a missions organization that engages in discipleship and theological education internationally. Lyell is a former Reaching and Teaching International board member.
>
> Reaching and Teaching International told BP in a statement that they are aware of a statement by Lyell regarding her allegations involving an inappropriate relationship and "are committed to ensuring a culture of transparency and accountability."
>
> Lyell said, "It is my hope that my story, one in which a SBC entity and its leaders acted swiftly and justly ... but in which that same individual was also in a ministry position only months later, will also help to illustrate the need for some form of a reporting tool that can ensure that those who have victimized others from a ministry position are unable to ever do so again."
>
> --30--

When we are asked to review a BP story for legal concerns, we understand that it is our job to do just that. It was, and remains, our legal opinion that the article as approved by us was factual and could be defended against any claim that the Executive Committee had printed defamatory material about either Ms. Lyell or Dr. Sill.

Could the article have been written differently? Certainly. There are any number of approaches to the article which could have been taken. It appeared to us that BP had made an editorial decision that its approach to the story would be to provide facts about the relationship but to ultimately let the reader decide to what extent the relationship constituted sexual abuse.

The Proposed Apology

With respect to the proposed apology, in our opinion the Executive Committee/BP need s to decide which one or more of the following are true with respect to the March 8 story:

1. The facts reported in the story were incorrect.

2. The facts reported were correct, but there are other, unreported facts which it is necessary to know in order to put all of the facts in context so that the reader can correctly understand the story.

Confidential
GPSILLS_002330

3. The facts reported were correct, but they were presented with an inappropriate editorial bias.

4. The facts reported were correct and fairly reported, but the article did not accurately communicate Ms. Lyell's interpretation or characterization of those facts.

From a legal perspective, the appropriate response to some any one of these situations (retraction, clarification, etc.) would be different than to others. I would expect that the journalistic response would also be different.

Another question which the EC/BP must ask is: What level of corroboration is appropriate in order for BP to publish specific allegations or characterizations in a story such as this one? For example, there appears to be some corroboration available that Sills had an inappropriate sexual relationship with Ms. Lyell (we understand that he admitted as much to Dr. Mohler). Does Baptist Press have any corroboration that the "inappropriate sexual relationship" constituted sexual abuse, that Sills had sex with Ms. Lyell without her consent (or under circumstances that any consent was legally and/or morally invalid), or that the relationship continued to be one of sexual abuse throughout its existence? Believing Ms. Lyell is telling the truth is very different from printing an article that publishes Ms. Lyell's statements to the world (either as statements of fact or as allegations). Whatever difference there may be from a journalistic standpoint, there is also a difference in the legal risk to BP and the Executive Committee.

Let me make it clear: this is not about whether or not we believe Ms. Lyell's story. In a court of law it is not a matter of what we *believe* but what we can *prove*.

If BP writes that Sills sexually abused Ms. Lyell, it has made a statement which would be reasonably expected to gravely harm his reputation and his ability to earn a living in his profession. If he sues BP for libel, then BP would have to prove to the satisfaction of a jury that its statement is true. If BP cannot provide that proof, then it may be held legally liable.

Confronted with Lyell's story, it is BP's decision whether to run the story at all; to run the story with statements for which there is admissible evidence available; to make statements which can be characterized as allegations; or to run the story with facts which are stated and characterized as Ms. Lyell has characterized them whether or not corroboration is available. We can advise BP what exposure it is creating with each choice, but BP is free to make any of the choices.

If BP runs an apology which says BP misstated facts, or presented the facts in a manner which presented Ms. Lyell in a false light, then BP will be making an admission which can be used as evidence against BP and the individuals who wrote the original article in a lawsuit by Ms. Lyell (Ms. Lyell told the EC that the Nashville firm of Neal &Harwell was advising her). If BP now writes that Sill sexually abused Ms. Lyell and had sex with her without her consent, BP will be making statements that harm Sill and expose the EC to a claim of libel. If BP says, "we are

Confidential
GPSILLS_002331

Dr. Ed Upton
October 13, 2019
Page 7

responsible for the conversation that occurs on our social media profile pages" then it may be accepting legal liability for defamatory statements posted there by third persons BP cannot control.

Again, these are choices which the Executive Committee is free to make, but it is our duty to advise the Executive Committee about the potential legal consequences of these actions.

We are prepared to discuss this matter further or think with BP about the relative risk of whatever choices it wishes to make.

- End -

Confidential GPSILLS_002332