# Exhibit 60

# EXHIBIT 10

1          UNITED STATES DISTRICT COURT

          MIDDLE DISTRICT OF TENNESSEE

2

_____X

3                            :

JOHNNY M. HUNT             :

4                            :

          Plaintiff       :

5                         :   CASE NUMBER:

vs.                  :

6                         :   3:23-CV-00243

SOUTHERN BAPTIST CONVENTION,  :

7  GUIDEPOST SOLUTIONS, LLC, and  :

EXECUTIVE COMMITTEE OF THE    :

8  SOUTHERN BAPTIST CONVENTION    :

                         :

9          Defendants      :

                         :

10 _____X

11

12

13          The video-taped Zoom teleconferenced

14 deposition of JULIA MYERS WOOD was held on Thursday,

15 February 15, 2024, commencing at 9:04 A.M., at

16 virtual location before Louisa B. McIntire-Brooks,

17 Notary Public.

18

19 Also present:  Orson Braithwaite, Official

20 Videographer, Johnny M. Hunt, plaintiff

21 REPORTED BY:  Louisa B. McIntire-Brooks

Case 3:23-cv-00243   Document 411-30   Filed 11/03/24   Page 2 of 33 PageID #: 15063

1   after 1994?

2        A.   Yes.



www.veritext.com                                                                    888-391-3276



3        Q.    Any others comes to mind?

4        A.    Not with specificity.

5        Q.    Okay.  Now, tell us at Mayer Brown, were

6    you in the litigation department?

7        A.    Yes.

8        Q.    And what did you do?  What kind of work did

9    you do at Mayer Brown?

10        A.    It varied.

11        Q.    What kind of work?

12        A.    I had different types of cases in the

13    litigation department.

14        Q.    Okay.  And you say you had different types

15    of cases.  Were they -- they -- were they securities

16    law?  Fraud?  I mean, what was the general nature of

17    the cases?

18              MR. KLEIN:  Objection.  Compound, but you

19    can answer.

20        A.    I worked on a wide variety of matters

21    including antitrust, employment, First Amendment,

1  you sit here this morning?

2      A.   If you would like, I -- we can walk through

3  every single person that I worked with.  It would be

4  helpful to pull out a Mayer Brown directory from that

5  period so I can identify the lawyers from that time.



20      Q.   Okay.  What type of cases did you do at the

21  Eastern District of New York U.S. Attorney's Office?

Case 3:23-cv-00243   Document 211-30   Filed 11/03/24   Page 7 of 33 PageID #: 15673

1          A.    I worked on general criminal matters.

2          Q.    Major felonies?

3          A.    Yes.

4          Q.    Okay.  Any other matters?

5          A.    Yes.

6          Q.    What type of matters?

7          A.    Business and securities fraud, narcotics,

8   general fraud, bankruptcy fraud, immigration.  A wide

9   variety.

16         Q.    Who was your -- I meant to ask this:  Who

17  was your supervisor at the U.S. Attorney's Office at

18  the Eastern District of New York?

19         A.    Ilene Jaroslaw.

20         Q.    How do you spell her last name?

21         A.    J-A-R-O-S-A -- S-L-A-W.

1    Q.    Okay.  And what did do you at the Treasury

2   Department?

3    A.    I was a Deputy Assistant Secretary for

4   money laundering and financial crimes.

5    Q.    And for approximately two years?

6    A.    Yes.

15    Q.    Okay.  And what was the nature of your

16   responsibilities?

17    A.    I assisted him in running the criminal

18   division.

19    Q.    Was he in charge of the criminal division

20   at that time?

21    A.    Yes.

1     Q.    And so what year did you work as Chief of

2  Staff to Mr. Chertoff?

3     A.    Two -- parts of 2003 and 2004.  That is my

4  recollection.

www.veritext.com                                                     888-391-3376



16       Q.    And how long did you have those two firms?

17       A.    About three and a half years give or take.

18       Q.    Did you have any partners in those roles?

19       A.    Yes.

20       Q.    And how many partners did you have?

21       A.    One.

Case 2:23-cv-00278 Document 219-11-38 Filed 07/03/23/25 Page 10 of 33 PageID #: 4573
15077

1    MR. KLEIN:  Objection.  We covered this now

2  a few times.  We can go over it one last time and we

3  can try to move on.

4        A.    Yes, without looking at the report.

5        Q.    Okay.  Now, you've indicated that there is

6  corroborating evidence associated with the report in

7  Pastor Johnny Hunt's involvements with ███████████.

8  Do you recall that line of testimony?

9        A.    Yes.

10        Q.    Do you have corroborating evidence

11  concerning consent in the interaction between Pastor

12  Johnny Hunt and ████████████?

13        A.    To be clear, I am not the one who developed

14  the corroborating evidence.  I oversaw and reviewed it.

1    improper sexual conduct in either interview.

2        Q.    Well, ma'am, have you looked at interview

3    notes from interview one and interview two prior to

4    coming here today?

5        A.    Not recently, no.

6        Q.    Ma'am, you -- you said this was not about

7    consent.  Do you remember that line of testimony or

8    that claim that you just made on the record here?

9        A.    Yes.

10       Q.    You understand that if there's going to be

11   sexual assault, consent is relevant to that?

12            MR. KLEIN:  Objection as to form, calls for

13   a legal conclusion.  You can answer.

14       A.    Sure.

15       Q.    Consent is absolutely critical in terms of

16   determining whether there was sexual misconduct or a

17   sexual assault; isn't it?

18            MR. KLEIN:  Objection, calls for a legal

19   conclusion.  You can answer.



www.veritext.com 888-391-3376

1   reality of your understanding -- strike that.  You

2   didn't mention what you specifically understood that in

3   the final report that Mr. Blankenship had concluded for

4   his part that there could have been consensual activity

5   that night between ████████ and Pastor Johnny Hunt?

6            MR. KLEIN:  Objection.  The document speaks

7   for itself.  You can answer.

8        A.    The document speaks for itself.  I didn't

9   draft this portion of the report and I'm not in a

10  position without kind of looking at it to talk about

11  specifically what it says there.

12       Q.    Ma'am, you would have had overall

13  responsibility for this.  Didn't you feel you had some

14  responsibility just as a basic human being and the CEO

15  of the company to make sure that the report was

16  accurate on the issue of consent?

20       Q.    Now, you edited, you reviewed and edited,

21  the report related to Pastor -- the portion of the

1  report related to Pastor Johnny Hunt; did you not?

2      A.    Yes.

3      Q.    And you confirmed that in interrogatory

4  answers that your company filed; correct?

5      A.    Yes.

6      Q.    Now when you reviewed and edited the report

7  associated with Pastor Johnny Hunt, why did you not

8  author yourself or provide an edit which indicated that

9  there could have been consensual -- there could have

10 been consensual activity that night?  Why didn't you

11 say that, ma'am?

12          MR. KLEIN:  Objection as to form.  You can

13 answer.

14     A.    Well, I edited the report and looked at

15 what the investigators have found with all their

19     Q.    The whole point, ma'am, you're talking

20 about sexual abuse in a report that you knew was going

21 to be covered by every major network news of the United

1  omitted ███████████ comment entirely from the

2  report; didn't it?

3         MR. KLEIN:  Objection as to form.  You can

4  answer.

5      A.    The comment that --

6      Q.    Her comment that she said, ██████████████

   ███  You omitted that from your report; didn't you?

8      A.    I do not believe that is in the report.  We

9  did not omit it, it was not included in the report.

11                 MR. MACGILL: Let's go ahead and take a

12 break.

13                 THE WITNESS: Sure. Absolutely.

14                 MR. BRAITHWAITE: The time is 1:12 p.m.

15 Off the record.

16                 (A discussion was held off the record.)

17                 MR. BRAITHWAITE: The time is 1:18 p.m.

18 We're on the record.

19     Q. Ma'am, we have been reviewing in this line

20 of questioning this idea of reciprocation. What is

21 your understanding of reciprocate in connection with

1    how it was used in this report?

2          A.    Can you be more specific?

3          Q.    You see the word reciprocate was used in

4    this report?

5                MR. KLEIN:  Do you want to point her to a

6    particular page or paragraph, Rob, to help her or do

7    you want her to look through multiple pages?

8          Q.    Do you have it still open on 151?

9          A.    No.

10         Q.    Why don't you do that.

11         A.    Okay.

12         Q.    Do you now?

13         A.    Yes.

14         Q.    Okay.  You remember that I asked you about

15   this phrase survivor did not reciprocate?

16         A.    Yes.



Case 2:23-cv-00692-JDC-TPL   Document 214-11-38   Filed 07/03/25   Page 20 of 33   PageID #: 4582
15086

7        Q.    Well, your senior investigator testified

8   not ten days ago that you published the report through

9   your website.  That's what your senior investigator,

10  Mr. Holske, said at the outset of his deposition.  Was

11  he testifying falsely in his testimony in this

12  courtroom?

13            MR. KLEIN:  Objection, compound question.

14  You can answer.

15       A.    It's not a courtroom, but Mr. Holske is not

16  involved in the website's design nor does he have all

17  the information.

18       Q.    So did he testify falsely when he said that

19  the Guidepost report was published through your website

20  in May of 2022?

21       A.    Yes, I believe he was incorrect.

Veritext Legal Solutions
www.veritext.com                                     888-391-3376
Case 2:23-cv-00268 Document 214-11-38 Filed 07/03/25 Page 21 of 33 PageID #: 4583
15087

1     A.    If I can explain that --

2     Q.    Just did you agree to that?

3     A.    If I can explain.



www.veritext.com                                                     888-391-3376



21                    (Deposition Exhibit 36 was marked for

Case 2:23-cv-00978 Document 19-11-38 Filed 07/03/25 Page 23 of 33 PageID 4585
15089

1  You can answer again.

2      A.    I personally did not have any facts.  I

3  understand what you're saying about this document.  I

4  will say there are many damning facts in this document,

5  Exhibit 7, which were not included in the report.  The

6  investigators believed that these additional damning

7  facts were not necessary to be included in the report,

8  especially given that Johnny Hunt denied that anything

9  happened at all.

10      Q.    Right.  But you don't impeach your own

11  company here, ma'am, they were damning facts associated

12  with what you failed to do and that's what I am asking

13  you about.  You failed to identify material facts of

14  the alleged incident and did so intentionally; did you

15  not?

16          MR. KLEIN:  Objection, compound, calls for

17  legal conclusion.  You can answer.

Case 2:23-cv-00978 Document 119-11-38 Filed 07/03/25 Page 24 of 33 PageID 4586
15090



20      Q.      In terms of your objectives here, you

21   wanted a report that had impact; right?  That's what

10      Q.    Do you agree that there are details in the

11 ████████ account that would be consistent with a

12 consensual encounter?

13           MR. KLEIN:  Objection as to form.  You can

14 answer if you know.

15      A.    I would defer to the investigative team.

16      Q.    What details are you aware of, as you sit

17 here today, from the Guidepost's perspective that would

18 be consistent with a consensual encounter?

19           MR. KLEIN:  Objection as to form.  You can

20 answer if you know.

21      A.    From my understanding, after meeting with

1      Q.    What did you do with the comments?

2      A.    I think we kept them.

3      Q.    Do you still have them?

4      A.    I believe -- I don't know if we have all of

5  them.  I believe that the comments that I had were

6  provided to counsel.  But let me say this hard copy

7  review did not include the Johnny Hunt section.  It was

8  not in the portion of the report that there was a hard

9  copy review.

10     Q.    Why not?

11     A.    We had not timely decided whether or not we

12  were going to include that in the report and we didn't

13  want to have that in the report until we were sure that

14  we were going to include it in the report.



www.veritext.com           888-391-3376



12      Q.    Did any member of the -- is the committee

13  on cooperation part of the Executive Committee?

14      A.    No.

15      Q.    Part of the SBC?

16      A.    No.  The committee on cooperation was a

17  creation of this engagement.  It was appointed by the

18  Executive Committee or President Litton and there were

19  some Executive Committee members and maybe some others

20  but I defer to the Executive Committee on who was on

21  that.

Veritext Legal Solutions
www.veritext.com                                                 888-391-3376
Case 3:23-cv-00478 Document 214-11-38 Filed 07/03/25 Page 29 of 33 PageID #: 4591
15095

1    Q.    Was the Task Force a part of the Executive

2  Committee?

3    A.    No.

4    Q.    It was part of the SBC?

5    A.    It -- the -- I'm struggling with the SBC

6  question given the way the SBC is -- is -- is

7  organized.  The Task Force was appointed by President

8  Litton and those members were named.  It was not an

9  official branch or arm of the Executive Committee or

10  any Southern Baptist formal organization.  But with

11  respect to the organization of the Task Force, I defer

12  to the Executive Committee.

Veritext Legal Solutions

www.veritext.com                                              888-391-3376

Case 3:23-cv-00243 Document 211-11 Filed 07/03/25 Page 30 of 33 PageID #: 4592
Case 3:23-cv-00604 Document 194-10 Filed 07/03/25 Page 30 of 33 PageID # 15096



19      Q.    Who was the client for your engagement?

20      A.    The engagement letter was signed by the

21  Executive Committee and the Task Force and we were

www.veritext.com                                    888-391-3376

# VERITEXT LEGAL SOLUTIONS

## COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.