# Exhibit 73

**Laura Erlanson**

I believed at the time and still do that Baptist Press should not have run the original story on Jennifer Lyell's case. But since the decision was made to publish, this is what I believe about it: Baptist Press cannot call someone a survivor of abuse without also calling someone else an abuser. When the circumstances are murky and there is no outside confirmation (police report, civil action, third party [public] testimony, etc.), it is journalistic malpractice to accuse a person of criminal behavior. With regards to the investigation, I have no way of knowing what sorts of findings will be revealed by the Guidepost investigation. In my 18 years on the Executive Committee staff, I've never had to deal with sexual abuse of any kind. The few occasions I've heard of an abuser contacting someone on the EC staff directly, they were told to contact law enforcement and/or their local church. I will be surprised if the investigation reveals any egregious coverups. It is hard for me to imagine what the investigators expect to find. Perhaps I will be shocked. I hope not. It appears that a dismissive tone from a handful of EC members and staff over the years is what has led to all of this. Make no mistake, tone is important. Treating one another with respect and kindness is mandatory for a follower of Christ. It grieves me to know that survivors have been treated poorly, if indeed they have been. However, there is very little the Executive Committee staff or members can do to prevent or deal with sexual abuse in a local church. After the fact, the EC can recommend a church be disfellowshipped for mishandling an abuse case. But that's about it. And truly, it is better for everyone if that is the case. Local law enforcement, a loving local church and local counselors are by far the best parties to deal with the perpetrators and victims of sexual abuse. Tone is important, but so is the truth. And the truth is that the EC is not tasked with handling crimes or local church government, nor should we want it to be. I DO hope churches will always strive to do better. There ARE too many instances of abusers moving from church to church. Even one instance is too many. Churches must be ever more diligent about whom they hire and recruit and about the policies they have in place to protect innocent people. They should be quick to get law enforcement and expert counselors involved. The Executive Committee can and should urge churches to follow best practices (e.g. implement Caring Well procedures), and EC members and staff should lead by example in their own churches. If it takes this $4 million, years-long investigation to achieve these ends, it will have been worth it.


**Christy Peters**

I'm hesitant to use "offender database" as that implies immediate guilt which misused could ruin ministries. I am in favor of a database to track "Ministry History" specifically for terminated, dishonorable dismissal, and unrecommended pastors/ministers based on misconduct. This would be a database that could help to overcome the misused autonomy that so many abusers have taken advantage of. It would help to ensure that a pastor who has not acted criminally but still inappropriately can be reported and perhaps prevented from moving on to the next unsuspecting church. The database would track reports of such individuals and be able to supply information upon request to churches during their hiring process. It would be a supplemental report to a criminal background check and serve as a ministry background check. It could show patterns of abusive behavior and help reduce the ability of such ministers from going from church to church but still allow SBC churches to maintain autonomy. It would need to be presented as a supplemental resource for churches to use and protect reporting churches against liability/defamation of character so they can feel comfortable using it.

Confidential GPSILLS_030938