# Exhibit 103

# IN THE UNITED STATES DISTRICT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| **MICHAEL DAVID SILLS,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 3:23-cv-00478** |
| | ) | |
| **v.** | ) | **Judge Campbell** |
| | ) | **Magistrate Judge Frensley** |
| **SOUTHERN BAPTIST CONVENTION,** | ) | |
| *et al.*, | ) | **JURY DEMAND** |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT JENNIFER LYELL'S RESPONSE TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Defendant Jennifer Lyell, in accordance with the Federal Rules of Civil Procedure, submits the following responses to Plaintiffs' First Set of Interrogatories:

## PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

1.      Lyell's investigation and development of the facts and circumstances relating to this action is ongoing.  Lyell will continue to supplement these responses as additional relevant information and materials are obtained.  Other parties are also producing information in discovery. These responses and objections are made without prejudice to, and are not a waiver of, Lyell's right to rely on other facts or documents at trial.

2.      By making the accompanying responses and objections to Plaintiffs' interrogatories, Lyell does not waive, and hereby expressly reserves, her right to assert any, and all, objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege.  Further, Lyell makes the responses and objections herein without in

any way implying that it considers the interrogatory, and responses to the interrogatory, to be relevant or material to the subject matter of this action.

3.      Lyell expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

4.      Lyell objects to each interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, attorney work product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege.  Should any such disclosure by Lyell occur, it is inadvertent and shall not constitute a waiver of any privilege.

5.      Lyell objects to each interrogatory as overbroad and unduly burdensome to the extent it seeks information that is equally or more accessible to Plaintiffs from Plaintiffs' own files, from documents or information in Plaintiffs' possession, or from documents or information accessible in the public domain by all parties.  Responding to such interrogatories would be oppressive, unduly burdensome, and unnecessarily expensive, and the burden of responding to such interrogatories is substantially the same or less for Plaintiffs as for Lyell.

6.      Defendant Lyell objects to the compound nature of the questions and the use of multiple subparts that, if construed as more than one question, would cause this set to exceed the limit for a set of interrogatories.

### INTERROGATORIES

1.      DESCRIBE in specific factual detail (including location, date, time for each alleged action) any and all misconduct YOU allege by (a) DAVID SILLS and (b) MARY SILLS.

**RESPONSE:  Defendant Lyell objects to this interrogatory as vague, overly broad, and unduly burdensome as it seeks dates, times, and locations for the broad term of "any**

2

and all misconduct that you allege by (a) David Sill and (b) Mary Sills." First of all, this type of interrogatory is more appropriately asked of a plaintiff about allegations made in a Complaint. Ms. Lyell is one of the Defendants in this action. She has not made allegations against Mr. or Mrs. Sills seeking any relief from them, but rather has responded with facts in defense of their inaccurate and untrue allegations against her. The interrogatory, as drafted, is not directed to a specific allegation that she has made in a specific pleading, and, thus, is vague, overly broad, and difficult to fully answer.

Further, the term "any and all misconduct" is extremely broad and vague. The term would seem to encompass far more than Mr. Sills' sexual abuse, which Ms. Lyell reported to the appropriate authorities. Given the context of the lawsuit and the interrogatory's lack of specification of which "allegation" it is referring to, Defendant will respond to the interrogatory based upon the belief that it is seeking information relating to the sexual abuse by Plaintiff David Sills that she has previously reported.

Plaintiff David Sills' abuse of Defendant Jennifer Lyell took place over the course of twelve years. She cannot reasonably be expected to recount the exact date and time of each and every instance of abuse in this format, especially without being provided some context of specific instances being inquired about. Therefore, she objects to this interrogatory as over broad, and unreasonably burdensome, as well as difficult to fully answer with the details requested.

Without waiving these objections, Defendant Lyell states as follows:

Professor Sills became an associate faculty member at the Southern Baptist Theological Seminary in January 2003. Jennifer Lyell was already a full-time student at the seminary. Professor Sills became the head of Ms. Lyell's degree program, and he was the

3

only professor teaching certain required courses. The degree program requirements also included periodic, individual advisory meetings between Professor Sills and the students, such as Jennifer Lyell. He held a position of authority as a pastor, professor, and assigned advisor.

While still a seminary student, Jennifer Lyell began to have social interactions outside of class with Professor Sills and his family. She participated in family events, and she was told by Mr. and Mrs. Sills to think of them as her surrogate parents. She became close with the Sills' children, who were close in age to her, much like that of siblings.

In July 2004, Ms. Lyell was recruited by Professor Sills to go on a mission trip he was leading to Ecuador. Each night of the trip, Mr. Sills would verbally summon Ms. Lyell to his room to retrieve the next day's Vacation Bible School material as he had assigned her to lead that portion of the trip's ministry. On the evening before the final day of Vacation Bible School, Mr. Sills called her into his room, just as he had all the previous times. This time, however, in his room, Professor Sills sexually assaulted her. He grabbed her for what she first thought was a cursory, brief hug, but while gripping her with force, he turned her and physically pinned her to the wall, forcibly kissing her without her consent. He also tried to put his hands down her pants, as he held her against the wall. Ms. Lyell was stunned and attempted to resist by trying to force her body forward away from the wall to have room to physically separate from Mr. Sills. She also used her forearm trapped between her body and Sills to try to push him away, but his use of the space in his room and the force of his body were fixed. Mr. Sills stopped, possibly in response to her resistance. He gestured for her to be quiet while also holding up a hand to stop. He simultaneously spoke in a clear, but hushed tone. He told her that "it is okay" because he knew she "did not want that" and that God

also knew she did not want that. He suggested his actions were related to his knowledge of the trauma she experienced in her childhood. His statements made it clear what he did was wrong, but also suggested that what happened was somehow her fault. He told her that she could not tell anyone what had just happened because others would not understand, but that he did and that the way to ensure nothing like that ever happened again was for her to submit fully to becoming part of his family as that would "redeem the broken parts" in her that "made" him "do that."

Subsequently, on the plane trip back from Ecuador days later, Ms. Lyell was seated between Professor Sills and his daughter. While his daughter was asleep in her seat, Mr. Sills rearranged his travel blanket so that it covered the space between his and Ms. Lyell's seats. He then forcibly grabbed her right wrist from under the blanket and pulled it toward his exposed genitalia, trying to force her hand onto his penis. She resisted repeated attempts to pull her hand toward him and eventually freed her hand, after which she moved his blanket, while making clear panicked facial expressions to him to express her lack of consent and resistance. He relented and Ms. Lyell spent much of the remainder of the trip in the airplane's bathroom. When they landed, Professor Sills told her the same thing as the night before, that he knew she "did not want that." When it became clear Ms. Lyell was demonstrably upset, he also added that she needed to "get it together" as it was "not a big deal."

Following the direction of Professor Sills, she participated in family events and family life as a daughter would, believing that this would make whole whatever broken part of her had "made" Professor Sills act against her sexually despite her resistance. Over many months Ms. Lyell—still a seminary student—interacted with the Sills family as a quasi

adopted daughter and sibling, including being at their house for meals and family events. Professor Sills did not act sexually against Ms. Lyell during this time as he promised her a family relationship and asserted that he would act as a father to her.

Once Ms. Lyell was functionally, emotionally, relationally, and publicly ingrained within Professor Sills' family, in March 2005, he again sexually assaulted her in a nearly identical manner as to the first instance in Ecuador and with the same follow-up explanations. Ms. Lyell was at the Sills' house watching a movie with the Sills' family. Before her departure, Mr. Sills asked her to go to the grocery store to get him some of the carbonated waters that he liked. When she returned to the house to drop off the purchased water, Mrs. Sills had gone to her bedroom and no one else was home. Professor Sills forcibly pushed her up against the wall just inside the front door of the house, kissed her without her consent, and tried to force his hand down her pants. Ms. Lyell resisted and pushed him away. In this instance, as at other times, he told her he knew she didn't want this, and promised it would never happen again. Professor Sills called Ms. Lyell while she was driving home that night to confirm that she would not discuss what happened with anyone. He repeated his promise that it wouldn't happen again and told her repeatedly, "it can only get better [i.e., stop] if you did more to be part of the family."

Despite his promises to stop, Professor Sills continued to sexually abuse Ms. Lyell on occasions when he had maneuvered to be alone with her. There were repeated instances when he forcibly kissed her and groped her. His aggressiveness increased over time. He forced his fingers into Ms. Lyell's mouth to stimulate oral sex on more than one occasion. At other times, he pulled Jennifer's head down and forcibly inserted his penis into her mouth, demanding oral sex from her. Jennifer believes the first instance of this type of forced oral

sex occurred in September or October 2006. Ultimately, Jennifer's time with Professor Sills and his family was punctuated by intermittent instances of abuse and unwanted advances that occurred at the Sills' residence. Ms. Lyell attempted to prevent being put in circumstances where she was alone with him, but she could not always do so.

This type of sexual abuse of Ms. Lyell by Professor Sills continued until at least 2016. He manipulated and coerced her to gratify himself sexually and physically restrained her to prevent her from retreating. On multiple occasions, Professor Sills forced penetration of his penis into Ms. Lyell's mouth, most often while pressing on her head to maximize his control over the act. These continued instances of abuse occurred in the Sills' residence, including in his study and in the basement. In December 2015, on a trip to New Orleans, Mr. Sills attempted to sexually assault Ms. Lyell in his hotel room. At the time of this attempt, Mary Sills was in the bathroom of the same hotel room.

On more than one instance, Professor Sills attempted penetration of his penis into Ms. Lyell's genitalia. Ms. Lyell resisted these attempts. The only reason he did not complete these attempts at vaginal sexual intercourse was that she was able to push him away.

Professor Sills promised Ms. Lyell repeatedly that he would not assault her again. He also threatened banishment and retribution if she reported his conduct. Jennifer attempted to keep her relationship with the Sills' children with whom she had sibling-like relationships.

Ms. Lyell believes that Mary Sills must have been aware of her husband's improper actions towards Jennifer, to some extent. Ms. Sills did nothing to stop Mr. Sills' from being alone with Jennifer and, in fact, her actions enabled Mr. Sills to commit these acts. For example, Ms. Sills would leave the room and tell Ms. Lyell to stay with David. This included going upstairs to go to the bed for the night. When Ms. Lyell tried to tell Ms. Sills that she

did not want to be alone with Professor Sills, Mary would leave the room or tell Jennifer to stop talking.

When Ms. Lyell, depressed and having recognized that she was unable to find a way to stop Professor Sills, sought the help of a therapist in approximately January 2016, she did not tell Professor Sills or Mrs. Sills. She had previously suggested she might obtain the help of a therapist to Professor Sills and he had become irate and insisted that she was not allowed to do so. In June 2016, Ms. Lyell returned to the Sills' residence to help Mrs. Sills finish cleaning the house out of which she and Professor Sills had moved (It was her understanding that David Sills was out of town and would not be there.) When she arrived, he was, in fact, present. During that visit, he exposed his genitalia to her. Ms. Lyell grabbed her cell phone and told him she would film this encounter on her telephone, as her therapist recommended. This caused Mr. Sills to stop.

In the fall of 2017, Ms. Lyell arrived home to discover Mr. Sills sitting on her couch with a box of items he had collected from throughout her house and was taking with him. Ms. Lyell told him to leave, and then she left herself. Around this same time period she had multiple phone conversations with him in which she reiterated that he was not to have any individual contact with her or she would disclose his actions. Mr. Sills told her he would never allow her to destroy his family and reminded her that he had a "conceal carry permit."

Discovery in this case is ongoing. Defendant Lyell has not yet seen the emails, texts, and other evidence that may be produced by the parties, including from the Sills and from her own electronic documentation that is being searched. Upon being shown such material, Ms. Lyell may be able to provide additional specific dates, times, or details.

In summary, however, Professor David Sills repeatedly sexually abused Ms. Lyell, beginning on the mission trip in 2004 and continuing through 2016. Professor Sills manipulated, coerced, and forced the sexual contact upon Ms. Lyell without her consent and against her wishes. Mr. Sills frequently admitted to her that he knew that she did not want that and repeatedly promised never to do it again. Except as previously noted, the abuse occurred at the Sills' residence in Louisville, Kentucky. During the time of the abuse and after, Mr. Sills threatened Ms. Lyell to prevent her from disclosing his actions.

2. DESCRIBE in detail every fact, PERSON, entity, or piece of evidence YOU contend corroborates YOUR allegations against (a) DAVID SILLS and (b) MARY SILLS.

**RESPONSE:** Defendant Lyell objects to this interrogatory as vague, overly broad, and unduly burdensome and asks Defendant to draw legal conclusions about the "evidence" that "corroborates YOUR allegations" against the Plaintiffs. Defendant Lyell also objects to this interrogatory to the extent it could be construed to seek attorney-client communications, attorney work product, or other privileged information.

As set forth in Defendant's objection to Interrogatory No. 1, Defendant Lyell has not made "allegations" against the Plaintiffs. David and Mary Sills are the Plaintiffs, not Defendant Lyell. Herein, she has only sought to defend herself against Plaintiffs' allegations. This interrogatory does not reference a specific allegation or a specific pleading that is supposed to be the reference for "YOUR allegations against the Plaintiffs." Therefore, this interrogatory is vague, unduly burdensome, and difficult to answer as to precisely which "allegations" are being asked about.

9

Without waiving such objections, Defendant Lyell responds as follows, on the basis that the "allegations" referred to are believed to be her prior reports of sexual abuse by Professor Sills:

The sexual abuse perpetrated against Ms. Lyell by Professor Sills happened in private and, to her knowledge, was not observed by any other person. Professor Sills threatened her against disclosing his actions on numerous occasions. She and Professor Lyell know the facts concerning his abuse. He admitted to her many times that he knew his advances and sexual contact were not wanted by her. He also admitted to improper actions against Ms. Lyell to Dr. Albert Mohler and possibly others.

Ms. Lyell believes that Mary Sills has knowledge and information that will provide support for what she has reported. Ms. Lyell believes that Mary Sills kept personal diaries during the relevant time period that will provide information about the parties' interactions and the extent of her knowledge of her husband's improper behavior towards Ms. Lyell. Defendant Lyell also believes that the Sills children and their spouses can also provide facts regarding their relationship with Ms. Lyell and their parents' interactions with Ms. Lyell during relevant time periods.

Defendant Lyell has consistently reported that Professor Sills' actions constituted sexual abuse and that the sexual contact forced on her by Plaintiff Sills was not consensual. These reports include reports to the appropriate authorities at the Seminary and representatives of the *Baptist Press*. She has also reported these events to medical personnel, and the healthcare professionals identified in response to Interrogatory No. 16. Some of that information may be protected by the psychotherapist–patient privilege.

Discovery is ongoing, and she has not reviewed the electronic information that is being collected for production. Ms. Lyell believes that emails and texts between the parties will, to some degree, provide support for what she has previously reported. It is premature to ask Defendant to detail all the "evidence" that "corroborates" the vaguely described "allegations."

3. DESCRIBE in detail any law enforcement agencies or other personnel with whom YOU have COMMUNICATED regarding alleged misconduct by (a) MARY SILLS and (b) DAVID SILLS. For each description and COMMUNICATION, include in YOUR response (1) the date of such COMMUNICATION; (2) the method or means of COMMUNICATION; (3) the full name of the agency; (4) the name of the officer who took the report; (5) whether a written report or receipt was made; (6) the specific content of all factual detail supplied by YOU in making such COMMUNICATIONS; and (7) the resulting actions taken or disposition made by law enforcement personnel.

**RESPONSE:** Defendant Lyell objects to this interrogatory as vague, overly broad, and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. The term "other personnel" is assumed to refer to law enforcement personnel. Without waiving these objections, Defendant Lyell answers the following:

Defendant Lyell contacted the Louisville Police Department through their Sex Victims Unit over the phone in May 2018. A report was filed with Louisville Metro Police Department through the Jeffersontown Police Department on March 5, 2020 with Major Mark Timperman. In September of 2022, at the invitation of the FBI, Defendant Lyell spoke with Special Agent Kelly Maguire about the extent of David Sills' abuse, when and how it started, and the lack of her consent.

4.      IDENTIFY any and all PERSONS, groups, and/or entities to whom YOU alleged misconduct by (a) DAVID SILLS and (b) MARY SILLS, including but not limited to the names and contact information of each PERSON or entity (or their appropriate representative), the dates of such allegation, and the specific facts of each allegation.

**RESPONSE:  As in responses to prior Interrogatories, Defendant Lyell objects to this interrogatory as vague, overly broad, and unduly burdensome, particularly as regards "allegations of misconduct."  Defendant Lyell also objects to the characterization of her reports and truthful responses to inquiry as "allegations."  It is David and Mary Sills who are making the allegations in this case.**

**David Sills sexual abuse of Ms. Lyell took place for over a decade and the abuse has been public since 2018.  Defendant Lyell may well recall additional facts when provided context when questioned.  Her recollection may be refreshed by others and/or by documents.  Ms. Lyell also objects to the extent this request seeks information protected by attorney-client privilege or any other privilege recognized by law.  Without waiving these objections, Defendant Lyell states that she communicated facts regarding her abuse by David Sills to the following:**

**To Eric Geiger on May 21, 2018, in person, Lyell reported the sexual and coercive nature of her relationship with David Sills, the extent of David Sills' abuse, when and how it started, the coercive nature of the relationship and the lack of Jennifer Lyell's consent to the acts of sexual abuse by Pastor Sills.**

**To Selma Wilson on May 21, 2018, in person, Lyell disclosed she was abused by a Seminary professor.**

To Albert Mohler on May 22, 2018, via phone, Lyell revealed the sexual and coercive nature of her relationship with David Sills, the fact of David Sills' abuse, when and how it started.

After these disclosures, in May 2018, Lyell disclosed that she was abused by a Seminary professor to the team that reported to her at Lifeway.

In 2019, over the phone, Lyell disclosed the sexual and coercive nature of her relationship with David Sills to Shawn Hendricks and David Roach, reporters at the *Baptist Press*.

In April 2018, to Scott Patty and Beth Patty, Lyell's Pastor and his wife, Lyell revealed the sexual and coercive nature of her relationship with David Sills, David Sills' abuse of her, when and how it started, and how she had been promised by Sills repeatedly it would stop, but that he never kept that promise.

In July 2019, to R. Sing Oldham, a member of the executive committee, Lyell disclosed the sexual and coercive nature of her relationship with David Sills.

To Elizabeth Lockwood in late 2016 or early 2017, Lyell disclosed the sexual and coercive nature of her relationship with David Sills, when and how it started, and the lack of Jennifer Lyell's consent.

To Caroline McCulley in mid-2017, Lyell disclosed the sexual and coercive nature of David Sills abuse of her, the extent of David Sills' abuse, and the lack of Jennifer Lyell's consent.

In February 2018, Lyell disclosed that she experienced abuse within the church to Trillia Newbell on the Ethics and Religious Liberty Commission podcast.

In June 2021, Lyell discussed the sexual and coercive nature of her relationship with David Sills abuse, when and how it started, and the lack of Jennifer Lyell's consent with Ron Henzel and Don Venoit.

Lyell gave a video interview in 2021 called "Out of the Darkness" on the sexual and coercive nature of David Sills' abuse, when and how it started, and the lack of Jennifer Lyell's consent.

Lyell also discussed topics relating to the sexual abuse of Professor Sills with Megan Basham, a reporter for *The Daily Wire* on June 11, 2022, but specifically stated that all comments were off the record, not for publication, and were an attempt to avoid publication.

Lyell revealed the sexual and coercive nature of David Sills' abuse, when and how it started, and the lack of consent to Guidepost in March of 2022.

Lyell has also discussed the facts regarding David Sills' abuse with the therapists and healthcare professionals identified in answer to Interrogatory No. 16.

5.     IDENTIFY any written, audio, video, or other recordings or other evidence YOU possess or control, or of which YOU have direct knowledge, pertinent in any way to YOUR allegations of misconduct by (a) MARY SILLS and/or (b) DAVID SILLS, INCLUDING the location of such recordings and/or other evidence, the nature and contents of such recordings and/or other evidence, and how and when YOU came to possess or control or have knowledge of any such recordings and/or other evidence.

**RESPONSE:  Defendant Lyell objects to this interrogatory as vague, overly broad, and unduly burdensome, particularly the phrase "pertinent in any way."  Further, Ms. Lyell is one of the Defendants in this action.  She has not made allegations seeking relief against the Plaintiffs.  The use of the term "YOUR allegations of misconduct" is vague, overly broad,**

and seeks to disparage the facts she reported, and simply, that is not what they have been, but rather statements of fact. Defendant Lyell further objects to the request to identify "evidence" to the extent it asks her for legal conclusions or seeks information privileged as attorney work product or attorney-client communications. Without waiving these objections, Defendant Lyell incorporates herein the documents she produces in response to this interrogatory and Plaintiffs' Requests for Production. Ms. Lyell believes that the Defendant Southern Baptist Theological Seminary made a recording of a telephone call she made to officials at the Seminary.

6. IDENTIFY each PERSON to whom you alleged misconduct by PLAINTIFFS (a) DAVID SILLS and (b) MARY SILLS, including but not limited to the PERSON's name and title, place of employment, the date and location of each allegation, the means/mode of such communication (i.e., in person, via phone, email, text message, etc.), and the specific allegations YOU COMMUNICATED to the PERSON.

**RESPONSE:** Defendant Lyell objects to this interrogatory as vague, overly broad, and unduly burdensome. Defendant Lyell also objects to the use of the term "alleged misconduct" as an inaccurate characterization of her reports of sexual abuse as allegations. David Sills had intermittent sexual contact with Jennifer Lyell that he knew was unwanted for over a decade. It is unreasonable to expect Defendant Lyell to remember all the information requested; she may well recall additional facts responsive to this interrogatory when events are presented in context in questioning. Her recollection may be refreshed by other and/or by documents. Defendant Lyell also objects to the extent this request seeks information protected by attorney-client privilege or any other privilege recognized by law.

**Defendant Lyell also objects as this interrogatory is duplicative of Interrogatory No. 4. Without waiving these objections, see her Response to Interrogatory No. 4.**

7.      DESCRIBE in detail any and all COMMUNICATIONS between YOU and any PERSON or entity RELATED TO YOUR allegations of misconduct by MARY and/or DAVID SILLS, including the name of each PERSON/entity with whom YOU COMMUNICATED, the date and mode of such COMMUNICATION, the nature and contents of the COMMUNICATIONS, and whether such COMMUNICATIONS were recorded and/or transcribed.

**RESPONSE:  Defendant Lyell objects to this interrogatory as vague, overly broad, and unduly burdensome.  She has not made allegations seeking relief against the Plaintiffs, and so the "allegations of misconduct" is vague, overly broad, and inaccurate.  She has not made "allegations."  She has made statements of fact.**

**David Sills' sexual abuse of Defendant Lyell took place for over a decade, and it is unreasonable to expect Defendant Lyell to state all the information requested in this interrogatory in this format.  She may well recall additional facts responsive to this interrogatory when events are presented in context in questioning.  Her recollection may be refreshed by other testimony and/or by documents.  Defendant Lyell also objects to the extent this request seeks information protected by attorney-client privilege or any other privilege recognized by law.  Defendant Lyell objects as this interrogatory is duplicative of Interrogatory Nos. 4 and 6.  Without waiving these objections, Defendant Lyell incorporates herein the documents she produces in response to this interrogatory and Plaintiffs' Requests for Production and her Response to Interrogatory No. 4.**

8.    DESCRIBE in detail any and all COMMUNICATIONS YOU have had with DAVID SILLS REGARDING any alleged misconduct by DAVID SILLS or MARY SILLS, including but not limited to the dates and means/mode of such COMMUNICATIONS (i.e., phone conversation, email, text message, in-person meeting, etc.), the nature, purpose, contents, and/or context of such COMMUNICATIONS, any other PERSONS party to the COMMUNICATIONS, and whether such COMMUNICATIONS were recorded and/or transcribed.

**RESPONSE:  Defendant Lyell objects to this interrogatory as vague, overly broad, and unduly burdensome, as asking for "any alleged misconduct."  (See objections to prior interrogatories concerning these terms.)  David Sills' sexual abuse of Defendant Lyell took place for over a decade, and it is unreasonable to expect Defendant Lyell to state all the information requested in this interrogatory in this format.  She may well recall additional facts responsive to this interrogatory when events are presented in context in questioning.  Her recollection may be refreshed by other testimony and/or by documents.  Defendant further objects to this request as the information as Plaintiffs already possess the requested information, the information is accessible to Plaintiffs, and it is no more burdensome for Plaintiffs to gather the requested information themselves.  Without waiving these objections, Defendant Lyell incorporates herein the documents she produces in response to this interrogatory and Plaintiffs' Requests for Production and identifies the communications with Mr. Sills as set forth in her Response to Interrogatory No. 1.**

9.    DESCRIBE in detail any and all COMMUNICATIONS YOU have had with PLAINTIFF MARY SILLS  REGARDING any alleged misconduct by DAVID SILLS or MARY SILLS, including but not limited to the dates and means/mode of such COMMUNICATIONS (i.e., phone conversation, email, text message, in-person meeting, etc.), the nature, purpose, contents,

and/or context of such COMMUNICATIONS, any other PERSONS party to the COMMUNICATIONS, and whether such COMMUNICATIONS were recorded and/or transcribed.

**RESPONSE:** **Defendant Lyell objects to this interrogatory as vague, overly broad, and unduly burdensome, as asking for "any alleged misconduct." (See objections to prior interrogatories concerning these terms.) David Sills' sexual abuse of Defendant Lyell took place for over a decade, and it is unreasonable to expect Defendant Lyell to state all the information requested in this interrogatory in this format. She may well recall additional facts responsive to this interrogatory when events are presented in context in questioning. Her recollection may be refreshed by other testimony and/or by documents. Defendant further objects to this request as the information as Plaintiffs already possess the requested information, the information is accessible to Plaintiffs, and it is no more burdensome for Plaintiffs to gather the requested information themselves. Without waiving these objections, Defendant Lyell answers as follows and also incorporates herein the documents she produces in response to this interrogatory and Plaintiffs' Requests for Production, and her answer to Interrogatory No. 1:**

**Lyell tried to initiate a discussion with Mary Sills about David Sills' abuse in, but not limited to, June 2011, February 2016, June 2016, and December 2016. Lyell would attempt to initiate these conversations when she was alone with Mary Sills in the hope of eliciting Mary Sills' support in making it stop. Lyell would start the conversation by saying she needed to discuss the "problems with David's behavior" and how David was hurting Lyell. Mary Sills would promptly leave the room, tell Lyell to stop talking or shut up, or speak over Lyell so Mary could not hear Lyell.**

18

**On more than one occasion, while watching the news about a woman who revealed she was abused by a man, Mary Sills would make eye contact with Jennifer Lyell and state that these women disclosing their abuse where wrong to ruin those men's lives and that they should have kept their business to themselves.**

10.     IDENTIFY all statements YOU or YOUR agents or representatives have made publicly RELATED TO YOUR alleged misconduct by DAVID and/or MARY SILLS or any investigation of such allegations, or the publication of THE REPORT, INCLUDING but not limited to the names and contact information of any/each PERSON or entity involved in preparing or issuing such statement, the dates of such statements, and the specific facts of each allegation.

**RESPONSE:  Defendant Lyell objects to this interrogatory as vague, overly broad, and unduly burdensome, as asking for "YOUR alleged misconduct" and the term "publicly." David Sills' sexual abuse of Defendant Lyell took place for over a decade, and it is unreasonable to expect Defendant Lyell to state all the information requested in this interrogatory in this format.  She may well recall additional facts responsive to this interrogatory when events are presented in context in questioning.  Her recollection may be refreshed by other testimony and/or by documents.  Defendant Lyell also objects to this interrogatory as duplicative of other interrogatories.  Defendant further objects to this request as the information sought is publicly available, and thus, accessible to Plaintiffs. Without waiving these objections, Ms. Lyell incorporates her answer to Interrogatory No. 4.**

11.     Were YOU a named insured, INCLUDING as an additional insured, under any policy of insurance (including policies for homeowners, automobile, or any other liability insurance) on the date(s) of the occurrence alleged in PLAINTIFFS' COMPLAINT? If the answer to this interrogatory is in the affirmative, IDENTIFY for each such policy:

a.      The name and address of each and every insurance carrier issuing said insurance policy or policies;

b.      The policy number;

c.      The effective policy period;

d.      The maximum liability limits for each PERSON and each occurrence;

e.      The name and address of each and every insured under said policy or policies; and

f.      The name and address of each and every named additional insured or certificate holder under each policy or policies.

**RESPONSE:  No.**

12.      DESCRIBE fully YOUR relationship with each DEFENDANT in this case.  In YOUR response, please state (1) whether YOU have now, or in the past, any financial relationship with any DEFENDANT in this case, and (2) whether YOU have a joint defense agreement with any party to this case.  Defendant Lyell objects to this interrogatory as vague and irrelevant as to any "financial relationship" with any Defendant in this case.

**RESPONSE:  Defendant Lyell objects to this interrogatory as vague and irrelevant as to any "financial relationship" with any Defendant in this case.  Without waiver of any joint defenses and/or common interest privilege, Defendant Lyell states she is not a party to a written joint defense agreement.  The source of payment of fees and expenses is irrelevant as her attorneys represent her alone and neither she nor they owe any duty to any other person or entity.**

13.      DESCRIBE in detail YOUR relationship to LIFEWAY, including but not limited to YOUR employment history, i.e., positions held (by date and title), dates employed, supervisors for each position/date, duties associated with each title, and the scope of YOUR responsibilities and/or authority at all relevant times.

**RESPONSE:** Jennifer Lyell objects to this request because it is overly broad, vague and ambiguous. Without waiving such objections, Ms. Lyell states as follows: She started work at Lifeway in November 2008. She was employed at Lifeway until October 2019. Lyell began work as an Acquisitions Editor, a role in which she worked to acquire new authors, handled their contracts, developed their content, and edited their work. She was hired by Thom Rainer, the CEO. Her supervisor at this time was Brad Waggonor.

In 2011, Ms. Lyell became the head of Book Acquisitions. She was then responsible for the same duties as when she was an Acquisitions Editor but for all books published at Lifeway. Her supervisor at this time was Selma Wilson.

In January 2015, Ms. Lyell became Publisher which included her same work responsibilities, as well as marketing and sales of all books published and all financial and operational aspects of book publishing. Her supervisor at this time was Cossy Pacheras.

In October 2017, Ms. Lyell became Director of Book Publishing and Merchandising, which included her same responsibilities and added the responsibilities of managing brick and mortar and online book merchandising, including sales of all books by all publishers. She held this role until she left Lifeway in 2019. Her supervisor in this role was Eric Geiger, until he left Lifeway in 2018, when it became Earl Roberson.

14.    DESCRIBE in detail YOUR professional relationship to and/or within any and all DEFENDANTS in this action, INCLUDING but not limited to dates and location of employment, positions held (as employee, contractors, volunteer, or otherwise), leadership positions held, supervisors, duties at all relevant times, and the scope of YOUR responsibilities and/or authority at all relevant times.

**RESPONSE:** Defendant Lyell objects to this interrogatory because it is vague, overly broad, and not reasonably tailored to lead to the discovery of relevant information. Without waiving such objections, see Responses to Interrogatory Nos. 13 and 15.

15. DESCRIBE in detail YOUR relationship to and/or within the SEMINARY, INCLUDING but not limited to dates employed and/or enrolled, courses attended, grades received, positions held, duties, and the names and titles of any supervisors, employees over whom YOU had supervisory responsibilities, and/or academic advisors.

**RESPONSE:** Defendant Lyell objects to this interrogatory as vague, overly broad, and unduly burdensome, and not reasonably tailored to lead to the discovery of admissible evidence. Without waiving these objections, Defendant Lyell answers as follows and incorporates herein the documents she produces in response to this interrogatory and Plaintiffs' Requests for Production.

Defendant Lyell was a full-time student at the Seminary from January 2002 to May 2005 in the Masters of Divinity program. She enrolled in the PhD program after she received her Masters but withdrew in fall 2006. David Sills was Lyell's faculty supervisor while she was in the Masters of Divinity program from fall 2003 until she graduated her masters program. George Martin was her academic advisor from 2002-2003 and when she was in the PhD program.

David Sills was Lyell's professor for four courses, two of which he was the only professor who taught these courses. These courses were Intercultural Communications, Cultural Anthropology, Supervised Ministry, and Spanish for Missions. He was positioned as a spiritual guide, Pastor and academic advisor as well as personal and professional mentor.

22

From January 2002 until January 2003, Lyell was employed part-time in Network Services providing computer assistance to the faculty. Lyell was a student ambassador from August 2003 through May 2005. Part of her duties included giving tours and hosting benefit dinners. Mary Sills was in charge of assigning students their tours at this time.

Lyell was a part-time Student Associate from January 2003 to January 2005 when she worked in the Short Term Missions office on campus assisting with mission trip recruiting and logistics. Her supervisor was Twilla Hernandez. From January 2005 to November 2006, Lyell was a full time Student Associate for Academic Advising where she helped with program development. Chuck Lawless was her supervisor at this time.

16.     IDENTIFY any counselors, therapists, psychiatrists, physicians, psychologists, and/or other medical or mental health professionals YOU have seen, including the names and contact information for such providers and dates of those encounters. For each provider identified, specify whether YOU have discussed any of YOUR allegations of misconduct by PLAINTIFFS MARY SILLS and/or DAVID SILLS.

**RESPONSE:** **Defendant Lyell objects to this interrogatory to the extent it is requesting privileged information and to the extent Defendants seek to interfere with the covenant of confidentiality between the patient and her physician. Defendant Lyell does not give her consent to any contact (by Plaintiffs or their counsel) with the physicians or their counsel. Defendant Lyell also objects to this interrogatory as overly broad, and unduly burdensome, and not to lead to reasonably tailored discovery of only relevant information. Without waiving these objections, Defendant Lyell answers as follows:**

- **Mary Ann Severino, Nashville, Tennessee—March 2016- present**

- **Phyleen Ramage, M.D., Nashville, Tennessee—July 2016- present**

- **Marks Stanley at St. Thomas Ascension Cool Springs, Franklin, Tennessee —October 2019- present**

- **Shannon McDonald—2014-2019**

- **Michael Tramontana at Vanderbilt Neuropsychiatry, Nashville, Tennessee —October 2021**

- **Dr. W. Scott West, Brentwood, Tennessee— June-August 2020; treated with TMS (trans-magnetic pulsing applied to my brain) to treat PTSD**

- **Dr. Daniel Barton, Nashville, Tennessee—May, June, and August 2020; treated with ketamine infusions approved by the FDA to treat PTSD**

- **Dr. Eugene Lipov, Chicago, Illinois—April and May 2021; treated with surgical procedure called Stellate Ganglion Block FDA approved to treat PTSD**

- **Dr. Baal Nandra, Chicago, Illinois—April and May 2021; treated with ketamine infusions approved by the FDA to treat PTSD**

- **Dr. Randall Malchow, Brentwood, Tennessee—May 2021; treated with ketamine infusions approved by the FDA to treat PTSD**

17. For the years 2003 to present, IDENTIFY all chronic conditions with which YOU have been diagnosed, medications YOU were prescribed, and the provider who supplied any listed diagnosis and/or treatment.

**RESPONSE: Jennifer Lyell objects to this interrogatory because it is vague and not reasonably limited in scope to matters which may be relevant to this case. Without waiver of objection, and subject to correction by her medical professionals, she understands that she has been diagnosed with depression and PTSD.**

Defendant Lyell is prescribed Cymbalta, Wellbutrin, Vyvanse or Adderall, Seroquel, and Xanax. Defendant Lyell has been prescribed each of these medications since either around July 2016 or May 2019. Defendant Lyell has been prescribed Wellbutrin several times in the past.

18.     IDENTIFY by date, time, location, name and title of attendees, and the topics or agenda at issue, each and every instance YOU met with employees, officers, agents, contractors, or other representatives of GUIDEPOST, or any other DEFENDANT and DESCRIBE all COMMUNICATIONS YOU had with GUIDEPOST, or any other DEFENDANT REGARDING YOUR allegations of misconduct by PLAINTIFFS MARY and/or DAVID SILLS in THE REPORT and the allegations therein.

**RESPONSE:**  **Without waiving such objections, Defendant objects to this interrogatory as overly broad, vague ("YOUR allegations of misconduct"), and unduly burdensome. Ms. Lyell has not made "allegations of misconduct"; she has made statements of fact. Plaintiff Sills has admitted sexual misconduct, and he admitted to Ms. Lyell that he knew that what he did was unwanted, yet he now seeks to characterize her statements as mere allegations. Without waiving those objections and to set the record straight, Defendant Lyell states that she received no instructions by Guidepost or anyone else to do with the Guidepost investigation. Ms. Lyell had two in-person interviews with the Guidepost team and 2-3 phone calls in March 2022. The interviews focused on what Lyell had previously disclosed to the Southern Baptist Convention and its representatives. Lyell had some email communications with the Guidepost team in which Lyell shared documents. Lyell's points of contact with Guidepost were Julie Wood, Khrista Tongring, and Samantha Kilpatrick.**

The documents produced in response to Plaintiffs' Request for Production are incorporated herein as part of this response.

19.    DESCRIBE in detail all directions, instructions, or information provided to YOU by, or by YOU to, any DEFENDANT REGARDING the investigation of YOUR allegations of misconduct by PLAINTIFFS MARY and/or DAVID SILLS.

**RESPONSE:  Defendant Lyell objects to this interrogatory overly broad, vague and misleading in its predicate ("YOUR allegations of misconduct"), and unduly burdensome. Without waiving such objections, Defendant Lyell states that she never received directions, instructions, or information regarding the Guidepost investigation or any internal investigation by the Southern Baptist Convention at the time of Lyell's 2018 disclosure. Lyell's interactions regarding any entity or person gathering information on her abuse has always taken an interview format.**

20.    DESCRIBE in detail the terms of YOUR settlement with SBC, EXECUTIVE COMMITTEE, or any other DEFENDANT in this action.

**RESPONSE:  Defendant Lyell objects to this interrogatory as overly broad, and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Regardless, Ms. Lyell stipulated to the confidentiality of any such information and is not at liberty to disclose it.**

21.    For the years 2003 through present, IDENTIFY by date, amount, payor and payee, any and all payments, checks, cash, property and/or items of renumeration or compensation transmitted between YOU and any DEFENDANT, including by or through any DEFENDANTS' agents, employees and/or representatives.

**RESPONSE:** Defendant Lyell objects to this interrogatory as vague, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.

22.    IDENTIFY all individual(s) responsible for YOUR SOCIAL MEDIA AND/OR BLOG POSTINGS.

**RESPONSE:** Defendant Lyell is the only individual responsible for her social media accounts and blog posts.

23.    State YOUR educational history beginning with high school, including the name of each institution attended, any degrees and honors received, and dates of attendance.

**RESPONSE:** See Response to Interrogatory No. 15.

- **Johnston City, Illinois High School—1992-1996**

- **Southern Illinois University—1996-2001; Bachelor of Arts, Political Science and International Relations**

- **The Southern Baptist Theological Seminary; Master of Divinity—2002-2006**

- **Syracuse University College of Law—August 2020-September 2021 (Lyell is on Interrupted Status as of the date of these interrogatories)**

24.    State YOUR employment history, including the name and address of each employer and the dates of employment.

**RESPONSE:** See Responses to Interrogatory Nos. 13 and 15.

- **November 2006-November 2008—Acquisitions Editor at Moody Publishers**

- **October 2022-February 2023—Alliance for Children Everywhere**

- **January 2024- present—We Care Senior Care**

27

**VERIFICATION**

STATE OF TENNESSEE )
                                      )
COUNTY OF DAVIDSON )

    I, _Jennifer Lyell_, having been duly sworn, do hereby depose and state

that I have read the foregoing answers to Interrogatories and that the information contained therein

is true and complete to the best of my knowledge, information, and belief.

_Jennifer Lyell_
**JENNIFER LYELL**

Sworn to and subscribed before me this the 19TH day of JUNE, 2024.

_Wm J Ramsey_
Notary Public

My Commission Expires: _1 - 24 - 28_

WILLIAM T. RAMSEY
STATE OF TENNESSEE NOTARY PUBLIC
DAVIDSON COUNTY
My Commission Expires 01-24-2028

Respectfully submitted,

**NEAL & HARWELL, PLC**


By:     */s/ Ronald G. Harris*
        Ronald G. Harris, BPR #009054
        Philip N. Elbert, BPR #009430
        Olivia R. Arboneaux, BPR #040225

1201 Demonbreun Street, Suite 1000
Nashville, Tennessee 37203
(615) 244-1713 – Phone
(615) 726-0573 – Fax
rharris@nealharwell.com
pelbert@nealharwell.com
oarboneaux@nealharwell.com

*Counsel for Defendant Jennifer Lyell*

29

## CERTIFICATE OF SERVICE

I hereby certify that on this the 21st day of June, 2024, the foregoing was served via electronic mail on the following counsel of record:

| | |
|---|---|
| Gary E. Brewer<br>BREWER AND TERRY, PC<br>1702 W. Andrew Johnson Hwy.<br>P.O. Box 2046<br>Morristown, TN 37816<br>robin@brewerandterry.com<br><br>John W. ("Don") Barrett *(pro hac vice)*<br>Katherine Barrett Riley *(pro hac vice)*<br>Sarah Sterling Aldridge *(pro hac vice)*<br>BARRETT LAW GROUP, PA<br>P.O. Box 927<br>404 Court Square North<br>Lexington, MS 39095<br>dbarrett@barrettlawgroup.com<br>kbriley@barrettlawgroup.com<br>saldridge@barrettlawgroup.com<br><br>Shannon M. McNulty *(pro hac vice)*<br>CLIFFORD LAW OFFICES, PC<br>120 N. LaSalle St., 36th Floor<br>Chicago, IL 60602<br>smm@cliffordlaw.com<br><br>*Counsel for Plaintiffs* | John R. Jacobson<br>Katharine R. Klein<br>RILEY & JACOBSON, PLC<br>1906 West End Ave.<br>Nashville, TN 37203<br>jjacobson@rjfirm.com<br>kklein@rjfirm.com<br><br>Steven G. Mintz *(pro hac vice)*<br>Terence W. McCormick *(pro hac vice)*<br>Adam Kahan Brody *(pro hac vice)*<br>Scott Klein *(pro hac vice)*<br>Alex Otchy *(pro hac vice)*<br>MINTZ & GOLD LLP<br>600 Third Avenue, 25th Floor<br>New York, NY 10016<br>mintz@mintzandgold.com<br>mccormick@mintzandgold.com<br>brody@mintzandgold.com<br>klein@mintzandgold.com<br>otchy@mintzandgold.com<br><br>*Counsel for Defendants Guidepost Solutions LLC and SolutionPoint International, Inc.* |
| L. Gino Marchetti, Jr.<br>Matthew C. Pietsch<br>TAYLOR, PIGUE, MARCHETTI & BLAIR, PLLC<br>2908 Poston Avenue<br>Nashville, TN 37203<br>gmarchetti@tpmblaw.com<br>matt@tpmblaw.com<br><br>*Counsel for Defendants Southern Baptist Convention, Dr. Ed Litton, and Dr. Bart Barber* | Brigid M. Carpenter<br>Ryan P. Loofbourrow<br>BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC<br>1600 West End Avenue, Suite 2000<br>Nashville, Tennessee 37203<br>bcarpenter@bakerdonelson.com<br>rloofbourrow@bakerdonelson.com<br><br>*Counsel for Defendants The Executive Committee of the Southern Baptist Convention and Rolland Slade* |

| | |
|---|---|
| James C. Bradshaw III<br>WYATT, TARRANT & COMBS, LLP<br>333 Commerce Street, Suite 1050<br>Nashville, TN 37201<br>jbradshaw@wyattfirm.com<br><br>Byron Leet *(pro hac vice)*<br>WYATT, TARRANT & COMBS, LLP<br>400 West Market Street, Suite 2000<br>Louisville, KY 40202<br>bleet@wyattfirm.com<br><br>Thomas E. Travis *(pro hac vice)*<br>WYATT, TARRANT & COMBS, LLP<br>250 West Main Street, Suite 1600<br>Lexington, KY 40507<br>ttravis@wyattfirm.com<br><br>*Counsel for Defendants The Southern Baptist Theological Seminary and Dr. R. Albert Mohler* | Alan S. Bean<br>STARNES DAVIS FLORIE, LLP<br>3000 Meridian Blvd., Suite 350<br>Franklin, Tennessee 37067-6321<br>abean@starneslaw.com<br><br>*Counsel for Defendant Willie McLaurin* |

*/s/ Ronald G. Harris*
Ronald G. Harris