# Exhibit 130

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| JOHNNY M. HUNT,<br><br>    Plaintiff,<br><br>v.<br><br>SOUTHERN BAPTIST CONVENTION;<br>GUIDEPOST SOLUTIONS LLC; and<br>EXECUTIVE COMMITTEE OF THE<br>SOUTHERN BAPTIST CONVENTION,<br><br>    Defendants. | Case No. 3:23-cv-00243<br>Chief Judge Campbell<br>Magistrate Judge Frensley<br><br>**DEFENDANTS' JOINT RESPONSE<br>TO PLAINTIFF JOHNNY M.<br>HUNT'S STATEMENT OF<br>ADDITIONAL DISPUTED FACTS<br>PURSUANT TO<br><u>LOCAL RULE 56.01(c)(3)</u>** |

Pursuant to Fed. R. Civ. P. 56(c) and Local Rules 56.01(c)(3), Defendants Guidepost Solutions LLC ("<u>Guidepost</u>"), Southern Baptist Convention ("<u>SBC</u>"), and the Executive Committee of the Southern Baptist Convention ("<u>EC</u>") submit these responses and objections to Plaintiff Johnny M. Hunt's Statement of Additional Disputed Facts ("SOMF") as follows:

## I.     Sexual Abuse - A Crisis in the Southern Baptist Convention

1.      The SBC is facing a sexual abuse crisis as "[f]or almost two decades, survivors of abuse and others concerned Southern Baptists have been contacting the Southern Baptist Convention ("SBC") Executive Committee ("EC") to report child molesters and other abusers who were in the pulpit or employed as church staff. They made phone calls, mailed letters, sent emails, appeared at SBC and EC meetings, held rallies, and contacted the press…only to be met, time and time again, with resistance, stonewalling, and even outright hostility from some within the EC." (Doc. 1-2, at Page ID# 36).

1

**RESPONSE:** Undisputed that statement #1 accurately quotes the Guidepost Report dated May 15, 2022; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

2.     In 2019, the Houston Chronicle published a six-part series of articles on the SBC entitled "Abuse of Faith." (Doc. 1-2, at Page ID# 111).

**RESPONSE:** Undisputed that statement #2 references the "Abuse of Faith" article series by the Houston Chronicle; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

3.     The Houston's Chronicle's "Abuse of Faith" series "identified 10 churches which were involved in the alleged abuse. The Houston Chronicle reported that, in the past 20 years, about 380 Southern Baptist church leaders and volunteers have faced allegations of sexual misconduct, leaving behind more than 700 victims." (Doc. 1-2, at Page ID# 111).

**RESPONSE:** Undisputed that statement #3 accurately quotes the Houston Chronicle "Abuse of Faith" series; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

4.     Pastor Johnny has never known of or dealt with any issues related to sexual abuse within the Southern Baptist Convention, and has generally, "stayed out of the paper." (Ex. 8, Hunt Dep. 39:6-17; 46:6-9; 188:5-9).

**RESPONSE:** The Defendants object on the ground that this statement does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed. To the extent a response is required, for purpose of ruling on the summary judgment motion only, the statement is undisputed.

5.     At the 2021 Southern Baptist Convention, "calls for reform reached a crescendo – the Messengers overwhelmingly voted to approve a Task Force to supervise an intendent investigation into the EC's handling of sexual abuse allegations." (Doc. 1-2, at Page ID# 36).

**RESPONSE:** Undisputed that statement #5 accurately quotes the Guidepost Report dated May 15, 2022; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

6.     When the SBC hired Guidepost, the SBC had been facing allegations "that it had improperly ignored reports of child molestation," "that it ignored reports of rape" and "that it ignored reports of other sex crimes occurring in SBC affiliated churches" (Ex. 4, EC 30(b)(6) Dep. 172:4-19).

**RESPONSE:** Undisputed that statement #6 accurately quotes the Executive Committee 30(b)(6) deposition; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

7.     The Vice President of Communications of the SBC, Jonathan Howe, thought that the allegations of: 1. Child molestation; 2. Rape; and 3. Other sex crimes "had posed challenges to

the Convention and ones that were needing to be addressed." (Ex. 4, EC 30(b)(6) Dep. 173:19-175:1).

**RESPONSE:** Undisputed that statement #7 accurately quotes the Executive Committee 30(b)(6) deposition; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

8.      SBC President, Bart Barber, confirmed that there was a "sexual abuse crisis within the SBC when [he was] running for [his] first term as president of the SBC," in the first half of 2022. (Ex. 5, Barber Dep. 57:13-21).

**RESPONSE:** Undisputed that statement #8 accurately quotes the deposition of Bart Barber; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

9.      SBC President, Bart Barber, described the Guidepost Report as a "key moment in the history of the SBC" because it "represented a moment when, obviously, Southern Baptists took action to try to understand respond to a problem, sexual abuse in churches, that – that historically we have never been at in a moment when we faced a question like that…or tried to respond to this…problem in that way." (Ex. 5, Barber Dep. 85:16-86:16).

**RESPONSE:** Undisputed that statement #8 accurately quotes the deposition of Bart Barber; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

10.      One of the purposes of engaging Guidepost was "to respond to the allegations that the SBC had not properly responded to sex crimes within Southern Baptist Churches appropriately." (Ex. 4, EC 30(b)(6) 178:17-22).

**RESPONSE:** Undisputed that statement #10 accurately quotes the Executive Committee 30(b)(6) deposition; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

## II.    **Engagement of Guidepost**

11.      On August 11, 2021, Guidepost submitted a Proposal ("Proposal") to the "Sexual Abuse Task Force ("Task Force") appointed by the President of the Southern Baptist Convention ("SBC") at the direction of the SBC Messengers." (Ex. 42).

**RESPONSE:**   Undisputed that statement #11 accurately recites that Guidepost submitted a proposal to the Task Force; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

12.      The Engagement Letter was signed by Guidepost, the SBC Executive Committee and the Task Force of the SBC. (Doc 1-1, at Page ID # 31) (Ex. 23) (Ex. 6, Guidepost 30(b)(6) Dep. 264:17-265:21).

**RESPONSE:** Undisputed that statement #12 accurately recites the signatories to the Guidepost Engagement Letter; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

13.     Section 1.1 of the Engagement Letter stated "in accordance with the mandate given by the Southern Baptist Convention ("SBC") Messengers ("SBC Motion"), the SBC, through and under the leadership of the Task Force has retained Guidepost Solutions LLC and its agents (collectively "Guidepost"), to conduct an independent investigation into the Executive Committee (the "Engagement") and an audit of the procedures and actions of the Credentials Committee under the terms and conditions set forth in this engagement agreement ("the Agreement")." (Doc 1-1, at Page ID# 22)

**RESPONSE:** Undisputed that statement #13 accurately quotes the Guidepost Engagement Letter; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.


14.     Guidepost was hired by the SBC Executive Committee. (Ex. 6, Guidepost 30(b)(6) Ex. 6, Guidepost 30(b)(6) Dep 263:3-5).

**RESPONSE:**  The Defendants object on the ground that this statement does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.  To the extent a response is required, for purpose of ruling on the summary judgment motion only, the statement is undisputed.


15.     Guidepost was paid by the SBC Executive Committee. (Ex. 6, Guidepost 30(b)(6) Ex. 6, Guidepost 30(b)(6) Dep 275:10-21).

**RESPONSE:** The Defendants object on the ground that this statement does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.  To the extent a

response is required, for purpose of ruling on the summary judgment motion only, the statement is undisputed.

16.     Guidepost "billed approximately $2 million dollars." (Ex. 3, Wood Dep. 57:18-19) (Ex. 15).

**RESPONSE:** Undisputed that statement #16 accurately quotes Ms. Wood's deposition transcript; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

17.     Guidepost actually completed approximately $4 million dollars' worth of work. (Ex. 3, Wood Dep. 58:4-12).

**RESPONSE:** Undisputed that statement #17 accurately references deposition testimony from Ms. Wood's deposition transcript; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

18.     Guidepost's clients in this engagement were the SBC, the SBC Executive Committee and the SBC's Sexual Abuse Task Force. (Doc 1-1, at Page ID# 22) (Ex. 3, Wood Dep. 58:2-15; 432:19-433:1).

**RESPONSE:** The Defendants object on the ground that this statement does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed. To the extent a response is required, for purpose of ruling on the summary judgment motion only, the statement is undisputed.

19.     According to Section 2.3 of the Engagement Letter, the Committee on Cooperation was charged with "[r]eciept of periodic monthly updates noting document, witness, and information requests made to the Executive Committee, to ensure information sought is consistent with and responded to in cooperation with the Motion passed by the Messengers at the SBC Convention in June 2021." (Doc. 1-1, at Page ID #23).

**RESPONSE:**     Undisputed that statement #19 accurately quotes the Guidepost Engagement Letter; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.


20.     According to Section 3.1 of the Engagement Letter, the scope of Guidepost's investigation was as follows:

  a.   "Allegations of abuse by Executive Committee members." (Doc. 1-1, at Page ID #23).

**RESPONSE:** Undisputed that statement #20.a. accurately quotes the Guidepost Engagement Letter; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.


  b.   "Mishandling of abuse allegations by Executive Committee members between January 1, 2000, to June 14, 2021." (Doc. 1-1, at Page ID #23).

**RESPONSE:** Undisputed that statement #20.b. accurately quotes the Guidepost Engagement Letter; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

> c. "Allegations of mistreatment of sexual abuse victims by Executive Committee members from January 1, 2000, to June 14, 2021." (Doc. 1-1, at Page ID #23).

**RESPONSE:** Undisputed that statement #20.c. accurately quotes the Guidepost Engagement Letter; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

> d. "Patterns of intimidation of sexual abuse victims or advocates from January 1, 2000, to June 14, 2021." (Doc. 1-1, at Page ID #23).

**RESPONSE:** Undisputed that statement #20.d. accurately quotes the Guidepost Engagement Letter; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

> e. "Resistance to sexual abuse initiatives from January 1, 2000, to June 14, 2021." (Doc. 1-1, at Page ID #23).

**RESPONSE:** Undisputed that statement #20.e. accurately quotes the Guidepost Engagement Letter; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

21. Under Section 3.3 of the Engagement Letter, "[n]o attorney-client relationship will be formed between Guidepost and any other party. Accordingly, communications between Guidepost (including its employees and agents) on the one hand, and the Committee on

Cooperation, the Task Force, the SBC, the Executive Committee, and/or the Credentials Committee will not be protected by the attorney-client privilege." (Doc. 1-2, at Page ID # 6).

**RESPONSE:** Undisputed that statement #21 accurately quotes the Guidepost Engagement Letter; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

### III.   Guidepost Begins Its Investigation, Finds No New Allegations

22.   Guidepost began its investigation in early October of 2021. (Doc 1-1, at Page ID # 31) (Ex. 23).

**RESPONSE:**  The Defendants object on the ground that this statement does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.  To the extent a response is required, for purpose of ruling on the summary judgment motion only, the statement is undisputed.

23.   There was "anticipation" surrounding the release of the Report. It was "well-known" and "wide-spread." (Ex. 4, EC 30(b)(6) Dep. 310:13-19).

**RESPONSE:** Undisputed that statement #23 accurately quotes the Executive Committee 30(b)(6) deposition; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

24.   As of February 11, 2021, after over four months of investigation, Guidepost did not "have any evidence of any new allegation of sexual abuse involving an executive committee member." (Ex. 6, Guidepost 30(b)(6) Dep. 77:4-78:4) (Ex. 3, Wood Dep. 333:18-21) (Q – "So

Case 3:23-cv-00243   Document 71-1   Filed 08/14/23   Page 11 of 75 PageID #: 584
Case 3:23-cv-00478   Document 78-1   Filed 08/14/23   Page 11 of 75 PageID #: 15334

there was no additional person that you identified in your work that was associated with abuse by Executive Committee members as of February 11, 2022?" A – "Not that I recall.").

**RESPONSE:** Defendants object to statement #24 on the grounds that this fact is immaterial and should be stricken pursuant to Fed. R. Civ. P. 56(c). Defendants further object that statement #24 proceeds from an improper citation from the quoted testimony in the Rule 30(b)(6) deposition, which refers to the state of the investigation as of February 11, 2022, not February 11, 2021. Defendants do not dispute statement #24, as corrected, that, as of February 11, 2022, Guidepost had not identified another member of the EC who was associated with an accusation of sexual abuse.

IV. **Jane Doe's Husband Contacts Guidepost, Providing *Something* New for the Report**

25.     On February 9, 2022, at 5:44PM, Jane Doe's husband emailed Guidepost stating ██ ████████████████████████████████████████ but does not mention a sexual assault. (Ex. 76).

**RESPONSE:** Undisputed that statement #25 accurately quotes an email from February 9, 2022 at 5:44 pm; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

26.     On February 10, 2022, at 8:58PM, lead investigator, Russell Holske, emailed Jane Doe's husband stating ███████████████████████ (Ex. 76).

**RESPONSE:** Undisputed that statement #26 accurately quotes an email from February 10, 2022 at 8:58 pm; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

27.     On February 11, 2022, at 2:43PM, Jane Doe's husband emailed Mr. Holske,

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████     ██████████

**RESPONSE:** Undisputed that statement #27 accurately quotes an email from February 11, 2022 at 2:43 pm; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

28.     On February 11, 2022, at 2:43PM, Mr. Holske emails Jane Doe's Husband, ███████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████ (Ex. 25).

**RESPONSE:** Undisputed that statement #28 accurately quotes an email from February 11, 2022 at 2:43 pm; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

29.     On February 11, 2022, at 4:26PM, after speaking with Jane Doe's husband again, Mr. Holske texted Krista Tongring, the 'project manager,' ████████████████████████ (Ex. 26) (Ex. 1, Holske Dep. 18:11-16).

**RESPONSE:** Undisputed that statement #29 accurately quotes a text from February 11, 2022 at 4:26 pm; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed

30.     The allegation against Pastor Johnny was "the first time" Guidepost had "a possibility of including something new in a report about sexual abuse involving executive committee members that the SBC or the executive committee had not seen before." (Ex. 6, Guidepost 30(b)(6) Dep. 78:15-20).

**RESPONSE:** Undisputed that statement #30 accurately quotes the deposition exchange between Ms. Tongring and Plaintiff's counsel; however, Defendants respectfully refers the Court to the deposition testimony of Ms. Wood, where she testified that she was unaware of what the SBC or the Executive Committee knew about allegations concerning Paul Pressler and Frank Page (Ex. 3, Wood Dep., pp. 331:13-333:21). Defendants further object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is not material.

31.     Ms. Tongring wanted to "get this news to…the CEO of the Company that night." (Ex. 6, Guidepost 30(b)(6) Dep. 80:1-4).

**RESPONSE:** Undisputed that statement #31 accurately quotes Plaintiff's counsel's own question, to which Ms. Tongring responded, "That's what I see in my text message." Defendants also object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor disputed.

**V.     Jane Doe Obtains Counseling From the Firm Engaged By Guidepost**

32.     According to Section 3.10 of the Engagement Letter, "Guidepost will consult with the Task Force to create a dedicated and trauma-informed resource to assist survivors by serving as an additional reference and communication point for survivors during the investigation,

13

including but not limited to assisting with accurate information and support. Guidepost will subcontract for this resource." (Ex. 23).

**RESPONSE:** Undisputed that statement #32 accurately quotes the Guidepost Engagement Letter; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

33.     Guidepost engaged "Dr. Phil Monroe of Langberg, Monroe & Associates as a Survivor Care Liaison." (Doc. 1-2, at Page ID # 61).

**RESPONSE:** Objection on that ground that statement #33 violates the rule of completeness. The full quotation in context is as follows: "We realize that participating in the investigation interview process can create added stress related to underlying trauma. Our desire was to provide survivors a safe and confidential space to debrief and process their interviews and participation with this investigation. In order to provide this support to survivors, the Guidepost team engaged "Dr. Phil Monroe of Landberg, Monroe & Associates as a Survivor Care Liaison." Defendants do not dispute statement #33 as corrected above but do further object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is not material.

34.     On February 13, 2022, Jane Doe's husband emailed Mr. Holske, 

**RESPONSE:** Objection on that ground that statement #34 violates the rule of completeness and misleads the Court. The full quotation is as follows:

████████████████████████████████████████████████████████████

████████████████████████████████. Defendants do not dispute statement

#34 as corrected above but do object to this statement on the ground that it does not comply with

LR 56.01(c)(3) in that it is not material.


35.    On February 14, 2022, at 10:14AM, Guidepost's CEO, Julie Meyers Wood,

emailed Mr. Holske, Samantha Kilpatrick and Ms. Tongring to ask if ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████.

**RESPONSE:** Undisputed that statement #35 accurately quotes an email from February 14, 2022

at 10:14 am; but Defendants otherwise object to this statement on the ground that it does not

comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.


36.    On February 14, 2022 at 4:56PM, Ms. Kilpatrick texted Jane Doe, █████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████.

**RESPONSE:** Undisputed that statement #36 accurately quotes a text exchange between Ms.

Kilpatrick and Jane Doe from February 14, 2022; but Defendants otherwise object to this statement

on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material

nor genuinely disputed.

37.     Jane Doe met with Langberg, Monroe & Associates in February of 2022. (Ex. 10, Doe Dep. 148:17-20).

**RESPONSE:** Undisputed that statement #37 accurately references Jane Doe's deposition testimony from 148:17-20; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

38.     ███████████████████████████████████████████████
████████████████████████████████████████████████.

**RESPONSE:** Undisputed that statement #38 accurately references a portion of Jane Doe's deposition testimony from page 92; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

**VI.     After Receiving Counseling at the Firm Engaged by Guidepost, Jane Doe and Her Husband No Longer Believed This Was a Consensual Encounter, But a Sexual Assault**

39.     The March 31, 2022 written narrative, by Jane Doe and her husband states ███████
████████████████████████████████████████████████
████████████████████████████████████████████████
██.

**RESPONSE:** Undisputed that statement #39 accurately quotes one sentence from page 1 of Exhibit 27; however, Defendants object because Plaintiff violated the rule of completeness. The

next sentence of that paragraph (which was omitted from the above statement) provides the proper context of Plaintiff's selective quotation: ██████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████ Defendants otherwise objects to this statement on the ground that (as corrected) it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

40.     In a June 13, 2022 Houston Chronicle article, the Jane Doe and her husband indicated that "[i]t took more than a decade – and extensive expert therapy – for the [them] to begin to articulate what had occurred…" (Dkt. 75).

**RESPONSE:** Undisputed that statement #40 accurately quotes the referenced Houston Chronicle article; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

41.     It was not until Jane Doe got the counseling in February of 2022 and in March of 2022 that she began to associate kissing her hand in 2007 with grooming. (Ex. 10, Doe Dep. 138:9-18).

**RESPONSE:** Undisputed that statement #41 accurately quotes the deposition of Jane Doe; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

42.    Guidepost conducted at least nine interviews with Jane Doe and her husband prior to publication of the Report. (Ex. 1, Holske Dep. 67:8-15) (Ex. 3, Wood Dep. 359:2-8)

**RESPONSE:** Disputed.  As set forth in Exhibit 16, Guidepost's Response to Interrogatory No. 2, there were a total of nine interviews where either *Jane Doe or her husband (or both)* were present prior to the SBC Task Force publishing the Report; however, Jane Doe and her husband were not both present for all nine interviews. (Ex. 16, Interrogatory Response No. 2). Defendants otherwise object because Plaintiff mischaracterizes Exhibit 16. Defendants further object to this statement on the ground that (as corrected) it does not comply with LR 56.01(c)(3) in that the statement is not material.

43.    Prior to publication of the Report, Guidepost investigators interacted with Jane Doe and her husband in addition to these nine interviews. (Ex. 6, Guidepost 30(b)(6) Dep. 75:10-76:8).

**RESPONSE:** Objection. Plaintiff has mischaracterized the testimony of Ms. Tongring.  Ms. Tongring testified that Guidepost interacted with Jane Doe's husband in addition to the interviews referenced in Exhibit 16 (not Jane Doe). (Ex. 6, Guidepost 30(b)(6) Dep. 75:10-76:8). Defendants do not dispute statement #44 as corrected above but do object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that it is not material.

44.    On February 11, 2022, Guidepost interviewed Jane Doe's husband for the *first* time. (Exhibit 16, Guidepost Response Interrogatory No. 2).

**RESPONSE:** Undisputed.  Defendants otherwise object because this statement does not comply with LR 56.01(c)(3) in that the statement is not material.

Case 3:23-cv-00243   Document 121-63   Filed 08/14/25   Page 19 of 75 PageID #: 15342

45.     On February 15, 2022, Guidepost interviewed Jane Doe's husband for the ***second*** time. (Exhibit 16, Guidepost Response Interrogatory No. 2).

**RESPONSE:** Undisputed.  Defendants otherwise object because this statement does not comply with LR 56.01(c)(3) in that the statement is not material.

46.     Before March 31, 2022, Guidepost interviewed Jane Doe for the ***third*** time. (Exhibit 16, Guidepost Response Interrogatory No. 2).

**RESPONSE:** Disputed. Guidepost interviewed *Jane Doe* for the second time on March 31, 2022. Guidepost's first interview was a telephone call with Samantha Kilpatrick prior to March 31, 2022. The second interview was a joint interview with Jane Doe and her husband. (Exhibit 16, Guidepost's Response to Interrogatory No. 2.) Defendants otherwise object because Plaintiff has mischaracterized Ex. 16.  As set forth in Response to Interrogatory No. 2, prior to March 31, 2022, Guidepost interviewed Jane Doe's husband, not Jane Doe, two times prior to March 31, 2022. (Exhibit 16, Guidepost Response Interrogatory No. 2.). Defendants further object to this statement (as corrected) on the ground that it does not comply with LR 56.01(c)(3) in that the statement is not material.

47.     On March 31, 2022, Guidepost interviewed Jane Doe and her husband, for a ***fourth*** time, for "an entire," "long" day. (Ex. 16, Guidepost Response Interrogatory No. 2). (Ex. 1, Holske Dep. 146:1-147:1).

**RESPONSE:** Disputed. On March 31, 2022, Guidepost interviewed Jane Doe and her husband *together* for the first time. (Exhibit 16, Guidepost's Response to Interrogatory No. 2.)  Defendants otherwise object because Plaintiff has mischaracterized Ex. 16. As set forth in Response

19

Interrogatory No. 2, Guidepost interviewed Jane Doe's husband, by himself, twice prior to March 31, 2022 and interviewed Jane Doe, by herself, once prior to March 31, 2022. Defendants further object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement (as corrected) is not material.

48.  ███████████████████████████████████████████████
████████████████████████████.

**RESPONSE:** Objection.  This statement is not supported by the cited exhibit. Exhibit 27 is a document entitled, ████████████████████████████████████████████
████████████████████████ There is no evidence in this Exhibit that Jane Doe and her husband brought this document to any meeting.

49.  ███████████████████████████████████████████████
██████████████.

**RESPONSE:** Defendants object to statement #49 on the ground that it mischaracterizes the transcript. The precises question and answer were as follows: ████████████████
████████████████████████████ (Ex. 10, Doe Dep. 80:11-15). Defendants do not dispute #49 as corrected above but do object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that it is not material.

50.  Guidepost's investigators relied on this document. (Ex. 1, Holske Dep. 174:13).

**RESPONSE:** Defendants object to statement #50 because it violates the rule of completeness. Guidepost's investigator, Russell Holske, testified as follows: "No. We relied on ['this document']

20

Case 3:23-cv-00478  Document 241-63  Filed 08/14/23  Page 20 of 75 PageID 2594
Case 3:23-cv-00478  Document 211-1  Filed 08/11/23  Page 21 of 76  PageID
15344

Exhibit 7, we relied on prior conversations with [Jane Doe's husband], and we relied on [Jane Doe's] description of what she experienced with Dr. Hunt on July 25th, 2010." (Holske Dep. 174:13-16.) Defendants do not dispute statement #50 as corrected above but do object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that it is not material .

51. ████████████████████████████████████████████
█████████████████████████████████████ .

**RESPONSE:** Undisputed that statement #51 accurately references two places where Darvocet is mentioned in Exhibit 27; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

52. ████████████████████████████████████████████
████████████████████████████████████████████
██████████████████ .

**RESPONSE:** Undisputed that statement #52 accurately quotes a sentence from page 2 of Exhibit 27; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

53. Jane Doe and her husband wrote in the Doe Story, ████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████ .

**RESPONSE:** Undisputed that statement #53 accurately quotes a sentence from page 2 of Exhibit 27; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

54.    Guidepost investigators recorded in their interview notes ███████████████████ ████████████████████████████████████████████ ███████████████████████.

**RESPONSE:** Undisputed that statement #54 accurately quotes a sentence from Guidepost's interview notes; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

55.    Jane Doe and her husband wrote in the Doe Story that the husband ████████████ ████████████████████████████████████████████ ████████████████████ (Ex. 27, page 17).

**RESPONSE:** Undisputed that statement #55 accurately quotes a sentence from page 17 of Exhibit 27; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

56.    ████████████████████████████████████████████ ████████████████████████ (Ex. 27, page 25).

**RESPONSE:** Undisputed that statement #56 accurately quotes a sentence from page 25 of Exhibit 27; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

57.     On April 1, 2022, at 11:45am, Jane Doe's husband emailed Ms. Kilpatrick and provided a letter he wrote to Pastor Johnny in which he asserted loses of ███████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ (Ex. 38).

**RESPONSE:** Undisputed that statement #57 accurately quotes portions of a letter that Jane Doe's husband wrote, but never sent, to Plaintiff; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.


58.     On April 1, 2022, at 3:34PM, after interviewing Jane Doe and her husband for an entire day, Mr. Holske emailed Ms. Wood, Ms. Tongring and Ms. Kilpatrick regarding the ████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████.

**RESPONSE:** Undisputed that statement #58 accurately quotes an email from April 1, 2022; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.


59.     On April 1, 2022 at 11:45am Jane Doe's Husband emailed Ms. Kilpatrick and included a letter he wrote to Pastor Johnny Hunt. In this letter to Pastor Johnny, Jane Doe's husband writes ████████████████████████████████████████ ████████████████████████████████████████████████████

████ Jane Doe's husband writes that Pastor Johnny can help bring righting his wrongs ██

████████████████████████████ (Ex. 38).

**RESPONSE:** Undisputed that statement #59 accurately quotes portions of a letter that Jane Doe's husband wrote, but never sent, to Plaintiff; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

60. On April 4, 2022, Guidepost interviewed Jane Doe for a *fifth* time. (Ex. 16, Guidepost Response Interrogatory No. 2).

**RESPONSE:** Disputed. On April 4, 2022, Guidepost interviewed Jane Doe for the third time. Jane Doe's first interview was individually via telephone with Samantha Kilpatrick, and the second interview was a joint interview with Jane Doe and her husband on March 31, 2022. (Exhibit 16, Guidepost's Response to Interrogatory No. 2.) Defendants otherwise object because Plaintiff has mischaracterized Ex. 16. Defendants further object to this statement on the grounds that it does not comply with LR 56.01(c)(3) in that the statement (as corrected) is not material.

61. On April 4, 2022, Jane Doe's husband informed Ms. Kilpatrick and Mr. Holske that they ███████████████████████████████████████████████████████

████████████████████████████ (Ex. 7).

**RESPONSE:** Objection. This statement is not supported by the cited exhibit. Exhibit 7 is a copy of Roy Blankenship's April 11, 2024, deposition transcript. Defendants further object to this statement on the grounds that it does not comply with LR 56.01(c)(3) in that the statement is not material.

24

62.     On April 4, 2022, Jane Doe's husband made a recommendation that ████████

████████████████████████████████████████████████████████████████████████████

███████████████████████ .

**RESPONSE:** Objection.  This statement is not supported by the cited exhibit. Exhibit 7 is a copy

of Roy Blankenship's April 11, 2024, deposition transcript. Defendants further object to this

statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is not

material.

63.     On April 5, 2022, Guidepost interviewed Jane Doe and her husband for a ***sixth***

time. (Ex. 16, Guidepost Response Interrogatory No. 2).

**RESPONSE:**  Disputed. On April 5, 2022, Guidepost interviewed Jane Doe and her husband

together for the second time. (Exhibit 16, Guidepost's Response to Interrogatory No. 2.)

Defendants otherwise object because Plaintiff has mischaracterized Exhibit 16. Defendants further

object to this statement on the grounds that it does not comply with LR 56.01(c)(3) in that the

statement (as corrected) is not material

64.     On April 15, 2022 Jane Doe's husband left a voicemail with Mr. Holske asking if

Guidepost would fly himself and Jane Doe to California as representatives of Guidepost, ████

████████████████ (Ex. 82)**.**

**RESPONSE:** Undisputed that statement #64 generally accurately references a portion of a voice

mail Jane Doe's husband left for Mr. Holske.  The actual voice mail message states that ████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ Defendants otherwise object

to this statement on the grounds that the statement does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

65.     On April 26, 2022, Mr. Holske and Mrs. Kilpatrick interview Pastor Johnny. (Ex. 35).

**RESPONSE:** Undisputed; but Defendants otherwise object to this statement on the grounds that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

66.     Pastor Johnny did not want to talk to Guidepost investigators because "they wanted to talk to [him] about particulars of [his] leadership for the convention," and he was not sure what details he would be able to remember. (Ex. 8, Hunt Dep. 116:21-117:8).

**RESPONSE:** Undisputed that statement #66 accurately quotes the referenced portion of Plaintiff's deposition transcript; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

67.     Pastor Johnny agreed to meet with Guidepost after a personal friend, Ed Litton, encouraged him to do so. (Ex. 8, Hunt Dep. 116:21-117:14).

**RESPONSE:** Undisputed; but Defendants otherwise object to this statement on the grounds that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

Case 3:23-cv-00478   Document 74-1   Filed 08/14/25   Page 26 of 75 PageID 15350
Case 3:23-cv-00478   Document 81-63   Filed 08/12/25   Page 27 of 75 PageID 2600

68.     During the April 26, 2022 interview, neither Mr. Holske or Ms. Kilpatrick asked Pastor Johnny about Jane Doe, her husband, or their allegations against him. (Exhibit 23) (Ex. 6, Guidepost 30(b)(6) Dep 191:19-192:10) (Ex. 1, Holske Dep. 218:5-13).

**RESPONSE:** Undisputed that Guidepost investigators did not identify Jane Doe's husband by name during this first interview. Defendants otherwise object to this statement on the grounds that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

69.     On April 26, 2022, when Guidepost investigators interviewed Johnny Hunt for the first time, investigators did not mention Jane Doe, her husband, or the allegations against him, despite having conducted **_at least six_** interviews with Jane Doe and her husband. (Ex. 16) (Ex. 6, Guidepost 30(b)(6) Dep 192:11-19) ("I'm sure that there were a number of interviews of [Doe and her husband] before the first interview of Mr. Hunt.").

**RESPONSE:** Undisputed that Guidepost investigators did not identify Jane Doe's husband by name during this first interview. Disputed that Guidepost interviewed Jane Doe and her husband together six times. See Exhibit 16, Guidepost's Response to Interrogatory No. 2. Defendants otherwise object because Plaintiff has mischaracterized Ex. 16, and the statement does not comply with LR 56.01(c)(3) in that the statement is not material.

70.     On April 29, 2022, Mr. Holske texted Jane Doe's husband, ███████████

███

**RESPONSE:** Objection. There is no record cite provided for this statement.

71. ████████████████████████████████████████████████████████████
████████████████████.

**RESPONSE:** Undisputed; but Defendants otherwise object to this statement on the grounds that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

72. ████████████████████████████████████████████████████████████
████████████████████.

**RESPONSE:** Undisputed that statement #72 accurately quotes a phrase from Mr. Holske's interview notes in Exhibit 87; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

73. ████████████████████████████████████████████████████████████
██████████████████████.

**RESPONSE:** Objection. Plaintiff mischaracterizes Ms. Kilpatrick's deposition testimony to mislead the Court. Ms. Kilpatrick's complete answer is as follows: "I do not. But the witness told us that it was not appropriate behavior, and that it happened in a condo and Mr. Hunt had kissed her, touched her breasts, undid her short and that it may have stopped there." (Id. 257:13-17.) Defendants do not dispute statement #73 as corrected above, but do object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that it is not material.

Case 3:23-cv-00478   Document 241-63   Filed 08/14/25   Page 29 of 75 PageID 2602
15352

74. ███████████████████████████████████████

████████████████████.

**RESPONSE:** Undisputed; but Defendants otherwise object to this statement on the grounds that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

75. ███████████████████████████████████████

███████████████████████████.

**RESPONSE:** Objection. Plaintiff mischaracterizes Ms. Kilpatrick's deposition testimony to mislead the Court. Ms. Kilpatrick's complete answer is as follows: "Witness three did not use the words sexual abuse or sexual assault. He told us that [Jane Doe's husband] told him about Dr. Hunt making advances on survivor and groping her and then subsequently covering it up." (Ex. 2 Kilpatrick Dep. 259:2-9) Defendants do not dispute statement #75 as corrected above but do object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that it is not material.

76. ███████████████████████████████████████

█████████████.

**RESPONSE:** Undisputed; but Defendants otherwise object to this statement on the grounds that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

77. ███████████████████████████████████████

███████████████████████.

**RESPONSE:** Objection. Plaintiff again provides this Court with an incomplete and misleading quotation. Ms. Kilpatrick's complete answer is as follows: "I don't believe that witness two used the word sexual assault or sexual abuse, but said that he told him about Dr. Hunt abusing survivor and did not give specific details but shared it was sexual in nature." (Ex. 2 Kilpatrick Dep. 258:2-6). On the same page of the deposition transcript, Ms., Kilpatrick adds, "what witness two reported to us was a report that [Jane Doe's husband] had reported to him sexual abuse of [Jane Doe]." (Ex. 2, Kilpatrick Dep. 258:21-259:1) Defendants do not dispute statement #77 as corrected above but do object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that it is not material.

78.     On May 9, 2022 at 3:16AM, Mr. Holske emailed Ms. Wood, Ms. Tongring and Ms. Kilpatrick, ████████████████████████████████████████████ ████████████████████████████████████████.

**RESPONSE:** Undisputed that statement #78 accurately quotes an email from May 9, 2022; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

79.     Mr. Holske's May 9, 2022 draft referred to Jane Doe as ████████████████████ ██████ (Ex. 31)

**RESPONSE:** Objection. Exhibit 31 contains no draft. Thus, there is no support for this statement.

80.     On May 9, 2022, before meeting with Roy Blankenship, Mr. Holske texted Ms. Wood and Ms. Tongring, ███████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████.

**RESPONSE:** Undisputed that statement #80 accurately quotes a text from May 9, 2022; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

81.     On May 9, 2022, Guidepost surprised Mr. Blankenship outside his office. (Ex. 61, Guidepost Response Interrogatory No. 2).

**RESPONSE:** Defendants object to statement #81 on the ground that the cited portions of the record do not support the assertion that Guidepost "surprised" Mr. Blankenship. Defendants further object to this statement on the grounds that it does not comply with LR 56.01(c)(3) in that the statement is not material.

82.     On May 10, 2022, Sunny Lee emailed Holske, stating ███████████████████ ███████████████████████████████████████████████████████████████ (Exhibit 33) (emphasis added).

**RESPONSE:** Objection.  This statement is not supported by the cited exhibit. Exhibit 33 is a copy of interview notes from March 31, 2022. Thus, there is no record support for this statement. Defendants further object to this statement on the grounds that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

83.     On May 10, 2022, Guidepost interviewed Jane Doe for a *seventh* time. (Exhibit 1, Guidepost Response Interrogatory No. 2).

**RESPONSE:** Disputed. On May 10, 2022, Guidepost interviewed Jane Doe for the fifth time (either alone or together with her husband). (Exhibit 16, Guidepost Response Interrogatory No. 2.) Defendants otherwise object because Plaintiff has mischaracterized Ex. 16.  Defendants further object to this statement on the grounds that it does not comply with LR 56.01(c)(3) in that the statement (as corrected) is not material.

84.     On May 10, 2022 Guidepost provided a draft Report to the Committee on Cooperation of the Executive Committee for review. (Ex. 62).

**RESPONSE:** Undisputed that statement #84 accurately recites the date on which Guidepost provided a draft report to the Committee on Cooperation; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

85.     On May 10, 2022, The Committee on Cooperation of the Executive Committee reviewed a draft Report that did not contain any allegations against Pastor Johnny. (Ex. 46).

**RESPONSE:** Undisputed that statement #85 accurately recites the date on which the Committee on Cooperation reviewed a draft of the Guidepost Report that did not contain information concerning Johnny Hunt; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

Case 3:23-cv-00243   Document 74-1   Filed 08/14/25   Page 33 of 75 PageID 15356
Case 3:23-cv-00243   Document 78-1   Filed 08/14/25   Page 33 of 75 PageID 2606

86. On May 10, 2022, The Committee on Cooperation of the Executive Committee reviewed a draft Report that redacted the section titled ███████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████.

**RESPONSE:** Undisputed that statement #86 accurately quotes Ex. 46, page 112; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

87. On May 10, 2022, The Committee on Cooperation of the Executive Committee reviewed a draft Report that included Frank Page, Paul Pressler, and Paige Patterson under the section titled ████████████████████████████████ (Ex. 46, page 112).

**RESPONSE:** Undisputed that statement #87 accurately references Ex. 46, page 112; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

88. The SBC was already aware of the allegations against Frank Page, Paul Pressler, and Paige Patterson at this time. (Ex. 5, Barber Dep. 202:24-204:18).

**RESPONSE:** Undisputed that statement #88 accurately references the deposition of Bart Barber; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

89.     During the May 10, 2022 review, the Committee on Cooperation of the Executive Committee provided feedback to Guidepost. (Ex. 62) ███████████████████ ███████ .

**RESPONSE:** Undisputed that statement #89 accurately references Ex. 62; but the Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

90.     The Committee on Cooperation had extra people attend the May 10, 2022 review to review the Report and provide comments. (Ex. 3, Wood Dep. 427:18-19).

**RESPONSE:** Defendants object to statement # 90 on the grounds that it mischaracterizes the cited portion of the record and should be stricken pursuant to Fed. R. Civ. P. 56(c) accordingly. Defendants further responds that the cited portion of the record reflects that the CoC requested that "an extra person or two" be allowed to attend the CoC's meeting with Guidepost to assist in the CoC's review of factual material in the Report pursuant to the procedures set forth and authorized in the Engagement Letter. (Exhibit 3, Wood Dep. 427:18-19.)

91.     On May 11, 2022, Ms. Kilpatrick emailed ███████████████ to Jane Doe's husband and Mr. Holske. Ms. Kilpatrick wrote, "please review and let us know if you have any corrections/clarifications or questions." (Ex. 36).

**RESPONSE:** Undisputed that statement #91 accurately quotes an email from May 11, 2022; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

92.    Guidepost's own expert, opined in his report that providing a portion of the draft Report to Jane Doe and her husband for review and suggested editing was a "**_variation_** from typical investigative techniques." (Ex. 20, pg. 11) (emphasis added).

**RESPONSE:** Defendants object to statement #92 on the grounds that it violates the rule of completeness and should be stricken under Fed. R. Civ. P. 56(c) accordingly. Defendants further object on the grounds that statement #92 omits the immediately following portion of the expert report that states, "**_this departure from ordinary procedures did not infect the Report, for two reasons. First of all, the only portion of the Report shown to the Survivor and her husband was the synopsis of her statement. Secondly, the suggested edits and revisions provided by the Survivor and her husband were fully preserved and leave no doubt that the investigators' original factual recitations were not altered or compromised_**. It should be noted that investigators typically have discretion to provide witnesses with the opportunity to submit a written statement of their own, and this could have been done here as an alternative to showing a witness any portion of a draft report of investigation. Nonetheless, giving the Survivor and her husband a draft summary of their statement to review was a close equivalent to the accepted procedure of allowing them to submit their own statement. **_Therefore, for the reasons noted above, SI Global was able to conclude that any procedural anomaly in providing a small portion of the draft Report to the Survivor and her husband was harmless under these circumstance_**s." (Exhibit 20 at 11) (emphasis added.) Defendants does not dispute statement #92 as corrected above but do object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that it is not material.

93.    On either May 11 in the evening, or May 12, 2022 in the morning, Guidepost Investigators requested a Zoom call with Pastor Johnny Hunt (Ex. 8, Hunt Dep. 125:17-25).

**RESPONSE:** Defendants object to statement #93 on the grounds that this statement does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed. To the extent a response is required, for the purpose of ruling on the summary judgment motion only, the statement is undisputed.


94.     Pastor Johnny did not know the topic of the second meeting. (Ex. 3, Wood Dep. 280:2-7.

**RESPONSE:** Defendants object to statement #94 on the grounds that this statement does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed. Defendants further object to #94 on the grounds that it misrepresents Ms. Wood's testimony.  Ms. Wood testified that she did not "recall" whether the investigators gave notice of the topic of the second interview. (Ex. 3, Wood Dep. 280:2-7.)  To the extent a response is required, for the purpose of ruling on the summary judgment motion only, the statement is undisputed.


95.     On May 12, 2022, at 12:15PM, Guidepost investigators met with Pastor Johnny for a second time via Zoom. (Exhibit 16, Guidepost Response Interrogatory No. 2).

**RESPONSE:** Defendants object to statement #95 on the grounds that this statement does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed. To the extent a response is required, for the purpose of ruling on the summary judgment motion only, the statement is undisputed.


96.     During the May 12, 2022 zoom call, investigators did not interview Pastor Johnny. (Ex. 8, Hunt Dep.  101:16).

**RESPONSE:** Defendants object to statement #96 on the grounds that Hunt's characterization of his discussion with the investigators as "not an interview" is opinion and argumentation, not a statement of material fact and should be stricken pursuant to Fed. R. Civ. P. 56(c). Defendants further respond that statement #96 is irreconcilable with Hunt's own admission that the Guidepost investigators posed questions to him regarding his encounter with Jane Doe and that he responded to them as set forth in the Report. (Guidepost SOF ¶ 32; Hunt Dep. 136:14-139:25; 140-141.) Hunt is therefore estopped from asserting that he was not interviewed on the May 12, 2022, Zoom call.

97.     During the May 12, 2022 zoom call, Guidepost's investigators ambushed Pastor Johnny, accused him of sexually assaulting Jane Doe and spoke over him. (Ex. 8, Hunt Dep. 136:21-137:10) ████████████████████████████ (Ex. 8, Hunt Dep. 103:16-20) ██████████████████████████████████ (Ex. 8, Hunt Dep. 278:4-6).

**RESPONSE:** Defendants refer the Court to the response to statement #96, above.

98.     On May 12, at 2:14PM, Jane Doe's husband returned a redline of ████ to Samantha Kilpatrick and Russel Holske. (Ex. 88).

**RESPONSE:** Undisputed.

99.     Ms. Kilpatrick testified that Jane Doe and her husband had "inserted *significant* portions of text into [Guidepost's] report." (Ex. 2, Kilpatrick Dep. 132:3-4) (emphasis added).

**RESPONSE:** Undisputed that statement #99 accurately quotes a portion of Ms. Kilpatrick's deposition testimony. Defendants further refer the Court to Ms. Tongring's 30(b)(6) deposition

testimony, where she testified that Guidepost accepted Jane Doe and her husband's proposed edits "if they confirmed or enhanced the factual accuracy." (Ex. 6. Guidepost 30(b)(6) Dep. 177:21-22).

100.   Tongring testified that Guidepost "accepted" some of these edits. (Ex. 6, Guidepost 30(b)(6) Dep 177:14-22).

**RESPONSE:**  Undisputed that Ms. Tongring testified that Guidepost "accepted" some of the edits. Defendants object to statement #100, however on the grounds that it violates the rule of completeness and omits Ms. Tongring's testimony that "[Guidepost] accepted things that confirmed or enhanced the factual accuracy." (Id.)

101.   Guidepost did not give Pastor Johnny an opportunity to "review the portion that applied to him and his statements." (Ex. 6, Guidepost 30(b)(6) Dep 179:21-180:7).

**RESPONSE:**  Undisputed that Ms. Tongring testified that Hunt was not given an opportunity to review the portion that applied to him and his statement. However, Defendants object to #101 on the grounds that it violates the rule of completeness and omits the Rule 30(b)(6) witness's testimony that Guidepost did not give Hunt advance access to the draft Report because there was "nothing left to corroborate and Hunt had denied he had any contact with Jane Doe." (Id. at 180:11-22.)

102.   On May 12, at 3:25pm, Mr. Holske texted Ms. Kilpatrick, ██████████████████ ████████████████████████████████.

**RESPONSE:**  Defendants object to statement #102, because it violates the rule of completeness. Mr. Holske's text reads as follows: ████████████████████████████████

38

████████████████████████████████████████ (emphasis added). Defendants do not dispute #102 as corrected above but do object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that it is not material.

103.    On May 13, 2022, at 10:08AM, Ms. Tongring texted Ms. Wood ████████ ██████████████ .

**RESPONSE:** Defendants object to statement #103, because it violates the rule of completeness. In response to Ms. Woods' text, ████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████ (Exhibit 71.) Defendants do not dispute #103 as corrected above, but do object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that it is not material.

104.    On May 13, 2022, at 12:38PM, Ms. Kilpatrick emailed Mr. Holske about the "facts" stating Wood said they can share on the screen and ████████████████████████ ██████████ .

**RESPONSE:** Undisputed; but Defendants otherwise object on the grounds that this statement violates LR 56.01(c) because the fact is neither material nor disputed.

105.    On May 13, 2022, Guidepost interviewed Jane Doe and her husband for an ***eighth*** time. (Ex. 16, Guidepost Response Interrogatory No. 2).

**RESPONSE:** Disputed. On May 13, 2022, Guidepost interviewed Jane Doe and her husband *together* for the third time. The May 13, 2022 interview was the eighth time Guidepost

investigators had collectively interviewed Jane Doe and her husband, either Jane Doe, individually, the husband individually, or Jane Doe and her husband together. (Exhibit 16, Guidepost Response Interrogatory No. 2.) Defendants otherwise object because Plaintiff has mischaracterized Ex. 16. Defendants further object to this statement on the grounds that it does not comply with LR 56.01(c)(3) in that the statement (as corrected) is not material.

106.    On May 13, 2022, at 1:30PM Mr. Holske emailed Ms. Wood, Ms. Tongring and Ms. Kilpatrick about Jane Doe's husband's notes, stating that Jane Doe's husband wondered ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████.

**RESPONSE:** Objection. This statement is not supported by the cited exhibit. Exhibit 44 is a document entitled "Constitution – SBC.net.".

107.    On May 13, 2022, at 2:35pm, Mr. Holske texted Mrs. Kilpatrick, ███████████ ████████████████████████████████████████████████████████████ █████████████.

**RESPONSE:** Undisputed that statement #107 accurately quotes a portion of Exhibit 90; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

108.    On May 12, 2022 at 4:55PM, Julie Meyers Wood sent a zoom invitation to Joshua Wester, a staff member with Ed Litton, for a second review by the Committee on Cooperation of the Executive Committee. (Ex. 4, EC 30(b)(6) Dep. 2185:17-18).

**RESPONSE:** Undisputed that statement #108 accurately references Ex. 4 and the EC 30(b)(6) deposition; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

109. On May 13, 2022, at 5pm Ms. Wood held a zoom call for the Committee on Cooperation of the Executive Committee to review the report. (Exhibit 62) (Ex. 6, Guidepost 30(b)(6) Dep 145:5-11).

**RESPONSE:** Undisputed that statement #109 accurately references Ex. 62 and the Guidepost 30(b)(6) deposition; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

110. On May 13, 2022, during this zoom call, the Committee on Cooperation of the Executive Committee reviewed, for the first time, the portion of the Report relating to Pastor Johnny. (Ex. 3, Wood Dep. 428:15-430:4).

**RESPONSE:** Undisputed that statement #110 accurately references Ex. 3 and the deposition Julie Myers Wood; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

111. On May 13, 2022, the Committee on Cooperation of the Executive Committee reviewed, for the first time, the only new allegation in the final report, that against Pastor Johnny. (Ex. 5, Barber Dep. 204:24-205:3).

**RESPONSE:** Undisputed that statement #111 accurately references Ex. 5 and the deposition of Bart Barber; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

112. Just one day "after [Guidepost's] one and only interview of Pastor Johnny Hunt pertaining to the [Doe] allegations … [Guidepost] included him in the draft that was given to the Committee on Cooperation." (Ex. 6, Guidepost 30(b)(6) Dep 152:14-19).

**RESPONSE:** Defendants object to statement #112 on the grounds that this statement does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed. To the extent a response is required, for the purpose of ruling on the summary judgment motion only, the statement that Guidepost showed factual portions of the Report that contained reference to Plaintiff in a confidential zoom call with the Committee on Cooperation on May 13, 2024 is undisputed.

113. On May 13, 2022 at 7:56pm, Ms. Tongring emailed Mr. Holske, Ms. Kilpatrick and Ms. Wood stating ████████████████████████████████████████████ ████████████████████████████████████████████████.

**RESPONSE:** Undisputed that statement #113 accurately quotes a portion of Exhibit 90; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

114. On May 13, 2022, at 9:10PM, Ms. Bischoff sent a ███████████████████████ ████████ to Ms. Wood and Ms. Tongring. (Ex. 91).

**RESPONSE:** Defendants object to statement #114 on the grounds that this statement does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed. To the extent a response is required, for the purpose of ruling on the summary judgment motion only, the statement is undisputed.

115.    On May 14, 2022, Tongring emailed Wood "We need more on some parts particularly the hard drive." (Ex. 92).

**RESPONSE:** Undisputed that statement #115 accurately quotes a portion of Exhibit 92; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

116.    On May 17, 2022, at 3:59pm, Sunny Lee sent a Task Force edit to Ms. Kilpatrick and Mr. Holske. (Ex. 47).

**RESPONSE:** Defendants object to statement #116 on the grounds that this statement does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed. To the extent a response is required, for the purpose of ruling on the summary judgment motion only, the statement is undisputed.

117.    On May 19, 2022, Guidepost interviewed Jane Doe for a ***ninth*** time. (Ex. 16, Guidepost Response Interrogatory No. 2).

**RESPONSE:** Disputed. On May 19, 2022, Guidepost interviewed Jane Doe, individually, for the fourth time. The May 19, 2022 interview was the ninth time Guidepost investigators had collectively interviewed Jane Doe and her husband, either Jane Doe, individually, the husband

Case 3:23-cv-00243   Document 181-6   Filed 03/12/25   Page 44 of 75   PageID #: 15367

individually, or Jane Doe and her husband together. (Exhibit 16, Guidepost Response Interrogatory No. 2.) Defendants otherwise object because Plaintiff has mischaracterized Ex. 16. Defendants further object to this statement on the grounds that it does not comply with LR 56.01(c)(3) in that the statement (as corrected) is not material.

## VIII.    The COC and the Task Force Reviewed and Provided Edits and Comments on the Report

118.    The Committee on Cooperation of the Executive Committee was appointed by SBC President Ed Litton and Rolland Slade, chairman of the Executive Committee. (Ex. 4, EC 30(b)(6) Dep. 148:11-15).

**RESPONSE:** Undisputed that statement #118 accurately recites the appointment of the Committee on Cooperation, Ex. 4 and the EC 30(b)(6) deposition; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

119.    The Committee on Cooperation of the Executive Committee was serving and acting on behalf of the SBC to carry out the will of the messengers. (Ex. 5, Barber Dep. 14:11-22).

**RESPONSE:** Undisputed that statement #119 accurately references Ex. 5 and the deposition of Bart Barber; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

120.    The Committee on Cooperation of the Executive Committee "was created as a means of assuring the investigation into the EC's handling of sexual abuse is able to proceed as

planned and that EC trustees are represented throughout the process," and "***represents [the Executive Committee] in the process***." (Ex. 45) (emphasis added).

**RESPONSE:** Undisputed that statement #120 accurately references Ex. 45; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

121.     The Committee on Cooperation was a way for the Executive Committee to have an official relationship with Guidepost Solutions while maintaining the independence of Guidepost. (Ex. 80).

**RESPONSE:** Defendants object on the ground that this statement does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.  To the extent a response is required, for purpose of ruling on the summary judgment motion only, the statement is undisputed.

122.     The Committee on Cooperation of the Executive Committee consisted of two members that had been appointed by the Executive Committee, the SBC president (an ex-officio member of the Executive Committee), and two were appointed by the Sexual Abuse Task force of the SBC. (Ex. 4, EC 30(b)(6) Dep. 2297:15-25) (Doc. 1-1, at Page ID# 22).

**RESPONSE:** Undisputed that statement #122 accurately recites the membership make-up of the Committee on Cooperation, Ex. 4 and the EC 30(b)(6) deposition; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

Case 3:23-cv-00478   Document 278-1   Filed 08/14/25   Page 46 of 75 PageID 15369

123. All five members of the Committee on Cooperation of the Executive Committee were members of the SBC Executive Committee. (Ex. 4, EC 30(b)(6) Dep. 2298:8-11).

**RESPONSE:** Undisputed that statement #123 accurately recites the membership make-up of the Committee on Cooperation, Ex. 4 and the EC 30(b)(6) deposition; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.


124. The Engagement Letter stated that "[f]or the sole purpose of ensuring the factual accuracy of its report, Guidepost will provide a draft of any factual information contained in the report to the Task Force and the Committee on Cooperation 35 days prior to submitting it to the Task Force. The Committee on Cooperation may review the draft with Guidepost together with any supporting documents and/or information, in order to confirm the accuracy of the factual information presented in, relied upon, or related to matters and/or issues contained in the draft Report. ***Guidepost shall allow the Committee on Cooperation five (5) calendar days to review and dispute the factual information presented in, or relied upon, and/or related conclusions reached in the draft Report***, and to provide supplemental documents and/or information to Guidepost." (Doc 1-1, at Page ID #24) (emphasis added).

**RESPONSE:** Undisputed that statement #124 accurately recites from the Guidepost Engagement Letter; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.


125. The Committee on Cooperation of the Executive Committee provided comments on the Johnny Hunt portion of the Report. (Ex. 71) (Ex. 72).

**RESPONSE:** Disputed, the record does not support the assertion that Committee on Cooperation provided comments on the Johnny Hunt portion of the report; but Defendants also object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is not material.

126.    The Sexual Abuse Task Force was a special committee that was appointed by the SBC President (Ex. 4, EC 30(b)(6) Dep. 78:1-6).

**RESPONSE:** Defendants object on the ground that this statement does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed. To the extent a response is required, for purpose of ruling on the summary judgment motion only, the statement is undisputed.

127.    The Sexual Abuse Task force of the SBC could review and edit the report. (Ex. 23).

**RESPONSE:** Disputed, the record does not support the assertion that the Sexual Abuse Task Force could substantively edit the report; but Defendants also object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is not material.

128.    The Task Force provided edits on the Johnny Hunt portion of the Report. (Ex. 47-48).

**RESPONSE:** Disputed, the record does not support the assertion that the Sexual Abuse Task Force substantively edited the report, including the portion related to Johnny Hunt; but the Defendants also object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is not material.

## IX.    **The Context of the Final Report**

129.    The Report's cover page states "WARNING: This report includes information and descriptions related to sexual assault." (Doc. 1-2, at page ID# 34).

**RESPONSE:** Undisputed that statement #129 accurately quotes the cover page of the Report; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

130.    The first sentence in the Executive Summary is "[f]or almost two decades, survivors of abuse and other concerned Southern Baptists have been contacting the Southern Baptist Convention ("SBC") Executive Committee ("EC") to report child molesters and other abusers who were in the pulpit or employed as church staff." (Doc. 1-2, at page ID# 36).

**RESPONSE:** Undisputed that statement #130 accurately quotes the first sentence of the Report's Executive Summary section; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

131.    The Executive Summary states "[i]n service of this goal, survivors and others who reported abuse were ignored, disbelieved, or met with the constant refrain that the SBC could take no action due to its polity regarding church autonomy – even if it meant that convicted molesters continued in ministry with no notice or warning to their current church or congregation." (Doc. 1-2, at page ID# 36).

**RESPONSE:** Undisputed that statement #131 accurately quotes a portion of the Executive Summary section of the Report; but Defendants otherwise object to this statement on the ground

that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

132.    The Executive Summary states that an EC Vice President acknowledged sending "news reports of Baptist ministers who are arrested for sexual abuse…." (Doc. 1-2, at page ID# 38).

**RESPONSE:** Undisputed that statement #132 accurately quotes a partial sentence from the Executive Summary section of the Report; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

133.    The Executive Summary includes a bullet point list, referencing "sexual abuse of a child," a "pastor at Prestonwood Baptist church, allegedly allow[ing] an accused abuser of young boys to be dismissed quietly," a student who was told not to report a rape, a defendant in a civil lawsuit who was accused of repeatedly abusing the Plaintiff starting when he was 14 years old, and a "a gymnastics coach convicted of multiple counts of sexual assault against a minor." (Doc. 1-2, page ID# 40).

**RESPONSE:** Undisputed that statement #133 accurately quotes selected portions of a bullet point list from the Executive Summary section of the Report; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

134.    The first name mentioned in the report is Johnny Hunt. (Doc. 1-2, page ID# 37).

Case 3:23-cv-00478   Document 78-1   Filed 08/14/23   Page 49 of 75 PageID 2623
Case 3:23-cv-00243   Document 74-1   Filed 08/14/23   Page 50 of 75 PageID #
15373

**RESPONSE:** Undisputed; but Defendants otherwise object to this statement on the grounds that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

135. The Report defines the term survivor as "those persons who actually suffered at the hands of SBC clergy or SBC church staff or volunteers…" (Doc. 1-2, page ID #38).

**RESPONSE:** Defendants object to statement #135 on the grounds that this statement does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed. To the extent a response is required, for the purpose of ruling on the summary judgment motion only, the statement is undisputed.

136. Guidepost referred to Jane Doe as 'survivor' throughout the report. (Doc. 1-2, page ID# 182-194) (Ex. 1, Holske Dep. 238:13-17).

**RESPONSE:** Defendants object to statement #136 on the grounds that this statement does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed. To the extent a response is required, for the purpose of ruling on the summary judgment motion only, the statement is undisputed.

137. Guidepost wanted "to convey that [Jane Doe] survived a sexual assault." (Ex. 1, Holske Dep. 238:18-239:1).

**RESPONSE:** Defendants object to statement #137 on the grounds that it mischaracterizes a quotation from the transcript of the Holske Deposition and should be stricken pursuant to Fed. R. Civ. P. 56(c) accordingly. The proper citation is: "for your part in drafting this report and your

50

contributions, you [Russell Holske] were attempting to convey that [Jane Doe] survived a sexual assault; is that right? A: That's correct."

138.    The Report stated "[d]uring our investigation, an SBC pastor and his wife came forward to report that SBC President Johnny Hunt (2008-2010) had ***sexually assaulted*** the wife on July 25, 2010." (Doc 1-2, at page ID # 37) (emphasis added).

**RESPONSE:** Undisputed that statement #138 accurately quotes a portion of the Report. Defendants further assert that this is not a proper statement of a "disputed" fact for purposes of Local Rule 56.01(c).

## X.    The Final Report Differs from Jane Doe's Statements to Guidepost

139.    Jane Doe wrote ████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████. Guidepost omitted this fact entirely from the published Report. (Doc 1-2, at page ID # 182-194).

**RESPONSE:** Undisputed that statement #139 accurately quotes from the exhibit. Defendants object to statement #139 because it omits mention of Jane Doe's testimony that ██████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████

140.    Jane Doe wrote ███████████████████████████████████████████████."

Guidepost omitted Jane Doe's consent and wrote "Dr. Hunt slid closer while Survivor was telling

a story of the stress that she and her husband were under at the church." (Ex. 27) (Doc 1-2, at page

ID # 183).

**RESPONSE:** Undisputed that statement #140 accurately quotes the Report. Defendants further

respond that Jane Doe testified that the Report was accurate as stated, and she did not invite

Plaintiff Johnny Hunt to come closer to her. (Jane Doe Dep. at 42:20-43:1.)


141.    Jane Doe described the scene of the encounter as follows: Pastor Johnny was sitting

on the right side of the couch. Doe was sitting on the left. Leading up to the encounter, Doe wrote

that she removed her necklace and placed it on the end table on Pastor Johnny's side of the couch.

Guidepost omitted Jane Doe leaning over Pastor Johnny entirely. (Ex. 27) (Doc. 1-2, at page ID #

182-194).

**RESPONSE:** Defendants object to statement #141 on the grounds that Exhibit 27 does not

support the description offered by Plaintiff and respectfully refer the Court to Jane Doe's testimony

for an accurate description of the events. (Jane Doe Dep. 188:2-15; 189:13-16.) The exhibit does

not permit an inference that Jane Doe leaned over Hunt in a sexually suggestive posture or signified

consent. To the extent a response is required, for the purpose of ruling on the summary judgment

motion only, the statement is undisputed.


142.    Guidepost investigators did not ask Jane Doe any questions about her description

of removing the necklace. (Ex. 1, Holske Dep. 285:4-5).

**RESPONSE:** Disputed. Kilpatrick testified Jane Doe told them about the necklace and that she placed it on an end table. (Kilpatrick Dep. at 191:5-10.) See also Jane Doe testimony referenced in response to statement #141.

143. Jane Doe wrote that 

interview notes. Guidepost altered Doe's allegations to remove any reciprocation, writing "Survivor did not reciprocate, but rater stood eyes open and very stiff, hoping he would just stop and leave." (Ex. 27) (Ex. 33) ("She went with it...") (Doc 1-2, at page ID # 184).

**RESPONSE:** Undisputed that Plaintiff accurately quotes from the Report. Defendants further respond that Jane Doe testified in her deposition that she did not reciprocate Hunt's advances: "Q: And you quote, "French kissed him back," unquote; right? A: No." (Jane Doe Dep at 188:17-22.)

144. Jane Doe wrote that after the encounter,

Guidepost altered Doe's allegations to remove any reciprocation, writing "Hunt stated that he would like to have sex with her three times a day. Survivor could not believe what she was hearing and could not get back inside her own condo quickly enough." (Ex. 27) (Doc 1-2, at page ID # 185).

Case 3:23-cv-00478 Document 271-63 Filed 08/14/23 Page 54 of 75 PageID 2627
15377

**RESPONSE:** Disputed that Guidepost altered Doe's allegations to remove any reciprocation. Plaintiff's statement is objectionable in that it violates the rule of completeness in an attempt to create an issue of fact on the issue of reciprocation. Exhibit 27 further states: ███████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████████████ Jane Doe testified that she did not want to have sex with Hunt. (Jane Doe Dep. at 46:25:47:3)

145. ██████████████████████████████████████████████ ███████████████████████████████████████ Guidepost omitted this fact entirely from the published Report. (Ex. 27) (Doc 1-2, at page ID # 182-194).

**RESPONSE:** For the purpose of ruling on the summary judgment motion only, the statement is undisputed

146. The day after the alleged assault, Jane Doe wrote ███████████████████ ██████████████████ Guidepost omitted this fact entirely from the published Report. (Ex. 27) (Doc 1-2, at page ID # 182-194).

**RESPONSE:** Undisputed, but objected to on the grounds that it is immaterial.

147. Jane Doe wrote ███████████████████████████████ ██████████████████████████████ Guidepost altered Doe's allegation, writing "Dr. Hunt asked for Pastor's forgiveness, and Pastor said he agreed." (Ex. 27) (Doc 1-2, at page ID # 186).

**RESPONSE:**  Undisputed that statement #147 accurately quotes the quoted portions of Exhibit 27 and the Report. Defendants object to statement #147 as it is immaterial as both versions signify that Pastor forgave Hunt.

148.    On May 30, 2022 at 9:06am Jane Doe's emailed Holske and Kilpatrick, ███████ ████████████████████████████████████████████████ (Ex. 40).

**RESPONSE:**  Objection.  Statement #148 violates the rule of completeness and misleads the Court in its description of Exhibit 40. As such, it should be stricken pursuant to Fed. R. Civ. P. 56(c). The full statement is as follows: ██████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████    Defendants do not dispute #148 as corrected above but do object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that it is not material.

## XI.    An Inappropriate Encounter Between Two Consenting Adults

149.    ██████████████████████████████████████████████

████████.

**RESPONSE:**  Defendants object to statement #149 on the grounds that this statement does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed. To the extent a response is required, for the purpose of ruling on the summary judgment motion only, the statement is undisputed.

150.    After the Encounter, Jane Doe and her husband attended between eleven and nineteen counseling sessions with Mr. Blankenship. Each session was roughly an hour long. (Ex. 7, Blankenship Dep. 45:3-8).

**RESPONSE:** Defendants object to statement #150 on the grounds that this statement does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed. For the purpose of ruling on the summary judgment motion only, the statement is undisputed.


151.    Mr. Blankenship told investigators that he believed the encounter was consensual. (Doc. 1-2, at Page ID# 188).

**RESPONSE:** Undisputed.


152.    Ms. Kilpatrick testified that Jane Doe inviting Pastor Johnny onto her balcony could be evidence of consent. (Ex. 2, Kilpatrick Dep. 189:22-190:7).

**RESPONSE:** Defendants object to statement #152 on the grounds that it improperly quotes the cited deposition testimony, in which Ms. Kilpatrick testified that some details in Jane Doe's account, including an invitation to the balcony, are "details that some could argue may be represented or showed or could be used as evidence of consent." (Exhibit 2, Kilpatrick Dep. 189:22-190:7). To the extent a response is required, for the purpose of ruling on the summary judgment motion only, the statement (as corrected) is undisputed.


153.    Ms. Kilpatrick testified that Jane Doe's continuing the conversation with Pastor Johnny could be evidence of consent. (Ex. 2, Kilpatrick Dep. 190:12-14).

**RESPONSE:** Defendants object to statement #153 on the grounds that it improperly quotes the cited deposition testimony, in which Ms. Kilpatrick testified that some details in Jane Doe's account, including Jane Doe's "continuing with conversation with [Hunt], are "details that some could argue may be represented or showed or could be used as evidence of consent." (Exhibit 2, Kilpatrick Dep. 190:12-14). To the extent a response is required, for the purpose of ruling on the summary judgment motion only, the statement (as corrected) is undisputed.

154. Ms. Kilpatrick testified that Jane Doe consented to Pastor Johnny sliding closer on the couch. (Ex. 2, Kilpatrick Dep. 197:10-13).

**RESPONSE:** Undisputed.

155. Ms. Kilpatrick testified that Jane Doe unlocked the door and let Pastor Johnny into her condominium. (Ex. 2, Kilpatrick Dep. 197:6-9).

**RESPONSE:** Undisputed.

156. Ms. Kilpatrick testified that Jane Doe's request to join with Pastor Johnny on a run, the day after the encounter, could be evidence of consent. (Ex. 2, Kilpatrick Dep. 199:22-200:10).

**RESPONSE:** Defendants object to statement #156 on the grounds that it improperly quotes the cited deposition testimony, in which Ms. Kilpatrick testified "[t]hat might be evidence that someone would use to argue that it's consent." (Exhibit 2, Kilpatrick Dep. 199:22-200:10). To the extent a response is required, for the purpose of ruling on the summary judgment motion only, the statement (as corrected) is undisputed.

157. Ms. Kilpatrick testified that Jane Doe's French kissing Pastor Johnny back could be evidence of consent. (Ex. 2, Kilpatrick Dep. 200:11-201:1).

**RESPONSE:** Defendants object to statement #157 on the grounds that it deceptively cites the deposition testimony, in which Ms. Kilpatrick testified: "I think it would be potential evidence that might indicate consent, but it could also be evidence that there was not consent and that the person who was being assaulted was trying to get it over with quickly and hopefully things would end sooner rather than later." (Kilpatrick Dep. at 200:18-201:1.) To the extent a response is required, for the purpose of ruling on the summary judgment motion only, the statement (as corrected) is undisputed.

158. Jane Doe's husband's journal included an email from Mr. Blankenship to the husband stating ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████.

**RESPONSE:** Objection. This statement is not supported by the cited exhibit. Exhibit 9 is a copy of the deposition transcript of Johnny Hunt Ministries.

## XII. Defendants Published the Report

159. The Proposal stated that one of the key principles of Guidepost's work will include ████████████ (Ex. 42) (emphasis added).

**RESPONSE:** Undisputed that statement #159 accurately quotes the Guidepost Proposal; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

58

160. The Proposal stated that ███████████████████████████████
███████████████████████████████████████████████████████████████
████████████████████████ .

**RESPONSE:** Undisputed that statement #160 accurately quotes the Guidepost Proposal; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

161. The Proposal stated that ███████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
████████████████████ .

**RESPONSE:** Undisputed that statement #161 accurately quotes the Guidepost Proposal; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

162. The Proposal stated ███████████████████████████████████
█████████████████████████████████ .

**RESPONSE:** Undisputed that statement #162 accurately quotes the Guidepost Proposal; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

163. The Engagement Letter reiterated that one of the key principles of Guidepost's work will include "Transparency: ***Public*** Report." (Doc 1-1, at Page ID #24) (emphasis added).

**RESPONSE:** Undisputed that statement #163 accurately quotes the Guidepost Engagement Letter; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

164. The Engagement Letter stated that "[a] written report will be ***made public*** in its entirety prior to the 2022 SBC Annual Meeting." (Doc 1-1, at Page ID #24) (emphasis added).

**RESPONSE:** Undisputed that statement #164 accurately quotes the Guidepost Proposal; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

165. Guidepost's lead investigator, Mr. Holske, "knew that the report would be published at the end of [Guidepost's] investigation," and that "was always [his] understanding from the beginning of [his] work that [he] did." (Ex. 1, Holske Dep. 115:1-2; 111:18-112:1).

**RESPONSE:** Undisputed that statement #165 accurately quotes a portion of the deposition transcript. Guidepost further respectfully refer the Court to Guidepost's SOF ¶¶ 44-51, which establish that there is no genuine issue of material fact that the SBC Task Force, and not Guidepost, published the Report. See also Exhibit 12, Guidepost 30(b)(6) Dep. at 145:12-146:1.

166. Guidepost's lead investigator, Ms. Kilpatrick, understood that the Report "was going to be published by Guidepost." (Ex. 2, Kilpatrick Dep. 84:19-85:2)

**RESPONSE:** Undisputed that statement #166 accurately quotes a portion of the deposition transcript. Guidepost further respectfully refers the Court to Guidepost's SOF ¶¶ 44-51, which

establish that there is no genuine issue of material fact that the SBC Task Force, and not Guidepost, published the Report. See also Exhibit 12, Guidepost 30(b)(6) Dep. at 145:12-146:1.

167. Guidepost's CEO, Ms. Wood, "understood that the report would be public," even from the beginning of her work. (Ex. 3, Wood Dep. 163:8-15).

**RESPONSE:** Undisputed that statement #167 accurately quotes a portion of the deposition transcript. Guidepost further respectfully refers the Court to Guidepost's SOF ¶¶ 44-51, which establish that there is no genuine issue of material fact that the SBC Task Force, and not Guidepost, published the Report. See also Exhibit 12, Guidepost 30(b)(6) Dep. at 145:12-146:1.

168. Jonathan Howe testified that as of June 2021, he understood, in his role "at the SBC Executive Committee, that Guidepost was, in fact going to publish its report, once complete." (Ex. 6, EC 30(b)(6) Dep. 104:12-17).

**RESPONSE:** Undisputed that statement #168 accurately quotes the EC 30(b)(6) deposition; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

169. Mr. Howe testified he "saw" the link to the Report "on [Guidepost's] website." (Ex. 6, EC 30(b)(6) Dep. 101:24-102:7).

**RESPONSE:** Undisputed that statement #169 accurately quotes the EC 30(b)(6) deposition; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

170.     Guidepost's website featured a banner, directing users to the Report, "CLICK HERE." (Ex. 64).



**RESPONSE:** Undisputed. Guidepost further respectfully refers the Court to Guidepost's SOF ¶¶ 44-51, which establish that there is no genuine issue of material fact that the SBC Task Force, and not Guidepost, published the Report. See also Exhibit 12, Guidepost 30(b)(6) Dep. at 145:12-146:1; 146:8-147:8, 204:11-206:7; 235:12-236:13; Exhibit 10, Wood Dep. at 201:17- 203:6, 216:4-217:20.).

171.     Mr. Howe testified that Guidepost "had been commissioned by the messengers to publish the report." (Ex. 6, EC 30(b)(6) Dep. 102:21-22).

**RESPONSE:** Undisputed that statement #171 accurately quotes the EC 30(b)(6) deposition; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

62

172.    The Report itself stated that the "culmination of our engagement was the issuance of this public Report." (Ex. 32).

**RESPONSE:** Undisputed that statement #172 accurately quotes the Guidepost Report; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

173.    The SBC Executive Committee "had authorized the publication of this report." (Ex. 6, EC 30(b)(6) Dep. 73:14-17).

**RESPONSE:** Undisputed that statement #173 accurately quotes the EC 30(b)(6) deposition; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

174.    Defendants knew the Report would receive national publicity. (Ex. 6, EC 30(b)(6) Dep. 2333:6-19) (Ex. 2, Kilpatrick Dep. 264:6-22) ("I expected it to be out in the national news.").

**RESPONSE:** Undisputed that statement #174 accurately quotes the EC 30(b)(6) and Kilpatrick depositions; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

## XIII.    Effects on Guidepost

175.    Ms. Tongring was promoted from senior managing director to executive vice president after the Report was published. (Ex. 6, Guidepost 30(b)(6) Dep 220:2-8).

**RESPONSE:** Undisputed.

Case 3:23-cv-00478  Document 241-63  Filed 08/14/23  Page 64 of 75  PageID 15387

176.    Guidepost created a division called the "faith-based practice" after the Report was published. (Ex. 6, Guidepost 30(b)(6) Dep 222:22-223:3; 224:19-225:3).

**RESPONSE:** Defendants object to statement #176 on the grounds that it violates the rule of completeness and omits the surrounding testimony of Guidepost Rule 30(b)(6) witness. Disputed that Guidepost created a new division. Guidepost re-purposed a prior division into a new name called the "faith-based practice." (Ex. 6, Guidepost 30(b)(6) Dep. 222:3-9.)  To the extent a response is required, for the purpose of ruling on the summary judgment motion only, the statement is undisputed as corrected above.

177.    Ms. Kilpatrick was hired as a full-time employee put in charge of the "faith-based practice" after the Report was published. (Ex. 6, Guidepost 30(b)(6) Dep 220:18-20; 222:7).

**RESPONSE:** Undisputed.

178.    To advertise the formation of its "faith-based practice" Guidepost issued a press release. (Ex. 6, Guidepost 30(b)(6) Dep 226:3-13).

**RESPONSE:** Undisputed that Guidepost issued a press release. Guidepost respectfully refers the Court to its response to statement #176.

179.    Guidepost "was supposed to be engaged" by the Abuse Reform and Implementation Task Force to do a ministry check website. (Ex. 6, Guidepost 30(b)(6) Dep 230:10-232:2).

**RESPONSE:** Defendants object to statement #179 on the grounds that it violates the rule of completeness and it otherwise does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed. As such, the statement should be stricken pursuant to Fed. R. Civ.

P. 56(c). Guidepost's full statement is as follows: "We were supposed to be engaged. They – they had said to us that we were – to my understanding, we were supposed to be engaged and then they decided to go with somebody else, but we were never – we never, to my knowledge, signed an engagement letter, so we were never formally engaged. When I said that I knew we were engaged, I was speaking of the hotline. (Guidepost 30(b)(6) Dep. at 231:17-232:2.) To the extent a response is required, for the purpose of ruling on the summary judgment motion only, the statement is undisputed as corrected above.

XIV.  **Jane Doe's Husband Continues to Ask for Favors, Including the Destruction of Documents**

180.   On July 20, 2022, Jane Doe's husband texted Holske, asking ███████████████
████████████████████████████████████████████████████████████████
██████ .

**RESPONSE:** Undisputed that statement #180 accurately quotes a July 20, 2022 text to Mr. Holske. Guidepost responds further and refers the Court to Mr. Holske's deposition testimony when asked about this text, he stated, ████████████████████████████████████
███████████████████████████████ (Ex. 1, Holske Dep. 348:2-4.)

181.   ████████████████████████████████████████████████████
████████████████████████████████).

**RESPONSE:** Undisputed that statement #181 accurately quotes a text from Jane Doe's husband; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

## XV.    Tweet by SBC President, Bart Barber

182.     Bart Barber testified that "one of the bases on which [he] campaigned was…on the sexual abuse issue." (Ex. 5, Barber Dep. 48:12-14).

**RESPONSE:** Undisputed that statement #182 accurately quotes Ex. 5 and the deposition of Bart Barber; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

183.     Mr. Barber tweeted that he would share a timeline of actions he had taken with regard to the sexual abuse crisis in the SBC as part of his campaign. (Exs. 54-57).

**RESPONSE:** Undisputed that statement #183 accurately references Ex. 54 - 57; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

184.     In 2022, Mr. Barber was elected as President of the SBC. (Ex. 5, Barber Dep. 11:16-17).

**RESPONSE:**  Defendants object on the ground that this statement does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed. To the extent a response is required, for purpose of ruling on the summary judgment motion only, the statement is undisputed.

185.     In October of 2022, Mr. Barber participated in a 60 Minutes interview in which he said "addressing the sex abuse scandal…is his number one priority." (Ex. 58).

**RESPONSE:** Undisputed that statement #185 accurately quotes Ex. 58; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

186. On November 30, 2022, Mr. Barber, released a statement on SBC letterhead, stating he would "permanently 'defrock' Johnny Hunt if [he] had the authority to do so." (Ex. 59).

**RESPONSE:** Undisputed that statement #186 accurately quotes Ex. 59; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

187. The Baptist Press covered Mr. Barber's statement "because he was SBC president at the time." (Ex. 4, EC 30(b)(6)67:10-16).

**RESPONSE:** Undisputed that statement #187 accurately quotes the EC 30(b)(6) deposition; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

188. On December 5, 2022, Mr. Barber, president of the SBC, tweeted "1. Hunt was the subject of a third-party investigation in response to allegations that he sexually assaulted a woman half his age in ways that would, to my knowledge, constitute a felony in any jurisdiction in the U.S." (Ex. 51).

**RESPONSE:** Undisputed that statement #188 accurately quotes Ex. 51; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

Case 3:23-cv-00243 Document 278-1 Filed 08/14/23 Page 68 of 75 PageID 15391

189.     Mr. Barber, as president of the SBC, provides updates to the Southern Baptist Convention on his twitter account. (Ex. 53).

**RESPONSE:** Defendants object on the ground that this statement does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.  To the extent a response is required, for purpose of ruling on the summary judgment motion only, the statement is undisputed.

### XVI.     SBC Continues to Defame Pastor Johnny

190.     On June 8, 2022, the SBC defined "sexual abuse" as "any sexual act that could result in criminal charges or civil liability in the jurisdiction where it occurred." (Ex. 49).

**RESPONSE:** Undisputed that statement #190 accurately quotes Ex. 49; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

191.     The Credentials Committee is a Committee of the Executive Committee. (Doc 1-2, at Page ID# 65).

**RESPONSE:** Disputed, the Credentials Committee is a standing committee of the SBC; but Defendants also object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is not material.

192.     The Chair of the Executive Committee and three members nominated by the Executive Committee, among others are members of the Credentials Committee. (Ex. 79).

**RESPONSE:** Undisputed that statement #192 accurately recites the partial make-up of the Credentials Committee; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

193.    On August 31, 2022, Plaintiff's Counsel wrote a letter to the SBC and the EC notifying both entities that Jane Doe's allegations against Pastor Johnny do not amount to a sexual crime under Florida Law. (Ex. 60).

**RESPONSE:** Undisputed that statement #193 accurately quotes Ex. 60; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

194.    On February 1, 2023, the Credentials Committee sent a letter to Highland Park Church stating "please help our committee understand how your church's recent decision to platform a credibly accused individual can be considered to be consistent with the Convention's beliefs regarding sexual abuse."  (Ex. 43).

**RESPONSE:** Undisputed that statement #194 accurately quotes Ex. 43; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

195.    On February 1, 2023, the Credentials Committee sent a letter to New Season Church stating, "please help our committee understand how your church's recent decision to

promote the "Johnny Hunt Men's Conference" can be considered to be consistent with the Convention's beliefs regarding sexual abuse." (Ex. 43).

**RESPONSE:** Undisputed that statement #195 accurately quotes Ex. 43; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

### XVII.   Jane Doe's Story Continues to Change at Deposition

196.    At her deposition, Jane Doe denied that "part of the reason [she] came forward to Guidepost was financial." (Ex. 10, Doe Dep. 122:1-3).

**RESPONSE:** Undisputed that statement #196 accurately quotes the deposition of Jane Doe; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

197.    ██████████████████████████████████████████████████
████████████.

**RESPONSE:** Undisputed that statement #197 accurately quotes the deposition of Jane Doe; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.

198.    ██████████████████████████████████████████████████
██████████████████████████████████████████████.

**RESPONSE:** Undisputed that statement #198 accurately quotes the deposition of Jane Doe; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.


199. ███████████████████████████████████████████
███████████████████████████████.

**RESPONSE:** Undisputed that statement #199 accurately quotes the deposition of Jane Doe; but Defendants otherwise object to this statement on the ground that it does not comply with LR 56.01(c)(3) in that the statement is neither material nor genuinely disputed.


Respectfully submitted,

*s/ John R. Jacobson*
John R. Jacobson, BPR #14365
Katharine R. Klein, BPR #19336
Riley & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
(615) 320-3737 *Facsimile*
jjacobson@rjfirm.com
kklein@rjfirm.com

Steven G. Mintz (*admitted pro hac vice*)
Terence W. McCormick (*admitted pro hac vice*)
Scott Klein (*admitted pro hac vice*)
Alex Otchy (*admitted pro hac vice*)
Adam Brody (*admitted pro hac vice*)
Mintz & Gold LLP
600 Third Avenue
25th Floor
New York, NY 10016
Telephone: (212) 696-4848
mintz@mintzandgold.com
mccormick@mintzandgold.com
klein@mintzandgold.com
otchy@mintzandgold.com
brody@mintzandgold.com

*Counsel for Defendant Guidepost Solutions LLC*


*s/ Matt C. Pietsch w/permission*
L. Gino Marchetti, Jr.
Matt C. Pietsch
TAYLOR, PIGUE, MARCHETTI & BLAIR, PLLC
2908 Poston Avenue
Nashville, TN 37203
Telephone: (615) 320-3225
gmarchetti@tpmblaw.com
matt@tpmblaw.com

*Counsel for the Southern Baptist Convention*


*s/ Scarlett Singleton Nokes w/permission*
E. Todd Presnell
Scarlett Singleton Nokes
R. Brandon Bundren
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
Telephone: (615) 244-2582
tpresnell@bradley.com
snokes@bradley.com
bbundren@bradley.com

Gene Ross Besen
BRADLEY ARANT BOULT CUMMINGS LLP
1445 Ross Avenue
Suite 3600
Dallas, TX 75202
Telephone: (214) 257-9758
gbesen@bradley.com

Thomas J. Hurney, Jr.
Gretchen M. Callas
JACKSON KELLY PLLC
500 Lee Street East
Suite 1600
P.O. Box 553
Charleston, WV 25322
Telephone: (304) 340-1000
thurney@jacksonkelly.com
gcallas@jacksonkelly.com

*Counsel for the Executive Committee of the Southern Baptist Convention*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served through the Court's electronic filing system on the following:

| | |
|---|---|
| Todd G. Cole<br>Andrew Goldstein.<br>COLE LAW GROUP, P.C.<br>1648 Westgate Circle, Suite 301<br>Brentwood, TN 37027<br>Telephone: (615) 326-9059<br>tcole@colelawgrouppc.com<br>agoldstein@colelawgrouppc.com | Thomas J. Hurney, Jr.<br>Gretchen M. Callas<br>JACKSON KELLY PLLC<br>500 Lee Street East<br>Suite 1600<br>P.O. Box 553<br>Charleston, WV 25322<br>Telephone: (304) 340-1000<br>thurney@jacksonkelly.com<br>gcallas@jacksonkelly.com |
| Robert D. MacGill<br>Patrick J. Sanders<br>MACGILL PC<br>156 E. Market St.<br>Suite 1200<br>Indianapolis, IN 46204<br>Telephone: (317) 721-1253<br>robert.macgill@macgilllaw.com<br>patrick.sanders@macgilllaw.com | E. Todd Presnell<br>Scarlett Singleton Nokes<br>R. Brandon Bundren<br>BRADLEY ARANT BOULT CUMMINGS LLP<br>1600 Division Street, Suite 700<br>Nashville, Tennessee 37203<br>Telephone: (615) 244-2582<br>tpresnell@bradley.com<br>snokes@bradley.com<br>bbundren@bradley.com |
| *Counsel for Plaintiff* | |
| L. Gino Marchetti, Jr.<br>Matt C. Pietsch<br>TAYLOR, PIGUE, MARCHETTI & BLAIR, PLLC<br>2908 Poston Avenue<br>Nashville, TN 37203<br>Telephone: (615) 320-3225<br>gmarchetti@tpmblaw.com<br>matt@tpmblaw.com | Gene Ross Besen<br>BRADLEY ARANT BOULT CUMMINGS LLP<br>1445 Ross Avenue<br>Suite 3600<br>Dallas, TX 75202<br>Telephone: (214) 257-9758<br>gbesen@bradley.com |
| *Counsel for the Southern Baptist Convention* | *Counsel for the Executive Committee of the Southern Baptist Convention* |

on this 14th day of August, 2024.

*s/John R. Jacobson*