THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **MICHAEL DAVID SILLS** and **MARY SILLS**, | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | CASE NO. 3:23-cv-00478 |
| v. | ) ) | JUDGE WILLIAM L. CAMPBELL, JR. |
| | ) ) | Magistrate Judge Frensley |
| **SOUTHERN BAPTIST CONVENTION,** *et al.* | ) ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

**REPLY IN FURTHER SUPPORT OF THE EXECUTIVE COMMITTEE OF THE SOUTHERN BAPTIST CONVENTION'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF DAVID SILLS**

The Executive Committee of the Southern Baptist Convention ("ECSBC") respectfully submits this Reply in Further Support of its Motion for Summary Judgment With Respect to Plaintiff David Sills ("Sills").

**ARGUMENT**

**I. SILLS' RESPONSE RELIES ON INADMISSIBLE EVIDENCE IN VIOLATION OF RULE 56(C)(2).**

Sills' Response attaches and cites to materials that cannot be presented in a form admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2) (2025) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.") Sills repeatedly cites to an April 2020 mediation statement prepared by counsel for the ECSBC related to the claims of Jennifer Lyell [Docs. 413-24 and 413-20]; two settlement agreements between the ECSBC and Jennifer Lyell [Docs. 413-21 and 413-22]; a settlement demand letter sent by Jennifer Lyell to the ECSBC [Doc. 413-29]; settlement-related communications between

1

Jennifer Lyell and representatives of the ECSBC and/or its insurer [Docs. 413-35, 413-50, and 413-67]; and internal settlement-related communications [Doc. 411-3 at pp.2-13 and 413-74]. These documents are not admissible under Rule 408 of the Federal Rules of Evidence. *See* Fed. R. Evid. 408(a) (2025) (prohibiting a party from utilizing settlements, settlement offers, and statements made during settlement negotiations to prove the validity of a claim or for impeachment purposes). Sills cannot use or rely on these inadmissible materials to oppose summary judgment.

Additionally, during discovery Sills withheld communications with his counselors based upon a pastoral privilege. [Ex. A, Pls' Privilege Log]. Yet, Sills now wants to rely upon his pastoral counseling to support his claim that he suffered severe emotional distress. [Doc. 421 at p.22]. Having shielded this information from the defendants throughout discovery based upon privilege, Sills cannot make use of it as an evidentiary sword in opposition to a summary judgment motion. *See, e.g.*, *In re United Shore Fin. Servs., LLC*, No. 17–2290, 2018 WL 2283893, at *2 (6th Cir. Jan. 3, 2018) ("Litigants cannot hide behind the privilege if they are relying on privileged communications to make their case or, more simply, cannot use the privilege as 'a shield and a sword.'") (quoting *In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005)).

## II. THE SAVINGS STATUTE DOES NOT APPLY TO ACTIONS FILED OUTSIDE OF TENNESSEE.

In a published opinion, the Sixth Circuit held the Tennessee savings statute only applies when the first action is commenced in Tennessee. *See Graham v. Ferguson*, 593 F.2d 764, 766 (6th Cir. 1979) (per curiam). Yet, without citation, Sills claims the law is the complete opposite: "[U]nder Tennessee's 'savings statute,' if the plaintiff had previously filed an action in another jurisdiction that was dismissed for reasons other than the merits, the statute of limitations is tolled until one year following the dismissal." [Doc. 421 at p.7]. Sills is just wrong and cannot avoid

the binding precedent on this issue. Sills' earlier filed Alabama action does not trigger the savings statute. Claims and damages based upon any statements/actions prior to May 11, 2022 are barred.

## III. SILLS' DEFAMATION CLAIM IN COUNT I OF THE COMPLAINT FAILS.

### A. Sills Fails to Demonstrate Reputational Harm and Resulting Damages From Any Statements Within the One-Year Limitations Period.

The law of defamation seeks to remedy injury to one's reputation and character. *See Quality Auto Parts Co., Inc. v. Bluff City Buick Co., Inc.*, 876 S.W.2d 818, 820 (Tenn. 1994). "[T]o establish any type of defamation claim, the plaintiff must show that the defamation resulted in injury to his character and reputation." *Ingram v. Tennessee Department of Health*, No. 3:17-cv-01565, 2018 WL 11586203, at *10 (M.D. Tenn. Feb. 6, 2018). This means "a plaintiff in a libel action must be able to show that his or her standing in the community and his public reputation for character has been injured by the inaccurate statement and, further, must have suffered real or actual damages due to that loss of standing or reputation." *Davis v. The Tennessean*, 83 S.W.3d 125, 130 (Tenn. Ct. App. 2001); *see also Service Jewelry Repair, Inc. v. Cumulus Broadcasting, LLC*, 145 F. Supp. 3d 737, 749 (M.D. Tenn. 2019) (defamation plaintiff must show injury to reputation "'and that as a result she has suffered real or actual damages due to that loss of standing or reputation'") (quoting *McLeay v. Huddleston*, No. M2005–02118–COA–R3–CV, 2006 WL 2855164, at *9 (Tenn. Ct. App. Oct. 6, 2006)). Here, Sills must demonstrate injury to his reputation related to statements made after May 11, 2022 and resulting damages; anything prior is barred by the statute of limitations.

In response to the fact that his reputation had long been harmed by public allegations of sex abuse going back to 2019, Sills argues that he has more recently "suffered severe emotional distress." [Doc. 421 at p.22]. However, a claim of emotional distress alone does not sustain a defamation action. Emotional distress may be recoverable as a form of derivative or parasitic

3

damages only if a plaintiff first makes the required showing of injury to reputation and character, a plaintiff may not simply claim emotional distress alone without that threshold showing. As the cases cited above demonstrate, Tennessee law is in accord with the majority rule that a plaintiff must show "actual reputational harm . . . and not merely emotional distress or humiliation, before he or she may recover for any parasitic damages such as personal humiliation or mental anguish." *Bierman v. Weier*, 826 N.W.2d 436, 447 (Iowa 2013); *see also Gobin v. Globe Pub. Co.*, 649 P.2d 1239, 1244 (Kan. 1982) ("[The plaintiff] cannot recover in a defamation action for mental anguish in the absence of proof of the principal injury with which a defamation action is concerned—injury to reputation."). Because Sills has come forward with no evidence of injury to his reputation and character from any statements made after May 11, 2022, his defamation claim fails regardless of alleged emotional distress.

That aside, Sills hasn't produced any admissible evidence of the severe emotional distress he claims was caused by statements made after May 11, 2022. First, Sills attempts to prove emotional distress by improperly citing, not medical records or sworn affidavits, but an expert disclosure which was drafted by Sills' attorneys. [Doc. 421 at p.22]. Counsel's summary of a non-retained expert's opinion testimony is not admissible evidence that can be considered at the summary judgment stage. *See* Fed. R. Civ. P. 56(c)(2).[1] If Sills wanted to rely upon these treaters in opposing summary judgment, he was obligated to come forward with an affidavit from these physicians or to have otherwise taken steps to preserve their testimony. Contrary to his assertion, it was his obligation to "solicit any further testimony," not Defendants. [Doc. 421 at p.22].

---

[1] Not even unsworn reports drafted by a retained expert cannot be considered at the summary judgment stage. *See, e.g.*, *Seto v. CSX Transportation, Inc.*, No. 3:15-cv-1135, 2017 WL 4556723, at *5 (M.D. Tenn. July 6, 2017). Here, Sills is not even relying upon an unsworn report drafted by an expert, but a paragraph in a disclosure drafted by counsel. This cannot be considered.

4

Second, the evidence of record does not support Sills' claim that his emotional distress is due to statements made after May 11, 2022. The Response cites Sills' deposition at page 125, line 23 through page 126, line 3 and then boldly states that this testimony supports the contention that Sills' emotional distress "is as a result of the 2022 publications" [*Id.*]. The Response asserts that "[f]or the mental duress experienced since the 2022 false publications, Sills now routinely takes medication for sleep, anxiety and panic attacks." [*Id.*]. In other words, the Response suggests there has been a change in medications since 2022. But Sills did not say that. He was asked what medications he was currently taking, and in answering he said nothing about when these started, how long he had taken then, or why he had been taking these medications:

> Q. What are you currently taking?
>
> A. I take Ambien to get to sleep. I take—I don't know what it's called, but it's Levapro [sic]. I take—and that's for like depression stuff. I have Xanax for panic attacks kind of things.

[Doc. 411-24 at pp.76-77]. In complete contradiction to his current argument about onset, Sills' medical records show these issues existed long before 2022. Notes from an August 11, 2020 visit show Sills' past medical history included insomnia and "[d]epression since retirement" for which he was prescribed Lexapro and Ambien. [Ex. B, 8/11/20 Office Visit Note]. Notes for a December 30, 2021 visit included diagnoses of primary insomnia and anxiety and depression, and stated that "[Sills] sleeps well with Ambien but cannot sleep without it." [Ex. C, 12/30/21 Office Visit Note]. In 2021, he continued his prescription for Ambien and his Lexapro was discontinued in favor of another anti-depressant, Cymbalta. [*Id.*]. All of this occurred prior to May 2022.[2] Sills' Response

---

[2] This also clearly shows Sills has not suffered the serious mental injury as a result of publications after May 11, 2022 that is required to sustain a claim for intentional infliction of emotional distress.

5

tries to paint not only a false picture of his testimony, but a false picture of the medical evidence in the case.

Third, Sills claims his severe emotional distress since 2022 is evidenced by the fact he is in counseling with his pastors. [Doc. 421 at p.22]. But Sills' privilege log shows he was in counseling with these pastors as early as 2019, long before 2022. [Ex. A, Pls' Privilege Log]. Even more importantly, as stated above in Section I, by withholding communications with his counselors in discovery based upon a pastoral privilege, Sills is now precluded from relying upon this information to oppose summary judgment.

### B. The Conclusory and Speculative Statements of Sills' Experts Are Insufficient.

"[C]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment." *Washington v. Corrections Corp. of America*, No: 3:15–0689, 2016 WL 2659456, at *2 (M.D. Tenn. Apr. 22, 2016); *see also Alexander v. CareSource*, 576 F.3d 551, 560 20 (6th Cir. 2009) ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment."). This is particularly true in the context of expert witnesses. "If a plaintiff may proceed with merely the opinion of an 'expert witness' retained specifically for that purpose, whose unsupported testimony is construed to create an 'issue of material fact' to avoid summary judgment under Fed. R. Civ. Proc. 56(c), it is difficult to conceive of any [case] that could not proceed to trial." *Zettle v. Handy Mfg. Corp.,* 998 F.2d 358, 361–62 (6th Cir. 1993).

Sills relies on his vocational expert, Erin Bailey,[3] to argue that he suffered damage to his employment prospects as a result of post-May 11, 2022 statements. [Doc. 421 at pp.22-23]. But

---

[3] The ECSBC and Rolland Slade have moved to exclude Sills' vocational expert, Erin Bailey [Docs. 385 and 386], and reputational repair expert, Robert Fisher [Docs. 402 and 403], on the

6

Ms. Bailey's speculative conclusion has no basis. Ms. Bailey opined that (1) once public allegations of sexual abuse are made, there is a permanent stigma that affects employability; (2) that the public allegations of sexual abuse made against Sills began in March 2019 and impacted his employability; and (3) that since 2018 through early February 2022, Sills had already been rejected by forty-seven employers because of the public sexual abuse allegations against him. [Doc. 427-4 at pp.14, 16, 22]. Despite this, with no data or analysis other than her bald say so, Ms. Bailey leaps to the opinion that the May 2022 publication of the Guidepost Report was "the stamp" on Sills not obtaining employment. [*Id*. at p.27]. Ms. Bailey's unadorned conclusion and speculation does not create an issue of fact.[4]

In fact, the speculative and baseless nature of Ms. Bailey's opinion is futher evidenced by recent filings in which she now contradicts herself. In a declaration attached to Plaintiffs' November 13, 2025 response to the ECSBC's motion to exclude Ms. Bailey's opinions, Ms. Bailey acknowledges that she "did not analyze the impact of any particular statements made at any particular time on David Sills' employability" because "the data does not exist." [Doc. 427-2 at p.4]. Citing Ms. Bailey's new declaration, Plaintiffs state it would "not be plausible to measure the specific harm caused by allegations of sexual abuse that reached prospective employers within and without the limitations period." [Doc. 427 at p.17].[5] Thus, polar opposite positions are being

---

grounds that their opinions are inherently speculative and unreliable and inadmissible under Rule 702.

[4] The Response references a lost earning capacity analysis performed by economist, Ralph Scott. In using a July 1, 2022 starting date for Sills' lost earning capacity, Dr. Scott testified that his method was based upon the opinion of Ms. Bailey. [Ex. D, Depo. R. Scott 45:17-46:20, 56:16-57:4, 93:23-94:2]. Dr. Scott readily admits that if Ms. Bailey's opinion is excluded, the admissibility of his lost earning capacity calculations is likewise compromised. [*Id*. at 119:18-23].

[5] It should be noted that the one specific instance Ms. Bailey testified to in her deposition, and which Sills relies upon in his Response, undisputedly occurred well outside the one-year limitations period. Sills states, "Bailey further testified that Global Outreach International had

7

Case 3:23-cv-00478   Document 430   Filed 11/21/25   Page 7 of 14 PageID #: 16900

taken only ten days apart. On November 3rd, in responding to summary judgment, Sills relies upon Ms. Bailey's unadorned opinion that the Guidepost Report "was ultimately . . . the stamp on his not getting employment in his intended field." [Doc. 421 at p.22]. Then, on November 13th, in responding to a motion to exclude Ms. Bailey, Sill argues is not plausible for Ms. Bailey to opine as to any specific harm caused by the Guidepost Report. [Doc. 427 at p.17]. Ms. Bailey's opinions and Sills' position apparently change given the context of the motion being responded to.

Next, Sills points to the testimony of his "reputation repair" expert, Robert Fisher. Sills directs the Court to Mr. Fisher's testimony that, in his opinion, there was a "gradual snowball effect" and that after the Guidepost Report, "all of a sudden, everyone knew about it." [Resp. at p.23]. Mr. Fisher formed this opinion despite the fact that he never spoke to or relied upon any other experts in this case, and as a result, Fisher has not seen or been provided any qualitative or quantitative data on dissemination such as target audience surveys, analysis of web traffic, media mentions, which might actually establish his "snowball effect." [Doc. 426-2 at pp.4, 10]. Though he says it happened, Mr. Fisher has not done this work because he still needs to perform an assessment to determine the extent and nature of any reputational harm to Sills allegedly caused by the defendants. [Doc. 390-3 at p.58]. Aside from the fact Fisher had no basis for the statement, the deposition testimony of Fisher cited in the Response was in reference to the spread or dissemination of Jennifer Lyell's allegations, [Doc. 411-10 at pp.7-8], and not speaking to a gradual snow ball of reputational harm tied to 2022.

---

planned to hire Sills, but that 'outside influence' caused the opportunity to be withdrawn—demonstrating that he could have obtained employment 'if people didn't talk to that employer." [Doc. 421 at pp.22-23]. But Sills omits that his interaction with Global Outreach occurred in early 2019. [Doc. 427-4 at p.22].

8

Lastly, Sills references the opinion of his "search engine optimization" expert, Bernard Jansen, about estimates of the number of individuals who "viewed" 34 defaming statements were circulated. Dr. Jansen's opinions related to dissemination of the statements. Even if he opined to reputational harm and damages – which he didn't - Sills again completely ignores the one-year limitations period. Dr. Jansen's estimations were based upon statements, the majority of which were made outside the one-year limitations period. For example, Sills' Response cites that defaming statements were viewed 261,750 times on the defendants' various social media accounts. [Doc. 421 at p.23]. But according to Dr. Jansen at least 80% of these views were for statements made outside of the one-year limitations period. [Doc. 390-2 at pp.111-139]. Jansen opined that Jennifer Lyell's February 2022 tweet alone comprised 208,000 views. [Doc. 390-2 at p.132].

In sum, Sills has failed to come forward with evidence establishing that statements made after May 11, 2022, somehow harmed his reputation over and above that which already existed and further, that this new harm caused actual damages. Summary judgment on the defamation claim is appropriate.

**IV.    SILLS' NEGLIGENCE CLAIM FAILS AS A MATTER OF LAW.**

Sills' Response only makes it more evident that his negligence claim in Count III is nothing more than a defamation claim under a different label. [*See* Doc. 421 at p.26 ("EC owed Plaintiffs a duty to exercise reasonable care by verifying (or at least attempting to verify) the truth before publishing statements that gave credibility to an accusation of sexual abuse . . . .)]. Even if not duplicative, a stand-alone negligence claim still fails. Sills does not allege a physical, bodily injury and is not seeking to recover emotional distress damages as parasitic to such an injury. Instead, a stand-alone negligence claim here could be nothing more than a claim for negligent infliction of emotional distress, which requires expert proof. *See Finley v. Kelly*, 384 F. Supp. 3d 898, 914-15

9

(M.D. Tenn. 2019) (quoting *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 206 n.10 (Tenn. 2012)). Sills has not come forth with any expert evidence demonstrating severe emotional distress. He shielded his counseling records from discovery, and a disclosure paragraph drafted by counsel about non-retrained treating physicians, as shown above, is insufficient to avoid summary judgment.

## V. THERE IS NO ADMISSIBLE EVIDENCE OF A CIVIL CONSPIRACY.

Sills argues there is sufficient evidence that the EC conspired "with Lyell, Seminary, the SBC, Slade, Litton, Barber and McLaurin to defame Plaintiffs." [Resp. at p.29]. The Court can quickly dispose of any contention that the ECSBC conspired with the Southern Baptist Convention, Rolland Slade, Ed Litton, Bart Barber or Willie McLaurin. Under the doctrine of intracorporate conspiracy immunity, a corporation cannot conspire with its "officers, directors employees, and other agents." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 704 (Tenn. 2002). The four individual defendants were all officers or members, i.e., directors, of the ECSBC. [Doc. 1 at pp.5-6].[6] Indeed, when it suits him, Sills relies on these very relationships in an effort to tie the individuals defendants to the SBC and ECSBC. Similarly, under the SBC's Bylaws, the ECSBC acts as "the fiduciary, the fiscal, and the executive entity of the Convention" in all its affairs not specifically committed to some other board or entity. [*Id.* at p.6]. Thus, the SBC and ECSBC cannot conspire.

As for the Seminary and Dr. Mohler, the record is devoid of any evidence of a conspiracy with the ECSBC. Beyond a March 2019 phone call with Baptist Press reporter David Roach

---

[6] As Presidents of the SBC, Barber and Litton were *ex oficio* members of the ECSBC during their terms.

10

concerning the original article, there is no evidence of any contact between the ECSBC and Dr. Mohler (or anyone else at the Seminary) regarding Lyell's allegations. [Doc. 355-23 at p.2].

This leaves Jennifer Lyell. The "evidence" the Response cites are settlement agreements between the ECSBC in 2020 and 2022. [Resp. at pp.30-31]. Rule 408 of the Federal Rules of Evidence directly prohibits Sills from using a settlement as an admission. Nor is there any evidence of a defamatory statement made by Ms. Lyell within the limitations period. The Response cites a June 2022 statement of Ms. Lyell gave regarding a Daily Wire article drafted by reporter Megan Basham. [Doc. 421 at p.33]. But it was not defamatory as to Sills. [*See* Doc. 76 at pp.19-22].

## CONCLUSION

For the above reasons and those set forth in its initial Memorandum of Law, the ECSBC respectfully requests that its Motion for Summary Judgment With Respect to Plaintiff David Sills be granted.

EXECUTIVE COMMITTEE OF THE
SOUTHERN BAPTIST CONVENTION

By counsel

*/s/ Gretchen M. Callas*
Thomas J. Hurney, Jr. (WVSB #1833)
(pro hac vice)
Gretchen M. Callas (WVSB #7136)
(pro hac vice)
Jonathan L. Anderson (WVSB #9628)
(pro hac vice)
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
Post Office Box 553
Charleston, West Virginia 25322
Telephone: 304-340-1000
Fax: 304-340-1150
thurney@jacksonkelly.com
gcallas@jacksonkelly.com

11

Brigid M. Carpenter (BPR #018134)
Ryan P. Loofbourrow (BPR #033414)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
bcarpenter@bakerdonelson.com
rloofbourrow@bakerdonelson.com
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37203
Telephone: (615) 726-7341
Fax: (615) 744-7341

*Attorneys for Executive Committee of the
Southern Baptist Convention and Rolland Slade*

# CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2025 the foregoing ***Reply In Further Support of the Executive Committee of the Southern Baptist Convention's Motion for Summary Judgment With Respect to Plaintiff David Sills*** has been served through the Court's electronic filing system on the following:

John W. Barrett
Katherine Barrett Riley
Barrett Law Group. P.A.
P.O. Box 927
404 Court Square
Lexington, Mississippi 39095
dbarrett@barrettlawgroup.com
kbriley@barrettlawgroup.com

Shannon M. McNulty
Clifford Law Offices, P.C.
120 N. LaSalle Street, Suite 3100
Chicago, Illinois 60602
smm@cliffordlaw.com
*Attorneys for Plaintiffs*

James C. Bradshaw, III
Wyatt, Tarrant & Combs, LLP
333 Commerce Street, Suite 1050
Nashville, Tennessee 37201
jbradshaw@wyattfirm.com

Byron E. Leet
Wyatt, Tarrant & Combs
400 West Market Street
Louisville, Kentucky 40202
bleet@wyattfirm.com

Thomas E. Travis
Wyatt, Tarrant & Combs
250 W. Main Street, Suite 1600
Lexington, Kentucky
ttravis@wyattfirm.com
*Attorneys for The Southern Baptist*
*Theological Seminary and Dr. R. Albert Mohler*

Alan S. Bean
Starnes, Davis, Florie LLP
3000 Meridian Blvd., Suite 350
Franklin, Tennessee 37067
Abean@starneslaw.com
*Attorneys for Willie McLaurin*

Matthew C. Pietsch
Gordon Rees Scully Mansukhani,
4031 Aspen Grove Drive
Suite 290
Franklin, Tennessee 37067
mpietsch@grm.com
*Attorneys for Southern Baptist Convention,
Dr. Ed Litton and Bart Barber*

Steven G. Mintz
Scott Klein
Alex Otchy
Mintz & Gold LLP
600 Third Avenue, 25th Floor
New York, New York 10016
mintz@mintzandgold.com
klein@mintzandgold.com
otchy@mintzandgold.com

John R. Jacobson
Katharine R. Klein
Riley & Jacobson
1906 West End Avenue
Nashville, Tennessee 37203
jjacobson@rjfirm.com
kklein@rjfirm.com
*Guidepost Solutions, LLC*

                                                   */s/ Gretchen M. Callas*