# Exhibit 112

**CONFIDENTIAL MATTER**

**THE SOUTHERN BAPTIST THEOLOGICAL SEMINARY**

**MEMORANDUM**

Date: May 21, 2018

Re: Meeting with Dr. Mohler, President of Southern Seminary

From: Jonathan B. Austin, Executive Assistant to the President

---

This Memorandum is a summary of the undersigned's meeting with Dr. Mohler (RAM) and Dr. Stinson, Senior VP and Provost of SBTS (Stinson), on Monday, May 21, 2018, and was prepared at RAM's instruction.

- RAM received a phone call from Dr. Thom Rainer, President & CEO of LifeWay (Rainer), on Monday, May 21, 2018, at approximately 1:35pm/EST to discuss a serious matter.
- RAM asked for about 10 minutes. RAM asked Dr. Adam Greenway, Dean of Billy Graham School at SBTS (Greenway), to join him on the call (as Stinson was unavailable).
- Rainer called back at 1:45pm/EST. On the call were RAM, Greenway, Rainer, Eric Geiger, Senior VP at LifeWay (Geiger), and Ms. Jennifer Lyell, a current employee of LifeWay and a former employee of SBTS (Lyell).
- Lyell accused current SBTS professor Dr. David Sills (Sills) of sexual misconduct and assault (all unwanted) over a period of years during Lyell's tenure at SBTS. Lyell apparently did work at Dr. Sills' home from time to time, which is where the bulk of the alleged misconduct occurred.
- RAM asked Lyell the following questions:
    - What do you want SBTS to do? Lyell: protect the gospel and the ministry of SBTS; protect Sills' family.
    - Do you need protection from any legal authorities? Lyell: No.
    - Is there someone with you now that can protect you? Lyell: Yes.
    - Are you willing to make a face-to-face accusation? Lyell: Yes.
- Lyell got off the phone call and the other parties had brief discussion.
- RAM, Stinson, and Greenway will discuss plan going forward, including calling a meeting with Sills.

/s/ Jonathan B. Austin | May 21, 2018

**THE SOUTHERN BAPTIST THEOLOGICAL SEMINARY**

**MEMORANDUM**

Date: May 21, 2018

Re: Meeting with Dr. Mohler, President of Southern Seminary

From: Jonathan B. Austin, Executive Assistant to the President

---

This Memorandum is a summary of the undersigned's meeting with Dr. Mohler (RAM) and Dr. Stinson, Senior VP and Provost of SBTS (Stinson), on Monday, May 21, 2018, and was prepared at RAM's instruction.

- RAM received a phone call from Dr. Thom Rainer, President & CEO of LifeWay (Rainer), on Monday, May 21, 2018, at approximately 1:35pm/EST to discuss a serious matter.
- RAM asked for about 10 minutes. RAM asked Dr. Adam Greenway, Dean of Billy Graham School at SBTS (Greenway), to join him on the call (as Stinson was unavailable).
- Rainer called back at 1:45pm/EST. On the call were RAM, Greenway, Rainer, Eric Geiger, Senior VP at LifeWay (Geiger), and Ms. Jennifer Lyell, a current employee of LifeWay and a former employee of SBTS (Lyell).
- Lyell accused current SBTS professor Dr. David Sills (Sills) of sexual misconduct and assault (all unwanted) over a period of years during Lyell's tenure at SBTS. Lyell apparently did work at Dr. Sills' home from time to time, which is where the bulk of the alleged misconduct occurred.
- RAM asked Lyell the following questions:
    - What do you want SBTS to do?
        - Lyell: protect the gospel and the ministry of SBTS; protect Sills' family.
    - Do you need protection from any legal authorities?
        - Lyell: No.
    - Is there someone with you now that can protect you?
        - Lyell: Yes.
    - Are you willing to make a face-to-face accusation?
        - Lyell: Yes.
- Lyell got off the phone call and the other parties had brief discussion.
- RAM, Stinson, and Greenway will discuss plan going forward, including calling a meeting with Sills.

/s/ Jonathan B. Austin | May 21, 2018

 Jonathan Austin <jaustin@sbts.edu>

## Memo to File

1 message

**Jonathan Austin** <jaustin@sbts.edu>  
To: Jonathan Austin <jaustin@sbts.edu>

Wed, May 23, 2018 at 8:58 AM

**Jonathan B. Austin**  
Executive Assistant to the President  
Office of the President  
The Southern Baptist Theological Seminary  
2825 Lexington Road, Louisville, KY 40280  
502.897.4121 | jaustin@sbts.edu

**Memo to File (5-21-18).pdf**  
130K

# CONFIDENTIAL MATTER

## THE SOUTHERN BAPTIST THEOLOGICAL SEMINARY

**MEMORANDUM**

Date: May 21, 2018

Re: Meeting with Dr. Mohler, President of Southern Seminary

From: Jonathan B. Austin, Executive Assistant to the President

---

This Memorandum is a summary of the undersigned's meeting with Dr. Mohler (RAM) and Dr. Stinson, Senior VP and Provost of SBTS (Stinson), on Monday, May 21, 2018, and was prepared at RAM's instruction.

- RAM received a phone call from Dr. Thom Rainer, President & CEO of LifeWay (Rainer), on Monday, May 21, 2018, at approximately 1:35pm/EST to discuss a serious matter.
- RAM asked for about 10 minutes. RAM asked Dr. Adam Greenway, Dean of Billy Graham School at SBTS (Greenway), to join him on the call (as Stinson was unavailable).
- Rainer called back at 1:45pm/EST. On the call were RAM, Greenway, Rainer, Eric Geiger, Senior VP at LifeWay (Geiger), and Ms. Jennifer Lyell, a current employee of LifeWay and a former employee of SBTS (Lyell).
- Lyell accused current SBTS professor Dr. David Sills (Sills) of sexual misconduct and assault (all unwanted) over a period of years during Lyell's tenure at SBTS. Lyell apparently did work at Dr. Sills' home from time to time, which is where the bulk of the alleged misconduct occurred.
- RAM asked Lyell the following questions:
    - What do you want SBTS to do? Lyell: protect the gospel and the ministry of SBTS; protect Sills' family.
    - Do you need protection from any legal authorities? Lyell: No.
    - Is there someone with you now that can protect you? Lyell: Yes.
    - Are you willing to make a face-to-face accusation? Lyell: Yes.
- Lyell got off the phone call and the other parties had brief discussion.
- RAM, Stinson, and Greenway will discuss plan going forward, including calling a meeting with Sills.

/s/ Jonathan B. Austin | May 21, 2018

- We have received a complaint of misconduct
  - don't divulge victim's name

"shot across the bow"

- will investigate promptly
- SBTS does not tolerate sexual misconduct
- someone will talk to him during investigation

5-23-18 RAM, Sills, Greenway, Stinson, CP 11:15

* Adam has a recording of the meeting
* the recording can only be shared with a party to the conversation

5-23-18 Board officers; Exec Cabinet - 1:15 PM

SBTS Conference line
502-625-5772
pin - 2018



CONFIDENTIAL

SBTS000640

**Craig Parker**

| | |
|---|---|
| **From:** | R. Albert Mohler |
| **Sent:** | Thursday, February 28, 2019 6:07 PM |
| **To:** | Craig Parker |
| **Subject:** | Fwd: Confidential Update |
| **Attachments:** | BP Final.pdf; Untitled attachment 00953.html |

Sent from my iPhone

Begin forwarded message:

> **From:** Jennifer Lyell <jennifer.lyell@lifeway.com>
> **Date:** February 26, 2019 at 5:30:38 PM PST
> **To:** "R. Albert Mohler" <mohler@sbts.edu>
> **Subject: Confidential Update**
>
> Dr. Mohler,
>
> I hope this finds you doing well. I want to update you on how the Lord has been leading me regarding the situation with David Sills. I'm guessing you have heard that a few weeks ago it was discovered that he had been appointed as a missionary with a small, non-SBC missions agency. I've heard from those who contacted the agency that he lied and said he had resigned SBTS due to an impropriety 30 years in the past. I've realized that in my desire to protect the family and in how things unfolded with his resignation, there is no trail that would tell a ministry or church why he resigned his positions.
>
> As such, I've been prayerfully considering coming forward and sharing my story via a Baptist Press First Person article (assuming I can get them to run it). I have discussed this with my counselor and with an attorney. My pastor is out of the country this week and I do not want to act without talking to him, so I won't do anything until next week at the earliest and I continue to pray about taking this action.
>
> As I pray, I want you to be aware and to see what I've written (in which I've noted how swiftly and justly SBTS acted). I'm attaching the draft and would covet your prayers as I make this decision.
>
> I'm sorry to take more of your time with this and hope that it does not prove to be a distraction.
>
> Sincerely,
> Jennifer
>
> Jennifer Lyell
> LifeWay Christian Resources
> *We serve the Church in Her mission of making disciples.*

My Story of Sexual Abuse
Jennifer Lyell

Just over nine months ago I heard the story of Megan Lively, the former SEBTS student who had reported her 2004 sexual assault to Dr. Paige Patterson and SEBTS. Records show what Megan attests, that Dr. Patterson did not take proper steps reporting the sexual assault or caring for Megan in its aftermath.

When I heard this story, something broke in me. Something that had been held tightly for years. I walked into the office of my boss at LifeWay and told him what I'd just heard about Megan's story. I don't remember what he said in reply, but it was something along the lines of how shocking it was. Except I wasn't shocked; if anything, I was shocked that he was. I remember thinking, "God is purifying His church. God be glorified" and then I spoke. I don't remember exactly what I said, but it was something along the lines of, "I was sexually abused and assaulted by one of my seminary professors."

My boss was shocked and appalled. That one sentence I uttered began a rapid sequence of events that modeled the best of what advocates of sexual abuse response reform are calling for in the SBC. I was asked many questions to get clarity around what I was alleging as well as who was responsible. I shared how Dr. David Sills, then a tenured professor at SBTS, first sexually acted against me on a mission trip in 2004, a pattern that continued and escalated for more than a decade following that trip.

By the time I shared about my abuse, I had been in counseling for nearly three years, which had given me the tools and support I needed to extract myself from the situation. I had told my counselor, closest friends, as well as my pastor and his wife. I had not disclosed this to SBTS or the missions agency Dr. Sills led (on which I had previously served on the board) because of the very complicated, messy nature of the relationship and my fear of the collateral damage that telling would cause for those around him. That collateral damage was the reason that the abuse had continued for so long. The reason that a professor was able to continue grooming and taking advantage of his student was because I became like part of his family. This wasn't by accident; it was by design. Having known that I experienced sexual abuse growing up, Dr. Sills assured me that the first incidents that happened on that mission trip weren't really my fault as I naturally felt—even though I had not initiated them in any way and was in shock as the actions took place. He explained they were because of what happened to me when I was a child. He said that he could fix it by me becoming part of his family and then once I was part of his family, that sort of thing would never happen again. I now wonder if the only reason that a family relationship ever developed was to ensure I wouldn't tell what had happened in those first instances.

But a family relationship *did* develop. Over the years I spent weekends with them, my holidays with them, became an "aunt" to their grandchildren, and their grown children became like siblings to me. It looked idyllic on the surface. Except the pattern of inappropriate sexual activity continued throughout the relationship.

So that day when I shared what had happened to me with my boss at LifeWay and then later with Dr. Mohler, I was quick to also share the responsibility I bore for being compliant at times, for not telling immediately, and for so idolizing the idea of a whole family that I protected it despite what was happening within it. I am not a sinless victim. But I am a victim nonetheless.

Dr. Mohler and SBTS immediately took action. After receiving my statement, they waited for Dr. Sills to return a couple days later from an overseas trip and met with him. I was told following that meeting that he had admitted, at least, to inappropriate sexual activity and tendered his resignation. At that time I requested very strongly that SBTS not share anything about the reason for his dismissal as I was trying to protect his family who I knew was about to be reeling. They took that path, which is the standard protocol for employment matters, and the Baptist Press article noting his dismissal did not reference a reason for his resignation. Following the seminary's action, Dr. Sills' church also initiated an investigation and took action. Both the denominational institution and the local church ultimately believed me, supported me, and took the action for which they were responsible.

Over the past nine months, I have walked through the aftermath of disclosure, which has been traumatizing itself, at times. I have lost some of the relationships dearest to me and have sat ensconced in a grief that can only be caused by sin. I have come forth now, though, because I recently learned that Dr. Sills had been appointed as a missionary with a small (non-SBC) missions agency. Multiple individuals who knew what happened with me heard about this and notified the missions agency of the reasons for his departure from his previous positions while letting me know they were doing so. As a result, he is no longer listed as a missionary with this agency.

But, I now realize that despite SBTS handling the situation justly and as I asked—without stating the reason for his resignation—it led to the exact kind of scenario the SBC is now trying to prevent.

If I were not to come forward with this letter, a church or ministry who receives Dr. Sills' CV and does an internet search for him would have no way to know the truth behind his resignation. We live in a litigious country with employment laws that vary from state to state. There are plenty of reasons to stay silent in a situation such as this. But we must not be silent. We must clearly tell the truth so that our churches and ministries are safe and as pure as they can be.

It is my hope that my story, one in which a SBC entity and its leaders acted swiftly and justly to remove an abuser, but in which that same individual was also in a ministry position only months later, will also help to illustrate the need for some form of a reporting tool that can ensure that those who have victimized others from a ministry position are unable to ever do so again. The only way I know to do that is to come forward myself. So, this is my way of doing just that. May God be glorified.

CONFIDENTIAL

**Caleb Shaw <cshaw@sbts.edu>**

## Fwd: MEDIA INQUIRY: Christian Post seeking comments on David Sills

2 messages

**Communications Department** <communications@sbts.edu> Mon, Mar 11, 2019 at 3:12 PM
To: Caleb Shaw <cshaw@sbts.edu>

*Office of Communications*

*communications@sbts.edu*

**The Southern Baptist Theological Seminary**
2825 Lexington Road, Louisville, KY 40280
**Phone** (502) 897-4000 | **Fax** (502) 897-4880
**sbts.edu** | **T** @sbts | **F** TheSBTS

---------- Forwarded message ---------
From: <samuel.smith@christianpost.com>
Date: Mon, Mar 11, 2019 at 1:30 PM
Subject: MEDIA INQUIRY: Christian Post seeking comments on David Sills
To: <communications@sbts.edu>

Good afternoon,

My name is Sam Smith and I am a reporter with The Chrisitan Post. I am doing an article about the allegations made against former seminary professor David Sills by Jennifer Lyell, a former SBTS student who claims that the professor sexually abused her and engaged in a years-long inappropriate relationship with Sills.

I wanted to know if SBTS could provide me with a public statement responding to these allegations. When did Lyell present these allegations to SBTS? And how long after Lyell's allegation was presented was Sills let go from SBTS?

I would love to get a response to add SBTS' perspective to my article.

I am working on an intial deadline of about 4 p.m. ET Monday. Please let me know if a statement can be provided. I can always add a statement from SBTS after my initial deadline has passed.

Thanks for your help,

Samuel Smith

The Christian Post | Reporter
cell: 410-978-4938
office: 202-800-0234

**Caleb Shaw** <cshaw@sbts.edu> Mon, Mar 11, 2019 at 3:17 PM
To: Colby Adams <cadams@sbts.edu>

[Quoted text hidden]

 Jonathan Austin <jaustin@sbts.edu>

## Re: MEDIA INQUIRY: Christian Post seeking comments on David Sills

1 message

**Jonathan Austin** <jaustin@sbts.edu> Mon, Mar 11, 2019 at 5:40 PM
To: Colby Adams <cadams@sbts.edu>

Thanks.

Jonathan S. Austin
Executive Assistant to the President
The Southern Baptist Theological Seminary
2825 Lexington Road, Louisville, KY 40280
502.897.4121 | jaustin@sbts.edu

On Mon, Mar 11, 2019 at 5:35 PM Colby Adams <cadams@sbts.edu> wrote:

Dr. Mohler:

Please see email below from Samuel Smith at Christian Post. I would typically say they are not worth your time, but I think a brief written statement would be useful given the issue. I spoke with Sam and he is going to push back the deadline until tomorrow. If you could get him a statement tonight or first thing in the morning, that would be great.

Please let me know what I can do to help.

Thanks,
Colby

Sent from my iPhone

---------- Forwarded message ---------
From: <samuel.smith@christianpost.com>
Date: Mon, Mar 11, 2019 at 1:30 PM
Subject: MEDIA INQUIRY: Christian Post seeking comments on David Sills
To: <communications@sbts.edu>

Good afternoon,

My name is Sam Smith and I am a reporter with The Chrisitan Post. I am doing an article about the allegations made against former seminary professor David Sills by Jennifer Lyell, a former SBTS student who claims that the professor sexually abused her and engaged in a years-long inappropriate relationship with Sills.

I wanted to know if SBTS could provide me with a public statement responding to these allegations. When did Lyell present these allegations

to SBTS? And how long after Lyell's allegation was presented was Sills let go from SBTS?

I would love to get a response to add SBTS' perspective to my article.

I am working on an intial deadline of about 4 p.m. ET Monday. Please let me know if a statement can be provided. I can always add a statement from SBTS after my initial deadline has passed.

Thanks for your help,

Samuel Smith
The Christian Post | Reporter
cell: 410-978-4938
office: 202-800-0234



The Southern Baptist Theological Seminary

# Memorandum

To: Craig Parker

From: Matthew Hall

Date: June 28, 2019

Re: Jennifer Lyell inquiry

Craig,

As mentioned, Jennifer Lyell called my office on Tuesday, June 25, with a request. She mentioned that her current employer, LifeWay Christian Resources, had in recent weeks agreed to pay for counseling services for a minor who had been the victim of abuse at one of their camps last month. She noted that LifeWay had filed it as an insurance claim and paid for those counseling services accordingly.

Based on those developments, Jennifer asked if SBTS might have similar coverage that could provide assistance for reimbursement costs of her counseling and therapy sessions related to her experience of sexual abuse and harassment while a student. She mentioned to me that these costs have ranged from $70,000 to $80,000 in the past few years and have largely depleted her savings.

I told her I was unsure of how our institutional coverage functioned in these cases, but would gladly look into it.

It seems both appropriate and wise for us to take any reasonable measure we can to offer continued support for Jennifer.

Faithfully,
MJH

Jennifer Lyell
8-15-19

R. CRAIG PARKER
SENIOR VICE PRESIDENT FOR INSTITUTIONAL ADMINISTRATION

"Southern has my heart + devotion. I would never hurt Southern."

* ok to share any information w/ RAM
* could sue Baptist Press for misrepresentation
  - new CEO [Ben] believes Baptist Press
  - could be terminated soon
  - new employment would be difficult
  - can't work for a president who doesn't believe her

* already in a difficult financial position because of counseling + prescriptions

⇒ could there be a way to fast-track claim processing?

2825 Lexington Road, Louisville, KY 40280
502.897.4131 • SBTS.EDU



R. CRAIG PARKER
SENIOR VICE PRESIDENT FOR INSTITUTIONAL ADMINISTRATION

* don't want to take legal action against BP or anyone else
* Very concerned about employment + short-term finances

2825 Lexington Road, Louisville, KY 40280
502.897.4131 • SBTS.EDU



CONFIDENTIAL

1

SBTS000651

8-29-19

Jennifer Lyell

* she seemed rattled / distracted today

**R. CRAIG PARKER**
SENIOR VICE PRESIDENT FOR INSTITUTIONAL ADMINISTRATION

* Advised Jennifer that UE says counseling is not covered, but will consider a negotiated settlement
* "I can go that route"
  - has negotiated hundreds of large contracts
* Believes she is in a "desperate" situation because of uncertain employment
  - doesn't feel as fearful about loss of her job today
* she has engaged counsel re: Baptist Press
  - will not litigate against SBTS
  - irate about treatment from BP + Exec Cttee staff
  - doesn't want to use counsel to pursue insurance benefits

2825 Lexington Road, Louisville, KY 40280
502.897.4131 · SBTS.EDU



R. CRAIG PARKER
SENIOR VICE PRESIDENT FOR INSTITUTIONAL ADMINISTRATION

* Jennifer wants to pray about her response + will see if she can get someone in her church to advise ~~[illegible]~~ her how to respond to insurance company

2825 Lexington Road, Louisville, KY 40280
502.897.4131 : SBTS.EDU



CONFIDENTIAL

1

SBTS000654

9-12-19

Jennifer Lyell

**R. Craig Parker**
Senior Vice President for Institutional Administration

* Storybook Bible - new release in Oct.
- written by Jennifer for children

* Jennifer says she had $15K of hospital expenses she didn't include with other expenses she sent to us

* She thinks treatment will go 2+ more years
- Total final cost $200K + maybe $300K

* Medical tests have revealed that portions of left side of her brain do not function

* Not Suicidal

* Plans to send me an email to define her willingness to negotiate a settlement with the insurance company

2825 Lexington Road, Louisville, KY 40280
502.897.4131 · SBTS.EDU

**Craig Parker**

**From:** Jennifer Lyell
**Sent:** Friday, September 13, 2019 10:57 AM
**To:** Craig Parker
**Subject:** Confidential

Mr. Parker,

I appreciate you passing along the inquiry from the insurance company representing The Southern Baptist Theological Seminary's liability in my claim related to the abuse, injuries, and long-term emotional and physiological damages I experienced as a result of the actions of Dr. David Sills while he was on faculty at The Southern Baptist Theological Seminary. It is imperative for my survival and functionality for me to have the resources to continue receiving treatment for what my therapist and psychiatrist (who is chair of NeuroPsychiatry for the TN Board of Medicine) have both individually stated is the most severe abuse/assault case they have ever encountered in either of their practices. It is also continually disruptive emotionally and physiologically to have the added burden of the logistics it would be to continue filing the invoices and claim paperwork with you all, particularly given the number of years of treatment that all the clinicians involved in my care have indicated it will take for me to achieve whatever the closest version of restoration will be from the trauma forced upon me. I also do not want to be forced to file civil charges in order to pay for the care that is truly keeping me alive, so after speaking with my attorneys, I'm comfortable submitted terms by which your insurance company could process a settlement, rather than processing payment for the invoices I've submitted so far on the open claim and then continuing to do so as my treatment continues for years into the future.

My lead counsel was prepared to submit a demand letter with settlement terms that included all anticipated medical costs that I will be required to pay out of pocket, as well as appropriate damages and financial loss beyond my medical expenses. This included not only those invoices already submitted, but also additional invoices from hospital visits directed by my therapist, medication, and a daily outpatient medical procedure that I did not initially submit. I was attempting to simplify and expedite payment on the claim by focusing on my two primary providers that is about 80% of the expenses thus far. If the settlement proposed below is not accepted, these additional expenses, as well as the comprehensive financial damages through the end of anticipated treatment would also be part of my attorney's response and the escalation of this matter.

However, I am sensitive to the media escalation that would inevitably come with such action and know the further damage that would do to SBTS, so I want to give the insurance company an opportunity to simplify this greatly and avoid an escalation or the reality of medically necessary expenses that my medical team has estimated at $500K, but noted will escalate well beyond that if long term trauma recovery inpatient treatment is ordered, which my doctor and therapist have not yet *ordered*, but have *persistently recommended* as what is needed now and will be inevitably ordered if I do not stabilize soon. As such, I am writing to offer to settle all claims against The Southern Baptist Theological Seminary with the seminary's insurance company under the following settlement terms:

- $300K one time payment to cover all expenses, past and future, regardless of those expenses likely exceeding that amount.
- Payment to be received within 60 days from the receipt of this email.
- I will be willing to sign the necessary paperwork to ensure no further claims against the institution as well as confidentiality regarding the claim.

If this is not accepted, then I will be forced to have my attorney move forward with more forceful action. Given the facts of my case, the extent of damages, the medical records, and the documentation of the professor's guilt and offenses—after consulting with multiple partners at top law firms, they all advised I forego any settlement negotiation and move forward with a civil suit. However, I am submitting this as an opportunity for the seminary to avoid that distraction as well as for me to be able to do so as well. Yet, I want to be clear that I frankly cannot survive without this minimal restitution, which based on counsel input as well as similar case settlements, is frankly far below what I've been advised is actually appropriate for my case. I am hopeful that by proposing a settlement far below what my actual expenses (not to mention non-medical damages) will be as a result of the abusive, injurious, and damaging actions I reported and that were established by SBTS as having been committed against me by a faculty member while employed at SBTS and while acting as an agent of SBTS, will result in an expedient response and resolution to the matter.

Thank you for your assistance in passing this along to the insurance company. Please let me know if you have any questions. I would be grateful for an update as soon as possible.

Sincerely,
Jennifer Lyell

**Craig Parker**

| | |
|---|---|
| **From:** | Jennifer Lyell |
| **Sent:** | Friday, September 13, 2019 10:57 AM |
| **To:** | Craig Parker |
| **Subject:** | Confidential |

Mr. Parker,

I appreciate you passing along the inquiry from the insurance company representing The Southern Baptist Theological Seminary's liability in my claim related to the abuse, injuries, and long-term emotional and physiological damages I experienced as a result of the actions of Dr. David Sills while he was on faculty at The Southern Baptist Theological Seminary. It is imperative for my survival and functionality for me to have the resources to continue receiving treatment for what my therapist and psychiatrist (who is chair of NeuroPsychiatry for the TN Board of Medicine) have both individually stated is the most severe abuse/assault case they have ever encountered in either of their practices. It is also continually disruptive emotionally and physiologically to have the added burden of the logistics it would be to continue filing the invoices and claim paperwork with you all, particularly given the number of years of treatment that all the clinicians involved in my care have indicated it will take for me to achieve whatever the closest version of restoration will be from the trauma forced upon me. I also do not want to be forced to file civil charges in order to pay for the care that is truly keeping me alive, so after speaking with my attorneys, I'm comfortable submitted terms by which your insurance company could process a settlement, rather than processing payment for the invoices I've submitted so far on the open claim and then continuing to do so as my treatment continues for years into the future.

My lead counsel was prepared to submit a demand letter with settlement terms that included all anticipated medical costs that I will be required to pay out of pocket, as well as appropriate damages and financial loss beyond my medical expenses. This included not only those invoices already submitted, but also additional invoices from hospital visits directed by my therapist, medication, and a daily outpatient medical procedure that I did not initially submit. I was attempting to simplify and expedite payment on the claim by focusing on my two primary providers that is about 80% of the expenses thus far. If the settlement proposed below is not accepted, these additional expenses, as well as the comprehensive financial damages through the end of anticipated treatment would also be part of my attorney's response and the escalation of this matter.

However, I am sensitive to the media escalation that would inevitably come with such action and know the further damage that would do to SBTS, so I want to give the insurance company an opportunity to simplify this greatly and avoid an escalation or the reality of medically necessary expenses that my medical team has estimated at $500K, but noted will escalate well beyond that if long term trauma recovery inpatient treatment is ordered, which my doctor and therapist have not yet *ordered*, but have *persistently recommended* as what is needed now and will be inevitably ordered if I do not stabilize soon. As such, I am writing to offer to settle all claims against The Southern Baptist Theological Seminary with the seminary's insurance company under the following settlement terms:

- $300K one time payment to cover all expenses, past and future, regardless of those expenses likely exceeding that amount.
- Payment to be received within 60 days from the receipt of this email.
- I will be willing to sign the necessary paperwork to ensure no further claims against the institution as well as confidentiality regarding the claim.

If this is not accepted, then I will be forced to have my attorney move forward with more forceful action. Given the facts of my case, the extent of damages, the medical records, and the documentation of the professor's guilt and offenses—after consulting with multiple partners at top law firms, they all advised I forego any settlement negotiation and move forward with a civil suit. However, I am submitting this as an opportunity for the seminary to avoid that distraction as well as for me to be able to do so as well. Yet, I want to be clear that I frankly cannot survive without this minimal restitution, which based on counsel input as well as similar case settlements, is frankly far below what I've been advised is actually appropriate for my case. I am hopeful that by proposing a settlement far below what my actual expenses (not to mention non-medical damages) will be as a result of the abusive, injurious, and damaging actions I reported and that were established by SBTS as having been committed against me by a faculty member while employed at SBTS and while acting as an agent of SBTS, will result in an expedient response and resolution to the matter.

Thank you for your assistance in passing this along to the insurance company. Please let me know if you have any questions. I would be grateful for an update as soon as possible.

Sincerely,
Jennifer Lyell

CONFIDENTIAL

**Craig Parker**

**From:** Craig Parker
**Sent:** Thursday, September 19, 2019 8:09 PM
**To:** Jennifer Lyell
**Subject:** Update

Jennifer,

I'm doing my best to tie up loose ends on all of my projects before we leave for London, so I called the United Educators claims staff today to discuss your letter. It is too soon for them to have a final answer for us, so I asked if they could have a firm decision concerning your claim by the time I return to the office on Oct. 9. They did not make a commitment, but I believe they will have a response for us by the time I return to Louisville or soon thereafter.

They have very good telephone and internet service in Great Britain, so it will not be difficult for them to communicate with me while we are traveling. Rest assured that if I receive any significant news from United Educators, you will be the first to know.

I plan to be in the office nearly the entire day tomorrow, so feel free to call if you have any questions.

**R. Craig Parker**
*Sr. Vice President of Institutional Administration*

**The Southern Baptist Theological Seminary**
2825 Lexington Road, Louisville, KY 40280
Phone (502) 897-4131
cparker@sbts.edu

Case 3:23-cv-00478 Document 457-13 Filed 11/25/25 Page 28 of 137 PageID #: 17871

SBTS000660

# CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Confidential Settlement Agreement and Release of Claims (hereinafter referred to as the "Agreement") is hereby made and entered into by Jennifer Lyell ("Lyell").

WITNESSETH

WHEREAS, Lyell made a claim against The Southern Baptist Theological Seminary ("Seminary") requesting reimbursement of medical and treatment expenses she claimed she incurred as a result of the conduct of former Seminary professor David Sills; and

WHEREAS, Lyell and the Seminary desire to fully and finally settle any claims Lyell could assert.

NOW, THEREFORE, for and in consideration of the terms and conditions set forth in this Agreement, Lyell agrees as follows:

**Payment to Claimant**

No later than five (5) business days after receipt of a signed copy of this Agreement, the Seminary will tender a lump sum payment to Lyell in the amount of One Hundred Thousand Dollars ($100,000) in satisfaction of all claims.

**Complete Release of Seminary**

In return, Lyell, on behalf of herself and her agents, representatives, assigns, heirs, executors, administrators, beneficiaries, attorneys, and anyone claiming through her, releases, acquits, and forever discharges the Seminary as well as its current and former agents, employees, professors (including David Sills), administrators, trustees, officers, attorneys, servants, and all persons or entities connected therewith, of and from any and all claims, actions, causes of action, demands, obligations, damages, costs, or loss which Lyell now has, or which may hereafter accrue to her, on account of, or in any way growing out of, any and all known or unknown,

foreseen and unforeseen, injuries and/or damages and the consequences thereof, resulting from, or connected with the Seminary in any way. Lyell agrees she is responsible for paying all medical bills associated with her treatment and the Seminary bears no responsibility for such expenses.

**Settlement of Claim and Confidentiality**

The compromise and settlement which forms the basis of this Agreement represents a final, mutually agreeable compromise. Lyell has received no inducement, promise, or offer of any kind whatsoever except for the consideration delineated herein and this Agreement is executed without reliance on any statement or representation made by anyone.

Lyell agrees to keep this Agreement and the fact of this settlement strictly confidential and not disclose it to anyone.

**Non-Admission of Liability**

This Agreement shall not in any way be construed to be an admission of wrongdoing or liability by the Seminary, or an admission that Lyell has any rights whatsoever against the Seminary. Lyell agrees the Seminary is making this settlement payment merely in order to resolve any claims and to help Lyell.

**Governing Law**

This Agreement is made and entered into in the Commonwealth of Kentucky and shall in all respects be interpreted, enforced, and governed by the laws of the Commonwealth of Kentucky.

**Full and Independent Knowledge**

Lyell represents and agrees that she has had adequate opportunity to consult with an attorney and that she has carefully read and fully understands all of the provisions of this

Agreement; that she has taken as much time as she needs for full consideration of it; that she is voluntarily entering into this Agreement; and that she has the capacity to enter into this Agreement. Lyell represents and agrees that she fully understands that this Agreement releases all of her claims, both known and unknown, against the Seminary as well as its current and former agents, employees, professors, administrators, trustees, officers, attorneys, servants, and all persons or entities connected therewith.

PLEASE READ CAREFULLY. THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS AS OF THE EFFECTIVE DATE.

______________________________
Jennifer Lyell

Date: __________________________

61884046.1

 CONFIDENTIAL

Caleb Shaw <cshaw@sbts.edu>

## Seeking on-deadline comment - please respond

7 messages

**Adelle Banks** <adelle.banks@religionnews.com> Tue, Oct 8, 2019 at 1:21 PM
To: "cshaw@sbts.edu" <cshaw@sbts.edu>

Hi Caleb:

I am working on a story with my colleague Emily McFarlan Miller about terms used in journalistic and biblical discussions when someone has accused someone else of sexual abuse, assault, harassment or misconduct.

I was hoping to reach Dr. Mohler but it looks, based on Twitter, like he's out of the country.

Can you or he confirm that he was involved in discussions with Ronnie Floyd, Sing Oldham and Shawn Hendricks to confirm Jennifer Lyell's assertions about then-Professor David Sills as she tried to get Baptist Press to put a note of clarification on the BP story that referred to their association as a "morally inappropriate relationship" rather than abusive relationship? (She refers to such discussions here: https://www.lyellstatementonabuse.com/)

Does he have a comment on how Baptist Press handled that story and its decision to remove it from its website?

If he is unavailable, is there anyone else who you might suggest would speak to me about these specific and general topics? I wondered, for example, if Garnetta Smith might speak with me this afternoon about the more general topic if not the specific one.

Thanks for your possible assistance. I'd appreciate hearing back from you as soon as possible and may quote from your response as a spokesman for Southern Baptist Theological Seminary.

--

**Adelle M. Banks**

Production Editor and National Reporter

Religion News Service

Mobile Direct 301-284-0402 (Washington)

Office 202-608-1383

Adelle.Banks@religionnews.com

Twitter: AMBankstw

www.religionnews.com

Affiliated with the University of Missouri School of Journalism

---

**Caleb Shaw** <cshaw@sbts.edu> Tue, Oct 8, 2019 at 1:26 PM
To: Albert Mohler <mohler@sbts.edu>
Cc: Jon Austin <jaustin@sbts.edu>

Dr. Mohler, this request just came in from Adelle Banks at RNS. She would like to talk to you about the recent Baptist Press and Jennifer Lyell conversation. How would you like for us to handle this?

**Caleb Shaw**
*Director of Communications*
Office of the President

**W** (502) 897- 4139 | **C** (270) 331-1239 | cshaw@sbts.edu

**The Southern Baptist Theological Seminary**
2825 Lexington Road, Louisville, KY 40280
sbts.edu | T @ctshaw13
[Quoted text hidden]

---

**Caleb Shaw** <cshaw@sbts.edu> Tue, Oct 8, 2019 at 1:52 PM
To: Adelle Banks <adelle.banks@religionnews.com>

Hi Adelle,

Dr. Mohler is out of the country. I'll try to get you a comment, but it might not happen because he's currently flying.

Sincerely,

**Caleb Shaw**
*Director of Communications*
Office of the President

**W** (502) 897- 4139 | **C** (270) 331-1239 | cshaw@sbts.edu

**The Southern Baptist Theological Seminary**
2825 Lexington Road, Louisville, KY 40280
sbts.edu | T @ctshaw13
[Quoted text hidden]

---

**Adelle Banks** <adelle.banks@religionnews.com> Tue, Oct 8, 2019 at 2:28 PM

CONFIDENTIAL

To: Caleb Shaw <cshaw@sbts.edu>

Thanks, Caleb. I would appreciate the comment, even it cannot be sent right away today.

[Quoted text hidden]

---

**R. Albert Mohler** <mohler@sbts.edu> Tue, Oct 8, 2019 at 3:05 PM
To: Caleb Shaw <cshaw@sbts.edu>
Cc: Jon Austin <jaustin@sbts.edu>

Caleb I have almost no ability to communicate over North Atlantic.

I just saw this and can't deal to any reasonable extent. I can approve this statement:

"I am currently out of the country and on an international flight and must be brief. When in May 2018 Jennifer Lyell informed me of a sexual abuse by a member of our faculty, it was abundantly clear that what she described was by no means simply a matter of a "morally inappropriate relationship." It was clear that sexual abuse was the awful reality. The original description in Baptist Press was not accurate. Later, I responded decisively in this light. Later, I supported Jennifer in making her statement requiring a correction by Baptist Press."

Caleb please confirm receipt of this statement by both email and text message thanks.

Somewhere over North Atlantic polar region.

RAM

Sent from my iPhone
[Quoted text hidden]

---

**Caleb Shaw** <cshaw@sbts.edu> Tue, Oct 8, 2019 at 3:15 PM
To: "R. Albert Mohler" <mohler@sbts.edu>
Cc: Jon Austin <jaustin@sbts.edu>

I have received this. Thank you. I'll pass it on to her.

**Caleb Shaw**
*Director of Communications*
Office of the President

**W** (502) 897- 4139 | **C** (270) 331-1239 | cshaw@sbts.edu

**The Southern Baptist Theological Seminary**
2825 Lexington Road, Louisville, KY 40280
sbts.edu | **T** @ctshaw13
[Quoted text hidden]

---

**Jonathan Austin** <jaustin@sbts.edu> Tue, Oct 8, 2019 at 3:19 PM
To: "R. Albert Mohler" <mohler@sbts.edu>
Cc: Caleb Shaw <cshaw@sbts.edu>

Dr. Mohler:

CONFIDENTIAL

I just sent you a separate email on this matter. Please confirm you are still okay for Caleb to forward your statement to Adelle.

**Jonathan B. Austin**
**Office of the President | Southern Seminary**
2825 Lexington Road, Louisville, KY 40280
502.897.4121 | jaustin@sbts.edu

[Quoted text hidden]

SBTS000667

 Jonathan Austin <jaustin@sbts.edu>

# Re: Seeking on-deadline comment - please respond

1 message

**Jonathan Austin** <jaustin@sbts.edu> Tue, Oct 8, 2019 at 3:19 PM
To: "R. Albert Mohler" <mohler@sbts.edu>
Cc: Caleb Shaw <cshaw@sbts.edu>

Dr. Mohler:

I just sent you a separate email on this matter. Please confirm you are still okay for Caleb to forward your statement to Adelle.

**Jonathan B. Austin**
**Office of the President | Southern Seminary**
2825 Lexington Road, Louisville, KY 40280
502.897.4121 | jaustin@sbts.edu

On Tue, Oct 8, 2019 at 3:06 PM R. Albert Mohler <mohler@sbts.edu> wrote:

> Caleb I have almost no ability to communicate over North Atlantic.
>
> I just saw this and can't deal to any reasonable extent. I can approve this statement:
>
> "I am currently out of the country and on an international flight and must be brief. When in May 2018 Jennifer Lyell informed me of a sexual abuse by a member of our faculty, it was abundantly clear that what she described was by no means simply a matter of a "morally inappropriate relationship." It was clear that sexual abuse was the awful reality. The original description in Baptist Press was not accurate. Later, I responded decisively in this light. Later, I supported Jennifer in making her statement requiring a correction by Baptist Press."
>
> Caleb please confirm receipt of this statement by both email and text message thanks.
>
> Somewhere over North Atlantic polar region.
>
> RAM
>
> Sent from my iPhone
>
> On Oct 8, 2019, at 6:26 PM, Caleb Shaw <cshaw@sbts.edu> wrote:
>
>> Dr. Mohler, this request just came in from Adelle Banks at RNS. She would like to talk to you about the recent Baptist Press and Jennifer Lyell conversation. How would you like for us to handle this?
>>
>> **Caleb Shaw**
>> *Director of Communications*
>> Office of the President
>>
>> **W** (502) 897- 4139 | **C** (270) 331-1239 | cshaw@sbts.edu
>>
>> **The Southern Baptist Theological Seminary**
>> 2825 Lexington Road, Louisville, KY 40280
>> sbts.edu | T @ctshaw13
>> ---------- Forwarded message ----------
>> **From:** Adelle Banks <adelle.banks@religionnews.com>
>> **Date:** Oct 8, 2019, 1:21 PM -0400

**To:** cshaw@sbts.edu <cshaw@sbts.edu>
**Subject:** Seeking on-deadline comment - please respond

Hi Caleb:

I am working on a story with my colleague Emily McFarlan Miller about terms used in journalistic and biblical discussions when someone has accused someone else of sexual abuse, assault, harassment or misconduct.

I was hoping to reach Dr. Mohler but it looks, based on Twitter, like he's out of the country.

Can you or he confirm that he was involved in discussions with Ronnie Floyd, Sing Oldham and Shawn Hendricks to confirm Jennifer Lyell's assertions about then-Professor David Sills as she tried to get Baptist Press to put a note of clarification on the BP story that referred to their association as a "morally inappropriate relationship" rather than abusive relationship? (She refers to such discussions here: https://www.lyellstatementonabuse.com/)

Does he have a comment on how Baptist Press handled that story and its decision to remove it from its website?

If he is unavailable, is there anyone else who you might suggest would speak to me about these specific and general topics? I wondered, for example, if Garnetta Smith might speak with me this afternoon about the more general topic if not the specific one.

Thanks for your possible assistance. I'd appreciate hearing back from you as soon as possible and may quote from your response as a spokesman for Southern Baptist Theological Seminary.

--

**Adelle M. Banks**

Production Editor and National Reporter

Religion News Service

Mobile Direct 301-284-0402 (Washington)

Office 202-608-1383

Adelle.Banks@religionnews.com

Twitter: AMBankstw

www.religionnews.com

Affiliated with the University of Missouri School of Journalism

# CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Confidential Settlement Agreement and Release of Claims (hereinafter referred to as the "Agreement") is hereby made and entered into by Jennifer Lyell ("Lyell").

WITNESSETH

WHEREAS, Lyell made a claim against The Southern Baptist Theological Seminary ("Seminary") requesting reimbursement of medical and treatment expenses she claimed she incurred as a result of the conduct of former Seminary professor David Sills; and

WHEREAS, Lyell and the Seminary desire to fully and finally settle any claims Lyell could assert.

NOW, THEREFORE, for and in consideration of the terms and conditions set forth in this Agreement, Lyell agrees as follows:

**Payment to Claimant**

No later than five (5) business days after receipt of a signed copy of this Agreement, the Seminary will tender a lump sum payment to Lyell in the amount of One Hundred Thousand Dollars ($100,000) in satisfaction of all claims.

**Complete Release of Seminary**

In return, Lyell, on behalf of herself and her agents, representatives, assigns, heirs, executors, administrators, beneficiaries, attorneys, and anyone claiming through her, releases, acquits, and forever discharges the Seminary as well as its current and former agents, employees, professors (including David Sills), administrators, trustees, officers, attorneys, servants, and all persons or entities connected therewith, of and from any and all claims, actions, causes of action, demands, obligations, damages, costs, or loss which Lyell now has, or which may hereafter accrue to her, on account of, or in any way growing out of, any and all known or unknown,

foreseen and unforeseen, injuries and/or damages and the consequences thereof, resulting from, or connected with the Seminary in any way. Lyell agrees she is responsible for paying all medical bills associated with her treatment and the Seminary bears no responsibility for such expenses.

**Settlement of Claim and Confidentiality**

The compromise and settlement which forms the basis of this Agreement represents a final, mutually agreeable compromise. Lyell has received no inducement, promise, or offer of any kind whatsoever except for the consideration delineated herein and this Agreement is executed without reliance on any statement or representation made by anyone.

Lyell agrees to keep this Agreement and the fact of this settlement strictly confidential and not disclose it to anyone.

**Non-Admission of Liability**

This Agreement shall not in any way be construed to be an admission of wrongdoing or liability by the Seminary, or an admission that Lyell has any rights whatsoever against the Seminary. Lyell agrees the Seminary is making this settlement payment merely in order to resolve any claims and to help Lyell.

**Governing Law**

This Agreement is made and entered into in the Commonwealth of Kentucky and shall in all respects be interpreted, enforced, and governed by the laws of the Commonwealth of Kentucky.

**Full and Independent Knowledge**

Lyell represents and agrees that she has had adequate opportunity to consult with an attorney and that she has carefully read and fully understands all of the provisions of this

Agreement; that she has taken as much time as she needs for full consideration of it; that she is voluntarily entering into this Agreement; and that she has the capacity to enter into this Agreement. Lyell represents and agrees that she fully understands that this Agreement releases all of her claims, both known and unknown, against the Seminary as well as its current and former agents, employees, professors, administrators, trustees, officers, attorneys, servants, and all persons or entities connected therewith.

PLEASE READ CAREFULLY. THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS AS OF THE EFFECTIVE DATE.

______________________________
Jennifer Lyell

Date: _________________________

61884046.1

**Craig Parker**

**From:** Jennifer Lyell
**Sent:** Friday, September 13, 2019 10:57 AM
**To:** Craig Parker
**Subject:** Confidential

Mr. Parker,

I appreciate you passing along the inquiry from the insurance company representing The Southern Baptist Theological Seminary's liability in my claim related to the abuse, injuries, and long-term emotional and physiological damages I experienced as a result of the actions of Dr. David Sills while he was on faculty at The Southern Baptist Theological Seminary. It is imperative for my survival and functionality for me to have the resources to continue receiving treatment for what my therapist and psychiatrist (who is chair of NeuroPsychiatry for the TN Board of Medicine) have both individually stated is the most severe abuse/assault case they have ever encountered in either of their practices. It is also continually disruptive emotionally and physiologically to have the added burden of the logistics it would be to continue filing the invoices and claim paperwork with you all, particularly given the number of years of treatment that all the clinicians involved in my care have indicated it will take for me to achieve whatever the closest version of restoration will be from the trauma forced upon me. I also do not want to be forced to file civil charges in order to pay for the care that is truly keeping me alive, so after speaking with my attorneys, I'm comfortable submitted terms by which your insurance company could process a settlement, rather than processing payment for the invoices I've submitted so far on the open claim and then continuing to do so as my treatment continues for years into the future.

My lead counsel was prepared to submit a demand letter with settlement terms that included all anticipated medical costs that I will be required to pay out of pocket, as well as appropriate damages and financial loss beyond my medical expenses. This included not only those invoices already submitted, but also additional invoices from hospital visits directed by my therapist, medication, and a daily outpatient medical procedure that I did not initially submit. I was attempting to simplify and expedite payment on the claim by focusing on my two primary providers that is about 80% of the expenses thus far. If the settlement proposed below is not accepted, these additional expenses, as well as the comprehensive financial damages through the end of anticipated treatment would also be part of my attorney's response and the escalation of this matter.

However, I am sensitive to the media escalation that would inevitably come with such action and know the further damage that would do to SBTS, so I want to give the insurance company an opportunity to simplify this greatly and avoid an escalation or the reality of medically necessary expenses that my medical team has estimated at $500K, but noted will escalate well beyond that if long term trauma recovery inpatient treatment is ordered, which my doctor and therapist have not yet *ordered*, but have *persistently recommended* as what is needed now and will be inevitably ordered if I do not stabilize soon. As such, I am writing to offer to settle all claims against The Southern Baptist Theological Seminary with the seminary's insurance company under the following settlement terms:

- $300K one time payment to cover all expenses, past and future, regardless of those expenses likely exceeding that amount.
- Payment to be received within 60 days from the receipt of this email.
- I will be willing to sign the necessary paperwork to ensure no further claims against the institution as well as confidentiality regarding the claim.

If this is not accepted, then I will be forced to have my attorney move forward with more forceful action. Given the facts of my case, the extent of damages, the medical records, and the documentation of the professor's guilt and offenses—after consulting with multiple partners at top law firms, they all advised I forego any settlement negotiation and move forward with a civil suit. However, I am submitting this as an opportunity for the seminary to avoid that distraction as well as for me to be able to do so as well. Yet, I want to be clear that I frankly cannot survive without this minimal restitution, which based on counsel input as well as similar case settlements, is frankly far below what I've been advised is actually appropriate for my case. I am hopeful that by proposing a settlement far below what my actual expenses (not to mention non-medical damages) will be as a result of the abusive, injurious, and damaging actions I reported and that were established by SBTS as having been committed against me by a faculty member while employed at SBTS and while acting as an agent of SBTS, will result in an expedient response and resolution to the matter.

Thank you for your assistance in passing this along to the insurance company. Please let me know if you have any questions. I would be grateful for an update as soon as possible.

Sincerely,
Jennifer Lyell

**CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS**

This Confidential Settlement Agreement and Release of Claims (hereinafter referred to as the "Agreement") is hereby made and entered into by Jennifer Lyell ("Lyell").

WITNESSETH

WHEREAS, Lyell made a claim against The Southern Baptist Theological Seminary ("Seminary") requesting reimbursement of medical and treatment expenses she claimed she incurred as a result of the conduct of former Seminary professor David Sills; and

WHEREAS, Lyell and the Seminary desire to fully and finally settle any claims Lyell could assert.

NOW, THEREFORE, for and in consideration of the terms and conditions set forth in this Agreement, Lyell agrees as follows:

**Payment to Claimant**

No later than five (5) business days after receipt of a signed copy of this Agreement, the Seminary will tender a lump sum payment to Lyell in the amount of One Hundred Thousand Dollars ($100,000) in satisfaction of all claims.

**Complete Release of Seminary**

In return, Lyell, on behalf of herself and her agents, representatives, assigns, heirs, executors, administrators, beneficiaries, attorneys, and anyone claiming through her, releases, acquits, and forever discharges the Seminary as well as its current and former agents, employees, professors, administrators, trustees, officers, attorneys, servants, and all persons or entities connected therewith, of and from any and all claims, actions, causes of action, demands, obligations, damages, costs, or loss which Lyell now has, or which may hereafter accrue to her, on account of, or in any way growing out of, any and all known or unknown, foreseen and

unforeseen, injuries and/or damages and the consequences thereof, resulting from, or connected with the Seminary in any way. Lyell agrees she is responsible for paying all past and future medical bills associated with her treatment and the Seminary bears no responsibility for such expenses.

**Settlement of Claim and Confidentiality**

The compromise and settlement which forms the basis of this Agreement represents a final, mutually agreeable compromise. Lyell has received no inducement, promise, or offer of any kind whatsoever except for the consideration delineated herein and this Agreement is executed without reliance on any statement or representation made by anyone.

Lyell agrees to keep this Agreement and the fact of this settlement strictly confidential and not disclose it to anyone.

**Non-Admission of Liability**

This Agreement shall not in any way be construed to be an admission of wrongdoing or liability by the Seminary, or an admission that Lyell has any rights whatsoever against the Seminary. Lyell agrees the Seminary is making this settlement payment merely in order to resolve any claims and to help Lyell.

**Governing Law**

This Agreement is made and entered into in the Commonwealth of Kentucky and shall in all respects be interpreted, enforced, and governed by the laws of the Commonwealth of Kentucky.

**Full and Independent Knowledge**

Lyell represents and agrees that she has had adequate opportunity to consult with an attorney and that she has carefully read and fully understands all of the provisions of this

Agreement; that she has taken as much time as she needs for full consideration of it; that she is voluntarily entering into this Agreement; and that she has the capacity to enter into this Agreement. Lyell represents and agrees that she fully understands that this Agreement releases all of her claims, both known and unknown, against the Seminary as well as its current and former agents, employees, professors, administrators, trustees, officers, attorneys, servants, and all persons or entities connected therewith.

PLEASE READ CAREFULLY. THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS AS OF THE EFFECTIVE DATE.

Jennifer Lyell

Date: 10/15/19

61884046.1

CONFIDENTIAL

273328

**The Southern Baptist Theological Seminary** 10-12
2825 Lexington Road
Louisville, KY 40280

PNC Bank, N.A. 050

21-10/830
7850

ONE HUNDRED THOUSAND AND NO/100 DOLLARS

| Check Date: | Check Number: | Amount: |
|---|---|---|
| 10/17/2019 | 273328 | *****100,000.00 |

Void After 180 Days

Pay to the Order of: Jennifer Lynn Lyell

AUTHORIZED SIGNATURE

⑈273328⑈ ⑆083000108⑆ 3009219301⑈

**The Southern Baptist Theological Seminary** 273328

| Date: | Invoice Number: | Description: | Amount: | Deduction: | Net Amount: |
|---|---|---|---|---|---|
| 10/17/2019 | 101819 | Settlement Payment | 100,000.00 | 0.00 | 100,000.00 |

| Date: | Check Number: | | | | |
|---|---|---|---|---|---|
| 10/17/2019 | 273328 | TOTALS: | 100,000.00 | 0.00 | 100,000.00 |

**The Southern Baptist Theological Seminary** 273328

| Date: | Invoice Number: | Description: | Amount: | Deduction: | Net Amount: |
|---|---|---|---|---|---|
| 10/17/2019 | 101819 | Settlement Payment | 100,000.00 | 0.00 | 100,000.00 |

186214 Jennifer Lynn Lyell

| Date: | Check Number: | | | | |
|---|---|---|---|---|---|
| 10/17/2019 | 273328 | TOTALS | 100,000.00 | 0.00 | 100,000.00 |

CONFIDENTIAL

President's Office <presoffice@sbts.edu>

# Questions for SBC Voices

3 messages

**Dave Miller** <dmille3098@gmail.com> Tue, Nov 26, 2019 at 2:32 PM
To: presoffice@sbts.edu

I have a post that I have prepared for our blog, SBC Voices, which has some admittedly tough questions for Dr. Mohler about his candidacy for SBC President.

I will say, a couple of them are solely mine, but many of them are gleaned from the stuff that is going around the convention.

They are pointed, direct, and difficult questions. I respect Dr. Mohler and admire him, though I am not enamored of the idea of a seminary president being our SBC president. These are not softballs by any means, but neither are they meant to be hostile. They are the questions many people are asking and want to hear responses to.

I would love to include answers from Dr. Mohler to any or all of these questions either as a part of my post or as a separate response.

SBC Voices is a pro-SBC blog, but we also believe that our entities and their leaders, and our officers, should be accountable and should answer tough questions. I hope and pray that Dr. Mohler will. Obviously, it is a holiday week and I am not rushing this to publication. We have a little bit of time!

--
**Dave Miller**
**Southern Hills Baptist Church**

*The content of this email is intended for the recipient only and may not be reproduced without the sender's permission.*

**President's Office** <presoffice@sbts.edu> Tue, Nov 26, 2019 at 3:46 PM
To: Jonathan Austin <jaustin@sbts.edu>

Mail? SO sorry I didn't forward this sooner. I was locked in to SWI stuff!
[Quoted text hidden]
--
**The President's Office**
**P** (502) 897-4121 | presoffice@sbts.edu

**The Southern Baptist Theological Seminary**
2825 Lexington Road, Louisville, KY 40280
**sbts.edu** | **T** @sbts | **F** TheSBTS

 CONFIDENTIAL

**Mohler Questions.docx**
19K

---

**President's Office** <presoffice@sbts.edu> Tue, Nov 26, 2019 at 3:53 PM
To: Jonathan Austin <jaustin@sbts.edu>

Jon,

Please see the email below.

---------- Forwarded message ---------
From: **Dave Miller** <dmille3098@gmail.com>
Date: Tue, Nov 26, 2019 at 2:32 PM
Subject: Questions for SBC Voices
To: <presoffice@sbts.edu>

[Quoted text hidden]

[Quoted text hidden]

---

**Mohler Questions.docx**
19K

I am not sure what history would reveal, but in my decades of involvement in the SBC, I do not remember any candidate announcing his candidacy for the presidency of the SBC in October, even a man standing for reelection. It is often March or April, sometimes February. But October? If that has ever happened before, this old codger doesn't remember it.

Dr. Al Mohler has been a stalwart leader in the Conservative Resurgence of the SBC and I am thankful for that. When I was a young whippersnapper, people did all they could to steer young preacher-boys away from Southern, and from my experience it was for good reason. My Baptist college was staffed mostly by men with doctorates from Southern, with a few Southeasterners mixed in.

- We were told that there was no such thing as predictive prophecy. If an OT book pretended to predict future events it was written after the events.
- We were told by one professor, "Let's face it men, Jesus, Buddha, Mohammed, they are all just different flags under which God flies his name."
- The idea of a personal creature, a fallen angelic being known as Satan was ridiculed and the concept of the blood atonement of Christ scoffed at.
- One year, our "spiritual emphasis" week speaker was a professor from Southern who told us that Jesus never intended to die on the Cross. He made some miscalculations in his political efforts, got caught in the maelstrom and ended up dying for it. I'm not sure he believed the part about the resurrection.

I do not always agree with Dr. Mohler, but being old enough to remember those days I am thankful to God that he sits in the big office there and that Southern holds fast to inerrancy and other key biblical doctrines. And there is no one, other than, perhaps, Dr. Moore, who can articulate Christian positions in a secular world as he does. He is a man of character and conviction who has led his seminary and our convention well.

Having said all that, I have some serious reservations about Dr. Albert Mohler being the next president of the Southern Baptist Convention. I would like to enumerate my concern and ask some questions of Dr. Mohler, which I hope he will answer, here or at some point in his campaign. Some of these are my questions. Some are questions I know others are asking. I realize that simply by asking them, I will be seen as the enemy by some, but I believe it is wholly appropriate to ask tough questions of our leaders and especially of our candidates.

**1. An entity leader becoming president of the SBC is troubling.**

I realize that this has happened before (I believe Paige Patterson was president of Southeastern when he served) and that there is no bylaw that prevents it. It is not contrary to our governing documents, but I find it troubling.

Dr. Mohler is the president of our largest seminary and is involved in running the "Together for the Gospel" conference. He has his "Briefing" and other media involvement. How much does he need on his plate? How much can one man do? Is it wise to concentrate so much power in one man's hands?

Are we so devoid of good leaders that one man needs to do everything?

**Questions**: Dr. Mohler, do you not see any conflicts in your role as President of Southern and President of the SBC? Will either role suffer as you fulfill both roles (all of your roles)? Is it wise for an SBC entity head to stand for the office of SBC President?

**2. The timing of this announcement is curious.**

Some have postulated that the early announcement was an effort to drive away any other candidates and crowd out dissent. That is, of course, a pejorative way of looking at it, but from a political viewpoint, it is the most likely explanation.

Is there another?

NOTE: Please, don't tell me "It was someone else's idea." We have passed the time when the myth of the reluctant candidate is to be believed. These things are carefully coordinated and purposeful.

**Question**: What was the reason behind the unusually early announcement?

**3. There have been suggestions that this is tied to national politics.**

I am aware that other candidates were considering running for this office, men who were seen as much more vocally "Never Trump" than you have been. When I was first told of Mohler's candidacy, it was suggested that it was primarily motivated by concerns about national politics, making sure that there was not a vocal "Never Trump" president during an election year.

In the past, Dr. Mohler has been critical of President Trump, but less so recently.

**Questions:** In your discussions about running, were national politics a concern? What is your current stance on the Trump presidency? Have you retracted your earlier criticism of him?

**4. Is this "The Empire Strikes Back?"**

In the machinations surrounding the abuse report and in other issues, our current president J.D. Greear angered many of the "powers-that-be" by varying from long-standing protocol. He did not do things the way they have always been done. He named names. He did not defer to the power structure or to mega-metro. He ruffled feathers.

Dr. Mohler has been a part of the power circles that were often upset with J.D. Greear. Is Dr. Mohler's candidacy an effort to restore the "inner circle" that has run things in the SBC over the last few decades and to turn back the generational shift that J.D represented?

Let me address the elephant in the room. Most of us are very thankful for the Conservative Resurgence, but we are becoming increasingly aware that power politics corrupted the CR. We have seen our heroes fall and their memories tarnished. While we want doctrinal fidelity we have

no desire to return to the backroom power politics that have been exposed in the letters of Dr. Patterson and in the things that have come to light.

**Question**: Is your candidacy a return to the power politics of the Conservative Resurgence?

**5. Is this about CBMW? CRT? Etc?**

The CBMW is closely linked with Southern Seminary and this has become controversial. Complementarianism is the hottest issue of the last few months. Is it a coincidence that while some are telling Beth Moore to go home and this issue dominates our discussions, Dr. Mohler runs for SBC president?

Dr. Mohler has always been an advocate. He has advocated for conservative doctrines and inerrancy at a school that hated him for it at first. He has advocated for Calvinism in a denomination in which it is a minority position. He advocates for conservative and Christian positions in secular media. He is an excellent advocate. But his ministry has been staking a position and advocating that position. He tends to polarize more than he unites, even among those who appreciate him.

Why is Dr. Mohler running this year (well, next year)? Is it because of national politics? Or is it because he wants to solidify the position of the SBC on issues related to complementarianism? Will he seek, in his two years in office, to normalize the CBMW view of gender issues as THE position for the SBC?

For that matter, what is his relationship at this point with the destructive ministry of the Founders? At one point, they were friendly, but now that Founders and its allies have become what they are, will they have a friendly ear in Louisville?

Let me be clear. Those who hold to the CBMW positions on gender issues have every right to advocate that within the SBC. My concern is not whether they are going to advocate their position but whether the Mohler candidacy is an attempt to enforce that view on the entire SBC.

**Questions:** Will you be the president of all Southern Baptists who adhere to the BF&M 2000, or will you seek to impose a certain view on divisive issues on the entire SBC? What, specifically, is your agenda behind seeking this office? What can a non-Calvinist, continuationist, less-strict complementarian expect from your presidency?

**Specific Question:** Will you, in your term of office, if elected, seek changes in the BF&M, concerning issues related to gender or other hot-button issues?

**6. The abuse issue isn't going away.**

I have been told that Dr. Mohler's handling of Jennifer Lyell's allegations about seminary professor David Sills was exemplary, and the recent allegations about an adjunct professor seem to have been handled equally promptly. But Dr. Mohler has a long history of support of C.J. Mahaney that he has spoken of but which many do not feel he has dealt with adequately.

The abuse issue isn't going away. Dr. Mohler's recent statements on the issue have been strong and encouraging, but will his past association with and defense of Mahaney be a stumbling block.

**Questions:** What do you think of J.D. Greear's efforts in relationship to abuse in our churches and entities and how will you carry forward this issue?

**Why Am I Asking These Questions?**

I have serious questions about Dr. Mohler's candidacy for SBC president. I have no qualms about Dr. Mohler. To my knowledge, he has never embarrassed the SBC as some of our other leaders have in recent years. He has forged a legacy that will be honored for generations to come. He is a luminary, a convention hero.

The great thing about being a Southern Baptist is that we get to ask tough questions of our heroes. Our polity demands that we not put men on pedestals and is violated when we do. We all contributed to the shameful downfall of Dr. Patterson by refusing to question and confront him. The SBC is less healthy when we shrink from questioning our leaders. It is even more unhealthy when our leaders act wounded about being questioned and refuse to answer.

I hold absolutely NO hostility or animosity toward Dr. Albert Mohler. I respect him. I appreciate him. I am thankful for him. But I have reservations about his candidacy for the presidency of the SBC and as a member of a church in fellowship with the SBC, I have the right to ask those questions.

I hope he will answer.

 CONFIDENTIAL

Caleb Shaw <cshaw@sbts.edu>

# Fwd: Questions for SBC Voices

5 messages

**Jonathan Austin** <jaustin@sbts.edu> Tue, Nov 26, 2019 at 3:54 PM
To: Caleb Shaw <cshaw@sbts.edu>

Caleb: see email & attachment below. Please discuss with RAM this afternoon. Thanks.

**Jonathan B. Austin**
**Office of the President | Southern Seminary**
2825 Lexington Road, Louisville, KY 40280
502.897.4121 | jaustin@sbts.edu

---------- Forwarded message ---------
From: **President's Office** <presoffice@sbts.edu>
Date: Tue, Nov 26, 2019 at 3:53 PM
Subject: Fwd: Questions for SBC Voices
To: Jonathan Austin <jaustin@sbts.edu>

Jon,

Please see the email below.

---------- Forwarded message ---------
From: **Dave Miller** <dmille3098@gmail.com>
Date: Tue, Nov 26, 2019 at 2:32 PM
Subject: Questions for SBC Voices
To: <presoffice@sbts.edu>

I have a post that I have prepared for our blog, SBC Voices, which has some admittedly tough questions for Dr. Mohler about his candidacy for SBC President.

I will say, a couple of them are solely mine, but many of them are gleaned from the stuff that is going around the convention.

They are pointed, direct, and difficult questions. I respect Dr. Mohler and admire him, though I am not enamored of the idea of a seminary president being our SBC president. These are not softballs by any means, but neither are they meant to be hostile. They are the questions many people are asking and want to hear responses to.

I would love to include answers from Dr. Mohler to any or all of these questions either as a part of my post or as a separate response.

SBC Voices is a pro-SBC blog, but we also believe that our entities and their leaders, and our officers, should be accountable and should answer tough questions. I hope and pray that Dr. Mohler will. Obviously, it is a holiday week and I am not rushing this to publication. We have a little bit of time!

CONFIDENTIAL

--
**Dave Miller**
**Southern Hills Baptist Church**

*The content of this email is intended for the recipient only and may not be reproduced without the sender's permission.*

--
**The President's Office**
**P** (502) 897-4121 | presoffice@sbts.edu

**The Southern Baptist Theological Seminary**
2825 Lexington Road, Louisville, KY 40280
**sbts.edu** | **T** @sbts | **F** TheSBTS

**Mohler Questions.docx**
19K

---

**Jonathan Austin** <jaustin@sbts.edu> Wed, Nov 27, 2019 at 8:14 AM
To: Caleb Shaw <cshaw@sbts.edu>

Caleb: Does he want to do this interview?

**Jonathan B. Austin**
**Office of the President | Southern Seminary**
2825 Lexington Road, Louisville, KY 40280
502.897.4121 | jaustin@sbts.edu

[Quoted text hidden]

---

**Caleb Shaw** <cshaw@sbts.edu> Wed, Nov 27, 2019 at 8:15 AM
To: Jonathan Austin <jaustin@sbts.edu>

He wants to think about it over the break.

**Caleb Shaw**
*Director of Communications*
Office of the President

**W** (502) 897- 4139 | **C** (270) 331-1239 | cshaw@sbts.edu

**The Southern Baptist Theological Seminary**
2825 Lexington Road, Louisville, KY 40280
sbts.edu | **T** @ctshaw13
[Quoted text hidden]

---

**Jonathan Austin** <jaustin@sbts.edu> Wed, Nov 27, 2019 at 8:18 AM
To: Caleb Shaw <cshaw@sbts.edu>

CONFIDENTIAL

Gotcha... those were some interesting (trap?) questions...

**Jonathan B. Austin**
**Office of the President | Southern Seminary**
2825 Lexington Road, Louisville, KY 40280
502.897.4121 | jaustin@sbts.edu

[Quoted text hidden]

---

**Caleb Shaw** <cshaw@sbts.edu> Wed, Nov 27, 2019 at 9:09 AM
To: Jonathan Austin <jaustin@sbts.edu>

Yeah, they were really aggressive!

**Caleb Shaw**
*Director of Communications*
Office of the President

**W** (502) 897- 4139 | **C** (270) 331-1239 | cshaw@sbts.edu

**The Southern Baptist Theological Seminary**
2825 Lexington Road, Louisville, KY 40280
sbts.edu | T @ctshaw13

[Quoted text hidden]

SBTS000687

I am not sure what history would reveal, but in my decades of involvement in the SBC, I do not remember any candidate announcing his candidacy for the presidency of the SBC in October, even a man standing for reelection. It is often March or April, sometimes February. But October? If that has ever happened before, this old codger doesn't remember it.

Dr. Al Mohler has been a stalwart leader in the Conservative Resurgence of the SBC and I am thankful for that. When I was a young whippersnapper, people did all they could to steer young preacher-boys away from Southern, and from my experience it was for good reason. My Baptist college was staffed mostly by men with doctorates from Southern, with a few Southeasterners mixed in.

- We were told that there was no such thing as predictive prophecy. If an OT book pretended to predict future events it was written after the events.
- We were told by one professor, "Let's face it men, Jesus, Buddha, Mohammed, they are all just different flags under which God flies his name."
- The idea of a personal creature, a fallen angelic being known as Satan was ridiculed and the concept of the blood atonement of Christ scoffed at.
- One year, our "spiritual emphasis" week speaker was a professor from Southern who told us that Jesus never intended to die on the Cross. He made some miscalculations in his political efforts, got caught in the maelstrom and ended up dying for it. I'm not sure he believed the part about the resurrection.

I do not always agree with Dr. Mohler, but being old enough to remember those days I am thankful to God that he sits in the big office there and that Southern holds fast to inerrancy and other key biblical doctrines. And there is no one, other than, perhaps, Dr. Moore, who can articulate Christian positions in a secular world as he does. He is a man of character and conviction who has led his seminary and our convention well.

Having said all that, I have some serious reservations about Dr. Albert Mohler being the next president of the Southern Baptist Convention. I would like to enumerate my concern and ask some questions of Dr. Mohler, which I hope he will answer, here or at some point in his campaign. Some of these are my questions. Some are questions I know others are asking. I realize that simply by asking them, I will be seen as the enemy by some, but I believe it is wholly appropriate to ask tough questions of our leaders and especially of our candidates.

**1. An entity leader becoming president of the SBC is troubling.**

I realize that this has happened before (I believe Paige Patterson was president of Southeastern when he served) and that there is no bylaw that prevents it. It is not contrary to our governing documents, but I find it troubling.

Dr. Mohler is the president of our largest seminary and is involved in running the "Together for the Gospel" conference. He has his "Briefing" and other media involvement. How much does he need on his plate? How much can one man do? Is it wise to concentrate so much power in one man's hands?

Are we so devoid of good leaders that one man needs to do everything?

**Questions**: Dr. Mohler, do you not see any conflicts in your role as President of Southern and President of the SBC? Will either role suffer as you fulfill both roles (all of your roles)? Is it wise for an SBC entity head to stand for the office of SBC President?

**2. The timing of this announcement is curious.**

Some have postulated that the early announcement was an effort to drive away any other candidates and crowd out dissent. That is, of course, a pejorative way of looking at it, but from a political viewpoint, it is the most likely explanation.

Is there another?

NOTE: Please, don't tell me "It was someone else's idea." We have passed the time when the myth of the reluctant candidate is to be believed. These things are carefully coordinated and purposeful.

**Question**: What was the reason behind the unusually early announcement?

**3. There have been suggestions that this is tied to national politics.**

I am aware that other candidates were considering running for this office, men who were seen as much more vocally "Never Trump" than you have been. When I was first told of Mohler's candidacy, it was suggested that it was primarily motivated by concerns about national politics, making sure that there was not a vocal "Never Trump" president during an election year.

In the past, Dr. Mohler has been critical of President Trump, but less so recently.

**Questions:** In your discussions about running, were national politics a concern? What is your current stance on the Trump presidency? Have you retracted your earlier criticism of him?

**4. Is this "The Empire Strikes Back?"**

In the machinations surrounding the abuse report and in other issues, our current president J.D. Greear angered many of the "powers-that-be" by varying from long-standing protocol. He did not do things the way they have always been done. He named names. He did not defer to the power structure or to mega-metro. He ruffled feathers.

Dr. Mohler has been a part of the power circles that were often upset with J.D. Greear. Is Dr. Mohler's candidacy an effort to restore the "inner circle" that has run things in the SBC over the last few decades and to turn back the generational shift that J.D represented?

Let me address the elephant in the room. Most of us are very thankful for the Conservative Resurgence, but we are becoming increasingly aware that power politics corrupted the CR. We have seen our heroes fall and their memories tarnished. While we want doctrinal fidelity we have

no desire to return to the backroom power politics that have been exposed in the letters of Dr. Patterson and in the things that have come to light.

**Question**: Is your candidacy a return to the power politics of the Conservative Resurgence?

**5. Is this about CBMW? CRT? Etc?**

The CBMW is closely linked with Southern Seminary and this has become controversial. Complementarianism is the hottest issue of the last few months. Is it a coincidence that while some are telling Beth Moore to go home and this issue dominates our discussions, Dr. Mohler runs for SBC president?

Dr. Mohler has always been an advocate. He has advocated for conservative doctrines and inerrancy at a school that hated him for it at first. He has advocated for Calvinism in a denomination in which it is a minority position. He advocates for conservative and Christian positions in secular media. He is an excellent advocate. But his ministry has been staking a position and advocating that position. He tends to polarize more than he unites, even among those who appreciate him.

Why is Dr. Mohler running this year (well, next year)? Is it because of national politics? Or is it because he wants to solidify the position of the SBC on issues related to complementarianism? Will he seek, in his two years in office, to normalize the CBMW view of gender issues as THE position for the SBC?

For that matter, what is his relationship at this point with the destructive ministry of the Founders? At one point, they were friendly, but now that Founders and its allies have become what they are, will they have a friendly ear in Louisville?

Let me be clear. Those who hold to the CBMW positions on gender issues have every right to advocate that within the SBC. My concern is not whether they are going to advocate their position but whether the Mohler candidacy is an attempt to enforce that view on the entire SBC.

**Questions:** Will you be the president of all Southern Baptists who adhere to the BF&M 2000, or will you seek to impose a certain view on divisive issues on the entire SBC? What, specifically, is your agenda behind seeking this office? What can a non-Calvinist, continuationist, less-strict complementarian expect from your presidency?

**Specific Question:** Will you, in your term of office, if elected, seek changes in the BF&M, concerning issues related to gender or other hot-button issues?

**6. The abuse issue isn't going away.**

I have been told that Dr. Mohler's handling of Jennifer Lyell's allegations about seminary professor David Sills was exemplary, and the recent allegations about an adjunct professor seem to have been handled equally promptly. But Dr. Mohler has a long history of support of C.J. Mahaney that he has spoken of but which many do not feel he has dealt with adequately.

The abuse issue isn't going away. Dr. Mohler's recent statements on the issue have been strong and encouraging, but will his past association with and defense of Mahaney be a stumbling block.

**Questions:** What do you think of J.D. Greear's efforts in relationship to abuse in our churches and entities and how will you carry forward this issue?

**Why Am I Asking These Questions?**

I have serious questions about Dr. Mohler's candidacy for SBC president. I have no qualms about Dr. Mohler. To my knowledge, he has never embarrassed the SBC as some of our other leaders have in recent years. He has forged a legacy that will be honored for generations to come. He is a luminary, a convention hero.

The great thing about being a Southern Baptist is that we get to ask tough questions of our heroes. Our polity demands that we not put men on pedestals and is violated when we do. We all contributed to the shameful downfall of Dr. Patterson by refusing to question and confront him. The SBC is less healthy when we shrink from questioning our leaders. It is even more unhealthy when our leaders act wounded about being questioned and refuse to answer.

I hold absolutely NO hostility or animosity toward Dr. Albert Mohler. I respect him. I appreciate him. I am thankful for him. But I have reservations about his candidacy for the presidency of the SBC and as a member of a church in fellowship with the SBC, I have the right to ask those questions.

I hope he will answer.



Nov 25, 2020 at 9:52 AM

He says he's going to air for 1 PM EST.

Sounds good

May 10, 2021 at 10:44 AM

Hi Caleb. Does Dr Mohler think that Saddleback is no longer in friendly cooperation the with SBC?

He's going to try to give you a call around 1.

Great

Thanks

Really appreciate your help

May 10, 2021 at 1:49 PM

Delivered

Tue, Jun 14 at 10:27 PM

Hi Caleb. Can I reach Dr Mohler about this Daily Wire story about Jen Lyell. It portrays Sills as a victim and says there was no abuse





CONFIDENTIAL

Caleb Shaw <cshaw@sbts.edu>

# Fwd: Video Recording Request

2 messages

**Matthew Hall** <mhall@sbts.edu> Sat, Oct 23, 2021 at 2:36 PM
To: Caleb Shaw <cshaw@sbts.edu>

Caleb,

Hope your weekend is giving you some time for rest.

Please see the exchange below with Jennifer Lyell. As you can see, she is part of a project (directed by Carolyn McCulley). RAM greenlighted these requests last evening.

Can you help secure a room for them? I'm wondering if Ingram Hall could work. With Expositors Summit going on, everything in Honeycutt is going to be busy.

Also need your help in RAM's schedule. He seemed eager to try to do this on Wednesday afternoon.

Can you coordinate with Jennifer?

MJH

---------- Forwarded message ---------
From: **Jennifer Lyell** <jennifer.lyell@gmail.com>
Date: Sat, Oct 23, 2021 at 2:24 PM
Subject: Re: Video Recording Request
To: Matthew Hall <mhall@sbts.edu>

Matt,

This is such great news. Thank you! Yes, this sounds great. We will definitely be able to accommodate his schedule and juggle whatever to make sure to get the time with him. I'm glad the conversation went well and super appreciate you making the ask. I'll look for the email from Caleb and go from there.

Thanks again!
Jennifer

On Sat, Oct 23, 2021 at 12:54 PM Matthew Hall <mhall@sbts.edu> wrote:

> Jennifer,
>
> Thanks for putting this together. I had a chance to talk about this with Dr. Mohler last night after our Boyce Preview Day event. He seems very eager to accommodate.
>
> So do plan on having a room setup for your sit-down and having access to the campus for b-roll.
>
> He did express a desire to help and willingness to sit down for an interview himself. I think your focus on that article 3 years ago is right on. He did mention that the biggest issue is his schedule as it sounds like he has a limited window on Wednesday and is then traveling.
>
> So I'm going to ask Caleb Shaw in his office (his chief of staff) to reach out to you about scheduling. They will also

be able to confirm a room for the setup.

Sound good?

MJH

On Fri, Oct 22, 2021 at 1:37 PM Jennifer Lyell <jennifer.lyell@gmail.com> wrote:

Matt,

It was good to talk to you yesterday. I'm always glad to hear that things are going well at SBTS and so greatly appreciate the generosity of kindness you and the administration have shown me over the past few years. As I shared on the phone, I'm taking part in a documentary/podcast production with Citygate Films (owned by Carolyn McCulley who previously worked on video projects with many of those we both greatly respect including Dr. Mohler). The piece she's working on will highlight the redemptive arc of Rachael Denhollander's work in advocacy following her own experience as an an assault survivor and also explore the dynamics of others (such as myself) exploring that path and finding the way forward after such a reality that is public and in the context of the church.

I won't rehash my assurances about the approach and tone of the piece, but definitely keep those in full reassurance and top of mind as you process this request!

Okay, without further delay, here are the specifics once again:

- **Filming Permission**: Carolyn McCulley, one cameraman, and I to film on campus at SBTS next Wednesday, October 27 from noon-9PM (we probably won't use that whole window, but this will cover it).
    - **Jennifer Interview Location**: Specifically, I'd be grateful for access to a room that we can use for my talking head sort of interview where I sit in some non-mahogany chair. The background won't be in focus, so just really any space that's out of the way, quiet, and not intrusive for you all would work. If you don't have a space like this we can find another option, but this is just the comfort factor request where I'd prefer to not be in a foreign place.
    - **Common areas**: B roll filming permission on campus of me. I will definitely not want to be doing a ton of this and will be very committed to doing it discreetly if granted permission, so you definitely don't need to worry about that. The places of significance I can imagine her wanting to get include that black and white tile hall going into Honeycutt that I mentioned, around the campus lawn, and probably just the main hall in Norton. If there's a window of time in which Broadus would be available, that's something that would be an appreciated option to have, but I know it may not be possible with the preaching conference.
- **Dr. Mohler Interview**: I'll not restate all of this since we talked about it substantively, but just to summarize, while there's no pressure to do so, Carolyn, Rachael, and I all think it would be incredibly helpful (and potentially historically helpful) if Dr. Mohler were willing to be filmed sharing whatever he feels comfortable sharing about the circumstances, convictions, and feelings under which he wrote his May 23, 2018 blog post on the abuse disclosures in the SBC and then to reflect on his perspective now three years later. Other topics that he's engaged in publicly before that tie into the project include any thoughts or observations on Rachael's work and/or wrestling through the CJ issues, but those two are less prescient than the potential for him to reflect on his perspective about the orthodoxy and orthopraxy disconnects he was responding to in that blog post and from which I've seen him have such courage and humanity. The ideal time for this would be on Wednesday anytime after noon, but if he's willing to do it but unavailable then, Thursday can be juggled to make that work.

Okay, that's it . . . and a lot, I know. Again, please make sure Dr. Mohler knows I don't take any request I make for granted, nor do I feel that I'm owed any special treatment. I definitely do feel the stewardship of the whole of my experiences, though, and SBTS is a huge, huge part of all of it . . . and it is always my joy to be able to reflect the reality that despite all that remains so intolerable, home is still where the beeches are. (so cheesy, but it's true)

All the best-
Jennifer

CONFIDENTIAL

**Caleb Shaw** <cshaw@sbts.edu> **Sat, Oct 23, 2021 at 3:13 PM**
To: Matthew Hall <mhall@sbts.edu>

I'm glad to help coordinate this. I'll confirm a room and lock in Dr. Mohler's interview for early Wednesday afternoon.

Thanks!

**Caleb Shaw**
*Chief of Staff and Executive Assistant to the President*

**O** (502) 897- 4121 | **C** (270) 331-1239 | cshaw@sbts.edu

**The Southern Baptist Theological Seminary**
2825 Lexington Road, Louisville, KY 40280
**sbts.edu** | **T** @ctshaw13
[Quoted text hidden]

 CONFIDENTIAL

**Caleb Shaw <cshaw@sbts.edu>**

## Video Recording

5 messages

**Caleb Shaw** <cshaw@sbts.edu> Sat, Oct 23, 2021 at 11:10 PM
To: Jennifer Lyell <jennifer.lyell@gmail.com>
Cc: "Matthew J. Hall" <mhall@sbts.edu>

Hi Jennifer,

Dr. Hall let me know about your upcoming visit to campus to film on Wednesday. I'm glad to help coordinate and make sure you all have everything you need!

I've confirmed that Ingram Hall is available all Wednesday afternoon. Our video team does quite a bit of filming in there, and Dr. Hall and I think that location in Carver will be quiet and undisturbed by the conference attendees. If it's helpful for you, I can send you some possible chair options on Monday for your interview and for your interview with Dr. Mohler.

Dr. Mohler has a long drive in front of him Wednesday to get to an event, so if it's possible to do the interview with him right at noon that would be best. Will that work for you all?

I'll be around on Wednesday and will be glad to help in any way I can. If we need to make sure hallways are quiet for your B-roll filming, we're glad to help out with that as well. My cell number is (270) 331-1239 in case you need it.

Let me know how I can help.

Grace and peace,
Caleb

**Caleb Shaw**
*Chief of Staff and Executive Assistant to the President*

**O** (502) 897- 4121 | **C** (270) 331-1239 | cshaw@sbts.edu

**The Southern Baptist Theological Seminary**
2825 Lexington Road, Louisville, KY 40280
sbts.edu | **T** @ctshaw13

---

**Caleb Shaw** <cshaw@sbts.edu> Mon, Oct 25, 2021 at 3:02 PM
To: Jennifer Lyell <jennifer.lyell@gmail.com>

Hi Jennifer,

Just to follow up about the chairs for Wednesday, I've attached two options. We also have blue or black wingback chairs that I just don't have pictures of yet. I'm glad to have multiple options available in Ingram Hall on Wednesday if that would be helpful.

Just let me know what you'd prefer.

Thanks!

CONFIDENTIAL

**Caleb Shaw**
*Chief of Staff and Executive Assistant to the President*

**O** (502) 897- 4121 | **C** (270) 331-1239 | cshaw@sbts.edu

**The Southern Baptist Theological Seminary**
2825 Lexington Road, Louisville, KY 40280
sbts.edu | **T** @ctshaw13
[Quoted text hidden]

---

**2 attachments**

**IMG_0776.jpg**
144K

**IMG_0777.jpg**
176K

---

**Jennifer Lyell** <jennifer.lyell@gmail.com> Mon, Oct 25, 2021 at 5:15 PM
To: Caleb Shaw <cshaw@sbts.edu>

Hi Caleb!

So sorry for the lack of response—I've had doctor appointments all day and am still out for that, but want to let you know I'll get back with you on all of this tonight. So sorry for the delay and thanks so much!

Sent from my iPhone

> On Oct 25, 2021, at 2:02 PM, Caleb Shaw <cshaw@sbts.edu> wrote:
>
> [Quoted text hidden]
> <IMG_0776.jpg>
> <IMG_0777.jpg>

CONFIDENTIAL

**Caleb Shaw** <cshaw@sbts.edu> Mon, Oct 25, 2021 at 5:37 PM
To: Jennifer Lyell <jennifer.lyell@gmail.com>

No worries! We're in no rush.

**Caleb Shaw**
*Chief of Staff and Executive Assistant to the President*

**O** (502) 897- 4121 | **C** (270) 331-1239 | cshaw@sbts.edu

**The Southern Baptist Theological Seminary**
2825 Lexington Road, Louisville, KY 40280
**sbts.edu** | **T** @ctshaw13
[Quoted text hidden]

---

**Jennifer Lyell** <jennifer.lyell@gmail.com> Tue, Oct 26, 2021 at 10:36 AM
To: Caleb Shaw <cshaw@sbts.edu>

Hey Caleb!

Could you call me when you are out of chapel so we can talk through all the pending items and knock them out? My cell is 615-495-5765.

Thank you!
[Quoted text hidden]

November 10, 2021

To: File

From: Craig Parker

Re: Jennifer Lyell

Jennifer called me early in the evening on Tuesday, November 9. She expressed her gratitude for all that SBTS, Dr. Mohler, and I had done to aid and support her, but she was calling to ask for a favor. She confided that there had been two unusual, but related, occurrences in her life since we had last spoke. In the first half of 2020 she had reached an out-of-court settlement of her complaints against the SBC Executive Committee, and they had settled the dispute for $1,050,000 in mediation. Jennifer had been advised that she could have gone to court and won a much larger award, but she was eager to get the dispute behind her. She said that the settlement was approved by Dr. Floyd and some of the EC officers, but the full EC membership had not been informed of the agreement. When she told Roland Slade about the settlement after he became EC chairman, he was surprised to hear the news.

The second major occurrence was successful surgery on Jennifer's brain in early 2021 to correct a chemical imbalance that caused her brain to atrophy when she was under severe stress – the kind of stress that she experienced when she was abused as a child, the kind of stress she experienced during her abusive relationship with David Sills, and the stress she experienced during her conflict with the Executive Committee. The surgery would not restore any of the lost brain function, but it should stop any further atrophy of the brain.

Jennifer told me that she thought the settlement with Dr. Floyd and the EC officers would bring her SBC conflict to an end. However, she believes that Dr. Floyd continued to tell lies about her after the settlement, and state newspapers re-ran the old articles which reported Jennifer had a consensual relationship with Dr. Sills. Jennifer called Roland Slade and told him that the falsehoods Dr. Floyd was spreading were causing stress that was harmful to her medical condition. Thus, they would need to negotiate a new financial settlement to compensate her for the damage Dr. Floyd had caused. According to Jennifer, Pastor Slade told her that the EC's legal counsel and insurance company said that they would not negotiate a new settlement with her. If she had a legitimate complaint, she needed to initiate a new lawsuit against the Executive Committee. Jennifer asked if I would call Pastor Slade and tell him how SBTS had negotiated a financial agreement with her without a suit being filed. I assured Jennifer that I was sympathetic, but our agreement bound us to nondisclosure, so I would need authorization to talk to Roland Slade.

I then called Rick Staab to make him aware of Jennifer's request and Dr. Mohler's opinion concerning the request. It was Rick's strong opinion that the Financial Board had made a generous financial settlement with Jennifer, and the settlement closed the seminary's legal obligations to Jennifer. He advised me not to talk to Roland Slade or anyone at the EC on Jennifer's behalf.

On the afternoon of November 10, I called Jennifer to inform her that I had talked to Dr. Mohler, Byron Leet, and Rick Staab to make them aware of her request to have me discuss legal options with Roland Slade. I told her that it was not advisable to discuss the details of her financial settlement with SBTS with any outside entity. She understood our concerns, and thanked me for taking the time to make so many calls in an effort to provide assistance.

Without solicitation, Jennifer admitted that she was aware of Hannah Kate Williams' litigation against SBTS and other SBC entities, and she acknowledged that it would not be wise to broaden the circle of knowledge of a previous sexual abuse settlement at this time. Jennifer commented that she has spoken to Hannah Kate on numerous occasions, and she believes that Hannah Kate has a flawed memory of past events, and her story is not consistent with Jennifer's knowledge of events at SBTS at the time Mr. Williams was a student at SBTS.

Jennifer thanked me again for the effort I had made to assist her, and no further follow-up was requested.

 Jonathan Austin <jaustin@sbts.edu>

## Important Safety and Security Message

1 message

**Campus Police** <campuspolice@sbts.edu> Mon, Apr 11, 2022 at 3:48 PM
Reply-To: police@sbts.edu
Bcc: all-mailboxes@sbts.edu

**To All Students and Employees:**

Extortion scams are a growing danger, both globally and locally, and can reach anyone at Southern Seminary and Boyce College. These attacks come through social media, email, and over the phone, and culminate in a threat to release sensitive data, images, or video of you unless you pay them or meet a set of demands. That sensitive content may be authentic, collected from you as a part of the extortion, or fake content the attacker manufactured. Attackers often impersonate government officials, a customer support representative, or an admirer on social media. Once the attacker threatens you and requests payment, the attacker will often demand you tell no else about the situation. Here are a couple of examples of these types of attacks:

**Example 1:** You receive a phone call from someone claiming to be from the IRS that wants to discuss taxes that you should have paid. The caller threatens that you may go to prison unless you settle the issue by sending them money.

**Example 2:** A new social media follower initiates a conversation via private message, phishing for personal details about yourself and/or personal photos. Once they have the names of your family, friends, and other sensitive information, they threaten to send them an email with explicit content, genuinely or purportedly from you, unless you send them $500 in gift cards.

**How to Minimize the Risk of Being a Victim**

1. Do not engage a person or account with which you are unfamiliar online.

2. Always look up the contact information for the claimed agency or company and call their published phone number to verify the request.

3. Do not share anything online that you wouldn't share with a friend offline.

**What to Do If You Are a Victim**

1. **Do not pay the person threatening you or comply with their demands.** The type of person that would extort you in this way cannot be trusted to maintain their part of the agreement.

2. **Report the attacker's account to the platform on which they engaged you.** For example, if the user started the conversation on Twitter, report the user's account to Twitter. And if the attacker moves the conversation to a different platform, report them there too.

3. **Contact Campus Police (police@sbts.edu).** Victims often feel fear, embarrassment, shame, or guilt. You are not alone in this. Your silence gives your attacker power. Campus Police is equipped to help you and direct you to other authorities and resources as needed.

| Guidepost/Task Force Recommendations | Addressed by | Notes |
|---|---|---|
| **EC-3: (A)** Resource Toolbox - Content | Handbooks; MinistrySafe Training (see note) | Information/training is all offered by SBTS, but not uniformly to all stakeholders |
| **EC-3: (B and C)** Resource Toolbox - Training | MinistrySafe (see note) | Currently not required for staff and no sunset for recertification |
| **EC-3: (D)** Resource Toolbox - Investigative Guidelines | Handbooks | |
| **EC-4:** Self-Certification Program | Compliance Committee review process | Consider MinistrySafe Self-Assessment Tool for more objective evaluation |
| **EC-5: (A)** Enhance Prevention - Background Checks | HR intake process; Events Volunteer/Staff Policy; Employee Handbook | |
| **EC-5: (B)** Enhance Prevention - Offender Information System (OIS) | X | See also--SATF Recommendation #2; look into implications for Lyell and HKW |
| **EC-5: (D)** Enhance Prevention - Code of Conduct | Handbooks; Student Covenant | Look at extending covenantal standards to all stakeholders |
| **EC-6:** Declaration of Principles | Handbooks; RAM letters and public comments | No formal SBTS "declaration" published |
| **EC-7: (A)** Survivor Support Resources - Assistance Program | Handbooks; WSC; Center for Biblical Living | |
| **EC-7: (B)** Survivor Support Resources - Compensation Fund | X | |
| **EC-8:** Non-Disclosure Agreements | X | |
| **EC-9: (A)** Adequate Funding for Reforms - Annual Budget Allocation for Sexual Abuse Prevention/Response | See notes | No single budget allocation earmarked for Sexual Abuse Prevention/Response, but SBTS funds these categories through various programs/departments |
| **EC-10: (A)** Defining Southern Baptist Beliefs Regarding Sexual Abuse | RAM public comments | |
| **EC-11:** Improve Governance at SBC EC by Creating the Position of Chief Ethics and Compliance Officer | SVP of IA | |

| | | |
|---|---|---|
| **EC-12: (A, B, D)** Document Retention Policy | Data Governance and Risk Classification Policy (in process by Campus Tech); HR claims processing and disciplinary procedure | Storage not centralized or audited |
| **EC-12: (C)** Document Retention Policy - Audit Complaints and Mandatory Reports | X | Storage not centralized or audited |
| **EC-13: (A, B, C)** Enhance Compliance Policies | Compliance Committee review process | |
| **EC-14: (B, C, D)** Create a Media Plan to Bring Awareness to Issues of Sexual Abuse | SBTS Communication Plan regarding sexual misconduct | |
| **EC-15: (A)** Acknowledge Survivors - Written Apology | X | SBC Resolution on Lament and Repentance for Sexual Abuse (2022) specifically apologized to Lyell and HKW |
| **EC-16:** Enhance Awareness of Sexual Abuse within SBC Entities | SBTS Communication Plan regarding sexual misconduct | |
| **Appendix H-7:** New Written Criteria for Ordination and Revocation of Ordination Related to Sexual Abuse | X | |
| **SATF Challenge to Entities #4** - Training | MinistrySafe (see note) | No sunset for recertification |
| **SATF Challenge to Entities #5** - Participation in the SBC Sexual Abuse Assessment | X | |
| **SATF Recommendation #2** - Ministry Check Website | X | See also--EC-5B; Recommendation specifies "pastors, denominational workers, ministry employees, and volunteers," but we need to look at including students |

## SBTS Communication Plan
### Sexual Misconduct Awareness, Training, and Prevention

| Frequency | Month | Topic |
|---|---|---|
| Annual | August 22-26 | Dr. Mohler video message addressing:<br>- broader SBC SATF context<br>- voicing Southern's commitment to a safe environment<br>- forecasting communications plan and training |
| Annual | August 22-26 (after RAM video) | Newsletter from Communications distilling Dr. Mohler's talking points, includes reporting resources, and announces training |
| Annual | September 6 | Jon (w/Dr. Akin?) sends out training reminder and information to deans, directors, managers, and supervisors |
| Bi-Annual | September 14 | Newsletter from Communications highlighting Women's Support Coordinator role and introducing Garnetta |
| Rolling and Bi-Annual | September 30 | MinistrySafe training (live or online) with certificate of completion:<br>- initially all FT employees, faculty, and students<br>- rolling basis for new hires and students<br>- must be recertified every two years |
| Monthly Topic #1 | October 19 | Newsletter from Communications regarding policies (e.g. no tolerance for abuse, harassment, bullying, and discrimination, and the need to report such matters) |
| Monthly Topic #2 | November 9 | Newsletter from Communications commending reporting resources and student care (e.g. counseling center, WSC) |
| Annual | January 18 | Dr. Mohler letter:<br>- welcoming students back to campus<br>- Southern's commitment to safe environment<br>- highlighting reporting resources and WSC |
| Monthly Topic #3 | February 8 | Newsletter from Communications stressing importance of reporting misconduct and highlighting reporting resources |
| Bi-Annual | March 8 | Newsletter from Communications highlighting Women's Support Coordinator role and introducing Garnetta |
| Monthly Topic #4 | April 12 | Newsletter from Communications:<br>- all complaints are taken seriously<br>- anti-retaliation<br>- false accusations |

| Monthly Topic #5 | May 3 | Newsletter from Communications commending reporting resources and student care (e.g. counseling center, WSC) |
|---|---|---|
| | | |
| | | |
| Misc | | Posters in high-traffic areas and dorms with reporting resources and encouragement |
| Weekly | | Towers Weekly includes reporting resources and links to latest item of Communication Plan |

 Delete

# SBTS Communication Plan

## Sexual Misconduct Awareness, Training, and Prevention

| Frequency | Month | Topic |
|---|---|---|
| Annual | Late August<br>Early Sept | Dr. Mohler video message addressing:<br>- ~~broader SBC SATF context~~<br>- voicing Southern's commitment to a safe environment<br>- ~~forecasting communications plan and training~~ |
| Annual | Late August (after RAM video) | Newsletter from Communications distilling Dr. Mohler's talking points, includes reporting resources, ~~and announces training~~ |
| Annual | Early September | Jon ~~(w/Dr. Akin?)~~ sends out training reminder and information to deans, directors, managers, and supervisors — Dec/Jan. |
| Bi-Annual | Mid-September | Newsletter from Communications highlighting Women's Support Coordinator role and introducing Garnetta |
| Rolling and Bi-Annual | Late September | MinistrySafe training (live or online) with certificate of completion:<br>- initially all FT employees, faculty, and students<br>- rolling basis for new hires and students<br>- must be recertified every two years |
| Monthly Topic #1 | Mid - Late October | Newsletter from Communications regarding policies (e.g. no tolerance for abuse, harassment, bullying, and discrimination, and the need to report such matters) |
| Monthly Topic #2 | Early November | Newsletter from Communications commending reporting resources and student care (e.g. counseling center, WSC) |
| Annual | Mid - Late January | Dr. Mohler letter:<br>- welcoming students back to campus<br>- Southern's commitment to safe environment<br>- highlighting reporting resources and WSC |
| Monthly Topic #3 | Early February | Newsletter from Communications stressing importance of reporting misconduct and highlighting reporting resources |
| Bi-Annual | Early March | Newsletter from Communications highlighting Women's Support Coordinator role and introducing Garnetta |
| Monthly Topic #4 | Mid-April | Newsletter from Communications:<br>- all complaints are taken seriously<br>- anti-retaliation<br>- false accusations |
| Monthly Topic #5 | Early May | Newsletter from Communications commending reporting resources and student care (e.g. counseling center, WSC) |
| Misc | | Posters in high-traffic areas and dorms with reporting resources and encouragement |
| Weekly | | Towers Weekly includes reporting resources and links to latest item of Communication Plan |

## Chief Compliance Officer or Designee Sexual Harassment and Misconduct Compliance Reviews

| FUNCTION | | REVIEW | FREQUENCY OF REVIEW | DOCUMENTATION EVIDENCING REVIEW | RESPONSIBLE STAFF |
|---|---|---|---|---|---|
| 1. Communications Plan | | | Annual | | |
| | Student Plan | Verify yearly communications plan is implemented. | Annual (date) | Review communications plan and communications and maintain notes evidencing review. | |
| | Faculty and Staff Plan | Verify communications plan is implemented. | Annual (date) | Review communications plan and communications and maintain notes evidencing review. | |
| 2. Sexual Harassment and Sexual Misconduct Training | | | | | |
| | Students | Verify completion of training. | Annual (date) | Review and initial record evidencing completion of training prepared by [position]. | |
| | Faculty and Staff including Health and Recreation and Children's Department employees | Verify completion of training. | Annual (date) | Review and initial record evidencing completion of training prepared [position]. | |
| | D3 Staff | Verify completion of training and acknowledgement by staff re responsibilities | Annual (date) | Review and initial record evidencing completion of training prepared by [position]. | |

Chief Compliance Officer or Designee Sexual Harassment and Misconduct Compliance Reviews

| | | | | | |
|---|---|---|---|---|---|
| | | children activities including two-deep staff supervision. | | Indicating that appropriate supervision was routinely conducted throughout the year. | |
| 6. Investigations | | | | | |
| | Training tailored for Deans, RDs, WSC | Verify that Deans, RDs, and WSC receive tailored training to assist with complaint handling and investigative process. | Onboarding and every two years or upon new onboarding, (date) | Review and initial record evidencing completion of training prepared by [position]. | |
| | Navex Complaints | Verity that Navex complaints are assigned to appropriate Dean. | Annual (date) | Review and initial monthly report prepared by Stephanie Widener summarizing allegations and identifying assigned Dean | |
| | Complaint/Investigations Log | Verify that all complaints are recorded on an intake log and all matters are promptly and thoroughly investigated/examined through resolution. | Biannual (date) | Review and initial logs twice a year and maintain notes describing assessment. | |
| | Investigative records | Verify that investigative files contain witness interview notes, documents provided by reporter, | | Receive and initial memo from [position] indicating that required records were maintained/deficient. | |

## Chief Compliance Officer or Designee Sexual Harassment and Misconduct Compliance Reviews

| | | | | | |
|---|---|---|---|---|---|
| | | respondent and third parties, investigative reports, and notification and decision records. | | If deficiency is identified, ensure corrective measure were undertaken and describe actions in memo. | |
| 7. Policies and Procedures including Student Handbook, Employee Handbook, and Health and Recreation policies and procedures | | Review for Sufficiency and revise if gaps identified | Every two years (date). | Create and maintain notes describing review and gaps identified/corrective steps if appropriate. | |
| | Student Handbook | Verify students are informed each year that each student is responsible for reading the handbook and abiding by the Seminary's and Boyce's policies. | Annual (date) | Receive and initial memo from deans of students indicating that students were informed of responsibility. | |
| | Faculty and Staff Handbook | Verify acknowledgement certifications are completed (new hires) | Annual (date) | Receive and initial memo from [position] reporting on the completion status of certifications. | |
| | Child Protective Plan | Verify acknowledgement certifications are completed (new hires or retraining) | Annual (date) | Receive and initial memo from [position] reporting on the completion status of certifications. | |
| 8. Report to Board of Directors | | Report on progress of compliance program including summary of | Biannual (date) | Twice a year records of Board agenda and | |

Commented [SD1]: Brent Small?

Commented [SD2]: Director of HRC?

## Chief Compliance Officer or Designee Sexual Harassment and Misconduct Compliance Reviews

| | complaints, investigations, and findings. | | minutes reflecting that report occurred. | |
|---|---|---|---|---|
| 9. Periodic Audit of Policies and Procedures | Ensure audit is undertaken to assess effectiveness of policies and procedures including a review of recordkeeping, communications, training, prompt investigations, and reasonable resolutions. Ensure corrective actions are taken to address deficiencies. | Every 3 years | | |

This is not an exhaustive list of CCO's responsibilities and may need to be modified after recommendations to policies and procedures are adopted. CCO should periodically meet with Deans, HR and WSC to obtain feedback on the implementation of the sexual harassment and sexual misconduct compliance program.

 Jonathan Austin <jaustin@sbts.edu>

## RAM Communications RE: Sexual Misconduct

1 message

**Aaron Woodall** <awoodall@sbts.edu> Wed, Aug 10, 2022 at 3:39 PM
To: Jonathan Austin <jaustin@sbts.edu>

Jon:

After conducting my own research and consulting with the President's Office, it looks like Dr. Mohler has only sent out one letter to the campus regarding sexual misconduct. No videos have been recorded as of yet.

The letter (attached) is dated September 30, 2021. It's focus is sexual misconduct reporting--referencing the Seminary's hotline, Guidepost, and Garnetta.

Aside from this letter, the only messaging SBTS has sent out on the subject (aside from MinistrySafe training) is through Towers. Every Towers Weekly email sent out in 2022 has included the sexual misconduct reporting information.

Numbers 6:24-26,

Aaron Woodall
*Executive Assistant to the*
Senior Vice President for Institutional Administration
Office of Institutional Administration

**The Southern Baptist Theological Seminary**
2825 Lexington Road, Louisville, KY 40280
**O:** (502) 897-4620

**C:** (512) 745-0937

---

**Correspondence from Dr. Mohler (1).pdf**
383K

THE SOUTHERN BAPTIST THEOLOGICAL SEMINARY

Office of the President

September 30, 2021

Dear Southern Seminary and Boyce College Community:

As we continue into the academic year, I wanted to take a moment to remind the entire Southern Seminary and Boyce College community, including all faculty, employees, and students, as well as Sodexo and Pioneer, of the importance of reporting any concerns of inappropriate behavior. Southern takes all complaints of inappropriate behavior, sexual harassment, and sexual abuse seriously and encourages members of our community to report them.

In case of an emergency where someone's safety is at risk, please call 911 immediately. If you or anyone you know at Southern has experienced such behavior, please make a report to the Seminary's 24-hour Confidential Reporting Hotline: 866-458-3958.

Reports to the Confidential Reporting Hotline can be provided in both true name and anonymously. However, it should be noted that anonymous reports may limit the ability to conduct a thorough investigation.

In addition to the above reporting systems, we continue to engage Guidepost Solutions (Guidepost) to review any concerns of misconduct and improve our policies and procedures. You can contact them directly at Southern@guidepostsolutions.com. Guidepost will respect your request for confidentiality and has trauma-informed investigators to assist.

If you are in need of support as a result of abuse or harassment, please contact Garnetta Smith, the Women's Support Coordinator at extension 4792.

Sincerely,

R. Albert Mohler, Jr., President

2825 Lexington Road • Louisville, Kentucky 40280
Telephone (502) 897-4121 • Fax (502) 899-1770 • www.sbts.edu

Caleb Shaw <cshaw@sbts.edu>

**(no subject)**
4 messages

**Wolfson, Andy** <awolfson@courier-journal.com> Mon, May 23, 2022 at 11:29 AM
To: "cshaw@sbts.edu" <cshaw@sbts.edu>

Greetings. I have been asked to do a story today about the Guideposts report. I saw and read the transcript today with Dr. Mohler's comments about it, but I was wondering if he would be willing and able to respond to a few additional questions about it.

--Are you pleased the reported cited SBTS and you for standing up for Jeffifer Lyell?

--Commenting on the report in a tweet the other day, she said: "Tonight there are children, teens, and adults going to bed having been sexually exploited, abused, and assaulted in SBC churches that the @SBCExecComm
heard about and did nothing to stop or serve. *It will not stop being the case because this report is out.* (emphasis added)

Do you agree with her observation? What value do you think the report has?

--In another tweet, Ms. Lyell said: "I will be completely unavailable today and not engaging any calls, texts, emails, or messages. I do not know if I will ever comment on the forthcoming report on the SBC, but *I am done with the SBC/evangelicalism in any and every form*. (Emphasis added)

Are you disappointed that she is has turned against the denomination, apparently?

If you have any thoughts on these questions and could write or call me, I would appreciate it. Thanks. Andy Wolfson

Andrew Wolfson
Staff Writer
The Courier-Journal
525 West Broadway
Louisville, KY 40202
502-582-7189 (o)
502-396-5853 (c)

**Caleb Shaw** <cshaw@sbts.edu> Mon, May 23, 2022 at 11:33 AM
To: Albert Mohler <mohler@sbts.edu>

CONFIDENTIAL

The Southern Baptist Theological Seminary Mail - (no subject) 11/15/22, 1:07 PM

**Caleb Shaw**
*Chief of Staff and Executive Assistant to the President*

**O** (502) 897- 4121 | **C** (270) 331-1239 | cshaw@sbts.edu

**The Southern Baptist Theological Seminary**
2825 Lexington Road, Louisville, KY 40280
sbts.edu | T @ctshaw13
[Quoted text hidden]

---

**Caleb Shaw** <cshaw@sbts.edu> Mon, May 23, 2022 at 2:08 PM
To: "Wolfson, Andy" <awolfson@courier-journal.com>

Hi Andy,

I'm working with Dr. Mohler to get responses to you. Just didn't want you to think I'm ignoring you. Should have them fairly soon.

Thanks,

**Caleb Shaw**
*Chief of Staff and Executive Assistant to the President*

**O** (502) 897- 4121 | **C** (270) 331-1239 | cshaw@sbts.edu

**The Southern Baptist Theological Seminary**
2825 Lexington Road, Louisville, KY 40280
sbts.edu | T @ctshaw13
[Quoted text hidden]

---

**R. Albert Mohler** <mohler@sbts.edu> Mon, May 23, 2022 at 2:47 PM
To: Caleb Shaw <cshaw@sbts.edu>

I knew from the beginning that the Guideposts report would include information about the abuse of Jennifer Lyell by a faculty member and the subsequent issues related to the SBC Executive Committee. From the beginning we were prepared and determined to assist the investigators in any way possible and to support their work. What happened to Jennifer was sexual abuse, unquestionably. She is absolutely right that the release of the report is the beginning and not the end of our challenge as a convention of churches. I do have confidence in Southern Baptists, and particularly confidence in Christ-loving Southern Baptist churches, and I am absolutely confident that this investigation will move Southern Baptists to action.

I am praying for all who have been hurt, all who have been disappointed, all who have been frustrated, as these reports have come to light. The real test for Southern Baptists is in how we deal with these sins, now that they have been exposed and are in the light
[Quoted text hidden]

https://mail.google.com/mail/u/0/?ik=500b654afb&view=pt&search...msg-f%3A1733641439484666393&simpl=msg-f%3A1733643870403464096 Page 2 of 2

SBTS000714

CONFIDENTIAL

Caleb Shaw <cshaw@sbts.edu>

## Re: SBC Report

2 messages

**Caleb Shaw** <cshaw@sbts.edu> Mon, May 23, 2022 at 2:54 PM
To: "Wolfson, Andy" <awolfson@courier-journal.com>

Andy,

Please see the following statement from Dr. R. Albert Mohler, Jr.:

"I knew from the beginning that the Guidepost report would include information about the abuse of Jennifer Lyell by a faculty member and the subsequent issues related to the SBC Executive Committee. From the beginning we were prepared and determined to assist the investigators in any way possible and to support their work. What happened to Jennifer was sexual abuse, unquestionably. She is absolutely right that the release of the report is the beginning and not the end of our challenge as a convention of churches. I do have confidence in Southern Baptists, and particularly confidence in Christ-loving Southern Baptist churches, and I am absolutely confident that this investigation will move Southern Baptists to action.

I am praying for all who have been hurt, all who have been disappointed, all who have been frustrated, as these reports have come to light. The real test for Southern Baptists is in how we deal with these sins, now that they have been exposed and are in the light."

**Caleb Shaw**
*Chief of Staff and Executive Assistant to the President*

**O** (502) 897- 4121 | **C** (270) 331-1239 | cshaw@sbts.edu

**The Southern Baptist Theological Seminary**
2825 Lexington Road, Louisville, KY 40280
sbts.edu | T @ctshaw13

On May 23, 2022, 2:08 PM -0400, Caleb Shaw <cshaw@sbts.edu>, wrote:

> Hi Andy,
>
> I'm working with Dr. Mohler to get responses to you. Just didn't want you to think I'm ignoring you. Should have them fairly soon.
>
> Thanks,
>
> **Caleb Shaw**
> *Chief of Staff and Executive Assistant to the President*
>
> **O** (502) 897- 4121 | **C** (270) 331-1239 | cshaw@sbts.edu
>
> **The Southern Baptist Theological Seminary**
> 2825 Lexington Road, Louisville, KY 40280
> sbts.edu | T @ctshaw13
>
> On May 23, 2022, 11:29 AM -0400, Wolfson, Andy <awolfson@courier-journal.com>, wrote:
>
> > Greetings. I have been asked to do a story today about the Guideposts report. I saw and read the transcript today with Dr. Mohler's comments about it, but I was wondering if he

CONFIDENTIAL

> would be willing and able to respond to a few additional questions about it.
>
> --Are you pleased the reported cited SBTS and you for standing up for Jeffifer Lyell?
>
> --Commenting on the report in a tweet the other day, she said: "Tonight there are children, teens, and adults going to bed having been sexually exploited, abused, and assaulted in SBC churches that the @SBCExecComm
> heard about and did nothing to stop or serve. *It will not stop being the case because this report is out.* (emphasis added)
>
> Do you agree with her observation? What value do you think the report has?
>
> --In another tweet, Ms. Lyell said: "I will be completely unavailable today and not engaging any calls, texts, emails, or messages. I do not know if I will ever comment on the forthcoming report on the SBC, but *I am done with the SBC/evangelicalism in any and every form.* (Emphasis added)
>
> Are you disappointed that she is has turned against the denomination, apparently?
>
> If you have any thoughts on these questions and could write or call me, I would appreciate it. Thanks. Andy Wolfson
>
> Andrew Wolfson
> Staff Writer
> The Courier-Journal
> 525 West Broadway
> Louisville, KY 40202
> 502-582-7189 (o)
> 502-396-5853 (c)

---

**Wolfson, Andy** <awolfson@courier-journal.com> Mon, May 23, 2022 at 3:23 PM
To: Caleb Shaw <cshaw@sbts.edu>

Thanks

Andrew Wolfson
Staff Writer
The Courier-Journal
525 West Broadway
Louisville, KY 40202
502-582-7189 (o)
502-396-5853 (c)

---

**From:** Caleb Shaw <cshaw@sbts.edu>
**Sent:** Monday, May 23, 2022 2:54 PM
**To:** Wolfson, Andy <awolfson@courier-journal.com>
**Subject:** Re: SBC Report

CONFIDENTIAL

The Southern Baptist Theological Seminary Mail - Re: SBC Report 11/15/22, 1:07 PM

[Quoted text hidden]

https://mail.google.com/mail/u/0/?ik=500b654afb&view=pt&search...msg-f%3A1733644355401569274&simpl=msg-f%3A1733646165468020627 Page 3 of 3

SBTS000717

 Caleb Shaw <cshaw@sbts.edu>

## media inquiry - NBCNews.com

3 messages

**Ortiz, Erik (NBCUniversal)** <Erik.Ortiz@nbcuni.com> Mon, May 23, 2022 at 6:39 PM
To: "cshaw@sbts.edu" <cshaw@sbts.edu>

Hi Caleb, I'm reaching out to see if SBTS is commenting on the report commissioned by the SBC from yesterday that also includes allegations made by Jennifer Lyell?

If there is any statement about anything in the report, let me know.

Thank you,

**Erik Ortiz** | Staff Writer | www.nbcnews.com

30 Rockefeller Plaza, New York, NY 10112

646-385-2528 (c)

**Caleb Shaw** <cshaw@sbts.edu> Mon, May 23, 2022 at 10:03 PM
To: "Ortiz, Erik (NBCUniversal)" <Erik.Ortiz@nbcuni.com>

Erik,

Please see the following statement from our president, Dr. Albert Mohler:

"I knew from the beginning that the Guidepost report would include information about the abuse of Jennifer Lyell by a faculty member and the subsequent issues related to the SBC Executive Committee. From the beginning we were prepared and determined to assist the investigators in any way possible and to support their work. What happened to Jennifer was sexual abuse, unquestionably. The release of the report is the beginning and not the end of our challenge as a convention of churches. I do have confidence in Southern Baptists, and particularly confidence in Christ-loving Southern Baptist churches, and I am absolutely confident that this investigation will move Southern Baptists to action.

I am praying for all who have been hurt, all who have been disappointed, all who have been frustrated, as these reports have come to light. The real test for Southern Baptists is in how we deal with these sins, now that they have been exposed and are in the light."

We're glad to respond to specific questions if you have them.

Sincerely,

**Caleb Shaw**

*Chief of Staff and Executive Assistant to the President*

**O** (502) 897- 4121 | **C** (270) 331-1239 | cshaw@sbts.edu

**The Southern Baptist Theological Seminary**
2825 Lexington Road, Louisville, KY 40280
**sbts.edu** | **T** @ctshaw13

[Quoted text hidden]

---

**Ortiz, Erik (NBCUniversal)** <Erik.Ortiz@nbcuni.com> Tue, May 24, 2022 at 9:20 AM
To: Caleb Shaw <cshaw@sbts.edu>

Got it, thank you for sharing.

[Quoted text hidden]

CONFIDENTIAL

The Southern Baptist Theological Seminary Mail - For Mr. Shaw and Dr. Mohler 11/15/22, 1:06 PM

Caleb Shaw <cshaw@sbts.edu>

## For Mr. Shaw and Dr. Mohler

5 messages

**Lee Enochs** <lenochs66@gmail.com> Thu, May 26, 2022 at 2:56 PM
To: cshaw@sbts.edu

Dear Mr. Shaw,

Thank you for our talk this morning. I just left you a message and wanted to let you know that my Op-Ed will not be published this Sunday and I am thankful for that since large sections of the Op-Ed were edited and taken in a direction that I had never intended.

Here is my Podcast Today on the SBC abuse scandal where I mention Dr. Mohler.

https://www.kntu.com/2022/05/26/the-lee-enochs-show-episode-2/

It was very clear to me that the angle one of the editor's was taking was to impugn the integrity of Dr. Mohler and I was absolutely not comfortable with that. Here is what I wrote about Mohler in my Op-Ed.

"Words cannot express the gratitude and appreciation I have for the ministry of President Mohler who spent time with me when I was a very young man, and who showed me the value of Evangelical Christian theology.

In the late 1990's, I paid a visit to the Southern Baptist Theological Seminary and spent a couple of hours with Mohler who showed me his massive, 150, 000 volume library, and personally impressed upon me the importance of Evangelical Christian theology.

During that visit, Mohler also explained to me the value of studying the theology of magisterial Protestant Reformation theologians Martin Luther and John Calvin, who greatly emphasized the Evangelical doctrine of "justification by grace alone." From that visit to the Southern Baptist Theological Seminary and personal conversation with Mohler, I also learned about the theology of the late Princeton Theological Seminary theologians Charles Hodge and B.B. Warfield, who also believed in the doctrine of Biblical inerrancy.

Additionally, during my formidable visit to the Southern Baptist Theological Seminary, I managed to read large sections of Mohler's 340 page doctoral dissertation entitled, "Evangelical theology and Karl Barth: representative models of response," housed in the seminary library.

Reading Mohler's PhD dissertation made a significant impact on me personally when I again encountered the theology of Karl Barth in my several classes with Dr. George Hunsinger while I was a graduate student at Princeton Theological Seminary."

https://mail.google.com/mail/u/0/?ik=500b664afb&view=pt&search...=msg-f%3A1733919526518773260&simpl=msg-f%3A1733920888531710499 Page 1 of 3

SBTS000720

CONFIDENTIAL

Please tell Dr. Mohler I said hello and that I greatly appreciate him.

Sincerely in Christ,

Lee Enochs

---

**Caleb Shaw** <cshaw@sbts.edu> Thu, May 26, 2022 at 3:33 PM
To: Lee Enochs <lenochs66@gmail.com>

Glad we could talk this morning, Lee. Grateful for you taking this stand.

Blessings on you!

**Caleb Shaw**
*Chief of Staff and Executive Assistant to the President*

**O** (502) 897- 4121 | **C** (270) 331-1239 | cshaw@sbts.edu

**The Southern Baptist Theological Seminary**
2825 Lexington Road, Louisville, KY 40280
sbts.edu | **T** @ctshaw13
[Quoted text hidden]

---

**Lee Enochs** <lenochs66@gmail.com> Thu, May 26, 2022 at 3:44 PM
To: Caleb Shaw <cshaw@sbts.edu>

Thanks. It is clear to me now that he has an agenda against Dr. Mohler. His last email said that if Mohler did not report this to the police he is part of the scandal. Yet the report you mentioned today says he was pointed out as an example of a person that did the right thing in reporting abuse. The editor also took out major sections of my Op-Ed and put his own theology in there. At one point I put a clear gospel message and mentioned the theology of Martin Luther and he replaced that with a quote from a Catholic scholar!

Secular Journalism is often a very dark place and they often edit out my clear Christian messages.

Thanks Again,
Lee
[Quoted text hidden]

---

**Caleb Shaw** <cshaw@sbts.edu> Thu, May 26, 2022 at 3:48 PM
To: Lee Enochs <lenochs66@gmail.com>

Lee,

Attached is the screenshot of Dr. Mohler's email to Jennifer Lyell that was published in the report. I think that clearly answers the question on how he handled this situation with integrity.

Thanks,

**Caleb Shaw**

CONFIDENTIAL

*Chief of Staff and Executive Assistant to the President*

**O** (502) 897- 4121 | **C** (270) 331-1239 | cshaw@sbts.edu

**The Southern Baptist Theological Seminary**
2825 Lexington Road, Louisville, KY 40280
sbts.edu | T @ctshaw13
[Quoted text hidden]

**Screen Shot 2022-05-26 at 2.47.15 PM.png**
143K

**Lee Enochs** <lenochs66@gmail.com> Thu, May 26, 2022 at 4:10 PM
To: Caleb Shaw <cshaw@sbts.edu>

Yes. It is very clear to me that this editor has an agenda of destruction against Dr. Mohler. I cannot communicate anything but the diametrical opposite position. The whole thing has taught me a lesson that the Bible is clear in Psalm 1, "Blessed is the man who walks not in the counsel of the ungodly and sits in the seat of the scornful." I also am very mindful of the Ten Commandments in Exodus 20 which clearly says, "Thou shall not bear false testimony." I will not bear false testimony against Al Mohler in order that my article can appear in the editorial page of a newspaper. I want to follow Jesus Christ and obey God in a very secular and godless culture of secular journalism.

Sincerely in Jesus,
Lee
[Quoted text hidden]

JUN 01 2022

I hereby acknowledge that I received a letter in the President's Office of Southern Baptist Theological Seminary on June 1, 2022, addressed as follows:

Dr. R. Albert Mohler, Jr.
Office of the President
PERSONAL AND CONFIDENTIAL
2825 Lexington Road
Louisville, KY 40280

The letter was hand-delivered by Roger S. Oldham on June 1, 2022.

Name: OFF Jim Lawson

Position: Police Officer

Signature: Jim Lawson

Date: 06-01-22

Oldham's Signature and Date

Signature: Roger S Oldham

Date: 06/01/2022

June 1, 2022

Dr. R. Albert Mohler, Jr.
Office of the President
PERSONAL AND CONFIDENTIAL
2825 Lexington Road
Louisville, KY 40280

Dear Dr. Mohler,

Ms. Jennifer Lyell texted me and called me on Saturday, May 28, 2022. Her text message was pleading; her voice was plaintive; her anguish is real. She wants me to fix something that is beyond my power to fix.

The only person, other than the Lord himself, who can ease her pain and create the redemptive narrative she so desperately needs is you. You alone heard both sides of the story she conveyed to you about Dr. Sills four years ago. You received and apparently believed her report. You followed up with Dr. Sills and heard his report. You allowed him to resign.

Feel the weight of that. You received and apparently believed her report. You followed up with Dr. Sills and heard his report. You allowed him to resign.

I've seen you use the phrase "I've encouraged her [Ms. Lyell] to report to law enforcement" many times, again as recently as last week.

I appeal to you as a man, as a Christian man, as a minister of the Gospel, and as one who claims to have conviction to lead — please reach out to Jennifer Lyell and make this offer immediately.

Tell her you no longer merely "encourage" her to report to law enforcement. Tell her you will not rest until you set a time to drive from Louisville to Nashville, pick her up, and accompany her to Louisville's Special Victims Unit to report that she was repeatedly sexually abused by Dr. Sills over a twelve-year span of time.

As you must be aware, sexual abuse is a criminal act in Kentucky, a crime for which there is no statute of limitations. If Dr. Sills did, in fact, repeatedly abuse Ms. Lyell as she claims, he needs to be held criminally liable and accountable for his actions.

I'm sure it will be hard to take such a courageous step. On June 1, 2018, your press team released a statement to the *Biblical Recorder* as follows: "President [Al] Mohler received the resignation of Dr. David Sills from the Southern Seminary faculty on May 23, 2018."

It continued, "Southern Seminary is committed to the highest standards both in principle and policy. Our policies and principles are clear and consistently applied. Because this is a personnel matter, we cannot comment further."

Then in March 2019, when you had opportunity to speak clearly, you did not affirm "Yes, Ms. Lyell was criminally sexually assaulted while a student at SBTS." Neither did you affirm "No, Ms. Lyell was not criminally sexually assaulted while a student at SBTS." Rather you merely affirmed that you "stand behind her" in her public statement and "believe she is acting righteously." In other words, you put the full onus of her claim on her shoulders alone by providing no corroboration that criminal activity had taken place on your campus.

At no point did you affirm and assert that Dr. David Sills had engaged in criminal sexual misconduct. Your failure to assert this one corroborating piece of information contributed to the publishing of a news story that has led to a multi-year ordeal for Ms. Lyell.

Most Southern Baptists know that a twelve-year inappropriate sexual relationship is grounds for immediate termination from a ministry position. Few, though, would think it appropriate to allow a minister who confessed to such actions to quietly resign and move on. Most would call that passing on a bad actor.

Southern Baptists also know that anyone who knows of or suspects that sexual abuse has taken place should report to law enforcement. It may be that Kentucky allows university presidents and presidents of other institutions of higher learning to use their discretion as to whether they report criminal sexual misconduct to law enforcement that occurs on their campus; but most Southern Baptists would not see the distinction between the *legal* responsibility to do so and the *moral* responsibility to do so.

Again, at issue is this: Did Ms. Lyell report a crime to you? If so, what did you do with that information? If you failed to report it at the time because Ms. Lyell asked you to keep it a private matter, that may give you an out for June 2018 through March 2019; but the moment she decided to go public with her statement, if you truly believed her report as she has repeatedly claimed, you had a moral duty to affirm her unequivocally in her most vulnerable hour.

While you are not alone in this failure to report, you bear a singular duty. What you did, and what you continue to do, is place the entire weight of reporting this crime to law enforcement squarely on the shoulders of Ms. Lyell, a crushing weight she cannot sustain but apparently must bear alone.

CONFIDENTIAL

Perhaps you have offered to accompany her to the Special Victims Unit of the metro Louisville police department and surround her with loving support while she reports a series of crimes she says she had to endure for many years, all of which began under your watch at SBTS. I don't know.

As the president who received her report about a crime occurring on your campus, you surely have standing to file such a complaint against her alleged abuser even without accompanying her to do so. I have not seen a news story to that end. I am pretty certain it would be newsworthy.

I truly believe the single act of making such a report will rewrite the narrative of the past 39 months of Ms. Lyell's life. It will reframe the information the Baptist Press team had to work with in March of 2019, allowing a new story to be written by the current Baptist Press team, with additional detail, including legal corroboration, to surround her and support her for her dauntless courage. It will prove the lie of individuals who have said and written inexcusably harsh and hurtful things about her. It will release her from the bondage that hinders her from moving forward with her life into a brighter tomorrow.

I close with this observation. The Samaritan who came on the man who was beaten and bloodied on the side of the road did not say, "I encourage you to report to the nearby inn. They'll tend to you, feed you, shelter you, and bind up your wounds."

It has often been said, "We practice what we believe; all the rest is just religious talk." This is your moment. I pray that you will have the courage, the compassion, and the conviction to lead, to reach out to Ms. Lyell and let her know you cannot rest until you have assisted her in her continuing hours of darkest need. She told me she was changing her cell phone number within the hour of our conversation, but gave her email address as jennifer.lyell@gmail.com. Or you can direct message her through twitter.

Sincerely and In Christ,

Roger S. (Sing) Oldham

Case 3:23-cv-00478 Document 457-13 Filed 11/25/25 Page 94 of 137 PageID #: 17937

SBTS000726

Run-off Nominees:

John L. Yeats
Mike P. Keahbone
Rolland E. Slade

With the ballots tallied, Currence announced a tie between two nominees: Mike P. Keahbone and Rolland E. Slade.

Chairman Slade conceded the seat to Mike P. Keahbone.

Ann Watts raised a point of order, stating that Chairman Slade should have withdrawn prior to the first run-off vote, and requesting a run-off between John L. Yeats and Mike P. Keahbone.

Currence provided an explanation and asked for members to vote on whether or not Chairman Slade's concession should be sustained. Standing vote was taken.

52 in favor of sustaining Chairman's decision to concede
9 opposed to the Chairman's decision to concede
Affirmative passes. Chairman Slade's decision to concede stands. Mike P. Keahbone will serve as the sixth member of the President Search Team.

20. The session entered executive session to hear updates from legal counsel and to consider a confidential recommendation related to a separation agreement.

21. Chairman Slade reported on actions taken in executive session.

    a. The following recommendation, presented by interim legal counsel was considered and approved by the board.

    **RECOMMENDATION:** That the Southern Baptist Convention Executive Committee authorize a resolution with Jennifer Lyell that includes a release of past, present, and future legal claims.

    b. Credentials Committee brought no report or recommendations.
    c. The following recommendation, presented by the Officers of the Board, was considered and approved by the board, authorizing a confidential separation agreement for former CFO, Jeff Pearson.

    **RECOMMENDATION:** That the Southern Baptist Convention Executive Committee authorize the Confidential Post-Employment Agreement with SBC Executive Committee Chief Financial Officer Jeff Pearson as received by SBC Executive Committee members on February 20, 2022.

22. Officers of the Board

    Chairman Slade brought a report and recommendations from the Officers of the Board, as follows:

    (3) SBC Executive Committee Staff Salary Structure



Shannon M. McNulty

120 North LaSalle Street
36th Floor
Chicago, Illinois 60602

Telephone 312-899-9090
Fax 312-251-1160
SMM@CliffordLaw.com
www.CliffordLaw.com

August 15, 2022

*Via Federal Express*
R. Albert Mohler, Jr., President
The Southern Baptist Theological Seminary
2825 Lexington Road
Louisville, KY 40280

**Re: Dr. David Sills and Mrs. Mary Sills**

Mr. Mohler:

I am contacting you because Barrett Law Group, P.A., and Clifford Law Offices, P.C. represent Dr. David Sills and his wife, Mary Sills. We are currently in the process of investigating the facts and related circumstances relayed to us by Dr. Sills including but not limited to on-going false and defamatory statements allegedly perpetrated against him as a consequence of allegations made by Jennifer Lyell, her private counsel, the Southern Baptist Convention and SBC's agents and employees, concerning various other actions which allegedly resulted in great emotional distress to Dr. and Mrs. Sills, the ruination of their reputations and the permanent loss of Dr. Sills' ability to earn an income. Additionally, we are investigating various business practices of the Southern Baptist Convention as it relates to employment, investigations and media operations.

Please consider this correspondence to constitute a formal **Notice of Potential and/or Anticipated Litigation and Notice to Retain and Preserve Evidence (hereinafter referred to as "Notice to Prevent Spoliation of Evidence").** Please act accordingly.

**PLEASE TAKE NOTICE** that by at least as early as the date of this letter, you, (hereinafter "you," where applicable and erring on the side of inclusion, shall include but not be limited to: the recipient(s) of this letter, prospective Defendant(s) in the anticipated litigation, attorneys, outside and in-house counsel, directors, officers, clients, and any and all employees, agents, third-party contractors, and all those directly or indirectly under the control thereof) have a legal duty to preserve, retain, to not alter (which may require removing from service), all

R. Albert Mohler, Jr., President
The Southern Baptist Theological Seminary
2825 Lexington Road
Louisville, KY 40280
Page 2



information, documents, data, and materials concerning the anticipated, imminent or current litigation of which we have made you aware. Most notably, we preliminarily consider the following topics to be the subject of the preservation instructions set forth in this letter:

1) Dr. Sill's employment and performance history at the Seminary;
2) Jennifer Lyell's education, employment and medical historirs;
3) Minutes and agendas for all Southern Baptist Conference board and/or management meetings;
4) Records of any and all payments made to Jennifer Lyell;
5) All recorded communication between Dr. Sill and Jennifer Lyell;
6) All recorded communications concerning Dr. Sill between Jennifer Lyell and any member of the Southern Baptist Conference, including but not limited to INSERT NAMES;
7) Photographs taken of Dr. Sill and/or Jennifer Lyell;
8) Written communications, of any kind, between Jennifer Lyell and Dr. Sill;
9) Any digital camera and all SD/SDHC/SDXC memory cards for any office cameras at the Seminary;
10) Jennifer Lyell's office desktop computer, laptop, I-pad and cell phone;
11) Jennifer Lyell's personal desktop computer, laptop, I-pad and cell phone
12) Records of Jennifer Lyell's use of her employer's equipment for personal use; and
13) Any and all tangible items that constitute, in any way whatsoever, the file pertaining to the investigation of Jennifer Lyell's allegations against Dr. Sill.

Your preservation efforts should include, but are not limited to, preserving all emails, text messages, voice messages, records, reports, meeting minutes, itineraries, memoranda, investigations, interviews, policies, procedures and/or other tangible items that, in any way, whatsoever, relate to the aforementioned categories of information. This letter places you on notice of your obligation to suspend routine destruction of these items.

Please take notice that a failure to preserve and retain all information and data as aforementioned may result in sanctions being imposed against you. *See, e.g., Zubulake v UBS Warburg, LLC*, 220 F.R.D. 212(S.D.N.Y, 2003) (UBS Warburg sanctioned for the destruction of e-mail communications and e-mail back-up tapes after the company learned that a former employee "might" sue for gender discrimination. "The duty to preserve attached at the time that litigation was reasonable anticipated.") *Zubulake*, 220 F.R.D. at 217.

Moreover, please be advised that there are additional consequences over and above the imposition of sanctions for the destruction of electronic documents that cause some prejudice to an aggrieved party-even if the destruction was merely negligent. *See, e.g., Jones v. Goodyear Tire and Rubber Co.*, 966 F2d, 200,224 (7th Cir. 1992) (awarding default judgment for negligent destruction of physical evidence).

CLIFFORD LAW OFFICES

When spoliation of evidence is caused by malicious intent, severe sanctions are supported. *See, e.g., Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 102 at 104 (D. Colo. 1996)

Additionally, a failure to comply with the terms herewith may subject both you (both singular and plural), each separately and in addition collectively, to claims for the tort of spoliation of evidence and/or negligence claims for spoliation and/or malicious claims for spoliation. Illinois courts have sanctioned parties for spoliation of evidence prior to the commencement of litigation. *See, e.g., Shimanovsky v. General Motors Corp.*, 181 Ill 2d. 112 (1998) (awarding sanction for spoliation prior to the filing of suit and noting "to hold that a duty to preserve evidence does not arise until an action was filed would encourage the destruction of evidence"); *see also, Jones v. O'Brien Tire and Battery Service Center, Inc.*, 322 Ill. App. 3d 418 (5th Dist. 2001) (third-party defendant unsuccessfully argued that if there was no pending lawsuit, then there was no duty to preserve, with the court disagreeing and stating that a plaintiff must only "allege that a reasonable person in the defendant's position should have foreseen that the evidence in question was material to a potential civil action").

Furthermore, please note that the courts have imposed significant responsibilities on attorneys, both outside and in-house counsel, to continually and actively ensure document retention compliance. See e.g., *Zubulake v. UBS Warburg, LLC*, (Zubulake V), No. 02-1243, 2004 U.S. Dist. Lexis 13574, at 51-63 (S.D.N.Y., July 20, 2004)

Upon receipt of this correspondence, counsel must issue a litigation hold to ensure all relevant documents are retained. *Id.* at 8. In addition, counsel must communicate with "key players" to the litigation the importance of retaining all electronic documents. *Id.*

Lastly, "counsel should instruct all employees to produce electronic copies of their relevant active files." *Id.* at 10. This includes making sure that all back-up media is identified and stored in a safe place. *Id.*

Available separate sanctions against counsel include monetary fines, public or private reprimand by the court, or possible disbarment. See, e.g., *Metro. Opera Ass'n., Inc. v. Local 100*, 212 F.R.D. 178, 222-223 (S.D.N.Y. 2003). In-house counsel may also be separately sanctioned for the spoliation of electronic documents for mere failure to have a document retention program in place. *See, e.g., Danis v. USN Communications, Inc.*, No 98-7482, 2000 WL 1594325, at 14 (N.D. Ill. Oct. 20, 2000) (imposing sanctions of $10,000 fine because in-house counsel failed to establish a meaningful document retention program).

Please be further advised that when a party is on notice of pending or imminent litigation, they have been sanctioned for not just intentionally or recklessly deleting back-up tapes that contain even potentially relevant information, but have also been sanctioned for the negligent deletion thereof. *See e.g., Zubulake v. UBS Warburg, LLC*, (Zubulake V), No. 02-1243, 2004 U.S. Dist. Lexis 13574, at 51-63 (S.D.N.Y., July 20, 2004) (imposing several discovery sanctions for

failing to preserve e-mail communications by key players and failing to preserve back-up tapes that contained documents created or modified by these key players.)

Please also note that a party may be sanctioned for destroying any of these document types or any aspect with regard to their storage locations. *See, e.g., Kleiner v. Burns*, No. 00-2160-JWL, 2000 WL 1909470, at 4 (D. Kan., Dec. 22, 2000). Furthermore, with respect to e-mails, negligent or intentional destruction of relevant e-mail communications has resulted in severe sanctions being imposed against the offending party. *See, e.g., United States v. Philip Morris USA, Inc.*, 327 F. Supp. 2nd 21, 26 (D.D.C. 2004) (imposing monetary sanction of $2,750,000 for reckless destruction of relevant e-mail communication).

Please also take notice that courts have both held that not just the data itself, but that **metadata** may contain relevant, discoverable material, and have also imposed sanctions for not only the destruction of electronic documents, but also for metadata. *See, e.g., In re Telxon Corp. Securities Litig., No.* 5:98CV2876, 2004 WL 3192729, at 35-36 (N.D. Ohio, July 16, 2004) (imposing sanction for destruction of documents, including metadata that described changes made to relevant documents).

The description of files and file types sought shall include but not be limited to: all digital or analog electronic files, including "deleted" files and file fragments, stored in machine-readable format on magnetic, optical or other storage media, including the hard drives or floppy disks used by your computers and their backup media (e.g., other hard drives, backup tapes, floppies, Jaz cartridges, CD-ROMs) or otherwise, whether such files have been reduced to paper printouts or not.

More specifically, you are to preserve all of your e-mails and text messages, both sent and received, whether internally or externally; all word-processed files, including drafts and revisions; all spreadsheets, including drafts and revisions; all data generated by calendaring, task management and personal information management (PIM) software (such as Microsoft Outlook or Lotus Notes); all data created with the use of personal data assistants (PDAs), such as PalmPilot, HP Jornada, Cassiopeia or other Windows CE-based or Pocket PC devices; all data created with the use of document management software; all data created with the use of paper and electronic mail logging and routing software; all Internet and Web-browser-generated history files, caches and "cookies" files generated at the workstation of each employee and/or agent and/or contractor in your employ and on any and all backup storage media; and any and all other files generated by users through the use of computers and/or telecommunications, including but not limited to voice mail.

Furthermore, you are to preserve any log or logs of network use by employees or otherwise, whether kept in paper or electronic form, and to preserve all copies of your backup tapes and the software necessary to reconstruct the data on those tapes, so that there can be made a complete, bit-by-bit "mirror" evidentiary image copy of the storage media of each and every personal

CLIFFORD LAW OFFICES

computer (and/or workstation) and network server in your control and custody, as well as image copies of all hard drives retained by you and no longer in service, but in use at any time.

You are also not to pack, compress, purge or otherwise dispose of files and parts of files unless a true and correct copy of such files is made.

You are also to preserve and not destroy all passwords, decryption procedures (including, if necessary, the software to decrypt the files); network access codes, ID names, manuals, tutorials, written instructions, decompression or reconstruction software, and any and all other information and things necessary to access, view and (if necessary) reconstruct the electronic data.

Thus, take notice to preserve, retain, and to not alter (which may require removing from service), all information, documents, data, and materials concerning the anticipated, imminent or current litigation of which we have made you aware, erring on the side of inclusion, which shall include but not be limited to:

1. Physical Records: All physical records and media, including but not limited to all paper records, along with the original files, labels, boxes or other containers, with labeling system, indexing, organization, and notes associated therewith intact. Furthermore, while electronic documents and the storage on which they reside contain relevant, discoverable information beyond that which may be found in printed documents. Therefore, even where a paper copy exists, we seek all documents in their electronic form along with information about those documents contained on the media. We also seek paper printouts of only those documents that contain unique information after they were printed out (such as paper documents containing handwriting, signatures, marginalia, drawings, annotations, highlighting, and redactions) along with any paper documents for which no corresponding electronic files exist.

2. Electronic Records (business and personal):

   a. All electronic records, hard drives, tapes mechanical devices, and all electronically stored information, documents, and data, e-mail and text messages both those sent and received and all files that may be attached, back-up email messages and files, deleted e-mail messages and files, data files, metadata, and all data that describes the history, tracking, management, and changes made to electronic files and documents, back-up files, temporary files, program files, internet files, voice mail messages and files, back-up voice mail messages and files, web site information stored in textual, graphic or audio format, web site log files, cache files, cookies, archival tapes, hard drives, CDs, DVDs, discs, thumb drives, server data, systems, and all other electronically-recorded or stored information;

b. All web-based emails, data on Facebook, My Space, Twitter, and other third-party web-based applications, as well as website data, opinions, and contributions to bulletin boards, blogs, and editorials or opinions including those both stored locally and those located on third party servers, and notify the applicable ISPs via written or electronic communication to do the same (while preserving the communication as well);

c. All data on main frame servers, work and home computers, PDAs other electronic organizers, smart phones, and telephones;

d. All "deleted' data on the hard disks, floppy disks and backup media used on your computers, including but not limited to those data which are not readily available to an ordinary computer user, such as "deleted" files and "file fragments." As you may know, although a user may "erase" or "delete" a file, all that is really erased is a reference to that file in a table on the hard disk and unless overwritten with new data, a "deleted" file can be as intact on the disk as any "active" file you would see in a directory listing. Accordingly, even where you may believe no data exists, preserve the same as set forth herein.

3. Media and Press Records: All tangible items, including but not limited to electronic information systems and/or computerized devices, containing records of media inquiries, statements to the news media and social media, press releases, articles (including all drafts), audio and video recordings of statements or interviews and correspondence (including but not limited to emails) concerning, referencing, discussing or editing the same.

4. Employment and Academic Records: All physical records, electronic records and media related to the employment and academic histories of Dr. Sill and Ms. Lyell.

5. Business Records: All documents, data, and information about documents containing backup and/or archive policy and/or procedure, document retention policy, names of backup and/or archive software, names and addresses of any offsite storage provider.

a. All e-mail and information about e-mail (including message contents, header information and logs of e-mail system usage) sent or received by anyone or anything about or related to anyone or anything involved, directly or indirectly, or who may have any knowledge or information, even remotely, tangentially, or in any way, connection, or relation to the subject and/or prospective litigation, parties, underlying circumstances, facts, allegations, issues, and/or evidence.

CLIFFORD LAW OFFICES

b. All other e-mail and information about e-mail (including message contents, header information and logs of e-mail system usage) containing information about or related to anyone or anything involved, directly or indirectly, or who may have any knowledge or information, even remotely, tangentially, or in any way, connection, or relation to the subject and/or prospective litigation, parties, underlying circumstances, facts, allegations, issues, and/or evidence.

c. All databases (including all records and fields and structural information in such databases), containing any reference to and/or information about or related to anyone or anything involved, directly or indirectly, or who may have any knowledge or information, even remotely, tangentially, or in any way, connection, or relation to the subject and/or prospective litigation, parties, underlying circumstances, facts, allegations, issues, and/or evidence.

d. All logs of activity (both in paper and electronic formats) on computer systems and networks that have or may have been used to process or store electronic data containing information about or related to anyone or anything involved, directly or indirectly, or who may have any knowledge or information, even remotely, tangentially, or in any way, connection, or relation to the subject and/or prospective litigation, parties, underlying circumstances, facts, allegations, issues and/or evidence.

e. All word processing files, including prior drafts, "deleted" files and file fragments, containing information about or related to anyone or anything involved, directly or indirectly, or who may have any knowledge or information, even remotely, tangentially, or in any way, connection, or relation to the subject and/or prospective litigation, parties, underlying circumstances, facts, allegations, issues, and/or evidence.

f. With regard to electronic data created by application programs which process financial, accounting and billing information, all electronic data files, including prior drafts, "deleted" files and file fragments, containing information about or related to anyone or anything involved, directly or indirectly, or who may have any knowledge or information even remotely, tangentially, or in any way, connection or relation to the subject and/or prospective litigation, parties, underlying circumstances, facts, allegations, issues, and/or evidence.

g. All files, including prior drafts, "deleted" files and file fragments, containing information from electronic calendars and scheduling programs regarding or related to information or anyone or anything involved, directly

CLIFFORD LAW OFFICES

or indirectly, or who may have any knowledge or information, even remotely, tangentially, or in any way, connection, or relation to the subject and/or prospective litigation, parties, underlying circumstances, facts, allegations, issues, and/or evidence.

h. All electronic data files, including prior drafts, "deleted" files and file fragments about or related to information about anyone or anything involved, directly or indirectly, or who may have any knowledge or information, even remotely, tangentially, or in any way, connection, or relation to the subject and/or prospective litigation, parties, underlying circumstances, facts, allegations, issues, and/or evidence.

4. Online Data Storage on Mainframes and Minicomputers: With regard to online storage and/or direct access storage devices attached to your mainframe computers and/or minicomputers: they are not to modify or delete any electronic data files, "deleted" files and file fragments existing at the time of this letter's delivery, which meet the definitions set forth in this letter, unless a true and correct copy of each such electronic data file has been made and steps have been taken to assure that such a copy will be preserved and accessible for purposes of this litigation.

5. Offline Data Storage, Backups and Archives, Floppy Diskettes, Tapes and Other Removable Electronic Media: With regard to all electronic media used for offline storage, including magnetic tapes and cartridges and other media that, at the time of this letter's delivery, contained any electronic data meeting the criteria listed in paragraph 1 above: You are to stop any activity that may result in the loss of such electronic data, including rotation, destruction, overwriting and/or erasure of such media in whole or in part. This request is intended to cover all removable electronic media used for data storage in connection with their computer systems, including magnetic tapes and cartridges, magneto-optical disks, floppy diskettes and all other media, whether used with personal computers, minicomputers or mainframes or other computers, and whether containing backup and/or archive data sets and other electronic data, for all of their computer systems.

6. Replacement of Data Storage Devices: You are not to dispose of any electronic data storage devices and/or media that may be replaced due to failure and/or upgrade and/or other reasons that may contain electronic data.

7. Fixed Drives on Stand-Alone Personal Computers and Network Workstations: With regard to electronic data, which existed on fixed drives attached to stand-alone microcomputers and/or network workstations at the time of this letter's delivery: You are not to alter or erase such electronic data, and not to perform other procedures (such as data compression and disk de-fragmentation or optimization routines) that may impact such data, unless a true and correct copy has been made of such active files and

CLIFFORD LAW OFFICES

of completely restored versions of such deleted electronic files and file fragments, copies have been made of all directory listings ( including hidden files) for all directories and subdirectories containing such files, and arrangements have been made to preserve copies during the pendency of this litigation.

8. Cameras and Other Recording Devices: You are to preserve all cameras, recording devices and SD memory cards associated with these various devices. With regard to all photographs, video or other recordings which exist on cameras, recording devices or SD memory cards: You are not to alter or erase such electronic data, and not to perform other procedures (such as "bleaching" or image alterations) that may impact such data.

9. Programs and Utilities: You are to preserve copies of all application programs and utilities, which may be used to process electronic data covered by this letter.

10. Log of System Modifications: You are to maintain an activity log to document modifications made to any electronic data processing system that may affect the system's capability to process any electronic data meeting the criteria listed in paragraph 1 above, regardless of whether such modifications were made by employees, contractors, vendors and/or any other third parties.

11. Personal Computers Used by Jennifer Lyell, Dr. Sill, and their Secretaries and Assistants: The following steps should immediately be taken in regard to all personal computers used by Jennifer Lyell, Dr. Sill, and their Secretaries and Assistants, including but not limited to:

   a. As to fixed drives attached to such computers: (i) a true and correct copy is to be made of all electronic data on such fixed drives relating to this matter, including all active files and completely restored versions of all deleted electronic files and file fragments; (ii) full directory listings (including hidden files) for all directories and subdirectories (including hidden directories) on such fixed drives should be written; and (iii) such copies and listings are to be preserved until this matter reaches its final resolution.

   b. All floppy diskettes, magnetic tapes and cartridges, and other media used in connection with such computers prior to the date of delivery of this letter containing any electronic data relating to this matter are to be collected and put into storage for the duration of this lawsuit.

12. Evidence Created Subsequent to This Letter: With regard to electronic data created subsequent to the date of delivery of this letter, relevant evidence is not to be destroyed and you are to take whatever steps are appropriate to avoid destruction of evidence.

CLIFFORD LAW OFFICES®

In order to avoid spoliation, you will need to provide the data requested on the original media. Do not reuse any media to provide this data.

Although we reserve the right to seek a court order for you to preserve documents and tangible items from destruction or alteration, your obligation to preserve documents and things for discovery in this case arises in law and equity independently from any order on such motion and you are hereby given written notice thereof.

Also, to assure that your obligation to preserve documents and things will be met and in order to avoid spoliation, advise your client and entities with custodial responsibility for items referred to herein, including Cell Phone Service Provider, Internet Service Providers (ISPs) and EMR/EMH Service, of the contents hereof, and forward this same correspondence to them and ensure they act in accordance with their legal duties and obligations to you, as well as their own separate duties, as set forth herein.

Please forward this **Notice to Prevent Spoliation of Evidence** to your legal liability insurance carrier(s).

Please feel free to reach me with any questions concerning this request. Your anticipated compliance with the duty to preserve the materials is greatly appreciated, albeit expected.

Very truly yours,

Shannon M. McNulty

cc: *via U.S.P.S and email*
Don Barrett, Esq.
Barrett Law Group, P.A.
404 Court Square North
Lexington, MS 39095-0927
donbarrettpa@gmail.com

 CONFIDENTIAL

Jonathan Austin <jaustin@sbts.edu>

**cover memo**
1 message

**Jonathan Austin** <jaustin@sbts.edu> Wed, Aug 24, 2022 at 12:50 PM
To: Aaron Woodall <awoodall@sbts.edu>

Update the memo and deliver to the following persons:

Dr. Paul Akin
Dr. Jeremy Pierre
Mr. Brent Small
Mr. Craig Parker
Mr. Jason Heath

Jonathan B. Austin
Senior Vice President for Institutional Administration

The Southern Baptist Theological Seminary
2825 Lexington Road, Louisville, KY 40280
502.897.4131 | jaustin@sbts.edu

**Memo re delivery of Sills letter (8.23.22).docx**
93K



CONFIDENTIAL

# Memo

To: Dr. Paul Akin

From: Mr. Jon Austin

Date: 8.24.22

Re: CONFIDENTIAL MATTER

---

Per legal counsel for Southern Seminary, I am providing you with a copy of a letter from the Clifford Law Offices, legal counsel for Dr. & Mrs. David Sills, dated August 15, 2022.

Please review the entire letter at your earliest convenience. In short, you are advised to retain all documents, correspondence, or other similar information related to the matter described in the letter. This matter is confidential and should be treated accordingly.

Please acknowledge your receipt of this memo and the Sills' letter below. If you have any questions, please call me at 502.897.4131 (office), or 405.642.2723 (cell).

---

The undersigned hereby acknowledges receipt of this memo and the noted letter from legal counsel for Dr. & Mrs. Mary Sills.

______________________________

Print Name

______________________________

Signature

______________________________

Dated

Shannon M. McNulty

120 North LaSalle Street
36th Floor
Chicago, Illinois 60602

Telephone 312-899-9090
Fax 312-251-1160
SMM@CliffordLaw.com
www.CliffordLaw.com

August 15, 2022

***Via Federal Express***
R. Albert Mohler, Jr., President
The Southern Baptist Theological Seminary
2825 Lexington Road
Louisville, KY 40280

**Re: Dr. David Sills and Mrs. Mary Sills**

Mr. Mohler:

I am contacting you because Barrett Law Group, P.A., and Clifford Law Offices, P.C. represent Dr. David Sills and his wife, Mary Sills. We are currently in the process of investigating the facts and related circumstances relayed to us by Dr. Sills including but not limited to on-going false and defamatory statements allegedly perpetrated against him as a consequence of allegations made by Jennifer Lyell, her private counsel, the Southern Baptist Convention and SBC's agents and employees, concerning various other actions which allegedly resulted in great emotional distress to Dr. and Mrs. Sills, the ruination of their reputations and the permanent loss of Dr. Sills' ability to earn an income. Additionally, we are investigating various business practices of the Southern Baptist Convention as it relates to employment, investigations and media operations.

Please consider this correspondence to constitute a formal **Notice of Potential and/or Anticipated Litigation and Notice to Retain and Preserve Evidence (hereinafter referred to as "Notice to Prevent Spoliation of Evidence").** Please act accordingly.

**PLEASE TAKE NOTICE** that by at least as early as the date of this letter, you, (hereinafter "you," where applicable and erring on the side of inclusion, shall include but not be limited to: the recipient(s) of this letter, prospective Defendant(s) in the anticipated litigation, attorneys, outside and in-house counsel, directors, officers, clients, and any and all employees, agents, third-party contractors, and all those directly or indirectly under the control thereof) have a legal duty to preserve, retain, to not alter (which may require removing from service), all

information, documents, data, and materials concerning the anticipated, imminent or current litigation of which we have made you aware. Most notably, we preliminarily consider the following topics to be the subject of the preservation instructions set forth in this letter:

1) Dr. Sill's employment and performance history at the Seminary;
2) Jennifer Lyell's education, employment and medical historirs;
3) Minutes and agendas for all Southern Baptist Conference board and/or management meetings;
4) Records of any and all payments made to Jennifer Lyell;
5) All recorded communication between Dr. Sill and Jennifer Lyell;
6) All recorded communications concerning Dr. Sill between Jennifer Lyell and any member of the Southern Baptist Conference, including but not limited to INSERT NAMES;
7) Photographs taken of Dr. Sill and/or Jennifer Lyell;
8) Written communications, of any kind, between Jennifer Lyell and Dr. Sill;
9) Any digital camera and all SD/SDHC/SDXC memory cards for any office cameras at the Seminary;
10) Jennifer Lyell's office desktop computer, laptop, I-pad and cell phone;
11) Jennifer Lyell's personal desktop computer, laptop, I-pad and cell phone
12) Records of Jennifer Lyell's use of her employer's equipment for personal use; and
13) Any and all tangible items that constitute, in any way whatsoever, the file pertaining to the investigation of Jennifer Lyell's allegations against Dr. Sill.

Your preservation efforts should include, but are not limited to, preserving all emails, text messages, voice messages, records, reports, meeting minutes, itineraries, memoranda, investigations, interviews, policies, procedures and/or other tangible items that, in any way, whatsoever, relate to the aforementioned categories of information. This letter places you on notice of your obligation to suspend routine destruction of these items.

Please take notice that a failure to preserve and retain all information and data as aforementioned may result in sanctions being imposed against you. *See, e.g., Zubulake v UBS Warburg, LLC*, 220 F.R.D. 212(S.D.N.Y, 2003) (UBS Warburg sanctioned for the destruction of e-mail communications and e-mail back-up tapes after the company learned that a former employee "might" sue for gender discrimination. "The duty to preserve attached at the time that litigation was reasonable anticipated.") *Zubulake*, 220 F.R.D. at 217.

Moreover, please be advised that there are additional consequences over and above the imposition of sanctions for the destruction of electronic documents that cause some prejudice to an aggrieved party-even if the destruction was merely negligent. *See, e.g., Jones v. Goodyear Tire and Rubber Co.*, 966 F2d, 200,224 (7th Cir. 1992) (awarding default judgment for negligent destruction of physical evidence).

When spoliation of evidence is caused by malicious intent, severe sanctions are supported. *See, e.g., Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 102 at 104 (D. Colo. 1996)

Additionally, a failure to comply with the terms herewith may subject both you (both singular and plural), each separately and in addition collectively, to claims for the tort of spoliation of evidence and/or negligence claims for spoliation and/or malicious claims for spoliation. Illinois courts have sanctioned parties for spoliation of evidence prior to the commencement of litigation. *See, e.g., Shimanovsky v. General Motors Corp.*, 181 Ill 2d. 112 (1998) (awarding sanction for spoliation prior to the filing of suit and noting "to hold that a duty to preserve evidence does not arise until an action was filed would encourage the destruction of evidence"); *see also, Jones v. O'Brien Tire and Battery Service Center, Inc.*, 322 Ill. App. 3d 418 (5th Dist. 2001) (third-party defendant unsuccessfully argued that if there was no pending lawsuit, then there was no duty to preserve, with the court disagreeing and stating that a plaintiff must only "allege that a reasonable person in the defendant's position should have foreseen that the evidence in question was material to a potential civil action").

Furthermore, please note that the courts have imposed significant responsibilities on attorneys, both outside and in-house counsel, to continually and actively ensure document retention compliance. See e.g., *Zubulake v. UBS Warburg, LLC*, (Zubulake V), No. 02-1243, 2004 U.S. Dist. Lexis 13574, at 51-63 (S.D.N.Y., July 20, 2004)

Upon receipt of this correspondence, counsel must issue a litigation hold to ensure all relevant documents are retained. *Id.* at 8. In addition, counsel must communicate with "key players" to the litigation the importance of retaining all electronic documents. *Id.*

Lastly, "counsel should instruct all employees to produce electronic copies of their relevant active files." *Id.* at 10. This includes making sure that all back-up media is identified and stored in a safe place. *Id.*

Available separate sanctions against counsel include monetary fines, public or private reprimand by the court, or possible disbarment. See, e.g., *Metro. Opera Ass'n., Inc. v. Local 100*, 212 F.R.D. 178, 222-223 (S.D.N.Y. 2003). In-house counsel may also be separately sanctioned for the spoliation of electronic documents for mere failure to have a document retention program in place. *See, e.g., Danis v. USN Communications, Inc.*, No 98-7482, 2000 WL 1594325, at 14 (N.D. Ill. Oct. 20, 2000) (imposing sanctions of $10,000 fine because in-house counsel failed to establish a meaningful document retention program).

Please be further advised that when a party is on notice of pending or imminent litigation, they have been sanctioned for not just intentionally or recklessly deleting back-up tapes that contain even potentially relevant information, but have also been sanctioned for the negligent deletion thereof. *See e.g., Zubulake v. UBS Warburg, LLC*, (Zubulake V), No. 02-1243, 2004 U.S. Dist. Lexis 13574, at 51-63 (S.D.N.Y., July 20, 2004) (imposing several discovery sanctions for

failing to preserve e-mail communications by key players and failing to preserve back-up tapes that contained documents created or modified by these key players.)

Please also note that a party may be sanctioned for destroying any of these document types or any aspect with regard to their storage locations. *See, e.g., Kleiner v. Burns*, No. 00-2160-JWL, 2000 WL 1909470, at 4 (D. Kan., Dec. 22, 2000). Furthermore, with respect to e-mails, negligent or intentional destruction of relevant e-mail communications has resulted in severe sanctions being imposed against the offending party. *See, e.g., United States v. Philip Morris USA, Inc.*, 327 F. Supp. 2nd 21, 26 (D.D.C. 2004) (imposing monetary sanction of $2,750,000 for reckless destruction of relevant e-mail communication).

Please also take notice that courts have both held that not just the data itself, but that **metadata** may contain relevant, discoverable material, and have also imposed sanctions for not only the destruction of electronic documents, but also for metadata. *See, e.g., In re Telxon Corp. Securities Litig., No.* 5:98CV2876, 2004 WL 3192729, at 35-36 (N.D. Ohio, July 16, 2004) (imposing sanction for destruction of documents, including metadata that described changes made to relevant documents).

The description of files and file types sought shall include but not be limited to: all digital or analog electronic files, including "deleted" files and file fragments, stored in machine-readable format on magnetic, optical or other storage media, including the hard drives or floppy disks used by your computers and their backup media (e.g., other hard drives, backup tapes, floppies, Jaz cartridges, CD-ROMs) or otherwise, whether such files have been reduced to paper printouts or not.

More specifically, you are to preserve all of your e-mails and text messages, both sent and received, whether internally or externally; all word-processed files, including drafts and revisions; all spreadsheets, including drafts and revisions; all data generated by calendaring, task management and personal information management (PIM) software (such as Microsoft Outlook or Lotus Notes); all data created with the use of personal data assistants (PDAs), such as PalmPilot, HP Jornada, Cassiopeia or other Windows CE-based or Pocket PC devices; all data created with the use of document management software; all data created with the use of paper and electronic mail logging and routing software; all Internet and Web-browser-generated history files, caches and "cookies" files generated at the workstation of each employee and/or agent and/or contractor in your employ and on any and all backup storage media; and any and all other files generated by users through the use of computers and/or telecommunications, including but not limited to voice mail.

Furthermore, you are to preserve any log or logs of network use by employees or otherwise, whether kept in paper or electronic form, and to preserve all copies of your backup tapes and the software necessary to reconstruct the data on those tapes, so that there can be made a complete, bit-by-bit "mirror" evidentiary image copy of the storage media of each and every personal

CLIFFORD LAW OFFICES

computer (and/or workstation) and network server in your control and custody, as well as image copies of all hard drives retained by you and no longer in service, but in use at any time.

You are also not to pack, compress, purge or otherwise dispose of files and parts of files unless a true and correct copy of such files is made.

You are also to preserve and not destroy all passwords, decryption procedures (including, if necessary, the software to decrypt the files); network access codes, ID names, manuals, tutorials, written instructions, decompression or reconstruction software, and any and all other information and things necessary to access, view and (if necessary) reconstruct the electronic data.

Thus, take notice to preserve, retain, and to not alter (which may require removing from service), all information, documents, data, and materials concerning the anticipated, imminent or current litigation of which we have made you aware, erring on the side of inclusion, which shall include but not be limited to:

1. Physical Records: All physical records and media, including but not limited to all paper records, along with the original files, labels, boxes or other containers, with labeling system, indexing, organization, and notes associated therewith intact. Furthermore, while electronic documents and the storage on which they reside contain relevant, discoverable information beyond that which may be found in printed documents. Therefore, even where a paper copy exists, we seek all documents in their electronic form along with information about those documents contained on the media. We also seek paper printouts of only those documents that contain unique information after they were printed out (such as paper documents containing handwriting, signatures, marginalia, drawings, annotations, highlighting, and redactions) along with any paper documents for which no corresponding electronic files exist.

2. Electronic Records (business and personal):

   a. All electronic records, hard drives, tapes mechanical devices, and all electronically stored information, documents, and data, e-mail and text messages both those sent and received and all files that may be attached, back-up email messages and files, deleted e-mail messages and files, data files, metadata, and all data that describes the history, tracking, management, and changes made to electronic files and documents, back-up files, temporary files, program files, internet files, voice mail messages and files, back-up voice mail messages and files, web site information stored in textual, graphic or audio format, web site log files, cache files, cookies, archival tapes, hard drives, CDs, DVDs, discs, thumb drives, server data, systems, and all other electronically-recorded or stored information:

CLIFFORD LAW OFFICES

b. All web-based emails, data on Facebook, My Space, Twitter, and other third-party web-based applications, as well as website data, opinions, and contributions to bulletin boards, blogs, and editorials or opinions including those both stored locally and those located on third party servers, and notify the applicable ISPs via written or electronic communication to do the same (while preserving the communication as well);

c. All data on main frame servers, work and home computers, PDAs other electronic organizers, smart phones, and telephones;

d. All "deleted' data on the hard disks, floppy disks and backup media used on your computers, including but not limited to those data which are not readily available to an ordinary computer user, such as "deleted" files and "file fragments." As you may know, although a user may "erase" or "delete" a file, all that is really erased is a reference to that file in a table on the hard disk and unless overwritten with new data, a "deleted" file can be as intact on the disk as any "active" file you would see in a directory listing. Accordingly, even where you may believe no data exists, preserve the same as set forth herein.

3. Media and Press Records: All tangible items, including but not limited to electronic information systems and/or computerized devices, containing records of media inquiries, statements to the news media and social media, press releases, articles (including all drafts), audio and video recordings of statements or interviews and correspondence (including but not limited to emails) concerning, referencing, discussing or editing the same.

4. Employment and Academic Records: All physical records, electronic records and media related to the employment and academic histories of Dr. Sill and Ms. Lyell.

5. Business Records: All documents, data, and information about documents containing backup and/or archive policy and/or procedure, document retention policy, names of backup and/or archive software, names and addresses of any offsite storage provider.

a. All e-mail and information about e-mail (including message contents, header information and logs of e-mail system usage) sent or received by anyone or anything about or related to anyone or anything involved, directly or indirectly, or who may have any knowledge or information, even remotely, tangentially, or in any way, connection, or relation to the subject and/or prospective litigation, parties, underlying circumstances, facts, allegations, issues, and/or evidence.

CLIFFORD LAW OFFICES

b. All other e-mail and information about e-mail (including message contents, header information and logs of e-mail system usage) containing information about or related to anyone or anything involved, directly or indirectly, or who may have any knowledge or information, even remotely, tangentially, or in any way, connection, or relation to the subject and/or prospective litigation, parties, underlying circumstances, facts, allegations, issues, and/or evidence.

c. All databases (including all records and fields and structural information in such databases), containing any reference to and/or information about or related to anyone or anything involved, directly or indirectly, or who may have any knowledge or information, even remotely, tangentially, or in any way, connection, or relation to the subject and/or prospective litigation, parties, underlying circumstances, facts, allegations, issues, and/or evidence.

d. All logs of activity (both in paper and electronic formats) on computer systems and networks that have or may have been used to process or store electronic data containing information about or related to anyone or anything involved, directly or indirectly, or who may have any knowledge or information, even remotely, tangentially, or in any way, connection, or relation to the subject and/or prospective litigation, parties, underlying circumstances, facts, allegations, issues and/or evidence.

e. All word processing files, including prior drafts, "deleted" files and file fragments, containing information about or related to anyone or anything involved, directly or indirectly, or who may have any knowledge or information, even remotely, tangentially, or in any way, connection, or relation to the subject and/or prospective litigation, parties, underlying circumstances, facts, allegations, issues, and/or evidence.

f. With regard to electronic data created by application programs which process financial, accounting and billing information, all electronic data files, including prior drafts, "deleted" files and file fragments, containing information about or related to anyone or anything involved, directly or indirectly, or who may have any knowledge or information even remotely, tangentially, or in any way, connection or relation to the subject and/or prospective litigation, parties, underlying circumstances, facts, allegations, issues, and/or evidence.

g. All files, including prior drafts, "deleted" files and file fragments, containing information from electronic calendars and scheduling programs regarding or related to information or anyone or anything involved, directly

CLIFFORD LAW OFFICES

or indirectly, or who may have any knowledge or information, even remotely, tangentially, or in any way, connection, or relation to the subject and/or prospective litigation, parties, underlying circumstances, facts, allegations, issues, and/or evidence.

h. All electronic data files, including prior drafts, "deleted" files and file fragments about or related to information about anyone or anything involved, directly or indirectly, or who may have any knowledge or information, even remotely, tangentially, or in any way, connection, or relation to the subject and/or prospective litigation, parties, underlying circumstances, facts, allegations, issues, and/or evidence.

4. Online Data Storage on Mainframes and Minicomputers: With regard to online storage and/or direct access storage devices attached to your mainframe computers and/or minicomputers: they are not to modify or delete any electronic data files, "deleted" files and file fragments existing at the time of this letter's delivery, which meet the definitions set forth in this letter, unless a true and correct copy of each such electronic data file has been made and steps have been taken to assure that such a copy will be preserved and accessible for purposes of this litigation.

5. Offline Data Storage, Backups and Archives, Floppy Diskettes, Tapes and Other Removable Electronic Media: With regard to all electronic media used for offline storage, including magnetic tapes and cartridges and other media that, at the time of this letter's delivery, contained any electronic data meeting the criteria listed in paragraph 1 above: You are to stop any activity that may result in the loss of such electronic data, including rotation, destruction, overwriting and/or erasure of such media in whole or in part. This request is intended to cover all removable electronic media used for data storage in connection with their computer systems, including magnetic tapes and cartridges, magneto-optical disks, floppy diskettes and all other media, whether used with personal computers, minicomputers or mainframes or other computers, and whether containing backup and/or archive data sets and other electronic data, for all of their computer systems.

6. Replacement of Data Storage Devices: You are not to dispose of any electronic data storage devices and/or media that may be replaced due to failure and/or upgrade and/or other reasons that may contain electronic data.

7. Fixed Drives on Stand-Alone Personal Computers and Network Workstations: With regard to electronic data, which existed on fixed drives attached to stand-alone microcomputers and/or network workstations at the time of this letter's delivery: You are not to alter or erase such electronic data, and not to perform other procedures (such as data compression and disk de-fragmentation or optimization routines) that may impact such data, unless a true and correct copy has been made of such active files and

CLIFFORD LAW OFFICES

of completely restored versions of such deleted electronic files and file fragments, copies have been made of all directory listings ( including hidden files) for all directories and subdirectories containing such files, and arrangements have been made to preserve copies during the pendency of this litigation.

8. Cameras and Other Recording Devices: You are to preserve all cameras, recording devices and SD memory cards associated with these various devices. With regard to all photographs, video or other recordings which exist on cameras, recording devices or SD memory cards: You are not to alter or erase such electronic data, and not to perform other procedures (such as "bleaching" or image alterations) that may impact such data.

9. Programs and Utilities: You are to preserve copies of all application programs and utilities, which may be used to process electronic data covered by this letter.

10. Log of System Modifications: You are to maintain an activity log to document modifications made to any electronic data processing system that may affect the system's capability to process any electronic data meeting the criteria listed in paragraph 1 above, regardless of whether such modifications were made by employees, contractors, vendors and/or any other third parties.

11. Personal Computers Used by Jennifer Lyell, Dr. Sill, and their Secretaries and Assistants: The following steps should immediately be taken in regard to all personal computers used by Jennifer Lyell, Dr. Sill, and their Secretaries and Assistants, including but not limited to:

    a. As to fixed drives attached to such computers: (i) a true and correct copy is to be made of all electronic data on such fixed drives relating to this matter, including all active files and completely restored versions of all deleted electronic files and file fragments; (ii) full directory listings (including hidden files) for all directories and subdirectories (including hidden directories) on such fixed drives should be written; and (iii) such copies and listings are to be preserved until this matter reaches its final resolution.

    b. All floppy diskettes, magnetic tapes and cartridges, and other media used in connection with such computers prior to the date of delivery of this letter containing any electronic data relating to this matter are to be collected and put into storage for the duration of this lawsuit.

12. Evidence Created Subsequent to This Letter: With regard to electronic data created subsequent to the date of delivery of this letter, relevant evidence is not to be destroyed and you are to take whatever steps are appropriate to avoid destruction of evidence.

CLIFFORD LAW OFFICES

In order to avoid spoliation, you will need to provide the data requested on the original media. Do not reuse any media to provide this data.

Although we reserve the right to seek a court order for you to preserve documents and tangible items from destruction or alteration, your obligation to preserve documents and things for discovery in this case arises in law and equity independently from any order on such motion and you are hereby given written notice thereof.

Also, to assure that your obligation to preserve documents and things will be met and in order to avoid spoliation, advise your client and entities with custodial responsibility for items referred to herein, including Cell Phone Service Provider, Internet Service Providers (ISPs) and EMR/EMH Service, of the contents hereof, and forward this same correspondence to them and ensure they act in accordance with their legal duties and obligations to you, as well as their own separate duties, as set forth herein.

Please forward this **Notice to Prevent Spoliation of Evidence** to your legal liability insurance carrier(s).

Please feel free to reach me with any questions concerning this request. Your anticipated compliance with the duty to preserve the materials is greatly appreciated, albeit expected.

Very truly yours,

Shannon M. McNulty

cc: *via U.S.P.S and email*
Don Barrett, Esq.
Barrett Law Group, P.A.
404 Court Square North
Lexington, MS 39095-0927
donbarrettpa@gmail.com

Jonathan Austin <jaustin@sbts.edu>

## Fwd: Confidential/Time Sensitive Question

1 message

**R. Albert Mohler** <mohler@sbts.edu> Wed, Sep 21, 2022 at 4:25 PM
To: Jon Austin <jaustin@sbts.edu>

Sent from my iPhone

Begin forwarded message:

> **From:** Jennifer Lyell <jennifer.lyell@gmail.com>
> **Date:** September 21, 2022 at 3:34:05 PM EDT
> **To:** "R. Albert Mohler" <mohler@sbts.edu>
> **Cc:** Scarlett Singleton Nokes <snokes@bradley.com>, "Besen, Gene" <gbesen@bradley.com>
> **Subject: Confidential/Time Sensitive Question**
>
> Dr. Mohler,
>
> I hope you are doing well and that this week's EC meetings went well for you and SBTS. I am writing to follow up on a conversation you and I had verbally, then briefly via email, several years ago. You may recall that as I was considering whether to agree to publicly disclose Dr. Sills' actions, I asked you if SBTS would be willing to provide legal counsel or cover my legal fees for me if he were to take legal action as a result of my public disclosure. You affirmed that verbally, albeit recognizing you needed to do so with appropriately prudent care as to the specifics of what you were precisely committing, which I understood to be either SBTS' own legal counsel representing me or SBTS paying for the legal fees I incurred from counsel of my choosing. I followed up with you on the matter in writing, which you then graciously affirmed in writing (see attached).
>
> I have heard from multiple individuals that Dr. Sills has retained a lawyer and has begun initial notifications that indicate a likely cause of action to come. As far as I know, I have not yet received this letter, which is likely due to the steps I have taken to make it difficult to find my address, including legally changing my name (I am now Jennifer Mullins), moving twice, etc. However, as I now know multiple parties have received this communication, I am obviously concerned about the additional ramifications any such action causes for me and my ongoing attempts to escape this. I am also concerned about all the unknowns that come being in my quite unique position, not having legal representation on call, and not being proactively notified by those who do and have been informed. I understand the latter is likely necessitated by the prudence of the legal counsel provided to the individuals and institutions who have received the notification, but as I am hoping you will recall, Sills reemerging with action such as this has been a matter I have feared deeply for nearly five years now and thus as it's clear that I will inevitably be involved, I need to proceed with retaining legal counsel.
>
> I have a tremendous amount of respect for Scarlett Nokes and Gene Besen at Bradley and if I were free to choose representation for myself in this matter, I would most certainly choose them, but I presume that is not possible given their representation of the EC and/or SBTS. Presuming I am correct in that, I need to solidify counsel for myself and do have a firm/attorney here in Nashville that I would like to retain for this matter. I am reaching out to you to inform you before I do so, confirm that you agree I need separate counsel from the EC/SBTS, and to determine how you prefer I advise the counsel I retain regarding billing. As I did when you made the commitment, I greatly appreciate the willingness of SBTS to ensure I do not obtain additional expenses as a result of my agreement to make the public disclosure. I just want to make sure I exercise that commitment in the manner most prudent for SBTS while ensuring I have the representation I need. Please advise me on any specifics I should tell the attorney I retain regarding billing or anything else regarding this matter. I apologize for the pressured timeframe, but as I only learned of this whole thing, I need to move quickly and thus appreciate your quick reply.

Lastly, I feel awkward saying this, but I can't fail to do so--Dr. Mohler, again, I am sorry that I did not tell you and the police what he was doing sooner and I further promise that I have at all times been completely honest regarding his conduct (as well as mine).

Sincerely,
Jennifer

**Mohler Thread Re Going Public Support and Atty Fees.pdf**
92K

Jennifer Lyell <jennifer.lyell@lifeway.com>

## Confidential Update

**Albert Mohler** <mohler@sbts.edu> Mon, Mar 4, 2019 at 12:47 PM
To: Jennifer Lyell <jennifer.lyell@lifeway.com>

Jennifer:

Thanks for the update. Your question is not tacky. I am telling you that SBTS will stand behind you in this statement. Legally, I have to be careful how I state this, as you would understand. But we stand behind you in this statement and its release and that includes standing behind you in legal defense. You have our full support.

I am also ready to make a statement to BP as soon as they are ready.

God will honor your courage. Of that I am also certain.

Praying for you and with you.

RAM

On Mar 4, 2019, at 10:13 AM, Jennifer Lyell <jennifer.lyell@lifeway.com> wrote:

Dr. Mohler,

My apologies again for occupying your inbox. I want to update you and gain clarification on one thing. First, I have spoken off the record with Baptist Press about running my article. They said they would prefer to do a story on David, include my full statement, give you/SBTS the opportunity to comment, and also give David the opportunity to comment. I am comfortable with this route so long as they include my full statement as I want to make sure that there is clarity around how all parties responded, but want you to know that's the direction it's going so you can get counsel from your legal team about what you could say. Second, thank you so much for your call with the commitment to stand with me and support me. I keep saying it over and over, but it's because it bears repeating how you and Mrs. Mohler have been a means of redemption to me in this. One question (that feels tacky, so I apologize) that I need to ask is if I can rightly interpret that statement of support to extend to the provision of legal help if he sues me. Could you let me know?

I'm meeting with my pastor and counselor this afternoon, then will make the decision based on their input and your response. I do think this could be very positive for SBTS as it shows clearly how swiftly and justly you and the entire team acted. Something for which I'll always be thankful.

Thanks again,
Jennifer
Jennifer Lyell
LifeWay Christian Resources
*We serve the Church in Her mission of making disciples.*

On Thu, Feb 28, 2019 at 11:28 AM Jennifer Lyell <jennifer.lyell@lifeway.com> wrote:
Absolutely. Thank you again!

Sent from my iPhone

On Feb 28, 2019, at 11:26 AM, R. Albert Mohler <mohler@sbts.edu> wrote:

Jennifer:

I read your email quickly before heading to preach here in California. I will need to ask our own legal counsel for advice and direction here. Do I have your permission to discuss the situation fully with our legal counsel?

RAM

Sent from my iPhone

On Feb 28, 2019, at 9:04 AM, Jennifer Lyell <jennifer.lyell@lifeway.com> wrote:

Dr. Mohler,

Sorry to bother you again, but I just met with a strong legal firm recommended to me to get a sense of my legal exposure for a lawsuit if I take the step of going public. They feel my letter is strong, the case is definitely winnable, but that he certainly could file a suit. Given that I have limited resources (and basically all of my money goes to counseling), if I were to take the step and be sued, is there any possibility that Southern or the SBC could help with the costs I would incur defending myself? I hate asking, but don't know who else to ask and am trying to think through everything before I make a decision that can't be undone (but that I do feel needs to bee taken).

Thanks for any input you can offer-
Jennifer

Jennifer Lyell
LifeWay Christian Resources
*We serve the Church in Her mission of making disciples.*

On Tue, Feb 26, 2019 at 7:43 PM Jennifer Lyell <jennifer.lyell@lifeway.com> wrote:

> Absolutely. 615.495.5765
>
> Jennifer Lyell
> LifeWay Christian Resources
> *We serve the Church in Her mission of making disciples.*
>
> On Tue, Feb 26, 2019 at 7:43 PM R. Albert Mohler <mohler@sbts.edu> wrote:
>
> > Jennifer, thank you for sending this to me. Would it be possible for us to talk by phone? Just a bit of information to share with you. Let me know what number to call if you are able.
> >
> > Thanks.
> > Albert Mohler
> >
> > Sent from my iPhone
> >
> > On Feb 26, 2019, at 5:30 PM, Jennifer Lyell <jennifer.lyell@lifeway.com> wrote:
> >
> > > Dr. Mohler,
> > >
> > > I hope this finds you doing well. I want to update you on how the Lord has been leading me regarding the situation with David Sills. I'm guessing you have heard that a few weeks ago it was discovered that he had been appointed as a missionary with a small, non-SBC missions agency. I've heard from those who contacted the agency that he lied and said he had resigned SBTS due to an impropriety 30 years in the past. I've realized that in my desire to protect the family and in how things unfolded with his resignation, there is no trail that would tell a ministry or church why he resigned his positions.
> > >
> > > As such, I've been prayerfully considering coming forward and sharing my story via a Baptist Press First Person article (assuming I can get them to run it). I have discussed this with my counselor and with an attorney. My pastor is out of the country this week and I do not want to act without talking to him, so I won't do anything until next week at the earliest and I continue to pray about taking this action.
> > >
> > > As I pray, I want you to be aware and to see what I've written (in which I've noted how swiftly and justly SBTS acted). I'm attaching the draft and would covet your prayers as I make this decision.
> > >
> > > I'm sorry to take more of your time with this and hope that it does not prove to be a distraction
> > >
> > > Sincerely,
> > > Jennifer
> > >
> > > Jennifer Lyell
> > > LifeWay Christian Resources
> > > *We serve the Church in Her mission of making disciples.*
> > >
> > > <BP Final.pdf>

 Jonathan Austin <jaustin@sbts.edu>

**Re: Confidential/Time Sensitive Question**

1 message

**R. Albert Mohler** <mohler@sbts.edu> Thu, Sep 22, 2022 at 12:36 AM
To: Jennifer Lyell <jennifer.lyell@gmail.com>
Cc: Scarlett Singleton Nokes <snokes@bradley.com>, "Besen, Gene" <gbesen@bradley.com>

Jennifer:

I just got in from events of the day. At this point our best course is to take absolutely no action unless and until an actual lawsuit is filed. If that point comes, we will have to respond.

I do hope you are well. I also hope you do not invest any worry on this issue when there is as yet no actual suit to our knowledge.

Praying God's blessings to you.

Albert Mohler

Sent from my iPhone

> On Sep 21, 2022, at 3:34 PM, Jennifer Lyell <jennifer.lyell@gmail.com> wrote:
>
>
> Dr. Mohler,
>
> I hope you are doing well and that this week's EC meetings went well for you and SBTS. I am writing to follow up on a conversation you and I had verbally, then briefly via email, several years ago. You may recall that as I was considering whether to agree to publicly disclose Dr. Sills' actions, I asked you if SBTS would be willing to provide legal counsel or cover my legal fees for me if he were to take legal action as a result of my public disclosure. You affirmed that verbally, albeit recognizing you needed to do so with appropriately prudent care as to the specifics of what you were precisely committing, which I understood to be either SBTS' own legal counsel representing me or SBTS paying for the legal fees I incurred from counsel of my choosing. I followed up with you on the matter in writing, which you then graciously affirmed in writing (see attached).
>
> I have heard from multiple individuals that Dr. Sills has retained a lawyer and has begun initial notifications that indicate a likely cause of action to come. As far as I know, I have not yet received this letter, which is likely due to the steps I have taken to make it difficult to find my address, including legally changing my name (I am now Jennifer Mullins), moving twice, etc. However, as I now know multiple parties have received this communication, I am obviously concerned about the additional ramifications any such action causes for me and my ongoing attempts to escape this. I am also concerned about all the unknowns that come being in my quite unique position, not having legal representation on call, and not being proactively notified by those who do and have been informed. I understand the latter is likely necessitated by the prudence of the legal counsel provided to the individuals and institutions who have received the notification, but as I am hoping you will recall, Sills reemerging with action such as this has been a matter I have feared deeply for nearly five years now and thus as it's clear that I will inevitably be involved, I need to proceed with retaining legal counsel.
>
> I have a tremendous amount of respect for Scarlett Nokes and Gene Besen at Bradley and if I were free to choose representation for myself in this matter, I would most certainly choose them, but I presume that is not possible given their representation of the EC and/or SBTS. Presuming I am correct in that, I need to solidify counsel for myself and do have a firm/attorney here in Nashville that I would like to retain for this matter. I am reaching out to you to inform you before I do so, confirm that you agree I need separate counsel from the EC/SBTS, and to determine how you prefer I advise the counsel I retain regarding billing. As I did when you made the commitment, I greatly appreciate the willingness of SBTS to ensure I do not obtain additional expenses as a result of my agreement to make the public disclosure. I just want to make sure I exercise that commitment in the manner most prudent for SBTS while ensuring I have the representation I need. Please advise me on any specifics I should tell the attorney I retain regarding billing or anything else regarding this matter. I apologize for the pressured timeframe, but as I only learned of this whole thing, I need to move quickly and thus appreciate your quick reply.
>
> Lastly, I feel awkward saying this, but I can't fail to do so--Dr. Mohler, again, I am sorry that I did not tell you and the

police what he was doing sooner and I further promise that I have at all times been completely honest regarding his
conduct (as well as mine).
>
> Sincerely,
> Jennifer

**Mohler Thread Re Going Public Support and Atty Fees.pdf**
92K



Jennifer Lyell <jennifer.lyell@lifeway.com>

## Confidential Update

Albert Mohler <mohler@sbts.edu>
To: Jennifer Lyell <jennifer.lyell@lifeway.com>

Mon, Mar 4, 2019 at 12:47 PM

Jennifer:

Thanks for the update. Your question is not tacky. I am telling you that SBTS will stand behind you in this statement. Legally, I have to be careful how I state this, as you would understand. But we stand behind you in this statement and its release and that includes standing behind you in legal defense. You have our full support.

I am also ready to make a statement to BP as soon as they are ready.

God will honor your courage. Of that I am also certain.

Praying for you and with you.

RAM

On Mar 4, 2019, at 10:13 AM, Jennifer Lyell <jennifer.lyell@lifeway.com> wrote:

Dr. Mohler,

My apologies again for occupying your inbox. I want to update you and gain clarification on one thing. First, I have spoken off the record with Baptist Press about running my article. They said they would prefer to do a story on David, include my full statement, give you/SBTS the opportunity to comment, and also give David the opportunity to comment. I am comfortable with this route so long as they include my full statement as I want to make sure that there is clarity around how all parties responded, but want you to know that's the direction it's going so you can get counsel from your legal team about what you could say. Second, thank you so much for your call with the commitment to stand with me and support me. I keep saying it over and over, but it's because it bears repeating how you and Mrs. Mohler have been a means of redemption to me in this. One question (that feels tacky, so I apologize) that I need to ask is if I can rightly interpret that statement of support to extend to the provision of legal help if he sues me. Could you let me know?

I'm meeting with my pastor and counselor this afternoon, then will make the decision based on their input and your response. I do think this could be very positive for SBTS as it shows clearly how swiftly and justly you and the entire team acted. Something for which I'll always be thankful.

Thanks again,
Jennifer
Jennifer Lyell
LifeWay Christian Resources
*We serve the Church in Her mission of making disciples.*

On Thu, Feb 28, 2019 at 11:28 AM Jennifer Lyell <jennifer.lyell@lifeway.com> wrote:
Absolutely. Thank you again!

Sent from my iPhone

On Feb 28, 2019, at 11:28 AM, R. Albert Mohler <mohler@sbts.edu> wrote:

Jennifer:

I read your email quickly before heading to preach here in California. I will need to ask our own legal counsel for advice and direction here. Do I have your permission to discuss the situation fully with our legal counsel?

RAM

Sent from my iPhone

On Feb 28, 2019, at 9:04 AM, Jennifer Lyell <jennifer.lyell@lifeway.com> wrote:

Dr. Mohler,

Sorry to bother you again, but I just met with a strong legal firm recommended to me to get a sense of my legal exposure for a lawsuit if I take the step of going public. They feel my letter is strong, the case is definitely winnable, but that he certainly could file a suit. Given that I have limited resources (and basically all of my money goes to counseling), if I were to take the step and be sued, is there any possibility that Southern or the SBC could help with the costs I would incur defending myself? I hate asking, but don't know who else to ask and am trying to think through everything before I make a decision that can't be undone (but that I do feel needs to bee taken).

Thanks for any input you can offer-
Jennifer

Jennifer Lyell
LifeWay Christian Resources
*We serve the Church in Her mission of making disciples.*

On Tue, Feb 26, 2019 at 7:43 PM Jennifer Lyell <jennifer.lyell@lifeway.com> wrote:

> Absolutely. 615.495.5765
>
> Jennifer Lyell
> LifeWay Christian Resources
> *We serve the Church in Her mission of making disciples.*
>
> On Tue, Feb 26, 2019 at 7:43 PM R. Albert Mohler <mohler@sbts.edu> wrote:
>
> > Jennifer, thank you for sending this to me. Would it be possible for us to talk by phone? Just a bit of information to share with you. Let me know what number to call if you are able.
> >
> > Thanks.
> > Albert Mohler
> >
> > Sent from my iPhone
> >
> > On Feb 26, 2019, at 5:30 PM, Jennifer Lyell <jennifer.lyell@lifeway.com> wrote:
> >
> > > Dr. Mohler,
> > >
> > > I hope this finds you doing well. I want to update you on how the Lord has been leading me regarding the situation with David Sills. I'm guessing you have heard that a few weeks ago it was discovered that he had been appointed as a missionary with a small, non-SBC missions agency. I've heard from those who contacted the agency that he lied and said he had resigned SBTS due to an impropriety 30 years in the past. I've realized that in my desire to protect the family and in how things unfolded with his resignation, there is no trail that would tell a ministry or church why he resigned his positions.
> > >
> > > As such, I've been prayerfully considering coming forward and sharing my story via a Baptist Press First Person article (assuming I can get them to run it). I have discussed this with my counselor and with an attorney. My pastor is out of the country this week and I do not want to act without talking to him, so I won't do anything until next week at the earliest and I continue to pray about taking this action.
> > >
> > > As I pray, I want you to be aware and to see what I've written (in which I've noted how swiftly and justly SBTS acted). I'm attaching the draft and would covet your prayers as I make this decision.
> > >
> > > I'm sorry to take more of your time with this and hope that it does not prove to be a distraction
> > >
> > > Sincerely,
> > > Jennifer
> > >
> > > Jennifer Lyell
> > > LifeWay Christian Resources
> > > *We serve the Church in Her mission of making disciples.*
> > >
> > > <BP Final.pdf>

CONFIDENTIAL

Caleb Shaw <cshaw@sbts.edu>

## Help with info

3 messages

**Brian Vickers** <bvickers@sbts.edu> Sat, Oct 1, 2022 at 1:28 PM
To: Caleb Shaw <cshaw@sbts.edu>

Hi Caleb

I'm in Ireland teaching at Munster Bible college and also meeting with pastors and speaking in churches. There are lots of questions about the SBC and the abuse scandals. One church wouldn't agree to let me come give a lecture because they assume SBTS is implicated at least in covering things up. Can you direct me to or send me any of the public statements Dr Mohler has made? I've been trying to explain how the SBC works, and SBTS' relationship to it but it probably appears that I'm just covering for my president and admin. Their ONLY exposure has been from National media outlets in the US and reports from people online who couldn't say something even neutral about RAM if they were paid to. By the way - it's not wide spread here don't think. But given the relationship Munster has with SBTS it would be good to be able to give them some reassurance (besides what they get from someone who knows RAM, has worked for him for 18 years, and before that was an assistant to him as a student).

Thanks
BV
--
Brian Vickers
Professor of New Testament Interpretation
The Southern Baptist Theological Seminary

**Caleb Shaw** <cshaw@sbts.edu> Sat, Oct 1, 2022 at 2:27 PM
To: Brian Vickers <bvickers@sbts.edu>

Dr. Vickers,

Thanks for writing about this. Glad to help any way I can. Here are a few resources:

This is the actual Guidepost report. I think it's very telling that the Jennifer Lyell situation is the only incident in the entire report where the institution responded in the appropriate manner. There's even an email from Dr. Mohler published in there that makes it clear that SBTS and Dr. Mohler responded appropriately.

Here's the article he published the day after the report was released.

Here's an article Dr. Mohler wrote in the Wall Street Journal following the release of the report.

Here's an interview he did this year after the Guidepost report was released.

Here's an interview he did with WLKY from 2019 when the Houston Chronicle report was released.

Here's a joint statement from the Great Commission Council supporting the work of the task force and supporting their proposals that were adopted at the Annual Meeting in Anaheim.

I hope that helps. If I can help in any other way, please let me know!

**Caleb Shaw**
*Chief of Staff and Executive Assistant to the President*

**O** (502) 897- 4121 | **C** (270) 331-1239 | cshaw@sbts.edu

**The Southern Baptist Theological Seminary**
2825 Lexington Road, Louisville, KY 40280
sbts.edu | T @ctshaw13
[Quoted text hidden]

---

**Brian Vickers** <bvickers@sbts.edu> Sun, Oct 2, 2022 at 10:06 AM
To: Caleb Shaw <cshaw@sbts.edu>

Thanks Caleb. I really appreciate it. This will go a long way in helping things here. I've read most of this personally but hadn't saved it. BV
[Quoted text hidden]

**SBC Resolution on Lament and Repentance for Sexual Abuse**

WHEREAS, Sexual abuse is an abomination before God and an affront to the teachings of Scripture (Psalm 11:5; Proverbs 6:16-20; Mark 7:20-34; 1 Corinthians 5:1-2; Hebrews 13:4; 1 Peter 1:15-17); and

WHEREAS, Sexual abuse grieves Christ and contradicts the heart of the gospel (Mark 12:31; 1 Corinthians 6:18-19; 2 Corinthians 5:10; Ephesians 4:1; Philippians 1:27); and

WHEREAS, Sexual abuse abandons the demands of Scripture for the holy living of God's people (1 Corinthians 6:18-19; Galatians 5:19-21; 1 Thessalonians 4:1-8; 1 Timothy 1:8-11); and

WHEREAS, Sexual abuse is a violation of the Imago Dei, dishonoring and degrading human dignity, especially in those most vulnerable among us (Genesis 1:26-27; Genesis 9:6; Psalm 8:3-5); and

WHEREAS, Sexual abuse causes harm to those who are entrusted to the church's care and protection (Proverbs 31:8-9; Isaiah 1:17; Jeremiah 22:3-5; Micah 6:8; 1 John 3:16-18); and

WHEREAS, The Southern Baptist Convention declared in our 2021 Resolution "On Abuse and Pastoral Qualifications" that sexual abuse "is an action repugnant to the teachings of Scripture and reprehensible even to those who are not believers"; and

WHEREAS, Sexual abuse perpetrated by pastoral leaders or church members is a violation of the sacred trust for pastoral leaders and all believers to care for and minister to people (Psalm 82:3-4; Proverbs 28:13; 1 Timothy 3:1-7; Titus 1:5-9); and

WHEREAS, Sexual abuse in the church is a failure of personal and public witness (1 Corinthians 5:1-13; 1 Corinthians 10:8; Ephesians 5:1-15; Ephesians 5:25-27); and

WHEREAS, Sexual abuse has occurred in and among our churches, sometimes at the hands of church members and sometimes at the hands of pastoral leaders; and

WHEREAS, In too many cases our convention of churches has failed to care well for those who have been abused; and

WHEREAS, Our responses have at times sought first to protect the reputation of our leaders, churches, and institutions rather than to care for survivors of sexual abuse; and

WHEREAS, Our institutional responses have at times caused irreparable personal harm to survivors of sexual abuse, leaving them feeling isolated, powerless, and without a voice; and

WHEREAS, We have failed to educate and thus adequately prepare church leaders to respond to abuse; and

WHEREAS, Our churches have failed at times properly to report cases of abuse to the appropriate authorities (Romans 13:1-7); now, therefore, be it

RESOLVED, That the messengers to the Southern Baptist Convention meeting in Anaheim, California, June 14-15, 2022, denounce in the strongest possible terms every instance of sexual abuse, those who perpetrate abuse, and those who seek to defend or protect these perpetrators; and be it further

RESOLVED, That we affirm the Bible's teaching to seek justice for those who have been harmed, protect the vulnerable, and honor the dignity and worth of survivors of sexual abuse (Genesis 1:26, Psalm 82:2-4, Isaiah 1:17, Micah 6:8); and be it further

RESOLVED, That we publicly lament the harm our actions and inactions have caused to survivors of sexual abuse; and be it further

RESOLVED, That we publicly apologize to and ask forgiveness from survivors of sexual abuse for our failure to care well for survivors, for our failure to hold perpetrators of sexual abuse adequately accountable in our churches and institutions, for our institutional responses which have prioritized the reputation of our institutions over protection and justice for survivors, and for the unspeakable harm this failure has caused to survivors through both our action and inaction; and be it further

RESOLVED, That we publicly repent and acknowledge our need for comprehensive change in caring well for survivors of sexual abuse; and be it further

RESOLVED, That amid our failures, we express our hope in Christ, who never fails to care for those who have been harmed, that he watches over the vulnerable members of our churches, that he can bring healing to survivors of sexual abuse, and that he can bring both retributive justice to perpetrators of sexual abuse and restorative justice to survivors of sexual abuse; and be it further

RESOLVED, That we prayerfully endeavor to eliminate all instances of sexual abuse among our churches; and be it further

RESOLVED, That we commit ourselves to the ongoing moral demands of the gospel in relation to sexual abuse, observing the command of our Lord to "teach everything I have commanded you" (Matthew 28:20), including the command to "love your neighbor as yourself" (Mark 12:31; Luke 10:27, 34-35); and be it further

RESOLVED, That we call for churches to teach the importance of honoring one another and treating one another virtuously in the area of sexuality so churches can become safe places that protect the vulnerable; and be it further

RESOLVED, That we give of our time and resources to bind the wounds of the broken, hold accountable perpetrators of sexual abuse and those who seek to defend them, and care well for survivors of sexual abuse; and be it finally

RESOLVED, That we recognize and appreciate the work and advocacy of sexual abuse survivors, repent of our resistance and neglect of their efforts, and unreservedly apologize to survivors mentioned in the report, including Christa Brown, Susan Codone, Megan Lively, Jennifer Lyell, Anne Marie Miller, David Pittman, Tiffany Thigpen, Debbie Vasquez, Hannah-Kate Williams, and Jules Woodson, for our not heeding their collective warnings and taking swift action to address clergy sexual abuse sooner.[1]

---

[1] *These are the survivors mentioned in the report who have given their consent to have their names listed.*

**SBC Resolution on Lament and Repentance for Sexual Abuse**

WHEREAS, Sexual abuse is an abomination before God and an affront to the teachings of Scripture (Psalm 11:5; Proverbs 6:16-20; Mark 7:20-34; 1 Corinthians 5:1-2; Hebrews 13:4; 1 Peter 1:15-17); and

WHEREAS, Sexual abuse grieves Christ and contradicts the heart of the gospel (Mark 12:31; 1 Corinthians 6:18-19; 2 Corinthians 5:10; Ephesians 4:1; Philippians 1:27); and

WHEREAS, Sexual abuse abandons the demands of Scripture for the holy living of God's people (1 Corinthians 6:18-19; Galatians 5:19-21; 1 Thessalonians 4:1-8; 1 Timothy 1:8-11); and

WHEREAS, Sexual abuse is a violation of the Imago Dei, dishonoring and degrading human dignity, especially in those most vulnerable among us (Genesis 1:26-27; Genesis 9:6; Psalm 8:3-5); and

WHEREAS, Sexual abuse causes harm to those who are entrusted to the church's care and protection (Proverbs 31:8-9; Isaiah 1:17; Jeremiah 22:3-5; Micah 6:8; 1 John 3:16-18); and

WHEREAS, The Southern Baptist Convention declared in our 2021 Resolution "On Abuse and Pastoral Qualifications" that sexual abuse "is an action repugnant to the teachings of Scripture and reprehensible even to those who are not believers"; and

WHEREAS, Sexual abuse perpetrated by pastoral leaders or church members is a violation of the sacred trust for pastoral leaders and all believers to care for and minister to people (Psalm 82:3-4; Proverbs 28:13; 1 Timothy 3:1-7; Titus 1:5-9); and

WHEREAS, Sexual abuse in the church is a failure of personal and public witness (1 Corinthians 5:1-13; 1 Corinthians 10:8; Ephesians 5:1-15; Ephesians 5:25-27); and

WHEREAS, Sexual abuse has occurred in and among our churches, sometimes at the hands of church members and sometimes at the hands of pastoral leaders; and

WHEREAS, In too many cases our convention of churches has failed to care well for those who have been abused; and

WHEREAS, Our responses have at times sought first to protect the reputation of our leaders, churches, and institutions rather than to care for survivors of sexual abuse; and

WHEREAS, Our institutional responses have at times caused irreparable personal harm to survivors of sexual abuse, leaving them feeling isolated, powerless, and without a voice; and

WHEREAS, We have failed to educate and thus adequately prepare church leaders to respond to abuse; and

WHEREAS, Our churches have failed at times properly to report cases of abuse to the appropriate authorities (Romans 13:1-7); now, therefore, be it

RESOLVED, That the messengers to the Southern Baptist Convention meeting in Anaheim, California, June 14-15, 2022, denounce in the strongest possible terms every instance of sexual abuse, those who perpetrate abuse, and those who seek to defend or protect these perpetrators; and be it further

RESOLVED, That we affirm the Bible's teaching to seek justice for those who have been harmed, protect the vulnerable, and honor the dignity and worth of survivors of sexual abuse (Genesis 1:26, Psalm 82:2-4, Isaiah 1:17, Micah 6:8); and be it further

RESOLVED, That we publicly lament the harm our actions and inactions have caused to survivors of sexual abuse; and be it further

RESOLVED, That we publicly apologize to and ask forgiveness from survivors of sexual abuse for our failure to care well for survivors, for our failure to hold perpetrators of sexual abuse adequately accountable in our churches and institutions, for our institutional responses which have prioritized the reputation of our institutions over protection and justice for survivors, and for the unspeakable harm this failure has caused to survivors through both our action and inaction; and be it further

RESOLVED, That we publicly repent and acknowledge our need for comprehensive change in caring well for survivors of sexual abuse; and be it further

RESOLVED, That amid our failures, we express our hope in Christ, who never fails to care for those who have been harmed, that he watches over the vulnerable members of our churches, that he can bring healing to survivors of sexual abuse, and that he can bring both retributive justice to perpetrators of sexual abuse and restorative justice to survivors of sexual abuse; and be it further

RESOLVED, That we prayerfully endeavor to eliminate all instances of sexual abuse among our churches; and be it further

RESOLVED, That we commit ourselves to the ongoing moral demands of the gospel in relation to sexual abuse, observing the command of our Lord to "teach everything I have commanded you" (Matthew 28:20), including the command to "love your neighbor as yourself" (Mark 12:31; Luke 10:27, 34-35); and be it further

RESOLVED, That we call for churches to teach the importance of honoring one another and treating one another virtuously in the area of sexuality so churches can become safe places that protect the vulnerable; and be it further

RESOLVED, That we give of our time and resources to bind the wounds of the broken, hold accountable perpetrators of sexual abuse and those who seek to defend them, and care well for survivors of sexual abuse; and be it finally

RESOLVED, That we recognize and appreciate the work and advocacy of sexual abuse survivors, repent of our resistance and neglect of their efforts, and unreservedly apologize to survivors mentioned in the report, including Christa Brown, Susan Codone, Megan Lively, Jennifer Lyell, Anne Marie Miller, David Pittman, Tiffany Thigpen, Debbie Vasquez, Hannah-Kate Williams, and Jules Woodson, for our not heeding their collective warnings and taking swift action to address clergy sexual abuse sooner.[1]

---

[1] *These are the survivors mentioned in the report who have given their consent to have their names listed.*

| Guidepost/Task Force Recommendations | Addressed by | Notes |
|---|---|---|
| **EC-3: (A)** Resource Toolbox - Content | Handbooks; MinistrySafe Training (see note) | Information/training is all offered by SBTS, but not uniformly to all stakeholders |
| **EC-3: (B and C)** Resource Toolbox - Training | MinistrySafe (see note) | Currently not required for staff and no sunset for recertification |
| **EC-3: (D)** Resource Toolbox - Investigative Guidelines | Handbooks | |
| **EC-4:** Self-Certification Program | Compliance Committee review process | Consider MinistrySafe Self-Assessment Tool for more objective evaluation |
| **EC-5: (A)** Enhance Prevention - Background Checks | HR intake process; Events Volunteer/Staff Policy; Employee Handbook | |
| **EC-5: (B)** Enhance Prevention - Offender Information System (OIS) | X | See also--SATF Recommendation #2; look into implications for Lyell and HKW |
| **EC-5: (D)** Enhance Prevention - Code of Conduct | Handbooks; Student Covenant | Look at extending covenantal standards to all stakeholders |
| **EC-6:** Declaration of Principles | Handbooks; RAM letters and public comments | No formal SBTS "declaration" published |
| **EC-7: (A)** Survivor Support Resources - Assistance Program | Handbooks; WSC; Center for Biblical Living | |
| **EC-7: (B)** Survivor Support Resources - Compensation Fund | X | |
| **EC-8:** Non-Disclosure Agreements | X | |
| **EC-9: (A)** Adequate Funding for Reforms - Annual Budget Allocation for Sexual Abuse Prevention/Response | See notes | No single budget allocation earmarked for Sexual Abuse Prevention/Response, but SBTS funds these categories through various programs/departments |
| **EC-10: (A)** Defining Southern Baptist Beliefs Regarding Sexual Abuse | RAM public comments | |
| **EC-11:** Improve Governance at SBC EC by Creating the Position of Chief Ethics and Compliance Officer | SVP of IA | |

| | | |
|---|---|---|
| **EC-12: (A, B, D)** Document Retention Policy | Data Governance and Risk Classification Policy (in process by Campus Tech); HR claims processing and disciplinary procedure | Storage not centralized or audited |
| **EC-12: (C)** Document Retention Policy - Audit Complaints and Mandatory Reports | X | Storage not centralized or audited |
| **EC-13: (A, B, C)** Enhance Compliance Policies | Compliance Committee review process | |
| **EC-14: (B, C, D)** Create a Media Plan to Bring Awareness to Issues of Sexual Abuse | SBTS Communication Plan regarding sexual misconduct | |
| **EC-15: (A)** Acknowledge Survivors - Written Apology | X | SBC Resolution on Lament and Repentance for Sexual Abuse (2022) specifically apologized to Lyell and HKW |
| **EC-16:** Enhance Awareness of Sexual Abuse within SBC Entities | SBTS Communication Plan regarding sexual misconduct | |
| **Appendix H-7:** New Written Criteria for Ordination and Revocation of Ordination Related to Sexual Abuse | X | |
| **SATF Challenge to Entities #4** - Training | MinistrySafe (see note) | No sunset for recertification |
| **SATF Challenge to Entities #5** - Participation in the SBC Sexual Abuse Assessment | X | |
| **SATF Recommendation #2** - Ministry Check Website | X | See also--EC-5B; Recommendation specifies "pastors, denominational workers, ministry employees, and volunteers," but we need to look at including students |

| | A |
|---|---|
| 1 | **Guidepost/Task Force Recommendations** |
| 2 | **EC-3: (A)** Resource Toolbox - Content |
| 3 | **EC-3: (B and C)** Resource Toolbox - Training |
| 4 | **EC-3: (D)** Resource Toolbox - Investigative Guidelines |
| 5 | **EC-4:** Self-Certification Program |
| 6 | **EC-5: (A)** Enhance Prevention - Background Checks |
| 7 | **EC-5: (B)** Enhance Prevention - Offender Information System (OIS) |
| 8 | **EC-5: (D)** Enhance Prevention - Code of Conduct |
| 9 | **EC-6:** Declaration of Principles |
| 10 | **EC-7: (A)** Survivor Support Resources - Assistance Program |
| 11 | **EC-7: (B)** Survivor Support Resources - Compensation Fund |
| 12 | **EC-8:** Non-Disclosure Agreements |
| 13 | **EC-9: (A)** Adequate Funding for Reforms - Annual Budget Allocation for Sexual Abuse Prevention/Response |
| 14 | **EC-10: (A)** Defining Southern Baptist Beliefs Regarding Sexual Abuse |
| 15 | **EC-11:** Improve Governance at SBC EC by Creating the Position of Chief Ethics and Compliance Officer |
| 16 | **EC-12: (A, B, D)** Document Retention Policy |
| 17 | **EC-12: (C)** Document Retention Policy - Audit Complaints and Mandatory Reports |
| 18 | **EC-13: (A, B, C)** Enhance Compliance Policies |
| 19 | **EC-14: (B, C, D)** Create a Media Plan to Bring Awareness to Issues of Sexual Abuse |
| 20 | **EC-15: (A)** Acknowledge Survivors - Written Apology |
| 21 | **EC-16:** Enhance Awareness of Sexual Abuse within SBC Entities |
| 22 | **Appendix H-7:** New Written Criteria for Ordination and Revocation of Ordination Related to Sexual Abuse |
| 23 | **SATF Challenge to Entities #4** - Training |
| 24 | **SATF Challenge to Entities #5** - Participation in the SBC Sexual Abuse Assessment |
| 25 | **SATF Recommendation #2** - Ministry Check Website |

| | B |
|---|---|
| 1 | **Addressed by** |
| 2 | Handbooks; MinistrySafe Training (see note) |
| 3 | MinistrySafe (see note) |
| 4 | Handbooks |
| 5 | Compliance Committee review process |
| 6 | HR intake process; Events Volunteer/Staff Policy; Employee Handbook |
| 7 | X |
| 8 | Handbooks; Student Covenant |
| 9 | Handbooks; RAM letters and public comments |
| 10 | Handbooks; WSC; Center for Biblical Living |
| 11 | X |
| 12 | X |
| 13 | See notes |
| 14 | RAM public comments |
| 15 | SVP of IA |
| 16 | Data Governance and Risk Classification Policy (in process by Campus Tech); HR claims processing and disciplinary procedure |
| 17 | X |
| 18 | Compliance Committee review process |
| 19 | SBTS Communication Plan regarding sexual misconduct |
| 20 | X |
| 21 | SBTS Communication Plan regarding sexual misconduct |
| 22 | X |
| 23 | MinistrySafe (see note) |
| 24 | X |
| 25 | X |