IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL DAVID SILLS and MARY SILLS, | |
| Plaintiffs, | Case No.: 3-23-cv-00478 |
| v. | Chief Judge Campbell |
| SOUTHERN BAPTIST CONVENTION, et al. | Magistrate Judge Frensley |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE DEFENDANTS' PSYCHOLOGY EXPERT ANNA C. SALTER, PHD**

Plaintiffs Michael David Sills ("Sills") and Mary Sills (collectively "Plaintiffs") respectfully submit this Reply in Support of their Motion to Exclude Testimony and Opinions of Defendants' Proposed Expert Anna S. Salter, PhD ("Salter"). For the reasons stated below, the Motion should be granted in its entirety.

### I.  INTRODUCTION

In response to the motion to exclude their psychology expert, Defendants fail to rescue the deficient process Salter used to opine that Lyell's 12-year relationship was beyond her control, due to a trauma bond, and therefore not consensual. Underlying Salter's methodology is the presumption that a clinical psychologist can opine on the dynamics of a 12-year relationship based on a couple hundred email and text messages, from a potential universe of 50,000 produced communications without any attempt to ensure a representative statistical sampling of the communication, instead relying on a subset cherrypicked by the defense attorneys who hired her to provide authority for a fringe psychological theory. Salter's opinion is inadmissible speculation which an "expert may not offer as evidence." *Ramsbottom v. Ashton*, No. 3:21-cv-00272, 2025 WL 311550 (M.D. Tenn. Jan. 27, 2025).

## ARGUMENT

Defendants' use of the term methodology is inappropriate as Salter's process isn't recognized by any standards. If it were, Defendants would have presented myriad literature from the field to support the process that Salter used here to reach her conclusions. However, the process she used is anathema to the scientific process which is why no literature exists in support. Salter relied upon cherrypicked emails and communications given to her by defense counsel to confirm a position they needed her to have. That is a process absent objective, reproducible inquiry that is precisely what Fed. R. Evid. 702 is designed to filter out of the legal system.

To support their claim that courts "routinely find methodologies similar to Dr. Salter's to be sufficient to satisfy the requirements of Rule 702" (Response at 4), Defendants rely only upon two nonbinding New York District Court cases. In *O'Laughlin v. USTA Player Dev.,* No. 14 Civ. 2194 (VB), 2016 U.S. Dist. LEXIS 133586 (S.D.N.Y. Sept. 28, 2016), a teenage tennis player sued the United States Tennis Association for causing her eating disorder as a result of threatening to kick her out of the program if she did not lose 20 pounds. The plaintiff retained an expert who specialized in the treatment of eating disorders and bulimia nervosa to opine only as to the cause and exacerbation thereof. *Id.* at 7. The expert reviewed testimony, medical records, conducted a 75-minute interview with Plaintiff, and medical literature. *Id.* at 12. Notably, the expert in *O'Laughlin* was *not* providing a diagnosis of the plaintiff.

In *Betts v. Sixty Lower E. Side, LLC,* No. 20 Civ. 4772 (NRB), 2025 U.S. Dist. LEXIS 124176, at *15-16 (S.D.N.Y. June 30, 2025), Defendants' parenthetical is simply incorrect as the expert at issue *did* review *eight* years of psychiatric records of the treating psychiatrist, just not the records from four treatment session prior to the assault at issue in the case, in order to make a PTSD diagnosis.

However, here, it is unclear whether Salter even reviewed any of Lyell's relevant medical records. She testified that she "did not have [Lyell's] therapeutic records." Salter Dep., ECF No. 467-1, at 89. Salter claims to have reviewed some of Lyell's medical records but none are listed in her appendix which contains her records reviewed. ECF No. 467-5. Salter also testified that she did not remember what medical records she reviewed. *Id.* at 65. In further contrast to *Betts* and *O'Loughlin*, Salter testified that Lyell's medical records were not important to her analysis nor were any of her diagnoses. *Id.* at 65-66. This admission plainly highlights how disconnected Salter's fringe theory and methodology are to mainstream psychology; she's able to arrive at her conclusions in the absence of reviewing Lyell's medical records or diagnoses; a telling admission.

Additionally, the psychiatric conditions at issue in the *Betts* and *O'Laughlin* matters, PTSD and bulimia nervosa, are both well understood and regularly treated within the medical and mental health community such that they are both conditions identified, defined and outlined in the Diagnostic and Statistical Manual ("DSM-5"). The DSM-5 contains diagnostic criteria for mental health disorders to assist clinicians in effective assessment and diagnosis.[1] It is the authoritative guide to the diagnosis of mental disorders for health care professionals, and it standardizes diagnoses.[2] Unsurprisingly, trauma bonding is not recognized anywhere within the DSM-5, a fact acknowledged by Salter. Salter dep at 131:1-23.

In fact, the only material Defendants' Response references in support of trauma bonding as something other than a fringe theory is a 1981 article published *in a defunct journal*. And while they state that it is peer-reviewed, they provide no evidence to support that assertion, because none exists. It is a certainty that if trauma bonding was a theory taken seriously in the field, Defendants

---

[1] https://my.clevelandclinic.org/health/articles/24291-diagnostic-and-statistical-manual-dsm-5, Last visited January 15, 2026.
[2] https://www.psychiatry.org/File%20Library/Psychiatrists/Practice/DSM/APA_DSM-Development-of-DSM-5.pdf, Last visited January 15, 2026.

would have provided fulsome string citations to actual peer-reviewed studies endorsing its existence, providing solid definitions of its meaning and laying out validated testing methodologies to measure its presence. By way of example, a search of PubMed, the premier search engine for medical academic publications, yields 7,948 documents when "bulimia nervosa"[3] is searched and 42,748 documents when "PTSD"[4] is searched; a search of "trauma bonding" returns a mere 15 results.

Defendants attempt to shift the burden on Plaintiffs to explain how their psychology expert should have used statistical sampling to avoid the clear biased sampling that has tainted her opinions in this matter. This is an admission that Salter herself does not understand how to properly sample a dataset and failed to do so here, a dispositive fact. And, Defendants cite to no rule or case, nor could they, which permits shifting this burden to Plaintiffs. The proposition that it is somehow Plaintiffs' responsibility to provide their expert with a proper framework for devising her opinions in this matter is contrary to the Federal Rules and to reason. The methods for proper statistical sampling are component to modern psychology undergraduate study, including from Salter's own undergraduate institution, University of North Carolina (UNC). The current UNC course catalog for psychology students offers PSYC 210, Statistical Principles of Psychological Research.[5] A similar course is required for current psychology undergraduate students at Harvard University, PSY 1900: Introduction to Statistics for the Behavioral Sciences.[6]

Defendants cite specific Salter testimony (Response at 3, fn. 2) to argue Plaintiffs ignore Salter's review of Rolland Slade's deposition which contains an exhibit that contradicts the tenor

---

[3] https://pubmed.ncbi.nlm.nih.gov/?term=bulimia+nervosa, Last visited January 15, 2026.
[4] https://pubmed.ncbi.nlm.nih.gov/?term=ptsd, Last visited January 15, 2026.
[5] https://catalog.unc.edu/courses/psyc/, Last visited January 15, 2026.
[6] https://qrd.college.harvard.edu/directory/psy-1900/, Last visited January 15, 2026.

of the emails Salter relies upon, in an attempt to convey that a single document offsets a corpus of cherrypicked data. A single document has no explanatory power in this context of over 50,000 communications between Lyell and Sills. This is an acknowledgement that Salter's opinions rely on anecdote rather than data. Making matters even more troublesome for Defendants, their citation to Salter's testimony reveals the true value Rolland Slade's deposition had to her: "Q: What do you remember from Rolland Slade's deposition? A: I really don't remember anything from that because it became clear it was outside my – what I was supposed to be addressing." Salter Dep., ECF No. 467-1, at 42:22-43:1.

Salter's methodology is not reproducible. Salter herself has no information about what caused defense attorneys to select the specific subset of emails and communications from the vastly larger corpus. She simply asked them to choose and send her "emails that might relate to the relationship between them." *Id.* at 163:14-15. This imprecise definition was intentional because her exercise was designed from the outset to reach a predetermined conclusion, which is why she disavowed the necessity of statistical sampling when she stated "in a statistical sampling it's very likely going to not tell you about a specific pattern that you're looking for." *Id.* at 162:18-20. Salter started with a conclusion and only sought confirmatory data. No *properly designed* method for testing Salter's research question could reproduce what she has done here.

Defendants assert that their necessity for arguing the presence of a "trauma bond" is to counter Plaintiffs' use of emails between them to suggest the presence of a consensual relationship. However, whether the relationship was consensual or not is readily understood by a jury based on their life experience. Because the facts so clearly reflect a consensual relationship between Lyell and Sills, Defendants need their fringe theory to pathologize the consensual component into

5

something that is scientifically non-consensual. This is nothing more than an attempt to improperly influence and confuse the jury and should not be permitted.

## CONCLUSION

Plaintiffs request their Motion be granted and Defendants' psychology expert, Anna C. Salter, PhD, and Salter should not be permitted to testify as to any topic or opinion offered in her Report or deposition testimony.

Dated: January 16, 2026.

Respectfully submitted,

CLIFFORD LAW OFFICES, P.C.

*/s/ Shannon M. McNulty*
Shannon M. McNulty (admitted *pro hac vice*)
Kristofer S. Riddle (admitted *pro hac vice*)
120 N LaSalle Street, 36th Floor
Chicago, IL 60602
T: 312-899-9090 | F: 312-251-1160
E: smm@cliffordlaw.com
    ksr@cliffordlaw.com

and

BARRETT LAW GROUP, P.A.

*/s/ Katherine B. Riley*
Katherine Barrett Riley (TN BPR#021155)
John W. ("Don") Barrett (admitted *pro hac vice*)
Sterling Aldridge (admitted *pro hac vice)*
PO Box 927
404 Court Square N
Lexington, MS 39095
T: 662-834-2488 | F: 662-834-2628
E: kbriley@barrettlawgroup.com
E: dbarrett@barrettlawgroup.com
E: saldridge@barrettlawgroup.com

*COUNSEL FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I, Kristofer S. Riddle, hereby certify that on January 16, 2026, I served the above and foregoing on all counsel of record via the Court's CM/ECF filing system.

                                                */s/ Kristofer S. Riddle*
                                                Kristofer S. Riddle