# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| MICHAEL DAVID SILLS and MARY SILLS, | ) ) ) | |
| Plaintiffs, | ) ) | CASE NO. 3:23-cv-00478 |
| v. | ) ) ) | JUDGE WILLIAM L. CAMPBELL, JR. |
| SOUTHERN BAPTIST CONVENTION, *et al.* | ) ) ) | Magistrate Judge Frensley |
| Defendants. | ) ) | |

## PLAINTIFFS' MEMORANDUM IN RESPONSE TO THE COURT'S ORDER ON WHETHER JENNIFER LYELL WAS A LIMITED-PURPOSE PUBLIC FIGURE PRIOR TO THE PUBLICATION OF THE REPORT ON MAY 22, 2022

Plaintiffs Michael David Sills ("Sills") and Mary Sills (collectively, "Plaintiffs") respectfully submit this memorandum in response to the Court's order entered April 2, 2026 [Dkt. No. 498], requesting supplemental briefing on the question of whether Jennifer Lyell ("Lyell") was a limited-purpose public figure prior to publication of the Guidepost Report on May 22, 2022. Plaintiffs respectfully answer this question in the negative. That is, Jennifer Lyell was not a limited-purpose public figure prior to the publication of the Guidepost Report.

### INTRODUCTION AND FACTUAL BACKGROUND

This action arises from Defendants' negligent serial branding of Sills as a "sexual abuser."[1] Defendants made repeated false statements that Sills sexually abused Lyell over a twelve (12) year period and that Mary Sills was complicit in that abuse.[2] The reckless narrative culminated in a

---

[1] Dkt. No. 1.
[2] Dkt. Nos. 411-28; 411-48; 413-1; 413-49; 415; 327-12 at 19:18-22.

worldwide publication of the Guidepost Report.[3] Lyell was a defendant in this action until the time of her death.[4]

The facts have been the subject of extensive discovery and motion practice before this Court. In short, Lyell lied about the nature of her relationship with Sills, even by Defendants' own account.[5] The evidence amply reflects the relationship was an affair that was later portrayed by Lyell as abuse. The relationship between Lyell and Sills was not a matter of public interest, and Lyell was not a public figure before publication of the Report.[6] The Report transformed the publicity, despite the fact that Guidepost never investigated the truth of the underlying allegations.[7]

Lyell sought and received "confidentiality" before the Report was published effectively giving her control over the narrative.  Even on the date of the Report's release, Lyell wrote to Julie Wood of Guidepost reiterating that she did not want to be "a consequential focus of the report (none)."[8] Dr. Mohler, the President of the Southern Baptist Theological Seminary, considered the issue to be that of an employment matter at the Seminary.[9] Lyell's communications about the relationship and her strategy (even if false) were made in private emails to her private confidant, Liz Lockwood, and her therapists.[10] None of that information was public.

The evidence shows that Lyell and each Defendant leveraged the false and unsubstantiated allegations to recast the consensual relationship as abuse to promote a narrative that the SBC and

---

[3] Dkt. No. 390-3 at 52.
[4] Lyell passed away during the course of this litigation, and Plaintiffs' claims against Lyell were voluntarily dismissed. *See* Dkt. No. 354.
[5] *See* April 2020 Mediation Statement, Dkt. No. 413-24. *See also* Dkt. Nos. 201-5 at 135:18-21; 359-1 at 31:1-32:20; 411-17.
[6] Dkt. No. 413-46.
[7] Dkt. No. 398-5 at 6.
[8] Exhibit 1, LYELL_00347353.
[9] Dkt. No. 201-3 at 117:23-118:4; 175:9-19.
[10] Dkt. Nos. 393; 393-8; 413-48.

2

the Executive Committee had finally properly "handled" an abuse allegation. But that narrative was false; no bona fide abuse allegation was properly investigated, corroborated, or resolved as it relates to Sills.[11]

Lyell initially spoke publicly about her "inappropriate" relationship with Sills in the Baptist Press article released in March 2019; however, that article did not make the affair a public controversy.[12] Indeed, counsel for the SBC questioned whether there was any value in printing the story in part because Lyell had contacted Baptist Press "alleging that a former SBTS professor groomed her *for an affair*."[13]

After receiving negative backlash from the Baptist Press article, Lyell's accounts of the relationship became considerably more sinister in tone and in substance. She began to tell others that she had been raped, violently threatened with her life,[14] endured a home invasion, physically abused and held against her will, including in an interview in which Lyell participated, which she still insisted to third parties remain "confidential."[15] The alleged offenses are heinous, but they never happened between Sills and Lyell. Lyell also reached out to Dr. Mohler,[16] Rolland Slade,[17] and lawyers for the SBC.[18] But these communications likewise did not create a matter of public interest.

Eventually, in connection with the Guidepost investigation and the Report, Lyell and Defendants saw an opportunity to "rebrand" their respective reputations. Neither the opportunity

---

[11] Dkt. No. 390-7 at 47; 54-55.
[12] Dkt. No. 355-3 at 24-25.
[13] Exhibit 2, EC_003520 (emphasis added).
[14] Dkt. No. 413-9 at 99:7-21.
[15] *See* Dkt. Nos. 327-12; 413-24.
[16] Dkt. No. 413.
[17] Exhibit 3, Lyell_00178266.
[18] Dkt. No. 225-9.

nor effort were made public or known to Sills. Defendant Litton appointed Lyell's lawyer, Rachael Denhollander, to a formal role on the Task Force, with early access to the Guidepost Report.[19] No other victims or attorneys were given comparable roles, and that information was concealed from the public until the Report's publication in May 2022.  In connection with the Guidepost work, Lyell agreed to be the feature of a video supported by Defendants.[20] In the days leading up to the Report's publication, Lyell began to ramp up her social media outreach.[21] When the Report was published, Lyell's version of events overwhelmingly dominated the Report. Interest in her story generated Lyell a 60 Minutes interview, and Lyell at that time characterized herself as "fancy."[22] That "fame" was manufactured alongside the Report.

## I.    ARGUMENT

### A.    Lyell Was Not a Limited Purpose Public Figure Before the Report.

A limited-purpose public figure is a public figure with respect to "a limited range of issues," and one achieves that status by "voluntarily inject[ing] [her]self ... into a particular public controversy." *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 527 (6th Cir. 2014) (characterizing plaintiffs in defamation cases) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)); *see also*, *Press, Inc. v. Verran*, 569 S.W.2d 435, 439 (Tenn. 1978) (quoting *Gertz*, 418 U.S. at 344-45). *Gertz* "established a two-prong test to determine if a plaintiff is a [limited-purpose] public figure." *Cooley*, 759 F.3d at 529 (citing *Clark v. ABC, Inc.*, 684 F.2d 1208, 1218 (6th Cir.1982)). "First, a 'public controversy' must exist." *Id*. "Second, the nature and extent of the individual's involvement in the controversy must be ascertained[,]" *id*., so that the court can

---

[19] Dkt. Nos. 413-15 at 190:1-13; 195:23-196:9; 413-19 at Lyell_00193078.
[20] Exhibit 4, Lyell Dep. Day 1, 86:4-89:16.
[21] Exhibit 5, Lyell_00183222.
[22] Exhibit 6, Mohler Dep. Ex. 12.

determine whether the plaintiff voluntarily injected itself into the particular public controversy giving rise to the alleged defamation. *Id*. (citing *Gertz*, 418 U.S. at 345, 351).

Critically, not every matter that attracts attention qualifies as a "public controversy." Courts require a "'real dispute, the outcome of which affects the general public or some segment of it in an appreciable way.'" *Id.* (quoting *Waldbaum v. Fairchild Pub., Inc.*, 627 F.2d 1287, 1296 (D.C. Cir. 1980)). And the inquiry is not conducted at a high level of generality, "the court must isolate the specific public controversy related to the defamatory remarks. *Id.* at 530 (quoting *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1137 (10th Cir. 2006).

Measured against these principles, Lyell was not a limited-purpose public figure. First, no qualifying public controversy existed. The nature of the relationship between Lyell and Sills was a private matter. Lyell was at all times during her relationship with Sills an adult who both initiated and tried to maintain an intimate relationship with Sills.[23] Prior to the Report's publication, Lyell falsely reported the nature of her relationship with Sills to Dr. Mohler,[24] Eric Geiger,[25] Rolland Slade,[26] and Baptist Press.[27] The communications, however, were neither public nor part of any broader debate affecting the public. To the contrary, the reported subject-matter was private and treated privately, including Lyell herself proposing and seeking confidentiality and speaking to board members in private.[28] A private relationship, even if later disputed, is not transformed into a "public controversy" merely because it is later publicized. *See Cooley*, 759 F.3d at 529 (requiring a preexisting dispute of public consequence).

---

[23] Dkt. No. 413-46.
[24] Dkt. No. 413.
[25] Dkt. Nos. 411-11; 413-73.
[26] Exhibit 3, Lyell_00178266.
[27] *See* Exhibit 2, EC_0003520, Dkt. Nos. 355-3 at 24-25; 411-48.
[28] Dkt. Nos. 413-21; 413-22; 413-24; 413-51; 201-3 at 197:5-7; 201-4 at 55:4-10.

Invoking the SBC's reckoning with sexual abuse is impermissibly overinclusive. The Court must isolate the specific controversy tied to the defamatory statements. Here, the controversy is Lyell's personal relationship with Sills, not systemic abuse within the SBC or the Executive Committee. Collapsing the two would allow any private allegation to be swept into a broader public issue, effectively erasing the limits imposed by *Gertz*. The affair between Lyell and Sills did not affect the public in any way and does not amount to a public controversy.

Second, Lyell did not voluntarily inject herself into any public controversy which is an issue in this case. With regard to the second prong, Lyell had involvement in the controversial allegations she levelled against Sills, however, the public interest (namely, her affair) was sensationalized but not a matter of public controversy. Upon further private threats to go public, Defendants including Barber, Litton, SBC and Executive Committee, gave Denhollander a key role in the Report,[29] using it to elevate Lyell, damage Sills, and present the SBC as having properly addressed abuse.[30] Lyell was not a child sex abuse victim, and that was not her controversy. She was not abused by an Executive Committee member. Her story of alleged abuse was neither investigated nor corroborated by anyone. Yet, the Report was used to catapult the story into the mainstream dialogue concerning SBC reforms concerning abuse. Yet, the Report was used to propel this story into the mainstream dialogue on SBC abuse reform, reinforcing the narrative that the SBC had been transformed.

Public figure status cannot be manufactured by publicizing a private allegation and then claiming the subject (or the accuser) is a participant in a public controversy of the defendant's own making. *Gertz*, 418 at 345 (public-figure status turns on voluntary action by the individual, not

---

[29] Dkt. Nos. 413-15 at 190:1-13; 195:23-196:9; 413-19 at Lyell_00193078.
[30] Dkt. No. 355-18.

post hoc implication by others). Lyell's allegations were neither part of a preexisting public controversy nor voluntarily injected into one. They were private claims, later elevated and repurposed by Defendants to serve a broader institutional narrative. That is not enough to confer limited-purpose public figure status under *Gertz* and its progeny.

**B.      Precedential Case Law Supports Plaintiffs' Position.**

In determining whether someone is a public figure for a limited purpose, the Sixth Circuit's analysis in *Armstrong v. Shirvell*, 596 F. App'x 433 (6th Cir. 2015) is instructive and reflective of the court's framework set forth in *Street v. National Broadcasting Co.*, 645 F.2d 1227 (6th Cir. 1981), *cert. dismissed*, 454 U.S. 1095 (1981), and further refined in the aforementioned *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F3d 522 (6th Cir. 2014): courts must identify a specific public controversy and then determine whether the plaintiff voluntarily injected himself into that controversy to influence its resolution.

In *Armstrong*, former Michigan assistant attorney general Andrew Shirvell was held liable for defamation after running a smear blog against the openly gay University of Michigan student body president, Christopher Armstrong. Shirvell unsuccessfully argued that Armstrong was a limited-purpose public figure as a result of his elected campus office and his advocacy on gender-neutral housing. The district court and Sixth Circuit rejected the argument, finding that his public role as a student government president did not cast him into the kind of public controversy contemplated by the seminal United States Supreme Court case of *Gertz*, and that the plaintiff, Armstong, had not assumed a public role. *Id*.

The facts of *Armstrong* underscore the narrowness of the doctrine. Shirvell publicly referred to Armstrong as a racist and a liar, alleged that he mocked and attacked Christianity, and commented on his sexual behavior and personal life. *Armstrong*, 596 F. App'x at 445-446.

Armstrong was involved in campus LGBT organizations, was openly gay, supported gender neutral campus housing and was quoted in several local newspapers on these topics. *Id*. Yet, even in this context, where the plaintiff spoke publicly on issues of recognized public interest, the Sixth Circuit found that there was no evidence that Armstrong's conduct "affected anyone beyond the immediate participants, or that anyone besides those participants and Shirvell had an interest in the conduct." *Id.* at 445.

The Sixth Circuit's ruling in *Armstrong* is instructive because it shows the Court's restraint in overly expansive applications of the limited public-figure doctrine and its insistence on a tight nexus between the defamatory remarks and genuine public controversy. Such a controversy only exists where there is a real dispute that affects the general public in some appreciable way, not "merely a matter that attracts public attention." *Id.* (citing *Wolston*, 443 U.S. at 167.

In the instant matter, Jennifer Lyell's interactions and private relationship with Sills may be sensationalistic, but they were not a matter of public controversy no matter the effort to portray the affair as emblematic of the SBC's sexual abuse scandal. Analogous to the rationale in *Armstrong*, Sills had a co-worker relationship with Lyell, with very occasional impurity largely initiated by Lyell.[31] The fact they had an affair does not constitute a matter of public interest. Instead, like *Armstrong*, the affair was not investigated does not affect anyone beyond the immediate participants, namely, Lyell and Sills. Distinguishably, Sills was never charged with any sexual abuse, none was ever reported to any law enforcement agency, and no prosecutorial agency initiated any investigation.[32] No person bore witness to any improper behavior, and Lyell concealed all of her efforts to remain in contact with Sills.[33] No aspect of their relationship falls within the

---

[31] Dkt. No. 411-24, Sills Dep. at 21:13-23; 317:8-13; 319:2-12; 345:18-23.
[32] Dkt. No. 422 at 4.
[33] *Id.*

scope of the mandate of the Guidepost Report.[34] Additionally, by Defendants' own guidelines, Sills should not have been identified or photographed in the List.[35]

In sum, as in *Armstrong*, the alleged conduct here did not extend beyond the immediate participants and did not implicate any broader public controversy. The fact that Defendants later chose to include Lyell's allegations in the Report does not retroactively transform a private affair into a public controversy within the meaning of *Gertz*.

To the extent Lyell later became a public figure *following* the publication of the Report in May 2022, that transformation occurred only after Defendants themselves brought the allegations into the public sphere. Any such post-publication prominence is irrelevant to the limited-public figure analysis, which must focus on the existence of a public controversy and the plaintiff's role in it at the time of the alleged defamation. *Gertz*, 418 U.S. at 345.

**B.      Unlike *Hunt*, This Case Does Not Involve a Preexisting Public Controversy**

In *Hunt v. Southern Baptist Convention, et al.*, No. 3:23-cv-00243 (M.D. Tenn), the Court evaluated allegations that were expressly included within the core subject matter of the Guidepost Report, namely, allegations of sexual assault that the investigators deemed credible and corroborated as part of a broader inquiry into systemic failures in addressing sexual abuse within the SBC. The Report itself framed those allegations as part of a larger, publicly debated issue: the SBC's handling of sexual abuse claims over a period of decades. In that context, the alleged conduct was treated as a broader institutional controversy that had already garnered significant public attention and implicated matters of public concern. That is not this case.

Here, the alleged relationship between Lyell and Sills was not part of any preexisting public controversy concerning sexual abuse within the SBC. Unlike the allegations in *Hunt*, Lyell's

---

[34] Dkt. Nos. 390-7 at 50; 415 at 9-10.
[35] Dkt. Nos. 355-18; 411-28.

9

Case 3:23-cv-00478    Document 502    Filed 04/30/26    Page 9 of 13 PageID #: 19706

claims were never reported to law enforcement, never resulted in any criminal investigation, and were not substantiated through any independent investigative process. There was no "real dispute" affecting the public; there was only a private relationship later recast by Defendants as something it was not.

The facts here are closer to *Armstrong* than to *Hunt*. In *Armstrong*, even where the plaintiff held public office and spoke on matters of public concern, the Sixth Circuit found no qualifying public controversy because the alleged conduct did not affect anyone beyond the immediate participants. *Armstrong*, 595 F. App'x at 445. The same is true here. Whatever occurred between Lyell and Sills, however characterized, did not extend beyond the individuals involved and did not implicate the public in any meaningful way.

### C. Lyell's Status as a Limited-Public or Private Figure is Immaterial.

Plaintiffs respectfully suggest that the discussion of private versus public status in defamation cases is effectively focused on whether or not the plaintiff (rather than a defendant) is a public figure.[36] Plaintiffs have briefed, with considerable specificity, the question of whether they were public figures.[37] They were not. Plaintiffs fall far short of meeting the standard for a "general purpose public figure," and they do not fit into the very narrow category of persons who might be an "involuntary public figure" under Tennessee law. Plaintiffs do not constitute "limited purpose public figures" because they did not "voluntarily inject" themselves into any public controversy. On the contrary, they were dragged into this SBC child sexual abuse controversy by Defendants.[38]

Notably, the Supreme Court has been clear that a defamation defendant cannot make the

---

[36] Plaintiffs have not located any authority which focuses on a defendant's (or declarant's) public figure status.
[37] *See* Dkt. Nos. 442 at 8-14; 443 at 8-9; 446 at 8-14; 455 at 12-18.
[38] Exhibit 7, SBC 30(b)(6) Dep. at 52:12-18. *See also* Exhibit 8, SBC 30(b)(6) Dep. Exhibit 5.

subject of her statements (in this case, Sills) into a "public figure."

In the leading case of *Hutchinson v. Proxmire*, 443 U.S. 111 (1979), a U.S. senator, William Proxmire, publicly criticized a professor and researcher. The Supreme Court held that the professor was not a "public figure," and reversed the award of summary judgment to the senator. *Id*. at 135-36. As explained by the Supreme Court, "[c]learly, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." 443 U.S. at 135 (citing *Wolston v. Reader's Digest Assn., Inc.*, 443 U.S. 157, 167-168 (1979)). The professor did not become a public figure merely because a U.S. Senator, who *indisputably was* a public figure, dragged him into a controversy by defaming him. By analogy, even if Lyell had, like Senator Proxmire, been a public figure, that is entirely inconsequential to whether *Sills* was a public figure.

The rule of *Hutchinson* remains the law 47 years later. *Baughman v. Beter*, No. 1:23-cv-11278-IT, 2024 U.S. Dist. LEXIS 186024, at *31-32 (D. Mass. Oct. 11, 2024); *McGarry v. Univ. of San Diego*, 154 Cal.App.4th 97, 110 (2007) ("A person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.") (citations omitted). *Accord Taylor v. ESPN*, *Inc.*, 25-cv-06384-VKD (N.D. Cal. Mar 17, 2026) (citing *Hutchinson*).

In *Baugham*, the court held that a plaintiff in a defamation case who had been accused of sexual abuse was not a limited public figure by virtue of (1) news coverage, and (2) the plaintiff's election to file the defamation case:

> Neither are Plaintiffs "limited" public figures. The purported "controversy" at issue in Plaintiffs' defamation claim is the alleged sexual assault of Beter. Defendants have not met their burden of establishing that Plaintiffs have attempted to "influence the resolution" of this conflict beyond filing the instant lawsuit. While Defendants direct the court to two news articles reporting on Beter's New York action against Baughman, *Mem. ISO Mot. Stay or Dismiss* 21 [Doc. No. 34], the

11

reporting on Defendants' lawsuit does not establish Plaintiffs as public figures. *Hutchinson v. Proxmire*, 443 U.S. 111, 112-13 (1979) ("Those charged with alleged defamation cannot, by their own conduct, create their own defense by making the claimant a public figure."). Accordingly, Plaintiffs were not required to plead actual malice.

2024 U.S. Dist. LEXIS 186024, at *31-32.

The reasons for this rule are obvious. Defamation defendants – *i.e.,* those who choose to publish statements about the plaintiff – have, by definition, gone public. "[P]ublication" is an element of the tort of defamation. *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999) (plaintiff must show, *inter alia*, that "a party published a statement"). *Eo ipso*, defamation defendants always go public. If this was enough to turn the *plaintiff* into a public figure, then every defamation plaintiff would be a public figure.

Accordingly, whether Lyell became a limited public figure, by choosing to publicize her allegations against Sills or otherwise, is immaterial to the claims at bar.

## II. CONCLUSION

For these reasons, Jennifer Lyell was not a limited-purpose public figure prior to publication of the Guidepost Report. There was no pre-existing public controversy with regard to Sills and Lyell's relationship, and any public attention arose only after Defendants chose to publish her allegations. That post-publication exposure is legally irrelevant under *Gertz*. Further, Lyell's status as either private or limited public figure is immaterial to Plaintiffs' defamation claim.

Dated: April 30, 2026

Respectfully submitted,

By: /s/ *Katherine B. Riley*
Katherine Barrett Riley (TN BPR#021155)
John W. ("Don") Barrett (admitted *pro hac vice*)
Sterling Aldridge (admitted *pro hac vice*)
BARRETT LAW GROUP, P.A.
P.O. Box 927
404 Court Square North

12

Lexington, MS 39095
Ph: (662) 834-2488
Fax: (662) 834-2628
kbriley@barrettlawgroup.com
dbarrett@barrettlawgroup.com
saldridge@barrettlawgroup.com

Shannon M. McNulty (admitted *pro hac vice*)
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle Street, 36th Floor
Chicago, Illinois 60602
(312) 899-9090
(312) 251-1160 Facsimile
SMM@cliffordlaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Katherine B. Riley, hereby certify that on April 30, 2026, I served the above and foregoing on all counsel of record via the Court's CM/ECF filing system.

/s/ *Katherine B. Riley*
Katherine B. Riley

13